**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ARM LTD., a U.K. corporation,<br><br>  Plaintiff,<br><br>  v.<br><br>QUALCOMM INC., a Delaware corporation,<br>QUALCOMM TECHNOLOGIES, INC., a<br>Delaware corporation, and NUVIA, INC., a<br>Delaware corporation,<br><br>  Defendants. | C.A. No. 22-1146-MN<br><br>**JURY TRIAL DEMANDED**<br><br>**REDACTED - PUBLIC VERSION** |

## PLAINTIFF ARM LTD.'S ANSWER AND AFFIRMATIVE DEFENSES TO DEFENDANTS QUALCOMM INC., QUALCOMM TECHNOLOGIES, INC., AND NUVIA, INC.'S AMENDED COUNTERCLAIM

Plaintiff Arm Ltd. ("Arm") hereby submits its Answer and Affirmative Defenses to the Amended Counterclaim of Defendants Qualcomm Inc., Qualcomm Technologies, Inc. (collectively "Qualcomm"), and NuVia, Inc. ("Nuvia").

### PRELIMINARY STATEMENT

Contrary to its allegations, Qualcomm cannot continue using Arm-based technology, including the Phoenix core, that Nuvia developed under its now-terminated Architecture License Agreement ("ALA") with Arm, for several independent reasons:

*First*, pursuant to an express, independent obligation under Nuvia's ALA, the relevant Nuvia technology, including the Phoenix core, can no longer be used and must be destroyed. This destruction obligation extends to all derivatives or embodiments of Arm technology generated at Nuvia based on Nuvia's ALA. The Nuvia ALA leaves no doubt that the destruction obligation extends to processor cores, such as Nuvia's Phoenix core, which is the basis for Qualcomm's proposed future products. Defendants must discontinue

1

any use of products derived from or embodying technology provided by Arm under the Nuvia ALA. These obligations were not amended, terminated, avoided, or affected in any way whatsoever by any provision in Qualcomm's ALA. In April and May 2022, Nuvia and Qualcomm expressly certified that they would comply with the obligation to destroy and not use the defined Arm technology and confidential information—which includes Defendants' products embodying and derivatives of the same—under the Nuvia ALA. Defendants belatedly seek to dispute whether Arm was entitled to terminate Nuvia's ALA, but they waived any such argument by conceding termination at the time and by purporting to certify compliance with the termination obligations shortly thereafter. Now they must actually abide by their very clear contractual obligations.

*Second*, Arm has no obligation to support Qualcomm's further attempts to continue developing unlicensed technology originally developed at Nuvia using Arm's architecture. Qualcomm's ALA with Arm expressly excludes any license to Arm technology that was not developed under that specific ALA. The Qualcomm ALA limits Qualcomm's design and manufacture rights, and Arm's verification, delivery, and support obligations, to chips (1) based on the technology Arm delivered *to Qualcomm* under that ALA, (2) created at Qualcomm, by Qualcomm engineers and Qualcomm subsidiaries during the period while those entities were subsidiaries of Qualcomm, and (3) licensed subject to the terms of that ALA. None of this is true of the Phoenix core or other designs developed by *Nuvia* engineers at *Nuvia* based on the technology and license granted to *Nuvia* by Arm when *Nuvia* was a standalone company. Thus, Qualcomm is not only trying to develop an unlicensed product, but is also materially breaching its ALA with Arm.

*Third,* there is no uncertainty that Arm's consent was required but not obtained for the transfer of Nuvia's rights, including through Qualcomm's acquisition of the company. Because the Nuvia ALA expressly required prior consent from Arm to any assignment of the ALA, and expressly defined assignment to include any other company's acquisition of Nuvia, Qualcomm's acquisition of Nuvia without Arm's prior consent breached the Nuvia ALA.

*Fourth*, Arm did not waive its rights (or prejudice Qualcomm) by exploring a business solution before bringing suit.  Within days after Qualcomm first contacted Arm about its planned acquisition of Nuvia, Arm informed Qualcomm in writing that it would need to enter into a new agreement if it wished to continue using the designs and technology that had been created pursuant to the Nuvia ALA.  Arm did not wait in the weeds; it openly and promptly identified and communicated Nuvia's and Qualcomm's obligations.  And Qualcomm agreed in writing with Arm's position that, even if Arm continued to support the Nuvia team in the interim, Arm's "assistance does not expressly or impliedly waive any of Arm's rights."  Arm notified Qualcomm again of its obligations in early August 2022 before it filed its Complaint.  Qualcomm knew the risks, and willfully refused to heed Arm's warnings.  Faced with Qualcomm's refusal to respect Arm's licenses, Arm brought this lawsuit to protect its rights under the Nuvia ALA and the Arm technology ecosystem by obtaining specific performance of Defendants' obligation to destroy and stop using the unlicensed Nuvia designs.  These facts, not any misguided allegations about prior merger issues or purported changes in Arm's business model, are the reason and basis for Arm's claims.

## ANSWER

Arm further answers the Counterclaim as follows, and except as expressly admitted below, Arm denies each and every allegation of the Counterclaim:

1.      In answer to paragraph 1, Arm admits, as discovery is likely to show, that Qualcomm plans to market products that are based on or incorporate Arm-based technology developed under the now-terminated Nuvia ALA.  Arm lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in the first sentence of paragraph 1 and on that basis denies them.  Arm denies the allegation that "many in the industry see in this pivotal moment the opportunity for technological advancement," with industry commentators instead stating, for example: "Assuming that these Nuvia chips do not get side-tracked in terms of a launch, Qualcomm will effectively be behind Apple by three generations,"[1] "Qualcomm is still behind" and "is going to have some catching up to do,"[2] and "Qualcomm's predictions for the Nuvia processors have centered on it being a way to make Windows laptops that rival Apple's M1 chips in the MacBook Pro.  However, Apple has already said that it will be making no more versions of the M1, and the expectation is that by 2023 it will already be on to an M2, or even M3."[3]  Arm denies the remaining allegations in this paragraph.

---

[1] Omar Sohail, *Qualcomm Makes Progress With Nuvia Chips, Gets Design Wins, but Competing With Apple Still Not Possible for a Few Years*, WCCF Tech, (Nov. 5, 2022), https://wccftech.com/qualcomm-nuvia-chips-get-design-wins-but-launch-a-few-years-away/.

[2] Rich Woods, *Qualcomm's Custom Arm Processors for Windows PCs are Coming Late Next Year*, XDA Developers (Apr. 27, 2022), https://www.xda-developers.com/qualcomms-custom-arm-processors-for-windows-pcs-are-coming-late-next-year/.

[3] William Gallagher, *Qualcomm Says Its Apple Silicon Rival Chips Will Be in PCs by Late 2023*, AppleInsider (Apr. 29, 2022), https://appleinsider.com/articles/22/04/29/qualcomm-says-its-apple-silicon-rival-chips-will-be-in-pcs-by-late-2023.

2.      Paragraph 2 contains legal conclusions to which no response is required.  To the extent a response is required, Arm respectfully refers the Court to the Complaint for Arm's claim that Defendants must stop using and destroy any Arm-based technology developed under the Nuvia ALA.  Arm denies the remaining allegations in this paragraph.

3.      Paragraph 3 contains legal conclusions to which no response is required.  To the extent a response is required, Arm admits that Qualcomm has licensed and paid for its own ALA, which expressly excludes a license to ██████████████ such as Nuvia's implementation of Arm architecture—███████████████████████████ ███████████████████████ For purposes of the Qualcomm ALA, the relevant Nuvia technology embodies and was derived from Arm technology delivered by Arm to Nuvia under Nuvia's now-terminated ALA, and thus is expressly excluded from the Qualcomm ALA license.  Arm denies the remaining allegations in this paragraph.

