IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARM LTD., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 22-1146 (MN) (LDH) |
| | ) | |
| v. | ) | **REDACTED - PUBLIC VERSION** |
| | ) | |
| QUALCOMM INC., QUALCOMM | ) | |
| TECHNOLOGIES, INC. and NUVIA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' LETTER TO THE HONORABLE LAURA D. HATCHER
REGARDING SEPTEMBER 29TH DISCOVERY DISPUTE TELECONFERENCE**

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
(202) 223-7300

Catherine Nyarady
Erin J. Morgan
Anna R. Gressel
PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

*Attorneys for Defendants*

**Original Filing Date: September 21, 2023**
**Redacted Filing Date: September 28, 2023**

Dear Judge Hatcher:

Defendants (collectively, "Qualcomm") seek to obtain relevant, proportional discovery concerning: (i) ARM's Architecture License Agreements and annexes thereto (collectively, "ALAs") with third parties; (ii) documents from Masayoshi Son; (iii) documents concerning ARM's initial public offering ("IPO"); and (iv) documents from ARM custodian Antonio Viana.

**ARM's ALAs.** ARM's case centers around its breach of contract claim concerning Nuvia's ALA. To test ARM's breach claims, back in December 2022, Qualcomm requested all ALAs ARM has entered into with any party, as these contracts are relevant to how the Nuvia ALA should be interpreted. (Ex. 1 at 12 (RFP No. 27).) After months of negotiation, in July, ARM agreed that it would search for and produce all ALAs and confirmed that its search was "not limited in time." (Ex. 2 at 4.) Qualcomm therefore expected ARM would produce all ALAs by the August 18 substantial completion deadline (D.I. 26, ¶ 7(b)) given that any third-party objection period would have passed by that date. (*See* D.I. 38, § 49.) But ARM failed to begin producing any such ALAs until September, and much to Qualcomm's surprise, for the ones it has produced, they are heavily redacted. (*See, e.g.*, Exs. 3, 4.)

Indeed, on September 12, ARM officially reversed course and revealed that it now intended to (i) unilaterally redact "non-responsive" information in third-party ALAs it produces; and (ii) only produce ALAs for "active ALA licensees."[1] (*See* Ex. 5 at 9.) ARM inexplicably claimed it never "agree[d] to produce all ALAs" or "unredacted versions of relevant ALAs." (*See* Ex. 5 at 2.) ARM is wrong. (Ex. 2 at 4.)

ARM should not be permitted to redact any third-party ALAs, particularly where the ESI Order prohibits redacting responsive information (D.I. 39, § 2(j)) and where no third party has lodged any objection with the Court. The specific information ARM claims it redacted—including ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓—is relevant and responsive. For example, to the extent ARM seeks a reasonable royalty payment as a form of damages, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ may be a relevant consideration. Moreover, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ may well inform the proper interpretation of the terms at issue here. And, the "Highly Confidential – Attorneys' Eyes Only" designation provides sufficient protection, so no redactions are necessary. (*See* D.I. 38, § 42.) But, even if the information ARM is redacting is in fact non-responsive—which Qualcomm disputes—the ESI Order provides that non-responsive "Confidential information . . . may be redacted from a document *only if the document can be redacted without obscuring otherwise responsive information*." (D.I. 39, § 2(j) (emphasis added).) Here, ARM's redactions are extensive and preclude Qualcomm's ability to adequately review and comprehend the terms of the agreements. (*See, e.g.*, Exs. 3, 4.) As to its non-active licensees, ARM explicitly agreed not to apply a date restriction on its production of ALAs. (*See* Ex. 2 at 4.) ARM should not be permitted to do so.

**Masayoshi Son's Documents.** Mr. Son is the chairman of ARM's Board. Since February 2023, Qualcomm has repeatedly explained to ARM that Mr. Son's documents are highly relevant and must be produced. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[1] ARM has yet to produce the full set of ALAs for its "active ALA licensees." (*See* Ex. 5 at 2.)

[REDACTED]

ARM initially refused to make Mr. Son a custodian, but after months of negotiations, ARM agreed on the parties' June 27 meet and confer to ask Mr. Son to provide ARM his documents in his role as ARM's Chairman, which counsel for ARM would then review and produce all documents responsive to Qualcomm's RFPs. (*See* Ex. 5 at 27-28.) Despite that agreement nearly three months ago, and after countless assurances by ARM in the interim—seemingly designed to forestall Court intervention—now, more than a month past the substantial completion deadline, ARM has produced only *27 documents*[2] from Mr. Son's files.

