# EXHIBIT 7

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

LLOYD K. GARRISON  (1946-1991)
RANDOLPH E. PAUL    (1946-1956)
SIMON H. RIFKIND    (1950-1995)
LOUIS S. WEISS      (1927-1950)
JOHN F. WHARTON     (1927-1977)

WRITER'S DIRECT DIAL NUMBER
(202) 223-7458

WRITER'S DIRECT FACSIMILE
(202) 379-4112

WRITER'S DIRECT E-MAIL ADDRESS
mzappala@paulweiss.com

1285 AVENUE OF THE AMERICAS
NEW YORK, NY 10019-6064
TELEPHONE (212) 373-3000

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

SUITES 3601 – 3606 & 3610
36/F, GLOUCESTER TOWER
THE LANDMARK
15 QUEEN'S ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

535 MISSION STREET, 24TH FLOOR
SAN FRANCISCO, CA 94105
TELEPHONE (628) 432-5100

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

PARTNERS RESIDENT IN WASHINGTON
JUSTIN ANDERSON
JOSEPH J. BIAL
PAUL D. BRACHMAN
JOHN P. CARLIN
REBECCA S. COCCARO
TIHITINA DAGNEW
KAREN L. DUNN
KENNETH A. GALLO
ROBERTO J. GONZALEZ
WILLIAM A. ISAACSON
MARK F. MENDELSOHN
JANE B. O'BRIEN
JESSICA E. PHILLIPS
JEANNIE S. RHEE
KANNON K. SHANMUGAM
KYLE SMITH
JOSHUA H. SOVEN

