**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ARM LTD., a U.K. corporation, | |
| Plaintiff, | |
| v. | C.A. No. 22-1146-MN |
| QUALCOMM INC., a Delaware corporation, QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, and NUVIA, INC., a Delaware corporation, | **PUBLIC REDACTED VERSION** (Filed July 22, 2024) |
| Defendants. | |

**OPENING BRIEF IN SUPPORT OF ARM'S MOTION FOR PARTIAL SUMMARY
<u>JUDGMENT</u>**

OF COUNSEL:

Daralyn J. Durie
Joyce Liou
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
jliou@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Kyle W.K. Mooney
Kyle D. Friedland
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
(212) 336-4092
kmooney@mofo.com
kfriedland@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

Daniel Muino
MORRISON & FOERSTER LLP
2100 L Street, NW
Suite 900, Washington, D.C. 20037

YOUNG CONAWAY STARGATT &
  TAYLOR, LLP
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Plaintiff Arm Ltd.*

(202) 887-1501
dmuino@mofo.com

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.     NATURE AND STAGE OF PROCEEDINGS .................................................. 2

III.    STATEMENT OF FACTS .................................................................................... 3

IV.     STANDARD ........................................................................................................ 6

V.      ARGUMENT ....................................................................................................... 7

        A.     Arm properly terminated the Nuvia ALA ................................................. 7

        B.     Defendants breached Section ▮▮ of the Nuvia ALA ............................... 11

        C.     Arm did not breach the termination provisions of the Nuvia TLA or ALA. ....... 17

               1.     Arm has a license to use Nuvia feature requests .................................... 17

               2.     Arm did not breach by running a "diff" between the ▮▮▮▮▮▮
                      ▮▮▮▮ configuration files ......................................................... 19

VI.     CONCLUSION .................................................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. City Bank v. Zetlen*,
253 Cal. App. 2d 548 (1967) ...................................................................................................7

*Atel Fin. Corp. v. Quaker Coal Co.*,
321 F.3d 924 (9th Cir. 2003) ...................................................................................................7

*Bailey v. Outdoor Media Grp.*,
155 Cal. App. 4th 778 (2007) ..................................................................................................9

*Bohman v. Berg*,
54 Cal. 2d 787 (1960) ............................................................................................................10

*Brown v. Goldstein*,
34 Cal. App. 5th 418 (2019) ....................................................................................................7

*Cachil Dehe Band of Wintun Indians v. California*,
618 F.3d 1066 (9th Cir. 2010) .................................................................................................7

*DPR Constr. v. Shire Regenerative Med., Inc.*,
204 F. Supp. 3d 1118 (S.D. Cal. 2016) ....................................................................................7

*Flagship W., LLC v. Excel Realty Partners, L.P.*,
758 F. Supp. 2d 1004 (E.D. Cal. 2010) ..................................................................................11

*Horizontal Drilling Int'l v. AT&T Commc'ns*,
No. C-95-0208 SI, 1995 U.S. Dist. LEXIS 19178 (N.D. Cal. Dec. 12, 1995) .......................11

*Lies v. Farrell Lines, Inc.*,
641 F.2d 765 (9th Cir. 1981) ...................................................................................................6

*Logan v. Norwest Bank Minn.*,
603 N.W.2d 659 (Minn. Ct. App. 1999) .................................................................................10

*Sembler Family P'ship # 41, Ltd. v. Brinker Fla., Inc.*,
No. 08-cv-1212, 2008 WL 5341175 (M.D. Fla. Dec. 19, 2008) .............................................10

*Skulnick v. Roberts Express, Inc.*,
2 Cal. App. 4th 884 (1992) .....................................................................................................10

*Smith v. NBC Universal*,
524 F. Supp. 2d 315 (S.D.N.Y. 2007) .....................................................................................20

*Stillwater Mining Co. v. Power Mount Inc.*,
    No. 14–cv–2475–WYD–KMT, 2017 WL 1356089 (D. Colo. Apr. 13, 2017)......................10

*WYDA Assocs. V. Merner*,
    42 Cal. App. 4th 1702 (1996) ......................................................................................7

