## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARM LTD., a U.K. corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>QUALCOMM INC., a Delaware corporation,<br>QUALCOMM TECHNOLOGIES, INC., a<br>Delaware corporation, and NUVIA, INC., a<br>Delaware corporation,<br><br>　　　　Defendants. | C.A. No. 22-1146-MN<br><br>**PUBLIC REDACTED VERSION**<br>(Filed July 22, 2024) |

## ARM LTD'S OPENING OMNIBUS BRIEF IN SUPPORT OF ITS MOTIONS TO EXCLUDE AND STRIKE CERTAIN EXPERT OPINIONS AND TESTIMONY OF MURALI ANNAVARAM, PATRICK KENNEDY, JOHN COATES, AND JOEL STECKEL

OF COUNSEL:

Daralyn J. Durie
Joyce Liou
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
jliou@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Kyle W.K. Mooney
Kyle D. Friedland
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
(212) 336-4092

YOUNG CONAWAY STARGATT &
　TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Plaintiff Arm Ltd.*

kmooney@mofo.com
kfriedland@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

Daniel P. Muino
MORRISON & FOERSTER LLP
2100 L Street, NW
Suite 900, Washington, D.C. 20037
(202) 887-1501
dmuino@mofo.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

I.    NATURE AND STAGE OF PROCEEDINGS .................................................. 1

II.   SUMMARY OF THE ARGUMENT ................................................................. 1

III.  STATEMENT OF FACTS ................................................................................ 3

IV.   LEGAL STANDARD........................................................................................ 5

V.    ARGUMENT ..................................................................................................... 6

    A.    The Court Should Exclude Dr. Annavaram's Opinions ........................... 6

        1.    Dr. Annavaram's Legal Interpretations Are Inadmissible. ...................... 6

            a.    Dr. Annavaram's Opinion That "No Core Was an ███████████████████ Under the Nuvia ALA." ................ 7

            b.    Dr. Annavaram's Opinions Regarding Requirements "Under the Nuvia ALA" or "Under the Qualcomm ALA." ......... 8

            c.    Dr. Annavaram's Opinions Regarding the Swap Out.................. 10

            d.    Dr. Annavaram's Interpretations of the ALAs Should Be Excluded Because He Is Not Qualified ..................................... 10

        2.    Dr. Annavaram's ███████ Opinions............................................ 11

            a.    All *Pennypack* Factors Weigh in Favor of Excluding Dr. Annavaram's Untimely Opinions and Disclosures..................... 11

                (i)     The late disclosure is prejudicial to Arm. ....................... 12

                (ii)    Arm cannot cure the resulting prejudice......................... 13

                (iii)   The untimely opinions would disrupt the case. .............. 13

                (iv)    The untimely opinions were made in bad faith............... 13

                 (v)     The untimely opinions are not important......................... 14

            b.    The Untimely Opinion Are Unsupported Under FRE 702(b). ........................................................................................ 14

    B.    The Court Should Exclude Dr. Kennedy's Opinions........................................... 15

        1.    Dr. Kennedy's Opinion That Arm's Damages Are Quantifiable Relies on Inadmissible Rule 408 Settlement Negotiations...................... 15

        2.    Dr. Kennedy's Counterclaim Opinion That Defendants' Damages Are Quantifiable Does Not Actually Provide a Damages Number ......... 16

    C.    The Court Should Exclude Mr. Coates's Opinions ........................................... 17

        1.    Mr. Coates Is Not Qualified to Opine About IP Licensing and Negotiation Theory .................................................................................. 17

## TABLE OF CONTENTS
(continued)

**Page**

2. Mr. Coates Usurps the Roles of the Court and the Trier of Fact ............. 20

    a. Mr. Coates's Opinions on the Admissibility and Proper Scope of Expert Opinion Are Themselves Inadmissible ............. 21

    b. Mr. Coates's Opinions on the Sufficiency of Evidence and Credibility Are Inadmissible ........................................................ 21

    c. Mr. Coates's Factual Narrative is Improper. ............................... 23

3. Mr. Coates's "Anti-Assignment" Opinions Will Not Assist the Trier of Fact ............................................................................................. 24

D. The Court Should Exclude Dr. Steckel's Opinions ............................................. 25

1. The Court Should Exclude Dr. Steckel's Opinion that Dr. Dhar "Does Not Meet the Standards for a Rigorous Scientific Analysis Under Accepted Industry Practices and Academic Guidelines" .............. 25

2. The Court Should Exclude Dr. Steckel's Opinions Regarding the Sufficiency and Credibility of Evidence that Dr. Dhar Relies Upon ....... 26

3. The Court Should Exclude Dr. Steckel's Fair Use Opinions ................... 27

VI. CONCLUSION ............................................................................................................ 28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allscripts Healthcare, LLC v. Andor Health, LLC*,
  C.A. No. 21-704-MAK, 2022 WL 3021560 (D. Del. July 29, 2022) ............................6, 7, 10

*Amorgianos v. Nat'l RR Passenger Corp.*,
  303 F.3d 256 (2d Cir. 2002) ...........................................................................................17

*Apple, Inc. v. Samsung Elecs. Co.*,
  C.A. No. 12-00630-LHK, 2014 WL 794328 (N.D. Cal. Feb. 25, 2014) ...............................15

*Astrazeneca LP v. Breath Ltd.*,
  C.A. No. 08-1512, 2014 WL 4798477 (D.N.J. Sept. 26, 2014) ............................................12

*Berckeley Inv. Grp. Ltd. v. Colkitt*,
  455 F.3d 195 (3d Cir. 2006) .........................................................................................20, 26

*Bornstein v. Monmouth Cnty. Sheriff's Off.*,
  658 F. App'x 663 (3d Cir. 2016) ........................................................................................10

*Bradbury v. Phillips Petroleum Co.*,
  815 F.2d 1356 (10th Cir.1987) ..........................................................................................15

*Bridgestone Sports Co. Ltd. v. Acushnet Co.*,
  C.A. No. 05-132-JJF, 2007 WL 521894 (D. Del. Feb. 15, 2007) .........................................12

*Callaway Golf Co. v. Dunlop Slazenger Group Ams., Inc.*,
  C.A. No. 01-669-KAJ, 2003 U.S. Dist. LEXIS 25625 (D. Del. May 21, 2003) ....................27

*Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l, Inc.*,
  350 F. Supp. 2d 582 (D. Del. 2004) ...................................................................................22

*Crockett v. Luitpold Pharmaceuticals, Inc.*,
  No. 19-276, 2023 WL 2187641 (E.D.Pa. Feb. 23, 2023) ......................................................19

*Dalgic v. Misericordia Univ.*,
  No. 16-cv-0443, 2019 WL 2867236 (M.D. Pa. July 3, 2019) ................................................23

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ..................................................................................................... *passim*

*Dow Chem. Can. Inc. v. HRD Corp.*,
  656 F. Supp. 2d 427 (D. Del. 2009), *aff'd*, 587 F. App'x 741 (3d Cir. 2014) .........................8

*Flickinger v. Toys "R" Del., Inc.*,
    492 F. App'x 217 (3d Cir. 2012) ..................................................................6

*FTC v. Simple Health Plans LLC*,
    C.A. No. 18-62593, 2021 WL 810262 (S.D. Fla. Mar. 3, 2021) ...............................23

*Gemak Tr. v. Reckitt Benckiser LLC*,
    C.A. No. 18-1855-RGA, 2020 WL 4284973 (D. Del. July 27, 2020) ....................14

*Gilliland v. Hergert*,
    C.A. No. 05-1059, 2007 WL 4105223 (W.D. Pa. Nov. 15, 2007) ............................20, 23, 26

*Jaroslawicz v. M&T Bank Corp.*,
    C.A. No. 15-897-EJW, 2024 WL 474846 (D. Del. Feb. 7, 2024) ............................5

*Koninklijke Philips N.V. v. Telit IOT Sols., Inc.*,
    C.A. No. 20-1708-CFC, 2023 WL 8559025 (D. Del. Dec. 11, 2023) ....................20

*Konstantopoulos v. Westvaco Corp.*,
    112 F.3d 710 (3d Cir. 1997) .................................................................12

*Meadows v. Anchor Longwall & Rebuild, Inc.*,
    306 F. App'x 781 (3d Cir. 2009) ...........................................................14, 28

*Meyers v. Pennypack Woods Home Ownership Ass'n*,
    559 F.2d 894 (3d Cir. 1977) .................................................................11, 12

