**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| ARM LTD., a U.K. corporation, | |
| Plaintiff, | |
| v. | C.A. No. 22-1146-MN |
| QUALCOMM INC., a Delaware corporation, QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, and NUVIA, INC., a Delaware corporation, | **PUBLIC REDACTED VERSION** (Filed July 22, 2024) |
| Defendants. | |

**DECLARATION OF MICHAEL J. DESTEFANO IN SUPPORT OF ARM LTD.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

I, Michael J. DeStefano, declare as follows:

1.     I am an attorney with the law firm of Morrison & Foerster LLP ("Morrison & Foerster"), counsel for Plaintiff Arm Ltd. ("Arm") in the above-referenced action.

2.     I submit this declaration in support of Arm's Motion for Partial Summary Judgment.

3.     Attached hereto as **Exhibit 1** is an excerpt of a true and correct copy of Arm's initial public offering, produced by Arm with Bates numbers ARM_01429134 to ARM_01429466.

4.     Attached hereto as **Exhibit 2** is an excerpt of a true and correct copy of the deposition transcript of Simon Segars, taken on November 16, 2023.

5.     Attached hereto as **Exhibit 3** is a true and correct copy of a document entitled "The ARM Diaries, Part 1: How ARM's Business Model Works," produced by Arm with Bates Numbers ARM_01430357 to ARM_01430363.

6.      Attached hereto as **Exhibit 4** is a true and correct copy of a document entitled "Nuvia 'clean-sheet CPU design' performance previewed," produced by Arm with Bates numbers ARM_01430002 to ARM_01430004.

7.      Attached hereto as **Exhibit 5** is an excerpt of a true and correct copy of the deposition transcript of Nitin Sharma, taken on October 27, 2023.

8.      Attached hereto as **Exhibit 6** is a true and correct copy of an email exchange from February and March, 2019, between Simon Segars and Gerard Williams, with the subject line "███" produced by Defendants with Bates numbers QCARM_2422447 to QCARM_2422448.

9.      Attached hereto as **Exhibit 7** is a true and correct copy of an email exchange from May to July, 2019, between Gerard Williams and Tim Herbert, with the subject line "████████████" produced by Defendants with Bates numbers QCARM_3835058 to QCARM_3835061.

10.      Attached hereto as **Exhibit 8** is a true and correct copy of an email dated June 19, 2019, with the subject line "████████" produced by Defendants with Bates number QCARM_0020011.

11.      Attached hereto as **Exhibit 9** is a true and correct copy of the Architecture License Agreement ("ALA") between Arm Ltd. and Nuvia, Inc., dated September 27, 2019, produced by Defendants with Bates numbers QCARM_0337839 to QCARM_0337855.

12.      Attached hereto as **Exhibit 10** is a true and correct copy of the Technology License Agreement ("TLA") between Arm Ltd. and Nuvia, Inc., dated September 27, 2019, produced by Defendants with Bates numbers QCARM_0338297 to QCARM_0338311.

13.     Attached hereto as **Exhibit 11** is an excerpt of a true and correct copy of the deposition transcript of Murali Annavaram, taken on June 27, 2024.

14.     Attached hereto as **Exhibit 12** is an excerpt of a true and correct copy of the deposition transcript of Manu Gulati, taken on October 12, 2023.

15.     Attached hereto as **Exhibit 13** is an excerpt of a true and correct copy of Opening Expert Report of Dr. Murali Annavaram, dated December 20, 2023.

16.     Attached hereto as **Exhibit 14** is a true and correct copy of a document entitled "Qualcomm to Acquire NUVIA," produced by Defendants with Bates numbers QCARM_2423540 to QCARM_2423544.

17.     Attached hereto as **Exhibit 15** is an excerpt of a true and correct copy of the deposition transcript of Paul Williamson, taken on November 9, 2023.

18.     Attached hereto as **Exhibit 16** is a true and correct copy of a February 1, 2021 letter from Paul Williamson to Ziad Asghar, produced by Defendants with Bates number QCARM_0027987.

19.     Attached hereto as **Exhibit 17** is a true and correct copy of a February 25, 2021 letter from Ziad Asghar to Paul Williamson, produced by Defendants with Bates numbers QCARM_3434164 to QCARM_343165.

20.     Attached hereto as **Exhibit 18** is a true and correct copy of a March 2, 2021 letter from Paul Williamson to Ziad Asghar, produced by Defendants with Bates number QCARM_3451883.

21.     Attached here to as **Exhibit 19** is a true and correct copy of a February 1, 2022 letter from Carolyn Herzog to Gerard Williams, produced by Defendants with Bates number QCARM_0338883.

22.     Attached hereto as **Exhibit 20** is a true and correct copy of a February 4, 2022 email exchange with the subject line " ████████████████████████ ████████████████████████████ " produced by Defendants with Bates Numbers QCARM_0557206 to QCARM_0557207.

23.     Attached hereto as **Exhibit 21** is a true and correct copy of an April 1, 2022 letter from Ann Chaplin to Spencer Collins, produced by Defendants with Bates numbers QCARM_3433989 to QCARM_3433990.

24.     Attached hereto as **Exhibit 22** is an excerpt of a true and correct copy of the deposition transcript of Gerard Williams, taken on November 3, 2023.

25.     Attached hereto as **Exhibit 23** is an excerpt of a true and correct copy of Defendants' Responses and Objections to Plaintiff's Second Set of Interrogatories, dated October 27, 2023.

26.     Attached hereto as **Exhibit 24** is a true and correct copy of a January 19, 2022 exchange between Ziad Asghar and Manu Gulati, produced by Defendants with Bates number QCARM_2417783.

27.     Attached hereto as **Exhibit 25** is a true and correct copy of the "Agreement and Plan of Merger By and Among Qualcomm Technologies, Inc., Nile Acquisition Corporation, Nuvia, Inc., and Shareholder Representative Services, LLC, As Securityholders' Agent," dated January 12, 2021, produced by Defendants with Bates numbers QCARM_0275925 to QCARM_0276060.

28.     Attached hereto as **Exhibit 26** is an excerpt of a true and correct copy of Defendants' Responses and Objections to Plaintiff's First Set of Requests for Admission (Nos. 1-30), dated October 20, 2023.

29.     Attached hereto as **Exhibit 27** is an excerpt of a true and correct copy of the deposition transcript of Ziad Asghar, taken on November 8, 2023.

30.     Attached hereto as **Exhibit 28** is a true and correct copy of a March 25,2021 email from Ziah Asghar with the subject line " ███████████ " produced by Defendants with Bates number QCARM_0339973.

31.     Attached hereto as **Exhibit 29** is a true and correct copy of Annex 1 to the Nuvia ALA, dated September 27, 2019, produced by Arm with Bates numbers ARM_00002972 to ARM_00002987.

32.     Attached hereto as **Exhibit 30** is a true and correct copy of Annex 1 to the Nuvia ALA, dated March 27, 2020, produced by Arm with Bates numbers ARM_00110998 to ARM_00111011.

33.     Attached hereto as **Exhibit 31** is a true and correct copy of an August 15, 2023 letter from Melissa Felder Zappala to Scott Llewelyn.

34.     Attached hereto as **Exhibit 32** is an excerpt of a true and correct copy of the deposition transcript of Jignesh Trivedi, taken on October 25, 2023.

35.     Attached hereto as **Exhibit 33** is an excerpt of a true and correct copy of the deposition transcript of Ramakrishna Chunduru, taken on October 20, 2023.

36.     Attached hereto as **Exhibit 34** is an excerpt of a true and correct copy of the deposition transcript of Pradeep Kanapathipillai, taken on December 1, 2023.

37.     Attached hereto as **Exhibit 35** is a true and correct copy of a document entitled " ██████████████ ," produced by Defendants with Bates numbers QCARM_7629881 to QCARM_7629883.

38.     Attached hereto as **Exhibit 36** is a true and correct copy of a document entitled "█████████████████████████ ███████," produced by Defendants with Bates numbers QCARM_3912283 to QCARM_3912284.

39.     Attached hereto as **Exhibit 37** is a true and correct copy of a chart entitled "████████████████████████████" produced by Defendants with Bates number QCARM_7497374.

40.     Attached hereto as **Exhibit 38** is a true and correct copy of Defendants' Responses and Objections to Plaintiff's Third Set of Interrogatories (Nos. 26-29), dated May 7, 2024.

41.     Attached hereto as **Exhibit 39** is a true and correct copy of Annex 1 to the Nuvia TLA, produced by Arm with Bates numbers ARM_00003003 to ARM_00003023.

42.     Attached hereto as **Exhibit 40** is a true and correct copy of an email exchange from May, 2022, with the subject line "███████████" produced by Arm with Bates numbers ARM_01230123 to ARM_01230125.

43.     Attached hereto as **Exhibit 41** is a true and correct copy a May 17, 2022 email from Vivek Agrawal, with the subject line "Qualcomm's █████████ █████████████████████████████████████████" produced by Arm with Bates numbers ARM_00044607 to ARM_00044608.

44.     Attached hereto as **Exhibit 42** is an excerpt of a true and correct copy of the May 20, 2024 Expert Report of Patrick F. Kennedy, Ph.D.

45.     Attached hereto as **Exhibit 43** is an excerpt of a true and correct copy of the June 24, 2024 Expert Reply Report of Patrick F. Kennedy, Ph.D.

46.     Attached hereto as **Exhibit 44** is an excerpt of a true and correct copy of Arm Holding plc's Amendment No. 2 to the Form F-1 Registration Statement, dated September 5, 2023, produced by Arm with Bates numbers ARM_01433127 to ARM_01433468.

47.     Attached hereto as **Exhibit 45** is an excerpt of a true and correct copy of the deposition transcript of Simon Segars, taken on November 16, 2023.

48.     Attached hereto as **Exhibit 46** is a true and correct copy of a May 23, 2022 letter from Ann Chaplin to Spencer Collins, produced by Arm with Bates number ARM_01241187.

49.     Attached hereto as **Exhibit 47** is a true and correct copy of a February 2,2022 email from Manu Gulati, with the subject line "███████████████████████ ██████████████████████████," produced by Defendants with Bates number QCARM_0167741.

50.     Attached hereto as **Exhibit 48** is an excerpt of a true and correct copy of the Opening Expert Report of D. Shuo-Wei (Mike) Chen on Qualcomm Source Code, dated December 20, 2023.

51.     Attached hereto as **Exhibit 49** is a true and correct copy of a May 19, 2022 email from Aparajita Bhattacharya to Richard Grisenthwaite, with the subject line "Nuvia core sign-off," produced by Arm with Bates numbers ARM_01230110 to ARM_01230113.

52.     Attached hereto as **Exhibit 50** is a true and correct copy of a May 18, 2022 email from Richard Grisenthwaite, with the subject line "Qualcomm's ███████████ ██████████████████████████████████████,'" produced by Arm with Bates numbers ARM_00036346 to ARM_00036348.

53.     Attached hereto as **Exhibit 51** is an excerpt of a true and correct copy of Arm's First Supplemental Objections and Responses to Qualcomm's Fifth Set of Interrogatories (Nos. 26-28), dated May 10, 2024.

54.     Attached hereto as **Exhibit 52** is an excerpt of a true and correct copy of the deposition transcript of Guy Larri, taken on May 10, 2024.

55.     Attached hereto as **Exhibit 53** is a true and correct copy of a March 16, 2021 email from Cristiano Amon, with the subject line "████████████████████ ████████" produced by Defendants with Bates numbers QCARM_2402586 to QCARM_2402587.

56.     Attached hereto as **Exhibit 54** is an excerpt of a true and correct copy of the deposition transcript of Geetha Vedaraman, taken on May 16, 2024.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 10th day of July, 2024 at Miami, Florida.

*/s/ Michael J. DeStefano*
Michael J. DeStefano

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 10, 2024, a copy of the foregoing document

was served on the counsel listed below in the manner indicated:

**BY EMAIL/FTP**

Jack B. Blumenfeld
Jennifer Ying
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

Isaac B. Zaur
Nora Niedzielski-Eichner
CLARICK GUERON REISBAUM LLP
220 Fifth Avenue, 14th Floor
New York, NY 10001
izaur@cgr-law.com
nniedzie@cgr-law.com

Catherine Nyarady
Anna R. Gressel
Madalyn G. Vaughn
Jacob A. Braly
Alexander M. Butwin
Samantha Mehring
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
agressel@paulweiss.com
mvaughn@paulweiss.com
jbraly@paulweiss.com
abutwin@paulweiss.com
smehring@paulweiss.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
Brian Shiue
Anna P. Lipin
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
kdunn@paulweiss.com
wisaacson@paulweiss.com
mzappala@paulweiss.com
ejmorgan@paulweiss.com
bshiue@paulweiss.com
alipin@paulweiss.com

Andrea L. D'Ambra
Susana Medeiros
Kira Latham
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019
andrea.dambra@nortonrosefulbright.com
susana.medeiros@nortonrosefulbright.com
kira.latham@nortonrosefulbright.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Plaintiff Arm Ltd.*

# Exhibit 1

424B4 1 d550931d424b4.htm 424B4

Table of Contents

Filed Pursuant to Rule 424(b)(4)
Registration No. 333-274120

# 95,500,000 American Depositary Shares
# (Representing 95,500,000 Ordinary Shares)



This is an initial offering of American depositary shares ("ADSs") representing ordinary shares of Arm Holdings plc.

All of the ADSs to be sold in this offering are currently held by the selling shareholder identified in this prospectus. We are not selling any of the ADSs in this offering and will not receive any proceeds from the sale of the ADSs by the selling shareholder in this offering. Each ADS represents the right to receive one ordinary share, nominal value £0.001 per share, and may be evidenced by American depositary receipts ("ADRs").

Prior to this offering, there has been no public market for the ADSs or our ordinary shares. The initial public offering price per ADS is $51.00. Our ADSs have been approved for listing on the Nasdaq Global Select Market ("Nasdaq") under the symbol "ARM".

We are a "foreign private issuer" as defined under the U.S. federal securities laws and, as such, will be subject to reduced public company reporting and stock exchange governance requirements. See "Management and Executive Remuneration—Foreign Private Issuer Exemption" for additional information.

SoftBank Group Corp. ("SoftBank Group") is expected to beneficially own approximately 90.6% of our outstanding ordinary shares following the completion of this offering (or approximately 89.9% if the underwriters exercise in full their option to purchase additional ADSs from the selling shareholder). As a result of SoftBank Group's ownership, after the completion of this offering, we will be a "controlled company" within the meaning of Nasdaq rules. See "Management and Executive Remuneration—Controlled Company Status."

Advanced Micro Devices, Inc., Apple Inc., Cadence Design Systems, Inc., Google International LLC, Intel Corporation, MediaTek Inc.'s affiliated entities, NVIDIA Corporation, Samsung Electronics Co., Ltd., Synopsys, Inc. and TSMC Partners, Ltd. (collectively, the "Cornerstone Investors") have, severally and not jointly, indicated an interest in purchasing up to an aggregate of $735 million of the ADSs offered in this offering at the initial public offering price and on the same terms and conditions as the other purchasers in this offering. Because these indications of interest are not binding agreements or commitments to purchase, any of the Cornerstone Investors may determine to purchase more, fewer, or no ADSs in this offering, or the underwriters may determine to sell more, fewer, or no ADSs to any of the Cornerstone Investors. The underwriters will receive the same underwriting discount on any ADSs purchased by the Cornerstone Investors as they will from the other ADSs sold to the public in this offering.

**Investing in our ADSs involves a high degree of risk. Before buying any ADSs, you should carefully read the discussion of material risks of investing in our ADSs in "Risk Factors" beginning on page 21 of this prospectus.**

|  | PER ADS | TOTAL |
|---|---|---|
| Initial public offering price | $ 51.00 | $4,870,500,000 |
| Underwriting discounts and commissions | 1.02 | 97,410,000 |
| Proceeds, before expenses, to the selling shareholder | 49.98 | 4,773,090,000 |

The underwriters may also exercise their option to purchase up to an additional 7,000,000 ADSs from the selling shareholder at the initial public offering price, less the underwriting discounts and commissions, for 30 days after the date of the final prospectus. We will not receive any proceeds from the sale of such additional ADSs by the selling shareholder.

Raine Securities LLC is acting as our financial advisor in connection with this offering.

The underwriters expect to deliver the ADSs against payment in U.S. dollars to purchasers on or about September 18, 2023.

**Neither the Securities and Exchange Commission nor any U.S. state securities commission has approved or disapproved of these securities or passed upon the accuracy or adequacy of this prospectus. Any representation to the contrary is a criminal offense.**

| **Barclays** | **Goldman Sachs & Co. LLC** | **J.P. Morgan** | **Mizuho** |
|---|---|---|---|

*(in alphabetical order)*

| **BofA Securities** | **Citigroup** | **Deutsche Bank Securities** | **Jefferies** |
|---|---|---|---|
| **BNP PARIBAS** | **Credit Agricole CIB** | **MUFG** | **Natixis** | **Santander** | **SMBC Nikko** |

| BMO Capital Markets | Daiwa Capital Markets America | Guggenheim Securities | HSBC | IMI - Intesa Sanpaolo | Independence Point Securities |
| KeyBanc Capital Markets | Loop Capital Markets | Ramirez & Co., Inc.    Rosenblatt | SOCIETE GENERALE | TD Cowen | Wolfe | Nomura Alliance |

The date of this prospectus is September 13, 2023.

Table of Contents

## PROSPECTUS SUMMARY

This summary highlights certain information contained elsewhere in this prospectus. This summary may not, and does not purport to, contain all the information that may be important to you, and we urge you to read this entire prospectus carefully, including the "Risk Factors," "Special Note Regarding Forward-Looking Statements," "Business" and "Management's Discussion and Analysis of Financial Condition and Results of Operations" sections and the consolidated financial statements of Arm Limited and the notes to those statements, included elsewhere in this prospectus, before deciding to invest in the ADSs.

### Our North Star

Building the future of computing, on Arm. Together. For everyone.

### Our Company

Arm is defining the future of computing. Semiconductor technology has become one of the world's most critical resources, as it enables all electronic devices today. At the heart of these devices is the CPU, and Arm is the industry leader of CPUs. We architect, develop, and license high-performance, low-cost, and energy-efficient CPU products and related technology, on which many of the world's leading semiconductor companies and OEMs rely to develop their products. Our energy-efficient CPUs have enabled advanced computing in greater than 99% of the world's smartphones, for the year ended December 31, 2022, and more than 250 billion chips, cumulatively, powering everything from the tiniest of sensors to the most powerful supercomputers. Today, Arm CPUs run the vast majority of the world's software, including the operating systems and applications for smartphones, tablets and personal computers, data centers and networking equipment, and vehicles, as well as the embedded operating systems in devices such as smartwatches, thermostats, drones and industrial robotics. We estimate that approximately 70% of the world's population uses Arm-based products, and the scale of Arm's reach continues to expand, with more than 30 billion Arm-based chips reported as shipped in the fiscal year ended March 31, 2023 alone, representing an approximately 70% increase since the fiscal year ended March 31, 2016.

Today, any company can make a modern computer chip through the unique combination of our energy-efficient CPU IP and related technologies and our unmatched ecosystem of technology partners, and do it cost effectively due to our flexible business model. Each CPU product can be licensed to multiple companies, leading to economies of scale that allow us to charge each licensee only a fraction of what it would cost them to develop internally, while minimizing their risk and time-to-market. With the complexity of CPU design increasing exponentially, over the past decade no company has successfully designed a modern CPU from scratch. We have been innovating at the forefront of compute technology for decades and have established important relationships with the companies driving the future of computing across multiple industries. More than 260 companies reported that they had shipped Arm-based chips in the fiscal year ended March 31, 2023, including the largest technology companies globally (such as Amazon Web Services, Inc. and Alphabet Inc.), major semiconductor chip vendors (such as Advanced Micro Devices, Inc., Intel Corporation, MediaTek Inc., NVIDIA Corporation, Qualcomm Inc. and Samsung Electronics Co., Ltd.), automotive industry incumbents, leading auto suppliers, IoT innovators, and more.

The exponential rise in smart devices in both consumer and enterprise markets has increased the demand for chips that provide more computational capability while optimizing energy efficiency. Thirty years ago, the PC was the only computer with which most people would interact at home, work, or school. Then, mobile phones became computers in our pockets and digital TVs became computers in our living rooms. Now, vehicles are effectively computers on wheels, and servers and networking equipment are the computers that connect all these devices and services together. Additionally, there are billions of tiny low-cost devices—from sensors to electric motor controllers—that are now functionally computers, as well. Each of these computers needs at least one CPU, and in many cases more than one. This trend has driven the dramatic growth of Arm-based chips over the past several years.

1

Table of Contents

Our creation of the Arm CPU architecture, the world's most widely used CPU architecture, has resulted in the proliferation and evolution of computers as people know them today, advancing a paradigm of increasing compute performance coupled with industry-leading power efficiency. We enabled the mobile phone and smartphone revolution, and through our focus on energy efficiency and our history of continuous innovation, we have enabled new categories of "smart" consumer electronics. Today, we are redefining what is possible in industries such as cloud computing, automotive, and IoT. Energy efficiency is not only important for business, but it is also a critical component in achieving sustainability for our planet. This makes Arm CPU technology ideal for current and future computing applications as the demands for compute performance are growing exponentially while the need for low power remains critical.

Every CPU has an ISA, which defines the software instructions that can be executed by the CPU, essentially a common language for software developers to use. The ISA sets the foundation for a large library of compatible software which runs on those CPUs. As the Arm CPU is the most popular and pervasive CPU in history, the Arm ISA is also the most popular and pervasive ISA in history. This means that Arm-based chips have a global community of software developers familiar with how to program the CPU. Chip designers utilizing the Arm CPU can add desired functionality (Wi-Fi connectivity, image processing, video processing, *etc.*) to create an SoC to meet the needs of any end market.

Our primary product offerings are leading CPU products that address diverse performance, power, and cost requirements. Complementary products such as GPUs, System IP, and compute platforms are also available and enable high-performance, efficient, reliable, system-level creation for a wide range of increasingly sophisticated devices and applications. Our development tools and robust software ecosystem have further solidified our position as the world's most widely adopted processor architecture and have created a virtuous cycle of adoption, which means that software developers write software for Arm-based devices because it offers the biggest market for their products, and chip designers choose Arm processors because they have the broadest support of software applications.

This combination of pervasiveness and ease of portability has resulted in our CPU designs having the world's richest software ecosystem, built in partnership with the leading operating systems providers (including Google Android, Microsoft Windows and all major Linux distributions), software tools and game engine vendors (such as Electronic Arts Inc., Unity Software Inc. and Epic Games, Inc.), and application developers. We also support a flourishing ecosystem of third-party tool vendors for embedded software and a vibrant IoT ecosystem. Open-source software plays a vital role in the success of Arm-based chips, and we are committed to contributing to open-source software and tools to ensure our offerings are optimized for the latest technologies.

As the world moves increasingly towards AI- and ML-enabled computing, Arm will be central to this transition. Arm CPUs already run AI and ML workloads in billions of devices, including smartphones, cameras, digital TVs, cars and cloud data centers. The CPU is vital in all AI systems, whether it is handling the AI workload entirely or in combination with a co-processor, such as a GPU or an NPU. In the emerging area of large language models, generative AI and autonomous driving, there will be a heightened emphasis on the low power acceleration of these algorithms. In our latest ISA, CPUs, and GPUs, we have added new functionality and instructions to accelerate future AI and ML algorithms. We are working with leading companies such as Alphabet, Cruise LLC, Mercedes-Benz, Meta and NVIDIA to deploy Arm technology to run AI workloads.

Arm had 5,963 full-time employees across North America, Europe and Asia as of March 31, 2023. We are an engineering-first company, with approximately 80% of our global employees, as of March 31, 2023, focused on research, design, and technical innovation, and we have global operations and research and development ("R&D") centers in the U.K., Europe, North America, India, and Asia-Pacific. Our headquarters are located in Cambridge, U.K.

For the fiscal year ended March 31, 2023, our total revenue was relatively flat at $2,679 million, as compared to $2,703 million in the fiscal year ended March 31, 2022. In the fiscal year ended March 31, 2023, as a percentage

2

Table of Contents

expanding our market share in growth markets, including cloud compute, networking equipment, automotive and consumer electronics. We believe that the increasing need for high-powered and energy-efficient computing, as well as our continued investments, will enable us to grow our share in these segments. We also intend to expand our system IP and platform product offerings by continuing to develop a broader set of systems IP specifically developed for use with Arm processors. Across all our end markets and products, we believe that, as chip designs become more advanced and complex, our investments in additional functionality, higher performance, higher efficiency, and more specialized designs will allow us to deliver more value to our partners.

We have achieved significant growth since our inception. For our fiscal years ended March 31, 2023, 2022 and 2021, our total revenue was $2,679 million, $2,703 million and $2,027 million, respectively. Over that same period, net income from continuing operations was $524 million, $676 million and $544 million, respectively.

## Our Business Model

We have a flexible business model for licensing products to customers, and we are continuously assessing our ability to provide greater flexibility to our customers and maximize the number of design wins for our products. Our customers license our products for a fee, which gives them access to our products and enables them to develop Arm-based processors. Once a processor has been designed and manufactured with our products, we receive a per-unit royalty on substantially all Arm-based chips shipped by our customers. Our business model enables the widest range of customers to access Arm products through an agreement best suited to their particular business needs. Our licensing and royalty business model includes:

- *Arm Total Access Agreements*: Under an Arm Total Access agreement, we license a portfolio of CPU designs and related technologies to a customer in return for an annual fee determined at execution of the agreement. We retain the right, from time to time, to add or remove specific products from the package. The agreement is for a fixed term and may limit the number of concurrent chip designs that may use products from the package.

- *Arm Flexible Access Agreements*: Under an Arm Flexible Access agreement, we license a portfolio of CPU designs and related technologies to a customer in return for an annual fee determined at execution of the agreement. Unlike an Arm Total Access license, the package of products licensed pursuant to an Arm Flexible Access agreement will not contain our latest products. Although customers are free to experiment with products contained in the Arm Flexible Access package, they must pay a single use license fee for specific products if they include Arm products in a final chip design "tape out," when the final result of a semiconductor chip design is sent for manufacturing. As with an Arm Total Access agreement, we retain the right, from time to time, to add or remove specific products from the package.

- *Technology Licensing Agreements (TLA)*: Under a TLA, we license a single CPU design or other technology design to a customer in return for a fixed license fee. The license may be limited by term (i.e., the number of years during which the licensee is entitled to incorporate our products in new chip designs, but licensees typically have the right to manufacture designs perpetually) and/or by number of uses (i.e., the number of concurrent chip designs that may use our products).

- *Architecture License Agreements (ALA)*: Under an ALA, the licensee is allowed to develop their own highly customized CPU designs that is compliant with the Arm ISA for a fixed architecture license fee. As the creation of an optimized CPU is very costly and time consuming, architecture licensees will often also license Arm CPU designs to use either as a complementary processor alongside the licensee's Arm-compliant CPU design, or in other chips where the licensee's own design is unsuitable.

- *Royalty Fees*: We generate the majority of our revenue from customers who enter into license agreements, pursuant to which we receive royalty fees based on average selling price of the customer's Arm-based chip or a fixed fee per chip. Royalty revenues are impacted primarily by the adoption of our products by the licensee as well as other factors, such as product lifecycles, customer's business performance, market trends and global supply constraints. In the fiscal year ended March 31, 2023, royalty revenue represented 63% of our total revenue.

86

ARM_01429228

Table of Contents

Historically, most customers licensed our products under the terms of a TLA. In 2019 and 2021, we introduced the Arm Flexible Access and Arm Total Access agreements, respectively, to enable the widest range of customers to access our products through methods best suited to their particular business needs. We believe that the Arm Total Access and Arm Flexible Access agreements provide enhanced flexibility for our customers (as compared to the TLA business model) and increase the number of chip designs using our products. While certain customers will elect to remain TLA customers, some customers are in the process of transitioning from TLAs to Arm Total Access and Arm Flexible Access agreements. We may experience variability in license revenues due to the timing of product deliveries within each TLA, Arm Total Access and Arm Flexible Access agreement. However, because Arm Total Access and Arm Flexible Access agreements are renewable in nature, as customers transition away from TLAs, we expect our visibility into future license revenues to improve.

We typically are able to command a royalty for chips that contain our products, which creates a long-term recurring revenue opportunity from each design win. We typically see sustained revenue streams from older chips, as products containing those chips continue to be sold and older processors are incorporated into new chips, creating a cumulative effect that fuels long-term growth. For example, based on royalty revenue information provided to us by customers in quarterly royalty reports, approximately 46% of our royalty revenue for the fiscal year ended March 31, 2023 came from products released between 1990 to 2012. Additionally, as we transition to more Arm Total Access and Arm Flexible Access licenses, we expect more of our products to be incorporated into more of our customers' chip designs, and our royalty revenue to increase over time as a result.



Royalty revenue from Arm products launched during Fiscal Year Ending

**Key Factors and Trends Affecting Our Operating Results**

We believe that the growth of our business and our future success are dependent upon many factors, including those described in the section titled "Risk Factors" and elsewhere in this prospectus as well as the factors described below. While each of these factors presents significant opportunities for us, these factors also pose challenges that we must successfully address in order to sustain the growth of our business and enhance our results of operations.