4.      Paragraph 4 contains legal conclusions to which no response is required.  To the extent a response is required, Arm denies that the Nuvia ALA—which states ████████ ████████████████████████████████████████ ██████████████████████████ ████████—provided any alleged rights of "technology ownership" surviving termination of the Nuvia ALA, and Arm denies the remaining allegations in this paragraph.

5.      Paragraph 5 contains legal conclusions to which no response is required.  To the extent a response is required, Arm admits that Qualcomm and Nuvia's destruction obligation applies to Arm Confidential Information, a contractual term defined to include ████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████   Arm also admits that the Arm

Architecture Reference Manual is available online, but denies that the manual is in the

public domain; instead, the manual makes clear that "[n]o license, express or implied, by

estoppel or otherwise to any intellectual property rights is granted by this document unless

specifically stated."  Arm lacks sufficient knowledge or information to form a belief about

the truth of allegations in the last sentence of this paragraph and on that basis denies them.

Arm denies the remaining allegations in this paragraph.

6.      Paragraph 6 contains legal conclusions to which no response is required.  To

the extent a response is required, Arm respectfully refers the Court to the Complaint and

admits that it seeks specific performance of the Nuvia licenses' termination provisions to

require Qualcomm and Nuvia to stop using and to destroy any Arm-based technology

developed under the Nuvia ALA, which constitutes and embodies ████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████   Arm denies the allegation that it is "[s]eeking additional

leverage it can use to attain royalties from Qualcomm to which it is not entitled under the

contracts" because even if it did not have to stop using and destroy the relevant Nuvia

technology, Qualcomm would have been subject to Nuvia's royalty rates under the Nuvia

ALA in its capacity as Nuvia's acquirer.  For example, Section 6.2 of the Nuvia ALA says:

███████████████████████████████████████

████████████████████████████████████

██████████████████████████████████

This royalty obligation for products that are based on or incorporate Arm-based technology developed in whole or in part under the Nuvia ALA survives termination of the Nuvia ALA. In contrast, Qualcomm improperly sought to bring the Nuvia technology under its own ALA to avoid paying Nuvia's royalty rates, even though the Nuvia technology was not developed or licensed under Qualcomm's ALA.  Arm denies the remaining allegations in this paragraph.

7.      In answer to paragraph 7, Arm admits that, in the event its licenses are terminated for material breach, its licensees may be subject to termination obligations.  Arm denies the remaining allegations in this paragraph.

8.      Paragraph 8 contains legal conclusions to which no response is required.  To the extent a response is required, Arm denies the allegations contained in this paragraph.

9.      In answer to paragraph 9, Arm admits that Qualcomm made such an announcement, but Arm denies the suggestion that it knew all of the specific uses for which Nuvia intended the Phoenix core.

10.      In answer to paragraph 10, Arm denies the suggestion that processor cores based on Arm architecture are merely "compatible" with the architecture that they implement, embody, and are derived from, and Arm lacks sufficient knowledge or information to form a belief about the truth of the allegations regarding compatibility with Qualcomm technologies and on that basis denies them.

11.     In answer to paragraph 11, Arm admits that Qualcomm publicly announced plans to integrate Nuvia CPU cores into Qualcomm's flagship smartphones, next-generation laptops, and digital cockpits, as well as Advanced Driver Assistance Systems, extended reality and infrastructure networking solutions.  Arm lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in this paragraph and on that basis denies them.

12.     In answer to paragraph 12, Arm admits that Qualcomm published a press release quoting industry participants commenting on Qualcomm's acquisition of Nuvia. The website referenced in paragraph 12 and the contents thereof speak for themselves.  Arm denies the remaining allegations in this paragraph.

13.     Paragraph 13 contains legal conclusions to which no response is required.  To the extent a response is required, Arm admits that at the time of Nuvia's acquisition, Nuvia and Qualcomm had separate license agreements with Arm, each of which licensed separately defined Arm technology delivered to the relevant party.  Arm admits that Nuvia's and Qualcomm's separate license agreements with Arm provided certain rights to use version 8 of the Arm architecture, including version ██.  Arm admits that the Phoenix core embodied and was derived from version ██ of the Arm architecture.  Arm admits that Qualcomm has a license agreement with Arm that provides certain rights to use version 9 of the Arm architecture.  Arm denies the remaining allegations in this paragraph.

14.     Arm admits the allegations in the first and third sentences of paragraph 14 as to at least some Arm ALAs, while denying the suggestion that all Arm ALAs grant uniform rights.  Arm admits that an instruction set architecture ("ISA") is part of the abstract model of a computer that specifies how the CPU interacts with software.  Arm admits that

applications and software that conform to an ISA's specifications can generally be run on a CPU that is based on the ISA, regardless of who has designed or manufactured the hardware.  Arm admits that the Arm ISA allows for compatibility of applications and software, as all Arm-based products can receive the same inputs (instructions) and, for each of those inputs, determine and output the proper result.

15.     Arm admits the allegations in the first sentence of paragraph 15.  Arm denies that micro-architectural know-how and expertise required to build a CPU is not related to the ISA.  Arm lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in this paragraph and on that basis denies them.

16.     In answer to the first sentence of paragraph 16, Arm admits that a CPU developer developing a custom CPU generally designs the core to meet the requirements of the relevant architecture.  Arm lacks sufficient knowledge or information to form a belief about the truth of the second and third sentences of this paragraph and on that basis denies them.

17.     Arm admits the allegations in paragraph 17, but denies the suggestion that ALA licensees develop custom processor cores without significant support from Arm.

18.     In answer to the first sentence of paragraph 18, Arm admits that Arm Technology License Agreements ("TLAs") allow the use of specific "off-the-shelf" Arm processor core designs with only minor modifications.  Arm denies the remaining allegations in this sentence.  Arm lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in this paragraph and on that basis denies them.

19.     In answer to the first sentence of paragraph 19, Arm admits that a limited number of companies make use of both Arm ALAs and TLAs.  Arm denies the remaining allegations in this paragraph.

20.     In answer to paragraph 20, Arm denies that Qualcomm products incorporating the relevant technology Nuvia developed under the Nuvia ALA would not be subject to the Nuvia ALA's royalty rates—setting aside that Qualcomm is not entitled to make such products using technology subject to discontinuance and destruction obligations.  Arm lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in this paragraph and on that basis denies them.

21.     In answer to the first sentence of paragraph 21, Arm admits that on January 27, 2021, Qualcomm informed Arm that Qualcomm intended to transfer Nuvia's work and employees to Qualcomm and have those employees continue their activities under the Qualcomm ALA and TLA, leading Arm to provide prompt notice of Qualcomm's need for a new agreement to cover the technology transfer.  Arm admits the allegations in the second sentence of this paragraph.

22.     Arm lacks sufficient knowledge or information to form a belief about the truth of the allegations in the first sentence of paragraph 22 and on that basis denies them. Arm denies the remaining allegations in this paragraph.