Upon being confronted with what appeared to be clear deficiencies in Mr. Son's collection of documents, ARM initially refused to respond to repeated requests for basic facts about the scope of Mr. Son's collection (*e.g.*, number of documents provided to ARM, nature of documents, and process employed to collect those documents). (*See, e.g.*, Ex. 5 at 15.) ARM only revealed on September 12 that the entire collection from Mr. Son consisted of approximately [REDACTED] (*see id.* at 9)—which confirmed Qualcomm's concern that the collection, which Mr. Son appears to have hand-picked himself, was readily deficient. ARM then agreed to "compromise" and review all of the approximately [REDACTED] Mr. Son collected (*see id.*), but appears to have since withdrawn its agreement to review even that small collection of documents in response to Qualcomm's insistence to raise these significant issues with Mr. Son's collection with the Court (*see id.* at 1). Mr. Son's collection is deficient for at least two reasons:

*First*, as ARM's Chairman, there is no basis for ARM to allow Mr. Son to "self-collect" his documents. While ARM represented back in June that it would not ask Mr. Son to "self-select documents he determines are (i) responsive, (ii) not duplicative of documents that ARM already would have in its possession from other custodians, or (iii) created and maintained in his role as ARM's chair," (*see* Ex. 5 at 28), ARM revealed on September 15 that [REDACTED] *see id.* at 2). Mr. Son's self-selection of documents not only violated the parties' agreement, but the nature of the collection makes clear that responsive documents are being withheld. For example, although Qualcomm served RFPs specifically requesting Mr. Son's relevant non-privileged communications with third parties (*see, e.g.*, Ex. 8 at 6 (RFP No. 43)), Mr. Son improperly limited the scope of his collection [REDACTED] Counsel for ARM was apparently aware of this material limitation on the collection, but did not affirmatively disclose that fact to Qualcomm until pressed.

*Second*, ARM's own production confirms the deficiencies of its production of Mr. Son's documents, as ARM has produced documents that Mr. Son is on that are relevant to this litigation but were not produced from Mr. Son's custodial files. (*See, e.g.*, Ex. 9.) ARM should be ordered to collect all of Mr. Son's custodial files as it would a typical custodian and promptly meet and

---

[2] ARM only recently produced these 27 documents on September 11. Moreover, 9 of the 27 documents are junk files or documents withheld as privileged.

confer with Qualcomm in good faith to agree on a set of proposed search terms that ARM will run to identify all responsive, non-privileged documents in Mr. Son's custodial files that ARM will produce. Moreover, ARM should also be ordered to make Mr. Son available for a deposition, an issue that the parties are continuing to discuss but that Qualcomm anticipates will be ripe for resolution by the September 29 conference.

**Documents Concerning ARM's IPO.** ARM's IPO is highly relevant, including to ARM's inability to establish irreparable harm in connection with the permanent injunction it seeks. (*See, e.g.*, D.I. 1, ¶ 67.) For example, to refute any claim by ARM that this litigation has allegedly caused ARM to lose goodwill with its customers, Qualcomm is entitled to discovery concerning ARM's communications with its customers (many of whom are now significant IPO investors) that discuss or refer to this litigation or any of the issues in this litigation. (*See* Ex. 10 (RFP No. 54).) Any irreparable harm arguments, including, for example, economic harm, reputational harm, and harm to customer relationships, are all topics that ARM likely discussed with its investors and banks in the preparation and filing of its IPO, which occurred just last week.

There are two disputes concerning production of ARM's IPO documents. *First*, ARM refuses to run two additional search terms or to continue to negotiate these terms, which are designed to specifically target relevant issues relating to ARM's IPO (*see* Ex. 11 at 3-4). *Second*, ARM refuses to conduct targeted collections for responsive documents from the files of any ARM employee or representative that communicated on ARM's behalf—including, for example, ARM's counsel, Morrison & Foerster—who are not custodians but nonetheless had meaningful involvement in ARM's IPO, including in communications with third parties (*see id.* at 6). Despite acknowledging that dozens of ARM employees and representatives who are not custodians were involved in ARM's IPO, ARM has refused to identify those individuals who may have specific knowledge concerning ARM's IPO as it relates to this litigation, instead categorically refusing to conduct or even discuss any targeted collection of documents from these individuals. ARM should be compelled to (i) search for and produce responsive documents identified by Qualcomm's two additional proposed search terms, and (ii) identify ARM employees or representatives that have relevant knowledge concerning ARM's IPO as it relates to this litigation, and conduct targeted searches of their documents.

**Antonio Viana's Documents.** Until this morning, ARM had produced *zero documents* for ARM custodian Antonio Viana—a [redacted] — and had refused to provide a sufficient explanation for why. Instead, despite agreeing to add Mr. Viana (who left in 2015) as a custodian back in March, ARM waited until mere weeks prior to the substantial completion deadline to disclose that [redacted] (*See* Ex. 2 at 3.) ARM thereafter refused to provide additional information concerning this [redacted] (*Id.* at 1.) Only after repeated requests with respect to Mr. Viana specifically did ARM disclose that it collected approximately 12,000 documents from Mr. Viana's files, but only 24 documents hit on search terms and none were responsive. (Ex. 5 at 10.) Qualcomm sought an explanation from ARM concerning why none of Mr. Viana's documents were responsive, but ARM failed to provide an adequate response. (*See, e.g.*, Ex. 5 at 6.) However, ARM has now produced documents from Mr. Viana that Qualcomm has not yet had the opportunity to review (Ex. 12). Qualcomm reserves its right to ask that ARM be ordered to produce further responsive documents from Mr. Viana's custodial files based on its review of ARM's production.

        Respectfully,

        */s/ Jennifer Ying*

        Jennifer Ying (#5550)

JY
Attachments

cc:    All Counsel of Record (via e-mail, with attachments)

4