PARTNERS NOT RESIDENT IN WASHINGTON
MATTHEW W. ABBOTT*
EDWARD T. ACKERMAN*
JACOB A. ADLERSTEIN*
ALLAN J. ARFFA*
JONATHAN H. ASHTOR*
ROBERT A. ATKINS*
SCOTT A. BARSHAY*
PAUL M. BASTA*
LYNN B. BAYARD*
BRUCE BIRENBOIM*
H. CHRISTOPHER BOEHNING*
BRIAN BOLIN*
ANGELO BONVINO*
ANDRE G. BOUCHARD*
GERALD BRANT*
ROBERT A. BRITTON*
WALTER F. BROWN*
SUSANNA M. BUERGEL*
JESSICA S. CAREY*
DAVID CARMONA*
GEOFFREY R. CHEPIGA*
ELLEN N. CHING*
WILLIAM A. CLAREMAN*
LEWIS R. CLAYTON*
YAHONNES CLEARY*
JAY COHEN*
KELLEY A. CORNISH*
CHRISTOPHER J. CUMMINGS*
THOMAS V. DE LA BASTIDE III*
MEREDITH R. DEARBORN*
ALICE BELISLE EATON*
ANDREW J. EHRLICH*
GREGORY A. EZRING*
ROSS A. FIELDSTON*
ANDREW C. FINCH*
BRAD J. FINKELSTEIN*
BRIAN P. FINNEGAN*
ROBERTO FINZI*
PETER E. FISCH*
HARRIS FISCHMAN*
KATHERINE B. FORREST*
VICTORIA S. FORRESTER*
HARRIS B. FREIDUS*
MANUEL S. FREY*
MICHAEL E. GERTZMAN*
ADAM M. GIVERTZ*
SALVATORE GOGLIORMELLA*
NEIL GOLDMAN*
MATTHEW B. GOLDSTEIN*
CHARLES H. GOOGE, JR.*
ANDREW G. GORDON*
BRIAN S. GRIEVE*
UDI GROFMAN*
MELINDA HAAG*
ALAN S. HALPERIN*
CLAUDIA HAMMERMAN*
IAN M. HAZLETT*
BRIAN S. HERMANN*
JOSHUA HILL JR.*
MICHELE HIRSHMAN*
JARRETT R. HOFFMAN*
ROBERT HOLO*
CHRISTOPHER HOPKINS*
DAVID S. HUNTINGTON*
AMRAN HUSSEIN*
LORETTA A. IPPOLITO*
JAREN JANGHORBANI*
BRIAN M. JANSON*
LUKE JENNINGS*
JEH C. JOHNSON*
MATTHEW B. JORDAN*
CHRISTODOULOS KAOUTZANIS*
BRAD S. KARP*
PATRICK N. KARSNITZ*
JOHN C. KENNEDY*
ROBERT A. KILLIP*
BRIAN KIM*
KYLE J. KIMPLER*
JEFFREY L. KOCHIAN*
ALEXIA D. KORBERG*
DANIEL J. KRAMER*
ANDREW D. KRAUSE*
BRIAN KRAUSE*
CAITH KUSHNER*
KAISA KUUSK*
DAVID K. LAKHDHIR*
GREGORY F. LAUFER*
BRIAN C. LAVIN*
XIAOYU GREG LIU*
RANDY LUSKEY*
LORETTA E. LYNCH*
JEFFREY D. MARELL*
MARCO V. MASOTTI*
DAVID W. MAYO*
ELIZABETH R. MCCOLM*
JEAN M. MCLOUGHLIN*
ALVARO MEMBRILLERA*
CLAUDINE MEREDITH-GOUJON*
WILLIAM B. MICHAEL*
SEAN A. MITCHELL*
ERIN J. MORGAN*
JUDIE NG SHORTELL*
CATHERINE NYARADY*
BRAD R. OKUN*
SUNG PAK*
CRYSTAL L. PARKER*
LINDSAY B. PARKS*
ANDREW M. PARLEN*
DANIELLE C. PENHALL*
CHARLES J. PESANT*
ANASTASIA V. PETERSON*
AUSTIN S. POLLET*
VALERIE E. RADWANER*
JEFFREY J. RECHER*
LORIN L. REISNER*
ANDREW N. ROSENBERG*
JUSTIN ROSENBERG*
JACQUELINE P. RUBIN*
RAPHAEL M. RUSSO*
ELIZABETH M. SACKSTEDER*
JEFFREY B. SAMUELS*
PAUL L. SANDLER*
AARON J. SCHLAPHOFF*
KENNETH M. SCHNEIDER*
ROBERT B. SCHUMER*
JOHN M. SCOTT*
BRIAN SCRIVANI*
KYLE T. SEIFRIED*
SUHAN SHIM*
CULLEN L. SINCLAIR*
MAURY SLEVIN*
AUDRA J. SOLOWAY*
SCOTT M. SONTAG*
MEGAN SPELMAN*
ROBERT Y. SPERLING*
EYITAYO ST. MATTHEW-DANIEL*
SARAH STASNY*
AIDAN SYNNOTT*
ROBERT D. TANANBAUM*
BRETTE TANNENBAUM*
RICHARD C. TARLOWE*
DAVID TARR*
MONICA K. THURMOND*
DANIEL J. TOAL*
LAURA C. TURANO*
CONRAD VAN LOGGERENBERG*
KRISHNA VEERARAGHAVAN*
JEREMY M. VEIT*
LIZA M. VELAZQUEZ*
MICHAEL VOGEL*
RAMY J. WAHBEH*
JOHN WEBER*
LAWRENCE G. WEE*
THEODORE V. WELLS, JR.*
SAMUEL J. WELT*
LINDSEY L. WIERSMA*
STEVEN J. WILLIAMS*
LAWRENCE I. WITDORCHIC*
MARK B. WLAZLO*
ADAM WOLLSTEIN*
STACI YABLON*
BOSCO YIU*
KAYE N. YOSHINO*
TONG YU*
TRACEY A. ZACCONE*
TAURIE M. ZEITZER*
KENNETH S. ZIMAN*
T. ROBERT ZOCHOWSKI, JR.*

*NOT ADMITTED TO THE DC BAR

May 1, 2023

**By Email**

Scott F. Llewellyn
Morrison & Foerster LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202

    Re: *Arm Ltd.* v. *Qualcomm Inc. et al.*
      C.A. No. 22-1146-MN
      **<u>Highly Confidential / Attorneys Eyes Only</u>**

Counsel:

  We write on behalf of Qualcomm Inc., Qualcomm Technologies, Inc., and Nuvia, Inc. ("Qualcomm" or "Defendants") in response to your April 26, 2023 letter in which ARM (1) refuses to identify Masayoshi Son as a custodian, despite the central role he plays in facts important to this litigation; and (2) continues to obfuscate the scope of what ARM is agreeing to produce in response to Qualcomm's document requests, despite Qualcomm's repeated attempts to ascertain that scope.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Scott F. Llewellyn 2

### A. <u>ARM Must Include Mr. Son as a Custodian</u>

1. **Mr. Son Has Unique Knowledge**

ARM asserts that Mr. Son cannot be a custodian because "Qualcomm has not identified any basis to assume that Mr. Son, as Arm's chair, possesses non-duplicative, relevant documents beyond the materials that will be collected from Arm's other custodians, including its former and present CEOs and other senior personnel." To the contrary, Mr. Son has unique knowledge regarding key facts related to this litigation.

Mr. Son is the Chair of ARM's board and conducts business on behalf of ARM. As such, Mr. Son is integral to the facts alleged in ARM's complaint. Mr. Son has made his involvement with ARM's business strategy clear. As we have noted previously, he has stated that he is "in love with ARM," that he wants to "concentrate on" ARM, and that he wants to "devote [him]self" to ARM's "explosive growth."[1] Mr. Son's public commitment to growing ARM suggests that he is a key decision maker in ARM's business strategy—including in ARM's decision to bring this very action against Qualcomm. And Mr. Son is ultimately responsible for—and likely intimately involved in—ARM's recent decision to design its own semiconductor chip that would compete directly with Qualcomm's products.[2]

Furthermore, Mr. Son has unique knowledge 

---

[1] Laura Dobberstein, *Softbank boss Masayoshi Son devotes himself to growing Arm for the next few years*, the Register, November 14, 2022, *available at* https://www.theregister.com/2022/11/14/softbank_boss_devotes_himself_to/ ; Oscar Hornstein, *Masyoshi Son to devote himself to 'explosive growth' of Arm*, UKTN, Nov 14, 2022, *available at* https://www.uktech.news/deep-tech/masayoshi-son-to-focus-on-arm-20221114.

[2] Cheng Ting-Fang *et al.*, *Chip designer Arm makes its own advanced prototype semiconductor*, Financial Times, April 23, 2023, *available at* https://www.ft.com/content/72897dde-2d84-48b1-8bd7-390e66049d40,

[REDACTED]

Given Mr. Son's direct involvement in ARM's business strategy and the issues involved in this litigation, he can and should be identified as a custodian, and Qualcomm is entitled to his documents. [REDACTED]

**2. The case law supports identifying Mr. Son as a Custodian**

ARM argues the case law supports its refusal to identify Mr. Son as a custodian because: (i) Mr. Son is an "apex" custodian, and "numerous legal authorities deny[] discovery from executive or 'apex' custodians, where, as here, the discovery would be duplicative or cumulative"; and (ii) ARM does not "have direct control over Mr. Son for purposes of identifying custodians." These arguments misstate the facts and law.

    **i.    The "apex doctrine" does not suggest that Mr. Son cannot be a custodian**

ARM argues that the apex doctrine allows courts to deny discovery from executive or 'apex' custodians where "the discovery would be duplicative or cumulative." However, as we've discussed above, Mr. Son would not be a duplicative or cumulative custodian given that Mr. Son has personal knowledge and was directly involved in discussions with third parties. There is no reason to believe all these discussions would be captured by production of other custodians' documents. *Pacific Biosciences* v. *Oxford Nanopore*, C.A. No. 17-275, ECF 297 (D. Del. Aug. 15, 2019) ("The Court is not persuaded that application of the 'apex' doctrine is appropriate given that [the CEO and another witness] appear to have personal knowledge of relevant factual issues and their testimony is not cumulative with that of other witnesses.").