**Statutes**

Cal. Civ. Code
    § 1638.....................................................................................................................7
    § 1639.....................................................................................................................7

**Other Authorities**

Fed. R. Civ. P. 56........................................................................................................6

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

Qualcomm Inc., Qualcomm Technologies, Inc., and Nuvia, Inc. (collectively, "Qualcomm" or "Defendants") are wrongfully selling microprocessors with unlicensed technology developed under a now-terminated license agreement between Arm Ltd. ("Arm") and a startup called Nuvia, Inc. ("Nuvia.") Arm licensed Nuvia, individually and specifically, to develop microprocessors using Arm's foundational architecture. Qualcomm's acquisition of Nuvia did not give it the right to use the technology developed under the Nuvia agreement. To the contrary, the acquisition resulted in an improper assignment, resulting in a breach of the Nuvia agreement. Qualcomm and Arm tried for months to resolve the legal dispute, but negotiations failed. Arm terminated the relevant license. Accepting the termination, Defendants certified that they would discontinue use of the technology. They did not do so. When Arm learned that Defendants were continuing to develop and use the Nuvia technology in breach of the agreement's termination provisions and in violation of Defendants' certification, Arm filed this lawsuit.

Arm now seeks summary judgment on three issues. *First*, Arm properly terminated its agreement with Nuvia due to Defendants' breach. The agreement expressly requires Arm's prior written consent to an assignment, and the agreement defines an acquisition of Nuvia to be an assignment. It is undisputed that Arm never gave its consent to the Nuvia assignment. When Arm terminated the agreement based on the absence of consent, neither Qualcomm nor Nuvia objected to termination. Rather, Defendants affirmatively certified compliance with their obligations to discontinue use of technology developed under the now-terminated agreement. Summary judgment that Arm properly terminated the agreement should be granted.

*Second*, Defendants have breached the termination provisions of the Nuvia agreement by continuing to use technology developed under the agreement in violation of Section ███ contrary to their prior certification. Section ███ requires ████████████████████████ ████████████████████████████████████████████████ ████████████████████████████. Indeed, the termination provisions expressly require ████████████████████████████████████████ ████████████████████████████. There is no factual dispute that Defendants continue to use technology developed under the Nuvia agreement in Qualcomm's current products. Summary judgment that Section ███ has been breached should be granted.

*Third*, undisputed facts show that Arm did not breach the termination provisions of the agreement. (*See* D.I. 300 ¶¶ 278-85.) Instead, the relevant agreements expressly provide Arm with a general license to ████████████████████████, and further provide that ███ ████████████████████████████████████████████. Those provisions license the Arm conduct alleged by Qualcomm to violate Section ███. As a matter of law, Arm has not breached the termination provisions of the Nuvia agreement. Summary judgment that Arm has not breached Section ███ should be granted.

## II.   NATURE AND STAGE OF PROCEEDINGS

On August 31, 2022, Arm filed this action against Defendants for breach of contract and trademark infringement. (D.I. 1.) On September 30, 2022, Defendants filed an Answer to the Complaint and Counterclaims. (D.I. 12.) On November 15, 2022, Arm filed its Answer to Defendants' Counterclaims. (D.I. 23.) Fact discovery on Arm's original claims closed on November 17, 2023, and expert discovery closed on May 3, 2024. (*See* D.I. No. 319.) On March 6, 2024, Magistrate Judge Hatcher granted-in-part Defendants' request to amend their Answer and Counterclaims, and Defendants filed a new Answer and Second Amended Counterclaims on

March 13, 2024. (D.I. 295, 300.) On April 4, 2024, Arm filed its Answer to Defendants' Second Amended Counterclaims. (D.I. 318.) Supplemental Fact Discovery on Defendants' Second Amended Counterclaims closed on May 10, 2024. (D.I. 319.) Expert Discovery on Defendants' Second Amended Counterclaims closed on July 2, 2024. (*Id.*) The Pretrial Conference is set for November 20, 2024, and trial is set for December 16, 2024. (*Id.*)