*Olin Corp. v. Ins. Co. of N. Am.*,
    603 F. Supp. 445 (S.D.N.Y. 1985) ..........................................................15

*In re Paoli R.R. Yard PCB Litig.*,
    35 F.3d 717 (3d Cir. 1994) ..................................................................6, 25

*Pell v. E.I. DuPont de Nemours & Co.*,
    231 F.R.D. 186 (D. Del. 2005) .............................................................22

*Penn Mut. Life Ins. Co. v. Norma Espinosa 2007-1 Ins. Tr.*,
    70 F. Supp. 3d 628, 634-35 (D. Del. Sept. 29, 2014) ...........................................21

*In re Puda Coal Sec. Inc., Litig.*,
    30 F.Supp.3d 230 (S.D.N.Y. 2014) .........................................................19, 20

*Romano v. John Hancock Life Ins. Co. (USA)*,
    C.A. No. 19-21147, 2022 WL 1447733 (S.D. Fla. May 9, 2022) ....................................22, 26

*Romero v. Allstate Ins. Co.*,
    52 F. Supp. 3d 715 (E.D. Pa. 2014) ........................................................20, 22, 26

*S.E.C. v. Tourre*,
    950 F. Supp. 2d 666 (S.D.N.Y. 2013)..................................................................................23

*Secured Sys. Tech., Inc. v. Frank Lill & Son, Inc.*,
    C.A. No. 08-6256, 2012 WL 6628878 (W.D.N.Y. 2012) .......................................................22

*Shire ViroPharma Inc. v. CSL Behring LLC*,
    C.A. No. 17-414-MSG, 2021 WL 1227097 (D. Del. Mar. 31, 2021).....................................18

*Surace v. Caterpillar, Inc.*,
    111 F.3d 1039 (3d Cir. 1997)................................................................................................18

*U.S. v. Leo*,
    941 F.2d 181 (3d Cir. 1991)...........................................................................................22, 23

*Vehicle IP, LLC v. Werner Enters.*,
    C.A. No. 10-503-SLR, 2013 WL 4786119 (D. Del. Sep. 9, 2013).........................................12

*Withrow v. Spears*,
    967 F. Supp. 2d 982 (D. Del. 2013)................................................................................24, 25

*Yazujian v. PetSmart*,
    729 F. App'x 213 (3d. Cir. 2018) .........................................................................................20

*In re Zoloft (Sertraline Hydrochloride) Prod. Liab. Litig.*,
    858 F.3d 787 (3d Cir. 2017)..................................................................................................16

## Other Authorities

Fed. R. Evid. 408 ...................................................................................................................2, 15

Fed. R. Evid. 702 ..................................................................................................................*passim*

Fed. R. Civ. P. 26 ......................................................................................................................11

Fed. R. Civ. P. 37 ......................................................................................................................11

## I.     NATURE AND STAGE OF PROCEEDINGS

On August 31, 2022, Arm filed this action against Qualcomm, Inc., Qualcomm

Technologies, Inc., and Nuvia, Inc. ("Defendants" or "Qualcomm") for breach of contract and

trademark infringement. (D.I. 1.) On September 30, 2022, Defendants filed an Answer to the

Complaint and Counterclaims. (D.I. 12.) On October 26, 2022, Defendants filed Amended

Counterclaims. (D.I. 18.) On November 15, 2022, Arm filed its Answer to Defendants'

Amended Counterclaims. (D.I. 23.) Fact discovery on Arm's claims closed on November 17,

2023, and expert discovery closed on May 3, 2024. (*See* D.I. 319.) On March 6, 2024, Magistrate

Judge Hatcher granted in part Defendants' request to amend their Counterclaims (D.I. 295), and

Defendants filed a new Answer and Second Amended Counterclaims on March 13, 2024. (D.I.

300.) On April 4, 2024, Arm filed its Answer to Defendants' Second Amended Counterclaims.

(D.I. 318.) Fact discovery on Defendants' Second Amended Counterclaims closed on May 10,

2024. (D.I. 319.) Expert discovery on the Second Amended Counterclaims closed on July 2,

2024. (*Id.*) The pretrial conference is set for November 20, 2024, and trial is set for December

16, 2024. (*Id.*)

## II.    SUMMARY OF THE ARGUMENT

Defendants should be precluded from presenting evidence, testimony, or argument at trial

relating to the improper opinions of their experts. Defendants' experts submitted reports that

contain opinions that invade the role of the Court and trier of fact, rely on inadmissible evidence,

are unreliable, are legal opinions, and/or are not helpful to the trier of fact.

Defendants' technical expert, Dr. Murali Annavaram, submitted reports that contain legal

opinions. These opinions should be excluded because they invade the role of the Court. Dr.

Annavaram also disclosed a new opinion for the first time in his reply report. It should be

excluded because it is untimely, unsupported by code analysis, and Defendants' delayed

disclosure is prejudicial to Arm.

Defendants' damages expert, Dr. Patrick Kennedy, submitted a rebuttal report for Arm's breach of contract claims in which he opines that Arm's damages from Defendants' breach can be quantified. Dr. Kennedy's opinions, however, rely on inadmissible Rule 408 settlement discussions, including documents that are clearly marked as confidential Rule 408 settlement communications, for the purposes of opining on damages and monetary relief. His reliance on such settlement communications warrants exclusion of his rebuttal opinions.

Dr. Kennedy also submitted opening and reply reports on Defendants' counterclaims that set forth a purported methodology for calculating Defendants' alleged damages. But Dr. Kennedy does not actually apply his methodology to arrive at any damages number. His failure to reliably apply his methodology to the facts of the case warrants exclusion.

Defendants' purported licensing expert, Mr. John Coates, submitted a rebuttal report that responds to Mr. Subramanian, Plaintiff's expert on intellectual property licensing and negotiation theory. But Mr. Coates has no experience with intellectual property licensing and is not qualified to provide expert testimony on negotiation theory. Moreover, his statements regarding the sufficiency of evidence and witness credibility improperly usurp the roles of the Court and trier of fact. His opinion regarding "change of control" provisions is a straw-man, which is not responsive to Mr. Subramanian's opinions. Finally, his free-standing factual narrative is an improper and inadmissible effort to summarize the evidence for the jury.

Defendants' trademark expert, Dr. Joel Steckel, submitted a rebuttal report that purports to opine on trademark issues. But Dr. Steckel merely opines on the sufficiency of the evidence cited by Dr. Dhar and whether Dr. Dhar's analysis meets the *Daubert* standard. Dr. Steckel's opinions improperly usurp the roles of the Court and trier of fact, and should be excluded.

## III.    STATEMENT OF FACTS

On December 20, 2023, Arm served the opening expert reports of its technical experts Dr. Robert Colwell and Dr. Mike Chen, remedies expert Todd Schoettelkotte, licensing expert Guhan Subramanian, and trademark expert Dr. Ravi Dhar.

Drs. Colwell and Chen analyzed relevant source code, known as "RTL," and provided opinions on the technology at issue, including opinions that Nuvia's CPU, code named "█████" was designed to implement Arm's architecture and was incorporated into Qualcomm's products. (*See, e.g.*, Colwell Rpt. ¶¶ 156-167 (Ex. 1); Chen Rpt. ¶¶ 18-19 (Ex. 2).)[1]

Mr. Schoettelkotte provided opinions regarding the appropriate remedies for Arm's claims, including his opinion that monetary damages are not adequate to compensate Arm for Defendants' breach of the relevant Nuvia architecture license agreement ("ALA"). (*See, e.g.*, Schoettelkotte Rpt. ¶ 69 (Ex. 3).) Mr. Schoettelkotte also opined that the monetary damages to Arm caused by Defendants' breach cannot be determined with reasonable certainty. (*Id.*)

Mr. Subramanian provided opinions regarding the licenses at issue in the case, including that (1) the Nuvia ALA's termination provisions are consistent with the business objectives of change in control provisions and negotiation principles, and (2) as a matter of negotiation theory, it is not feasible to predict the outcome of a hypothetical negotiation between Qualcomm and Arm over a transfer of Nuvia's ALA to Qualcomm. (*See, e.g.*, Subramanian Rpt. ¶ 19 (Ex. 4).)

Dr. Dhar provided opinions regarding the Arm trademarks at issue, including that the trademarks confer value in the market and that Defendants' unauthorized use of the trademarks is likely to cause confusion. (*See, e.g.*, Dhar Rpt., ¶¶ 13-16 (Ex. 5).)