ARM_01429229

# Exhibit 2

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 1

1              UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF DELAWARE

3                     ---oOo---

4

5    ARM LTD., a UK Corporation, )
                                 )
6              Plaintiff,        )
                                 )
7    vs.                         )   C.A. No. 22-1146 (MN)
                                 )
8    QUALCOMM INC., a Delaware   )
     corporation; QUALCOMM       )
9    TECHNOLOGIES, INC., a       )
     Delaware Corporation, and   )
10   NUVIA, INC., a Delaware     )
     Corporation,                )
11                               )
               Defendants.       )
12   _____)

13

14

15        HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

16          VIDEOTAPED DEPOSITION OF SIMON SEGARS

17              THURSDAY, NOVEMBER 16, 2023

18

19

20

21

22   STENOGRAPHICALLY REPORTED BY:

23   ANDREA M. IGNACIO, CSR, RPR, CRR, CCRR, CLR ~

24   CSR LICENSE NO. 9830

25

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
                                              Page 3
 1   A P P E A R A N C E S:

 2

 3       FOR THE PLAINTIFF:

 4            MORRISON & FOERSTER LLP

 5            By:  SCOTT LLEWELLYN, Esq.

 6            4200 Republic Plaza

 7            300 17th Street

 8            Denver, Colorado 80202

 9            303.592.2204

10            sllewellyn@mofo.com

11

12       FOR THE DEFENDANT:

13            PAUL WEISS

14            By:  KAREN L. DUNN, Esq.

15                 MADALYN VAUGHN, Esq. New York

16                 ERIN MORGAN, Esq. New York

17            2001 K Street, NW

18            Washington, D.C.  20006-1047

19            kdunn@paulweiss.com

20

21

22       ALSO PRESENT:

23            Cameron Tuttle, Videographer

24

25                         ---oOo---
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

                                              Page 4

1                        I N D E X

2

3    WITNESS:  SIMON SEGARS

4

5    EXAMINATION                                  PAGE

6    BY MS. DUNN                                    9

7

8                     E X H I B I T S

9    EXHIBIT                                       PAGE

10   Exhibit QX100  9-3-13 Email Re: YAASS - Yet    36

11                  another Arm server startup

12                  Bates ARM_00085058 - '59

13   Exhibit QX101  1-15-21 Email Re: Two-year-old  54

14                  NUVIA sells to Qualcomm for $1.4

15                  billion - TechCrunch Bates

16                  ARM_01242767

17   Exhibit QX102  6-9-21 Email Re: Arm Limited    67

18                  Board Meeting and Papers for

19                  Meeting on 10 Sept, Bates

20                  ARM_01245004 - '72

21   Exhibit QX103  1-17-21 Email Re:               77

22                  Congratulations Bates ARM_00062124

23   Exhibit QX104  1-17-21 Email Re:               84

24                  Congratulations Bates

25                  ARM_00071014

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
                                              Page 9
 1                     SIMON SEGARS,
 2              having been sworn as a witness
 3           by the Certified Shorthand Reporter,
 4                 testified as follows:
 5
 6                      EXAMINATION
 7    BY MS. DUNN:
 8         Q    Thank you.
 9              Mr. Segars, first, let me make sure I'm
10    saying your last name correctly.
11         A    Segars.
12         Q    Segars.
13         A    Yeah.
14         Q    Okay.  Mr. Segars, have you been deposed
15    before?
16         A    Yes, I have.
17         Q    Okay.  How many times?
18         A    I don't remember.
19         Q    Okay.  More than five?
20         A    Don't remember the exact number.
21         Q    Okay.  When did you start working at Arm?
22         A    In 1991.
23         Q    And what was your role when you started
24    working at Arm?
25         A    I was a design engineer.
```

Page 29

1    were shown documents, and you remember one e-mail; is

2    that right?

3        A    We looked at my LinkedIn profile briefly.

4        Q    Okay.  So apart from that one e-mail and your

5    LinkedIn profile, do you remember other -- any other

6    documents that you reviewed?

7        A    I was shown a -- what I believe was a

8    discussion between me and my then chief of staff,

9    which I think was a Teams discussion.

10       Q    And who was your chief of staff?

11       A    Well, I don't have one now, but my chief of

12   staff at the time --

13       Q    Right.

14       A    -- was a gentleman named Saumil Shah.

15           MS. DUNN:  Okay.  And I assume that document

16   has been produced to us, but if not, we'll ask for it.

17       Q    Any other documents that you remember

18   reviewing in advance of this deposition?

19       A    No.

20       Q    Okay.  Did you review any contracts in

21   advance of the deposition?

22       A    No.

23       Q    Okay.  All right.

24           Let's talk a little bit about Arm's business

25   model.  The majority of Arm's licensees are TLA

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 30

```
 1    licensees who use Arm's off-the-shelf technology in
 2    their chip designs; correct?
 3        A    ████████████████████████████████████████
      ███████████████████████    ███████████████████████
      █████████████████████████████████████████████████
      ████████████████████    █████████████████████████
      ████████████████████████████████
 8        Q    Okay.  We've been using the terms "TLA" and
 9    "ALA" in this case.  So I just want to make sure that
10    if I use those terms, you know what I'm talking about.
11        A    Okay.
12        Q    Okay.  Do you -- do you know what I'm talking
13    about when I --
14        A    Say --
15        Q    -- say TLA?
16        A    TLA --
17             STENOGRAPHIC REPORTER:  One at a time,
18    please.
19             MS. DUNN:  Q.  Go ahead.
20        A    ████████████████████████████████████████
      ██████████████████████████████████
22        Q    Yes.
23        A    ████████████████████████████████████████
      ████████████████████████.
25        Q    Great.  That is -- that is my understanding
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 225

1                    CERTIFICATE OF REPORTER

2

3           I, ANDREA M. IGNACIO, hereby certify that the

4      witness in the foregoing deposition was by me remotely

5      sworn to tell the truth, the whole truth, and nothing

6      but the truth in the within-entitled cause;

7           That said deposition was taken in shorthand

8      by me, a disinterested person, at the time and place

9      therein stated, and that the testimony of the said

10     witness was thereafter reduced to typewriting, by

11     computer, under my direction and supervision;

12          That before completion of the deposition,

13     review of the transcript [ ] was [x] was not

14     requested.  If requested, any changes made by the

15     deponent (and provided to the reporter) during the

16     period allowed are appended hereto.

17          I further certify that I am not of counsel or

18     attorney for either or any of the parties to the said

19     deposition, nor in any way interested in the event of

20     this cause, and that I am not related to any of the

21     parties thereto.

22     Dated: November 21, 2023.

23

24     _____

25      ANDREA M. IGNACIO, RPR, CRR, CCRR, CLR, CSR No. 9830

# Exhibit 3

Advertisement



Login   Register

ABOUT   BENCH   FORUMS   PODCAST

PC COMPONENTS ▼    SMARTPHONES & TABLETS ▼    SYSTEMS ▼    ENTERPRISE & IT    GUIDES ▼    DEALS

TRENDING TOPICS    CPUS    INTEL    AMD    GPUS    STORAGE    SSDS    MOBILE    MOTHERBOARDS    Follow

Home > SoCs

# The ARM Diaries, Part 1: How ARM's Business Model Works

64 Comments

by Anand Lal Shimpi on June 28, 2013 12:06 AM EST

Posted in  SoCs   CPUs   Arm

HOW ARM WORKS ▼



* **Innovative business model yields high margins**
  * Upfront license fee – flexible licensing models
  * Ongoing royalties – typically based on percentage of chip price
  * Technology suitable for multiple applications – can ship for decades

It must frustrate ARM just how much attention is given to Intel in the ultra mobile space, especially considering the chip giant's effectively non-existent market share. Since 2008 Intel has tried, year after year, to break into smartphones and tablets with very limited success. Despite having the IP and technical know-how to do so, it wasn't until 2012 that we saw Intel act like a company with even a sliver of a chance. Today, things are finally starting to change. Intel's 22nm SoC process and updated Atom microarchitecture look very competitive, and we'll see the first tablet products based on them later this year - with phones following sometime in early 2014. As Intel is about to start acting like a competitor, ARM is starting to talk a lot more about its magic.

Advertisement

PIPELINE STORIES    + SUBMIT NEWS

## Intel Reiterates: We Are Not Going to Spin Off IFS

## Zhaoxin Unveils KX-7000 CPUs: Eight x86 Cores at Up to 3.70 GHz

## Adata, OWC, and Stardom Roll Out USB4 SSDs and Enclosures for Faster External Storage

Minisforum Launches AR900i: A $559 Core i9-13900HX Mini-ITX Platform

Phison To Unveil 14.7 GB/s PCIe 5.0 SSD and Cheap USB4 Drives at CES 2024

TSMC Solidifies Leadership on Foundry Market as Intel Jumps into Top 10

AMD Widens Availability of Ryzen AI Software For Developers, XDNA 2 Coming With Strix Point in 2024

Intel Wins Appeal on VLSI Case, $2.18B Judgement Reversed

We've had well over a decade of Intel sharing its beliefs with us, but this is ARM's first attempt at doing the same. What will follow over the next few posts are a bunch of disclosures, some related some not, attempting to bring everyone up to speed on where ARM is today and where ARM will be in the near future. The best place to start is with ARM's business model.

In the PC industry, the concept of a fabless semiconductor manufacturer isn't unusual. NVIDIA has always been one, and now AMD is one as well. Fabless semiconductors create all of the designs for their chips, but they're physically manufactured at a foundry partner (e.g. TSMC, Global Foundries, Samsung). The fabless semi approach greatly helps reduce costs, but your designs are ultimately at the mercy of your foundry partner. Capacity, quality of process and timeline for process are more or less out of your control. Sometimes this is a non-issue, but other times it dramatically impacts your ability to bring products to market (e.g. quality control for early TSMC 40nm, timeline for GF 28nm or early capacity for TSMC 28nm).

Sponsored Links

**Someone you know has their eye on an Ooni pizza oven...**

Ooni Pizza Ovens

[ Shop Now ]

ARM goes one step beyond the fabless semi: it doesn't even sell any chips into the marketplace. ARM instead, designs IP (instruction set architecture, microprocessor, graphics, interconnects) and licenses it to anyone who wants to use it. ARM's customers will then take the IP they've licensed and design it into silicon. These customers can be fabless semiconductor companies or companies that own fabs.



It's a very unique business model, especially if you compare it to that of the market share leader in the PC silicon space (Intel). From Intel's perspective, it made the mistake of licensing the x86 ISA early on in its life, but quickly retreated from that business. It instead builds its own architectures, designs them into chips for various markets, and manufactures the designs at its own foundries. Intel is a truly vertically integrated chip design and fabrication house. It's a lot of work, but Intel is rewarded by having extremely high margins on all of its products.

The ultra mobile world is very different, at least today. In the PC world, Intel drives platform definition and ends up being the biggest part of the BoM (Bill of Materials) as a result. In smartphones and tablets, the main applications processor is easily under 10% of the cost of the device. More often than not, we're talking about low single digit percentages of the total BoM (e.g. $15 SoC for a $400 device, or 3.75%). Intel's theory is that this will eventually change as silicon complexity increases inside ultra mobile devices, but until now (and likely for the near future) the market requires/enables a different sort of business model.

## How ARM Works

The ARM business model is incredibly simple to understand, it's just different than what we're used to in the PC space. At a high level, ARM offers three different types of licenses: POP, processor and architecture.

A processor license is the license to use a microprocessor or GPU that ARM has designed. You can't really change the design, but you get to implement it however you'd like. For example, Samsung's Exynos 5 Octa

ARM_01430358

Micron Intros 3500 NVMe SSD: 232L 3D TLC and Phison E25 for the OEM Market

Amkor to Build $2 Billion Chip Packaging Fab in Arizona Primarily for Apple

Amazon's Tranium2 AI Accelerator Features 96 GB of HBM, Quadruples Training Performance

Amazon Unveils Graviton4: A 96-Core ARM CPU with 536.7 GBps Memory Bandwidth

Advertisement

Advertisement

implements four ARM Cortex A7 cores and four ARM Cortex A15 cores - these are processor licenses. ARM
will provide guidelines as to how to implement these designs in silicon, but ultimately it's up to you and your
physical implementation teams to do so and get good frequency/power out of your design.



Advertisement

A processor optimization pack (POP), takes a processor license to the next level. If you aren't great at
physical implementations, ARM will sell you an optimized processor design that you can take and
manufacture at a specific foundry which will result in some degree of guaranteed performance. If you look at
what happened with the Cortex A8, Apple and Samsung had their own physical implementations of the core
that resulted in better frequency/power than a lot of other designs. Apple and Samsung had access to
Intrinsity who hardened the Cortex A8 design, but not all companies had the bandwidth/budget to do the
same. POPs are ARM's equivalent solution for those customers who need very good implementations but
can't do so by themselves. POPs are available for various processor/foundry/process node combinations. For
example, ARM offers a 28nm HPM POP at TSMC for the Cortex A12.

The final option is an architecture license. Here, ARM would license you one of its architectures (e.g. ARMv7,
ARMv8) and you're free to take that architecture and implement it however you'd like. This is what Qualcomm
does to build Krait, and what Apple did to build Swift. These microprocessors are ISA compatible with ARM's
Cortex A15 for example, but they are their own implementations of the ARM ISA. Here you basically get a
book and a bunch of tests to verify compliance with the ARM ISA you're implementing. ARM will offer some
support to help you with your design, but it's ultimately up to you to design, implement and validate your own
microprocessor design.

ARM_01430359

# ARM's Digital World



In terms of numbers, ARM has around 1000 licenses in the market spread across 320 licensees/partners. Of those 320 licensees, only 15 of them have architecture licenses.



HOW ARM MAKES MONEY

HOW ARM WORKS ⌄

PRINT THIS ARTICLE

**You May Like**                                           Sponsored Links by Taboola

**Calphalon 10-Piece Aluminum Non Stick Cookware Set**

$127.49 - WAYFAIR

**Calphalon 11 Piece Hard-Anodized Aluminum Non Stick Cookware Set**

$280.00 - WAYFAIR

**Calphalon Signature™ Hard-Anodized Aluminum Nonstick 12" Sauteuse Pan with Lid**

$59.99 - WAYFAIR

**Cuisinart Chef's Classic 11 Piece Non Stick Hard-Anodized Cookware Set**

$179.95 - WAYFAIR

**Calphalon Signature Hard Anodized Nonstick 10 Piece Cookware Set**

$300.35 - WAYFAIR

**Sur La Table Signature Hard Anodized Nonstick 10-Piece Cookware Set**

Sur la table                                                        Buy now

ARM_01430360

**Warrior. Rebel. Jedi.**

Disney+

[ Sign up ]

---

**Calphalon Classic Hard-Anodized Nonstick Cookware, 10-Piece Pots and Pans Set X**

$169.99 - Bed Bath & Beyond

---

**Look For Any High School Yearbook, It's Free**

Classmates

[ Click Here ]

---

**4 reasons why an Ooni pizza oven is the best gift**

Ooni Pizza Ovens

[ Shop Now ]

---

**6 Things Not to Do When Selecting a Financial Advisor**

SmartAsset

[ Learn More ]

---

**Delaware Statutory Trust Pros & Cons (#4 May Surprise You)**

Kay Properties and Investments

[ Learn More ]

---

Comments Locked

## 64 Comments

View All Comments

**Crono** - Friday, June 28, 2013 - link
So basically ARM is like an author who choose to work with a bunch of different publishers?

It amazes me how dominant they are, though, in the mobile processor industry, all without having to manufacture chips themselves. 45 billion chips... wow. And I'm guessing there is still plenty of room to grow with more embedded chips in more devices.

   **airmanchairman** - Friday, June 28, 2013 - link
   "It amazes me how dominant they are, though, in the mobile processor industry, all without having to
   manufacture chips themselves. 45 billion chips... wow."

   Their philosophy has always been centred on the needs of their client industries, which extend far beyo

      **airmanchairman** - Friday, June 28, 2013 - link
      ...nd the mobile processor industry into the vast all-purpose market (street lights, lifts, automatic
      turnstiles etc). These industries strictly specified the maximum power output the chips could be capable
      of (used to be 700mW) and ARM designed within those parameters. As such their entire
      R&D/Logistics/Marketing focus has been perfectly suited to the battery-power-constrained mobile
      industry.

      Intel, on the other hand, after decades of dictating to the booming desktop industry with its faster/more
      cores/larger plants philosophy, is only just coming to grips with the power efficiency and discipline
      required to compete with ARM in the rapidly growing mobile sector.

      The new Haswell architecture shows the promise and potential that Intel may

         **airmanchairman** - Friday, June 28, 2013 - link
         ... bring to the battle against ARM.

**nadim.kahwaji** - Friday, June 28, 2013 - link
veryyyy nice post, anand i know that you are so busy, but we miss the podcast !!!!!!

   **blanarahul** - Friday, July 26, 2013 - link
   Umm... Does Qualcomm also pay royalty for the chips that use Krait?

ARM_01430361

Case 1:22-cv-01146-MN    Document 400    Filed 07/22/24    Page 31 of 302 PageID #: 19428

blanarahul - Friday, July 26, 2013 - link

Is Qualcomm automatically eligible to use any of ARM designs since they are above the "Subscription Licence" level in the pyramid?

dealcorn - Friday, June 28, 2013 - link

I could not follow the sense of your statement "From Intel's perspective, it made the mistake of licensing the x86 ISA early on in its life, but quickly retreated from that business." I thought IBM required that Intel license X86 to competitors as a pre condition of IBM's selection of Intel's 8086 for the IBM PC. Did Intel make a boo boo letting IBM use the 8086 in the IBM PC? It was reported that Intel's selection of x86 license partners was driven by the dual criteria that the partner must be acceptable to IBM and also likely incompetent to exploit the benefits of the license. In retrospect, their selection of partners achieved these goals. What was Intel's licensing mistake?

The aphorism, "Knitter, stick to your knitting" has long been appreciated as a useful business strategy. ARM is properly commended for it's strict adherence to this truism in it's attempted optimization of architecture design. Intel appears focused on SoC level optimization. Intel's holistic approach is more time consuming and capital intensive. Consumers will ultimately vote with their wallets which approach is better in the contested ultra mobile space.

SleepyFE - Friday, June 28, 2013 - link

Intel licensed it's IP to AMD, but AMD didn't throtle it's CPU's so it would get more business with constant iteration of the same architecture with marginal improvements to it (Intel's tic toc development model). AMD made the best use of what they got from Intel. At that time their (AMD's) CPU's were faster and they were eating away Intel's business. Intel had since then made a new architecture and did not license it to AMD. Consequently AMD fell behind and had not recovered since.

Wolfpup - Friday, June 28, 2013 - link

AMD and Intel cross license x86. It's not fair to claim x86 is Intel's thing along, given how much stuff Intel has to license from AMD for it-heck, the most obvious is 64-bit. The updated ISA is AMD's design, and Intel started using it a few years later.

"At that time their (AMD's) CPU's were faster and they were eating away Intel's business. Intel had since then made a new architecture and did not license it to AMD. Consequently AMD fell behind and had not recovered since."

I can't remember if AMD ever actually licensed chip designs-if they did, it wasn't recent, would have been like the 486. Everything since then that AMD sells has been AMD's design. When AMD was faster, that was with entirely AMD designs. And no, Intel doesn't license Core, but that's not new like you're saying, that's been the case since the 486 days (if those were even licensed), and it's not why AMD's fallen a bit behind. Intel was making horrible decisions with their CPUs, and AMD was designing better ones. AMD's stuff is still really strong/good, it's just Intel's bigger, has thrown more resources at it, usually has a process node advantage, and since getting serious again has been able to have more powerful chips at the high end (though of course the reality is AMD's chips keep getting more powerful too, and are only "bad" in comparison to Intel's newest, and sometimes even then AMD looks better, like that platform comparison using integrated graphics where AMD's new $140 CPU was stomping on one of Intel's best i7s, often 50% better).

1    2    3    4    5    6    ≫

## LINKS

Home
About
Forums
RSS
Pipeline News
Bench
Terms of Use
Contact Us
Do not sell my info

## TOPICS

CPUs
Motherboards
SSD/HDD
GPUs
Mobile
Enterprise & IT
Smartphones
Memory
Cases/Cooling/PSUs

Displays
Mac
Systems
Cloud
Trade Shows
Guides

## FOLLOW


Facebook
Twitter


RSS

ARM_01430362

CASE 1:22-cv-01146-MN    Document 400    Filed 07/22/24    Page 32 of 302 PageID #: 19429

Accessibility Statement

The Most Trusted in Tech Since 1997

About    Advertising    Privacy Policy

COPYRIGHT © 2023, ALL RIGHTS RESERVED.

ARM_01430363

# Exhibit 4







Search HEXUS                SEARCH

## Nuvia 'clean-sheet CPU design' performance previewed

by **Mark Tyson** on 11 August 2020, 18:01

**Quick Link:** HEXUS.net/qaenk5

Add to My Vault:
Please log in to view Printer Friendly Layout

Sign in for the best
HEXUS experience

Back in November last year HEXUS reported on Silicon Valley startup Nuvia breaking cover. The firm, founded by three ex-Apple executives in early 2019, had already received some serious backing for its work on a breakthrough range of data centre processors – it had recently raised $53m from Dell Technologies Capital and several Silicon Valley firms as it went public about its plans.

LOG IN

EVENTS







# Silicon Design Reimagined

All we knew back then was Nuvia's intended target market and the pedigree of its three founders: Gerard Williams III left Apple in spring 2019 after nine years as chief architect for all Apple central processors and SoCs; Manu Gulati spent eight years at Apple working on SoCs; and John Bruno spent five years at Apple (platform architecture group) but also worked for Google before founding Nuvia. Moor Insights & Strategies boss Patrick Moorhead sounded pretty sure the trio's track record would pay dividends, crediting them with *"unprecedented"* inter-generational performance gains while at Apple.

Today, HEXUS received a lengthy email about what Nuvia has been busy working on ever since it formed, and providing what you might call a performance preview of the ███████ CPU core. To introduce its new server SoC, Nuvia started by claiming that it had produced a processor that will be *"the heartbeat of the cloud"*. We all know this is a lucrative market. However, to penetrate the cloud server CPU market there are many hurdles to cross to be a success, and not many companies have made it previously.

ALL EVENTS

INDUSTRY PRESS RELEASES

**1**  Introducing CORSAIR® DDR5 Memory

**2**  CORSAIR Announces Full Range of Components

**3**  Two AOC GAMING mice and a wireless headset.

**4**  AGON by AOC presents three displays aimed at competitive gamers

**5**  Philips monitors launch the new M3000 and M5000 PC gaming monitor series

**6**  ASUSTOR is authorized by the CVE Program as a CVE Numbering Authority (CNA)

ARM_01430002

In this communication, headlined *"Performance delivered in a new way,"* Nuvia made it clear that it understood why many predecessors hadn't gained the success they expected but that it has considered all these potential pitfalls and is still confident of breaking through. For reference, it says false starts by Intel server challengers were caused by problems with one or more of the following; performance, infrastructure readiness, or an immature software ecosystem.

Though Nuvia claims that the first generation ▮▮▮▮ CPU is a *"clean sheet design"* it is actually a custom core based on the Arm architecture. ▮▮▮▮ will be central to ▮▮▮▮▮▮.

Nuvia reckons it has found *"a new way forward"* with its Arm-based cores in the data centre cloud server market. In its communication it backed up this assertion with a performance preview chart which showed Nuvia ▮▮▮▮ core performance in Geekbench 5, which it described as a good metric as it *"consists of a series of modern real-world kernels that include both integer and floating-point workloads,"* and is multi-platform.

Geekbench 5 Performance Per Watt



Above you can see the Nuvia ▮▮▮▮ really punches through in the single core tests in the 1W to 4.5W per core power limit. Importantly the above is actually a projection. To quote Nuvia: *"When measured against current products available in-market in the 1W-4.5W power envelope (per core), the* ▮▮▮▮ *CPU core performs up to 2X faster than the competition. Nuvia's* ▮▮▮▮ *CPU performance is projected using architectural performance modeling techniques consistent with industry-standard practices on future CPU cores."*

Nuvia wraps up its communication by admitting that competitors won't be standing still and could fortify their server processors with double digit performance gains over the next 18 months. However, even if Intel, AMD, Apple of Qualcomm make such significant steps, Nuvia still believes its ▮▮▮▮▮▮ will *"hold a clear position of leadership in performance-per-watt"*. Of course that remains to be seen and over the coming weeks and months (18 months to launch perhaps?) Nuvia will share more perspectives on its SoC architecture and performance.

f Share on Facebook

## Related Reading



Dell updates XPS and Alienware    8
desktops with Alder Lake CPUs
And you can spec up to an Nvidia GeForce
RTX 3090, or an AMD Radeon RX 6900 XT.



More Intel 12th Gen Core    36
performance numbers emerge
Planning to give AMD a bloody nose, going by
Intel-produced numbers.



AMD lines up Accelerated Data    0
Centre Premiere for 8th Nov
Epyc processors and Instinct accelerators will
be the hardware stars of the show.

Intel Arc Alchemist graphics cards may be pricier than expected

Microsoft Windows 11 Ryzen L3 cache latency fix now available

## HEXUS Forums :: 13 Comments

**Login with Forum Account**

Don't have an account? Register today!

User Name   User Name

Password              LOG IN

Posted by edmundhonda - Tue 11 Aug 2020 19:59

Endless R&D dollars from ARM and Apple have produced that outstanding perf/watt at the lower levels, but this company has significantly outpaced both of them within 12 months of starting development?

I'm sure they're not just another massively over-valued tech company in SV. Definitely not.

Posted by CAT-THE-FIFTH - Tue 11 Aug 2020 21:01

So another ARM based CPU?? Thought it might have been RISC-V based or a brand new instruction set. Also until they have production silicon,I don't believe their claims!

ARM_01430003

Posted by kompukare - Tue 11 Aug 2020 21:56

> **CAT-THE-FIFTH**
> So another ARM based CPU?? Thought it might have been RISC-V based or a brand new instruction set. Also until they have production silicon,I don't believe their claims!

Well, all the leading people there are ex Apple and have plenty of ARM experience.
They're supposed to have an ARM v9 architectural licence so wouldn't be worried about Nvidia.
Obviously take everything with a grain of salt, but if they can assemble a team like they had at Apple they might be able to pull it off.
Apple's team were able to increase their performance around 20% per year after all.
Nuvia don't have to worry about mA power budgets, lack member controllers and IO.
On the other hand, ARM themselves now show signs of making server reference designs.

None of which bodes well for the socketed DIY market, though. Unfortunately, the upgradable DIY PC market is a historical accident and throwaway stuff with built-in obsolescence is probably, sadly the future no matter how much $ trillion corporations like to pretend they care about the environment.

Posted by CAT-THE-FIFTH - Tue 11 Aug 2020 22:01

> **kompukare**
> Well, all the leading people there are ex Apple and have plenty of ARM experience.
> They're supposed to have an ARM v9 architectural licence so wouldn't be worried about Nvidia.
> Obviously take everything with a grain of salt, but if they can assemble a team like they had at Apple they might be able to pull it off.
> Apple's team were able to increase their performance around 20% per year after all.
> Nuvia don't have to worry about mA power budgets, lack member controllers and IO.
> On the other hand, ARM themselves now show signs of making server reference designs.
>
> None of which bodes well for the socketed DIY market, though. Unfortunately, the upgradable DIY PC market is a historical accident and throwaway stuff with built-in obsolescence is probably, sadly the future no matter how much $ trillion corporations like to pretend they care about the environment.

Personally I don't think this will get much traction,unless it is revolutionary in some way. ARM and MIPS based designs already exist,so companies can already buy those. Also many countries are now implementing national CPU designs around RISC V,for eventually use in import/export substitution scenarios, but these are all government backed intiatives. Not sure what market this is trying to target.

Posted by watercooled - Tue 11 Aug 2020 22:08

If they're wanting to actually make some sales and gain a foothold in the market, ARM makes the most sense, with perhaps POWER as another option for specific markets. It's more than an uphill battle to release a CPU no-one can use because they have no software able to run on it, no well-optimised compilers, very few people able to program for it efficiently, etc. ARM itself has faced an enormous challenge to break into the server market despite being AFAIK by far the most widely used ISA on the planet.

Having said that, yeah it's easy to post charts, lets wait and see what products are actually like.

SEE NEWER »

INFORMATION

About us
Advertise
Contact us
How Competitions work
How we test
About Cookies
What our awards mean
Terms of use
Privacy

SUBSCRIPTIONS

RSS / Atom / Twitter
Facebook / Newsletter
Unsubscribe

HEXUS Community

Members: 469,106
Forum posts: 3,758,258
Forum threads: 261,172
Currently active users: 1,588

Copyright © 1998 - 2023, HEXUS.net. All rights reserved.                    HEXUS® is a registered trademark

ARM_01430004

# Exhibit 5

1          IN THE UNITED STATES DISTRICT COURT

2             FOR THE DISTRICT OF DELAWARE

3   ARM LTD., a U.K.          )  Case No.:  C.A. No.
    corporation,              )  22-1146-MN
4                             )
                Plaintiff,    )
5                             )
     v.                       )
6                             )
    QUALCOMM, INC., a         )
7   Delaware corporation, et  )
    al.,                      )
8                             )
                Defendants.   )
9   _____ )

10

11

12        HIGHLY CONFIDENTIAL: ATTORNEYS' EYES ONLY

13        VIDEOTAPED DEPOSITION OF NITIN SHARMA

14                  755 Page Mill Road

15             Palo Alto, California 94304

16                  October 27, 2023

17                     9:07 a.m.

18

19

20

21

22

23

24   REPORTED BY:

25   Tammy Moon, CSR No. 13184, RDR, CRR



```
 1   APPEARANCES:

 2   FOR PLAINTIFF ARM LTD., a U.K. corporation:

 3   MORRISON FOERSTER
     BY:  NICHOLAS FUNG, ESQ.
 4   707 Wilshire Blvd.
     Los Angeles, California 90017-3543
 5   213.892.5348
     Nfung@mofo.com
 6

 7   FOR DEFENDANT QUALCOMM INC., a Delaware corporation:

 8   PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
     BY:  JACOB BRALY, ESQ.
 9   BY:  CATHERINE NYARADY, ESQ.
     1285 Avenue of the Americas
10   New York, New York 10019
     212.373.3726
11   Jbraly@paulweiss.com
     Cnyarady@paulweiss.com
12

13   IN-HOUSE COUNSEL FOR QUALCOMM:

14   QUALCOMM
     BY:  GUY PERRY, ESQ.
15   5775 Morehouse Dr., Bldng 180E
     San Diego, California 92121-1714
16   858.651.1367
     Gperry@qualcomm.com
17

18   ALSO PRESENT:  KEVIN MCMAHON, THE VIDEOGRAPHER

19

20

21

22

23

24

25
```



```
 1                    INDEX TO EXAMINATION

 2                       NITIN SHARMA

 3                 Friday, October 27, 2023

 4           Tammy Moon CSR No. 13184, RPR, CRR

 5                 WITNESS:  NITIN SHARMA

 6

 7   EXAMINATION                                    PAGE

 8   MR. FUNG                                         8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



```
 1    swear in the witness, and then we will proceed.
 2                     NITIN SHARMA,
 3      called as a witness, having been duly sworn,
 4                  testified as follows:
 5               THE WITNESS:  I do.
 6                DIRECT EXAMINATION BY MR. FUNG
 7               MR. FUNG:
 8        Q.   All right.  Good morning, Mr. Sharma.
 9        A.   Hi.
10        Q.   Could you please state your name for the
11    record?
12        A.   Nitin Sharma.
13        Q.   What is your current address?
14        A.   You mean residential address?
15        Q.   Residential address.
16        A.   ████████████████████████████████████
17    ███████████
18        Q.   Are you currently employed by Qualcomm?
19        A.   No.
20        Q.   I'm sorry.  Was that a yes or no?
21        A.   No.
22        Q.   Who is your current employer?
23        A.   SiFive.
24        Q.   How long have you been at SiFive?
25        A.   About six weeks.
```



1    Yeah.

2        Q.    Do you understand what the goal of -- the

3    goal is in -- to pass all the test suites provided

4    by Arm?

5        A.    That is correct.

6        Q.    Okay.  What is an ARM

7    architecture-compliant core?

8            MS. NYARADY:  Objection.

9            THE WITNESS:  ARM architecture-compliant

10   core from my side, from what my job entailed, was to

11   ensure that the set of test suite that Arm provides

12   is part of compliance suite -- pass.  And we follow

13   the -- the rules that are defined in Arm -- in the

14   compliance manual.

15           As well as -- we had to do our own due

16   diligence going through Arm Architecture Reference

17   Manual to -- to test cases we do -- or test

18   scenarios that we felt are important to test.

19           MR. FUNG:

███████████████████████████████

███████████████████████████████████

█████████████████████████████████

███████████████████████████████████████

██████████

█████████████████████████████████



2          MS. NYARADY:  Objection.  Asked and

3    answered.

11          MR. FUNG:

25     Q.   What's the difference between an SOC and a



1    sampled.



ESQUIRE
DEPOSITION SOLUTIONS





```
22        Q.    We have been going for about an hour now.
23   Do you want to take a break?
24        A.    Sure.
25        Q.    Five or ten minutes?  Up to you.
```



1          THE WITNESS:  I -- I have an opinion,

2     but -- but that's based on partial data, so it's a

3     partial opinion.

4          MR. FUNG:

5     Q.    So what is your partial opinion?

██████████████████████████████████

██████████████████████████

8     Q.    What was the market for the ████ SOC?

9     ████ with an █.

10    A.    It was designed for data center to -- it

11    was designed as a server SOC, which could go into

12    date centers.

13    Q.    Got it.  When you joined Nuvia -- let's go

14    back to when you joined Nuvia.

15         What was the market -- was there a market

16    that Nuvia was targeting?

17    A.    The data center, SOC market.

18    Q.    And did the market that Nuvia was targeting

19    change during the time that you were at Nuvia?

20    A.    No.

21    Q.    We have also seen some documents talking

22    about ████ with a Y, ██████.  What is that?

23    A.    The ████ with a █ is really the new name

24    for the CPU cores that are being used in Qualcomm

25    products.



```
 1     Q.    So ████ is a core.  Is that right?

 2           MS. NYARADY:  Objection.

 3           THE WITNESS:  ████ with a █ is a core.

 4           MR. FUNG:

 5     Q.    What SOCs are ████ used in, with a █?

 6     A.    I can definitely say that it's used in

 7     ████ and in ████.  But I've since left the

 8     company, so it could be -- I don't have all the

 9     information.