23.     Arm denies the allegations in the first sentence of paragraph 23.  In answer to the second and third sentences of this paragraph, Arm admits that it made the quoted statements in a letter that Arm sent to Qualcomm dated February 2, 2021, to which Arm refers for a complete statement of its contents; but Arm denies that these statements were without basis, given that they were based on the Nuvia ALA's assignment provision.  In

answer to the fourth sentence of this paragraph, Arm admits that it sent Qualcomm a letter dated February 16, 2021 with a "commercial proposal to facilitate NUVIA's design transfer to Qualcomm." Arm admits that its commercial proposal offered an amendment to Qualcomm's ALA to "(a) align the terms of that agreement with those in NUVIA's architecture license agreement including but not limited to the royalty rates and (b) address the implementation of appropriate safeguards with respect to Arm's confidential information which can be delivered under a confidentiality agreement or under Qualcomm's technology license agreement ('TLA'), or both (collective, 'ARM Confidential Information')," and subject to that understanding, Arm admits clause (ii) of the fourth sentence of this paragraph. Arm admits that its commercial proposal also offered to "discuss and decide on the design transfer fee associated with such CPU design transfer" and that, "[w]ith respect to NUVIA's design(s) using Arm implementation IP and software tools, Qualcomm will enter into a separate license for such implementation IP and software tools." Arm denies the remaining allegations in this paragraph.

24. Paragraph 24 contains legal conclusions to which no response is required. To the extent a response is required, Arm admits that Annex 1 of the Qualcomm ALA licenses Qualcomm and its subsidiaries to ███████████████████████████████████ ██████████████████████████████████████████ ███████████████████████████ in Section B.1.1, but ██████████████████ ████████████████████████. Arm admits that on February 25, 2021, Qualcomm sought Arm's consent for Qualcomm to acquire—and thereby assign to itself—Nuvia's Arm license rights, without asserting that such consent was not necessary, and without obtaining such consent. Arm denies the remaining allegations in this paragraph.

25.     Arm denies the allegations in paragraph 25.

26.     In answer to paragraph 26, Arm admits that its February 16, 2021 commercial proposal offered a novation to provide appropriate safeguards with respect to Arm's confidential information.  Arm denies the allegation that the proposed payments made "little sense" when Qualcomm asserts that it will use processors developed under Nuvia's ALA for data center servers and other products subject to Nuvia's "much higher royalty rates" but "will in the future pay to ARM the lower royalty rate under [Qualcomm's] ALA."  Arm admits that Nuvia planned to design CPUs implementing Arm architecture for use in data center servers, for which Arm provided substantial, crucial, and individualized support, and which technologically could be (and Qualcomm now admits have been) re-purposed for use in other products.  Arm admits that the royalty rate in the Nuvia ALA—which Qualcomm improperly sought to avoid, even for data center server technology developed under the Nuvia ALA—is higher than the royalty rate in the Qualcomm ALA.  Arm denies the suggestion that the Nuvia ALA's royalty rates applied only to data center server products, given that Nuvia's ALA contained no field-of-use limitation that would have prevented it from repurposing its processor cores for use in other products subject to its same royalty rates.  Arm denies the remaining allegations in this paragraph.

27.     Arm denies the allegations in paragraph 27.

28.     In answer to paragraph 28, Arm admits that Qualcomm refused to discuss a novation and, as a result, Arm did not consent to Qualcomm's acquisition of (and thus Nuvia's assignment of) Nuvia's license rights to its implementation of Arm technology. Arm admits that Arm and Qualcomm continued to discuss a commercial resolution of the

assignment issue after the close of the Nuvia acquisition, until Qualcomm broke off communications in October 2021.  Arm denies the remaining allegations in this paragraph.

29.     In answer to paragraph 29, Arm admits that, after the acquisition closed, Arm informed Qualcomm that it would need to cease using and destroy any technology developed under the Nuvia ALA if the parties did not agree to a novation.  Arm admits that, in an effort to reach a compromise, Arm proposed that Qualcomm pay a design transfer fee and harmonize certain royalty rates with Nuvia's rates in lieu of the hundreds of millions of dollars Arm anticipated earning from Nuvia's products expanding the market for Arm-based chips.  Arm denies the remaining allegations in this paragraph.

30.     In answer to paragraph 30, Arm admits that before Arm sent its February 1, 2022 letter terminating the Nuvia ALA, Arm and Qualcomm discussed the assignment dispute from January 27, 2021, when Qualcomm first brought the issue to Arm's attention, through at least October 18, 2021.  Arm denies that it stopped communicating with Qualcomm in or about September 2021 given that Qualcomm did not respond to or otherwise acknowledge Arm's August 31, 2021 proposal prior to its expiration.  Further, Arm sent an October 18, 2021 request that Qualcomm put forward a proposal for Arm to consider, and Qualcomm failed to respond.  Arm denies the remaining allegations in this paragraph.

31.     In answer to paragraph 31, Arm admits that it sent a letter dated February 1, 2022 to Nuvia and Qualcomm terminating the Nuvia licenses effective March 1, 2022.  Arm admits that its letter reminded Nuvia and Qualcomm of their obligations upon termination to stop using and destroy the relevant Nuvia technology developed under the now-terminated licenses and to certify that they had complied with the termination provisions within one

month of the termination.  Arm lacks sufficient knowledge or information to form a belief about the truth of the allegations related to the date of Qualcomm's receipt of Arm's letter. Arm denies the second sentence of paragraph 31.  Arm admits that prior to termination of the Nuvia ALA, Arm supported the Nuvia team under the Nuvia ALA given that Qualcomm had expressly agreed to Arm's condition that "such interaction and/or assistance does not expressly or impliedly waive any of Arm's rights with respect to the novation."  Arm denies the remaining allegations in this paragraph.

32.     Arm denies the allegations in paragraph 32.

33.     In answer to paragraph 33, Arm denies that it waited to terminate the Nuvia ALA and TLA for material breach by continuing to negotiate with Qualcomm in good faith. Arm lacks sufficient knowledge or information to form a belief about the truth of the allegations related to Qualcomm's expenses or development efforts and on that basis denies them.  Arm denies the suggestion that the fees and royalty payments Nuvia agreed to pay for technology developed under its ALA were exorbitant.  Arm denies the remaining allegations in this paragraph.

34.     In answer to paragraph 34, Arm admits that it sent a letter to Nuvia and Qualcomm terminating the Nuvia agreements dated February 1, 2022.  Arm admits that the termination of NVIDIA's proposed acquisition of Arm was announced on February 7, 2022, and that Arm had been seeking regulatory approval for NVIDIA to acquire Arm while Qualcomm refused to respect Arm's licenses during the preceding year, the timing of which suggests that Qualcomm was acting in bad faith to take advantage of Arm's prioritization of this regulatory approval process.  Arm denies the remaining allegations in this paragraph.

35.     In answer to paragraph 35, Arm admits that Qualcomm sent Arm a letter dated May 23, 2022, asserting that Qualcomm's own Arm licenses would permit it to incorporate Nuvia technologies "that are not subject to any removal or quarantine obligations" into Qualcomm products, without specifying what, if any, Nuvia technology fit that description.  Arm admits that Qualcomm asserted that Nuvia had developed technologies that were not subject to the termination requirements without explaining whether these technologies were derived from Arm Technology delivered under the Nuvia licenses.  Arm admits that Qualcomm's letter indicated that Qualcomm would comply with the termination obligations to the same extent as would Nuvia, without objecting to Arm's termination of the Nuvia licenses.  Arm denies the remaining allegations in this paragraph.

36.     In answer to paragraph 36, Arm admits that Nuvia's Phoenix core embodied and was derived from version ▇▇ of the Arm architecture, and that the Initial Arm ▇▇ EAC release was added to the Arm Architecture Reference Manual for download on Arm's website in or around January 2021.  Arm admits that Section 3.9 of the Nuvia ALA excludes information that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇ from the confidentiality obligations in Section 3 of the ALA, which are distinct from the termination obligations in Section 15.1 of the ALA.  The remaining allegations in this paragraph contain legal conclusions to which no response is required.  To the extent a response is required, Arm denies the remaining allegations in this paragraph.