The cases ARM cites provide no support for its position. In *Reif* v. *CNA*, 248 F.R.D. 448, 454-55 (E.D. Pa. 2008), the plaintiffs alleged that they were fired due to their age, and sought to depose the CEO of their former employer on the ground that years earlier, he made an allegedly ageist comment. The court denied the motion because the CEO had no unique, personal involvement in the employees' termination, as the numerous other depositions did not reveal any connection between the CEO's statement and the employees' termination. *Id.* at 454. Unlike in that case, [REDACTED]

Scott F. Llewellyn 4

Further, ARM misstates the decision in *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, No. 3:18-MD-02843-VC-JSC, 2021 WL 10282213, at *14 (N.D. Cal. Nov. 14, 2021) for the proposition that it "den[ied] a motion to designate additional custodians, finding that 'deference to the responding party's document search strategy is especially important where the requesting party attempts to force apex personnel to participate in document discovery.'" Inexplicably, ARM pulls this quote from the defendant's brief, not the opinion itself. The special master actually reached the opposite conclusion and *compelled* the designation of Mark Zuckerberg and Sheryl Sandberg—Facebook's CEO and COO, respectively—as document custodians. *Id.* at *2-3. The special master did so because it was "likely that Zuckerberg and Sandberg possess[ed] information relevant to the Plaintiffs' allegations and differs from discovery already obtained from other custodians." *Id.* at * 2. As discussed above, Mr. Son likewise possesses information that differs from that of other custodians.

The *Lauris* v. *Novartis AG*, No. 1:16-cv-00393-LJO-SAB, 2016 WL 7178602 (E.D. Cal. Dec. 8, 2016) and *Guzman* v. *News Corp.*, No. 09-cv-9323, 2012 WL 2511436, at *2 (S.D.N.Y. June 29, 2012) decisions ARM cites suffer from similar deficiencies. In *Lauris*, the court explicitly declined to rely on the "apex doctrine" in denying the plaintiffs' motion to compel, and instead declined to compel the addition of certain custodians because the information the plaintiffs sought from those custodians "would be expected to be communicated through" the existing custodians. *Lauris*, 2016 WL 7178602 at *3-4. Similarly, in *Guzman*, the court declined to compel the deposition of Rupert Murdoch— the Chairman of the Board of News Corporation and the New York Post—in connection with an employment discrimination lawsuit because he had no "special or unique knowledge" relevant to the claims. *Guzman*, 2012 WL 2511436 at *2. As discussed above, these cases are inapposite here, as Mr. Son, by virtue of his position at ARM and Softbank, has been instrumental in directing ARM's business strategy and ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆.

In any event, the apex doctrine does not apply to requests for document production. *Naylor Farms, Inc.* v. *Anadarko OGC Co.*, No. 11-cv-01528, 2011 WL 2535067, at *1 (D. Colo. June 27, 2011) ("Under what has become known as the apex doctrine the Court may protect a high level corporate executive from the burdens of a deposition."); *Lauris,* 2016 WL 7178602 at *3 ("the Court is not persuaded that the apex doctrine applies to the discovery at issue here [because] Plaintiffs are not seeking to take depositions of high level employees, but are seeking e-discovery on the knowledge the corporation had."); *Rosinbaum* v. *Flowers Foods, Inc.*, 238 F. Supp. 3d 738, 748-50 (E.D.N.C. 2017) (collecting cases and noting that "courts applying the apex doctrine typically have done so to protect executives from the expense *only* of a deposition.") (emphasis added); *Blankenship* v. *Fox News Network, LLC*, No. 2:19-cv-00236, 2021 WL 2345972 at *4 n.5 (S.D.W. Va. June 8, 2021) (rejecting the argument that "senior executives are protected from being designated as custodians unless the party seeking such designation shows they possess unique, personal knowledge or information about the events" because the apex doctrine "typically applies only to protect senior executives from

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Scott F. Llewellyn 5

attending costly and distracting depositions rather than from merely collecting and producing documents.").

### ii. ii. Mr. Son's documents are within ARM's possession, custody and control

Under Rule 34, Qualcomm may request documents that are in the responding party's "possession, custody, or control." The responding party has the requisite control so long as the party has "the legal right or ability to obtain the documents from another source upon demand." *Mercy Catholic Medical Center* v. *Thompson*, 380 F.3d 142, 160 (3d Cir. 2004). Many courts define "control" broadly to include "the practical ability to obtain" documents." *See, e.g.*, *Chevron Corp* v. *Donziger*, 296 F.R.D. 168, 190 (S.D.N.Y. 2013). As Qualcomm explained in its April 19 letter, because Mr. Son is a current board member of ARM—and thus owes fiduciary duties to ARM—ARM has "possession, custody, or control" over Mr. Son's documents. *Arconic Inc.* v. *Novelis Inc.*, No. 17-1434, 2018 WL 4958976 (W.D. Pa. Oct. 15, 2018).