## III.   STATEMENT OF FACTS

Arm is the world's largest licensor of intellectual property for microprocessors. (Ex. 1 at ARM_01429143.[1]) The majority of semiconductor manufacturers and end-user device developers license Arm's instruction set architecture. (*Id.* at ARM_01429143-44.) Arm licenses its technology under two types of agreements: Technology License Agreements ("TLAs") and Architecture License Agreements ("ALAs"). (*Id.* at ARM_01429228-29.) ▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬ ALAs allow Arm licensees to develop custom cores using the Arm architecture. (Ex. 1 at ARM_01429228-29.) ALAs are rare and involve unique negotiations and requirements for Arm and its licensees. (Ex. 44 at ARM_01433270; *see also* Ex. 45 at ▬▬ ▬ Through its ALAs and TLAs, Arm monetizes its extensive research and development efforts and controls access to its confidential information and intellectual property. (Ex. 3 at ARM_01430358-60.)

Nuvia was a startup founded in 2019 to develop Arm-compliant microprocessors specifically for use in servers. (Ex. 4 at ARM_01430003 (describing Nuvia's ▬▬▬ core as "based on the Arm architecture" and intended for the "data centre cloud server market"); ▬▬▬

---

[1] All cites of the form "Ex. [X]" are to the Declaration of Michael J. DeStefano, filed herewith.

████████████████████████████████████████████) Nuvia sought an ALA from Arm,

beginning in March 2019. (Ex. 6.) Nuvia sought multiple concessions from Arm, given Nuvia's

status as a startup and its desire to target the server market, a smaller market for Arm's

technology. During those negotiations, Nuvia's CEO and co-founder, Gerard Williams,

██████████████████████████████████████████ ████████████

████████████████████████████████████████████████

███████████████████████████████████████ Internally at Nuvia,

Mr. Williams reiterated ████████████████████████████████████████████

█████████████████████████████████████

Nuvia and Arm executed both an ALA and TLA in September 2019. (Exs. 9, 10.)

Following execution of the ALA, Nuvia worked to develop designs, in the form of RTL code, for

an Arm-compliant core known as ████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████) As one of

Nuvia's co-founders explained, ████████████████████████████████████

███████████████████████████ Defendants' expert further explained that ███████

██████████████████████████████████████ At base, RTL is the

chip design in code form that is later sent to foundries to manufacture physical, silicon chips.

(*See id.* ¶ 39.)

In January 2021, Qualcomm announced that it was acquiring Nuvia. (Ex. 14.) Neither

Nuvia nor Qualcomm provided Arm with advance notice of the acquisition. (*See, e.g.,* ████████

██████████████████████████████████████████████████████████

██████████████████ )

     On February 1, 2021, Arm wrote to Qualcomm, stating that ████████████████

█████████████████████████████████████████████ Defendants

thereafter requested Arm's consent. (Ex.17.) Arm did not give consent. (Ex 18.) On March 16,

2021, Qualcomm completed the acquisition of Nuvia despite the absence of Arm's consent. (Ex.

53.) The parties negotiated for months to resolve the resulting dispute but did not reach a

settlement. Arm continued to withhold consent.

     On February 1, 2022, Arm terminated the ALA, effective March 1, 2022. (Ex. 19.) In its

termination notice, Arm emphasized the ALA's termination provisions requiring █████████

█████████████████████████████ (*Id.*) Prior to the

termination's effective date, ████████████████████████████████

████████████████████████████████████████ (Ex. 20.)

     Following Arm's notice, Defendants did not contest the termination of the Nuvia ALA,

or challenge whether the ALA required discontinuation and destruction. Instead, Qualcomm's

general counsel sent Arm a certification signed by Nuvia's CEO and co-founder (Gerard

Williams) indicating that ███████████████████████████████

████████████████████████████████████████████████

██████ (Ex. 21). More specifically, the certification stated that █████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████

In later correspondence, Qualcomm admitted that ████████████████████████

Defendants were still using the Nuvia code and designs developed under the Nuvia ALA,

including work leading up to and including ███████████, in Qualcomm products. (*See, e.g.*,

████████████████████████████.) When Defendants refused to stop using unlicensed

Arm technology under a then-terminated ALA, Arm filed this lawsuit to enforce the termination

provisions of the Nuvia ALA.