On December 20, 2023, Defendants served the opening expert report of their technical

---

[1]   All cites of the form "Ex. [X]" are to the Declaration of Nicholas Fung, filed herewith.

expert, Dr. Annavaram, regarding Qualcomm's alleged efforts to comply with the Nuvia ALA termination provisions. (Annavaram Rpt. ¶¶ 73-124 (Ex. 6).) On February 27, 2024, Defendants served rebuttal expert reports from Dr. Annavaram, Dr. Kennedy, Mr. Coates, and Dr. Steckel.

Dr. Annavaram's rebuttal report provided opinions regarding definitions of terms in the Nuvia ALA, the requirements under the Nuvia and Qualcomm license agreements, and whether Qualcomm's actions fell under the Nuvia or Qualcomm agreements. (Annavaram Rbt. Rpt. ¶¶ 3, 4, 9, 13, 15-18, 53, 54, 78-80, 87, 88, 91, 93, 110, 115, 122, 123, 145, 216-229, 252, 284, 304, 318, § VI.E (Ex. 7).) Rather than provide technical opinions based on his technical training, Dr. Annavaram instead provided legal opinions regarding contract interpretation.

Dr. Kennedy's rebuttal report opines that Arm's damages from Defendants' breach of the Nuvia ALA can be quantified. (Kennedy Rbt. Rpt. ¶¶ 70-90 (Ex. 8).) Dr. Kennedy's opinions, however, rely on Arm's settlement proposals to resolve the parties' dispute arising from Qualcomm's failure to obtain consent to the assignment of the Nuvia ALA to Qualcomm. (*Id.* ¶¶ 73-90.) Dr. Kennedy also opines that various methodologies exist to quantify damages, but he does not apply these methodologies to arrive at an actual damages number. (*Id.* ¶¶ 91-116.)

Mr. Coates's rebuttal report provides no affirmative opinions, restricting himself to criticism of Mr. Subramanian. Mr. Subramanian opines on intellectual property licensing and negotiation theory. Mr. Coates in an expert in neither. Rather, Mr. Coates is a lawyer and draws primarily on his work as a corporate lawyer, an SEC lawyer, and law professor for his opinions. He provides personal opinions about the sufficiency of the evidence on which Mr. Subramanian relied, the credibility of witnesses on whom Mr. Subramanian relied, and whether Mr. Subramanian's opinions are admissible. (*See, e.g.*, Coates Rbt. Rpt. ¶ 84 (opining that Mr. Subramanian's conclusions are "unfounded and speculative."), ¶ 122 ("[I]t appears that Professor

Subramanian's conclusion consists of a legal opinion that is not derived from expertise in negotiation theory or transactional practice.") (Ex. 10).) Mr. Coates also devotes seventeen pages to a personal summary of alleged facts compiled from materials given to him by counsel and assumptions that counsel asked him to make. (*Id.* at ¶¶ 21-73.) The end result is a biased and incomplete narrative, akin to an opening statement.

Dr. Steckel's rebuttal report regarding Arm's trademarks similarly asserts that (1) Dr. Dhar does not meet the standard for scientific rigor, and (2) Dr. Dhar's opinions have "no valid support" and are "speculative." (Steckel Rbt. Rpt. ¶¶ 23, 29-36, 38, 41, 44, §§ III, IV (Ex. 11).)

On March 25, 2024, Defendants served the reply report of Dr. Annavaram. Dr. Annavaram's reply report disclosed, for the first time, opinions relating to a ▮▮▮▮▮▮ that Dr. Colwell had addressed in his opening report. (Annavaram Reply Rpt. ¶¶ 19-35 (Ex. 12).)

On May 20, 2024, Defendants served the opening report of Dr. Kennedy relating to Defendants' counterclaims. Dr. Kennedy's report sets forth a purported methodology for calculating Defendants' alleged damages that requires, among other things, the identification of relevant Arm licenses and apportionment of the product features at issue. (Kennedy Rpt. ¶¶ 57-64 (Ex. 13).) Dr. Kennedy, however, does not apply his methodology to arrive at any damages number and fails to conduct the very apportionment that he calls for. (*Id.* ¶ 66.) On June 24, 2024, Defendants served the reply report of Dr. Kennedy relating to Defendants' counterclaims. (Kennedy Reply Rpt. ¶¶ 6-26 (Ex. 20).)

## IV.   LEGAL STANDARD

The proponent of expert opinion testimony bears the burden of establishing the admissibility of the testimony by a preponderance of the evidence. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 n.10 (1993); *Jaroslawicz v. M&T Bank Corp.*, C.A. No. 15-897-EJW, 2024 WL 474846, at *6 (D. Del. Feb. 7, 2024). Expert testimony is admissible only if

the proponent demonstrates that it is (i) based on "scientific, technical, or other specialized knowledge" that will assist the trier of fact; (ii) "based on sufficient facts or data"; (iii) "the product of reliable principles and methods"; and (iv) reliably applies "the principles and methods to the facts of the case." Fed. R. Evid. 702; *see Daubert*, 509 U.S. at 589-97; *see also*, *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994) ("[A]ny step that renders the [expert's] analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible.").

## V.    ARGUMENT

### A.    The Court Should Exclude Dr. Annavaram's Opinions

#### 1.    Dr. Annavaram's Legal Interpretations Are Inadmissible.

Dr. Annavaram repeatedly relies on a personal interpretation of the Nuvia and Qualcomm ALA, which should be excluded as improper legal opinions. "[A]n expert witness is prohibited from rendering a legal opinion. Such testimony is prohibited because it would usurp the District Court's pivotal role in explaining the law to the jury." *See Flickinger v. Toys "R" Del., Inc.*, 492 F. App'x 217, 224 (3d Cir. 2012) (citing *Berckeley Inv. Grp. Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006)). Courts "largely permit the parties' technology experts to testify but exclude opinions beyond their qualifications and to the extent the opinions constitute improper legal opinions or opinions on intent or state of mind." *Allscripts Healthcare, LLC v. Andor Health, LLC*, C.A. No. 21-704-MAK, 2022 WL 3021560, at *1 (D. Del. July 29, 2022).

Dr. Annavaram improperly provides legal opinions regarding (1) what constitutes an "████████████████ under the Nuvia ALA" (Ex. 7 ¶¶ 16-18, 81, 216-229); (2) the legal requirements under the Nuvia ALA and Qualcomm ALA (*id.* ¶¶ 15, 91, 145, 252, 284, 304, 318); and (3) whether code downloaded by Qualcomm falls under the Nuvia ALA or Qualcomm ALA as a matter of law (Ex. 6 ¶¶ 3, 4, 53, 54, 78, 79, 80, 87, 88, 91, 93, 110, 115, 122, 123; Ex. 7 ¶¶ 9, 321; Ex. 12 at ¶¶ 9, 13, 36-70). These improper legal opinions should be excluded.

    **a.**    **Dr. Annavaram's Opinion That "No Core Was an ███████████ Under the Nuvia ALA"**

Dr. Annavaram's opinion regarding what constitutes an ████████████████ Under the Nuvia ALA" should be excluded as an improper legal opinion. "It is well-established 'the law of contract interpretation . . . firmly prohibits expert testimony as to legal duties, standards or ramifications arising from a contract.'" *Allscripts Healthcare*, 2022 WL 3021560, at *44 (excluding statement "*[u]nder the Marketing Services Agreement*, Andor could market its ThinkAndor and AndorNow solutions to Allscripts clients" (emphasis added)) (citation omitted).

Dr. Annavaram's Rebuttal Report contains legal opinions regarding whether Nuvia's CPU design was an "████████████████" under the Nuvia ALA:

- "As I detail below in Section VI, the ██████████ (as existing at the time of the Nuvia acquisition) was not an ████████████████ *under the Nuvia ALA*." (Ex. 7 ¶ 16 (emphasis added); *see also id.* ¶ 17.)

- "Each of the Qualcomm Product Designs developed after the ██████████ (as existing at the time of the Nuvia acquisition) are not ██████████ the ██████████ ████ or ██████████ obtained *under the Nuvia ALA*." (*Id.* ¶ 18 (emphasis added).)