10     Q.    What is ████?

11     A.    ████ is an SOC which is targeted for

12     compute client market.

13     Q.    And what is ████?

14     A.    ████ is an SOC which is targeted for and

15     set in mobile market.

16     Q.    And ████████ both use ████ cores?

17     ████ with a █.

18           MS. NYARADY:  Objection.

19           THE WITNESS:  They -- they use different

20     revisions and versions of ████ core which -- which

21     ████████████████████.

22           MR. FUNG:

23     Q.    Do you know what the current status of

24     ████ is?

25     A.    I believe it was announced a few days ago
```


ESQUIRE
DEPOSITION SOLUTIONS

```
 1   STATE OF CALIFORNIA )
                         )
 2   COUNTY OF SACRAMENTO)

 3            I, TAMMY MOON, CSR No. 13184, Certified

 4   Shorthand Reporter, do hereby certify:

 5            That prior to being examined, the witness

 6   in the foregoing proceedings was by me duly sworn to

 7   testify to the truth, the whole truth, and nothing

 8   but the truth;

 9            That said proceedings were taken by me in

10   shorthand and thereafter transcribed into

11   typewriting under my direction and supervision;

12            That I am neither counsel for, nor related

13   to, any party to said proceedings, nor in any way

14   interested in the outcome thereof.

15            I further certify that I am not a party to

16   any stipulation, if made, that would waive my duties

17   mandated by the Court Reporters Board of California.

18            In witness whereof, I have hereunto

19   subscribed my name.

20            Dated:  30th of October, 2023

21

22

23

24            Tammy Moon, CSR No. 13184, RDR, CRR

25
```



# Exhibit 6

**From:**       Gerard Williams III <gerard@nuviainc.com> on behalf of Gerard Williams III
                <gerard@nuviainc.com>
**To:**         Simon Segars

Simon,

—Gerard

> On Mar 25, 2019, at 5:33 PM, Simon Segars <Simon.Segars@arm.com> wrote:
>
> Hi Gerard,
>

>
> Thanks,
>
> Simon.
>
> On 3/25/19, 1:29 PM, "Gerard Williams III" <gerard@nuviainc.com> wrote:
>
> Simon,
>

>
> Thank you,
> Gerard.
>
>> On Mar 6, 2019, at 4:10 PM, Simon Segars <Simon.Segars@arm.com> wrote:
>>

>>
>> SS.
>>
>> On 3/5/19, 1:52 PM, "Gerard R Williams III" <gerardiii@me.com> wrote:
>>
>> Simon,
>>

>> —Gerard
>>
>>> On Feb 27, 2019, at 1:22 PM, Simon Segars <Simon.Segars@arm.com> wrote:
>>>
>>> Hi Gerard,
>>>

>>>

>>>
>>> Best,
>>>
>>> Simon.
>>>
>>> On 2/26/19, 11:24 PM, "Gerard R Williams III" <gerardiii@me.com> wrote:
>>>
>>> Simon,
>>>

>>>
>>>
>>>
>>>
>>>
>>>
>>> Look forward to hearing from you,
>>> Gerard
>>>
>>> NuVia, Inc.
>>> CEO, President, and co-Founder
>>>
>>> IMPORTANT NOTICE: The contents of this email and any attachments are confidential and may also be privileged. If you are not the intended recipient, please notify the sender immediately and do not disclose the contents to any other person, use it for any purpose, or store or copy the information in any medium. Thank you.
>>
>>
>> IMPORTANT NOTICE: The contents of this email and any attachments are confidential and may also be privileged. If you are not the intended recipient, please notify the sender immediately and do not disclose the contents to any other person, use it for any purpose, or store or copy the information in any medium. Thank you.
>
>
> IMPORTANT NOTICE: The contents of this email and any attachments are confidential and may also be privileged. If you are not the intended recipient, please notify the sender immediately and do not disclose the contents to any other person, use it for any purpose, or store or copy the information in any medium. Thank you.

CONFIDENTIAL

# Exhibit 7

**From:**       Tim Herbert <Tim.Herbert@arm.com> on behalf of Tim Herbert <Tim.Herbert@arm.com>
**To:**         Gerard Williams III
**Sent:**       7/13/2019 12:25:58 AM
**Subject:**

Hello Gerard,



Thanks,

Tim

---

**From:** Gerard Williams III <gerard@nuviainc.com>
**Date:** Friday, July 12, 2019 at 12:51 PM
**To:** Tim Herbert <Tim.Herbert@arm.com>
**Cc:** Gerard Williams III <gerard@nuviainc.com>
**Subject:** Re: License payment model



—Gerard

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

On Jul 12, 2019, at 12:36 PM, Gerard Williams III <gerard@nuviainc.com> wrote:

Tim,



—Gerard

On Jun 25, 2019, at 9:16 AM, Gerard Williams III <gerard@nuviainc.com> wrote:

Tim, I found the issue. Basically, what I did was the following:



—Gerard

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                                                QCARM_3835059

On Jun 24, 2019, at 11:50 AM, Tim Herbert <Tim.Herbert@arm.com> wrote:

Hello Gerard,



Thanks,

Tim

**From:** Gerard Williams III <gerard@nuviainc.com>
**Date:** Friday, June 21, 2019 at 12:36 PM
**To:** Tim Herbert <Tim.Herbert@arm.com>
**Cc:** Gerard Williams III <gerard@nuviainc.com>
**Subject:** ███████████████

TIm,

Thanks,
—Gerard


> On May 29, 2019, at 12:43 AM, Gerard Williams III <gerard@nuviainc.com> wrote:
>
> Tim,
>
> █████████████████████████████████████████████████████████████
pu
>
>
>
th
>
>
en
>
>
>
>
di
>
>
>
> —Gerard

IMPORTANT NOTICE: The contents of this email and any attachments are confidential and may also be privileged. If you are not the intended recipient, please notify the sender immediately and do not disclose the contents to any other person, use it for any purpose, or store or copy the information in any medium. Thank you.


IMPORTANT NOTICE: The contents of this email and any attachments are confidential and may also be privileged. If you are not the intended recipient, please notify the sender immediately and do not disclose the contents to any other person, use it for any purpose, or store or copy the information in any medium. Thank you.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

# Exhibit 8

| From: | Gerard Williams III <gerard@nuviainc.com> on behalf of Gerard Williams III |
| --- | --- |
| | <gerard@nuviainc.com> |
| To: | Lip-Bu Tan |
| CC: | gerard@nuviainc.com |
| BCC: | amarjit@nuviainc.com |
| Sent: | 6/19/2019 4:23:30 AM |
| Subject: | ▮▮▮▮▮ |

Lip-Bu.



Thanks,
—Gerard

CONFIDENTIAL

# Exhibit 9

# REDACTED IN ITS ENTIRETY

# Exhibit 10

# REDACTED IN ITS ENTIRETY

# Exhibit 11

1              IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF DELAWARE

3

4

5   ARM, LTD., a U.K. corporation,  )
                                     ) C.A. No.
6           Plaintiff,               ) 22-1146-MN
                                     )
7                VS.                 )
                                     )
8   QUALCOMM INC., a Delaware        )
    corporation, QUALCOMM            )
9   TECHNOLOGIES, INC., a Delaware   )
    corporation, and NUVIA, INC., a  )
10  Delaware corporation,            )
                                     )
11          Defendants.              )
    _____)

12

13

14              (Pursuant to Protective Order,
          this Transcript is Deemed Highly Confidential)

15

16       Videotaped Deposition of Murali Annavaram

17               Los Angeles, California

18             Thursday, June 27, 2024

19

20

21

22

23
    REPORTED BY:
24  KIMBERLY WILDISH
    CSR NO.:  8078
25  JOB NO:  J11410864



```
 1           A P P E A R A N C E S:

 2

 3

 4
     MORRISON & FOERSTER, LLP
 5   Attorneys for Plaintiff
             2100 L Street NW
 6           Suite 900
             Washington, D.C.  20037
 7   By:  Daniel P. Muino, Esq.
             dmuino@mofo.com
 8

 9

10

11
     PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
12   Attorneys for Defendants
             1285 Avenue of the Americas
13           New York, New York  10019
     By:  Catherine Nyarady, Esq.
14           Cnyarady@paulweiss.com
             Jacob Braly, Esq.
15           Jbraly@paulweiss

16

17

18   ALSO PRESENT:

19           Vincent Mazza, Videographer
             Esquire Deposition Solutions
20

21

22

23

24

25
```



```
1                    I N D E X

2

3  WITNESS:              EXAMINATION            PAGE

4  Murali Annavaram      Mr. Muino               8

5                                              148

6

7

8                        Ms. Nyarady           248

9

10

11                  E X H I B I T S

12  Deposition Exhibits

13  Exhibit 1  -  Opening Expert Report        17
                  of Dr. Murali Annavaram
14
    Exhibit 2  -  Rebuttal Expert Report       60
15                of Dr. Murali Annavaram
                  January 27, 2024
16                (RETAINED BY COUNSEL)

17  Exhibit 3  -  ███████████████              152

18                QCARM_0490031 - 0490328

19  Exhibit 4  -  ANNEX 1                       180
                  NUVIA ARMV8-A ARCHITECTURE
20                ARM_00002654 - 00002667

21  Exhibit 5  -  27 September 2019             188
                  NuVia
22                Definitions
                  QCARM_0337839 - 0337855
23
    Exhibit 6  -  █████████ Architecture        209
24                (over the ███████ baseline)
                  QCARM_3005305 - 3005308
25
```



```
 1                       MURALI ANNAVARAM,
 2              HAVING BEEN FIRST DULY SWORN, WAS
 3              EXAMINED AND TESTIFIED AS FOLLOWS:
 4
 5                          EXAMINATION
 6
 7         MR. MUINO:  Good morning, Dr. Annavaram.
 8         THE WITNESS:  Good morning.
 9  BY MR. MUINO:
10         Q.      Can you please state your name, for the
11  record.
12         A.      My name is Murali Annavaram.
13         Q.      Have you had your deposition taken
14  before?
15         A.      I...
16                 Yes.  A few times.
17         Q.      How many times have you been deposed?
18         A.      Maybe somewhere between six to ten times.
19         Q.      And were all of those depositions in a
20  capacity as an expert witness in litigation?
21         A.      Yeah.  Different kinds of litigations,
22  but expert witness in all those I testified, yes.
23         Q.      Have you had your deposition ever taken
24  in another type of case, where you weren't testifying as
25  an expert witness?
```



```
 1                 So, for example, if a cortex micro
 2   architecture today has a prefetchers, some of them I
 3   worked on.  And some of the predictors we worked on.
 4                 So that's what I want to make the
 5   connection to.  That it's important to understand that
 6   the micro architecture is what we were working on.  ███
     ████████████████████████████████████████████████████
     ███████████████████████████████████
 9        Q.     You mentioned before the Arm architecture
10   reference manual.  Do you recall that?
11        A.     Yeah, I briefly mentioned it.
12        Q.     And that I think you said you reviewed
13   that in preparation for the deposition today?
14        A.     I... I reviewed...  It's 20,000 pages or
15   so.  I reviewed parts of it as time permitted.
16        Q.     The Arm architecture reference manual is,
17   you say, approximately 20,000 pages or something along
18   those lines?
19        A.     Yeah.  I don't count exactly the page
20   numbers, but it is pretty large.  That much I remember.
21        Q.     Your understanding is that the
22   architecture reference manual describes the Arm
23   instruction set architecture.  Is that correct?
24        A.     It describes Arm instruction set
25   architecture, correct.
```



1      Q.      Now, you understand that Nuvia engineers

2  wrote RTL code for the ████ ████ design before the

3  acquisition; is that correct?

4      A.      Yeah.  So at the time of acquisition

5  ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████

9      Q.      And those are... those blocks that you

10  referenced were within the core that we're referring to

11  as the ████████ design; correct?

12      A.      So they were also developing other

13  elements.  But part of their design was on the RTL for

14  the ████████ design.

15      Q.      In preparing your opinions in this case,

16  you examined the RTL code for the ████████ design;

17  correct?

18      A.      I reviewed multiple code bases, one of

19  which is the ████████ design.

20      Q.      Do you recall that the RTL code base for

21  the ████████ design that was provided in this case

22  was from March 14, 2021?  Do you recall that?

23      A.      Ah...

24      Q.      I can show you a report to remind you.

25      A.      Yeah.  Maybe so.



```
1        Q.      If you look at Paragraph 166.

2                Do you see in Paragraph 166 you're

3   referring to the ████████████ design?

4        A.      Yeah.

5        Q.      And about a little more than halfway down

6   that paragraph, on Page 61, you say:

7                      ███████████████████

    ███████████████████████████████████████

    ██████████████████████

10               Do you see that?

11       A.      Um-hmm.

12       Q.      And subsequently, you cite some

13  documents, but then you also cite to some code

14  directories.

15               Do you see that?

16       A.      Yeah.  I see the top level directory

17  which is ██████████████████████████████████.

18       Q.      So does that refresh your recollection

19  that the code for the ████████████ design was from

20  March 14, 2021?
```

██████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

██████████████████████████

███████████████████████████████████



██████████████████████████████████████████

████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████

███████████████

███████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

██████████████

12          Q.        Let's return to Paragraph 3.

13          A.        Sure.

14          Q.        The fourth line down in Paragraph 3, you

15   refer to the ██████ Family of Cores.

16                    Do you see that?

17          A.        I see that the SoC, that includes one of

18   the ██████ Family of Cores.

19          Q.        And within the ██████ Family of Cores

20   you mention several ██████ cores.

21                    Do you see that?

22          A.        Yes.   I call them the ████████████

██████████████████████████████████████████

█████████████████

25          Q.        Now, the ████████████████ was the





10          Q.          So, Dr. Annavaram, I'm just asking for

11   your understanding of the facts.

12                      Do you understand that Qualcomm used the

13   RTL code from the ▮▮▮▮▮▮▮ design in the

14   development of the ▮▮▮▮▮▮▮ core post acquisition?

15                      Do you understand that as a matter of

16   fact?





```
22              But are they just blindly to be used?
23      No.  So I'm sort of objecting to your characterization
24      of just simply using them.
25              Q.      When you say... you use the qualifier
```



15          MR. MUINO:  Thank you.  I certainly didn't agree

16     that it had nothing to do with Arm.  But I appreciate

17     the rest of your answer.

18          Q.     So the third core that's called out here

19     is ████████████████

20               The ████████████ is the version of

21     the ████████ core for the ████████  Is that your

22     understanding?

23          A.     So the ████████████ is the core

24     that Qualcomm designed for its ████████

25          Q.     And to your knowledge, did the ████████



```
 1                    Reporter's Certificate

 2                            of

 3               Certified Shorthand Reporter

 4

 5                    *  *  *  *  *  *  *

 6

 7

 8   I, the undersigned Certified Shorthand Reporter, in

 9   and for the State of California, do hereby certify:

10   That the foregoing proceedings were taken before me

11   at the time and place therein set forth, at which time

12   the witness was put under oath by me; that the testimony

13   of the witness and all objections at the time of the

14   proceedings were recorded stenographically by me and

15   were thereafter transcribed under my direction; that

16   the foregoing is a true record of the testimony and

17   of all objections made at the time of the proceedings.

18

19   In witness whereof, I have subscribed my name on:

20

21   DATE:  June 30th, 2024

22

23

24   _____

25         KIMBERLY WILDISH, CSR NO. 8078
```



# Exhibit 12

Page 1

THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


ARM LTD., a U.K. corporation,

    Plaintiff,

    vs.               C.A. No. 22-1146-MN

QUALCOMM INC., a Delaware
corporation, QUALCOMM
TECHNOLOGIES, INC., a Delaware
corporation, and NUVIA, INC.,
a Delaware corporation,

    Defendants.

_____


HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

VIDEOTAPED DEPOSITION OF ARM LTD.

MANU GULATI AS 30(b)(1)

SAN DIEGO, CALIFORNIA

OCTOBER 12, 2023


Reported By:
PATRICIA Y. SCHULER
CSR No. 11949

Job No. J10385631

Page 3

1    APPEARANCES:

2    FOR PLAINTIFF:

3            MORRISON & FOERSTER LLP

4            BY:  SCOTT F. LLEWELLYN, ESQ.

5            4200 Republic Plaza

6            370 Seventeenth Street

7            Denver, Colorado  80202

8            sllewellyn@mofo.com

9    FOR DEFENDANTS:

10           PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

11           BY:  CATHERINE NYARADY, ESQ.

12           BY:  JACOB BRALY, ESQ.

13           1285 Avenue of the Americas

14           New York, NY 10019

15           cnyarady@paulweiss.com

16   FOR QUALCOMM:

17           QUALCOMM INCORPORATED

18           BY:  KURT KJELLAND, ESQ.

19           5775 Morehouse Drive

20           San Diego, California  92121-1714

21           kurtk@qualcomm.com

22   Videographer:

23           Miguel Moreno

24

25

Page 4

1                               I-N-D-E-X

2      WITNESS:                                    EXAMINATION

3      MANU GULATI                                      PAGE

4      MR. LLEWELLYN                                       8

5

6

7                           E-X-H-I-B-I-T-S

8      PLAINTIFFS'                                      PAGE

9      Exhibit 1      NuVia, Inc. presentation           9
                      Bates-stamped QCARM_3314892
10                    through 915

11     Exhibit 2      Email Bates-stamped QCARM_0332308  64

12     Exhibit 3      Email Bates-stamped QCARM_0002586  68

13     Exhibit 4      Email Bates-stamped QCARM_0276442  73

14     Exhibit 5      Emails Bates-stamped               76
                      QCARM_3859016 through 022
15
       Exhibit 6      Emails Bates-stamped               83
16                    QCARM_3858991 through 993

17     Exhibit 7      Document entitled "ARM Neoverse     88
                      N1 Hyperscale Reference Design,"
18                    dated February 2019

19     Exhibit 8      Document entitled "ARM Neoverse,    91
                      The Cloud to Edge Infrastructure
20                    Foundation for a World of 1T
                      Intelligent Devices,"
21                    Bates-stamped QCARM_3865383
                      through 395
22
       Exhibit 9      Emails Bates-stamped               92
23                    QCARM_3931617 through 619

24

25

Page 8

00:01:19   1                    MANU GULATI,

00:01:21   2    having been administered an oath, was examined and

00:01:25   3                  testified as follows:

           4

           5                    EXAMINATION

           6    BY MR. LLEWELLYN:

00:01:30   7         Q.   Could you please state your name for the

00:01:31   8    record?

00:01:32   9         A.   Manu Gulati.

00:01:34  10         Q.   Could you please spell that?

00:01:35  11         A.   M-A-N-U, G-U-L-A-T-I.

00:01:39  12         Q.   What is your current address?

00:01:41  13         A.   ██████████████████████████████████

00:01:45  14    ███████

00:01:47  15         Q.   And who is your current employer?

00:01:50  16         A.   Qualcomm.

00:01:51  17         Q.   What is your current position with

00:01:53  18    Qualcomm?

00:01:54  19         A.   VP of engineering.

00:01:56  20         Q.   Were you previously employed by NuVia?

00:01:59  21         A.   Yes.

00:02:00  22         Q.   What was your position at NuVia?

00:02:03  23         A.   SVP engineering.

00:02:06  24         Q.   Were you one of the founders of NuVia?

00:02:08  25         A.   Yes, I was.



```
00:11:13 17        Q.   And throughout your deposition, I may say

00:11:16 18   "code" rather than "RTL."  If you think it makes a

00:11:19 19   difference, please ask me.  I will confirm.

00:11:22 20        A.   Sure.

00:11:25 21        Q.   I am not sure if technically it counts as

00:11:27 22   source code or code, but it seems to be terminology

00:11:31 23   that works for folk.
```

Page 62

01:17:15  1    starting NuVia in the first place, I think many of

01:17:17  2    those components are still true.

01:17:20  3         Q.   And when you say "in that space," do you

01:17:21  4    mean in the server space?

01:17:22  5         A.   Server space, yes.

01:17:25  6         Q.   What is ███ with a "█"?

01:17:28  7         A.   ███ with a "█," confusingly enough, is

01:17:32  8    the specific name given to the series of Qualcomm

01:17:36  9    custom CPU cores.

01:17:43  10        Q.   And are those custom CPU cores not for

01:17:49  11   server?

01:17:51  12        A.   They could be for anything.  Because it

01:17:53  13   is a name for a series of cores.  Those cores could

01:17:55  14   be for anything.  The ███ with a "█" signifies

01:17:58  15   that it is a Qualcomm custom core.

01:18:02  16        Q.   What do you mean by "Qualcomm custom

01:18:03  17   core"?

01:18:07  18        A.   So it's designed by Qualcomm, and it's an

01:18:10  19   in-house design.  And "core" meaning CPU.  Like you

01:18:13  20   said, when you say "core," we're going to talk

01:18:14  21   about CPUs.  So it's an in-house CPU from Qualcomm.

01:18:19  22        Q.   And how is ███ with a "█" related to

01:18:22  23   ███

01:18:24  24        A.   ███ is an instance of an ███ core.

01:18:36  25        Q.   And what are some other instances of an

Page 63

01:18:39  1    ████ core?

01:18:41  2         A.    Okay.  So we're getting into Qualcomm

01:18:42  3    roadmap now.  ████ would be another one.  And

01:18:46  4    this conversation is confidential, right?  So this

01:18:48  5    is Qualcomm business roadmap now.

01:18:54  6         Q.    And are there any besides ████ and

01:18:58  7    ████?

01:18:59  8         A.    Yes.  They are in contemplation.  I

01:19:02  9    forget the name of another one, but there -- they

01:19:06 10    are sort of in the planning phase.

01:19:09 11         Q.    And what about ████  Is that a --

01:19:12 12         A.    No.  ████ is not an ████.  ████ is a

01:19:15 13    product for the -- basically, the laptop and

01:19:18 14    desktop market, consumer market.

01:19:23 15         Q.    Is ████ a custom core?

01:19:25 16         A.    ████ is a product.  It's not a core.

01:19:28 17         Q.    Does ████ use a custom core?

01:19:33 18         A.    It does.

01:19:34 19         Q.    Which custom core is that?

01:19:36 20         A.    It uses a derivative of the custom core

01:19:42 21    that was designed for ████ with an "█."  So we

01:19:45 22    still call it ████ even though -- you know, it

01:19:49 23    went through a lot of transformations to end up in

01:19:51 24    ████, but we still call it a ████ core.

01:19:54 25         Q.    And is ████ a product as well?

Page 146

```
03:18:09  1    transfer of either databases or resources.  How did
03:18:16  2    that work?
03:18:16  3         A.   Yeah.  It was a very mixed bag, actually.
```



```
03:19:17 20         Q.   And following the announcement of the
03:19:19 21    acquisition and throughout many months in 2021,
```

```
03:19:30 25         Q.   Were you aware of that at the time?
```

Page 181



04:08:28  1    the same time.

04:08:30  2         Q.   And as you sit here today, what do you

04:08:32  3    recall about your discussion with John and Gerard

04:08:36  4    about the ARM notice of termination?

04:08:41  5         A.   I don't recalls the specifics, but I

04:08:43  6    remember us saying, █████████████████████

███████ █ ████████████████████████████

███████ █ ████████████████████████████

███████ █ ████████████████████████████

███████ ████████████████████

04:09:01 11         Q.   And what did you conclude?

04:09:03 12         A.   ████████████   ██████████████

████████ ████████████████████████████ █

████████ ██████████████████████████

████████ ██████ █████████████████████████

████████ ██████████████████████████████

████████ ██████████████████ ███████████

████████ █████████   ██████████████████

████████ ██ █ █████████████████████████

████████ ███████████████████████████

████████ ████████████

04:09:35 22         A.   ████████████████████████ .

████████ ██ █ ██████████████████████

████████ ████████████████████████████

████████ ██████████████████

Page 182



04:10:12 10        Q.

:22 13        A.   Sorry.   Could you repeat the question?

04:10:24 14        Q.

04:10:33 17             MS. NYARADY:   Just caution you not to

04:10:35 18   reveal any attorney-client communication.

04:10:37 19             THE WITNESS:   Yeah.

04:10:38 20

24   BY MR. LLEWELLYN:

04:10:49 25        Q.   And if I understand your prior testimony

Page 215

1           I, Patricia Y. Schuler, a Certified

2    Shorthand Reporter of the State of California, do

3    hereby certify:

4           That the foregoing proceedings were taken

5    before me at the time and place herein set forth;

6    that any witnesses in the foregoing proceedings,

7    prior to testifying, were duly sworn; that a

8    verbatim record of the proceedings was made by me

9    using machine shorthand which was thereafter

10   transcribed under my direction; that the foregoing

11   transcript is a true record of the testimony given.

12          Further, that if the foregoing pertains

13   to the original transcript of a deposition in a

14   Federal Case, before completion of the proceedings,

15   review of the transcript [X] was [ ] was not

16   requested.

17          I further certify I am neither

18   financially interested in the action nor a relative

19   or employee of any attorney or party to this

20   action.

21          IN WITNESS WHEREOF, I have this date

22   subscribed my name.

23   Dated:  October 15, 2023

24          _____

                PATRICIA Y. SCHULER
25              CSR NO. 11949

# Exhibit 13

**HIGHLY CONFIDENTIAL - SOURCE CODE - ATTORNEY'S EYES ONLY**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ARM LTD.,

        Plaintiff,

    v.

QUALCOMM INC., QUALCOMM
TECHNOLOGIES, INC. and NUVIA, INC.,

        Defendants

C.A. No. 22-1146 (MN)

**<u>OPENING EXPERT REPORT OF DR. MURALI ANNAVARAM</u>**

December 20, 2023

HIGHLY CONFIDENTIAL - SOURCE CODE - ATTORNEY'S EYES ONLY

37.     A CPU is designed to perform operations on data.  Designers implement these operations in circuitry using a collection of techniques such as microarchitecture design, the placement of gates and routing of wires across the chip, selection of process technology nodes, and selection of the cell implementation libraries. This circuitry is represented in a type of computer language referred to as RTL code, which I will describe further in the next section.

**B.     RTL**

38.     RTL describes the implementation of the CPU's microarchitecture.  RTL design is a digital design methodology that focuses on the transfer of data between registers within a digital system.  It serves as an abstraction level between the high-level behavioral description of a system and its physical implementation in hardware.   At the RTL level, designers describe the functionality and behavior of the system in terms of registers, data flow, and control signals.

39.     A designer may develop an RTL description of a digital circuit manually using a Hardware Description Language (HDL) such as Verilog or automatically from a higher-level language using an RTL synthesis tool.  After the RTL representation is completed, it is then transformed through a series of hardware compilers, place and route tools and cell libraries to create representation that helps with the fabrication of the actual physical device.

40.     The RTL description may be organized into groups of code referred to as "modules," with each module likewise organized into smaller groups of code referred to as "submodules."  Organizing the RTL into modules and submodules improves the efficiency in managing large projects by allowing code to be modularized and re-used in different aspects of the projects.  For example, the RTL modules for complex functions implemented in a CPU can be treated as abstract boxes with input and output pins.  Hence different module developers can easily interface without knowing the details of the module design.

10

**HIGHLY CONFIDENTIAL - SOURCE CODE - ATTORNEY'S EYES ONLY**

I certify under penalty of perjury that the foregoing is true and correct.


Date: December 20, 2023

_____
                    Murali Annavaram, Ph.D.

Los Angeles, California

# Exhibit 14

Qualcomm Contacts:

Pete Lancia, Corporate Communications

Phone:  1-858-845-5959

Email:  corpcomm@qualcomm.com


Mauricio Lopez-Hodoyan, Investor Relations

Phone: 1-858-658-4813

Email: ir@qualcomm.com

**Qualcomm to Acquire NUVIA**

*Augmenting its leading technology roadmap to redefine computing performance*

*Accelerating successful partnerships with OS providers for next-generation computing devices*

*Enabling Samsung and the mobile ecosystem to redefine premium performance for smartphones*

*Leading CPU talent to join Qualcomm's best in class innovation culture*

**SAN DIEGO – JAN 13, 2021 –** Qualcomm Incorporated (NASDAQ: QCOM) today announced that its subsidiary, Qualcomm Technologies, Inc., has entered into a definitive agreement to acquire NUVIA for approximately $1.4 billion before working capital and other adjustments. The transaction is subject to customary closing conditions, including regulatory approval under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended.

5G is further accelerating the convergence of mobility and computing. The acquisition of NUVIA builds on Qualcomm Technologies' Snapdragon technology leadership, delivering step-function improvements in CPU performance and power efficiency to meet the demands of next-generation 5G computing.

NUVIA comprises a proven world-class CPU and technology design team, with industry-leading expertise in high performance processors, Systems on a Chip (SoC) and power management for compute-intensive devices and applications. The addition of NUVIA CPUs to Qualcomm Technologies' already leading mobile graphics processing unit (GPU), AI engine, DSP and dedicated multimedia accelerators will further extend the leadership of Qualcomm Snapdragon platforms, and positions Snapdragon as the preferred platform for the future of connected computing.

NUVIA CPUs are expected to be integrated across Qualcomm Technologies' broad portfolio of products, powering flagship smartphones, next-generation laptops, and digital cockpits, as well as Advanced Driver Assistance Systems, extended reality and infrastructure networking solutions.

"5G, the convergence of computing and mobile architectures, and the expansion of mobile technologies into other industries are significant opportunities for Qualcomm," said Cristiano Amon, President and CEO-Elect, Qualcomm Incorporated. "The NUVIA team are proven innovators, and like Qualcomm, have a strong heritage in creating leading technology and products. I am very excited to have them join our

CONFIDENTIAL

team. Together, we are very well positioned to redefine computing and enable our ecosystem of partners to drive innovation and deliver a new class of products and experiences for the 5G era."

"Creating high performance, low-power processors and highly integrated, complex SoCs are part of our DNA," said Jim Thompson, Chief Technology Officer of Qualcomm. "Adding NUVIA's deep understanding of high-performance design and integrating NUVIA CPUs with Snapdragon - together with our industry-leading graphics and AI - will take computing performance to a new level and drive new capabilities for products that serve multiple industries."

As part of the transaction, NUVIA founders Gerard Williams III, Manu Gulati and John Bruno, and their employees will be joining Qualcomm.

"CPU performance leadership will be critical in defining and delivering on the next era of computing innovation," said Gerard Williams CEO of NUVIA. "The combination of NUVIA and Qualcomm will bring the industry's best engineering talent, technology and resources together to create a new class of high-performance computing platforms that set the bar for our industry. We couldn't be more excited for the opportunities ahead."

Qualcomm's broad ecosystem of partners have voiced strong support for this acquisition:

Microsoft: "It's exciting to see NUVIA join the Qualcomm team. Our partnership with Qualcomm has always been about providing great experiences on our products. Moving forward, we have an incredible opportunity to empower our customers across the Windows ecosystem," said Panos Panay, Chief Product Officer, Microsoft.

Google: "Compute performance, connectivity and power efficiency are critical ingredients that make the billions of Android and Chrome OS devices shine," said Hiroshi Lockheimer, SVP Platforms & Ecosystems, Google. "The addition of NUVIA extends Qualcomm's capabilities in these three areas and we're excited to see the next generation of Snapdragon with NUVIA."

Samsung: "With NUVIA joining the Qualcomm team, we look forward to continuing to innovate and building incredible experiences together. Qualcomm's commitment to platform technology will help us offer the premium smartphone performance to our users around the world," said TM Roh, President and Head of Mobile Communications Business, Samsung Electronics.

Acer: "Together with Qualcomm we have delivered a new generation of thin and light always connected PCs and Chromebooks.  The acquisition of NUVIA will enable Qualcomm to continue to advance Snapdragon's industry leadership and help Acer to continue to innovate and bring high performance, 5G connected devices to our customers globally," said  James Lin, General Manager, Notebooks, IT Products Business, Acer Inc.

ASUS: "We have had the pleasure of collaborating with Qualcomm for many years to deliver premium smartphones, such as our flagship ROG Phone for gaming, as well as PCs powered by the exceptional performance and connectivity of Snapdragon platforms. We are excited for the future of our partnership as Qualcomm advances and expands its portfolio and capabilities with the addition of NUVIA," said S.Y. Hsu, co-CEO of ASUS.

<u>Bosch</u>: "The automotive industry is evolving at an unprecedented pace of innovation. Bosch considers the adoption of new in-vehicle services and capabilities as one major driver for growth. Qualcomm is a strong partner to us. We see the need for high performance, power efficient platforms and appreciate Qualcomm's ambition to push the boundaries of innovation even further," said Dr. Andree Zahir, SVP for Infotainment and Connectivity, Bosch.

<u>Continental</u>: "Continental looks forward to the addition of NUVIA as we continue to partner with Qualcomm in bringing advanced capabilities to next generation vehicles," said Peter Popp as head of purchasing, Vehicle Networking and Information, Continental.

<u>General Motors</u>: "We look forward to NUVIA joining the Qualcomm team as we continue to work together to deliver advanced in-vehicle services and technologies for the customers of our next-generation vehicles," said Dan Nicholson, VP, Global Electrification, Controls, SW & Electronics at General Motors.

<u>HMD:</u> "Qualcomm has always been a best-in-class partner globally and our ongoing collaboration has enabled HMD to bring unique mobile device innovation to the market and deliver on the Nokia brand promise of being trusted, always secure and built to last.  We are excited for the NUVIA team to join Qualcomm and congratulate the company on its commitment to ensure Snapdragon continues to be the industry's leading mobile platform," said Florian Seiche CEO, HMD.

<u>Honor:</u> "As a new, independent company committed to bringing breakthrough mobile experiences to consumers, we are pleased to see that Qualcomm will acquire NUVIA, enabling them to continue to lead in developing and delivering premium performance Snapdragon mobile platforms to the market," said Biao Wan, Chairman, Honor Device Co Ltd.

<u>HP:</u> "HP and Qualcomm have been strong partners in addressing the needs of our mutual Personal Systems customers, most recently on the Elite Folio, the world's first pull-forward business convertible, launched at CES," said Alex Cho, president of Personal Systems, HP Inc. "The PC is more essential than ever, and we're excited to see the industry and Qualcomm invest in innovation to support the needs of the 5G world."

<u>Lenovo</u>: "With Qualcomm we delivered the world's first 5G connected PC. As we look to create the advanced capabilities PC users demand, we are excited that the world class CPU development team from NUVIA is joining Qualcomm and we look forward to continuing to work together to deliver breakthrough PC experiences to users across the globe," said Gianfranco Lanci, President and COO, Lenovo.

<u>LG Electronics</u>: "The automotive industry is evolving at an accelerated pace of innovation driven by the adoption of new in-vehicle services and capabilities powered by technology partners like Qualcomm. The addition of the NUVIA team will enable Qualcomm to continue to consolidate compute and connectivity ECUs into high performance, power efficient platforms to push the boundaries of innovation even further," Jin-Yong Kim, President of Vehicle components Solutions (VS) Company, LG Electronics Inc.

<u>LG Mobile</u>: Congratulations to Qualcomm and NUVIA for joining forces to create a new breed of platforms that will push the envelope on compute performance and connectivity," said Morris Lee, President LG Mobile.

<u>OnePlus:</u> "We are excited to hear Qualcomm will be extending their industry leading Snapdragon mobile platform leadership by acquiring the world class CPU team at NUVIA. OnePlus fans will also be excited to see what innovation and new premium experiences we can deliver on new flagship One Plus devices powered by future generations of Snapdragon mobile platforms," said Pete Lau, Founder and CEO, OnePlus.

<u>OPPO</u>: "With NUVIA joining the Qualcomm team, we look forward to continue innovating together and building incredible devices powered by the Snapdragon mobile platforms. Qualcomm's commitment to platform leadership will enable us to deliver innovative new products and experiences for OPPO smartphone users around the world," said Tony Chen, Founder and CEO, OPPO.

<u>Panasonic</u>: "Innovation in the automotive market is occurring at an accelerated pace. We welcome the addition of the world class NUVIA team to Qualcomm and look forward to the continued partnership," said Masashige Mizuyama, Chief Technology Officer, Automotive Company, Panasonic Corporation

<u>Renault</u>: "The automotive industry is the new frontier exploiting the benefits of mobile technology innovations in high performance compute and connectivity and Qualcomm has always been at the forefront. The addition of NUVIA is welcomed as we continue to work with Qualcomm to deliver world class in-vehicle services and experiences," said Thierry Cammal, Alliance Global Vice President Software Factory.

<u>Sharp</u>: "With Qualcomm's expertise and leading technologies, we have been able to deliver cutting edge devices and premium mobile experiences and we welcome the addition of NUVIA to extend Qualcomm's leadership and enhance their capabilities," said Shigeru Kobayashi GM, Sharp Personal Communications Group.

<u>Sony:</u>  "We have enjoyed a great collaboration with Qualcomm for many years and are excited to hear the NUVIA team will be joining Qualcomm.  As a leader in delivering amazing camera and gaming experiences on mobile devices we understand that to continue to lead will require the next generation high performance & low power computing and connectivity solutions that only Snapdragon platforms can deliver," said Mitsuya Kishida President, Sony Mobile Communications Inc.

<u>VIVO:</u> "Qualcomm's Snapdragon platforms power millions of VIVO phones across the globe today, and the addition of NUVIA will help Qualcomm continue to lead, delivering the ultimate in high performance compute, lightning fast 5G connectivity and industry leading power efficiency," said Shen Wei, CEO, VIVO.

<u>Xiaomi:</u> "Xiaomi and Qualcomm have partnered for over a decade to deliver world class premium mobile experiences to millions of people.  The addition of NUVIA will extend Qualcomm's Snapdragon platforms industry leadership helping Xiaomi to continue to bring innovation and next level premium mobile experiences to Mi fans around the world," said Lei Jun, Chairman and CEO, Xiaomi.

CONFIDENTIAL

**About Qualcomm**

Qualcomm is the world's leading wireless technology innovator and the driving force behind the development, launch, and expansion of 5G. When we connected the phone to the internet, the mobile revolution was born. Today, our foundational technologies enable the mobile ecosystem and are found in every 3G, 4G and 5G smartphone. We bring the benefits of mobile to new industries, including automotive, the internet of things, and computing, and are leading the way to a world where everything and everyone can communicate and interact seamlessly.

Qualcomm Incorporated includes our licensing business, QTL, and the vast majority of our patent portfolio. Qualcomm Technologies, Inc., a subsidiary of Qualcomm Incorporated, operates, along with its subsidiaries, substantially all of our engineering, research and development functions, and substantially all of our products and services businesses, including our QCT semiconductor business.

**About NUVIA Inc.**

Headquartered in Santa Clara, NUVIA was founded on the promise of reimagining silicon design for high-performance computing environments. The company is focused on building products that blend the best attributes of compute performance, power-efficiency and scalability. For more information please visit www.nuviainc.com.

-----

*Qualcomm and Snapdragon are trademarks or registered trademarks of Qualcomm Incorporated.*

*Qualcomm Snapdragon is a product of Qualcomm Technologies, Inc. and/or its subsidiaries.*

CONFIDENTIAL

# Exhibit 15

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 1

1            H I G H L Y   C O N F I D E N T I A L

2                    ATTORNEYS' EYES ONLY

3            IN THE UNITED STATES DISTRICT COURT

4                FOR THE DISTRICT OF DELAWARE

5                            C.A. NO: 22-1146 (MN)

6      -----------------------------------

7      ARM LTD., a UK Corporation,

8

9            Plaintiff,

10     v.

11     QUALCOMM INC., a Delaware corporation,

12     QUALCOMM TECHNOLOGIES, INC., a

13     Delaware Corporation, and NUVIA, INC., a

14     Delaware Corporation,

15            Defendants.

16     -----------------------------------

17        Deposition of PAUL WILLIAMSON, taken by AILSA

18      WILLIAMS, Certified Court Reporter, held at the

19     offices of Norton Rose Fulbright, London, United

20        Kingdom, on 9 November, 2023 at 9:00 a.m

21

22

23

24

25

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 2