37.     In answer to paragraph 37, Arm admits that by letter dated April 1, 2022, Nuvia certified that it had destroyed and quarantined all "ARM Confidential Information including ARM technology or derivatives," but Arm denies that Nuvia suggested, contrary

to the requirements of the Nuvia ALA, that its certification was limited only to "Nuvia-acquired" information, technology, or derivatives.

38.     In answer to paragraph 38, Arm admits that, in reliance on Qualcomm's statement that Arm's assistance to Qualcomm would not waive any of Arm's rights, Arm released a Compliance Waiver dated April 12, 2022, which stated: "This compliance waiver forms the acceptance from Arm that Qualcomm Global Trading Pte Ltd has validated their CPU Core in accordance with the Verification requirements set out in the Architecture agreement."  In the same month, Arm specifically reinforced Qualcomm's obligation to destroy the unlicensed materials.  Arm denies the remaining allegations in this paragraph.

39.     In answer to paragraph 39, Arm denies that its ALAs provide licensees an ownership interest in their implementations of Arm technology that would affect a licensee's destruction obligations upon termination, with Nuvia's ALA instead stating ███ ████████████████████████████████████████████ ███████████████████████████  Arm denies the remaining allegations in this paragraph.

40.     In answer to paragraph 40, Arm admits that as part of efforts to seek regulatory approval for NVIDIA to acquire Arm, Arm and NVIDIA submitted to a United Kingdom regulator the cited document, to which Arm refers for a complete statement of its contents.  Arm denies the remaining allegations in this paragraph.

41.     Paragraph 41 contains legal conclusions to which no response is required.  To the extent a response is required, Arm admits that Qualcomm and Nuvia must stop using and destroy any Arm-based technology developed under Nuvia's ALA, and that neither

Qualcomm nor Nuvia is licensed to continue developing this technology. Arm denies the remaining allegations in this paragraph.

42. Paragraph 42 contains legal conclusions to which no response is required. To the extent a response is required, Arm admits that Qualcomm is licensed to develop certain Arm-based technology based on Arm technology delivered to Qualcomm under its ALA and licensed according to the terms of that ALA. The Qualcomm ALA expressly excludes a license to any other Arm technology, such as the Nuvia technology. Arm denies the remaining allegations in this paragraph.

43. Paragraph 43 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

44. The first and second sentences of paragraph 44 contain legal conclusions to which no response is required. To the extent a response to the first sentence is required, Arm denies the allegations. To the extent a response to the second sentence is required, Arm respectfully refers the Court to the Complaint for Arm's allegations and denies the allegations contained in this sentence. Arm denies that Qualcomm's license agreements give Qualcomm the right to use Arm trademarks in connection with products developed in whole or in part under Nuvia's ALA because those products are not covered by the relevant licenses in the Qualcomm ALA. Arm admits that Section 2.9 of the Qualcomm ALA states that ███████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████████████████████ Arm admits that Arm's website publicly grants third parties the right to "use Arm's word trademarks, product names, service names, technology names and other names in text to refer to Arm's products

and services and related technology if [they] follow [Arm's] guidelines and [such] use is accurate, fair and not misleading."  Arm denies the remaining allegations in this paragraph.

45.     The first sentence of paragraph 45 contains legal conclusions to which no response is required.  To the extent a response is required, Arm denies the allegations in the first sentence of this paragraph.  Arm lacks sufficient knowledge or information to form a belief about the remaining allegations in this paragraph and on that basis denies them.

46.     In answer to paragraph 46, Arm admits that, like Qualcomm, it has communicated with press regarding this action.  Arm denies the remaining allegations in this paragraph.

47.     Paragraph 47 contains legal conclusions to which no response is required.  To the extent a response is required, Arm denies the allegations in this paragraph.

175.    Paragraph 175 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in the first sentence of this paragraph.  In answer to the second sentence of this paragraph, Arm sets forth its responses below and repeats, re-alleges, and incorporates by reference its answers to paragraphs 1-47 as if fully set forth herein.

176.    In answer to paragraph 176, Arm admits that Qualcomm Incorporated is a Delaware corporation with its principal place of business in San Diego, California.  Arm admits that Qualcomm has developed and commercialized products related to wireless technologies and has been involved in 3G, 4G, and 5G mobile communication standards. Arm lacks sufficient knowledge or information to form a belief about the remaining allegations in this paragraph and on that basis denies them.

18

177.    In answer to paragraph 177, Arm admits that Qualcomm Technologies, Inc. is a wholly owned subsidiary of Qualcomm Incorporated and a Delaware corporation with a principal place of business in San Diego, California.  Arm lacks sufficient knowledge or information to form a belief about the remaining allegations in this paragraph and on that basis denies them.

178.    In answer to paragraph 178, Arm admits that Nuvia was founded in 2019, but lacks knowledge as to the reason for its founding, and on that basis denies the relevant allegations.  Arm lacks sufficient knowledge or information to form a belief about the truth of the allegations in the second sentence of this paragraph and on that basis denies them.  Arm admits the allegations in the third sentence of this paragraph.

179.    In answer to paragraph 179, Arm admits that it is a corporation headquartered in Cambridge, United Kingdom and was founded in 1990.  Arm admits that it is planning to issue an IPO in the future.  Arm denies the remaining allegations in this paragraph.

180.    Paragraph 180 contains legal conclusions to which no response is required.  To the extent a response is required, Arm admits this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

181.    Paragraph 181 contains legal conclusions to which no response is required.  To the extent a response is required, Arm admits that venue is proper in this Judicial District.

182.    In answer to paragraph 182, Arm admits that Qualcomm and Arm entered into an Amended and Restated Architecture License Agreement, No. LES-TLA-20039, and Annex 1 to that agreement, effective May 31, 2013.  Arm admits that Qualcomm and Arm

entered into a Technology License Agreement, No. LEC-TLA00550 and Annex 1 to that agreement, effective May 31, 2013. Arm admits that Qualcomm and Arm entered into an updated Annex 1 to the ALA, effective June 23, 2020, and an updated Annex 1 to the Qualcomm TLA, effective June 26, 2020. Arm denies the remaining allegations in this paragraph.

183.    Arm admits the allegations in the first sentence of paragraph 183. In answer to the second sentence of this paragraph, Arm admits that Qualcomm's ALA allows it to ███████████████████████████████████ that is, technology ████████████ ████████████ under the Qualcomm ALA and in accordance with the Qualcomm ALA license terms ██████████████████████████████████████████████ ████████████████████████████████████████████ ████████████ as set forth in Section B. In answer to the third sentence of this paragraph, Arm admits that Qualcomm's ALA provides this license to Qualcomm and its subsidiaries, but ██████████████████████████████████████████ Arm denies the remaining allegations in this paragraph.

184.    In answer to paragraph 184, Arm admits that under Qualcomm's TLA, Arm licenses the use of specific "off-the-shelf" Arm processor core designs with only minor modifications. In answer to the third sentence of this paragraph, Arm admits that Qualcomm's TLA provides this license to Qualcomm and its subsidiaries, but ████████████ ████████████████████████████████. Arm denies the remaining allegations in this paragraph.

185.    Arm admits the allegations in paragraph 185.

186.    Paragraph 186 contains legal conclusions to which no response is required. To the extent a response is required, Arm admits that prior to termination of the Nuvia ALA, Nuvia and Qualcomm had separate license agreements with Arm, each of which licensed separately defined Arm technology delivered to the relevant party.  Arm denies the remaining allegations in this paragraph.