The cases ARM relies on do not suggest otherwise. In *Keyes* v. *Circuit Playhouse*, No. 2:19-cv-02788-MSN, 2021 WL 6752198 at *4-5 (W.D. Tenn. Nov. 4, 2021), for example, the court denied the plaintiff's motion to compel document requests from thirty-one unpaid volunteers who were board members of the defendant-theatre company. The comparison between a volunteer board and Mr. Son's role as Chair of ARM's board and direct involvement in the underlying issues of this litigation is inapt.

ARM next cites *Owen* v. *Elastos Found.*, No. 19-CV-5462, 2023 WL 2537287 (S.D.N.Y. Mar. 16, 2023), which is similarly inapposite. In that case, the court denied a motion to compel the production of documents from the personal gmail account of a board member of the defendant-company, which was a foreign corporation. But in that case, the board member was already a custodian, 30,000 of his documents had already been turned over from other sources, and the court was not convinced that he had used the personal gmail account for company-related business. *Owen*, 2023 WL 2537287 at * 1, 3. Here, in contrast, ARM is refusing to produce *any* documents from Mr. Son.

ARM's citation of *Nakanelusa* v. *United Pub. Workers*, No. 20-00442, 2021 WL 6498865 (D. Haw. Nov. 2, 2021) is similarly inapposite. In that case, the court addressed whether defendant had control over the personal email accounts of certain officers, directors, and employees. But this is beside the point—ARM has not actually stated that it is unable to collect or otherwise obtain documents from Mr. Son. ARM argues only that Mr. Son is "not a corporate employee over whom Arm directly exercises control for litigation purposes" and that ARM does not "have direct control over Mr. Son for purposes of identifying custodians in connection with this litigation." This misses the point. Qualcomm asserts that ARM is able to collect documents from Mr. Son, as he is the Chair of ARM and a member of the board, and ARM has not said otherwise.

### B. Qualcomm Will Identify Mr. Amon as a Custodian

To deflect from Qualcomm's request for Mr. Son as a custodian, ARM suggests that it will seek burdensome and duplicative discovery from Cristiano Amon, Qualcomm's current President and Chief Executive Officer.

According to ARM, Mr. Amon should be identified as a custodian based on Mr. Amon's conversations with ARM's prior CEO, as well his involvement in the decision to acquire Nuvia. ARM additionally points to various public statements that Mr. Amon has made as a basis for identifying him as a custodian. ARM claims that the argument for Mr. Amon as a custodian is somehow stronger than the argument for Mr. Son because Mr. Son was not "directly involved in the parties' discussions regarding this dispute" and, unlike Mr. Amon, "was not copied on [certain] emails or invited to the relevant meetings."

ARM has it backwards. ARM's own argument illustrates that Mr. Amon and Mr. Son occupy very different roles in this dispute. Any communications that Mr. Amon had in the ordinary course of business with ARM were part of larger discussions involving multiple teams from both Qualcomm and ARM, as acknowledged by ARM. By contrast, Mr. Son ████████████████████████████████████████████. This distinction makes clear why it is actually Mr. Amon that is protected by the "apex doctrine," not Mr. Son.

While ARM offers to withdraw its request for Mr. Amon to be a custodian, that offer is orthogonal to Mr. Son and his involvement in this case. Qualcomm will identify Mr. Amon as a custodian and will not drop its request that ARM identify Mr. Son as a custodian.

### C. ARM's Proposal Regarding Custodians is Illogical and Contradicted by ARM's Own Communications

As Qualcomm has previously stated, ARM's desire to limit custodians to an arbitrary number prior to any document production is premature, and its proposed initial limit of 15 custodians is overly restrictive. In its April 4 letter, ARM requested 17 Qualcomm custodians. On April 11, Qualcomm requested 19 ARM custodians (a number ARM disingenuously claims is "unduly burdensome and disproportionate to the needs of the case," although it is well in line with ARM's request). It is not practical to impose a cap that is lower than the number of custodians each party has identified and requested at this early stage.