In discovery, Arm learned that Qualcomm has ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

## IV.   STANDARD

"A party may move for summary judgment, identifying each claim or defense — or the

part of each claim or defense — on which summary judgment is sought. The court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Lies v.

Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary

adjudication that will often fall short of a final determination, even of a single claim") (internal

quotation and citation omitted).

The Nuvia ALA is an integrated agreement governed by California law. (Ex. 9 ████████

████ California courts have routinely found that "[c]ontract interpretation is a judicial function

that is appropriately resolved on summary judgment." *DPR Constr. v. Shire Regenerative Med., Inc.*, 204 F. Supp. 3d 1118, 1128 (S.D. Cal. 2016); *see also Cachil Dehe Band of Wintun Indians v. California*, 618 F.3d 1066, 1073 (9th Cir. 2010); *Am. City Bank v. Zetlen*, 253 Cal. App. 2d 548, 552 (1967).

"Under California law, the interpretation of contract language is a question of law." *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 925-26 (9th Cir. 2003). "[T]he interpretation of a contract is a judicial function" that is ordinarily "determined solely by reference to the contract's terms." *Brown v. Goldstein*, 34 Cal. App. 5th 418, 432 (2019) (internal quotation and citation omitted); *see also* Cal. Civ. Code §§ 1638-39. The "language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code § 1638. The Court has the authority to determine whether the language is clear and unambiguous as a question of law. *WYDA Assocs. V. Merner*, 42 Cal. App. 4th 1702, 1709-10 (1996).

## V.    ARGUMENT

### A.  Arm properly terminated the Nuvia ALA.

There is no genuine legal or factual dispute that Nuvia breached the ALA, and the breach properly resulted in its termination. The ALA provides that Nuvia ██████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████ The ALA expressly defines assignment to include the acquisition of Nuvia: ██████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████

Qualcomm indisputably acquired Nuvia within the meaning of the Nuvia ALA. (*See, e.g.,* Ex. 25 ███████████████████████ Arm did not ████████████████████ for the assignment. ███████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████ Accordingly, Nuvia breached Section ████, the assignment provision.

Arm expressly pointed to this breach when it terminated the ALA. (*See* Ex. 19.) The Nuvia ALA allowed Arm to terminate if Nuvia ██████████████████████████ Nuvia's breach ████████ ████████████████████████████████████████████████████

██████████████████████████████████

Notably, the improper transfer of Nuvia technology to Qualcomm dramatically changed the contemplated scope of — and terms for — the use of the technology developed under the Nuvia ALA, effectively circumventing the license terms and the specific rights Arm granted to Nuvia. Nuvia, as a startup, was focused only on developing Arm-compliant cores for ████████ Qualcomm, one of the world's largest semiconductor companies, planned to use the designs and cores for ██████████████████████████. ████████████████████████████ ████████████████████████████████████████████████████ ████████████████ Following the acquisition, Qualcomm also repudiated the economic terms of the Nuvia ALA, ██████████████████████████████████████████ ████████████████████████ (Ex. 17.)

Arm's termination based on improper assignment as a result of the Nuvia acquisition was entirely consistent with the express understanding of Nuvia's CEO regarding relevant terms: ████



Nuvia's CEO was right. After Nuvia was acquired without Arm's prior written consent, ████████████.

The combination of the plain, unambiguous terms of the contract, the undisputed actions of Defendants, the undisputed lack of consent by Arm and the undisputed prior understanding of Nuvia's CEO means that summary judgment is proper. Defendants' conduct immediately after Arm sent its termination notice confirms this conclusion. Consistent with Nuvia's written understanding that ████████████████████████ Defendants did not object to or contest Arm's notice of termination. ████████████████████ ████████████████████████ Nor did they simply remain silent. Rather, consistent with the termination provisions, Defendants ████ ████████████████████████████████ (*See* Ex. 9 ████ Ex. 21.)