The legal nature of Dr. Annavaram's opinions is confirmed in Section VI.E. of his report. There, Dr. Annavaram explicitly states: "*In my opinion*, no Qualcomm Core was an ██████████ ██████████ *under the Nuvia ALA*." (*Id.* ¶ 217 (emphases added).) Dr. Annavaram's opinions are rooted in his personal, legal interpretation of the Nuvia ALA:

> *[I]t is my opinion that* neither the ██████████ (as existed at the time of acquisition) nor any Qualcomm Core was an ██████████████ under the Nuvia ALA, *based on the requirements of an* ██████████ listed at ███ *in the Nuvia ALA Annex 1*, prior to the termination of the Nuvia ALA agreement, including because no Qualcomm Core has ever ████████████████████

(*Id.* ¶ 229 (emphases added).)

Elsewhere in Section VI.E of his Rebuttal Report, Dr. Annavaram again confirms that his opinions rely on his legal interpretation of the Nuvia ALA:



(*Id.* ¶ 218 (emphasis added).) Dr. Annavaram analyzes correspondence between Arm and Qualcomm under his legal interpretation of ▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* ¶¶ 219-228.) Courts in this district have excluded such contract interpretations by experts. *See Dow Chem. Can. Inc. v. HRD Corp.*, 656 F. Supp. 2d 427, 436 (D. Del. 2009), *aff'd*, 587 F. App'x 741 (3d Cir. 2014) (striking opinion regarding contract requirements).

Thus, the Court should exclude paragraphs 16, 17, 81, and 216 to 229 of his Rebuttal Report.

####        b.        Dr. Annavaram's Opinions Regarding Requirements "Under the Nuvia ALA" or "Under the Qualcomm ALA"

Dr. Annavaram provides several legal opinions based on his interpretation of what is required "under" the Nuvia ALA as compared to the Qualcomm ALA. As support, Dr. Annavaram either provides no citation or cites to documents that do not refer to the Nuvia or Qualcomm ALAs. The statements reflect Dr. Annavaram's own conclusions as to the meaning of each ALA and should be excluded.

Paragraph 15 of Dr. Annavaram's rebuttal report states that "[t]he Qualcomm Product Designs cannot ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ *under the Nuvia ALA* based on any use of portions of the ▮▮▮▮▮▮ codebase in Qualcomm Product Designs." (Ex. 7 ¶ 15 (emphasis added).) Dr. Annavaram provides no cite to support this statement.

In paragraph 91 of his rebuttal report, Dr. Annavaram purports to provide a timeline of

events, but in doing so, he concludes that, as a matter of law, these events fall under the

Qualcomm ALA instead of the Nuvia ALA:

- "On February 1, 2022, Qualcomm submitted to Arm ████████████████████████
  ████ *under the Qualcomm ALA* without ██████████████████ (*Id.* ¶ 91
  (emphasis added).)

- "On February 4, 2022, ARM ████████████████████████████████████
  ██████ *under the Qualcomm ALA*." (*Id.* (emphasis added).)

- "On March 21, 2022, Qualcomm submitted ████████████████████████████
  ████████ *under the Qualcomm ALA*." (*Id.* (emphasis added).)

The remainder of Dr. Annavaram's rebuttal report is littered with impermissible legal

opinions. In paragraph 145, he concludes that Defendants' ██████████ was designed "by

Nuvia and Qualcomm independently from any ██████████ *under their respective ALAs*."

(*Id.* ¶ 145 (emphasis added).) In paragraph 252, he concludes that Qualcomm's products "do not

include microarchitecture ██████████████ ██████████████ *provided*

*under the Nuvia ALA*." (*Id.* ¶ 252 (emphasis added).) In paragraph 284, he concludes that ██

██████ ████████████████████████████ under their respective

ALAs," and that Nuvia and Qualcomm's efforts were done "*under their respective ALAs*." (*Id.* ¶

284 (emphasis added).) In paragraph 304, he concludes that "Qualcomm Cores were developed

*under the Qualcomm ALA*." (*Id.* ¶ 304 (emphasis added).) In paragraph 318, he concludes that

"[a]ll of the development work on ██████████ occurred at Qualcomm *under the Qualcomm*

*ALA*" and that "██████████ does not ██████████ ██████████ *under the*

*Nuvia ALA*." (*Id.* ¶ 318 (emphases added).) Dr. Annavaram does not cite to any evidence to

support these statements, confirming their improper legal nature.

###### c.      Dr. Annavaram's Opinions Regarding the Swap Out

Dr. Annavaram's opening report relating to Arm's claims opines that, after Qualcomm

acquired Nuvia, ████████████████████████████████████████████

███████████████████████████████████ (i.e., the "Swap Out"). The entire premise

of Dr. Annavaram's opinion, however, is based on an improper legal conclusion.

Dr. Annavaram defines "Qualcomm-sourced ARM RTL" as "ARM RTL downloaded

*under Qualcomm's license* through ARM Connect using Qualcomm login credentials." (Ex. 6 ¶

4 (emphasis added); *see also id.* ¶ 53.) Nowhere does Dr. Annavaram explain his basis for

concluding that ARM RTL was downloaded under a particular license. Accordingly, Dr.

Annavaram's opinions that rely on his improper legal conclusion regarding "Qualcomm-sourced

ARM RTL" should be excluded. (*Id.* ¶¶ 3, 4, 53, 54, 78-80, 87, 88, 91, 93, 110, 115, 122, 123;

Ex. 7 ¶¶ 9, 321; Ex. 12 ¶¶ 9, 13, 36-70.) *See Allscripts*, 2022 WL 3021560, at *44.

###### d.      Dr. Annavaram's Interpretations of the ALAs Should Be Excluded Because He Is Not Qualified

Should this Court determine that any of Dr. Annavaram's opinions above do not

constitute improper legal conclusions, this Court should still exclude these opinions because Dr.

Annavaram is not qualified to provide opinions regarding the meaning and scope of contracts.

*See* Fed. R. Evid. 702. Dr. Annavaram himself states that he is "not a lawyer." (Ex. 7 ¶ 19.) Dr.

Annavaram's "Qualifications and Background" section of his opening report does not mention

any expertise in analyzing licensing agreements. (Ex. 6 § III.)

A district court can exclude an expert "if the particular expert does not have sufficient

specialized knowledge to assist the jurors." *Bornstein v. Monmouth Cnty. Sheriff's Off.*, 658 F.

App'x 663, 670 (3d Cir. 2016) (internal quotation and citation omitted). Because Dr.

Annavaram's opinions above relate to interpretations of licensing agreements, and Dr.

Annavaram is neither a lawyer nor a licensing expert, this Court should exclude those opinions.

### 2.      Dr. Annavaram's ███████████ Opinions

Dr. Annavaram's reply report relating to Arm's claims contains new opinions regarding a ███████████ that were never disclosed in his opening or rebuttal reports. (*See* Ex. 12 ¶¶ 19-35.) These opinions, which are unsupported by the record evidence, are untimely. They should have been disclosed in Dr. Annavaram's rebuttal report to Dr. Chen and Dr. Colwell, not held for a reply that addresses a wholly different topic. Defendants' late disclosure is prejudicial to Arm, and the belated opinions should be excluded.

Under Federal Rule of Civil Procedure 37, a party is not allowed to use previously undisclosed information "unless the failure [to disclose] was substantially justified or is harmless." Dr. Colwell and Dr. Annavaram simultaneously submitted opening expert reports on December 20, 2023. Dr. Colwell's opening report addressed Arm's claims and included opinions relating to ███████████. (*See* Ex. 1 ¶¶ 163-165.) Dr. Annavaram's opening report addressed Qualcomm's efforts to comply with the termination provisions and said nothing about ██ ███████████ Dr. Annavaram's February 27, 2024 rebuttal report (responding to Dr. Colwell's opening report) included nothing regarding ███████████ Instead, the opinions about ██ ███████████ appeared for the first time in Dr. Annavaram's reply report of March 25, 2024.

Dr. Annavaram's late-disclosed opinions should be excluded both because they are untimely and because he lacks sufficient facts or data, as required under Federal Rule of Evidence 702.

### a.      All *Pennypack* Factors Weigh in Favor of Excluding Dr. Annavaram's Untimely Opinions and Disclosures

Federal Rule of Civil Procedure 37(c)(1) states that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information

. . . to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Courts in the Third Circuit consider the *Pennypack* factors to determine whether a failure to provide information was harmless: (1) prejudice or surprise to the party against whom the evidence is offered; (2) ability of the injured party to cure the prejudice; (3) likelihood of disruption to trial; (4) bad faith or willfulness in failing to disclose the evidence; and (5) importance of the information withheld. *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977)). "Courts applying the *Pennypack* factors in the case of sophisticated, complex litigation involving parties represented by competent counsel have been less indulgent in their application and more willing to exclude evidence without a strict showing that each of the *Pennypack* factors has been satisfied." *Bridgestone Sports Co. Ltd. v. Acushnet Co.*, C.A. No. 05-132-JJF, 2007 WL 521894, at *4 (D. Del. Feb. 15, 2007).