```
 1              A P P E A R A N C E S:
 2   Attorneys for the Plaintiff:
 3           MORRISON & FOERSTER LLP
 4           BY: KYLE W.K. MOONEY
 5           Kmooney@mofo.com
 6
 7   For the Defendants:
 8           PAUL, WEISS, RIFKIND, WHARTON & GARRISON
 9   LLP
10           BY: MELISSA FELDER ZAPPALA and BRIAN SHIUE
11           Mzappala@paulweiss.com
12           Bshiue@paulweiss.com
13
14   ALSO PRESENT:
15   PHILIP PRICE: (ARM)
16   COURT REPORTER:  AILSA WILLIAMS
17   VIDEOGRAPHER: PHILIP HILL
18
19
20
21
22
23
24
25
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 3

```
 1
 2                      I N D E X
 3    PAUL WILLIAMSON (Sworn)
 4    Examination by MS. ZAPPALA: Pg. 6
 5    Examination by MR. MOONEY: Pg. 310
 6    Further Examination by MS. ZAPPALA: Pg. 314
 7
 8                  INDEX OF EXHIBITS
 9    Previously Marked Exhibits Referenced:
10           Exhibit QX 19, Exhibit QX29
```

```
11    QX45 Notice of Deposition . ... .. .. .. ... .8
12    QX46 Email exchange ARM_01238940-44 ... .. .. ... 13
13    QX47 Teams Chat ARM_00087671-73 ... .. .. .. ... 14
14    QX48 Teams Chat ARM_01241616-20 ... .. .. .. ... 31
15    QX49 Technology License Agreement . ... .. .. ... 47
16    QX50 Annex 1, ARM_00111082-97 . ... .. .. .. ... 48
17    QX51 Teams Chat, ARM_00087851 . ... .. .. .. ... 56
18    QX52 Teams Chat, ARM_01242365-66 .. .. .. .. ... 66
19    QX53 Email exchange, ARM_00063607-10 .. .. ... 71
20    QX54 "ARM - Qualcomm & Nuvia Architecture . ... 78
21    License"
22    QX55 Annex 1, ARM_00002654-67 . ... .. .. .. ... 88
23    QX56 Teams Chat, ARM_01239039-45 .. .. .. .. ... 94
24    QX57 Teams Chat, ARM_00082090-93 .. .. .. .. ...119
25    QX58 Email and attachments, ARM_00032601-02 ...144
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 6

```
 1    Price Senior Director and Head of Litigation at        09:28
 2    ARM.                                                    09:28
 3            THE VIDEOGRAPHER:  Would the court              09:28
 4    reporter swear in the witness.                          09:28
 5                    PAUL WILLIAMSON                          09:28
 6                 Having been sworn,                          09:28
 7              Testified as follows:                          09:28
 8           EXAMINATION BY MS. ZAPPALA:                       09:28
 9          MS. ZAPPALA:  Good morning.                        09:28
10          A    Good morning.                                 09:28
11          Q    Could you state your name for the            09:28
12    record.                                                 09:28
13          A    My name is Paul Williamson.                  09:28
14          Q    I am Melissa Zappala.  I will be             09:28
15    taking your deposition today.  I just wanted to go      09:28
16    over a couple of ground rules for the deposition.       09:29
17            One thing I wanted to note, I have a            09:29
18    hearing loss.  It affects my speech.  You are           09:29
19    British, you have an accent, so we may have a           09:29
20    sense of dueling accents here.  If you can't            09:29
21    understand anything I say, please ask me to repeat      09:29
22    myself.  Likewise, if I have difficulty I hope you      09:29
23    will indulge me by repeating the answer.                09:29
24          A    Absolutely, and I appreciate you            09:29
25    sharing that with me.                                   09:29
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 13

| | | |
|---|---|---|
| 1 | believe it would be when they made the press | 09:38 |
| 2 | release to announce their intention to acquire. | 09:38 |
| 3 | Q   Prior to receiving the press | 09:38 |
| 4 | release, did you understand whether Qualcomm was | 09:38 |
| 5 | going to acquire Nuvia? | 09:38 |
| 6 | MR. MOONEY:  Objection, form. | 09:38 |
| 7 | MS. ZAPPALA:  Let me rephrase.  Prior to | 09:38 |
| 8 | the press release, did you know whether Qualcomm | 09:38 |
| 9 | was going to acquire Nuvia? | 09:39 |
| 10 | A   I did not. | 09:39 |
| 11 | Q   I am going to mark as QX46 a | 09:40 |
| 12 | document that has been Bates stamped ARM_01238940. | 09:40 |
| 13 | (Exhibit QX46 marked for identification) | 09:40 |
| 14 | MR. MOONEY:  I will just designate the | 09:40 |
| 15 | transcript and the exhibits "Highly Confidential | 09:40 |
| 16 | Attorneys' Eyes Only" under the protective order, | 09:40 |
| 17 | subject to our review and potential de-designation | 09:40 |
| 18 | at a later date. | 09:40 |
| 19 | MS. ZAPPALA:  This is an email that you | 09:41 |
| 20 | sent on January 13 to Laurence Bryant, Steve | 09:41 |
| 21 | Raphael and Simon Holland, subject line: | 09:41 |
| 22 | ███████████████████████████████ | 09:41 |
| 23 | ████████   Do you see that? | 09:41 |
| 24 | A   I confirm that that is what this | 09:41 |
| 25 | appears to be, yes. | 09:41 |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 318

1      CERTIFICATE OF COURT REPORTER

2

3      I, AILSA WILLIAMS, an Accredited LiveNote

4      Reporter, hereby certify that Paul Williamson was

5      duly sworn, that I took the Stenograph notes of

6      the foregoing deposition and that the transcript

7      thereof is a true and accurate record transcribed

8      to the best of my skill and ability.  I further

9      certify that I am neither counsel for, related to,

10     nor employed by any of the parties to the action

11     in which the deposition was taken, and that I am

12     not a relative or employee of any attorney or

13     counsel employed by the parties hereto, nor

14     financially or otherwise interested in the outcome

15     of the action.

16     Before completion of the deposition, review of the

17     transcript was requested.  Any changes made by the

18     deponent (and provided to the reporter) during the

19     period allowed are appended hereto.

20

21

22

       _____

23     AILSA WILLIAMS

24     Dated:    11/14/23

25

# Exhibit 16



Ziad Asghar
VP, Product Management
Qualcomm Technologies, Inc.
5775 Morehouse Drive
San Diego, CA 92121

2 February 2021

Dear Ziad,

Yours faithfully,

Paul Williamson
VP and GM, Client Business
Arm Limited

CONFIDENTIAL

# Exhibit 17



February 25, 2021

Paul Williamson, VP, General Manager Client Line of Business
ARM Limited

**VIA EMAIL**

Dear Paul:



CONFIDENTIAL





Thank you,

Ziad Asghar
VP, Product Management
Qualcomm Technologies, Inc.

QCARM_3434165

# Exhibit 18

Ziad Asghar
VP, Product Management
Qualcomm Technologies, Inc.
5775 Morehouse Drive
San Diego, CA 92121



2 March 2021

Dear Ziad,



Appreciate your attention to these matters.

Yours faithfully,

Paul Williamson
VP and GM, Client Business
Arm Limited

QCARM_3451883

# Exhibit 19

Gerard Williams III
CEO and President
NuVia, Inc.
2841 Mission College Blvd., 4th Floor
Santa Clara, CA 94024



1 February 2022

Dear Gerard:

We write pursuant to the Architecture License Agreement (ALA #CM0001215) and the Technology License Agreement (TLA #CM0001229), both dated September 27, 2019, between our companies (collectively, "the Agreements").

Sincerely,

Carolyn Herzog
Executive Vice President and General Counsel
Arm Limited

cc:     Ann Chaplin, General Counsel & Corporate Secretary
        Qualcomm Technologies, Inc.
        5775 Morehouse Drive
        San Diego, CA 92121

# Exhibit 20

| From: | |
|---|---|
| To: | Manu Gulati |
| CC: | Gerard Williams; John Bruno; Nitin Sharma; Pradeep Kanapathipillai; Raghava Denduluri; Lynn Bos; Karen Chin; Vinod Chamarty |
| Sent: | 2/4/2022 6:06:33 PM |
| Subject: | |

Hi Manu,

Sincerely,

~Jignesh

**From:** Vivek Agrawal <Vivek.Agrawal@arm.com>
**Sent:** Friday, February 4, 2022 6:03 AM
**To:** Jignesh Trivedi <jignesht@qti.qualcomm.com>; Nitin Sharma <nsh@qti.qualcomm.com>
**Cc:** AVKv8-support <AVKv8-support@arm.com>
**Subject:**

**WARNING:** This email originated from outside of Qualcomm. Please be wary of any links or attachments, and do not enable macros.

Hi Jignesh, Nitin,

Please review the following and confirm if this looks good to you.
We will follow-up with formal sign-off documentation and send draft version for your review.

Regards,
Vivek

QCARM_0557206

Regards,
Vivek
IMPORTANT NOTICE: The contents of this email and any attachments are confidential and may also be privileged. If you are not the intended recipient, please notify the sender immediately and do not disclose the contents to any other person, use it for any purpose, or store or copy the information in any medium. Thank you.

CONFIDENTIAL

QCARM_0557207

# Exhibit 21



Qualcomm Incorporated
5775 Morehouse Drive, San Diego, CA 92121
www.qualcomm.com

April 1, 2022

VIA ELECTRONIC MAIL

Spencer Collins
Interim General Counsel
Arm Limited
110 Fulbourn Road
Cambridge, CB1 9NJ, United Kingdom

Dear Spencer,

Best Regards,

Ann Chaplin
General Counsel and Corporate Secretary
Qualcomm Incorporated

QCARM_3433989

**CERTIFICATION**



Gerard Williams III

April 1, 2022

QCARM_3433990

# Exhibit 22

1               IN THE UNITED STATES DISTRICT COURT

2                  FOR THE DISTRICT OF DELAWARE

3

4   ----------------------------x
                                 )
5   ARM LTD., a U.K. corporation, )
                                 ) C.A. No. 22-1146-MN
6                  Plaintiff,     )
                                 )
7       vs.                       )
                                 )
8   QUALCOMM INC., a Delaware     )
    corporation, QUALCOMM         )
9   TECHNOLOGIES, INC., a Delaware )
    corporation, and NUVIA, INC., )
10  a Delaware corporation,       )
                                 )
11                 Defendants.    )
                                 )
12  ----------------------------x

13

           CONTAINS HIGHLY CONFIDENTIAL TESTIMONY
14                   AND SOURCE CODE
                  ATTORNEYS' EYES ONLY
15

16

      VIDEOTAPED DEPOSITION OF GERARD WILLIAMS, III
17

                  SAN DIEGO, CALIFORNIA
18

                 FRIDAY, NOVEMBER 3, 2023
19

                       8:33 A.M.
20

21

22

23  Job No.: J10401726

24  Pages: 1 - 267

25  Reported by: Leslie A. Todd, CSR No. 5129 and RPR



```
 1              A P P E A R A N C E S

 2

 3    ON BEHALF OF PLAINTIFF:

 4         MICHAEL A. JACOBS, ESQUIRE

 5         REEBEHL EL-HAGE, ESQUIRE

 6         MORRISON & FOERSTER LLP

 7         425 Market Street, Floor 32

 8         San Francisco, California 94105

 9         (415) 268-7455

10         mjacobs@mofo.com

11         rel-hage@mofo.com

12    ON BEHALF OF DEFENDANTS:

13         CATHERINE NYARADY, ESQUIRE

14         JACOB BRALY, ESQUIRE

15         PAUL, WEISS, RIFKIND, WHARTON &

16           GARRISON LLP

17         1285 Avenue of the Americas

18         New York, NY 10019-6064

19         (212) 373-3532

20         cnyarady@paulweiss.com

21         jbraly@paulweiss.com

22

23    ALSO PRESENT:

24         KURT KJELLAN, Qualcomm in-house counsel

25         RENE SANCHEZ, Videographer
```



```
 1                    C O N T E N T S
 2   EXAMINATION OF GERARD WILLIAMS, III          PAGE
 3      By Mr. Jacobs                             12
 4
 5
 6
 7                    E X H I B I T S
 8              (Attached to transcript)
 9   WILLIAMS DEPOSITION EXHIBITS                 PAGE
10   Ex. 1      LinkedIn profile for Gerard
11              Williams, III                     55
12   Ex. 2      Nuvia Inc.'s Responses and
13              Objections to Arm Ltd.'s First
14              Notice of Deposition of Nuvia,
15              Inc. Pursuant to Federal Rule of
16              Civil Procedures 30(B)(6)         55
17   Ex. 3      Defendants' Responses and
18              Objections to Arm Ltd's First
19              Notice of Deposition of Qualcomm
20              Inc. and Qualcomm Technologies,
21              Inc. Pursuant to Federal Rule of
22              Civil Procedure 30(B)(6)          55
23   Ex. 4      E-mail re Arm Ltd. v. Qualcomm
24              Inc. et al., C.A. No. 22-1146-MN -
25              Arm's Rule 30(b)(6) Notices       55
```



```
 1   witness.  And with me are Jacob Braly, also from

 2   Paul Weiss, and Kurt Kjellan from Qualcomm.

 3                  THE VIDEOGRAPHER:  Thank you, Counsel.

 4                  Will the court reporter please swear

 5   in the witness.

 6   WHEREUPON,

 7                  GERARD WILLIAMS, III,

 8   having been duly sworn by the Certified Shorthand

 9   Reporter, was examined and testified as follows:

10                       EXAMINATION

11   BY MR. JACOBS:

12        Q     Good morning, Mr. Williams.

13        A     Good morning.

14        Q     Have you had your deposition taken

15   before?

16        A     I have, yes.

17        Q     Was that in the Apple litigation?

18        A     That was, yes, in the Apple

19   litigation.

20        Q     Any others?

21        A     None that memory serves.

22        Q     I've handed you your LinkedIn

23   profile.  I want to use it to talk to you a bit

24   about your background.

25                  You worked at Arm for 12 years; is
```





```
17        Q      When you refer to that Nuvia CPU
18   core, did that CPU core come to have a name?
19        A      It eventually had a name that we
20   attached called ████████.
21        Q      And so thinking about -- that would
22   come to be after this negotiation, of course,
23   right?
24        A      What would come to --
25        Q      ████████████
```



```
 1          A       Yes.  I see ████ , yes.
 2          Q       Did you, in fact, receive those --
 3    that documentation at Nuvia?
 4          A       I'd have to look at the downloads
 5    that were done.  But these were the parts that --
 6    that we could get access to.
 7          Q       In general, what did you do at Nuvia
 8    with the ████████████████████████████
 9                  MS. NYARADY:  Objection.
10                  THE WITNESS:  Is there a point in
11    time?
12    BY MR. JACOBS:
13          Q       Over the life of the company.
14                  MS. NYARADY:  Same objection.
15                  THE WITNESS:  So in the beginning,
16    before the ████████████████ was there, we --
17    we actually got the ████████████████████
18    from the internet.
19    BY MR. JACOBS:
20          Q       What did you do with them?
21          A       We used them as a reference.
22          Q       Who actually made that download?
23          A       It would have been a variety of
24    people that would have made that download on the
25    engineering team.  It was a document that was
```



1    available in public domain, marked as

2    non-confidential, but it was -- we downloaded

3    that to -- to just use as reference.  That was at

4    the beginning of time.

5        Q    And then after the ALA was entered,

6    what did you -- how did you access the

7    ███████████████████████████?

8        A    Some of it was actually still through

9    the public domain.  Most of it was through the

10   public domain.  The elements that you see in

11   ███████████  for instance, ████████████████████

███████████████████████████████████████████████████

█████████████████████████ And -- and those came through

14   download, because they are part of the

15   verification infrastructure for the architecture

16   needed for Arm's required sign-off.

17       Q    When you say came through a download,

18   what do you mean?

19       A    Oh, sorry.  There is a system called

20   Arm Connect that Arm uses to transfer -- there's

21   actually a variety of systems, but one example of

22   these systems is Arm Connect, where Arm will

23   upload into Arm Connect files for a particular

24   company.

25            And the receiving company can



1        Q      So following the acquisition, what

2   happened to ██████ following the closing of the

3   acquisition?

4                MS. NYARADY:  Objection.

5                THE WITNESS:  The design of -- we

6   continued development of that core.

7   BY MR. JACOBS:

8        Q      When was the decision made to

9   discontinue server -- enterprise server

10  applications?

11       A      The development of that -- that was

12  much later in time.

13       Q      So in the period -- in the months

14  following the acquisition, you were still working

15  on ██████ for enterprise server uses?

16       A      Yes.

17       Q      Did you also launch a mobile

18  development effort following the acquisition?

19       A      There was a discussion within

20  Qualcomm that would have been -- the first was a

21  compute platform, actually, that we started

22  discussions on.

23       Q      What did you call it?

24       A      ██████.

25       Q      Oh, ██████.



 1   extensions to this for the subsequent cores.

 2        Q     I see.  So it's possible that the way

 3   this reference manual has evolved for the

 4   ███████████████, it's like having a supplement

 5   to it that says, here are the changes?

 6        A     Correct.

 7        Q     Is that right?

 8        A     Yes.

 9             MS. NYARADY:  I'm going to mark the

10   transcript highly confidential source code,

11   attorneys' eyes only.

12             (Exhibit No. 37 was marked for

13             identification.)

14             MS. NYARADY:  And for the benefit of

15   the court reporter, source code exhibits are not

16   to be left behind.  So Exhibit 36 is also going to

17   be missing.  I'm going to take that with me.

18             MR. JACOBS:  Maybe just for the

19   record, let's note that 36 is ███████████ to

20   █████████.

21   BY MR. JACOBS:

22        Q     37 is an e-mail thread on which you

23   are copied from February 2022, ██ ████████

███████████████████████████████████████████

███████████████████████████████████



```
 1          Do you see that?
 2     A    Yes.
 3     Q    ███████████████████████████
 4     A    █████████████████████████████████████
███████████████████████████████████████████████
██████████
 7     Q    Yes, or the subject line.
 8     A    Okay.  ████████████████████████
████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████████████████████████
█████████████████████████████████████████
██████████████████████████████████████████████
███████████████████████████████████████████████.
16     Q    ███████████████████████████████████
████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████
20     A    It actually used both of those
21  elements, yes.
22     Q    ███████████████████████████████████
███████████████████████████████████████████████?
24          MS. NYARADY:  Objection.
25          THE WITNESS:  With respect to Nuvia,
```



1    Qualcomm?  With respect to who?

2    BY MR. JACOBS:

3         Q    ██████████████████████████

     ██████████████

5              MS. NYARADY:  Same objection.

6              THE WITNESS:  ████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████

14   BY MR. JACOBS:

15        Q    ███████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████

19        A    ███████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████.

25        Q    ███████████████████████████████



1 ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████

5     A     No.

6     Q     ████████████████████████

███████████████████████

8     A     ████████████████████████

██████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████

████████████████████

14    A     ████████████████████████

████████████████████████████████

16    Q     ████████████████████████

███████████████████████████████████████

███████████████████████████████

19    A     I'll go back to why that language was

20  put there again.

21    Q     And I recall that testimony, so --

22    A     Okay.

23    Q     Did you discuss that position with

24  anyone at Qualcomm before the acquisition closed?

25    A     With Qualcomm?



```
1        A      Yes.

2        Q      What is going -- what is ███████████

██████████████████████████████████████

███████████

5        A      Repeat that again?

6        Q      ████████████████████████████████████

█████████████████████████████████

8        A      ███████████████████████████████

███████████████.

10       Q      ████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

███████████████████████████████████

██████████████████████████████

██████████████████████████████

████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████

██████████████████████████████████████████

████████████████

███████████████████████████████████

██████████████████████████████████

███████████████████████████████

███████████████████████████████████
```

ESQUIRE
DEPOSITION SOLUTIONS

```
1        A      I do.

2        Q      ████████████████████████████
████████████████████████████████████
████████████████████████████████████
███████████████
████████████████████████
████████████████████████████████████████
█████████████████████████████████████
██████████████████████████████

10              MS. NYARADY:  Objection.

11   BY MR. JACOBS:

12        Q      ████████████████████████████
██████████████████████████████████
████████████████████████
██████████████████████████████
██████████████████████████████
███████████████████████████████████████
████████████████████████████████████████
████████████
████████████████████████████████████
███████████████████████████████████
██████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
```



1   ██████████████████████

2        A      ████████████████████████

████████████████████████████

██████████████████████████████

██████████████████████████

████████████████████████████████

██████████████████████████████████

████████████████████████████████

████████████

██████████████████████████████████████

██████████

12            MR. JACOBS:  Can we take a break?

13            MS. NYARADY:  Sure.

14            THE VIDEOGRAPHER:  Off the record at

15   3:54 p.m.

16            (Recess.)

17            THE VIDEOGRAPHER:  On the record,

18   4:04 p.m.

19   BY MR. JACOBS:

20        Q      I'd like to go back to Exhibit 34,

21   your certification.

22        A      Okay.

23        Q      I have a few questions about your

24   April 1st, 2022 certification.

25            The third sentence says, "Further,



```
 1        CERTIFICATE OF CERTIFIED SHORTHAND REPORTER
 2          The undersigned Certified Shorthand Reporter
 3   does hereby certify:
 4          That the foregoing proceeding was taken before
 5   me remotely via Zoom videoconferencing at the time
 6   therein set forth, at which time the witness was
 7   duly sworn; That the testimony of the witness and
 8   all objections made at the time of the examination
 9   were recorded stenographically by me and were
10   thereafter transcribed, said transcript being a
11   true and correct copy of my shorthand notes
12   thereof; That the dismantling of the original
13   transcript will void the reporter's certificate.
14          In witness thereof, I have subscribed my name
15   this date:  November 8, 2023.
16
17                    Leslie Todd
18                    LESLIE A. TODD, CSR, RPR
19                    Certificate No. 5129
20
21   (The foregoing certification of
22   this transcript does not apply to any
23   reproduction of the same by any means,
24   unless under the direct control and/or
25   supervision of the certifying reporter.)
```



# Exhibit 23

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARM LTD., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    C.A. No. 22-1146 (MN) |
| | ) |
| QUALCOMM INC., QUALCOMM | )    **HIGHLY CONFIDENTIAL –** |
| TECHNOLOGIES, INC. and NUVIA, INC., | )    **ATTORNEYS' EYES ONLY** |
| | ) |
| Defendants. | ) |

**DEFENDANTS' RESPONSES AND OBJECTIONS TO
PLAINTIFF'S SECOND SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, defendants Qualcomm Inc., Qualcomm Technologies, Inc, and Nuvia, Inc. (collectively "Qualcomm" or "Defendants") by and through their attorneys, hereby respond and object to Plaintiff ARM LTD.'s ("Plaintiff" or "ARM") Second Set of Interrogatories to Defendants dated September 20, 2023 as follows:

**GENERAL OBJECTIONS**

1. Defendants object to each Interrogatory to the extent that it seeks to impose greater or different obligations on Defendants than those provided for by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, any discovery orders entered into this case, any other applicable Court orders, or agreements reached by the parties.

2. Defendants object to each Interrogatory to the extent that it seeks documents, things, or information protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity. Nothing contained in these Responses and Objections is intended to be, nor shall in any way be, construed as a waiver of any such privilege, immunity, or protection. Specific Objections on the grounds of privilege are provided for emphasis and clarity

## SPECIFIC RESPONSES AND OBJECTIONS

## INTERROGATORY NO. 14:

Describe all technical information, support, documentation, source code, files, and deliverables received by Nuvia from Arm under the Nuvia ALA ("Arm-Nuvia Deliverable") by identifying each Arm-Nuvia Deliverable and for each stating the production number(s) of any document(s) reflecting the Arm-Nuvia Deliverable, stating the date that the Arm-Nuvia Deliverable was received by Nuvia, and identifying all documents concerning, and the Nuvia and Qualcomm employees most knowledgeable about, the Arm-Nuvia Deliverable.