187.    Arm admits the allegations in paragraph 187.

188.    In answer to paragraph 188, Arm repeats, re-alleges, and incorporates by reference its answers to paragraphs 1-47 as if fully set forth herein, and admits the remaining allegations in this paragraph.

189.    In answer to paragraph 189, Arm admits that Qualcomm sent Arm a letter dated January 27, 2021, stating that Qualcomm had "entered into a definitive agreement to acquire Nuvia, Inc." and "wr[o]te to address a potential overlap in licensing agreements." Arm admits the allegations in the second and third sentences of this paragraph.  Arm admits that after waiting nearly two weeks since publicly announcing its planned acquisition before contacting Arm, Qualcomm asked that Arm respond with "any concerns" within five business days.  Arm denies the remaining allegations in this paragraph.

190.    In answer to paragraph 190, Arm admits that it responded to Qualcomm on February 2, 2021, stating it expected Qualcomm and Nuvia "have followed and will continue to follow the confidentiality obligations."  Arm admits that the letter stated "any transfer of designs, rights, or licenses under NUVIA's agreements with Arm to Qualcomm will require and be subject to Arm's prior consent (such consent, among other terms, is customarily documented in a three-way agreement between Arm, transferor, and transferee) and a separate commercial agreement between Arm and Qualcomm."  Arm admits that it

stated it would "aim to get in touch" by February 17, 2021.  Arm denies the remaining allegations in this paragraph.

191.    Arm admits the allegations in paragraph 191.

192.    In answer to the first sentence of paragraph 192, Arm admits that it did not provide Qualcomm a formal draft of the "three-way agreement," because Qualcomm rejected the substance of Arm's proposal for the transfer of the designs, rights, and licenses under Nuvia's agreements with Arm.  The second and third sentences of this paragraph contain legal conclusions to which no response is required.  To the extent that a response is required, Arm denies the remaining allegations in this paragraph.

193.    In answer to paragraph 193, Arm admits that it sent Qualcomm a letter dated February 16, 2021, with proposed terms to permit the transfer of Nuvia's designs to Qualcomm.  Arm further repeats, re-alleges, and incorporates by reference its answer to paragraph 23 as if fully set forth herein.  Arm denies the remaining allegations in this paragraph.

194.    Arm denies the allegations in paragraph 194, and denies the suggestion that Arm was somehow responsible for Qualcomm and Nuvia's failure to contact Arm as required by Nuvia's licenses until less than seven weeks before Qualcomm's closing on the planned $1.4 billion acquisition, even though Qualcomm had publicly announced the planned acquisition weeks earlier and, as discovery is likely to show, began its due diligence months earlier.

195.    In answer to paragraph 195, Arm admits that Qualcomm sent Arm a letter dated February 18, 2021, rejecting the terms proposed by Arm to facilitate the transfer of Nuvia's design to Qualcomm, offering no proposal of its own, and erroneously asserting the

quoted statement even though Nuvia could not transfer Arm-based technology developed under the Nuvia ALA—which was based on Arm technology delivered to Nuvia, subject to the Nuvia ALA license terms—and Qualcomm was licensed to use only technology created by Qualcomm engineers using the Arm technology delivered to Qualcomm, subject to the Qualcomm ALA license terms.  Arm admits that Qualcomm sent Arm a letter dated February 25, 2021 falsely asserting that there was no contractual support for the imposition of Nuvia's royalty rates on Qualcomm, when Qualcomm would share Nuvia's obligations under the Nuvia ALA in its capacity as Nuvia's acquirer and thus would be subject to Nuvia's royalty rates for any licensed activity under the Nuvia ALA.  Arm denies the remaining allegations in this paragraph.

196.    In answer to paragraph 196, Arm admits that Qualcomm's February 18, 2021 letter asserted that Arm's proposed confidentiality safeguards "would make it impossible to develop products incorporating both a CPU designed under the ALA and a CPU licensed under the TLA, which would have an adverse impact on both ARM and Qualcomm."  Arm admits that Qualcomm's February 25, 2021 letter asserted that "[t]his new 36 month restriction would only prevent product development and impede innovation."  Arm denies the remaining allegations in this paragraph.

197.    In answer to paragraph 197, Arm admits that Arm promptly informed Qualcomm on February 2, 2021, that "any transfer of designs, rights, or licenses under NUVIA's agreements with Arm to Qualcomm will require and be subject to Arm's prior consent," consistent with the Nuvia ALA's and TLA's assignment provisions and Qualcomm's prior experience acquiring other companies that had their own TLAs.  Arm denies the remaining allegations in this paragraph.

198.    Arm admits the allegations in paragraph 198.

199.    Arm admits the allegations in paragraph 199.

200.    The first sentence of paragraph 200 contains legal conclusions to which no response is required.  To the extent a response is required, Arm admits that Qualcomm has its own ALA and TLA, but Arm denies that anything in Qualcomm's licenses with Arm authorized Qualcomm's use of Arm-based technology developed under the Nuvia ALA based on Arm technology delivered to Nuvia, subject to the license of the Nuvia ALA, or displaced or amended in any way the obligations of the Nuvia ALA's assignment and termination provisions.  In answer to the second sentence of paragraph 200, Arm admits that Section 1.15 of Qualcomm's ALA and TLA define ██████████ as ████████████████████ ████████████████████████████████████████ In answer to the third sentence of paragraph 202, Arm admits that Qualcomm's ALA and TLA define ██████████ as ████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████ ████████████  Arm denies the remaining allegations in this paragraph.

201.    In answer to the first sentence of paragraph 201, Arm admits that Qualcomm's ALA provides the right to design Arm-based cores, but denies the suggestion that the ALA provides the right to continue designing Arm-based cores obtained from third parties based on Arm technology delivered to third parties, subject to licenses in a different ALA.  In answer to the second sentence of this paragraph, Arm admits that Section B.1.1 of Annex 1 to Qualcomm's ALA licenses Qualcomm to ████████████████ ████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████ as set forth in Section B.1.1.

202.   Paragraph 202 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

203.   In answer to paragraph 203, Arm admits that on February 25, 2021, one-and-a-half months after publicly announcing its acquisition of Nuvia, Qualcomm requested that Arm consent to the assignment of Nuvia's license agreements with Arm by March 2, 2021, confirming Arm's consent was required, to authorize "the transfer of certain information . . . from NUVIA to Qualcomm."  Arm denies that Qualcomm's demand for Arm's consent, while rejecting the terms Arm had offered, represented an effort by Qualcomm to compromise, instead reflecting the express terms of the Nuvia ALA requiring consent to any assignment of the Nuvia ALA, including assignment via acquisition.

204.   In answer to paragraph 204, Arm admits that it sent Qualcomm a letter dated March 2, 2021.  Arm denies the remaining allegations in this paragraph.

205.   In answer to paragraph 205, Arm admits that Qualcomm rejected Arm's proposal for consenting to Qualcomm's acquisition of Nuvia's Arm-based designs and made no counteroffer, but Qualcomm nevertheless proceeded with the acquisition as scheduled on or around March 16, 2021 without Arm's consent.

206.   In answer to paragraph 206, Arm admits that, before Arm sent its February 1, 2022 letter terminating the Nuvia ALA, Arm and Qualcomm discussed the assignment dispute from January 27, 2021, when Qualcomm first brought the issue to Arm's attention, through at least October 18, 2021.  Arm denies that it went silent in September 2021; even though Qualcomm did not respond to or otherwise acknowledge Arm's August

31, 2021 proposal prior to its expiration, Arm nonetheless followed up on October 18, 2021, requesting that Qualcomm put forward a proposal for Arm to consider, and Qualcomm failed to do so.  Arm denies the remaining allegations in this paragraph.