Qualcomm is willing to agree to an initial total of 25 custodians for each party, so long as the parties agree that there may be a need to add additional custodians upon a showing of good cause. This number is appropriate given the complex nature of this litigation.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Scott F. Llewellyn 7

### D. ARM Still Refuses to Identify the Scope of Documents That it Will Produce

Finally, ARM fails yet again to advance the parties' discussions regarding the scope of the documents that ARM is producing in response to Qualcomm's document requests. For reasons unknown, ARM refuses to put in writing its position as to the extent to which it intends for its objections to cabin the scope of its document productions. In its April 19 letter, Qualcomm articulated its understanding of the scope of ARM's production, as (finally) articulated by ARM's counsel on the parties' April 13 meet and confer—that ARM is not withholding documents on the basis of its stated objections other than privilege, so long as documents are picked up by search terms and custodial limiters during the stated time periods. To ensure that Qualcomm's understanding is accurate, Qualcomm asked ARM to confirm this understanding by April 21. ARM did not do so.

Instead, on April 26 ARM sent an email that "Arm's responses to Qualcomm's RFPs speak for themselves" and that "[t]o the extent Qualcomm's 'understanding' is different from Arm's responses to Qualcomm's RFPs, we disagree." As ARM is aware, ARM's direction back to its responses and objections is unhelpful, as Qualcomm has expressed repeatedly that the responses and objections on their face fail to sufficiently clarify ARM's position. Then on April 26 ARM sent a letter that injected even more confusion. ARM stated that "Arm has repeatedly made clear (via its responses, correspondence, and discussions with Qualcomm) that, for the vast majority of Qualcomm's requests, Arm is willing to produce responsive, non-privileged documents in its possession, custody, or control that it can locate after a reasonable, targeted search." But this does nothing to address the very question on which Qualcomm has *repeatedly* tried to get clarification on –what exactly is the scope of what ARM is considering "responsive"? That is, to what extent are ARM's objections on relevance and overbreadth cabining the extent to which ARM will refuse to produce documents responsive to Qualcomm's document requests, even if they otherwise hit on search terms in the files of agreed-upon custodians?

Once more, Qualcomm seeks to obtain clarification: Other than on the grounds of privilege, ARM will not withhold any documents that hit upon search terms in the files of agreed upon custodians that address the topics requested by Qualcomm's document requests (other than RFP 27). All of ARM's other objections, including overbreadth and relevance objections, will be dealt with through the negotiation of search terms and custodians. Please provide us with written confirmation that this understanding is correct by May 4, 2023. If it is not, please specify exactly how this description is incorrect. We cannot continue to unduly delay discovery due to ARM's refusal to provide a clear position on this critical issue.

Qualcomm is also prepared to meet and confer regarding custodians and search terms as soon as ARM is available, as set forth in the separate correspondence Qualcomm is providing. Suffice to say, in light of the deficiencies in ARM's search terms, the need for clarification regarding ARM's position on its discovery responses is only more crucial.

Scott F. Llewellyn     8

### E. ARM Continues to Distort the Record

In addition to the above issues, ARM continues to distort the record regarding the parties' prior communications. For example, ARM states "Qualcomm has still not provided a concrete explanation of what it will produce, instead only reiterating its initial objections, and providing only general statements of law, leaving Arm with little clarity on Qualcomm's positions." Yet, Qualcomm has repeatedly told ARM that Qualcomm is available to meet and confer regarding its own responses and objections to ARM's First Set of Requests for Production. ARM has yet to schedule such a meet and confer. Qualcomm remains available to meet and confer regarding its own responses and objections to ARM's requests for production. At present, ARM has not requested to meet and confer on this topic, despite Qualcomm's offer to do so.

We hope that this letter has provided the necessary clarification needed to address any outstanding concerns. We remain available to discuss.

\*     \*     \*

Defendants reserve all rights.

Best regards,

*/s/ Melissa Felder Zappala*

Melissa Felder Zappala


cc:     Erik J. Olson
            Anne Shea Gaza
            Samantha G. Wilson