Defendants should be bound by their express acceptance of Arm's termination of the Nuvia ALA, as reflected in their transmission of a certification acknowledging the applicability and enforceability of the ALA's termination provisions. (*See* Ex. 21.) Courts have repeatedly confirmed that a party to an agreement is bound by positions taken with respect to the meaning and enforceability of contract terms, as a matter of equitable estoppel, *see Bailey v. Outdoor Media Grp.*, 155 Cal. App. 4th 778, 790 (2007) ("Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to

contradict it." (internal quotation and citation omitted)), or as acquiescence to or ratification of an interpretation or application of contract terms, including those relating to termination. *See, e.g.*, *Bohman v. Berg*, 54 Cal. 2d 787, 795 (1960) ("When one party performs under the contract and the other party accepts his performance without objection it is assumed that this was the performance contemplated by the agreement"); *cf Sembler Family P'ship # 41, Ltd. v. Brinker Fla., Inc.*, No. 08-cv-1212, 2008 WL 5341175, at *4 (M.D. Fla. Dec. 19, 2008) (confirming that "Plaintiff's claims are barred by estoppel because Plaintiff received Defendants' notice of termination and did not object to the timing or substance of it, acquiescing in the termination"); *Logan v. Norwest Bank Minn.*, 603 N.W.2d 659, 664 (Minn. Ct. App. 1999) (holding that ratification supports estoppel). Further, silence — like Defendants' failure to object here at the time of termination — and delay — like Defendants raising the propriety of termination only months after the fact, in response to Arm's suit — are also sufficient to give rise to equitable estoppel. *Skulnick v. Roberts Express, Inc.*, 2 Cal. App. 4th 884, 891 (1992) (stating that "estoppel may arise from silence when there is a duty to speak" and holding that if "[certain Parties] intended to preserve their indemnification rights, they had a duty to affirm those rights upon [another Party's] stated precondition to settlement"); *cf. Stillwater Mining Co. v. Power Mount Inc.*, No. 14–cv–2475–WYD–KMT, 2017 WL 1356089, at *14 (D. Colo. Apr. 13, 2017) (stating that "estoppel . . . prevents a party from arguing a particular interpretation of a contract that a party delayed too long in adopting").

If Defendants disagreed with termination, Defendants had a duty to contest termination *at the time* Arm terminated the Nuvia ALA, assuming Defendants actually believed termination to be improper. They did not do so. Instead, Defendants took affirmative action to confirm the termination, by sending a certificate confirming compliance with the ALA's termination

provisions. *Horizontal Drilling Int'l v. AT&T Commc'ns*, No. C-95-0208 SI, 1995 U.S. Dist. LEXIS 19178, at *3 (N.D. Cal. Dec. 12, 1995) (holding that correspondence regarding termination carried "significant weight," because "the acts of the parties to a contract afford one of the most reliable means of arriving at their intention"); *cf. Flagship W., LLC v. Excel Realty Partners, L.P.*, 758 F. Supp. 2d 1004, 1026 (E.D. Cal. 2010) (prior conduct and performance under agreement relevant to interpretation of terms). Having done so, Defendants are bound by their acceptance of termination at that time, notwithstanding their belated attempt to contest termination months later, only after Arm brought suit.

The Court should grant summary judgment that Arm properly terminated the Nuvia ALA and deny Qualcomm's claim for declaratory judgment that Arm lacked the right to terminate the Nuvia ALA. (*See* D.I. 300 (Defs.' Second Am. Countercls.) ¶¶ 274-277.)

**B. Defendants breached Section █████ of the Nuvia ALA.**

The Court should grant summary judgment that Defendants breached the termination provisions of the Nuvia ALA. The termination provisions require Defendants ████████████ ██████████████████████████████. But even after termination of the ALA, Defendants continue to use RTL code developed by Nuvia under the ALA.

The basis for summary judgment is straightforward: It is undisputed that, in the period between (1) the signing of the Nuvia ALA in 2019 and (2) Qualcomm's March 2021 acquisition of Nuvia, Nuvia engineers created designs for an Arm-based microprocessor called ██████, in the form of RTL code. It is also undisputed that, after termination of the Nuvia ALA, Defendants continued to use this pre-acquisition RTL code ████████████, not just in ████████████ ██████████████, but also in subsequent Qualcomm processor designs like ████████ ████████████████████████.