Each *Pennypack* factor weighs in favor of excluding Dr. Annavaram's untimely opinions.

### (i)      The late disclosure is prejudicial to Arm.

Dr. Annavaram introduced his new opinions regarding ████████ for the first time in his March 25, 2024 reply report. (Ex. 12 ¶¶ 19-35.) Dr. Colwell had opined in his December 20, 2023 opening report that the relevant Qualcomm products incorporate ████████ as shown by, among other things, ████████ (*See* Ex. 1 § IV.B.) Dr. Annavaram could have and should have fully responded to Dr. Colwell's arguments in his rebuttal report. Instead, Dr. Annavaram surprised everyone by including his ████████ opinions in his reply report. It was withheld until Arm had no opportunity to respond. This is highly prejudicial to Arm and warrants exclusion. *See, e.g.*, *Astrazeneca LP v. Breath Ltd.*, C.A. No. 08-1512 (RMB/AMD), 2014 WL 4798477, at *3-4 (D.N.J. Sept. 26, 2014) (excluding report containing new data that other side could not rebut given late juncture of case); *Vehicle IP, LLC v. Werner Enters.*, C.A. No. 10-503-

SLR, 2013 WL 4786119, at *3 (D. Del. Sep. 9, 2013) (excluding expert testimony due to prejudice caused by inability to take complete discovery).



### (ii)    Arm cannot cure the resulting prejudice.

Arm cannot cure the prejudice created by Dr. Annavaram's untimely opinions. Fact discovery is closed. Expert discovery is closed. Arm's experts had no opportunity to respond to or critique Dr. Annavaram's new opinions or the untimely disclosed source code.

### (iii)    The untimely opinions would disrupt the case.

The only way to cure the prejudice to Arm would be to re-open expert discovery and allow Arm a sur-reply and an additional deposition, which would inherently disrupt the case schedule. Trial is set for December 2024. Extending discovery and allowing an additional report and deposition would disrupt the case schedule.

### (iv)    The untimely opinions were made in bad faith.

Dr. Annavaram's untimely opinions and disclosures were made in bad faith. As stated above, Dr. Annavaram first introduced his opinions regarding ▮▮▮▮▮▮▮ in his reply report. These withheld opinions were a response to Dr. Colwell's December 20, 2023 opening report, wherein he opined that certain Qualcomm products incorporate ▮▮▮▮▮▮▮ (*See* Ex. 1

§ IV.B.) Dr. Annavaram thus should have presented these opinions in his February 27, 2024 rebuttal report. Defendants withheld them until a reply report that deals with the alleged "swap out," not ██████████ At that point, Dr. Colwell could no longer respond.

Similarly, Defendants withheld source code printouts until June 25, two days before Dr. Annavaram's deposition. This denied Arm any chance to examine fact witnesses on the topic and concealed it from Arm's experts.

**(v)      The untimely opinions are not important.**

Dr. Annavaram's untimely opinions regarding ████████████ are not significant. As explained by Dr. Colwell, ████████████████████████████████████████████████ ████████████████████████████ Thus, even if Dr. Annavaram's opinions regarding ██████████ ██ are correct, it does not change the principal opinions offered by either side's technical experts. It would nevertheless be prejudicial if Dr. Annavaram were permitted to provide such opinions at trial given their untimely disclosure.

**b.      The Untimely Opinion Are Unsupported Under FRE 702(b).**

Dr. Annavaram's ██████████ opinions should also be excluded because Dr. Annavaram's reply report did not provide a sufficient code analysis to support his opinions, as revealed by the fact that Defendants ████████████████████████████████████ ██████████ Many of his reply opinions appear to have been based on conversations with certain Qualcomm engineers (*see* Ex. 12 ¶ 24 fn. 6) and little more. Rule 702(b) requires expert testimony to be "based on sufficient facts or data." Fed. R. Evid. 702(b). And "expert testimony based on assumptions lacking factual foundation in the record is properly excluded." *Meadows v. Anchor Longwall & Rebuild, Inc.*, 306 F. App'x 781, 790 (3d Cir. 2009); *see also Gemak Tr. v. Reckitt Benckiser LLC*, C.A. No. 18-1855-RGA, 2020 WL 4284973, at *5 (D. Del. July 27, 2020) (disregarding "'conclusory, unsupported assertions by experts'") (citation omitted).

-14-

Dr. Annavaram's opinions and testimony regarding ███████ in paragraphs 24, 27, 29, and 30 of his reply report are unsupported by code analysis or corroborating evidence and should be stricken.

**B.      The Court Should Exclude Dr. Kennedy's Opinions**

> **1.      Dr. Kennedy's Opinion That Arm's Damages Are Quantifiable Relies on Inadmissible Rule 408 Settlement Negotiations**

Dr. Kennedy's opinion that Arm's damages can be quantified relies on inadmissible settlement communications protected by Rule 408 and should be excluded on those grounds. Rule 408 prohibits the use of evidence relating to "compromise offers and negotiations," including "conduct or a statement made during compromise negotiations." Fed. R. Evid. 408. The purpose of Rule 408 is "to encourage full and frank disclosure between parties in order to promote settlements rather than protracted litigation." *Olin Corp. v. Ins. Co. of N. Am.*, 603 F. Supp. 445, 449 (S.D.N.Y. 1985); *see also Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1364 (10th Cir.1987) ("[T]he better practice is to exclude evidence of compromises or compromise offers."). The protections of Rule 408 apply to expert opinions that rely on such communications: such opinions are properly excluded as more prejudicial than probative. *Apple, Inc. v. Samsung Elecs. Co.*, C.A. No. 12-00630-LHK, 2014 WL 794328, *9 (N.D. Cal. Feb. 25, 2014) ("The unfair prejudicial effect of an expert opinion based on a settlement offer is high . . . [A]dmitting a damages number based on a settlement offer through an expert contravenes this central public policy of favoring settlement of disputes.").

Dr. Kennedy's rebuttal report opines that Arm's damages from Defendants' breach of the Nuvia ALA are quantifiable and relies, in part, on the parties' proposals for a monetary payment to resolve a legal dispute over whether Nuvia could assign the Nuvia ALA to Qualcomm. (Ex. 8 ¶¶ 73-86.) These proposals were made in the context of settlement discussions arising from

Qualcomm's failure to obtain Arm's consent to assignment of the Nuvia ALA. ████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████ This is often reflected expressly in

the document. ███ ███████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

Accordingly, the Court should strike paragraphs 35, 70 to 90, of Dr. Kennedy's rebuttal report,

the communications cited in those paragraphs, and any other opinions that rely on those

paragraphs or communications, including paragraph 158.

> **2.     Dr. Kennedy's Counterclaim Opinion That Defendants' Damages Are Quantifiable Does Not Actually Provide a Damages Number**

Dr. Kennedy opines in his opening and reply reports relating to Defendants'

counterclaims that Defendants' purported damages can be quantified, but he does not conduct

any analysis to arrive at an actual damages number. His opinions should therefore be excluded

because they fail to meet the *Daubert* requirement that an expert reliably apply his principles and

methods.

Rule 702(d) requires expert opinions to "reflect[] a reliable application of the principles

and methods to the facts of the case." Fed. R. Evid. 702(d). To determine whether this

requirement is met, the court must evaluate "whether [the] reasoning or methodology" was

applied "properly." *Daubert*, 509 U.S. at 592-93. The failure to apply that reasoning or

methodology warrants exclusion. *In re Zoloft (Sertraline Hydrochloride) Prod. Liab. Litig.*, 858

F.3d 787, 797 (3d Cir. 2017) (affirming exclusion where expert "did not actually implement [his

methodology]; instead he qualitatively discussed the general trend in the data"); *Amorgianos v. Nat'l RR Passenger Corp.*, 303 F.3d 256, 267-69 (2d Cir. 2002) (upholding exclusion because of "failure to apply [expert's] stated methodology 'reliably to the facts of the case'").