## RESPONSE TO INTERROGATORY NO. 14:

Defendants incorporate their General Objections and Objections to Definitions and Instructions as if set forth in their entirety herein.  Defendants object to Interrogatory No. 14 on the grounds that the terms "technical information," "support," "documentation," "source code," "files," "deliverables," and are vague and ambiguous.   Defendants further object to the Interrogatory on the grounds that the term "Arm-Nuvia Deliverable" is vague and ambiguous, including to the extent that it describes information beyond "███████████████████████" as defined in ███████████████████.  Defendants further object to the Interrogatory as irrelevant to the extent that it seeks information beyond "████████████████████" as defined in ███████████████████.  Defendants further object to the Interrogatory as overly broad and unduly burdensome to the extent it calls for the disclosure of information that is readily within the possession of Plaintiff, or that is more easily available to it.  Defendants further object to the Interrogatory to the extent that it calls for the identification of NUVIA employees.

Subject to and without waiving the foregoing objections, █████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████.  While the NUVIA ALA was in force, NUVIA accessed certain information listed in Annex 1. ██████████████████████████████████████ ███████████████████████████████████████████████████████████



Pursuant to Rule 33(d), Defendants have produced documents related to information made available to NUVIA by ARM under the NUVIA ALA at the following Bates numbers: ███████████████████████████████████████████ ███████████████████████████. A small subset of these documents include information that was downloaded by NUVIA under the NUVIA ALA. Given that ARM tracks the export of its information, Plaintiff is able to identify such downloads (see Exhibit 10 to the deposition of Jignesh Trivedi).

Based on their investigation to date, Defendants identify the following individuals as the persons most likely to be knowledgeable about the facts relating to this answer:

- Jignesh Trivedi

- Pradeep Kanapathipillai

Defendants reserve the right to supplement or amend this response.

**INTERROGATORY NO. 15:**

State whether You contend that any Arm-Nuvia Deliverable (identified in response to Interrogatory No. 14) is not Arm Confidential Information under ████████████████ and, if You so contend, then describe with particularity the factual and legal basis for that contention by, without limitation, identifying all facts supporting the contention and identifying all documents concerning, and the Nuvia and Qualcomm employees most knowledgeable about, those facts.

**RESPONSE TO INTERROGATORY NO. 15:**

Defendants incorporate their General Objections and Objections to Definitions and Instructions as if set forth in their entirety herein. Defendants object to the Interrogatory on the grounds that the term "Arm-Nuvia Deliverable" is vague and ambiguous, including to the extent

11

- Manu Gulati

Defendants reserve the right to supplement or amend this response.

**INTERROGATORY NO. 17:**

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

**RESPONSE TO INTERROGATORY NO. 17:**

████████████████████████████████████████████████

- ███████

- ████████████

Defendants reserve the right to supplement or amend this response.

**INTERROGATORY NO. 18:**

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████

**RESPONSE TO INTERROGATORY NO. 18:**

████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████

- ███████████
- ████████████████

Defendants reserve the right to supplement or amend this response.

**INTERROGATORY NO. 19:**

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████

**RESPONSE TO INTERROGATORY NO. 19:**

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████    ██████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
█████████████████████

[REDACTED]

Defendants reserve the right to supplement or amend this response.

**INTERROGATORY NO. 24:**

[REDACTED].

**RESPONSE TO INTERROGATORY NO. 24:**

[REDACTED]



Defendants reserve the right to supplement or amend this response.

**INTERROGATORY NO. 25:**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

_____

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Brian Shiue
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
(202) 223-7300

Catherine Nyarady
Erin J. Morgan
Anna R. Gressel
Madalyn G. Vaughn
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

Andrea L. D'Ambra
Susana Medeiros
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY  10019
(212) 318-3000

Kira Latham
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX  75201
(214) 855-8000

October 27, 2023

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

*Attorneys for Defendants*

# Exhibit 24

| | |
|---|---|
| **From:** | Sender Unspecified |
| **To:** | Manu Gulati <>;Ziad Asghar <> |
| **Sent:** | |
| **Subject:** | (No Subject) |
| **Attachments:** | rsmf.zip |

Ziad Asghar
2022-01-19T19:50:28.0000000Z

Ziad Asghar
2022-01-19T19:50:32.0000000Z
does

CONFIDENTIAL

QCARM_2417783

# Exhibit 25

# REDACTED IN ITS ENTIRETY

# Exhibit 26

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARM LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-1146 (MN) |
| | ) | |
| QUALCOMM INC., QUALCOMM | ) | **HIGHLY CONFIDENTIAL** |
| TECHNOLOGIES, INC. and NUVIA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFF'S
FIRST SET OF REQUESTS FOR ADMISSION (NOS. 1–30)**

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure and the Local Civil Rules of this Court, Defendants Qualcomm Incorporated, Qualcomm Technologies, Inc. (collectively "Qualcomm"), and Nuvia, Inc. ("Nuvia") (collectively "Defendants") by and through their attorneys, hereby respond and object to ARM's ("Plaintiff") First Set of Requests for Admission (Nos. 1–30) ("Requests").

**PRELIMINARY STATEMENT**

The following responses are based solely on the information that is presently available and specifically known to Defendants, and are given without prejudice to Defendants' right to supplement with any subsequently discovered facts. Defendants reserve the right to supplement the following responses and to change any and all responses therein as additional facts are ascertained, analyses are made, and legal research is completed.

Defendants respond to the Requests on the basis of information available at the time the responsive information was gathered, within the limits of time, and subject to the objections described below. Defendants respond to the Requests as they interpret and understand each Request set forth herein. If Plaintiff subsequently asserts an interpretation of any of the Requests

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

**REQUEST FOR ADMISSION NO. 5:**

Arm did not consent to Nuvia's assignment of the Nuvia ALA to Qualcomm before Nuvia assigned the Nuvia ALA to Qualcomm.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Defendants incorporate each of the General Objections as if they were stated in full. Defendants object to the terms "consent," "assignment," and "assigned" as vague and ambiguous. Defendants further object to this Request as overly broad and unduly burdensome to the extent that it calls for the disclosure of information that was articulated in the Answer and Amended Counterclaim. Defendants further object to this Request to the extent that the information sought is subject to the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or doctrine that makes such information non-discoverable. Defendants further object to this Request on the grounds that it improperly calls for a legal conclusion. Defendants further object to this Request to the extent that it contains express or implied assumptions of fact or law with respect to matters at issue in this case. Defendants object to this Request to the extent it calls for information not within Defendants' possession, custody, or control, but within the possession, custody, or control of ARM or otherwise equally available to ARM.

Subject to and without waiver of any of their objections, Defendants admit that by a letter dated March 2, 2021, ARM refused to consent to the transfer of the Nuvia ALA to Qualcomm. Defendants otherwise deny this Request.

**REQUEST FOR ADMISSION NO. 6:**

Arm consented to Nuvia's assignment of the Nuvia ALA to Qualcomm before Nuvia assigned the Nuvia ALA to Qualcomm.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Defendants incorporate each of the General Objections as if they were stated in full. Defendants object to the terms "consented," "assignment," and "assigned" as vague and

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

**REQUEST FOR ADMISSION NO. 25:**

Nuvia did not object to Arm's termination of the Nuvia ALA.

**RESPONSE TO REQUEST FOR ADMISSION NO. 25:**

Defendants incorporate each of the General Objections as if they were stated in full. Defendants object to the terms "object" and "termination" as vague and ambiguous. Defendants further object to this Request as overly broad and unduly burdensome to the extent that it calls for the disclosure of information that was articulated in the Answer and Amended Counterclaim. Defendants further object to this Request to the extent that the information sought is subject to the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or doctrine that makes such information non-discoverable. Defendants further object to this Request on the grounds that it improperly calls for a legal conclusion. Defendants further object to this Request to the extent that it contains express or implied assumptions of fact or law with respect to matters at issue in this case. Defendants further object to this Request to the extent that it prematurely seeks information that will be the subject of expert discovery.

Subject to and without waiver of any of their objections, Defendants admit that they did not communicate any objection to ARM when it terminated the Nuvia ALA and Defendants admit that Nuvia provided the April 1, 2022 certification in response to ARM's termination of the Nuvia ALA, but denies that ARM had the contractual right to terminate the agreement.

**REQUEST FOR ADMISSION NO. 26:**

Nuvia objected to Arm's termination of the Nuvia ALA.

**RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

Defendants incorporate each of the General Objections as if they were stated in full. Defendants object to the terms "objected" and "termination" as vague and ambiguous. Defendants further object to this Request as overly broad and unduly burdensome to the extent that it calls for

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

the disclosure of information that was articulated in the Answer and Amended Counterclaim. Defendants further object to this Request to the extent that the information sought is subject to the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or doctrine that makes such information non-discoverable. Defendants further object to this Request on the grounds that it improperly calls for a legal conclusion. Defendants further object to this Request to the extent that it contains express or implied assumptions of fact or law with respect to matters at issue in this case. Defendants further object to this Request to the extent that it prematurely seeks information that will be the subject of expert discovery.

Subject to and without waiver of any of their objections, Defendants admit that they did not communicate any objection to ARM when it terminated the Nuvia ALA and Defendants admit that Nuvia provided the April 1, 2022 certification in response to ARM's termination of the Nuvia ALA, but denies that ARM had the contractual right to terminate the agreement.

**REQUEST FOR ADMISSION NO. 27:**

Nuvia notified Arm about Qualcomm's potential acquisition of Nuvia before Qualcomm acquired Nuvia.

**RESPONSE TO REQUEST FOR ADMISSION NO. 27:**

Defendants incorporate each of the General Objections as if they were stated in full. Defendants object to the terms "notified" and "potential acquisition" as vague and ambiguous. Defendants further object to this Request as overly broad and unduly burdensome to the extent that it calls for the disclosure of information that was articulated in the Answer and Amended Counterclaim. Defendants further object to this Request to the extent that the information sought is subject to the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or doctrine that makes such information non-discoverable. Defendants further object to this Request on the grounds that it improperly calls for a legal conclusion. Defendants

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

## RESPONSE TO REQUEST FOR ADMISSION NO. 29:

Defendants incorporate each of the General Objections as if they were stated in full.

Subject to and without waiver of any of their objections, Defendants decline to respond to this Request as premature under the Scheduling Order (D.I. § 7(c)), but are willing to meet and confer with ARM.  Defendants otherwise deny this Request.

## REQUEST FOR ADMISSION NO. 30:

Documents produced by Defendants in this Litigation are originals, within the meaning of Rule 1002, or duplicates satisfying the requirements of Rule 1003, 1004, or 1005 of the Federal Rules of Evidence.

## RESPONSE TO REQUEST FOR ADMISSION NO. 30:

Defendants incorporate each of the General Objections as if they were stated in full.

Subject to and without waiver of any of their objections, Defendants decline to respond to this Request as premature under the Scheduling Order (D.I. § 7(c)), but are willing to meet and confer with ARM.  Defendants otherwise deny this Request.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

_____
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

*Attorneys for Defendants*

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
(202) 223-7300

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

Catherine Nyarady
Erin J. Morgan
Anna R. Gressel
Madalyn G. Vaughn
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

Andrea L. D'Ambra
Susana Medeiros
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY  10019
(212) 318-3000

Kira Latham
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX  75201
(214) 855-8000

October 20, 2023

# Exhibit 27

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF DELAWARE

 3

 4

 5  ARM LTD., a U.K. corporation,      )
                                       )
 6          Plaintiff,                 ) Case No. 22-1146-MN
                                       )
 7              vs.                    )
                                       )
 8  QUALCOMM INC., a Delaware          )
    corporation, QUALCOMM TECHNOLOGIES,)
 9  INC., a Delaware corporation, and  )
    NUVIA, INC., a Delaware            )
10  corporation,                       )
                                       )
11          Defendants.                )
    _____)
12

13

14                 C O N F I D E N T I A L

15                  ATTORNEYS' EYES ONLY

16

17      VIDEOTAPED DEPOSITION OF QUALCOMM 30(b)(6)

18              designee ZIAD ASGHAR

19

20

21          Deposition taken on:
            Wednesday, November 8, 2023, 8:39 a.m.
22
            12531 High Bluff Drive, Suite 100
23          San Diego, California

24
    Reported By:  Kimberly Reichert, CSR 10986
25  Job No. J10465669
```



```
 1   APPEARANCES OF COUNSEL:

 2   For the Plaintiff:

 3                       MORRISON & FOERSTER LLP
                         By:  DANIEL P. MUINO, ESQ.
 4                       2100 L Street, NW
                         Suite 900
 5                       Washington, DC  20037
                         dmuino@mofo.com
 6

 7   For Defendants:

 8                       PAUL, WEISS, RIFKIND, WHARTON
                         & GARRISON, LLP
 9                       By:  JACOB BRALY, ESQ.
                             CATHERINE NYARADY, ESQ.
10                       1285 Avenue of the Americas
                         New York, New York  10019
11                       jbraly@pualweiss.com
                         cnyarady@paulweiss.com
12

13                       QUALCOMM INCORPORATED
                         QUALCOMM LEGAL COUNSEL
14                       By:  KURT KJELLAND, ESQ.
                         5775 Morehouse Drive
15                       San Diego, California  92121
                         kurtk@qualcomm.com
16

17

18

19   Also Present:  Rene Sanchez, Videographer

20

21

22

23

24

25
```



```
 1                        I N D E X

 2    DEPONENT                EXAMINED BY              PAGE

 3    ZIAD ASGHAR             MR. MUINO                 9

 4

 5

 6    EXHIBITS FOR IDENTIFICATION                      PAGE

 7    Plaintiff's

 8    Exhibit 1       LinkedIn Profile for             14
                      Ziad Asghar
 9
      Exhibit 2       Arm Ltd's First Notice of        29
10                    Deposition of Qualcomm

11    Exhibit 3       Arm Ltd's First Notice of        34
                      Deposition of Nuvia, Inc.
12
      Exhibit 4       Amended and Restated Architecture 36
13                    License Agreement between Arm
                      Limited and Qualcomm Global Trading
14
      Exhibit 5       E-mail to Andy Oberst            75
15                    from Ziad Asghar
                      dated 5/15/2013
16
      Exhibit 6       A document about Arm as a company 76
17                    and looking at what their business
                      model looks like
18
      Exhibit 7       E-mail chain                     87
19                    top e-mail to Akash Palkhiwala
                      dated 3/10/2019
20
      Exhibit 8       E-mail chain                     95
21                    top e-mail to Travis Lanier, et al.
                      dated 9/9/2019
22
      Exhibit 9       Document entitled "ARM           99
23                    alternative strategies"

24    Exhibit 10      E-mail chain                    105
                      top e-mail to Quinn Li, et al.
25                    dated 6/19/2020
```



```
 1                        ZIAD ASGHAR,
 2              deponent, was sworn and examined
 3                  and testified as follows:
 4
 5        THE REPORTER:  Mr. Asghar, will you raise your
 6   right hand for me, please.  Do you solemnly state
 7   that the evidence you shall give in this matter now
 8   pending shall be the truth, the whole truth and
 9   nothing but the truth so help you God?
10        THE WITNESS:  I do.
11
12                        EXAMINATION
13   BY MR. MUINO:
14        Q    Good morning, Mr. Asghar.
15        A    Good morning.
16        Q    Could you please state your name for the
17   record?
18        A    Ziad Asghar.
19        Q    What is your current address?
20        A    ███████████████████████████████████
     ████████████████████████████████
22        Q    Are you currently employed by Qualcomm?
23        A    I am.
24        Q    And what is your current position at
25   Qualcomm?
```



1    BY MR. MUINO:

2         Q    Why were you asking for Arm's consent to

3    this ███████████████████████████

4         A    Same reason that I just mentioned.  We

5    wanted to have a smooth acquisition of Nuvia such

6    that we could progress to be able to make the best

7    competitive products.

8         Q    ███████████████████████████████
   ████████████████████████████████████████████████
   ████████████████████████████████████

11        MR. BRALY:  Objection; mischaracterizes

12   testimony.

13        THE WITNESS:  No.  Like I said, the intent here

14   was to have a smooth acquisition such that we could

15   move forward quickly to make the best products from

16   my perspective.

17   BY MR. MUINO:

18        Q    All right.  That didn't answer my

19   question.  Let me ask it once more.  ███████████████
   ████████████████████████████████████████████████
   █████████████████████████████████████████████████
   █████████████████████████████████████

23        MR. BRALY:  Objection; asked and answered,

24   mischaracterizes testimony.

25        THE WITNESS:  I think I already addressed that



1   before.  We are quite clear in the document, in this

2   and prior to, that Qualcomm ALA takes precedence,

3   and this was a way to make sure that essentially we

4   can close the acquisition quickly.

5   BY MR. MUINO:

6        Q    Did Arm provide the consent that you were

7   requesting here?

8        A    I'm not aware.

9        Q    You're not aware whether they did or not?

10       A    Yes, I don't think they did.

11       Q    You don't think that Arm consented?

12       A    At least in none of the letters that we

13  have gotten from Arm, we have not gotten that.

14       MR. MUINO:  I'm going to mark as Exhibit 22 --

15       MR. BRALY:  Twenty-three.  The Nuvia ALA was

16  22.

17       MR. MUINO:  This is Exhibit 23, which is a

18  document with the ███████████████████████.

19            (Plaintiff's Exhibit 23 was marked

20  for identification by the deposition officer and is

21  attached hereto.)

22  BY MR. MUINO:

23       Q    Mr. Asghar, do you recognize this as a

24  letter from you to Mr. Williamson dated March 14,

25  2021?



```
1                    C E R T I F I C A T E

2

3    STATE OF CALIFORNIA    )
                            )   ss.
4    COUNTY OF ORANGE       )

5

6            I, KIMBERLY C. REICHERT, holder of Certificate

7    Number CSR 10986, issued by the Court Reporters Board of

8    California, do hereby certify that I was authorized to

9    and did report said remote teleconference deposition in

10   stenotype; and that the foregoing pages are a true and

11   correct transcription of my shorthand notes of said

12   remote teleconference deposition.

13           I further certify that said remote

14   teleconference deposition was taken at the time and

15   place hereinabove set forth and that the taking of

16   said remote teleconference deposition was commenced

17   and completed as hereinabove set out.

18           I further certify that I am not attorney or

19   counsel of any of the parties, nor am I a relative or

20   employee of any attorney or counsel of any party

21   connected with the action, nor am I financially

22   interested in the action.

23           The foregoing certification of this transcript

24   does not apply to any reproduction of the same by any

25   means unless under the direct control and/or direction
```



1   of the certifying reporter.

2

3   Dated this date:  November 21, 2023.

4

5                                                 _Kim Reichert_

6                              _____

7                              KIMBERLY C. REICHERT, CSR No. 10986

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



# Exhibit 28

| | |
|---|---|
| **From:** | Ziad Asghar </O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=F80965C73CBC45719B2B9AA1BF753456-ZASGHAR> |
| **To:** | Will Abbey; Paul Williamson |
| **CC:** | RK Chunduru |
| **Sent:** | 3/25/2021 11:39:52 PM |
| **Subject:** | Arm Discussion |

Dear Paul and Will,



Kind regards,

Ziad

# Exhibit 29

# REDACTED IN ITS ENTIRETY

# Exhibit 30

# REDACTED IN ITS ENTIRETY

# Exhibit 31

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

2001 K STREET, NW
WASHINGTON, DC 20006-1047

TELEPHONE (202) 223-7300

LLOYD K. GARRISON   (1946-1991)
RANDOLPH E. PAUL    (1946-1956)
SIMON H. RIFKIND    (1950-1995)
LOUIS S. WEISS      (1927-1950)
JOHN F. WHARTON     (1927-1977)

WRITER'S DIRECT DIAL NUMBER
(202) 223-7458

WRITER'S DIRECT FACSIMILE
(202) 379-4112

WRITER'S DIRECT E-MAIL ADDRESS
mzappala@paulweiss.com

1285 AVENUE OF THE AMERICAS
NEW YORK, NY 10019-6064
TELEPHONE (212) 373-3000

UNIT 5201, FORTUNE FINANCIAL CENTRE
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

SUITES 3601 - 3606 & 3610
36/F, GLOUCESTER TOWER
THE LANDMARK
15 QUEEN'S ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

535 MISSION STREET, 24TH FLOOR
SAN FRANCISCO, CA 94105
TELEPHONE (628) 432-5100

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

August 15, 2023

PARTNERS RESIDENT IN WASHINGTON

JUSTIN ANDERSON
JOSEPH J. BIAL
PAUL D. BRACHMAN
JOHN P. CARLIN
REBECCA S. COCCARO
TIHITINA DAGNEW
KAREN L. DUNN
KENNETH A. GALLO
ROBERTO J. GONZALEZ

WILLIAM A. ISAACSON
MARK F. MENDELSOHN
JANE B. O'BRIEN
JESSICA E. PHILLIPS
JEANNIE S. RHEE
KANNON K. SHANMUGAM
KYLE SMITH
JOSHUA H. SOVEN

PARTNERS NOT RESIDENT IN WASHINGTON

MATTHEW W. ABBOTT*
EDWARD T. ACKERMAN*
JACOB A. ADLERSTEIN*
ALLAN J. ARFFA*
JONATHAN H. ASHTOR*
ROBERT A. ATKINS*
SCOTT A. BARSHAY*
PAUL M. BASTA*
LYNN B. BAYARD*
BRUCE BIRENBOIM*
H. CHRISTOPHER BOEHNING*
BRIAN BOLIN*
ANGELO BONVINO*
ANDRE G. BOUCHARD*
GERALD BRANT*
ROBERT A. BRITTON*
WALTER F. BROWN*
SUSANNA M. BUERGEL*
JESSICA S. CAREY*
DAVID CARMONA*
GEOFFREY R. CHEPIGA*
ELLEN N. CHING*
WILLIAM A. CLAREMAN*
LEWIS R. CLAYTON
YAHONNES CLEARY*
JAY COHEN
KELLEY A. CORNISH*
CHRISTOPHER J. CUMMINGS*
THOMAS V. DE LA BASTIDE III*
MEREDITH R. DEARBORN*
ALICE BELISLE EATON*
ANDREW J. EHRLICH*
GREGORY A. EZRING*
ROSS A. FIELDSTON*
ANDREW C. FINCH
BRAD J. FINKELSTEIN*
BRIAN P. FINNEGAN*
ROBERTO FINZI
PETER E. FISCH*
HARRIS FISCHMAN*
KATHERINE B. FORREST*
VICTORIA S. FORRESTER*
HARRIS B. FREIDUS*
MANUEL S. FREY*
MICHAEL E. GERTZMAN*
ADAM M. GIVERTZ*
SALVATORE GOGLIORMELLA*
NEIL GOLDMAN*
MATTHEW B. GOLDSTEIN*
CHARLES H. GOOGE, JR.*
ANDREW G. GORDON*
BRIAN S. GRIEVE*
UDI GROFMAN*
MELINDA HAAG
ALAN S. HALPERIN*
CLAUDIA HAMMERMAN*
IAN M. HAZLETT*
BRIAN S. HERMANN*
JOSHUA HILL JR.*
MICHELE HIRSHMAN*
JARRETT R. HOFFMAN*
ROBERT HOLO*
CHRISTOPHER HOPKINS*
DAVID S. HUNTINGTON*
AMRAN HUSSEIN*
LORETTA A. IPPOLITO*
JAREN JANGHORBANI*
BRIAN M. JANSON*
LUKE JENNINGS*
JEH C. JOHNSON
MATTHEW B. JORDAN*
CHRISTODOULOS KAOUTZANIS*
BRAD S. KARP*
PATRICK N. KARSNITZ*
JOHN C. KENNEDY*
ROBERT A. KILLIP*
BRIAN KIM*
KYLE J. KIMPLER*
JEFFREY L. KOCHIAN*
ALEXIA D. KORBERG*
DANIEL J. KRAMER*
ANDREW D. KRAUSE*
BRIAN KRAUSE*
CAITH KUSHNER*

KAISA KUUSK*
DAVID K. LAKHDHIR
GREGORY F. LAUFER*
BRIAN C. LAVIN*
XIAOYU GREG LIU*
RANDY LUSKEY*
LORETTA E. LYNCH*
JEFFREY D. MARELL*
MARCO V. MASOTTI*
DAVID W. MAYO*
ELIZABETH R. MCCOLM*
JEAN M. MCLOUGHLIN*
ALVARO MEMBRILLERA*
CLAUDINE MEREDITH-GOUJON*
WILLIAM B. MICHAEL*
SEAN A. MITCHELL*
ERIN J. MORGAN*
JUDIE NG SHORTELL*
CATHERINE NYARADY*
BRAD R. OKUN*
SUNG PAK*
CRYSTAL L. PARKER*
LINDSAY B. PARKS*
ANDREW M. PARLEN
DANIELLE C. PENHALL*
CHARLES J. PESANT*
ANASTASIA V. PETERSON*
AUSTIN S. POLLET*
VALERIE E. RADWANER*
JEFFREY J. RECHER*
LORIN L. REISNER*
ANDREW N. ROSENBERG*
JUSTIN ROSENBERG*
JACQUELINE P. RUBIN*
RAPHAEL M. RUSSO*
ELIZABETH M. SACKSTEDER*
JEFFREY B. SAMUELS*
PAUL L. SANDLER*
AARON J. SCHLAPHOFF*
KENNETH M. SCHNEIDER*
ROBERT B. SCHUMER*
JOHN M. SCOTT*
BRIAN SCRIVANI*
KYLE T. SEIFRIED*
SUHAN SHIM*
CULLEN L. SINCLAIR*
MAURY SLEVIN*
AUDRA J. SOLOWAY*
SCOTT M. SONTAG*
MEGAN SPELMAN*
ROBERT V. SPERLING*
EVITAVO ST. MATTHEW-DANIEL*
SARAH STASNY*
AIDAN SYNNOTT*
ROBERT D. TANANBAUM*
BRETTE TANNENBAUM*
RICHARD C. TARLOWE*
DAVID TARR*
MONICA K. THURMOND*
DANIEL J. TOAL*
LAURA C. TURANO*
CONRAD VAN LOGGERENBERG*
KRISHNA VEERARAGHAVAN*
JEREMY M. VEIT*
LIZA M. VELAZQUEZ*
MICHAEL VOGEL*
RAMY J. WAHBEH*
JOHN WEBER*
LAWRENCE G. WEE*
THEODORE V. WELLS, JR.
SAMUEL J. WELT*
LINDSEY L. WIERSMA*
STEVEN J. WILLIAMS*
LAWRENCE I. WITDORCHIC*
MARK B. WLAZLO*
ADAM WOLLSTEIN*
STACI YABLON*
BOSCO YIU*
KAYE N. YOSHINO*
TONG YU*
TRACEY A. ZACCONE*
TAURIE M. ZEITZER*
KENNETH S. ZIMAN*
T. ROBERT ZOCHOWSKI, JR.*

*NOT ADMITTED TO THE DC BAR

**By Email**

Scott F. Llewellyn
Morrison & Foerster LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202

Re:   *Arm Ltd.* v. *Qualcomm Inc. et al.*
      C.A. No. 22-1146-MN

**Confidential**

Counsel:

   We write in response to your letter dated August 9, 2023 regarding Qualcomm's proposal to ████████████████████████████████
████████████████████████████████████████████████████.

   We disagree with ARM's position that Qualcomm's proposal is burdensome or not justified, as further explained below.  However, Qualcomm is willing

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Scott F. Llewellyn                                                                             2

to meet and confer to address any questions that Plaintiffs may have at a time convenient for Plaintiffs.  In the meantime, ███████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████  Please provide us with the names and email addresses of the individuals that will require access so that we can promptly provide them access to the workspace.

*          *          *

As an initial matter, we disagree that Qualcomm's inspection proposal meaningfully inhibits ARM's ability to review and analyze these documents.  To the contrary, Qualcomm's proposed inspection process will allow ARM's attorneys to remotely access the Relativity workspace from any location at any time, run searches, and review the entire set of quarantined emails and non-email documents.  These are the same capabilities ARM would have to review documents on its own review platform.  Although downloading and printing will be restricted, ARM may identify a reasonable number of documents that it requests Qualcomm to copy and produce using a tagging functionality that is provided in the Relativity workspace.[1]  In short, any burden to ARM is greatly overstated.

To address ARM's concern about work product, Qualcomm agrees and represents that no one at Qualcomm or its outside counsel will have access to the restricted workspace, and no one at or affiliated with Qualcomm will monitor ARM's work product or activity within the Relativity workspace.[2]  This is no different than the arrangement by which ARM will inspect Qualcomm's source code via virtual machines at ProSearch's Los Angeles facilities, with Qualcomm's agreement that it will not monitor ARM's work product or activity.

Qualcomm's inspection proposal is reasonable and proportionate given the volume and nature of the documents, the minimal limitations on ARM, ███████████
█████████████████████████████████████████████  The burden and expense for Qualcomm to conduct a document-by-document review and produce copies of all quarantined documents would be significant.  Qualcomm has estimated that ███████████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████  A full review would be needed because, although the documents may be responsive by virtue of

---

[1] Assuming copy requests are made in good faith and in compliance with Paragraph 1(c) of the ESI Order, Qualcomm will review these materials for privilege and confidentiality and produce copies of identified materials to ARM, at which point ARM would be able to load the documents into its own review platform the same as any other production.

[2] Similarly, Qualcomm asks ARM to agree and represent that it will not take screenshots, photos, or images of the documents Qualcomm makes available for inspection in the restricted Relativity workspace.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Scott F. Llewellyn                                                                                            3

having been quarantined, the content of each document would need to be evaluated for privilege and confidentiality and treated accordingly.  This would include, for example, redaction of privileged materials and source code, both of which Qualcomm has identified in the quarantine set based on limited searches.  Moreover, given the nature of the quarantined population, a significant number of the documents are likely ARM's own documents or contain ARM's own information, which ARM presumably already has in its possession, and serve only to demonstrate Qualcomm's quarantine of the materials.

Courts have discretion to impose limitations on discovery by considering whether the requested discovery is proportionate to the needs of the case based on, among other factors, the burden on the producing party relative to the likely benefit of the discovery.  Fed. R. Civ. P. 26(b)(1).  Courts have denied or restricted discovery even where the producing party has not, as Qualcomm has, offered to produce the documents by making them available for inspection.  *See, e.g., Olsen v. J.W. Didado Elec., LLC*, No. CV 18-292, 2019 WL 13096572, at *1–2 (W.D. Pa. Mar. 8, 2019) (granting motion for protective order in part where discovery requests sought "information that is not vital to resolving the issues in this case and/or place a disproportional burden and expense upon Defendant.").



The production of nearly ████████████████████████████████████████████████████████████████████████ .  Outside of the quarantine population, Qualcomm expects to produce approximately ████████████████████████ by the parties' August 18, 2023 substantial completion deadline.[3]  The comparative size and burden is even more starkly exemplified because these quarantine materials are not limited by the parties' agreed-upon custodian list.  ████████████████████████████████████ ████████████████████████████████████████████████  Thus, the quarantine materials are significantly broader in scope than all of Qualcomm's other discovery combined.  ARM has not offered any suggestions for reasonably narrowing the quarantine set, although the parties are required under the ESI Order to use proportional efforts to identify appropriate limits to discovery and reasonably target their discovery requests.  *See* ESI Order at ¶ 1(c).

Qualcomm is open to discussing reasonable alternatives to address ARM's concerns, including, for example, producing the quarantine data in a report format under ¶ 2(g) of the ESI Order governing the production of databases, given that the vast majority of the quarantine materials were identified in a central location (akin to information stored in a database).

---

[3] By comparison, as of the date of this letter, Arm has produced only approximately 14,000 documents amounting to approximately 121,000 pages.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Scott F. Llewellyn                                                                                      4

*        *        *

Qualcomm reserves all rights.

Best regards,

*/s/ Melissa Felder Zappala*

Melissa Felder Zappala


cc:     Erik J. Olson
        Anne Shea Gaza
        Samantha G. Wilson

# Exhibit 32

1              IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF DELAWARE

3   ARM LTD., a U.K.           )  Case No.:  C.A. No.
    corporation,               )  22-1146-MN
4                              )
                 Plaintiff,    )
5                              )
      v.                       )
6                              )
    QUALCOMM, INC., a          )
7   Delaware corporation, et   )
    al.,                       )
8                              )
                 Defendants.   )
9   _____)

10

11

12

13        VIDEOTAPED DEPOSITION OF JIGNESH TRIVEDI

14            HIGHLY CONFIDENTIAL SOURCE CODE

15                 ATTORNEYS' EYES ONLY

16                   October 25, 2023

17                      9:00 a.m.

18

19

20

21

22

23

24   REPORTED BY:

25   Tammy Moon, CSR No. 13184, RDR, CRR



```
1   APPEARANCES:

2   FOR PLAINTIFF ARM LTD., a U.K. corporation:

3   MORRISON FOERSTER LLP
    BY:  DANIEL MUINO, ESQ.
4   2100 L St., NW
    Washington, D.C. 20037
5   202.887.1501
    Dmuino@mofo.com

6

7   FOR DEFENDANT QUALCOMM, INC., a Delaware
    corporation:
8
    PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
9   BY:  JACOB BRALY, ESQ.
    BY:  CATHERINE NYARADY, ESQ.
10  1285 Avenue of the Americas
    New York, New York 10019
11  212.373.3726
    Jbraly@paulweiss.com
12  Cnyarady@paulweiss.com

13
    FOR DEFENDANT QUALCOMM:
14
    QUALCOMM
15  BY:  KURT KJELLAND, ESQ.
    5775 Morehouse Dr.
16  San Diego, California 92121-1714
    858.651.5423
17  Kurtk@qualcomm.com

18  ALSO PRESENT:  KEVIN MCMAHON, THE VIDEOGRAPHER

19

20

21

22

23

24

25
```



```
 1              INDEX TO EXAMINATION

 2                 JIGNESH TRIVEDI

 3            Wednesday, October 25, 2023

 4         Tammy Moon CSR No. 13184, RPR, CRR

 5             WITNESS:  JIGNESH TRIVEDI

 6

 7   EXAMINATION                              PAGE

 8   MR. MUINO                                 7

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



```
 1                   JIGNESH TRIVEDI,
 2        called as a witness, having been duly sworn,
 3                  testified as follows:
 4             THE WITNESS:  I do.
 5                  EXAMINATION BY MR. MUINO
 6             MR. MUINO:
 7        Q.    Good morning, Mr. Trivedi.
 8        A.    Good morning.
 9        Q.    Can you please state your name for the
10   record.
11        A.    My name is Jignesh K. Trivedi.
12        Q.    And what is your current address?
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
15        Q.    The street name, can you say that again.
▮▮▮▮▮▮▮▮▮▮▮▮▮▮
17        Q.    Can you spell that.
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
20             (Reporter clarification.)
21             (Reporter admonition.)
22        Q.    Thank you.  Are you currently employed by
23   Qualcomm?
24        A.    That's correct.  I'm employed by Qualcomm.
25        Q.    And what is your current position at
```



1      A.   I reported to Nitin Sharma.

2      Q.   Do you know who Mr. Sharma reported to?

3      A.   Nitin Sharma reported to Gerard Williams.

4      Q.   Did anyone report to you?

5           MR. BRALY:  Objection.

6           THE WITNESS:  Actually, I think -- sorry.

7   Objection.  The last thing, I take back.  Nitin

8   probably reported to Manu.