207.    In answer to paragraph 207, Arm admits that, as discovery is likely to show, and as the Counterclaim admits, Qualcomm continued developing the Arm Technology and using the Arm Confidential Information that had been developed by engineers at Nuvia before the acquisition and Qualcomm's improper transfer.  Arm lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in this paragraph and on that basis denies them.

208.    In answer to paragraph 208, Arm admits, as discovery is likely to show, that Qualcomm continued to develop Nuvia's Phoenix core and Server SoC.  Arm lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in paragraph 208 and on that basis denies them.

209.    Arm lacks sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 209 and on that basis denies them.

210.    In answer to paragraph 210, Arm admits that in 2021 and 2022—before the Nuvia ALA's termination—Arm provided support to the Nuvia team under the Nuvia ALA. Arm denies any suggestion that this support waived Arm's rights, prejudiced Qualcomm, or otherwise constituted an acknowledgment of or conferred on Qualcomm any rights to technology developed under the Nuvia ALA, since Qualcomm agreed in March 2021 to Arm's condition that "such interaction and/or assistance does not expressly or impliedly waive any of Arm's rights with respect to the novation."  Arm denies the remaining allegations in this paragraph.

211.    In answer to paragraph 211, Arm admits that shortly after Qualcomm acquired Nuvia—i.e., before the Nuvia ALA was terminated—Arm engineers began having weekly discussions with Qualcomm's Nuvia team members related to verification testing of the Phoenix core in reliance on Qualcomm's statement that Arm's assistance to Qualcomm would not waive any of Arm's rights.  Arm denies the remaining allegations in this paragraph.

212.    In answer to paragraph 212, Arm admits that its engineers had discussions with Nuvia team members following Qualcomm's acquisition of Nuvia in reliance on Qualcomm's statement that Arm's assistance to Qualcomm would not waive any of Arm's rights.  Arm denies the remaining allegations in this paragraph.

213.    In answer to paragraph 213, Arm admits that it has licensed technology to Qualcomm, unrelated to Qualcomm's development of the relevant Nuvia technology, for which Qualcomm does not have an applicable license, and Qualcomm has paid Arm for those licenses, since March 16, 2021.

214.    Arm admits the first, second, and third sentences of paragraph 214.  Arm admits that Qualcomm has paid for the licenses described in the first three sentences of paragraph 214 and other licenses Arm granted Qualcomm.

215.    In answer to paragraph 215, Arm admits that in or around late 2021—i.e., before the Nuvia ALA's termination—Arm engineers continued having weekly discussions with Qualcomm's Nuvia team members related to verification testing of the Phoenix core in reliance on Qualcomm's statement that Arm's assistance to Qualcomm would not waive any of Arm's rights.  Arm denies the remaining allegations in this paragraph.

216.    In answer to paragraph 216, Arm admits that in 2021, Qualcomm's Nuvia team submitted an interim compliance report to Arm for the Phoenix core.  Arm admits that the Arm Architecture Reference Manual that was publicly available on Arm's website in December 2021 included version ███.  Arm admits that Qualcomm was licensed to version ███ of the Arm architecture, but denies that Qualcomm's ALA licensed the Nuvia team's Server SoC, which was developed under Nuvia's ALA.  Arm denies the remaining allegations in this paragraph.

217.    In answer to paragraph 217, Arm repeats, re-alleges, and incorporates by reference its answers to paragraphs 31-40 as if fully set forth herein.  Arm admits that it sent a letter dated February 1, 2022 to Nuvia's representative (Gerard Williams III, the former CEO of Nuvia) and a Qualcomm representative terminating the Nuvia licenses for material breach, effective March 1.  Arm lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in this paragraph and on that basis denies them.

218.    Arm admits the allegations in the first sentence of paragraph 218.  Arm admits that its February 2022 letter stated that Nuvia "also violated the confidentiality provisions under Section 3.1 of the Agreements and made unlicensed use of Arm's confidential information in violation of Section 3.8 of the Agreements."  Arm denies the remaining allegations in this paragraph.

219.    Paragraph 219 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph, as the Qualcomm ALA expressly excludes a license to ██████████████ such as Nuvia's implementation of Arm architecture—███████████████████████████ ████████████████████████████████ and the

Nuvia ALA required the ██████████████████████ before Nuvia could ███████ ████████████████████████████████████████████ with the Nuvia ALA deeming an assignment to include ████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████

220.    Paragraph 220 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

221.    Paragraph 221 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

222.    Paragraph 222 contains legal conclusions to which no response is required. To the extent a response is required, Arm admits that the Phoenix core and Server SoC embodied and were derived from version ██ of the Arm architecture.  Arm denies the remaining allegations in this paragraph.

223.    Paragraph 223 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

224.    In answer to paragraph 224, Arm admits that termination of the Nuvia agreements was effective March 1, 2022.  Arm lacks sufficient knowledge or information regarding the timing of Qualcomm's unauthorized development work on the Phoenix core for its Server SoC to form a belief about the truth of these allegations and on that basis denies them.  Arm denies the remaining allegations in this paragraph.

225.    Arm admits the allegations in paragraph 225.

226.     In answer to the first sentence of paragraph 226, Arm admits that it made the quoted statement in Arm's February 1, 2022 termination letter, to which Arm refers for a complete statement of its contents, but denies that this statement was wrong; Qualcomm acquired Nuvia even though the Nuvia ALA required Arm's consent prior to any assignment of the Nuvia ALA, which the ALA defined to include any other company's acquisition of Nuvia, and Arm did not consent to the assignment.  Arm admits the allegations in the second sentence of this paragraph.

227.     In answer to paragraph 227, Arm admits that its February 1, 2022 letter stated "termination" would be "effective as of March 1, 2022," and reminded Nuvia of its obligation to destroy or return Arm Confidential Information within one month of termination.  Arm denies the remaining allegations in this paragraph.

228.     Paragraph 228 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

229.     Paragraph 229 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

230.     Arm denies the allegations in paragraph 230.

231.     Arm lacks sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 231 and on that basis denies them.

232.     Arm lacks sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 232 and on that basis denies them.

233.     In answer to paragraph 233, Arm admits that on April 1, 2022, Nuvia provided Arm a certification purporting to certify that "Nuvia is in compliance with its obligations under Section 15.1" of the Nuvia ALA, even though Nuvia now admits that it

did not comply with its obligation to stop using and destroy the relevant Nuvia technology. Arm denies that it never certified its own compliance with the termination provisions; instead, Arm certified its own compliance with the Nuvia ALA and TLA's termination provisions on April 1, 2022, with the certification sent to Nuvia in the manner specified by the Nuvia agreements.  Arm denies the remaining allegations in this paragraph.

234.    Arm admits the allegations in the second sentence of paragraph 234.  Arm denies the remaining allegations in this paragraph.