The ALA prohibits this post-termination use of the code developed under the Nuvia

ALA. It unambiguously states in Section ▮▮▮ that, after termination, ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Read in light of the definitions and terms of the ALA, this language makes Nuvia's pre-acquisition RTL code ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Defendants' continuing use of that same code in ▮▮▮▮▮▮▮▮ and other post-termination Qualcomm designs breached the termination obligations stated in Section ▮▮.

Three examples are sufficient to confirm the broad scope of the termination obligations: First, Section ▮ prohibits ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ (Ex. 9 ▮▮▮.) Those products reflect the work product of Nuvia engineers, but are expressly called out in Section ▮▮

Second, Section ▮ covers ▮▮▮▮▮▮▮▮▮▮▮▮▮ using a series of words that capture the changes ▮▮▮▮▮▮▮▮ and more specific use ▮▮▮▮▮▮▮▮ made by Nuvia's engineers of Arm's architecture, which is the blueprint for Nuvia's microprocessor core. (Ex. 9 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Third, Section ▮ defines ▮▮▮▮▮▮▮ of ▮▮▮▮▮▮▮▮ to include an ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████████████████

████████████████████████████████████████ An █████████

█████████████ is defined as ███████████████████████████

██████████████████████████ An ███████████████ is thus

explicitly a ███████████████████████, yet is nonetheless expressly

covered by the termination provisions as ███████████████████.

 The term █████████ applies similarly to the RTL that Nuvia's engineers wrote as they

█████████ an ██████████████████ under the Nuvia ALA. RTL is software code in

which a microprocessor design is implemented. As Defendants' witnesses confirmed, █████

████████████████████████████████████ and █████

███████████████████████████ And there can be

no dispute that an ████████████████ (which is expressly defined as █████████) is the

code for a design, rather than a physical sample or product. (*See, e.g.,* Ex. 47.)

 The relevant ████████████████ here is the final version of Nuvia's code for

the ██████████████████████. The earlier, pre-verification RTL code

written by Nuvia's engineers is the equivalent of a draft generated in reaching the final version.

Just as the final version of the code ██████████████████████

████████████████████████████ the interim drafts

of RTL code are also ████████████████████.

 It would be impossible for Nuvia to create the RTL that implements either the interim or

final █████ design without using the technology Arm delivered under the Nuvia ALA. As

█████ to the ALA specifies, an ████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████ further specifies that the

█████████████████ are ███████████████████████████████████████

███████████████████████████████████████████ (*Id.*; *see also* ███

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████ The final ████████████

████████████ is a ████████████████████████ because it executes ████████████

████████ in the thousands of pages of the Architecture Reference Manual. The RTL written

prior to the final version of the code for verification similarly ████████████████████

██████████████████████ Ex. 30.) Accordingly, that pre-verification RTL is also

████████████████████████████████████████████

There is no dispute that Nuvia's engineers had access to and used the documents that

define the Arm architecture when they wrote the code for ████████████. The

████████████████ delivered under ████████ to the Nuvia ALA included ████████████████

███████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████ The ████

████████████████ delivered under the ALA included those same materials, along with

███████████████████████████████████████████ Nuvia

14

downloaded these documents. (*Id.*; Ex. 23 at 10-11 (Response to Interrogatory 14).) Defendants

further admit that Nuvia used these materials, including ████████████████████████, to

develop the Nuvia core. (*Id*. at 24-25 (Response to Interrogatory 24).)

The RTL developed under the Nuvia ALA using those materials thus falls within the

broad definition of ██████████ in Section ███, which includes ████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

Nuvia's stated business plan was to ████████████████████████████████████

████████████████████████████████. That is why it sought an ALA. Section ████████

requirements thus govern what must be done *after* termination with the RTL code Nuvia wrote

for an Arm microprocessor design under the ALA.

There is no dispute that Nuvia developed RTL code for its Arm-compliant ████████ core

under its ALA prior to its acquisition by Qualcomm in March 2021. (*See* ████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████) Nor is there any dispute that ████████████████████ as an

████████████████████████, at Defendants' request, using materials Defendants submitted to

establish compliance. (████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████)

The RTL code Nuvia developed pre-acquisition is simply the building block of the final, verified ████████████████. In an interrogatory response, Qualcomm admitted that ██

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████ March 2019 precedes Qualcomm's

acquisition of Nuvia by two years.