Dr. Kennedy's opening and reply counterclaim reports identify a proposed four-step process for quantifying Defendants' purported damages. (Ex. 13 ¶¶ 50-66, Ex. 20 ¶¶ 6-26.) Dr. Kennedy, however, does not fully explain this methodology, let alone apply it to arrive at a damages number. Instead, he alleges that "[h]ad Arm produced the relevant license agreements . . . then I would have analyzed the fees, royalties, and terms to identify revenue specifically related to CMN-Kampos." (Ex. 13 ¶ 60.) That is wrong.

As Mr. Schoettelkotte explains, Dr. Kennedy could have applied his methodology to the licenses produced by Arm. (Schoettelkotte Rbt. Rpt. ¶¶ 42-52 (Ex. 16).) Dr. Kennedy's failure to apply his methodology to the available facts warrants exclusion of his opening and reply reports.

**C.      The Court Should Exclude Mr. Coates's Opinions**

**1.      Mr. Coates Is Not Qualified to Opine About IP Licensing and Negotiation Theory**

Mr. Coates is an experienced lawyer. He has substantial experience as a Harvard law professor and teaches on mergers and acquisitions and SEC regulation. That might qualify him to give legal opinions, but they would be inadmissible. He has no experience or training that qualifies him to provide expert testimony about intellectual property licensing or negotiation theory—the separate expertise on which Mr. Subramanian relies for his opinions.

An expert must possess "scientific, technical, or other specialized knowledge will help the trier of fact." Fed. R. Evid. 702(a). The fact that a proposed witness may be an expert in one area, however, does not qualify him to testify as an expert in all related areas. *See Surace v. Caterpillar, Inc.*, 111 F.3d 1039, 1055 (3d Cir. 1997) (excluding electrical and mechanical

engineer because he had "no training and no experience" in field of "habituation"). "The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Shire ViroPharma Inc. v. CSL Behring LLC*, C.A. No. 17-414-MSG, 2021 WL 1227097, at *3 (D. Del. Mar. 31, 2021) (citation omitted). Mr. Subramanian's opinions apply his expertise in negotiation theory and intellectual property licensing to the facts of this case. (*See, e.g.*, Ex. 4 ¶¶ 15, 19.) Mr. Coates purports to respond to that work but he has expertise in neither category. (*See* Ex. 10 ¶¶ 20, 74-154.)

Mr. Coates's CV is devoid of experience in intellectual property licensing and negotiation theory. Mr. Coates has never negotiated an intellectual property license between two independent parties. (*See* Ex. 9 at 76:6-23.) Mr. Coates has never taught a course in negotiation theory. (*Id.* at 17:9-16.) Mr. Coates has never submitted a paper for publication "squarely on the topic of negotiation theory . . . as a stand-alone-matter." (*Id.* at 17:17-18:5.) Mr. Coates would not "ordinarily tell someone [that] they should hire [him] as an expert in intellectual property" or hold himself out to be an expert on IP licensing models. (*Id.* at 74:8-18; 80:18-81:1 (Q: That is, you would not hold yourself out to clients as being an expert on IP licensing models? A: Again, as a freestanding matter, no. Again, I'm not an IP person in that way.").) Mr. Coates lacks expertise in intellectual property licensing and negotiation theory that justifies providing any opinion on the central intellectual property licenses at issue in this case. *See Surace*, 111 F.3d at 1055-56 (expert unqualified where he lacked expertise with issue he was asked to opine).

Tellingly, Mr. Coates's experience with intellectual property licenses is so deficient that he relies instead on key assumptions given to him by Defendants' counsel to understand or evaluate the scope of the relevant licenses. Mr. Coates relies on an instruction from Defendants'

counsel that (1) ██████████████████████████████████████████████

██████████████████████████ (Ex. 10 ¶ 17), and (2) ████████████████████████

████████████████████████████████████████████████████████ (*id.* ¶ 88

n.142, ¶ 117 n.181). This alone is indicative of the degree to which Mr. Coates is operating

outside of any expertise that he has.

Mr. Coates's experience in corporate law, mergers and acquisitions, and securities

litigation (*see* Ex. 10, Appx. A) does not qualify him as an expert in intellectual property

licensing and negotiation theory, which involve separate and different subject matter. *See, e.g.*,

*In re Puda Coal Sec. Inc., Litig.*, 30 F.Supp.3d 230, 254 (S.D.N.Y. 2014) (expert in accounting

precluded from testifying as to U.S. auditing standards because she had not conducted a U.S.

audit). Mr. Coates said that he was exposed to intellectual property licenses in the context of

M&A transactions decades ago when he worked at Wachtell Lipton. Experience as a lawyer who

once worked on a matter that involved a license agreement is not a basis to give expert testimony

about how companies approach licenses for their intellectual property. Unsurprisingly, he knew

nothing about the subject matter of the license agreement at issue here and could not respond to

questions regarding the microarchitecture, SOC, RTL, server cores, Arm compliant cores, Arm

ISAs, and other technology at issue. (*See id.* at 91:21-98:1.)

*Crockett v. Luitpold Pharmaceuticals, Inc.* reflects why exclusion is appropriate here. In

*Crockett*, the defendant objected to an expert on the grounds that he lacked qualifications to

opine on prescription drug labeling. C.A. No. 19-276, 2023 WL 2187641, at *3 (E.D. Pa. Feb.

23, 2023). The court agreed, finding that the expert's FDA experience in electronics and

software was too far removed from the topic of prescription drug labeling. *Id.* at *4. Like the

expert in *Crockett,* Mr. Coates's potential exposure to IP licensing and negotiation theory in

M&A transactions is too far removed from the subject matter of Mr. Subramanian's opinions. Mr. Coates's opinions should be excluded. *See In re Puda Coal*, 30 F.Supp.3d at 254 (excluding accounting expert who had not conducted a U.S. audit); *Koninklijke Philips N.V. v. Telit IOT Sols., Inc.*, C.A. No. 20-1708-CFC, 2023 WL 8559025, at *1 (D. Del. Dec. 11, 2023) (excluding expert who had no relevant background, training, or education); *Yazujian v. PetSmart*, 729 F. App'x 213, 215-16 (3d. Cir. 2018) (affirming district court's decision to exclude expert who had no relevant academic background, formal training, or work experience).

### 2. Mr. Coates Usurps the Roles of the Court and the Trier of Fact

Experts do not exist to provide legal opinions or commentary on the sufficiency of the evidence or admissibility of other experts' work. These activities usurp the roles of the Court and the trier of fact. *See Romero v. Allstate Ins. Co.*, 52 F. Supp. 3d 715, 720-24 (E.D. Pa. 2014) ("It is well established that expert testimony that usurps the role of either the jury or the court is not admissible."); *Berckeley Inv. Grp.*, 455 F.3d at 217 (Expert witnesses are "prohibited from rendering a legal opinion . . . because it would usurp the District Court's pivotal role in explaining the law to the jury."). It is "the jury's function, not that of an expert witness, to review the factual record and determine what actually happened." *Gilliland v. Hergert*, C.A. No. 05-1059, 2007 WL 4105223, at *9 (W.D. Pa. Nov. 15, 2007). Nonetheless, Mr. Coates's report is replete with statements on these topics, which should be excluded.[2]

---

[2] Mr. Coates repeatedly agreed that he should not provide legal opinions, but he equally often hedged and claimed that Mr. Subramanian's opinion justify his legal responses. (*See, e.g.*, Ex. 10 ¶ 94 ("Professor Subramanian's conclusion appears to consist of an opinion about legal issues, which I do not generally understand to be within the role of an expert, and I respond here only to the extent his conclusion is considered admissible."); Ex. 9 at 14:4-10 ("[T]here were times in Professor Subramanian's initial report . . . where he does speak to his take on what a contract in this matter says, which seemed to me to be about legal interpretation. And so, I have views relative to that.").) That is wrong. Mr. Subramanian is not giving legal opinions, and Mr. Coates most certainly should not be giving legal opinions on contract law, contract interpretation, or how the law applies to the evidence that the trier of fact will receive.