9           MR. MUINO:

10     Q.   And during your time at NuVia, did anyone

11  report to you?

12     A.   Not as a managerial report.

13     Q.   Now, at the time that you joined NuVia in

14  June of 2020, was the company already developing

15  some products?

16          MR. BRALY:  Objection.

17          THE WITNESS:  The company was working on

18  an ARM-based design, yes.

19          MR. MUINO:

20     Q.   And what -- which products was it working

21  on at that time?

22     A.   ████████████████████████

23     Q.   ██████████████████████████████

24     A.   █████

25     Q.   ████████████████████████████████████



1   processing element at a CPU level yet.  It was in

2   the early stages of design, very early stages of

3   design.

4       Q.   So can you explain what you mean.  Why

5   wouldn't you call it a processing element?

6       A.   Basically, you cannot put together all the

7   functional blocks to create a PE out of it.

8       Q.   At that point in time in 2020?

9       A.   Correct.  Very early stages of design, yes.

10      Q.   And how -- what's the basis of your

11  knowledge or understanding about that?

12      A.   I had just joined in June, and we were

13  bringing up the first basic tests.  So that's --

14  that's my way of knowledge for that.

15      Q.   ███████████████████████████████████████

███████████████████████████████████████

17      A.   ███████████████

18      Q.   ████████████████████████████████████████

██████████████████████████

20      A.   █████████████████████████

████████████████████████████████████

████████████████████████████████████████

██████████████████████████

████████████████████████████████████████

████████████████████████████████████



1    ████████████

2        A.   So for learning more about the ARM

3    architecture, there's a public version of the v8 ARM

4    spec that helps a person understand the ARM

5    architecture.  So that would be the first place a

6    person would start.

7        Q.   So you had access to the Version 8

8    specification of the ARM architecture, correct?

9        A.   That's correct.  That's -- it's a publicly

10   published ARMv8 spec.

11       Q.   And as part of your job at NuVia in 2020,

12   you would have consulted that ARM Version 8

13   architecture specification?

14       A.   Yes.

15       Q.   And then did you compare that to the

16   ███████ core in some way?

17       A.   That is a specification.  I did not

18   directly compare that -- the set of tests are

19   helping us verify a behavior.

20       Q.   The tests, then, under the ACK help you to

21   verify the behaviors that are specified in the ARM

22   specification?

23       A.   I wouldn't put it that way.  The set of

24   tests that the ACK provides is a small

25   architecture -- a small set of the architecture that



```
1    ████████████████████

2        Q.   ████████████████████████████████

████████████████████████████████████████

4        A.   I███████████████████████████████

████████████████████████████████████████████

████████████████████████

7        Q.   ████████████████████████████████████

████████████████████

9        A.   █████████████████████████████████

10       Q.   █████████████████████████████████

████████████████████████████

12       A.   █████████████████████████████████

████████████████████

14       Q.   But some of it was there by --

15            (Reporter clarification.)

16            (Reporter admonition.)

17       Q.   ██████████████████████████████████

████████████████████████████████

19       A.   Some.

20            MR. BRALY:  Objection.

21            MR. MUINO:  Okay.  I'm going to mark as

22   Exhibit 5 a document with the ██████

23   ██████████████████.

24            (Exhibit 5 was marked for identification.)

25       Q.   Mr. Trivedi, this appears to be an email
```



```
 1       A.   ██████████████████████████████████
    ████████████████████
 3       Q.   ██████████████████████████████████
    ███████████████████████████████████ █
    █████████████████████████████████
 6       A.   ████████████████████████████████
    ██████████████████████████████████████
    ████████████████████████████████████
    █████████████████████████████████████
    ██████████
11            ██████████████████████████████
    ████████████████████████████████████
    ██████████████████████████
    █████████████████████████████████████
    ████████████████████████████████
    █████████████████████████████████████
    █████████████████████████████████
18            MR. BRALY:  Objection.
19            THE WITNESS:  Could you rephrase the
20    question or be more precise, please.
21            MR. MUINO:
22       Q.   ██████████████████████████████████
    ████████████████████████████████
    ██████████████████████████████████████
    ██████████████████████████████████████
```



ESQUIRE
DEPOSITION SOLUTIONS

```
 1   STATE OF CALIFORNIA )
                         )
 2   COUNTY OF SACRAMENTO)

 3             I, TAMMY MOON, CSR No. 13184, Certified

 4   Shorthand Reporter, do hereby certify:

 5             That prior to being examined, the witness

 6   in the foregoing proceedings was by me duly sworn to

 7   testify to the truth, the whole truth, and nothing

 8   but the truth;

 9             That said proceedings were taken by me in

10   shorthand and thereafter transcribed into

11   typewriting under my direction and supervision;

12             That I am neither counsel for, nor related

13   to, any party to said proceedings, nor in any way

14   interested in the outcome thereof.

15             I further certify that I am not a party to

16   any stipulation, if made, that would waive my duties

17   mandated by the Court Reporters Board of California.

18             In witness whereof, I have hereunto

19   subscribed my name.

20             Dated:  3rd of November, 2023

21

22

23

24             Tammy Moon, CSR No. 13184, RDR, CRR

25
```



# Exhibit 33

1              UNITED STATES DISTRICT COURT

2                FOR THE DISTRICT OF DELAWARE

3                        ---o0o---

4

5

6

        ARM LTD., a U.K. corporation,      )
7                                          )
                          Plaintiff,       )
8                                          )
                vs.                        )        Case No.
9                                          )        22-1146-MN
        QUALCOMM INC., a Delaware          )
10       corporation, QUALCOMM             )
        TECHNOLOGIES, INC., a Delaware     )
11       corporatio, and NUVIA, INC., a    )
        Delaware corporation,              )
12                                         )
                          Defendants.      )
13                                         )

14

15

16
                         ---o0o---
17
                FRIDAY, OCTOBER 20, 2023
18
          DEPOSITION OF RAMAKRISHNA CHUNDURU
19
       HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY
20
                         ---o0o---
21

22

23

24   REPORTER: BALINDA DUNLAP, CSR 10710, RPR, CRR, RMR

25



```
 1              A P P E A R A N C E S

 2                    ---o0o---

 3   FOR THE PLAINTIFF:

 4             MORRISON & FOERSTER
             4200 Republic Plaza
 5             370 Seventeenth Street
             Denver, Colorado  80202
 6             BY: SCOTT F. LLEWELLYN, ESQ.
             (303) 592-2204
 7             sllewellyn@mofo.com

 8
     FOR THE DEFENDANTS:
 9
             PAUL WEISS
10             1285 Avenue of the Americas
             New York, New York  10019-6064
11             BY: CATHERINE NYARADY, ESQ.
                 ALEX BUTWIN, ESQ.
12             (212) 373-3532
             cnyarady@paulweiss.com
13

14   FOR THE WITNESS:

15             PAUL HASTINGS LLP
             101 California Street, 48th Floor
16             San Francisco, California  94111
             BY: MATTHIAS A. KAMBER, ESQ.
17             (415) 865-7000
             matthiaskamber@paulhastings.com
18

19   ALSO PRESENT:

20             Kiego Painter, Esquire
             Kurt Kjelland, Qualcomm
21

22

23

24

25
```



```
 1                    INDEX OF EXAMINATION
                          ---o0o---
 2

 3    RAMAKRISHNA CHUNDURU                         PAGE

 4    BY MR. LLEWELLYN                               9
      BY MS. NYARADY                               170
 5    BY MR. LLEWELLYN                             171

 6                    INDEX OF EXHIBITS
                          ---o0o---
 7

      NUMBER     DESCRIPTION                       PAGE
 8
      Ex. 1     Email Correspondence, First Email    14
 9              From RK Chunduru to Akash P
                Dated March 10, 2019, ████████
      ████████████████████████████████████

11    Ex. 2     Email Correspondence, First Email    22
                From Rajiv Gupta to RK Chunduru
12              Dated July 13, 2019, ████████
      █████████████████████████████████
13
      Ex. 3     Email Correspondence, First Email    27
14              From RK Chunduru to Travis Lanier,
                Keith Kressin and Rajiv Gupta
15              Dated September 9, 2019, ████████
      ██████████████████████████████████
16
      Ex. 4     Email Correspondence, First Email    31
17              From RK Chunduru to Quinn Li,
                Steve Mollenkopf, Cristiano Amon,
18              Jim Thompson and Akash Palkhiwala
                Dated June 19, 2020, B██████████
      ███████████████████████████████████

20    Ex. 5     Summary Chart, ████████████████████
      ████████████████████████████
21
      Ex. 6     Email from RK Chunduru to Ziad       46
22              Asghar Dated June 14, 2020,
                ████████████████████████████████
23

24

25
```



```
 1              MR. KAMBER:  Matthias Kamber, Paul
 2    Hastings, on behalf of the witness.
 3              MS. NYARADY:  Catherine Nyarady from Paul
 4    Weiss for the defendants, and I am joined by Alex
 5    Butwin from -- also from Paul Weiss, and Kurt
 6    Kjelland from Qualcomm.
 7              THE VIDEOGRAPHER:  Okay.  Will the court
 8    reporter please swear in the witness.
 9                   RAMAKRISHNA CHUNDURU
10          called as a witness by the Plaintiff,
11    having been sworn to tell the truth, the whole
12    truth, and nothing but the truth, was examined and
13    testified as follows:
14              MR. LLEWELLYN:  Preliminary matter.
15    Counsel have discussed and agreed that an objection
16    by one set of counsel will be adopted by or applied
17    to the other set of counsel regardless of who
18    raises it.  Is that --
19              MR. KAMBER:  Yes.  Thank you.  Agreed.
20              MS. NYARADY:  Agreed.  Thank you.
21                EXAMINATION BY MR.  LLEWELLYN
22       Q.   Can you please state your name for the
23    record.
24       A.   It's RK Chunduru.
25       Q.   As I understand it, you go by RK?
```







1  is a true record of the testimony given.  (Civ.

2  Proc. § 2025.540(a))

3          I have not, and shall not, offer or

4  provide any services or products to any party's

5  attorney or third party who is financing all or

6  part of the action without first offering same to

7  all parties or their attorneys attending the

8  deposition and making same available at the same

9  time to all parties or their attorneys.  (Civ.

10  Proc. § 2025.320(b))

11          I shall not provide any service or product

12  consisting of the deposition officer's notations or

13  comments regarding the demeanor of any witness,

14  attorney, or party present at the deposition to any

15  party or any party's attorney or third party who is

16  financing all or part of the action, nor shall I

17  collect any personal identifying information about

18  the witness as a service or product to be provided

19  to any party or third party who is financing all or

20  part of the action.  (Civ. Proc. § 2025.320(c))

21

22  Dated: 10/30/2023

23  _____

24          BALINDA DUNLAP, CSR #10710

25



# Exhibit 34

1        IN THE UNITED STATES DISTRICT COURT

2           FOR THE DISTRICT OF DELAWARE

3

4  ARM LTD., A U.K. CORPORATION, )
                                 )
5            Plaintiff,          )
                                 )
6        vs.                     ) C.A. NO. 22-1146-MN
                                 )
7  QUALCOMM INC., a Delaware     )
   corporation; QUALCOMM         )
8  TECHNOLOGIES, INC., a         )
   Delaware corporation; and     )
9  NUVIA, INC., a Delaware       )
   corporation,                  )
10                               )
             Defendants.         )
11 _____ )

12

13

14

15

16     HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

17            VIDEOTAPED DEPOSITION OF

18            PRADEEP KANAPATHIPILLAI

19             PALO ALTO, CALIFORNIA

20           FRIDAY, DECEMBER 1, 2023

21

22

23

24
   Reported in Stenotype by:
25 Cody R. Knacke, RPR, CSR No. 13691
   Job No.:  J10603607



```
 1              VIDEOTAPED DEPOSITION OF

 2   PRADEEP KANAPATHIPILLAI, taken before Cody R.

 3   Knacke, RPR, CSR No. 13691, a Certified Shorthand

 4   Reporter for the State of California, commencing on

 5   Friday, December 1, 2023, at 9:06 a.m., at 755 Page

 6   Mill Road, Palo Alto, California.

 7

 8   APPEARANCES OF COUNSEL:

 9       For the Plaintiff:

10           MORRISON & FOERSTER
             BY:  NICHOLAS RYLAN FUNG, ESQ.
11           707 Wilshire Boulevard, Suite 6000
             Los Angeles, California 90017
12           213.892.5348
             nfung@mofo.com
13
         For the Defendants:
14
             PAUL, WEISS, RIFKIND, WHARTON & GARRISON
15           BY:  CATHERINE NYARADY, ESQ.
                  JACOB A. BRALY, ESQ.
16           1285 Avenue of the Americas
             New York, New York 10019
17           212.373.3532
             cnyarady@paulweiss.com
18           jbraly@paulweiss.com

19       Also Present:

20           Ruslan Gurzhiy, Videographer
             Kurt Kjelland, Esq., Qualcomm Inc.
21

22

23

24

25
```



```
1              I - N - D - E - X

2   EXAMINATION BY:                        PAGE

3   BY MR. FUNG                              6

4   BY MS. NYARADY                          78

5

6

7

8          E - X - H - I - B - I - T - S

9
       (Exhibits 2, 3, and 8 retained by counsel.)
10

11  PLAINTIFF'S          DESCRIPTION         PAGE

12  Exhibit 1      LinkedIn profile of        12
                   Pradeep Kanapathipillai
13
    Exhibit 2      ████████████ CPU ISA       24
14                 Reference Manual - Contains
                   Confidential Source Code
15                 (Retained by Counsel)

16  Exhibit 3      Slide presentation presented to  26
                   Qualcomm - Contains Confidential
17                 Source Code
                   (Retained by Counsel)
18
    Exhibit 4      E-mail correspondence dated   33
19                 1/14/2020, ████████
    ████████████████████████
20
    Exhibit 5      E-mail correspondence dated   36
21                 4/29/2020, ████████
    ████████████████████████
22
    Exhibit 6      E-mail correspondence dated   44
23                 6/16/2020, ████████
    ████████████████████████
24

25
```



```
 1   Qualcomm.
 2                       EXAMINATION
 3   BY MR. FUNG:
 4       Q.   Good morning, sir.
 5       A.   Good morning.
 6       Q.   Could you please state your name for the
 7   record?
 8       A.   Pradeep Kanapathipillai.
 9            MR. FUNG:  Oh, sorry.  Please swear in the
10   witness.
11                PRADEEP KANAPATHIPILLAI,
12   called as a witness, having been first duly sworn,
13   testified as follows:
14                       EXAMINATION
15   BY MR. FUNG:
16       Q.   My apologies for that.
17            Are you currently employed by Qualcomm?
18       A.   Yes, I am.
19       Q.   What is your current position?
20       A.   My title is senior director of engineering
21   in the CPU organization.
22       Q.   Have you had your deposition taken before?
23       A.   No.
24       Q.   Have you ever testified in court?
25       A.   No.
```





1      A.   Yes.  It does.

2      Q.   Great.

22     Q.   When you joined NUVIA, it says here in

23  June 2019, what were your responsibilities when you

24  joined?

25     A.

1   ███████████████████████████████████

    ██████████████████

3        Q.   Did your responsibilities change during

4   your time at NUVIA?

5        A.   Not at the time of NUVIA.

6        Q.   Did you work with ARM while you were at

7   NUVIA?

8        A.   No, I did not work with ARM except to

9   attend some ARM TAB meetings.

10       Q.   What are ARM TAB meetings?

11       A.   ARM TAB meetings are the ARM technical

12  advisory board meetings that ARM holds every year --

13  I believe in the month of February every year, where

14  all ARM architecture partners are invited.  And it's

15  a technical discussion on things that is presented

16  by ARM.

17       Q.   NUVIA, at some point, was acquired by

18  Qualcomm; is that true?

19       A.   Yes.

20       Q.   When did Qualcomm acquire NUVIA?

21       A.   March of 2021.

22       Q.   When Qualcomm acquired NUVIA, did your job

23  responsibilities change?

24       A.   Not at the time of acquisition, but since

25  then it has changed.



1          MS. NYARADY:  Objection.

2          THE WITNESS:  CPU is a central processing

3    unit.

4    BY MR. FUNG:

5       Q.    █████████████████████████████████

█████████████████████████████

7       A.    █████████████████████████████

█████████████████████████████

███████████████████████████████████

█████████████████████████████████

███████████████

█████████████████████████████████

██████████████████████████

███████████████████████████████

███████████████

███████████████████████████████

███████████████████████

█████████████████████████████████

19      Q.    █████████████████████████████

███████████████████

███████████████████████████████

█████████████████████████████

███████████████████████████████

███████████

███████████████████████████████





1   COUNTY OF LOS ANGELES, )
                          )
2   STATE OF CALIFORNIA,   )

3

4            I, Cody R. Knacke, Registered Professional

5   Reporter, Certified Shorthand Reporter in and for

6   the State of California, License No. 13691, hereby

7   certify that the deponent was by me first duly sworn

8   and the foregoing testimony was reported by me and

9   was thereafter transcribed with computer-aided

10  transcription; that the foregoing is a full,

11  complete, and true record of said proceedings.

12           I further certify that I am not of counsel

13  or attorney for either or any of the parties in the

14  foregoing proceedings and caption named or in any

15  way interested in the outcome of the cause in said

16  caption.

17           The dismantling, unsealing, or unbinding of

18  the original transcript will render the reporter's

19  certificate null and void.

20           In witness whereof, I have hereunto set my

21  hand this day:  December 4, 2023.

22

23

24  _____

25           CODY R. KNACKE, RPR, CSR No. 13691



# Exhibit 35

# REDACTED IN ITS ENTIRETY

# Exhibit 36

# REDACTED IN ITS ENTIRETY

# Exhibit 37

# REDACTED IN ITS ENTIRETY

# Exhibit 38

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARM LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-1146 (MN) |
| | ) | |
| QUALCOMM INC., QUALCOMM | ) | **HIGHLY CONFIDENTIAL** |
| TECHNOLOGIES, INC. and NUVIA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSES AND OBJECTIONS TO
PLAINTIFF'S THIRD SET OF INTERROGATORIES (NOS. 26–29)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, defendants Qualcomm Inc., Qualcomm Technologies, Inc, and Nuvia, Inc. (collectively "Qualcomm" or "Defendants") by and through their attorneys, hereby respond and object to Plaintiff ARM LTD.'s ("Plaintiff" or "ARM") Interrogatories to Defendants dated April 16, 2024 as follows:

**GENERAL OBJECTIONS**

1.      Defendants object to each Interrogatory to the extent that it seeks to impose greater or different obligations on Defendants than those provided for by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, any discovery orders entered into this case, any other applicable Court orders, or agreements reached by the parties.

2.      Defendants object to each Interrogatory to the extent that it seeks documents, things, or information protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.  Nothing contained in these Responses and Objections is intended to be, nor shall in any way be, construed as a waiver of any such privilege, immunity, or protection.  Specific Objections on the grounds of privilege are provided for emphasis and clarity

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY

only, and the absence of a Specific Objection is neither intended, nor should be interpreted, as evidence that Defendants do not object to an Interrogatory on the basis of an applicable privilege, immunity, or protection.  Any disclosure of any such privileged or protected material in responses to any Interrogatory is inadvertent and not intended to waive those privileges and protections.

3.      Defendants object to the Interrogatories to the extent they seek documents and things that Defendants have a legal or contractual obligation not to disclose.  Defendants will not provide such documents or things without either the consent of the relevant third party or an order compelling the production thereof, or without providing the relevant third party an opportunity to object to the production.

4.      Defendants object to each Interrogatory to the extent that it purports, or may be construed, to call for the production or identification of "any," "all," "each," or "every" document or thing pertaining to a specific subject, on the ground that such language is overbroad and unduly burdensome.  As used herein, the term overbroad includes Interrogatories that, so characterized, seek, at least in part, documents or information irrelevant in scope, subject matter or time period to this lawsuit or to the particular matters at issue in this lawsuit.  To the extent that a search is required, Defendants will perform a reasonable, targeted search designed to reasonably and proportionately identify relevant documents, to the extent any exist.

5.      Defendants object to the Interrogatories to the extent that they call for discovery that is unreasonable or not proportional under the circumstances.

6.      Defendants object to the Interrogatories to the extent that they purport to require Defendants to create, generate, compile, or develop documents not kept, or in a form not kept, in the ordinary course of Defendants' businesses.

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

7.      Defendants object to the Interrogatories to the extent that they are not reasonably limited in time.  Defendants will agree to provide information or documents in response to these Interrogatories dating from January 1, 2019 to March 1, 2022, unless otherwise specified.

8.      Defendants object to the Interrogatories and each and every instruction and definition therein to the extent that any Interrogatory: (a) seeks the production of documents or disclosure of information not relevant to this litigation, nor reasonably calculated to lead to the discovery of admissible evidence; (b) is overly broad, unduly burdensome, harassing, oppressive, or duplicative; (c) is vague or ambiguous; (d) calls for the disclosure of information not within Defendants' possession, knowledge, custody, care, or control; (e) calls for the disclosure of information already in Plaintiff's possession, knowledge, custody, care, or control; or (f) calls for the production of documents or disclosure of information readily available to Plaintiff from public or third-party sources.

9.      Defendants' election to respond to an Interrogatory, notwithstanding the objectionable nature of the Interrogatory, is not: (a) an acceptance of, or agreement with, any of the characterizations or purported descriptions of any facts, circumstances, events, or legal conclusions contained in the Interrogatories; (b) a concession or admission that the materials are relevant to this case or would be admissible at trial; (c) a waiver of the General Objections or the objections asserted in response to that specific Interrogatory; (d) an admission that any such documents or things exist; (e) an agreement that requests for similar information or documents will be treated in a similar manner; or (f) an acceptance of, or agreement with, any of the definitions in the Interrogatories, to the extent that the definition or meaning of any defined term is at issue in this case.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY

10.     Defendants' investigation of the facts in this proceeding and review of the relevant documents is ongoing.  Accordingly, the objections and responses herein are based on present knowledge, information, and belief.  Defendants reserve the right to modify, supplement, or amend any response and objection, if necessary or appropriate, in any way and at any time.  Defendants further reserve the right to object, at any hearing and any other proceeding in this litigation, to the use or admissibility into evidence of: (a) any documents produced in response to the interrogatories; (b) any of the information contained in any such document; or (c) any other information provided in response to any interrogatory.

11.     In the event that Defendants produce a document in response to these Interrogatories that is privileged, protected under Federal Rule of Evidence 502, or otherwise immune from disclosure, it will have been produced through inadvertence and shall not constitute a waiver of any privilege or immunity applicable (a) to that or any other document or (b) to communications concerning the subject matter of that or any other document.

12.     Defendants object to the Interrogatories to the extent that they assume disputed facts or legal conclusions in defining the documents requested.  Defendants hereby deny any such disputed facts or legal conclusions.  Any documents or information produced by Defendants in response to the Interrogatories are without prejudice to this objection.

13.     Defendants object to the terms "CMN and related products" and "CMN or related products" as vague and ambiguous, and interpret each term to mean "versions of CMN." Defendants apply this interpretation when referring to "CMN and related products" or "CMN or related products" in the responses set forth below.

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

14.     Defendants object to the terms ███████████ and any other terms defined in the NUVIA TLA, NUVIA ALA, or any annex thereto, and interpret each term consistent with their ordinary meaning.

15.     Defendants' General Objections apply to each and every Interrogatory and are incorporated by reference into each of the responses set forth below, which responses are made without waiver of, and subject to, these General Objections.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.     Defendants object to the "Definitions" to the extent that they attempt to define words beyond or inconsistent with their ordinary meaning.[1]

2.     Defendants object to the definition of "Arm" or "Plaintiff" as vague and ambiguous to the extent the scope of "related corporate entities" is unclear.

3.     Defendants object to the definition of "Qualcomm" as vague, ambiguous, overly broad, and unduly burdensome to the extent it is defined to include not only Qualcomm Incorporated and Qualcomm Technologies, Inc., but also persons or entities that are separate and distinct from Qualcomm Incorporated and Qualcomm Technologies, Inc., and over whom Defendants exercise no control, such as but not limited to affiliates, consultants, independent contractors, experts, investigators, licensees, licensors, or collaborators.

4.     Defendants object to the definition of "Nuvia" as vague, ambiguous, overly broad, and unduly burdensome to the extent it is defined to include not only Nuvia, Inc., but also persons

---

[1]     To the extent not defined here, the definitions used by Defendants in the responses below are consistent with the definitions contained in Defendants' Answer and Defenses to Plaintiff's Complaint and Jury Demand and Defendants' Second Amended Counterclaims (D.I. 300) (the "Answer and Second Amended Counterclaims").

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

or entities that are separate and distinct from Nuvia, Inc., and over whom Defendants exercise no control.

5. Defendants object to the definitions of "You," "Your," and "Defendants" as vague, ambiguous, overly broad, and unduly burdensome to the extent they seek information relating to persons or entities that are separate and distinct from Qualcomm Incorporated, Qualcomm Technologies, Inc. and Nuvia, Inc. and over whom Defendants exercise no control. In responding to these Interrogatories, Defendants interpret the terms "You," "Your," and "Defendants" to refer only to the named parties in this action. Defendants also object to the definitions of "You," "Your," and "Defendants" to the extent they purport to impose obligations on Defendants beyond what is required by the Rules. Defendants will interpret the definition of "You," "Your," and "Defendants" to impose no discovery obligation on any person or entity that is not a party to this litigation.

6. Defendants object to the definition of "ALA" as vague, ambiguous, and overbroad because it is not clear which agreement(s) "an Architecture License Agreement with Arm" refers to. Defendants will interpret "ALA" to mean the Amended and Restated Architecture License Agreement No. ███████ dated May 30, 2013, and amendments and annexes thereto, with respect to Qualcomm; and the Architecture License Agreement No. ██████ dated September 27, 2019, and amendments and annexes thereto, with respect to Nuvia.

7. Defendants object to the definition of ██████ as vague, ambiguous, argumentative, and overly broad.

8. Defendants object to the definition of "Nuvia Technology" as vague, ambiguous, overbroad, and unduly burdensome because the terms "developed," "implemented," "improved," "designed," "aspect," "part," "portion," "component," "deliverables," "materials," "technology," "support," "processor core," "processor core technology," "custom CPU," "based on ARM

6

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

licenses," "under," and "under the Nuvia ALA" are vague, ambiguous and overbroad; because the inclusion of ███████ within the definition is inaccurate, vague, or ambiguous; because the definition includes incorrect characterizations or factual assumptions, including but not limited to because it characterizes the ███████ and "custom CPUs" and "processor core technology" developed prior to March 2022 as Nuvia Technology, and because it characterizes CPUs and processor core technology as "Nuvia Technology" if "any aspect, part, portion, or component of" was "developed, implemented, improved, or designed based on Arm licenses, deliverables, materials, technology, or support provided to Nuvia under the Nuvia ALA" regardless of whether development or work occurred at Qualcomm; and because the definition unduly narrows the scope of what can be considered "Nuvia Technology."

9.      Defendants object to the definition of "Nuvia-based Technology" as vague, ambiguous, overbroad, and unduly burdensome because the terms "incorporating," "based on," "embodying," "involving," "part," "portion," "component," "semiconductor chip," "processor core," "custom CPU," "related technology," and "commercialized or not," are vague, ambiguous, or overbroad; because it includes incorrect characterizations and factual assumptions, including but not limited to because it characterizes "Nuvia-based Technology" as products "incorporating, based on, embodying, involving, and/or Related to any part, portion, or component of the Nuvia Technology," but the term "Nuvia Technology" is objectionable as set forth above.

10.      Defendants object to the definition of "Arm Trademarks" as overbroad, vague, and ambiguous including but not limited to because, as phrased, it identifies a number of terms as trademarked for which there is no trademark. Qualcomm understands "Arm Trademarks" to refer to the terms trademarked in U.S. Registration Nos. 5,692,669 and 5,692,670.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY

11.     Defendants object to the definitions of "Document" and its plural to the extent they purport to impose any obligations beyond what is required by the Federal Rules.  Defendants further object to the definition of "Document" to the extent that it implies that Defendants must collect or produce, e.g., computer programs, testing data, electronic sound records, and other types of files that are typically not required to be collected or produced, as listed in the ESI Protocol Schedule A (D.I. 39).