235.    Paragraph 235 contains legal conclusions to which no response is required. To the extent a response is required, Arm admits that the Nuvia ALA requires upon termination that ███████████████████████████████████████████████ ███████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████████ ███████████████████████████████████████████████ ██████████████████████████████████████ ████████████████████████████████████ ███████████████████████████████████████████ █████████████████████████ Arm denies that Qualcomm can tortiously interfere with the Nuvia ALA (by assigning the Nuvia ALA to Qualcomm via the acquisition without the requisite consent from Arm), obtain the benefits of the Nuvia ALA and the technology Nuvia developed under that ALA, and then circumvent the requirements of the Nuvia ALA's termination provision by purporting to limit those obligations to Nuvia alone, ignoring that the discontinuance and destruction obligations expressly extend not only to

Arm Confidential Information, but also to products embodying Arm technology and derivatives of Arm technology under Nuvia's ALA.  Arm admits that Qualcomm's ALA grants licenses to use Arm Confidential Information and Arm Technology delivered to Qualcomm, subject to the terms of Qualcomm's ALA as those terms are defined in the Qualcomm ALA, but expressly excludes a license to any other Arm technology, and limits design and manufacture rights to Arm Technology developed by Qualcomm under the Qualcomm ALA, and subject to the license terms of the Qualcomm ALA.  Arm denies the remaining allegations in this paragraph.

236.    Arm admits the allegations in the first sentence of paragraph 236.  The second sentence of this paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Arm denies the remaining allegations in this paragraph.

237.    In answer to paragraph 237, Arm admits that it sent Qualcomm a letter dated August 2, 2022, noting that "[i]n March, Qualcomm and NuVia accepted the termination," and then stating: "after termination, Qualcomm is not authorized to make, use, sell, or import a product incorporating designs or derivatives of the NuVia technology."  Arm denies that its reference to "the NuVia technology" meant Qualcomm could not use "*any*" Nuvia technology; Arm lacks sufficient knowledge or information to form a belief about whether Nuvia has intellectual property, proprietary designs, or confidential information that is not based on, derivative of, or embodying Arm technology delivered by Arm under the Nuvia ALA, and on that basis denies this allegation.  In answer to the fifth and sixth sentences of this paragraph, Arm admits that it made the quoted statement in Arm's August 2, 2022 letter, to which Arm refers for a complete statement of its contents.  Arm denies the remaining allegations in this paragraph.

238.     Paragraph 238 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies that ownership of the CPU or SoC designs of licensees is required for Arm to demand compliance with its licenses' termination provisions.  Arm denies the allegations in this paragraph.

239.     Paragraph 239 contains legal conclusions to which no response is required. To the extent a response is required, Arm:

a. denies sub-paragraph (a) because Section 16.3 of the Nuvia ALA required ██

██████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████ and because Section 2.6 of

the Qualcomm ALA expressly excludes from Qualcomm's license ████████

██████████████████████████████████████████

███████████████████████████;

b. denies sub-paragraph (b) because Section 16.3 of the Nuvia ALA, as noted above,

required █████████████████████████████████████

█████████████████████████████████

██████████████████████████████████████

███████████████████████████████

██████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ and

because Section 2.6 of the Qualcomm ALA expressly excludes from Qualcomm's

license █████████████████████████████████████████

██████████████████████████████████████████████ ;

c. denies sub-paragraph (c) because Section 15.1 of the Nuvia ALA required ███

████████████████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████ and because Section 2.6 of the Qualcomm ALA expressly

excludes from Qualcomm's license ████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████ ;

d. denies sub-paragraph (d) because Section 15.1 of the Nuvia ALA required ███

███████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████ ;

e. denies sub-paragraph (e) because Section 16.3 of the Nuvia ALA required ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮

f. denies sub-paragraph (f) because Section 2.8 of the Nuvia ALA states ▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ ;

g. denies sub-paragraph (g) because Section 15.1 of the Nuvia ALA required ▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ and because Section 2.6 of the Qualcomm ALA expressly

excludes from Qualcomm's license ███████████████████████

████████████████████████████████████████████████████████

███████████████████████

240.     Arm denies the allegations in paragraph 240.

241.     In answer to paragraph 241, Arm admits that it issued a Compliance Waiver dated April 12, 2022 stating: "This compliance waiver forms the acceptance from Arm that Qualcomm Global Trading Pte Ltd has validated their CPU Core in accordance with the Verification requirements set out in the Architecture agreement."  Arm denies any suggestion that this document waived Arm's rights, prejudiced Qualcomm, or otherwise constituted an acknowledgment of or conferred on Qualcomm any rights to technology developed under the Nuvia ALA, since Qualcomm agreed in March 2021 to Arm's condition that "such interaction and/or assistance does not expressly or impliedly waive any of Arm's rights with respect to the novation," and the Compliance Waiver was issued under the implementer ID corresponding with Nuvia's ALA rather than Qualcomm's ALA.  Arm denies the remaining allegations in this paragraph.

242.     Arm denies the allegations in paragraph 242.

243.     Arm denies the allegations in paragraph 243.

244.     Arm denies the allegations in paragraph 244.

245.     Arm denies the allegations in paragraph 245.

246.     Arm denies the allegations in paragraph 246.

247.     Arm denies the allegations in paragraph 247.

248.     Arm denies the allegations in paragraph 248.

249.    Paragraph 249 contains legal conclusions to which no response is required. To the extent a response is required, the agreements referenced in this paragraph and the contents thereof speak for themselves.

250.    Paragraph 250 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph because, among other things, Qualcomm is materially breaching its ALA, giving Arm the right to terminate, and the Qualcomm ALA does not provide a license for or right to continue development of the Nuvia technology.

251.    Paragraph 251 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

252.    Arm denies the allegations in paragraph 252.

253.    Arm denies the allegations in paragraph 253.

254.    Arm denies the allegations in paragraph 254.

255.    In answer to paragraph 255, Defendants appear to be quoting a September 13, 2020 NVIDIA press release regarding its planned acquisition of Arm, the contents of which speak for themselves.  Arm admits that NVIDIA's planned acquisition of Arm led to antitrust regulatory challenges and opposition from Qualcomm, which reportedly sought to invest in Arm itself.[4]  Arm admits that on February 7, 2022, Arm and NVIDIA announced that the acquisition would be terminated.  Arm denies the remaining allegations in this paragraph.

---

[4] *See, e.g.*, Anna Gross & Tim Bradshaw, *Qualcomm wants to buy a stake in Arm alongside its rivals*, Financial Times (May 30, 2022), https://www.ft.com/content/eab1d19d-ab4c-45b7-88b4-f1f5e115d16e.

256.    In answer to paragraph 256, Arm admits that it sent a letter to Nuvia dated February 1, 2022, stating "Arm intends to terminate" both the TLA and ALA "for material breach" and requesting immediate discontinuation and destruction of "all Arm Technology, Arm Confidential Information and any products embodying such technology or information."  Arm denies the remaining allegations in this paragraph.

257.    Arm denies the allegations in paragraph 257.

## COUNTERCLAIM
### (Declaratory Judgment)

258.    In answer to paragraph 258, Arm repeats, re-alleges, and incorporates by reference its answers to paragraphs 1-47 and 175-257 as if fully set forth herein.