Nor can there be any dispute Defendants used pre-acquisition RTL developed under the

Nuvia ALA in post-termination designs like █████ and products like ████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████

██████████ Defendants developed ██████ from ████████████████████

██, which is months after Arm's termination of the ALA and months after Arm's filing of this

action. (Ex. 19.) Consistent with the testimony from Defendants' own witnesses, Arm's expert confirmed that ████████████████████████████████████████████████████

████████████████████████████████████████████████

The existence of a breach has been established as a matter of law: Nuvia's pre-acquisition RTL falls within Section ████; Section ████ requires ████████████████████████; Defendants continue to use the pre-acquisition RTL. Defendants have breached Section ████.[2]

### C. Arm did not breach the termination provisions of the Nuvia TLA or ALA.

Defendants assert that Arm breached the termination provisions of the Nuvia TLA and ALA by (1) maintaining a few features Nuvia requested for an Arm product called CMN, and (2) running a "diff" between the configuration files for the ████████████████████████ ████████████████████. Defendants ignore that (1) the relevant agreements expressly provide a license for Arm to use ████████████████ from Nuvia like the feature requests, and (2) Arm did not use the information in the ████████████████ in developing its products, but instead merely ran a "diff" to compare the ████████████████████████████████████

### 1. Arm has a license to use Nuvia feature requests.

Arm did not breach the Nuvia licenses by implementing Nuvia's CMN feature requests for two independent reasons. First, there is no evidence that Arm used Nuvia materials regarding CMN feature requests after termination of the license agreements. Second, whatever steps Arm took with respect to CMN feature requests (both before and after termination) was licensed as ████████████████████████ according to the unambiguous terms of the contracts.

---

[2] Defendants have also breached Section ████ by continuing to use other Nuvia work product, including the ████████████████ which is an ████████████████████████, and thus a ████████████ within the express terms of the ALA (as Qualcomm appears to concede in its expert reports). While Arm will prove these additional breaches at trial as necessary, it has no need to rely on them for purposes of establishing breach in this motion.

Defendants have no evidence that Arm used ███████████ or ███████████

██████ regarding CMN feature requests *after* termination, in violation of the relevant

contractual provisions. ████████████████████. Before termination, Nuvia made a

relatively small number of feature requests to Arm, seeking modifications and additional features

in Arm's CMN product, and provided documents designated Nuvia Confidential Information

regarding these requests. (*See, e.g.*, Exs. 35-37.) Well before termination, Arm implemented

some of those requests — many of which were already on Arm's roadmap, or had been

requested by other Arm licensees. ████████████████████

████████████████ Defendants do not dispute that Arm had a right

to use the Nuvia-designated documents at the time Arm implemented the relevant feature

requests, using its own resources, all of which occurred prior to termination. There was no

breach of contract.

Moreover, the Nuvia TLA expressly provides a license for Arm to use ████ from

Nuvia. (Ex. 39 ████████████ The Nuvia TLA Annex permits Arm to use ████ from an

████████████ like Nuvia, expressly providing that ████████████████

████████████████████████████ The Nuvia

TLA Annex speaks specifically to the CMN proposals and provides, ████████████

████████████████████████████████

████████████████ The Annex further provides in ████████████

████████████████████████████

████████████████████████████████

████████████████████████████

████ Similarly, the Nuvia ALA provides Arm ████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████ Both before and after termination, the contacts license Arm

to use and implement Nuvia's █████ including the feature requests for CMN.

Because the relevant agreements expressly permit and license any post-termination use

by Arm of any Nuvia ████████████████ including Nuvia's feature requests for Arm's CMN

product, summary judgment should be granted.