### a.   Mr. Coates's Opinions on the Admissibility and Proper Scope of Expert Opinion Are Themselves Inadmissible

Mr. Coates's statements regarding the admissibility of Mr. Subramanian's testimony are improper legal opinions and therefore inadmissible. (Ex. 10 ¶¶ 19, 75, 76, 94, 97, 98, and 122.) For example, Mr. Coates asserts that "Professor Subramanian's conclusion appears to consist of an opinion about legal issues, which I do not generally understand to be within the role of an expert." (*Id.* ¶ 94; *see also id.* ¶¶ 19, 76.) Similarly, Mr. Coates opines that "Professor Subramanian's interpretations of Section ███ touch on legal issues that would supplant the role of the courts as the interpreters of contract provisions, rather than expertise in negotiation theory or transactional practice." (*Id.* ¶ 97; *see also id.* ¶ 122 ("Subramanian's conclusion consists of a legal opinion that is not derived from expertise in negotiation theory or transactional practice.").)

Mr. Coates's legal opinions not only mischaracterize Subramanian's testimony, but they are also clear examples of the legal conclusions that Mr. Coates himself recognizes as inadmissible. Such legal opinions must be excluded. To permit an expert to offer an opinion on such issues would improperly usurp the Court's role in determining the admissibility and proper scope of expert testimony. *See Penn Mut. Life Ins. Co. v. Norma Espinosa 2007-1 Ins. Tr.*, 70 F. Supp. 3d 628, 634-35 (D. Del. Sept. 29, 2014) (excluding testimony because it is "not the proper role of the rebuttal expert to decide if another expert witness offers legal conclusions").

### b.   Mr. Coates's Opinions on the Sufficiency of Evidence and Credibility Are Inadmissible

Mr. Coates's opinions regarding the sufficiency of the evidence and the credibility of Mr. Subramanian should be stricken because they impermissibly usurp the role of the trier of fact. (Ex. 10 ¶¶ 20, 77, 78, 80, 81, 83, 84, 86,  87, 90, 123, 127, 133, 135, 139, 143, 145-148, 149, 152-154.) The role of an expert is to assist the trier of fact, not to serve as one. *See Romero*, 52 F. Supp. 3d at 720-24. "[T]estimony of an expert that constitutes mere personal belief as to the

weight of the evidence invades the province of the fact-finder." *Pell v. E.I. DuPont de Nemours & Co.*, 231 F.R.D. 186, 192 (D. Del. 2005); *see also Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l, Inc.*, 350 F. Supp. 2d 582, 588 (D. Del. 2004). Similarly, credibility determinations are the sole province of the fact finder. *See U.S. v. Leo*, 941 F.2d 181, 196 (3d Cir. 1991) ("[I]t is axiomatic that the witness may not go so far as to usurp the exclusive function of the jury to weigh the evidence and determine credibility."); *see also Secured Sys. Tech., Inc. v. Frank Lill & Son, Inc.*, C.A. No. 08-6256, 2012 WL 6628878, at *5 (W.D.N.Y. 2012) ("[O]pinions as to the credibility of . . . other expert witnesses are not admissible.").

For example, Mr. Coates suggests that Mr. Subramanian's reliance on the testimony of Arm's former Vice President of North American Sales, Tim Herbert, is inadequate because Mr. Herbert lacks credibility. (*Id.* ¶ 81 ("Professor Subramanian's reliance on Mr. Herbert's testimony is called into question by Mr. Herbert's acknowledgement in the very passage Professor Subramanian cites that, ███████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████).) As another example, Mr. Coates repeatedly and baselessly asserts that Mr. Subramanian's opinions are "incomplete," unreliable," "unfounded," and "speculative." (*Id.* ¶¶ 20, 83, 84, 123, 143, 146-148.)

Indeed, Mr. Coates's report reads more like a *Daubert* motion than a rebuttal expert report. But an expert's personal belief as to credibility and the sufficiency of evidence is inadmissible. *See Pell*, 231 F.R.D. at 192 (expert may not provide testimony "that constitutes mere personal belief as to the weight of the evidence"); *see also Romano v. John Hancock Life Ins. Co. (USA)*, C.A. No. 19-21147, 2022 WL 1447733, at *30-31 (S.D. Fla. May 9, 2022) (striking expert report "[b]ecause [the] report is riddled with impermissible legal conclusions and

is written more as if [the rebuttal expert] is an attorney seeking exclusion of [opposing expert witness's] initial report than as an expert challenging those opinions"). Such statements should be stricken entirely. *See Leo*, 941 F.2d at 196 ("[W]itness may not go so far as to usurp the exclusive function of the jury to weigh the evidence and determine credibility."); *FTC v. Simple Health Plans LLC*, C.A. No. 18-62593, 2021 WL 810262, at *10 (S.D. Fla. Mar. 3, 2021) (excluding testimony that "impermissibly instructs the jury how to weigh potential evidence" and opines "about the sufficiency of [Plaintiff's] evidence").

### c.      Mr. Coates's Factual Narrative is Improper.

Mr. Coates dedicates seventeen pages, or nearly one-third of the substance of his report,[3] to a factual narrative based on his personal assessment of documents and assumptions provided to him by counsel. (Ex. 10 ¶¶ 21-73.) But it is black letter law that an "expert may not offer testimony that simply 'regurgitates what a party has told him' or constructs 'a factual narrative based on record evidence.'" *Dalgic v. Misericordia Univ.*, No. 16-cv-0443, 2019 WL 2867236, at *11 (M.D. Pa. July 3, 2019) (citation omitted). "It is the jury's function, not that of an expert witness, to review the factual record and determine what actually happened." *Gilliland*, 2007 WL 4105223, at *8-9 (precluding expert testimony on "information contained in the Factual Background section"). "Acting simply as a narrator of the facts does not convey opinions based on an expert's knowledge and expertise" and "fails to fulfill *Daubert*'s most basic requirements." *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013).

Mr. Coates's lengthy factual narrative should be excluded because the testimony merely provides a conduit for Defendants to present their theory of the case. The section of Mr. Coates's report titled "Factual Background" includes, as Mr. Coates admits, "[t]he facts that [he] assumed

---

[3] Excluding the "Introduction," "Qualifications," and "Assignment and Summary of Opinion."

. . . includ[ing] a description of the history, characteristics, and negotiation process between ARM and NUVIA for purposes of NUVIA's ALA and NUVIA's TLA." (Ex. 10 ¶ 17.) In a key portion of the analysis, Mr. Coates concedes that he has not conducted an independent investigation of the facts and accepted the facts as provided to him from Defendants' counsel. (*See, e.g.*, Ex. 9 at 257:1-17 ("Q: And when you say 'I understand from counsel,' and then make the statement, this means that you are taking it from counsel and not giving it further independent investigation, correct? A: Correct. Q: So you have not done analysis to each this conclusion, you are accepting it as an assumption delivered to you by Qualcomm's counsel? . . . A: Correct.").) The entirety of Mr. Coates's "Factual Background" should be excluded.

### 3.    Mr. Coates's "Anti-Assignment" Opinions Will Not Assist the Trier of Fact

Mr. Coates's opinions regarding "anti-assignment" and "change in control" provisions are not proper rebuttal testimony because Mr. Coates merely challenges a straw man that Mr. Subramanian did not offer. *See Withrow v. Spears*, 967 F. Supp. 2d 982, 1001-1002 (D. Del. 2013) (Rebuttal expert report proper "if the intent of the report is 'solely to contradict or rebut evidence on the same subject matter identified' by the opposing party's expert report.") (citation omitted).

Section V.C of Mr. Coates's report addresses anti-assignment and change in control provisions in licensing agreements generally. (Ex. 10 ¶¶ 97-120; *see also id.* ¶ 20.) After discussing differences between such provisions, Mr. Coates concludes that "Mr. Subramanian's failure to distinguish between change-in-control and anti-assignment provisions appears to imply that ARM was entitled to prohibit Qualcomm's acquisition of NUVIA." (*Id.* ¶ 120; *see also id.* ¶ 99 ("Subramanian's mistaken identification of anti-assignment provisions as general change-in-control provisions effectively appears to suggest that ARM was entitled to prohibit Qualcomm's

acquisition of NUVIA.").) Mr. Coates repeatedly criticizes Mr. Subramanian for purportedly finding that ARM could veto a change in control. (*See, e.g., id.* ¶¶ 104, 116.)

But Mr. Subramanian never opines that Arm could veto a change in control of Nuvia. (Subramanian Reply ¶ 28 (Ex. 17).) Mr. Subramanian merely noted that the Nuvia ALA included an assignment provision that required consent prior to assigning the ALA, and that, as a result, ARM terminated the ALA after there was a change in control of Nuvia. (Ex. 4 ¶ 27; *see also id.* ¶ 48 ("To effectuate the CIC provisions, licensors may include an option for contract termination."); Ex. 17 ¶ 32.) Section V.C of Mr. Coates's report should thus be excluded because it challenges a position that Mr. Subramanian never took and is not proper rebuttal testimony. *See Withrow*, 967 F. Supp. 2d at 1002 (reports that "do not directly contradict or rebut the actual contents of that prior report, do not qualify as proper rebuttal or reply reports").