12.     Defendants object to the definitions of "Communication" and its plural form to the extent they purport to impose any obligations beyond what is required by the Federal Rules.

13.     Defendants object to the definitions of "Thing" and its plural form to the extent they purport to impose any obligations beyond what is required by the Federal Rules.

14.     Defendants object to the definitions of "Identify," Identifying, or "Identification" to the extent they purport to impose any obligations beyond what is required by the Federal Rules. Defendants also object to the definitions of "Identify," Identifying, or "Identification" to the extent they ask Defendants to provide any information unknown to Defendants or not within their possession, custody, or control, or beyond the scope of this litigation, including but not limited to "identifiers known or used by Biogen or others."  Defendants further object to the extent it seeks information other than the production of documents responsive to Plaintiff's First Set of Requests for Production.  Defendants will not create documents or provide narrative information to identify particular natural persons, entities, things, documents, or conversations.

15.     Defendants object to Instruction 1 on the grounds that it imposes obligations beyond those provided for by the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Delaware.

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

16.     Defendants object to Instruction No. 4 to the extent that it seeks, in the event that Defendants "object to all or part of any of the interrogatories," that Defendants "(a) Identify the specific portion(s) of the interrogatory which You claim You cannot answer because of the alleged defect in the interrogatory; (b) Identify the specific word(s) and/or phrase(s) to which Your objection relates; (c) state why the alleged ambiguity, vagueness, or overbreadth, for example, prevents You from answering all or part of the interrogatory; and (d) Identify all of the specific portion(s) of the interrogatory to which You are not responding at all based upon this objection," on the grounds that it is overbroad, unduly burdensome, and purports to impose requirements inconsistent with or more burdensome than those imposed by the local rules and applicable law.

17.     Defendants object to Instruction 5, to the extent it imposes obligations beyond those required by the Federal Rules of Civil Procedure, and because it is premature and contrary to the provisions in the ESI Protocol or Protective Order (D.I. 38, 39).  To the extent not provided in these documents, Defendants will meet and confer with Plaintiff regarding the nature and scope of privilege logs for the case.

18.     Defendants object to Instruction 7 to the extent it purports to require Defendants to respond to Interrogatories that are not reasonably limited in time, including on subjects other than those for which such discovery is permitted under the Delaware Default Standard for Discovery or as agreed upon in the parties' anticipated agreement regarding electronic discovery.  Defendants will agree to provide information or documents in response to these Interrogatories dating from January 1, 2019 to March 1, 2022, unless otherwise specified.

19.     Subject to and without limiting the foregoing, Defendants specifically object and respond as follows:

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

**SPECIFIC RESPONSES AND OBJECTIONS**

**INTERROGATORY NO. 26:**

Identify and list all versions of Arm's CMN or related products, including all related materials and documents, that You received, downloaded, or had access to, including the dates You received or downloaded, or Your access began for each version of Arm's CMN or related product, and how You received, downloaded, or had access to each version of Arm's CMN or related product, from January 1, 2019 through the present, and identify and list each feature Nuvia requested or provided input, guidance, comments, contributions, feedback, or ideas on via documents designated Nuvia Confidential for Arm's CMN and related products that You assert is, or is based on or reflects, Nuvia Confidential Information under the Nuvia TLA or Nuvia ALA.

**RESPONSE TO INTERROGATORY NO. 26:**

Defendants object to Interrogatory No. 26 as premature at this stage of the litigation, given that (i) it involves an opinion or contention that relates to fact or the application of law to fact, and (ii) discovery, including, without limitation, document production and depositions, has not been completed. Defendants further object to the Interrogatory on grounds that it includes at least two discrete subparts, in violation of the parties' March 25, 2024 stipulation of no more than four additional interrogatories. *See* D.I. 319 ¶ 3. Defendants further object to the Interrogatory on the grounds that the terms "related materials," "received," "had access to," "input," "guidance," "comments," "contributions," "feedback," and "ideas" are vague and ambiguous. Defendants further object to the Interrogatory as overly broad and unduly burdensome to the extent that it calls for the disclosure of information that is readily within the possession of Plaintiff, or that is more easily available to it. In particular, only ARM knows, at this stage in the litigation, "each [CMN] feature" that incorporated NUVIA Confidential Information. ARM also knows which versions of ARM's CMN or related products, including all related materials and documents, NUVIA received or downloaded, including the dates of such receipt or download.

Subject to and without waiving the foregoing objections, Defendants respond as follows:

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

[REDACTED]

Pursuant to Rule 33(d), Defendants have produced and will produce documents from which additional information responsive to this Interrogatory may be ascertained.  For example, Defendants direct Plaintiff's attention to [REDACTED]

Defendants reserve the right to supplement and amend their responses to this Interrogatory.

**<u>INTERROGATORY NO. 27:</u>**

Identify and list all requests, demands, notices, suggestions, or comments by You that Arm stop using Nuvia Confidential Information, including removal of any features, improvements, or modifications for Arm's CMN and related products that Nuvia requested or provided input, guidance, comments, contributions, feedback, or ideas on via documents or communications designated Nuvia Confidential under the Nuvia TLA or Nuvia ALA, including identification of the related documents designated Nuvia Confidential under the Nuvia TLA or Nuvia ALA, and configuration files.

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

**RESPONSE TO INTERROGATORY NO. 27:**

Defendants object to Interrogatory No. 27 as premature at this stage of the litigation, given that (i) it involves an opinion or contention that relates to fact or the application of law to fact, and (ii) discovery, including, without limitation, document production and depositions, has not been completed.  Defendants object to the Interrogatory on the grounds that the terms "improvements," "modifications," "input," "guidance," "comments," "contributions," "feedback," and "ideas" are vague and ambiguous.  Defendants further object to the Interrogatory as overly broad and unduly burdensome to the extent that it calls for the disclosure of information that is readily within the possession of Plaintiff, or that is more easily available to it.  Defendants further object to this Request to the extent it seeks or calls for a legal conclusion that NUVIA Confidential Information must have been "designated" as such or that NUVIA was required to "request[], [demand[], notice[], suggest[], or comment[] . . . that Arm stop using Nuvia Confidential Information."

Subject to and without waiving the foregoing objections, Defendants respond as follows: Pursuant to Section ██ of the NUVIA TLA and NUVIA ALA, ARM's obligation to ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████  Because ARM terminated both the NUVIA TLA and NUVIA ALA effective March 1, 2022, *see* ARM_00037427, NUVIA had no obligation to ████████████████████████████████████████████████████████████████ ██████████████████████████

Moreover, ARM acknowledged its contractual obligations to immediately discontinue using NUVIA Confidential Information in a letter dated April 29, 2022, where Spencer Collins of ARM formally represented to Qualcomm that ARM would comply with its own Section ██

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

termination obligations ███████████████████████████████████████████

████████   ████████████████   While the letter presupposed the quarantine of NUVIA

Confidential Information as ARM's mechanism for compliance (rather than destruction or return),

that was because ARM was "proceed[ing] similarly" as Qualcomm, who, according to ARM, held

████████████████████████████████████████████████████████████████

████████████   ARM has further represented that it "certified its own compliance with the

Nuvia ALA and TLA's termination provisions on April 1, 2022, with the certification sent to Nuvia

in the manner specified by the Nuvia agreements." D.I. 23 ¶ 233; D.I. 318 ¶ 233.

Defendants reserve the right to supplement and amend their responses to this Interrogatory.

**INTERROGATORY NO. 28:**

List and describe every document, material, item, thing, source code, or piece of information that
is, is based on, or reflects Nuvia Confidential Information that Nuvia provided, disclosed, or shared
with Arm, including every document, material, item, thing, source code, or piece of information
that is, is based on, or reflects Nuvia Confidential Information relating to features, improvements,
or modifications to Arm's CMN and related products, and identify and describe Your factual and
legal basis that each document, material, item, thing, source code, or piece of information is, is
based on, or reflects, Nuvia Confidential Information, including under the Nuvia TLA or Nuvia
ALA.

**RESPONSE TO INTERROGATORY NO. 28:**

Defendants object to Interrogatory No. 28 as premature at this stage of the litigation, given

that (i) it involves an opinion or contention that relates to fact or the application of law to fact, and

(ii) discovery, including, without limitation, document production and depositions, has not been

completed. Defendants further object to the Interrogatory on the grounds that the terms "material,"

"item," "thing," "piece of information," "based on," "provided," "relating to," "improvements,"

and "modifications" are vague and ambiguous. Defendants further object to the Interrogatory as

overly broad and unduly burdensome to the extent that it calls for the disclosure of information

that is readily within the possession of Plaintiff, or that is more easily available to it.

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

Subject to and without waiving the foregoing objections, Defendants respond as follows:

"Confidential Information" is contractually defined in both the NUVIA TLA and NUVIA

ALA.  *See* ARM_00111099 (NUVIA TLA) ███ QCARM_0337839 ███ (NUVLA ALA).

Consistent with those definitions, █████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

Pursuant to Rule 33(d), Defendants have produced or will produce documents from which

information responsive to this Interrogatory may be ascertained.  For example, Defendants direct

Plaintiff's attention to ███████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████

Defendants reserve the right to supplement and amend their responses to this Interrogatory.

**INTERROGATORY NO. 29:**

Identify and describe the substance, content, or information discussed, distributed, or presented at, or what otherwise took place at, each meeting, discussion, call, or other interaction in which Nuvia or Qualcomm provided input, guidance, comments, contributions, feedback, ideas, or suggestions relating to features, improvements, or modifications that Arm implemented, adopted, or utilized in any version of Arm's CMN or related products.

**RESPONSE TO INTERROGATORY NO. 29:**

Defendants object to Interrogatory No. 29 as premature at this stage of the litigation, given

that (i) it involves an opinion or contention that relates to fact or the application of law to fact, and

(ii) discovery, including, without limitation, document production and depositions, has not been

completed.  Defendants object to the Interrogatory on the grounds that the terms "substance,"

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

"content," "interaction," "input," "guidance," "comments," "contributions," "feedback," "ideas," "suggestions," "relating to," "improvements," "modifications," "adopted," and "utilized" are vague and ambiguous.  Defendants further object to the Interrogatory as overly broad and unduly burdensome to the extent that it calls for the disclosure of information that is readily within the possession of Plaintiff, or that is more easily available to it.

Pursuant to Rule 33(d), Defendants have produced and will produce documents from which information responsive to this Interrogatory may be ascertained.  In particular, Defendants direct Plaintiff's attention to █████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████ ███████████████████████████████████████████████

Defendants reserve the right to supplement and amend their responses to this Interrogatory.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

_____
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Defendants*

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Brian Shiue
Anna P. Lipin
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
(202) 223-7300

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

Catherine Nyarady
Erin J. Morgan
Anna R. Gressel
Madalyn G. Vaughn
Jacob A. Braly
Alexander M. Butwin
Samantha Mehring
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

Andrea L. D'Ambra
Susana Medeiros
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY  10019
(212) 318-3000

Kira Latham
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX  75201
(214) 855-8000

May 7, 2024

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2024, copies of the foregoing were caused to be served upon

the following in the manner indicated:

Anne Shea Gaza, Esquire                          *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Samantha G. Wilson, Esquire
YOUNG, CONAWAY, STARGATT & TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Plaintiff*

Joyce Liou, Esquire                              *VIA ELECTRONIC MAIL*
Lydia Davenport, Esquire
Daralyn J. Durie, Esquire
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Plaintiff*

Erik J. Olson, Esquire                           *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
*Attorneys for Plaintiff*

Scott F. Llewellyn, Esquire                      *VIA ELECTRONIC MAIL*
Sarah E. Brickey, Esquire
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202-5638
*Attorneys for Plaintiff*

Daniel P. Muino, Esquire                         *VIA ELECTRONIC MAIL*
Reebehl G. El-Hage, Esquire
David Nathaniel Tan, Esquire
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, D.C.  20037
*Attorneys for Plaintiff*

17

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

Nicholas Rylan Fung, Esquire                                    *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
*Attorneys for Plaintiff*

Kyle W.K. Mooney, Esquire                                      *VIA ELECTRONIC MAIL*
Kyle D. Friedland, Esquire
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
*Attorneys for Plaintiff*

Michael J. DeStefano, Esquire                                  *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
600 Brickell Avenue, Suite 1560
Miami, FL  33131
*Attorneys for Plaintiff*


*/s/ Jennifer Ying*
_____
Jennifer Ying (#5550)

# Exhibit 39

# REDACTED IN ITS ENTIRETY

# Exhibit 40

Message

---

**From:** Vivek Agrawal [Vivek.Agrawal@arm.com]
**Sent:** 19/05/2022 16:30:35
**To:** Richard Grisenthwaite [Richard.Grisenthwaite@arm.com]; Martin Weidmann [Martin.Weidmann@arm.com]; Aparajita Bhattacharya [Aparajita.Bhattacharya@arm.com]; Anand Muthuraman [Anand.Muthuraman@arm.com]
**Subject:** RE: Nuvia core sign-off
**Attachments:** config_diff

**Flag:** Follow up

Richard,



Regards,
Vivek

-----Original Message-----
From: Vivek Agrawal
Sent: Thursday, May 19, 2022 8:15 PM
To: Richard Grisenthwaite <Richard.Grisenthwaite@arm.com>; Martin Weidmann <Martin.Weidmann@arm.com>; Aparajita Bhattacharya <Aparajita.Bhattacharya@arm.com>; Anand Muthuraman <Anand.Muthuraman@arm.com>
Subject: RE: Nuvia core sign-off

Richard,

Regards,
Vivek

-----Original Message-----
From: Richard Grisenthwaite <Richard.Grisenthwaite@arm.com>
Sent: Thursday, May 19, 2022 7:14 PM
To: Martin Weidmann <Martin.Weidmann@arm.com>; Vivek Agrawal <Vivek.Agrawal@arm.com>; Aparajita Bhattacharya <Aparajita.Bhattacharya@arm.com>; Anand Muthuraman <Anand.Muthuraman@arm.com>
Subject: RE: Nuvia core sign-off

Thanks

Richard G

Martin Weidmann wrote on 2022-05-19
> Richard,
>
>
>

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
> Martin
>
>
>
> From: Vivek Agrawal <Vivek.Agrawal@arm.com> Sent: 19 May 2022 12:55 To:
> Richard Grisenthwaite <Richard.Grisenthwaite@arm.com>; Martin Weidmann
> <Martin.Weidmann@arm.com>; Aparajita Bhattacharya
> <Aparajita.Bhattacharya@arm.com>; Anand Muthuraman
> <Anand.Muthuraman@arm.com> Subject: RE: Nuvia core sign-off
>
>
>
> Richard,
>
>
>
>
>
>
>
>
> Regards,
>
> Vivek
>
>
>
> From: Richard Grisenthwaite <Richard.Grisenthwaite@arm.com
> <mailto:Richard.Grisenthwaite@arm.com> >
> Sent: Thursday, May 19, 2022 4:23 PM
> To: Vivek Agrawal <Vivek.Agrawal@arm.com
> <mailto:Vivek.Agrawal@arm.com> >; Martin Weidmann
> <Martin.Weidmann@arm.com <mailto:Martin.Weidmann@arm.com> >; Aparajita
> Bhattacharya <Aparajita.Bhattacharya@arm.com
> <mailto:Aparajita.Bhattacharya@arm.com> >; Anand Muthuraman
> <Anand.Muthuraman@arm.com <mailto:Anand.Muthuraman@arm.com> >
> Subject: RE: Nuvia core sign-off
>
>
>
>
>
> Thanks
>
>
> Richard G
>
>
>
> Richard Grisenthwaite
>
> Arm Ltd
>
> 110 Fulbourn Road
>
>
>
> From: Vivek Agrawal <Vivek.Agrawal@arm.com
> <mailto:Vivek.Agrawal@arm.com> >
> Sent: 19 May 2022 06:14
> To: Richard Grisenthwaite <Richard.Grisenthwaite@arm.com

 ARM_01230124

```
> <mailto:Richard.Grisenthwaite@arm.com> >; Martin Weidmann
> <Martin.Weidmann@arm.com <mailto:Martin.Weidmann@arm.com> >; Aparajita
> Bhattacharya <Aparajita.Bhattacharya@arm.com
> <mailto:Aparajita.Bhattacharya@arm.com> >; Anand Muthuraman
> <Anand.Muthuraman@arm.com <mailto:Anand.Muthuraman@arm.com> >
> Subject: RE: Nuvia core sign-off
>
>
> Richard,
>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
> Regards,
>
> Vivek
>
>
>
>
>
>
>
>
>
> -----Original Message-----
> From: Richard Grisenthwaite <Richard.Grisenthwaite@arm.com
> <mailto:Richard.Grisenthwaite@arm.com> >
> Sent: Wednesday, May 18, 2022 10:52 PM
> To: Vivek Agrawal <Vivek.Agrawal@arm.com
> <mailto:Vivek.Agrawal@arm.com> >
> Subject: RE: Nuvia core
>
>
>
> Hi Vivek,
>
>
>
>
>
>
>
```

```
>
>
>
>
>
> Please can you send it to me as an attachment to an email
>
>
>
> Thanks
>
>
>
> Richard G
>
>
>
>
>
> Richard Grisenthwaite wrote on 2022-05-18
>
>> Hi,
>>
>>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
>>
>>
>> Thanks
>>
>>
>>
>> Richard G
>>
>>
>>
>>
>>
>>
>>
>>
>>
>>
>>
>> Richard Grisenthwaite
>>
>> Arm Ltd
>>
>> 110 Fulbourn Road
>
>
>
> Richard Grisenthwaite
>
> Arm Ltd
>
> 110 Fulbourn Road
>
```

```
>
>
> From: Richard Grisenthwaite Richard.Grisenthwaite@arm.com
> <mailto:Richard.Grisenthwaite@arm.com> Sent: Wednesday, May 18, 2022
> 12:19 AM To: Vivek Agrawal Vivek.Agrawal@arm.com
> <mailto:Vivek.Agrawal@arm.com> Subject:
>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
> thanks
>
>
>
> Richard G
>
>
>
>

Richard Grisenthwaite
Arm Ltd
110 Fulbourn Road
```

ARM_01230127

# Exhibit 41

Message

| | |
|---|---|
| **From**: | Vivek Agrawal [Vivek.Agrawal@arm.com] |
| **Sent**: | 17/05/2022 09:55:42 |
| **To**: | Martin Weidmann [Martin.Weidmann@arm.com]; Richard Grisenthwaite [Richard.Grisenthwaite@arm.com]; John Horley [John.Horley@arm.com]; Michael Williams (ATG) [Michael.Williams@arm.com] |
| **CC**: | Nizamudheen Ahmed [Nizamudheen.Ahmed@arm.com]; Aparajita Bhattacharya [Aparajita.Bhattacharya@arm.com]; Anand Muthuraman [Anand.Muthuraman@arm.com]; Sathya Sankar Dharmarajan [Sathya.SankarDharmarajan@arm.com] |
| **Subject**: | |
| **Attachments**: | |

Hi Richard, Mike, Martin and John

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Regards,
Vivek

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

ARM_00044608

# Exhibit 42

**United States District Court**

**District of Delaware**

**Civil Action No. 01:22-cv-01146-MN**

**Qualcomm Inc.,**

**Qualcomm Technologies, Inc., and**

**NuVia, Inc.**

**v.**

**Arm Ltd.**

**Expert Report of Patrick F. Kennedy, Ph.D.**

**May 20, 2024**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

requests ███████████ that provide performance improvements to Arm's CMN product.[116] I understand that the Counterclaim-Plaintiffs have requested the information pertaining to the identification of all features in CMN products, the benefits (e.g., performance, efficiency and functionality improvements) of the features, marketing-related materials and customer surveys related to the CMN products and features, but it is my understanding that Arm has not produced sufficient, relevant information in this matter for a reasonable apportionment to be performed.

64.     If sufficient information to conduct an apportionment had been produced and therefore an apportionment could be conducted, then I would apply this apportionment, which would reflect the relative value of the At-Issue CMN Features to all of the new features in CMN-Kampos, to the value attributable to the new features found in CMN Kampos, resulting in the value attributable to the At-Issue CMN Features.

### v.  Limiting Fees to the Relevant Time Period

65.     Arm's benefit received would be limited to the time period when Arm would independently develop the At-Issue CMN Features, and I would apportion the value attributable to the At-Issue CMN Features to this time period only.

## C.  Conclusion

66.     In sum, had Arm developed the Nuvia Confidential Information independently after the termination of the Nuvia ALA and Nuvia TLA, then Arm would not have inappropriately received more license fees and royalties than it should have.  I describe my methodology above but do not provide a numerical figure for this benefit as sufficient information has not been produced and I reserve the right to update my opinions if and when information becomes available.

---

[116]  Discussion with Ram Srinivasan.

QUALCOMM INC., QUALCOMM TECHNOLOGIES, INC., AND NUVIA, INC. V. ARM LTD.

I declare under penalty of perjury that the foregoing is true and correct.

5-20-24

Patrick F. Kennedy, Ph.D.

Executed on

Managing Director

Stout Risius Ross, LLC

# Exhibit 43

United States District Court

District of Delaware

Civil Action No. 01:22-cv-01146-MN

Qualcomm Inc.,

Qualcomm Technologies, Inc., and

NuVia, Inc.

v.

Arm Ltd.

Expert Reply Report of Patrick F. Kennedy, Ph.D.

June 24, 2024

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

remedies and the Counterclaim-Plaintiffs' burden, which I cannot rebut as I am not a lawyer and do not provide legal opinions.

## C. Conclusion

25.     As described above, I disagree with Mr. Schoettelkotte's criticisms of the Kennedy Counterclaim Report and do not modify my methodology or opinions in any manner.

26.     To reiterate my opinions in the Kennedy Counterclaim Report, I describe my methodology to quantify the license fees and royalties that Arm inappropriately received and would not have had if Arm had developed the Nuvia Confidential Information independently after the termination of the Nuvia ALA and Nuvia TLA.[60]  I do not quantify this benefit because sufficient information had not been produced at the time and still has not been produced to date.[61]  I reserve the right to supplement my report upon the availability of the information needed to conduct a proper analysis.

---

[60]   Kennedy Counterclaim Report, pp. 21-27.
[61]   Kennedy Counterclaim Report, p. 27.

**STOUT RISIUS ROSS, LLC**                                                                          12
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Case 1:22-cv-01146-MN   Document 400   Filed 07/22/24   Page 244 of 302 PageID #: 19641

QUALCOMM INC., QUALCOMM TECHNOLOGIES, INC., AND NUVIA, INC. v. ARM LTD.

I declare under penalty of perjury that the foregoing is true and correct.


Patrick F. Kennedy, Ph.D.

**Managing Director**

Stout Risius Ross, LLC

_6/24/24_

**Executed on**

# Exhibit 44

F-1/A 1 d393891df1a.htm F-1/A

Table of Contents

As filed with the Securities and Exchange Commission on September 5, 2023.

Registration Statement No. 333-274120

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

---

Amendment No. 2

to

Form F-1

REGISTRATION STATEMENT

*UNDER*

*THE SECURITIES ACT OF 1933*

---

# Arm Holdings plc

---

| **England and Wales** | **3674** | **Not applicable** |
|---|---|---|
| (State or other jurisdiction of incorporation or organization) | (Primary Standard Industrial Classification Code Number) | (I.R.S. Employer Identification Number) |

**110 Fulbourn Road**
**Cambridge CB1 9NJ**
**United Kingdom**
**Tel: +44 (1223) 400 400**
(Address, including zip code, and telephone number, including area code, of Registrant's principal executive offices)

---

**Arm, Inc.**
**120 Rose Orchard Way**
**San Jose, CA 95134**
**Tel: +1 (408) 576-1500**
(Name, address, including zip code, and telephone number, including area code, of agent for service)

---

*Copies of all communications, including communications sent to agent for service, should be sent to:*

| Justin R. Salon | Kenneth A. Siegel | Richard D. Truesdell, Jr. |
|---|---|---|
| R. John Hensley | Jesse S. Gillespie | Derek J. Dostal |
| John T. Owen | Morrison & Foerster LLP | Davis Polk & Wardwell LLP |
| Morrison & Foerster LLP | Shin-Marunouchi Building, 29th Floor | 450 Lexington Avenue |
| 2100 L Street, NW, Suite 900 | 5-1, Marunouchi 1-Chome | New York, New York 10017 |
| Washington, D.C. 20037 | Chiyoda-ku, Tokyo, Japan 100-6529 | +1 (212) 450-4000 |
| +1 (202) 887-1500 | +81-3 3214 6522 | |

---

**Approximate date of commencement of proposed sale to public:**
**As soon as practicable after this registration statement becomes effective.**

If any of the securities being registered on this Form are to be offered on a delayed or continuous basis pursuant to Rule 415 under the Securities Act of 1933, check the following box. ☐

If this Form is filed to register additional securities for an offering pursuant to Rule 462(b) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. ☐

If this Form is a post-effective amendment filed pursuant to Rule 462(c) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. ☐

If this Form is a post-effective amendment filed pursuant to Rule 462(d) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. ☐

Indicate by check mark whether the registrant is an emerging growth company as defined in Rule 405 of the Securities Act.

Emerging growth company ☐

If an emerging growth company that prepares its financial statements in accordance with U.S. GAAP, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards† provided pursuant to Section 7(a)(2)(B) of the Securities Act. ☐

**The registrant hereby amends this registration statement on such date or dates as may be necessary to delay its effective date until the registrant shall file a further amendment which specifically states that this registration statement shall thereafter become effective in accordance with Section 8(a) of the Securities Act of 1933, as amended, or until the registration statement shall become effective on such date as the Commission, acting pursuant to such Section 8(a), shall determine.**

---

†    The term "new or revised financial accounting standard" refers to any update issued by the Financial Accounting Standards Board to its Accounting Standards Codification after April 5, 2012.

ARM_01433127

Table of Contents

CPU product or other technology design. The license fee depends on which Arm products are being licensed, the term during which the licensee is able to design using our products covered by the license (manufacturing rights are typically perpetual), and the number of chip products of the licensee that may use our products.

As we have deepened our relationships with our customers, we have started to migrate them to more holistic license agreements, including Arm Total Access and Arm Flexible Access agreements.

*Architecture Licenses*

A very small number of companies want to design customized Arm CPUs for their next-generation chips. For these companies, we can provide an architecture license which allows the licensee to develop their own CPU design that is compliant with the Arm ISA. In addition to the architecture license fee, the licensee agrees to pay a royalty on every chip that contains the Arm-compliant design. As the creation of an optimized CPU is very costly and time consuming, architecture licensees often also license Arm CPU products to use either as a complementary processor alongside the licensee's Arm-compliant CPU design, or in other chips where the licensee's own design is unsuitable. We expect the number of new licensees for this technology to diminish over time as the effort required on their part to provide the customization often does not provide a reasonable return on investment.

*Arm licenses can yield royalties for many years*

Regardless of the license model a customer uses, we receive a per-unit royalty fee on substantially every chip shipped. Because each chip may ship for many years, and each Arm CPU can be reused in new products as new applications emerge, these licensing agreements help to ensure a long tail of recurring royalty revenues, which provide significant visibility into future revenue streams. Arm is still collecting royalty revenues for products that were first developed and licensed in the early 1990s. For example, based on royalty revenue information provided to us by customers in quarterly royalty reports, approximately 46% of our royalty revenue for the fiscal year ended March 31, 2023 came from products released between 1990 to 2012. Our recurring royalties support Arm's revenue growth into the future and provide enhanced performance visibility and predictability, as new products and architectures are launched.

## Competitive Strengths

We have enjoyed success for more than 30 years by providing market-leading technology, adapting our solution to changing market needs and building a software developer ecosystem unlike any other in history. Our competitive strengths include:

- *Technology Leadership with Proven Capabilities Across Markets.* Arm CPU technology has been an industry leader for many years and continues to be the most widely deployed architecture globally. Since our inception, our customers have shipped more than 250 billion Arm-based chips, and we estimate that Arm had an approximate 48.9% market share by value in the calendar year ended December 31, 2022, up from approximately 38.7% in the calendar year ended December 31, 2014. Our products are used in virtually all smartphones, a majority of tablets and digital TVs, and a significant proportion of all chips with embedded processors. We have an established presence in the cloud market, working with many of the largest hyperscalers, including Amazon AWS, Alibaba, Alphabet and Microsoft. In 2018, we entered the cloud compute market, and, as of December 31, 2022, we have grown our market share to approximately 10.1%. In the automotive market, we work with many of the leading suppliers, and we believe that, on average, each new vehicle produced in our fiscal year ended March 31, 2023 contained approximately 13 Arm-based chips. Our products deliver leading performance per watt and provides the flexibility to design custom chips, addressing the growing need for power-efficient compute capabilities. We believe that these factors, which have driven our success in the mobile and consumer electronics markets, are emerging as key factors in the automotive, cloud compute, networking equipment, and other growth markets.