259.    In answer to paragraph 259, Arm:

a. denies sub-paragraph (a) because Defendants breached the Nuvia licenses by assigning the licenses to Qualcomm without Arm's consent and failing to comply with the termination provisions requiring discontinuance and destruction of the relevant Nuvia technology, as explained in the Complaint and in paragraphs 219 and 235 above, which Arm expressly incorporates herein;

b. denies sub-paragraph (b) because after Qualcomm's acquisition of Nuvia, Qualcomm's architected cores (including all further developments, iterations, or instantiations of the relevant technology that Qualcomm acquired from Nuvia), Server SoC, and Compute SoC are not fully licensed under Qualcomm's ALA or TLA; instead, they must be discontinued and destroyed (as explained in the Complaint and above, including Arm's answers to paragraphs 5 and 235, which Arm expressly incorporates herein), and are not licensed under Qualcomm's ALA or TLA, with those licenses instead expressly excluding any license to other Arm-based

technology, such as Nuvia's implementation of Arm architecture (as explained above, including in Arm's answer to paragraph 3, which Arm expressly incorporates herein);

c. denies sub-paragraph (c), including because Qualcomm is breaching its ALA by improperly seeking to use the Qualcomm ALA to continue development of the relevant Nuvia technology, entitling Arm to terminate that ALA based on Qualcomm's material breaches (as explained below in Arm's First Defense, which Arm expressly incorporates herein);

d. denies sub-paragraph (d), including because Arm is entitled to terminate Qualcomm's ALA based on Qualcomm's material breaches of the verification, delivery, and support and maintenance provisions, as well as the covenant of good faith and fair dealing (as explained below in Arm's First Defense, which Arm expressly incorporates herein); and

e. denies sub-paragraph (e) because Qualcomm has no right to develop, let alone ship, products based on unlicensed Nuvia technology and is breaching its ALA by seeking to do so (as explained below in Arm's First Defense, which Arm expressly incorporates herein).

260.    In answer to paragraph 260, Arm denies that Qualcomm can continue to develop and sell chips free from challenge that its actions are in violation of the Qualcomm ALA, the Qualcomm TLA, the Nuvia ALA, or the Nuvia TLA, including because the relevant Nuvia technology is subject to destruction under the termination provisions of Nuvia's ALA (as explained in the Complaint and above, including Arm's answers to paragraphs 5 and 235, which Arm expressly incorporates herein), Qualcomm products

incorporating the same are not licensed under Qualcomm's ALA or TLA (as explained above, including in Arm's answer to paragraph 3, which Arm expressly incorporates herein), and Qualcomm is violating its ALA by seeking to continue its improper development of the unlicensed Nuvia technology via the Qualcomm ALA's provisions and procedures, even though the Qualcomm ALA does not apply to the Nuvia technology, which is based on Arm technology delivered under the now-terminated Nuvia ALA (as explained below in Arm's First Defense, which Arm expressly incorporates herein).

261.    In answer to paragraph 261, Arm denies the allegations in this paragraph, including because Arm is not preventing Qualcomm from exercising its rights under its license agreements with Arm; instead, Arm has no obligations under the Qualcomm ALA to provide verification, delivery, or support and maintenance for Qualcomm's improper attempts to continue development of unlicensed Nuvia technology developed under the now-terminated Nuvia ALA (as explained below in Arm's First Defense, which Arm expressly incorporates herein).

262.    Defendants' Prayer for Relief contains legal conclusions to which no response is required.  To the extent that a response is required, Arm denies that Defendants are entitled to any of the relief they seek in their prayer for relief, including because Defendants may not use a claim for declaratory judgment to obtain an order "enjoining" Arm or "requiring" Arm to do anything, let alone obtain an injunction imposing an impermissible prior restraint on hypothetical speech.

## AFFIRMATIVE DEFENSES

Without admitting or acknowledging that it bears the burden of proof as to any of them, Arm asserts the following affirmative and other defenses and reserves the right to amend its Answer as additional information becomes available.

## FIRST DEFENSE
### (Failure to State a Claim)

Defendants' Counterclaim fails to state a claim upon which relief can be granted.

Qualcomm's allegations that the relevant Nuvia technology is licensed under Qualcomm's ALA fail because the license granted under the Qualcomm ALA in Section 2.0, as clarified by Section 2.6, is limited to expressly defined ██████████ delivered by Arm to Qualcomm under the Qualcomm ALA, and expressly excludes a license to any other Arm technology, like the Nuvia technology based on Arm technology delivered by Arm to Nuvia under the now-terminated Nuvia ALA.

Qualcomm's allegations that it is exercising its rights with respect to the relevant Nuvia technology under Qualcomm's license agreements with Arm and is not in violation of those agreements fail because Arm has no such obligations with respect to the Nuvia technology, and Qualcomm is breaching the Qualcomm ALA by insisting otherwise.  Under the Qualcomm ALA, Arm has no obligation to provide, and Qualcomm has no right to seek, verification, delivery, or support and maintenance in connection with technology developed under the now-terminated Nuvia ALA.  The "verification" provisions of Section 4 of the Qualcomm ALA are limited to products manufactured ██████████████ in the ALA.  The delivery (Section 5) and support and maintenance (Section 7) obligations of the Qualcomm ALA are similarly limited to the defined ██████████ and therefore likewise do not extend to the relevant Nuvia technology, which embodies and was derived

from Arm technology delivered by Arm to Nuvia under Nuvia's now-terminated ALA. Qualcomm's unreasonable, bad-faith demands that Arm comply with purported obligations for verification, delivery, and support and maintenance with respect to technology delivered and developed outside the scope of the Qualcomm ALA are contrary to the parties' expectations and undermines the benefit to Arm from the Qualcomm ALA, thereby materially breaching that agreement's terms and implied covenant of good faith and fair dealing and entitling Arm to terminate the Qualcomm ALA under Section 14.2.

## SECOND DEFENSE
### (Waiver/Estoppel/Acquiescence)

Defendants' Counterclaim and affirmative defenses are barred, in whole or in part, by the doctrines of waiver, estoppel, and/or acquiescence. Defendants have not previously contested Arm's termination of the Nuvia agreements. Nor have Defendants previously objected to Arm's own compliance with and certification under Section 15.1 of the Nuvia ALA. Further, Defendants represented that both Nuvia and Qualcomm were in compliance with Section 15.1.

## THIRD DEFENSE
### (Unclean Hands)

Defendants' Counterclaim and affirmative defenses are barred, in whole or in part, by the equitable doctrine of unclean hands. Qualcomm tortiously induced Nuvia to breach the Nuvia ALA by acquiring Nuvia's license rights to its implementation of Arm technology without Arm's consent in violation of the Nuvia ALA's assignment provision, thereby materially breaching the Nuvia ALA. Qualcomm continues to attempt to benefit from its improper acquisition of Nuvia's license rights to its implementation of Arm technology by wrongly insisting that the unlicensed Nuvia technology is licensed under the Qualcomm

ALA and by seeking to enforce obligations for verification, delivery, and support and maintenance that apply only to technology based on defined ██████████████ delivered by Arm to Qualcomm under the Qualcomm ALA, subject to its license terms, unlike the Nuvia technology based on Arm technology delivered by Arm to Nuvia under the now-terminated Nuvia ALA, subject to its license terms.  Qualcomm has acted in bad faith by seeking to reap the benefits from the Nuvia ALA, transferring technology developed under the Nuvia ALA to Qualcomm and combining Nuvia and Qualcomm workstreams, while avoiding the Nuvia ALA's obligations.

## JURY DEMAND

Pursuant to D. Del. LR 38.1 and Fed. R. Civ. P. 38, Arm hereby demands a TRIAL BY JURY of all claims and issues presented in Defendants' Counterclaim that are so triable.

Dated: November 15, 2022

OF COUNSEL:

Michael A. Jacobs
Joyce Liou
Diek Van Nort
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
mjacobs@mofo.com
jliou@mofo.com
dvannort@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*Anne Shea Gaza*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Plaintiff Arm Ltd.*

44

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on November 15, 2022, a copy of the foregoing

document was served on the persons listed below in the manner indicated:

**<u>BY EMAIL</u>**

Jack B. Blumenfeld
Jennifer Ying
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
kdunn@paulweiss.com
wisaacson@paulweiss.com
mzappala@paulweiss.com
ejmorgan@paulweiss.com


YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Plaintiff Arm Ltd.*