**2.** **Arm did not breach by running a "diff" between the ███████████████**
██████████████████

Arm did not make post-termination "use" of the ██████ configuration files in

developing its products. Instead, when Qualcomm requested verification of a core named

███████ Arm ran a "diff" comparing characteristics of ████████████████████████

█████████████████████████ Arm's need to do so, for purposes of determining

whether it had verification obligations with respect to ██████, was confirmed by Defendants'

internal communications in which key personnel asked ███████████████████████████

██████████████████████████████ Arm used the comparison to uncover

what Defendants had concealed — that ███████████████████, and Defendants were

obligated to stop use of both pursuant to Section █████ (*See, e.g.*, Exs. 49, 50.) In contrast,

Defendants have no evidence that Arm used the content of the ████████████████ as a

part of any design, any product, or for any other part of Arm's business. (Ex. 41.) Arm did not do

so, and had a license to use ███████ from Nuvia under the ALA regardless. ███████████

████████████████████████████████████████████████

███████████████████████████████████████

██████████████████

Confirming this does not provide a basis for Defendants' claim of breach, Defendants' expert witness did not calculate damages, or even mention the possibility of damages, based on the "diff" comparison. (*See, e.g.*, Ex. 38; Ex. 42 ¶ 66; Ex. 43 ¶¶ 25-26.) Defendants' failure to identify any damages, or even discuss the possibility of damages, on this issue independently warrants summary judgment, because damages are an essential element of a breach of contract claim under California law. *See Smith v. NBC Universal*, 524 F. Supp. 2d 315, 330 (S.D.N.Y. 2007) ("Damages are an essential element of a breach of contract claim under California law.").[3]

Accordingly, Arm is entitled to summary judgment that it did not breach the termination provisions of either the Nuvia ALA or the Nuvia TLA.

## VI.     CONCLUSION

For the foregoing reasons, Arm requests partial summary judgment that (1) Arm properly terminated the Nuvia ALA based on Nuvia's breach of the consent requirement for assignment; (2) Defendants breached the Nuvia ALA's termination provisions by continuing to use code developed by Nuvia under the ALA even after termination; and (3) Arm did not breach the Nuvia TLA or ALA by using input and feedback from Nuvia.

---

[3] On the same basis, Defendants' counterclaims related to alleged post-termination use of CMN features should also be dismissed based on Defendants' failure to provide a damages calculation or estimate in their expert reports. (*See* Ex. 42 ¶ 66; Ex. 43 ¶¶ 25-26.)

Dated: July 10, 2024
Redacted Version: July 22, 2024

OF COUNSEL:

Daralyn J. Durie
Joyce Liou
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105 (415)
268-7000
ddurie@mofo.com
jliou@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Kyle W.K. Mooney
Kyle D. Friedland MORRISON &
FOERSTER LLP 250 West 55th
Street
New York, NY  10019
(212) 336-4092
kmooney@mofo.com
kfriedland@mofo.com

Scott F. Llewellyn MORRISON
& FOERSTER LLP 4200
Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

Daniel Muino
MORRISON & FOERSTER LLP

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP


 */s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Plaintiff Arm Ltd.*

2100 L Street, NW
Suite 900, Washington, D.C. 20037
(202) 887-1501
dmuino@mofo.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 10, 2024, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL/FTP**

Jack B. Blumenfeld
Jennifer Ying
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

Isaac B. Zaur
Nora Niedzielski-Eichner
CLARICK GUERON REISBAUM LLP
220 Fifth Avenue, 14th Floor
New York, NY 10001
izaur@cgr-law.com
nniedzie@cgr-law.com

Catherine Nyarady
Anna R. Gressel
Madalyn G. Vaughn
Jacob A. Braly
Alexander M. Butwin
Samantha Mehring
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
agressel@paulweiss.com
mvaughn@paulweiss.com
jbraly@paulweiss.com
abutwin@paulweiss.com
smehring@paulweiss.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
Brian Shiue
Anna P. Lipin
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
kdunn@paulweiss.com
wisaacson@paulweiss.com
mzappala@paulweiss.com
ejmorgan@paulweiss.com
bshiue@paulweiss.com
alipin@paulweiss.com

Andrea L. D'Ambra
Susana Medeiros
Kira Latham
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019
andrea.dambra@nortonrosefulbright.com
susana.medeiros@nortonrosefulbright.com
kira.latham@nortonrosefulbright.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Plaintiff Arm Ltd.*

2