Section V.C should also be excluded because the false suggestion that ARM (or Mr. Subramanian) believes Arm could veto Qualcomm's acquisition of Nuvia would confuse the jury. Such confusion will not be helpful to the trier of fact. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 744 ("The ultimate touchstone is helpfulness to the trier of fact.") (citation omitted).

### D.     The Court Should Exclude Dr. Steckel's Opinions

#### 1.     The Court Should Exclude Dr. Steckel's Opinion That Dr. Dhar "Does Not Meet the Standards for a Rigorous Scientific Analysis Under Accepted Industry Practices and Academic Guidelines"

Dr. Steckel's opinion that Dr. Dhar "does not meet the standards for a rigorous scientific analysis under accepted industry practices and academic guidelines" (Ex. 11 ¶¶ 23, 29-36) should be excluded because the determination of whether an expert's opinions meet the relevant standard of scientific rigor is a role reserved exclusively for the court. An expert's personal belief as to whether an opposing expert's opinion meets the relevant standard of scientific rigor usurps the role of the court and is inadmissible. *See Romano*, 2022 WL 1447733, at *30-31 (striking

expert report "riddled with impermissible legal conclusions" and "written more as if [the rebuttal expert] is an attorney seeking exclusion of [opposing expert witness's] initial report than as an expert challenging those opinions"). Dr. Steckel's opinion should be excluded.

**2.      The Court Should Exclude Dr. Steckel's Opinions Regarding the Sufficiency and Credibility of Evidence that Dr. Dhar Relies Upon**

Dr. Steckel's opinions regarding the sufficiency of evidence that Dr. Dhar relies upon should be excluded because such opinions impermissibly usurp the role of the trier of fact. Dr. Steckel opines that (1) Dr. Dhar has "no valid support" for his assessment of the Arm brand, and (2) Dr. Dhar's conclusions on harm to the Arm brand are "speculative." (Ex. 11 § IV, ¶¶ 38, 41, 44, § IV, ¶¶ 92, 95, 97, 102.) These opinions should be excluded because they do nothing more than assess the weight of the evidence, a role exclusively reserved for the trier of fact.

Dr. Steckel's expert testimony merely opines on the sufficiency and weight of evidence and is thus improper. *See Romero*, 52 F. Supp. 3d at 720-24 ("It is well established that expert testimony that usurps the role of either the jury or the court is not admissible."); *Berckeley Inv. Grp.*, 455 F.3d at 217 (Expert witnesses are "prohibited from rendering a legal opinion . . . because it would usurp the District Court's pivotal role in explaining the law to the jury."); *Gilliland*, 2007 WL 4105223, at *9 (Trier of fact, not expert witness, "review[s] the factual record and determine[s] what actually happened.").

Dr. Steckel's opinion that Dr. Dhar offers "no valid support" in his assessment of the Arm brand (Ex. 11 § IV, ¶¶ 38, 41, 44) does nothing more than criticize Dr. Dhar's evidence, including Dr. Dhar's purported "lack of further evidence from outside Arm." (*Id.* ¶ 44.) Dr. Steckel, however, does not provide a different assessment of this evidence or offer an opinion regarding Arm's brand. Dr. Steckel's opinion as to the validity of Dr. Dhar's evidence is nothing more than an assessment of the weight of such evidence, a role reserved for the trier of fact.

Dr. Steckel's opinion that Dr. Dhar's conclusions on harm to the Arm brand are "speculative" (Ex. 11 § VI, ¶¶ 92, 95, 97, 102) does nothing more than characterize Dr. Dhar's opinions and evidence as "speculative," "overly simplistic," and "unsupported by valid evidence." (*Id.* ¶ 102.) For example, Dr. Steckel suggests that Dr. Dhar's reliance on the testimony of Arm's Chief Commercial Officer, Will Abbey, is inadequate because Mr. Abbey lacks credibility: he "is not a neutral party," and merely "testified to his belief" but "did not provide any support for his testimony." (*Id.* ¶ 95.) Again, these opinions do nothing more than provide Dr. Steckel's assessment of the credibility of the evidence relied upon by Dr. Dhar, and should be excluded for the same reasons discussed above.

### 3.    The Court Should Exclude Dr. Steckel's Fair Use Opinions

Dr. Steckel's opinion that "it is necessary to describe Qualcomm cores as 'Arm-based,' 'Arm-compliant,' or 'Arm-compatible'" should also be excluded because it is a purely conclusory statement that is not based on any facts or analysis. (*Id.* ¶ 117; *see also id.* ¶ 115.)

Dr. Steckel first assumes that "software engineers and others in the industry need to understand the ISA with which the Qualcomm products are compatible in order to determine whether and how other products will work with Qualcomm's." (*Id.* ¶ 117.) Dr. Steckel then concludes that it is necessary to describe Qualcomm's products as "Arm-based," "Arm-compliant," and "Arm-compatible." (*Id.*) But Dr. Steckel fails to provide any analysis as to why technical compatibility with Arm requires using "Arm-based" and "Arm-compliant," which signify more than just compatibility and indicate a connection to Arm's brand. Dr. Steckel's conclusory statements are not useful to the trier of fact and should be excluded. *Callaway Golf Co. v. Dunlop Slazenger Group Ams., Inc.*, C.A. No. 01-669-KAJ, 2003 U.S. Dist. LEXIS 25625, at *13 (D. Del. May 21, 2003) (Expert "must do more than simply aver conclusorily that his experience led to his opinion.") (citation omitted); *see also Meadows*, 306 F. App'x at 790

(expert testimony based on assumptions lacking factual foundation properly excluded).

## VI.    CONCLUSION

For the reasons discussed herein, Arm respectfully requests that the Court exclude the

above opinions and related testimony of Defendants' experts.


Dated: July 10, 2024                                    YOUNG CONAWAY STARGATT &
Redacted Version: July 22, 2024                          TAYLOR, LLP

OF COUNSEL:

Daralyn Durie                                              */s/ Anne Shea Gaza*
Joyce Liou                                                Anne Shea Gaza (No. 4093)
MORRISON & FOERSTER LLP                                   Robert M. Vrana (No. 5666)
425 Market Street                                         Samantha G. Wilson (No. 5816)
San Francisco, CA 94105                                   Rodney Square
(415) 268-7000                                            1000 North King Street
ddurie@mofo.com                                           Wilmington, DE 19801
jliou@mofo.com                                            (302) 571-6600
                                                          agaza@ycst.com
Erik J. Olson                                             rvrana@ycst.com
MORRISON & FOERSTER LLP                                   swilson@ycst.com
755 Page Mill Road
Palo Alto, CA 94304                                       *Attorneys for Plaintiff Arm Ltd.*
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Daniel P. Muino
MORRISON & FOERSTER LLP
2100 L Street, NW
Suite 900, Washington, D.C. 20037
(202) 887-1501
dmuino@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP

707 Wilshire Blvd.
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 10, 2024, a copy of the foregoing document

was served on the counsel listed below in the manner indicated:

**BY EMAIL/FTP**

Jack B. Blumenfeld
Jennifer Ying
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

Isaac B. Zaur
Nora Niedzielski-Eichner
CLARICK GUERON REISBAUM LLP
220 Fifth Avenue, 14th Floor
New York, NY 10001
izaur@cgr-law.com
nniedzie@cgr-law.com

Catherine Nyarady
Anna R. Gressel
Madalyn G. Vaughn
Jacob A. Braly
Alexander M. Butwin
Samantha Mehring
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
agressel@paulweiss.com
mvaughn@paulweiss.com
jbraly@paulweiss.com
abutwin@paulweiss.com
smehring@paulweiss.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
Brian Shiue
Anna P. Lipin
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
kdunn@paulweiss.com
wisaacson@paulweiss.com
mzappala@paulweiss.com
ejmorgan@paulweiss.com
bshiue@paulweiss.com
alipin@paulweiss.com

Andrea L. D'Ambra
Susana Medeiros
Kira Latham
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019
andrea.dambra@nortonrosefulbright.com
susana.medeiros@nortonrosefulbright.com
kira.latham@nortonrosefulbright.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Plaintiff Arm Ltd.*