133

ARM_01433270

# Exhibit 45

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 1

1              UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF DELAWARE

3                      ---oOo---

4

5    ARM LTD., a UK Corporation, )
                                 )
6              Plaintiff,        )
                                 )
7    vs.                         )  C.A. No. 22-1146 (MN)
                                 )
8    QUALCOMM INC., a Delaware   )
     corporation; QUALCOMM       )
9    TECHNOLOGIES, INC., a        )
     Delaware Corporation, and   )
10   NUVIA, INC., a Delaware     )
     Corporation,                )
11                               )
               Defendants.       )
12   _____)

13

14

15        HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

16          VIDEOTAPED DEPOSITION OF SIMON SEGARS

17             THURSDAY, NOVEMBER 16, 2023

18

19

20

21

22   STENOGRAPHICALLY REPORTED BY:

23   ANDREA M. IGNACIO, CSR, RPR, CRR, CCRR, CLR ~

24   CSR LICENSE NO. 9830

25

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
                                           Page 3
 1    A P P E A R A N C E S:

 2

 3       FOR  THE  PLAINTIFF:

 4            MORRISON  &  FOERSTER  LLP

 5            By:   SCOTT  LLEWELLYN,  Esq.

 6            4200  Republic  Plaza

 7            300  17th  Street

 8            Denver,  Colorado  80202

 9            303.592.2204

10            sllewellyn@mofo.com

11

12       FOR  THE  DEFENDANT:

13            PAUL  WEISS

14            By:   KAREN  L.  DUNN,  Esq.

15                 MADALYN  VAUGHN,  Esq.  New  York

16                 ERIN  MORGAN,  Esq.  New  York

17            2001  K  Street,  NW

18            Washington,  D.C.   20006-1047

19            kdunn@paulweiss.com

20

21

22       ALSO  PRESENT:

23            Cameron  Tuttle,  Videographer

24

25                      ---oOo---
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
                                                Page 4

 1                      I N D E X

 2

 3   WITNESS:  SIMON SEGARS

 4

 5   EXAMINATION                              PAGE

 6   BY MS. DUNN                                 9

 7

 8                    E X H I B I T S

 9   EXHIBIT                                   PAGE

10   Exhibit QX100  9-3-13 Email Re: YAASS - Yet    36

11                  another Arm server startup

12                  Bates ARM_00085058 - '59

13   Exhibit QX101  1-15-21 Email Re: Two-year-old    54

14                  NUVIA sells to Qualcomm for $1.4

15                  billion - TechCrunch Bates

16                  ARM_01242767

17   Exhibit QX102  6-9-21 Email Re: Arm Limited    67

18                  Board Meeting and Papers for

19                  Meeting on 10 Sept, Bates

20                  ARM_01245004 - '72

21   Exhibit QX103  1-17-21 Email Re:             77

22                  Congratulations Bates ARM_00062124

23   Exhibit QX104  1-17-21 Email Re:             84

24                  Congratulations Bates

25                  ARM_00071014
```

Page 31

1   as well.

2          And Arm grants few ALAs compared to how many

3   TLAs they grant; right?

4      A   That was the practice while I was there, yes.

5      Q   Okay.  And why would a company want to design

6   their own Arm-compatible CPU rather than use Arm's

7   off-the-shelf technology?

8          MR. LLEWELLYN:  Objection; form.

9          THE WITNESS:  Well, you're -- you're asking

10  me to speculate on behalf of what somebody else would

11  do, but --

12         MS. DUNN:  Q.  I'm asking for your opinion.

13  You were the CEO.  You were -- worked there for

14  30 years.

15         Why do you think a company would want to

16  design their own Arm-compatible CPU rather than use

17  one off the shelf?

18     A   Typically, it would be because ██████████

    ██████████████████████████████████████████████

    ████████████████████████████████████

    ███████████████████████████████████████

    ████████████████████████████    ████████

    ██████████████████    █████████████████

    ██████████████████████

25     Q   And what's the benefit to the customer of

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 225

1              CERTIFICATE OF REPORTER

2

3          I, ANDREA M. IGNACIO, hereby certify that the

4   witness in the foregoing deposition was by me remotely

5   sworn to tell the truth, the whole truth, and nothing

6   but the truth in the within-entitled cause;

7          That said deposition was taken in shorthand

8   by me, a disinterested person, at the time and place

9   therein stated, and that the testimony of the said

10  witness was thereafter reduced to typewriting, by

11  computer, under my direction and supervision;

12         That before completion of the deposition,

13  review of the transcript [ ] was [x] was not

14  requested.  If requested, any changes made by the

15  deponent (and provided to the reporter) during the

16  period allowed are appended hereto.

17         I further certify that I am not of counsel or

18  attorney for either or any of the parties to the said

19  deposition, nor in any way interested in the event of

20  this cause, and that I am not related to any of the

21  parties thereto.

22  Dated: November 21, 2023.

23

24

25    ANDREA M. IGNACIO, RPR, CRR, CCRR, CLR, CSR No. 9830

# Exhibit 46



Qualcomm Incorporated
5775 Morehouse Drive, San Diego, CA 92121
www.qualcomm.com

VIA ELECTRONIC MAIL                                           May 23, 2022

Spencer Collins
Interim General Counsel
Arm Limited
110 Fulbourn Road
Cambridge, CB1 9NJ, United Kingdom

Dear Spencer,

Best Regards,

Ann Chaplin
General Counsel and Corporate Secretary
Qualcomm Incorporated

# Exhibit 47

| From: | Manu Gulati </O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=11693F6A5263475A822FB0AF288585B4-MANUGULA> |
|---|---|
| To: | Jignesh Trivedi |
| CC: | Nitin Sharma |
| Sent: | 2/2/2022 6:05:30 AM |
| Subject: | Re: |



Manu

**From:** Jignesh Trivedi <jignesht@qti.qualcomm.com>
**Date:** Tuesday, February 1, 2022 at 7:09 PM
**To:** Manu Gulati <manugula@qti.qualcomm.com>
**Cc:** Nitin Sharma <nsh@qti.qualcomm.com>
**Subject:**

Hi Manu,



-Jignesh



CONFIDENTIAL

# Exhibit 48

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ARM LTD., a U.K. corporation,
     Plaintiff,

     v.

QUALCOMM INC., a Delaware
corporation, QUALCOMM
TECHNOLOGIES, INC., a Delaware
corporation, and NUVIA, INC., a
Delaware corporation,
     Defendants.

C.A. No. 22-1146-MN


**CONTAINS HIGHLY
CONFIDENTIAL – SOURCE
CODE-ATTORNEYS' EYES
ONLY**

## OPENING EXPERT REPORT OF DR. SHUO-WEI (MIKE) CHEN
## <u>ON QUALCOMM SOURCE CODE</u>

4.    **Comparing** ███████████████ **with**
███████████

35.    I was asked to compare the ████████████████ with the
████████████████ to determine the differences between these two versions of
code.  I performed this analysis using the same approach that I used to compare
other SOC/core versions (§ V.B.3) except the baseline is now changed to ██████
████████.  My conclusion is that the two versions of code are ████████████
███████████████████████████





**Table 13: Comparing** ███████████████████ **With** ████████



**Table 14: Comparing** ████████ **Code Files With** ████████

53.     I did a key word search on ███████████ via the command-line

utility grep and printed the results of the search.  I conclude that ███████

████████████████████████████████████████████████████

## VI.    CONCLUSION

54.     My opinions above are based on available information to date.  I

reserve the right to supplement or amend my opinions in this report, and also to

rebut opinions by Qualcomm's experts with which I disagree.  I also reserve the

right to correct any clerical errors that I discover after service of this report.


I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.  Executed on this 20th day of December of

2023 in Los Angeles, California.


By:  _____

        Dr. Shuo-Wei (Mike) Chen

# Exhibit 49

Message

**From:** Aparajita Bhattacharya [Aparajita.Bhattacharya@arm.com]
**Sent:** 19/05/2022 11:18:20
**To:** Richard Grisenthwaite [Richard.Grisenthwaite@arm.com]
**Subject:** RE: Nuvia core sign-off

Hi Richard,



Thanks,
Best Regards,
Aparajita

Architecture and Technology Group
ARM Embedded Technologies Pvt. Ltd.

-----Original Message-----
From: Richard Grisenthwaite <Richard.Grisenthwaite@arm.com>
Sent: Thursday, May 19, 2022 4:31 PM
To: Aparajita Bhattacharya <Aparajita.Bhattacharya@arm.com>
Subject: RE: Nuvia core sign-off

Hi,



Thanks

Richard G

Aparajita Bhattacharya wrote on 2022-05-19
> Hi Richard,
>
>
>
> Thanks,
>
> Best Regards,
>
> Aparajita
>
>
>
> Architecture and Technology Group
>

ARM_01230110

> ARM Embedded Technologies Pvt. Ltd.
>
>
>
> From: Vivek Agrawal <Vivek.Agrawal@arm.com> Sent: Thursday, May 19,
> 2022
> 10:44 AM To: Richard Grisenthwaite <Richard.Grisenthwaite@arm.com>;
> Martin Weidmann <Martin.Weidmann@arm.com>; Aparajita Bhattacharya
> <Aparajita.Bhattacharya@arm.com>; Anand Muthuraman
> <Anand.Muthuraman@arm.com> Subject: RE: Nuvia core sign-off
>
>
>
> Richard,
>
> [REDACTED]
>
>
> Regards,
>
> Vivek
>
>
>
>
>
>
>
>
> -----Original Message-----
> From: Richard Grisenthwaite <Richard.Grisenthwaite@arm.com
> <mailto:Richard.Grisenthwaite@arm.com> >
> Sent: Wednesday, May 18, 2022 10:52 PM
> To: Vivek Agrawal <Vivek.Agrawal@arm.com
> <mailto:Vivek.Agrawal@arm.com> >
> Subject: RE: Nuvia core
>
>
>
> Hi Vivek,
>
>
> [REDACTED]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

ARM_01230111

```
>
>
> Thanks
>
>
>
> Richard G
>
>
>
>
>
> Richard Grisenthwaite wrote on 2022-05-18
>
>> Hi,
>>
>>
>>
>> Thanks
>>
>>
>>
>> Richard G
>>
>>
>>
>>
>>
>>
>>
>>
>>
>> Richard Grisenthwaite
>>
>> Arm Ltd
>>
>> 110 Fulbourn Road
>
>
>
> Richard Grisenthwaite
>
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

ARM_01230112

```
> Arm Ltd
>
> 110 Fulbourn Road
>
>
>
> From: Richard Grisenthwaite Richard.Grisenthwaite@arm.com
> <mailto:Richard.Grisenthwaite@arm.com> Sent: Wednesday, May 18, 2022
> 12:19 AM To: Vivek Agrawal Vivek.Agrawal@arm.com
> <mailto:Vivek.Agrawal@arm.com> Subject: ████████████████████████
> █████████
>
>
>
> Hi,
>
>
> ███████████████████████████████████████████████████████████████
> ███████████████████████████████████████████████████████████████
> ███████████████████████████████████████████████████████████████
> ███████████████████████████████████████████████████████████████
> ███████████████████████████████████████████████████████████████
> ███████████████████████████████████████████████████████████████
> ███████████████████████████████████████████████████████████████
> ███████████████████████████████████████████████████████████████
>
>
> thanks
>
>
>
> Richard G
>
>
>
>

Richard Grisenthwaite
Arm Ltd
110 Fulbourn Road
```

ARM_01230113

# Exhibit 50

Message

| | |
|---|---|
| **From:** | Richard Grisenthwaite [Richard.Grisenthwaite@arm.com] |
| **Sent:** | 18/05/2022 07:03:40 |
| **To:** | Rene Haas [Rene.Haas@arm.com]; Paul Williamson [Paul.Williamson@arm.com] |
| **Subject:** | |
| **Attachments:** | |

Hi,



Thanks

Richard G

Richard Grisenthwaite
Arm Ltd
110 Fulbourn Road

**From:** Vivek Agrawal <Vivek.Agrawal@arm.com>
**Sent:** 17 May 2022 10:56
**To:** Martin Weidmann <Martin.Weidmann@arm.com>; Richard Grisenthwaite <Richard.Grisenthwaite@arm.com>; John Horley <John.Horley@arm.com>; Michael Williams (ATG) <Michael.Williams@arm.com>
**Cc:** Nizamudheen Ahmed <Nizamudheen.Ahmed@arm.com>; Aparajita Bhattacharya <Aparajita.Bhattacharya@arm.com>; Anand Muthuraman <Anand.Muthuraman@arm.com>; Sathya Sankar Dharmarajan <Sathya.SankarDharmarajan@arm.com>
**Subject:**

Hi Richard, Mike, Martin and John

ARM_00036346

CONFIDENTIAL

ARM_00036347

Regards,
Vivek

CONFIDENTIAL

ARM_00036348

# Exhibit 51

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| ARM LTD., a U.K. corporation,<br>　　　　Plaintiff,<br><br>　　　v.<br>QUALCOMM INC., a Delaware corporation,<br>QUALCOMM TECHNOLOGIES, INC., a<br>Delaware corporation, and NUVIA, INC., a<br>Delaware corporation,<br>　　　　Defendants. | C.A. No. 22-1146-MN<br><br>**CONTAINS HIGHLY**<br>**CONFIDENTIAL INFORMATION**<br>**– ATTORNEYS' EYES ONLY** |

**ARM LTD.'S FIRST SUPPLEMENTAL OBJECTIONS AND RESPONSES TO**
**QUALCOMM'S FIFTH SET OF INTERROGATORIES (NOS. 26-28)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Civil

Rules of this Court ("Local Rules"), Arm Ltd. ("Arm") submits the following first supplemental

responses and objections to Qualcomm's Fifth Set of Interrogatories (Nos. 26-28), served April

8, 2024, ("Interrogatories").

**RESERVATION OF RIGHTS**

1.　　　Arm's responses to the Interrogatories ("Responses") are made in accordance

with the Federal Rules of Civil Procedure and based upon information currently available to

Arm.  Investigation and discovery are ongoing in this case.  Arm responds to the Interrogatories

without prejudice to Arm's right to supplement its Responses.  Arm provides these responses and

objections to the best of its current knowledge, information, and belief, based on information

readily and reasonably available to it after making a reasonable inquiry.  Arm expressly reserves

the right to modify or supplement any Response and to assert additional objections to the

Interrogatories as necessary or appropriate.

31640579.1

1

8.      Arm objects to the Interrogatories to the extent that they seek information already in Defendants' possession, information that is a matter of public record, or otherwise equally available to Defendants or equally obtainable from more convenient sources.

9.      Arm objects to the definitions contained in the Interrogatories to the extent they attempt to define terms that may require construction by the Court.

## SPECIFIC RESPONSES AND OBJECTIONS TO INTERROGATORIES

**INTERROGATORY NO. 26:**

Describe in detail the process by which ARM sought to comply with Section ███ of the NUVIA TLA and NUVIA ALA, including in your response an identification of each instance of NUVIA Confidential Information and, for each such instance, describing ARM's efforts to immediately discontinue any use or distribution of such NUVIA Confidential Information after March 1, 2022, identifying the date that it was returned, destroyed, or quarantined, and identifying the three (3) ARM employees most knowledgeable.

**RESPONSE TO INTERROGATORY NO. 26:**

Subject to its objections, Arm responds as follows:

Following termination of the Nuvia ALA and TLA, ████████████████████

███████████████████████████████████████

██████████████████████████████████

██████████████████████████████████

███████████████████████████████████████

███████████████████████████████████

████████████████████████████████

At least as early as ████████████████████████

█████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████

    While Arm has complied with Section ██████ of the Nuvia ALA and TLA by

discontinuing use of materials designated "Nuvia Confidential," the Nuvia ALA and TLA grant

Arm a broad license to ██████████████████████████, even after termination. For example,

███████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████

    Under the Nuvia ALA (ALA ██████████, ███████████████████████████████

███████████████████████████████████████████████

███████████████████████ ██████ includes ███████████████████████████

███████████████████████████████████████████

███████████████████████ Nuvia TLA Annexes for the CMN, MMU, and Booker NCI

products (Annex ████████████ and Annex ████████████) similarly make clear that ██████

████████████████████████████. The annexes provide that ████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████ ██████ includes ████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████

     Additionally, both the ALA and TLA grant Arm a broad license to ████████████ from Nuvia.  The Nuvia ALA (ALA ████████████) grants to Arm ███████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████ Nuvia TLA Annex ████████████ and Nuvia TLA Annex ████████████ similarly grant to Arm ██████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████

     Accordingly, any ████████████ communicated or transmitted by Nuvia to Arm is not Nuvia Confidential Information, nor does Arm have any obligation to discontinue using such ████████████.  Instead, Arm has ███████████████████████████████████████████████████████████

Arm is thus not required under Section ████████ of the Nuvia ALA and TLA to discontinue use of the Nuvia feature request documents.

     Arm further responds that ███████████████████████████████████████

███████████████████████████████████████████████████ ████████████



Separately, in May 2022, Qualcomm ███████████████████████████████ ███████████████████████████████████████████████████████████████ Arm conducted a diff between the Qualcomm configuration file and an earlier Nuvia configuration file. ████████████████ Arm ran the diff only as a result of Qualcomm's request for verification.  The diff suggested that ████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████

Arm identifies Mark Werkheiser as the individual most knowledgeable about Arm's efforts to discontinue use of Nuvia Confidential Information related to Nuvia's CMN feature requests.  Arm identifies Vivek Agrawal as the individual most knowledgeable about Arm's efforts to discontinue use of configuration files that Arm received from Nuvia.

Arm objects to this Interrogatory as seeking information outside the scope of the

amendments on "use" granted by Magistrate Judge Hatcher in her March 6, 2024 Order (D.I. 295

at 7-8).  Arm objects to this Interrogatory to the extent that it seeks a legal conclusion.  Arm

objects to this Interrogatory to the extent it seeks information protected from discovery by the

attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the

joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is

otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 26:**

Subject to its objections, Arm responds as follows:

Following termination of the Nuvia ALA and TLA, ███████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████

At least as early as ██████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████, Arm did not make use of

these designated materials following termination of the Nuvia ALA and TLA.

While Arm has complied with Section ██████ of the Nuvia ALA and TLA by

discontinuing use of materials designated "Nuvia Confidential," the Nuvia ALA and TLA grant

Dated: May 10, 2024

OF COUNSEL:

Daralyn J. Durie
Joyce Liou
Lydia Davenport
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
jliou@mofo.com
ldavenport@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
Sarah E. Brickey
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com
sbrickey@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com
*Attorneys for Plaintiff Arm Ltd.*

31640579.1

27

HIGHLY CONFIDENTIAL

```
                                        Page 1

 1        H I G H L Y   C O N F I D E N T I A L

 2         IN THE UNITED STATES DISTRICT COURT

 3            FOR THE DISTRICT OF DELAWARE

 4                       C.A. NO: 22-1146 (MN)

 5   -----------------------------------

 6   ARM LTD.,

 7

 8          Plaintiff,

 9   v.

10   QUALCOMM INC.,

11   QUALCOMM TECHNOLOGIES, INC.

12   and NUVIA INC.,

13          Defendants.

14   -----------------------------------

15    Deposition of GUY LARRI, taken by AILSA WILLIAMS,

16    Certified Court Reporter, held at the offices of

17      Paul, Weiss, Rifking, Wharton & Garrison LLP,

18   London, United Kingdom, on 10 May, 2024 at 9:00 a.m

19

20

21

22

23

24

25
```

```
                                        Page 2
 1              A P P E A R A N C E S:

 2   Attorneys for the Plaintiff:

 3             MORRISON & FOERSTER LLP.

 4             2100 L Street, NW, Suite 900

 5             Washington D.C 20037

 6             BY: DANIEL P. MUINO

 7             Dmuino@mofo.com

 8

 9   For the Defendants:

10             PAUL, WEISS, RIFKIND, WHARTON & GARRISON

11   LLP.

12             1285 Avenue of the Americas.

13             New York, NY 10019-6064

14             BY: CATHERINE NYARADY and JACOB A. BRALY

15             Cnyarady@paulweiss.com

16             Jbraly@paulweiss.com

17

18   ALSO PRESENT:

19   ROB CALICO (ARM)

20   COURT REPORTER:  AILSA WILLIAMS

21   VIDEOGRAPHER: EMANUELLE ROSSI

22

23

24

25
```

Page 3

1                       **I N D E X**

2     GUY LARRI (Sworn)

3     Examination by MS. NYARADY: Pg. 5

4

5

6                     INDEX OF EXHIBITS

7     Exhibit 223 Counterclaim-Plaintiffs' Notice of Rule ... .6

8                 30(b)(6) Deposition of Counterclaim-Defendant

9     Exhibit 225 List of names . ... ... ... ... ... ... ... 23

10    Exhibit 226 Email from Daniel Muino to Vesta .. ... ... 57

11                Rackauske

12    Exhibit 224 Letter, QCARM_2429057 . ... ... ... ... ...100

13    Exhibit 227 ARM LTD's Objections and Responses to . ...109

14                Qualcomm's Fifth Set of Interrogatories (Nos.

15                26-28)

16    Exhibit 228 Excel Spreadsheet ARM_01237494  ... ... ...142

17    Exhibit 229 Excel Spreadsheet ARM_1460538 . ... ... ...144

18    Exhibit 230 Excel Spreadsheet ARM_01460538  ... ... ...144

19    Exhibit 231 Email exchange ARM_01438037-39  ... ... ...154

20    Exhibit 232 Email exchange ARM_01437793-96  ... ... ...159

21    Exhibit 233 Email exchange ARM_01441212-15  ... ... ...160

22    Exhibit 234 Email exchange ARM_01456132-33  ... ... ...164

23    Exhibit 235 Email exchange ARM_01456488-92  ... ... ...171

24    Exhibit 236 Email exchange ARM_01456412-14  ... ... ...173

25    Exhibit 237 Email exchange ARM_01456357-64  ... ... ...175

HIGHLY CONFIDENTIAL

```
                                      Page 6
 1   in the witness and we can proceed.
 2                     GUY LARRI
 3               Having been sworn,
 4             Testified as follows:
 5            EXAMINATION BY MS. NYARADY:
 6          MS. NYARADY:  Good morning.
 7          A    Good morning.
 8          Q    I would like to show you a document
 9   that we have previously marked as deposition
10   Exhibit 223 and ask you to take a look at that
11   please.  For the record, that is the rule 30(b)(6)
12   deposition notice that brings us here today.
13        (Exhibit 223 marked for identification)
14          Do you recognize that document?
15          A    No, I don't think so.  I think I
16   have been working with this document, which
17   I think also has the topics.
18          Q    I think when you say "this document"
19   you are referring to the interrogatory responses?
20          A    Yes.
21          Q    Okay.  That would be a different
22   document.
23          A    It is a different document, sorry,
24   yes.  We certainly went through the topics with
25   counsel in preparation so ...
```

HIGHLY CONFIDENTIAL

**Page 107**

1   assist him in comparing the two documents, yes.

2          Q   ███████████████████████████

██  ████████████████████████████████████████

██  ██████████████████████████████████████

██  ████████████████████████████████████

██  ████████████   ██████████████

7          A   No, I don't -- my testimony is not

8   as broad as your statement.  ████████████████████

██  █████████████████████████████████████████

██  █████████████████████████████████████████

██  ██████████████████████████████████████████

██  ████   ███████████████████████████████

██  ████████████████████████████████████

14          Q   Okay.  Okay, that is helpful.  So is

15  it your testimony that ████████████████████████

██  ██████████████████████████████████████████

██  ██████████████████

18          A   Yes, it is.  Our investigation has

19  revealed ███████████████████████████████████

██  ███████████████████████████████████████

21          █  ████████████████████████████████

██  █████████████████████████████████████

██  ██████████████████████

24          MR. MUINO:  Objection, lacks foundation.

25          █  ████████████████████████████

HIGHLY CONFIDENTIAL

Page 113



1

7          A    I don't know what might be all of

8     them but I am aware, for example, that

20          Q    So how was it determined by

21

24          A    I don't know.

25          Q    At the top of page 5, the next page,

HIGHLY CONFIDENTIAL

Page 114

1    it says █████████████████████████████

     █████████████ and this is talking about CMN features.

3    It carries over from page 4. █████████████████

     █████████████████████████████████████

     ███████████████████████████████████ Do you see

6    that?

7          A    Yes, I see that statement in the

8    document.

9          Q    ███████████████████████

     █████████████████████████████████████████████████

     ████████████████████████████████████

     ████████████████████████████████████

     ██████████████████████████████████████

     ████████████

15         A    Let me just read this.

16         Q    Of course.

17         A    And then I will come back.  Well, at

18   the beginning of the paragraph, which is the last

19   paragraph on page 4, it says:

20              ████████████████████████████████████

     █████████████████████████████████████████████████

     ████████████████████████████████████████

     █████████████████████████████████████████████████

24              So I think that the later use of the

25   word designated in the same paragraph refer

HIGHLY CONFIDENTIAL

Page 115

1  specifically to those documents discussed at the

2  beginning of the paragraph.

3  ▮ ████████████████████

  ██████████████████████████████████

  ██████████████████████████████████

  ████████████████████████████████

  ████████████████████████████████

  ▮ ████████████████████████

  ██████████████████████████████

  ████████████████████████

11  ▮ ██████████████████████████

  ████████████████████████████

  ████████████████████

  ▮ █████

15  Q ████████████████████████

  ████████████████████████

17       A   I am not a lawyer and I don't know

18  how trade secret law would come into this issue.

19  I do know that in the TLA there is ██████████████

  ██████████████████████████████████

  ████████████████████████████████

  ██████████████████████████████████

  ████████████████████████████

  ████████████████████████████

  ████████████████

HIGHLY CONFIDENTIAL

Page 189



11          Q   I asked you a similar question

12     earlier, but I don't know that it would have

13     covered this, so I am going to ask you again.  Is

14     there --

19          MS. NYARADY:  Do you want to take a

20     short break?

21          MR. MUINO:  I was thinking that, yes.

22          THE VIDEOGRAPHER:  This is the end of

23     media five in the deposition of Guy Larri.  Going

24     off the record at 3:59.

25                    (A short break.)

Page 207

1                    CERTIFICATE OF COURT REPORTER

2

3      I, AILSA WILLIAMS, an Accredited LiveNote

4      Reporter, hereby certify that Guy Larri was duly

5      sworn, that I took the Stenograph notes of the

6      foregoing deposition and that the transcript

7      thereof is a true and accurate record transcribed

8      to the best of my skill and ability.  I further

9      certify that I am neither counsel for, related to,

10     nor employed by any of the parties to the action

11     in which the deposition was taken, and that I am

12     not a relative or employee of any attorney or

13     counsel employed by the parties hereto, nor

14     financially or otherwise interested in the outcome

15     of the action.

16     Before completion of the deposition, review of the

17     transcript was requested.  Any changes made by the

18     deponent (and provided to the reporter) during the

19     period allowed are appended hereto.

20

21

22     Signed:         _Ailse Ja Williams_

23     AILSA WILLIAMS

24     Dated:    May 20, 2024

25

**ERRATA SHEET FOR TRANSCRIPT OF GUY LARRI**

**Deposition Date:  May 10, 2024**

Page 1 of 1

*Arm Ltd. v. Qualcomm Inc.*
**United States District Court**
**District of Delaware**
**Case No. 22-146 (MN)**

I wish to make the following changes, for the following reasons:

| Page | Line | Change | Reason |
|------|------|--------|--------|
| 99 | 16 | "I" to "Arm" | Transcription Error |
| 108 | 20 | "five" to "three" | Correction |
| 139 | 14 | "five" to "three" | Correction |
| 188 | 21 | "passed" to "failed" | Correction |
| 188 | 23 | "wafer" to "waiver" | Transcription Error |
| | | | |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on 20th June 2024.

_____
Guy Larri

# Exhibit 53

| | |
|---|---|
| **From:** | Cristiano Amon </O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=5662029263554212A9761A0AB76CF046-CAMON> |
| **To:** | qualcomm.all; temps.mail |
| **CC:** | NUVIA.Employees.external |
| **Sent:** | 3/16/2021 1:27:20 PM |
| **Subject:** | |



Thank you!

Cristiano & Jim

**From:** Cristiano Amon <camon@qualcomm.com>
**Sent:** Wednesday, January 13, 2021 5:23 AM
**To:** qualcomm.all <qualcomm.all@qualcomm.com>; temps.mail <temps.mail@qualcomm.com>
**Subject:**

QCARM_2402586



Cristiano & Jim

CONFIDENTIAL

# Exhibit 54

1          IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF DELAWARE

3                     ---oOo---

4   ARM LTD., a U.K. corporation,     :
                                       :
5              Plaintiff,              :
                                       :
6              vs.                     : C.A. No. 22-1146-MN
                                       :
7   QUALCOMM INC., a Delaware          :
    corporation, QUALCOMM              :
8   TECHNOLOGIES, INC., a Delaware     :
    corporation, and NUVIA, INC., a    :
9   Delaware corporation,              :
                                       :
10                                     :
                                       :
11  _____:
    Defendants.

12

13

14      HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

15     VIDEO-RECORDED DEPOSITION OF VEDARAMAN GEETHA

16                    30(b)(6)

17                  May 16, 2024

18

19

20

21

22  Job No. J11259870

23  Stenographically reported by:
    LAURA AXELSEN, CSR NO. 6173
24      RMR, CCRR, CRR, CRC, RDR.

25



```
 1                         APPEARANCES

 2

 3   FOR THE PLAINTIFF:

 4

 5          MORRISON & FOERSTER, LLP

 6          BY:  SCOTT F. LLEWELLYN, ESQ.

 7          4200 Republic Plaza

 8          370 Seventeenth Street

 9          Denver, Colorado  80202

10

11   FOR THE DEFENDANTS:

12

13          PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP

14          BY:  CATHERINE NYARADY, ESQ.

15               JACOB A. BRALY, ESQ.

16          1285 Avenue of the Americas

17          New York, New York  10019

18

19          There also being present Yon Sohn and Kurt

20   Kjelland.

21

22

23                      ---oOo---

24

25
```



```
 1                      INDEX

 2

 3                                        PAGE

 4  EXAMINATION BY MR. LLEWELLYN            7

 5

 6               ---oOo---

 7

 8            INDEX OF EXHIBITS

 9

10  EXHIBIT      DESCRIPTION              PAGE

11

12  Exhibit 1   Second Notice of Deposition    31

13  Exhibit 2   Responses and Objections to Arm    31

14              Ltd's Second Notice of

15              Deposition

16  Exhibit 3   CMN Downloads             37

17  Exhibit 4   Nuvia Security Measures   45

18  Exhibit 5   Acceptable Use Policy     46

19  Exhibit 6   CMN feature requests      89

20  Exhibit 7   Feature support and proposed   107

21              timelines for CMN Kampos

22  Exhibit 8   Chart of Features         128

23  Exhibit 9   E-mail string, top e-mail dated   132

24              2/17/2022 to Vinod chamarty, et

25              al., from Vedaraman Geetha
```



```
 1              VIDEOGRAPHER:  This is Tape No. 1 to the

 2   videotaped deposition of Vedaraman Geetha, 30(b)(6),

 3   in the matter of ARM Limited versus Qualcomm, Inc.,

 4   et al., being heard before the United States

 5   District Court for the District of Delaware, Case

 6   No. 22-1146-MN.

 7              This deposition is being held at the

 8   offices of Morrison & Foerster, located at 755 Page

 9   Mill Road, Palo Alto, California.  Today's date is

10   May 16th, 2024, and the time on the record is

11   9:09 a.m. Pacific Time.

12              My name is Antonio Woodward.  I am the

13   videographer.  The court reporter is Laura Axelsen.

14   Excuse me -- Axelsen.

15              Counsel, will you please introduce

16   yourself and affiliations and the witness will be

17   sworn.

18              MR. LLEWELLYN:  Scott Llewellyn, Morrison

19   Foerster, for ARM.

20              MS. NYARADY:  Catherine Nyarady from Paul

21   Weiss for the defendants.  I'm joined today by my

22   colleague Jake Braly, also from Paul Weiss, and by

23   Kurt Kjelland and Yon Sohn from Qualcomm.

24                    VEDARAMAN GEETHA

25              having been duly sworn/affirmed
```



```
 1                under penalty of perjury
 2                  testified as follows:
 3                EXAMINATION BY MR. LLEWELLYN
 4           MR. LLEWELLYN:   Q. Could you please state
 5    your name for the record?
 6           A.    Vedaraman Geetha.
 7           Q.    I'm going to apologize in advance for
 8    mispronouncing your name at some point.
 9           A.    You can call me Geetha.
10           Q.    Do you go by Ms. Geetha or Ms. Vedaraman?
11           A.    I just go by Geetha.
12           Q.    Okay.  And what's your current address?
15           Q.    And have you been deposed before?
16           A.    Yes.
17           Q.    How many times have you been deposed?
18           A.    Once.
19           Q.    And in what sort of action were you
20    deposed before?
21           A.    I was working at -- I was working at Intel
22    for a number of years, and then I think it was troll
23    something patent case.
24                THE REPORTER:  (Clarification.)
25                MR. LLEWELLYN:   Q. Is there any reason
```





1      ████████████████████████████████

████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████

6          MS. NYARADY:  Objection.  Go ahead.  You

7   can answer.

8          THE WITNESS: ████████████████████████

████████████████████████

10         MR. LLEWELLYN: ██████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████

████████████████████████████████████████

███████████████████████████████████████████

██████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████

███████████████████████████████████████████

███████████████████

████████████████████████████████████████

███████████████████████████████████████████

███████████████████

██████████████████████████████████████

ESQUIRE
DEPOSITION SOLUTIONS

```
 1                        CERTIFICATE

 2

 3        I, the undersigned, a Certified Shorthand

 4   Reporter, State of California, hereby certify that

 5   the witness in the foregoing deposition was by me

 6   first duly sworn to testify to the truth, the whole

 7   truth, and nothing but the truth in the

 8   within-entitled cause; that said deposition was

 9   taken at the time and place therein stated; that the

10   testimony of the said witness was reported by me, a

11   disinterested person, and was thereafter transcribed

12   under my direction into typewriting; that the

13   foregoing is a full, complete, and true record of

14   said testimony; and that the witness was given an

15   opportunity to read it and, if necessary, correct

16   said deposition and to subscribe the same.

17            I further certify that I am not of counsel

18   or attorney for either or any of the parties in the

19   foregoing deposition and caption named, nor in any

20   way interested in the outcome of the cause named in

21   said caption.

22            Executed this 17th day of May, 2024.

23

24            _Laura Axelsen_____
              LAURA AXELSEN, C.S.R. 6173
25
```


ESQUIRE
DEPOSITION SOLUTIONS