1  BY MR. ISAACSON:

2      Q.   So, as I understand it, you are relying --

3  for your testimony as to Topic 10, you are relying

4  on information from Toni Qiu and Robert Calico,

5  which you are not willing to provide us today?      08:53:58

6           MR. FUNG:  Objection.  Form.

7           Counsel, I -- I don't understand.

8           Are you asking her if she's relying on

9  facts communicated or relying on the privileged

10  communications?                                     08:54:10

11          MR. ISAACSON:  I am -- I am talking about

12  her testimony to answer the question in -- the --

13  the information to Topic 10 that she's prepared to

14  testify about today.

15          MR. FUNG:  She's obviously had privileged   08:54:21

16  communications with counsel.  Your question was

17  directed to that.

18          If you want to ask her whether --

19          MR. ISAACSON:  My --

20          MR. FUNG:  -- she's relying on any facts    08:54:26

21  communicated by counsel, you can.

22          MR. ISAACSON:  Well, let's try that.

23  BY MR. ISAACSON:

24      Q.   Are you relying on -- in testifying about

25  Topic 10, "The NUVIA ALA, including the drafting,   08:54:38

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 22

1    negotiation, interpretation, and construction" [as

2    read], are you relying on facts provided to you by

3    in-house counsel at Arm, Toni Qiu or Robert Calico?

4        A.   I don't think I understand the question.

5        Q.   So, for example, are you relying for any    08:55:06

6    facts on -- concerning the drafting, negotiation,

7    interpretation, or construction of the Nuvia ALA

8    that you are prepared to testify about today that

9    you learned from Toni Qiu or Robert Calico?

10            MR. FUNG:  Same objection as to privilege.   08:55:37

11            I will caution the witness not to reveal

12    privileged communications.

13            If there are any facts on which you're

14    relying on, you may testify as to those facts.

15            THE WITNESS:  I don't think I can answer     08:55:49

16    that without disclosing privileged information.

17    BY MR. ISAACSON:

18        Q.   Okay.  Did Toni Qiu tell you any

19    information about the drafting, negotiation,

20    interpretation, or construction of the Nuvia ALA     08:55:57

21    that -- that you are going to testify about today

22    when we ask you about that?

23            MR. FUNG:  Same objection as to privilege.

24            THE WITNESS:  No.

25    BY MR. ISAACSON:                                     08:56:16

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 23

```
 1        Q.   Okay.  Did Robert Calico tell you any

 2    facts about the drafting, negotiation,

 3    interpretation, or construction of the Nuvia ALA

 4    that you are prepared to testify about today?

 5             MR. FUNG:  Same objection as to privilege.   08:56:27

 6             Same caution to the witness.

 7             THE WITNESS:  No.

 8    BY MR. ISAACSON:

 9        Q.   Okay.  Did you review any documents

10    concern- -- concerning the drafting, negotiation,   08:56:41

11    interpretation, or construction of the Nuvia ALA and

12    any of its annexes?

13             MR. FUNG:  I'll object to the extent it

14    calls for privilege.

15             You can answer that "yes" or "no."   08:56:51

16             THE WITNESS:  Did I review any agreements

17    in preparing?

18    BY MR. ISAACSON:

19        Q.   Any documents; that would include

20    agreements.                                           08:57:00

21        A.   Yes.

22        Q.   Okay.  The -- is it your understanding

23    that ███████████████████████████████████████

      ███████████████████████████████████

25        A.   Yes.                                         08:57:15
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 24

```
 1        Q.    And you were involved in negotiating and
 2    drafting the Nuvia architectural license agreement?
 3        A.    Yes.
 4        Q.    Okay.  ████████████████████████
          ████████████████████████████████████      ███████████
          ████████████████████████████████████
          ███████████████████████████████████
 8        A.    That's correct.
 9        Q.    Okay.  ███████████████████████
          ████████████████████████████              08:57:43
11        A.    That's my understanding, yes.
12        Q.    Okay.  And that's your understanding from
13    your work at the time and the -- during the
14    negotiations?
15        A.    That's right.                         08:57:54
16        Q.    Okay.  You were not the primary con- --
17    point of contact for Nuvia during the negotiations
18    and drafting of the Nuvia ALA; correct?
19        A.    That's correct.
20        Q.    Did you send e-mails to Nuvia as part of  08:58:02
21    those negotiations?
22        A.    I don't remember.
23        Q.    Okay.  If you had sent any e-mails to
24    Nuvia as part of the negotiation, your practice
25    would have been to copy Mr. Herbert on those        08:58:15
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 25

1    e-mails; is that right?

2         A.   If that had -- if I had done that, yes.

3         Q.   Okay.  Did you have meetings with Nuvia

4    about the negotiation or drafting of the Nuv- -- of

5    the Nuvia A- -- ALA?                          08:58:26

6         A.   I don't remember.

7         Q.   If you had met with Nuvia about the

8    drafting or negoti- -- drafting or negotiation of

9    the Nuvia ALA, Mr. Herbert would have been there; is

10   that correct?                                08:58:44

11        A.   I don't remember meeting with them; but if

12   I had, then, yes, he would have been there.

13        Q.   Okay.  Do you think such meetings took

14   place?

15        A.   I don't remember.                  08:58:53

16        Q.   What about phone calls?  Do you -- did you

17   have phone calls or, even back then, Zoom calls,

18   video calls, with Nuvia about the ALA?

19        A.   I don't remember.

20        Q.   Do you recall any communications with     08:59:06

21   Nuvia to discuss proposed language of the ALA?

22        A.   I don't remember.

23        Q.   Okay.  Approximately how long did the

24   negotiations for the ALA take place?

25        A.   I don't remember.                  08:59:27

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 26

1        Q.   Do you remember whether it was one month,

2    six months, a year?  Any -- any estimate?

3        A.   I don't remember.

4        Q.   Okay.  And you don't recall a single

5    communication that you had with Nuvia about the --      08:59:44

6    about the negotiation or language of the ALA; is

7    that right?

8             MR. FUNG:  Objection.  Form.

9             THE WITNESS:  No, I don't remember.

10   BY MR. ISAACSON:                                        08:59:56

11       Q.   Okay.  And how frequently during those

12   negotiations did you communicate with Mr. Herbert

13   about the discussions that were going on with Nuvia

14   about the ALA?

15       A.   I don't remember.                              09:00:12

16       Q.   Okay.  Do you remember whether it was more

17   than a handful of times?

18       A.   I don't remember.

19       Q.   Did you -- did you communicate with anyone

20   else at Arm about the -- the language or negotiation   09:00:27

21   of the ALA other than Mr. Herbert?

22       A.   I don't remember.

23       Q.   Okay.  You didn't talk to Mr. Herbert to

24   prepare for this deposition; is that correct?

25       A.   That's correct.                               09:00:42

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 27

1        Q.    Did you review his deposition transcript?

2        A.    No.

3        Q.    To prepare for this deposition, did you

4   learn anything about the communications between

5   Nuvia and Arm about the negotiation or language of    09:00:59

6   the ALA?

7            MR. FUNG:  Objection.  Form.

8            THE WITNESS:  No.

9   BY MR. ISAACSON:

10       Q.    So in terms of the actual communications    09:01:19

11   that went on between Nuvia and Arm about the

12   negotiations and language of the ALA with Nuvia, you

13   don't re-  -- you yourself were involved but don't

14   recall any of those communications, and you've not

15   done anything in preparing for this deposition to     09:01:42

16   learn about those communications?

17           MR. FUNG:  Objection.  Form.

18           THE WITNESS:  No.

19   BY MR. ISAACSON:

20       Q.    So I think we've got a double negative      09:01:50

21   there because you've said no, and I think you were

22   meaning to say I had it correctly.  So let me go

23   back over it.  And I apologize because that's

24   probably the fault of my question.

25           In terms of the actual communications that    09:02:04

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 28

1    went on between Nuvia and Arm about the negotiation

2    language of the ALA with Nuvia, you were involved,

3    but you don't recall any of those communications.

4         Am I correct about that?

5         A.   That's correct.                          09:02:17

6         Q.   Okay.  And am I also correct that you've

7    not done anything in preparing for this deposition

8    to learn about those communications between Nuvia

9    and Arm about the ALA?

10        MR. FUNG:  Objection.  Form.                   09:02:27

11        THE WITNESS:  That's correct.

12   BY MR. ISAACSON:

13        Q.   Who was the most senior person at Arm who

14   had to sign off on the ALA?

15        MR. FUNG:  Objection.  Form.                   09:02:42

16        THE WITNESS:  I don't know.

17   BY MR. ISAACSON:

18        Q.   Do you know any individuals at Arm who had

19   to approve the ALA with Nuvia?

20        A.   No.                                       09:02:55

21        Q.   Do you know who at Nuvia anyone at Arm had

22   communications with about the ALA?

23        A.   I'm sorry, could you repeat the question,

24   please.

25        Q.   All right.                                09:03:16

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 29

1              So in- -- individuals at Nuvia is what I'm

2      asking about.

3              When Arm had discussions with Nuvia about

4      the ALA, do you know who at Nuvia they were talking

5      to?                                              09:03:27

6          A.   I think Gerard Williams.

7          Q.   Anybody else?

8          A.   Not that I know of.

9          Q.   And at the time you became -- how did you

10     become involved in the Nuvia ALA?  What do you    09:03:41

11     remember?

12             MR. FUNG:  Objection.  Form.

13             THE WITNESS:  I normally work with Tim

14     Herbert, and so I usually do his transactions.

15     BY MR. ISAACSON:                                  09:03:54

16         Q.   Is that true today?

17         A.   No.  He doesn't work at Arm anymore.

18         Q.   Oh, that's right.

19             Up until he left was that true?

20         A.   Yes.                                     09:04:03

21         Q.   Okay.  And so do you recall Mr. Herbert

22     actually involving you in the Nuvia ALA?

23             MR. FUNG:  Objection.  Form.

24             THE WITNESS:  I did the agreement, yes --

25     BY MR. ISAACSON:                                  09:04:18

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
                                                      Page 30
 1          Q.   And --

 2          A.   -- so I worked with Mr. Herbert.

 3          Q.   All right.

 4               But do you remember any communications you

 5     had with Mr. Herbert about that agreement?         09:04:26

 6          A.   No.

 7               MR. FUNG:  Objection.  Form.

 8     BY MR. ISAACSON:

 9          Q.   Did you have the understanding that Nuvia

10     wanted to develop an Arm-compliant server chip?    09:04:36

11               MR. FUNG:  Objection.  Form.

12               THE WITNESS:  I understood that they

13     wanted to develop their own architecture core.

14     BY MR. ISAACSON:

15          Q.   Did you understand that they wanted to    09:04:54

16     develop their own architecture core for ser- -- for

17     high end servers?

18               MR. FUNG:  Objection.  Form.

19               THE WITNESS:  I understood that they

20     wanted to develop an architecture core.            09:05:06

21     BY MR. ISAACSON:

22          Q.   Did you know what the core was for?

23          A.   No.

24          Q.   Okay.  Did you know whether the core would

25     be part of a full system on a chip?                09:05:14
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
                                                    Page 31
  1        A.    No.  I did not know.

  2        Q.    Did you know whether Nuvia intended to be

  3    a supplier of chips?

  4        A.    I did not know.

  5        Q.    All right.                           09:05:25

  6              MR. ISAACSON:  Let's have April 18.

  7              This will be 184.

  8              (Tran Deposition Exhibit 184 was marked

  9              for identification.)

 10              THE WITNESS:  Thank you.             09:06:10

 11    BY MR. ISAACSON:

 12        Q.    All right.

 13              Exhibit 184 is an e-mail from Tim Herbert

 14    to Gerard Williams on which you are copied, dated

 15    April 18th, 2019, on the subject of the          09:06:19

 16    █████████████████████████████████████ with

 17    attachments.  It is Bates stamped QCARM_3315932

 18    through '963.

 19              All right.  Do you recognize this as an

 20    e-mail that you received in -- around this date?  09:06:44

 21        A.    I don't remember the e-mail.

 22        Q.    Okay.  Did you review this e-mail as part

 23    of your preparation as a 30(b)(6) witness?

 24              MR. FUNG:  Counsel, I'm going to object to

 25    the line of questions asking what she did to prepare  09:06:59
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 32

1    for the deposition as calling for privilege.  Again,

2    if you want to ask her if any documents refresh her

3    recollection, or if there are any documents she's

4    relying on for the basis of her testimony --

5              THE COURT REPORTER:  Could you slow down,    09:07:10

6    Counsel, a bit.

7              MR. FUNG:  Sure thing.

8              If you want to ask her whether any

9    documents refreshed her recollection or whether any

10   documents are forming the basis of her 30(b)(6)         09:07:15

11   testimony, you may do so.  Otherwise, her

12   preparations for preparing for to- -- today's

13   deposition are privileged.  So I'll object --

14             MR. ISAACSON:  So I just -- just for the

15   record, what a witness does to prepare for a           09:07:28

16   30(b)(6) witness and whether they are prepared is

17   not privileged.  And so, if the witness is not going

18   to disclose -- what we're going to say based --

19   based on this -- that we have severe questions at

20   this point as to whether this witness prepared         09:07:41

21   adequately for this deposition.

22             So if your position is that what she did

23   to prepare is privileged, you can instruct her not

24   to answer.  We don't think that's proper.  But we

25   are -- when we say she didn't prepare, and you're      09:07:53

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 33

1     not going to come back later and say, oh, yes, she

2     did.

3                 MR. FUNG:  You are asking her to disclose

4     communications with counsel, as well as documents --

5                 MR. ISAACSON:  I'm asking her what she --   09:08:04

6                 MR. FUNG:  -- we showed her in

7     preparation --

8                 (Simultaneous speaking.)

9                 THE COURT REPORTER:  One person at a time,

10    please.

11                MR. ISAACSON:  So, I just want -- at the

12    point --

13                MR. FUNG:  Let me finish, please.

14                MR. ISAACSON:  -- at this point, just

15    instruct her not to answer or instruct her to        09:08:10

16    answer, and let's move on.

17                MR. FUNG:  No.  Let me finish my objection

18    because you have mischaracterized my position.

19    She's sitting here as a -- both a 30(b)(1) and

20    30(b)(6) witness.  Obviously, we prepared her in her  09:08:21

21    capacity as both.  So when you ask a question like

22    that, open ended, it gets into a -- questions of

23    privilege.  So I'm going to object as call- -- as to

24    that question as calling for privilege.  And I'm

25    going to caution the witness not to reveal the        09:08:32

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 34

```
 1    contents of any privileged communications.

 2              MR. ISAACSON:  I will repeat my non

 3    open-ended question.

 4    BY MR. ISAACSON:

 5        Q.   Did you review this e-mail as part of your   09:08:41

 6    preparation as a 30(b)(6) witness?

 7              MR. FUNG:  Same objection.

 8              Caution the witness not to reveal the

 9    contents of any privileged communication.

10              THE WITNESS:  No.                            09:08:51

11    BY MR. ISAACSON:

12        Q.   Did you review any drafts of the ALA as

13    part of the -- your preparation as a 30(b)(6)

14    witness?

15              MR. FUNG:  Same objection as to privilege.  09:09:03

16              Caution the witness not to reveal the

17    contents of any privileged communications.

18              THE WITNESS:  I reviewed the final version

19    of the ALA.

20    BY MR. ISAACSON:                                       09:09:15

21        Q.   So as part of your preparation as a

22    30(b)(6) witness, you reviewed the final version of

23    the ALA with Nuvia, you did not review any earlier

24    drafts?

25              MR. FUNG:  Objection.  Form.                 09:09:25
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 35

1          THE WITNESS:  No, I did not look at

2     drafts.

3     BY MR. ISAACSON:

4          Q.   Do you agree with me that this is an

5     e-mail that you would have received on or about    09:09:37

6     April 18, 2019, referring to Exhibit 184?

7          A.   I agree that it's an e-mail with my name

8     on it.

9          Q.   All right.

10          And you would have been copied on these    09:09:48

11     e-mails because you were working on [verbatim]

12     Mr. Herbert about -- on the ALA with Nuvia; is that

13     correct?

14          MR. FUNG:  Objection.  Form.

15          THE WITNESS:  Sometimes there are e-mails    09:09:59

16     sent without me on it.

17     BY MR. ISAACSON:

18          Q.   Okay.  Do you understand that Exhibit 184,

19     by reading its contents and the fact it was produced

20     by your company, is an e-mail from Mr. Herbert on    09:10:10

21     which you were copied because you were working

22     together on the architectural license agreement for

23     Nuvia?

24          MR. FUNG:  Objection to form.  I would

25     also note for the record, this has a Qualcomm Bates    09:10:20

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 36

1    number, so it was not produce by --

2           MR. ISAACSON:  Sorry.  Produced by

3    Qualcomm.  Thank you, though.  I -- I stand

4    corrected on that.

5           THE WITNESS:  I'm sorry, what is the      09:10:29

6    question?

7    BY MR. ISAACSON:

8       Q.   Right.  Do you understand that because

9    Qualcomm received this e-mail at -- from

10   Mr. Herbert, on which you were copied, and given its   09:10:35

11   subject matter and its contents, that this is an

12   e-mail that you were copied on because you were

13   working with Mr. Herbert on the ALA with Nuvia?

14           MR. FUNG:  Objection as -- objection as to

15   form.                                         09:10:48

16           THE WITNESS:  I worked on the ALA, and

17   this is an e-mail that seems to have me copied on

18   it.

19   BY MR. ISAACSON:

20      Q.   All right.                            09:11:02

21           And do you understand from the contents of

22   this that the attached ALA is a document drafted by

23   Arm?

24      A.   The e-mail says the contract is coming

25   from Arm.                                     09:11:26

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
                                                    Page 37
 1          Q.   And so, is it you -- is it your
 2   understanding based on the e-mail that this document
 3   would have been drafted by Arm?
 4          A.   The e-mail says that this was coming from
 5   Arm, so yes.                                  09:11:40
 6          Q.   Okay.  And would you have been the person
 7   who drafted the attachments?
 8          A.   Yes.
 9          Q.   Okay.  Oh, I may mispronounce this
10   individual's name.  He's also copied on this.  David  09:11:54
11   Brittain?
12          A.   Brittain.
13          Q.   Brittain.  And who is David Brittain?
14          A.   He's a field applications engineer.
15          Q.   Would you explain what that means in this  09:12:03
16   context?
17          A.   He has technical information and can help
18   the customer understand technical aspects of the Arm
19   technology.
20          Q.   All right.                         09:12:14
21               In drafting the -- the document here,
22   the -- the technical license ag- -- technology
23   license agreement ALA, which I've always found
24   confusing, the --  ██████████████████████████
     ██  ████████████████████████████████████  ██   09:12:33
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 38

1   █████████████████████████████

2           MR. FUNG:  Objection as to form.

3           THE WITNESS: ████████████

4   BY MR. ISAACSON:

5       Q.  So during this period of time, April 2019,   09:12:43

6   ████████████████████████████████

    ████████████████████████████████

8           MR. FUNG:  I'll object to the extent that

9   calls for privilege.

10           I caution the witness not to reveal any   09:12:57

11   contents of any privileged communication.

12           THE WITNESS: ████████████████████

    ████████████████

14   BY MR. ISAACSON:

15       Q.  ████████████████████████   ████████

    ████████

      █ ████████████

      █ ████████████████████

    ██████████████████████████

    ████████████████   09:13:21

21       A.  Yes.

22       Q.  All right.

23       And do you -- ████████████████

    ██████████████

      █ ████████████████   09:13:27

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 39

1        Q.   All right.

2        ███████████████████████████████████

3      ████████████████████████████████████

4      ████████████████

5      ████  █████  ██████████████████████        ████████████

6      ████  ██████████████████████

7            MR. ISAACSON:  All right.  Can I have the

8    next one?  This would be 185.

9            (Tran Deposition Exhibit 185 was marked

10           for identification.)                     09:14:21

11           MR. ISAACSON:  This is QX185.

12   BY MR. ISAACSON:

13       Q.   All right.

14           QX185 is e-mail from Mr. Herbert -- I

15   believe this is British style.  It would be      09:14:53

16   June 1st, 2019, since it follows the April 2019

17   e-mail?

18       A.   I don't remember this e-mail, so I

19   can't --

20       Q.   All right.                               09:15:02

21       A.   -- speculate.

22       Q.   But just in terms of dating systems

23   because your company -- because Arm is a UK company,

24   do sometimes you get dates that follow the British

25   format, where 01/06 in the U.S. would be          09:15:16

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

                                                    Page 40

1    January 6th, but over there, it would be June 1st?

2             MR. FUNG:  Objection.  Form.

3             THE WITNESS:  It looks like it would be

4    June 1st.

5    BY MR. ISAACSON:                              09:15:32

6        Q.   Yeah.  All right.

7             So QX185 is an e-mail from Tim Herbert,

8    dated June 1st, 2019.  It is Bates stamped

9    ARM_'39907.  It contains attachments, and it runs

10   through '39926.                               09:15:47

11            You -- it is from Tim -- at the top, it's

12   an e-mail from Tim Herbert to you CC'd to several

13   people, Mr. Brittain, Mr. Lepinski, Taylor -- or

14   Phillips -- Taylor or Taylor Phillips.

15            And Mr. Herbert says, ███████████      █████████

██    ████████████████████████████████████████

██    █████      ██████████████████████████████

██    ██████████████████████      █████████████

██    ███████████████████████████████████████

██    █████████████      ███████          █████████

██            █████████████████████████████

██    ████████████████████████████████████████

██    █████████████████████████████

██            █████████████████████████████████

██    ████████                                    09:16:35

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
                                                      Page 41
 1              All right.  Do you recognize this as an
 2     e-mail that you would have received around June 1st,
 3     2019?
 4          A.   I don't remember the e-mail.
 5          Q.   All right.                          09:16:51
 6              And do you believe you did receive it
 7     around June 1st, 2019?
 8          A.   My name is on it, so, yes.
 9          Q.   Okay.  The -- it makes reference to -- Tim
10     Herbert says, ████████████████████████████████  09:17:08
11     Who's Will Abbey?
12          A.   He is our chief commercial officer.
13          Q.   Okay.  And do you know what his
14     involvement was with the discussions with Nuvia?
15          A.   No, I don't know.                    09:17:23
16          Q.   Okay.  Gerard is Gerard Williams.
17              Do -- do you know who John is?
18          A.   No.
19          Q.   Do you know who Manu is?
20          A.   No.                                  09:17:34
21          Q.   Okay.  The -- and do you recognize the
22     ████████████████████████████████████████████
       ████████████████, Exhibit 184?
24          A.   I don't remember it, but it looks like
25     it's ████████████████████████.                09:17:58
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 42

1       Q.    All right.

2             Now, if you look at that attachment in

3       185, and you look on the first page of the

4       attachment, ████████████████████████████████

                ████████████████████████           09:18:34

6             Do you see that?

7       A.    Yes, I see it.

8       Q.    Okay.  ████████████████████████

9  ████████████████████████████████████

10  ████████████████████████████████████    ████████

11  ████████████████████████████

12  ████████████████████████████

13  ████████████████████████████████

14  ████████████████████████████████

15  ████████████████████████████████    ████████

16  ████████████████████████████

17  ████████████████████████████████████

18  ████████████████████    ████████████

19      ██████████████████████████

20  ████████████████████████████████████    ████████

21  ████████████████████████

22            MR. FUNG:  Objection as to form.  Also

23      object to the extent it calls for privilege.

24            Caution the witness not to reveal the

25      contents of any privileged communication.    09:19:38

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 43

1          THE WITNESS:  I don't remember.

2     BY MR. ISAACSON:

3          Q.   All right.

4          The -- ███████████████████████████

   ████████████████████████████        ████████

   ███████████████████████████████

   ████████████████████████████

   █████████████████

9          Do you recall any communications with

10    Nuvia about that subject?                    09:20:08

11         A.   I don't remember.

12         Q.   Do you -- to prepare for this deposition,

13    did you learn any facts about any communications

14    between Nuvia and Arm related to ████████████

   ████████████████████████████████        ████████

   ██████████████████████

17         MR. FUNG:  Objection.  Form.

18         THE WITNESS:  No.

19    BY MR. ISAACSON:

20         Q.   All right.                          09:20:42

21              ████████████████████████████████

   ███████████████████████████████████████

   ███████████████████████████████████████

   ██████████████████████████████████████

   ███████████                               09:21:02

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 44

1          Do you see that?

2     A.   Yes.

3     Q.   Do you know what ███████████████

█    ██████ refers to?

5     A.   ████████████████              09:21:06

6     Q.   Okay.  ██████████████████████

█    ████████████████████████████████████

█    ██████████

9          Do you see that?  We went over that

10    language.                          09:21:20

11    A.   Yes, I see that.

12    Q.   All right.

13         And do you know what that refers to?

14    A.   ████████████████████████████████

█    ███████                           09:21:31

16    Q.   Okay.  ████████████████████████

█    ████████████████████████████████

█    ████████████████████████████████

█    ███████████████████████████ ██████

█    ████████████████████████████████████  ███████████

█    █████████████████████  I didn't jot it

22    down.

23    A.   █████████████████

█         ██   █████████████  Thank you.

25         ████████████████████████████  09:22:01

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 45

1    █████████████████████████████████████████

2        A.   Yes.

3        Q.   Did you understand that at this period of

4    time, ███████████████████████████████████

█    ██████████████████████                          09:22:35

6            MR. FUNG:  Objection.  Form.

7            THE WITNESS:  I don't remember.

8    BY MR. ISAACSON:

9        Q.   Do you know whether ████████████████

█    ███████████████████████████████████████  ████████

█    ███████████████████████████████

12       A.   I don't remember.

13       Q.   ███████████████████████████████████

█    ████████████████████████████

15    █    ████████████████████████  Correct.  09:23:18

16       Q.   ███████████████████████████████

█    █████████████████████████████████████████

█    █████████████; is that correct?

19           MR. FUNG:  Objection.  Form.

20           THE WITNESS:  It depends on the situation.  09:23:32

21    BY MR. ISAACSON:

22       Q.   Were there ████████████████████████

█    ██████████████████████████████████████

█    ████████████████████████████████?

25       A.   I don't know.                          09:23:46

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 46

```
 1        Q.   All right.
 2             ████████████████████████████████████
          ███████████████████████████████████
          ████████████████████████████████
 5             Do you see that?                        09:24:12
 6        A.   Yes.
 7        Q.   Okay.   ████████████████████████
          █████████████████████████
 9        A.   Yes.
10        Q.   ██████████████████████████████?       09:24:24
11             MR. FUNG:  Objection.  Calls for
12     privilege.
13             I caution the witness not to reveal the
14     contents of any privileged communications.  You can
15     do so, you may respond [verbatim].              09:24:33
16             THE WITNESS:  I don't think I can answer
17     that.
18     BY MR. ISAACSON:
19        Q.   All right.
20             The -- when you say you can't answer that,  09:24:41
21     is that because of your --
22        A.   Because of privilege.
23        Q.   The -- ████████████████████████████
          ███████████████████████████████?
25        A.   I don't know.                          09:24:58
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 47

1      Q.   At any point, ██████████████████

█      ██████████████████████?

3      A.   No.

4      Q.   Okay.  ███████████████████████

█      ████████████                          09:25:12

6      A.   I don't know.  It's changed lawyers over

7   time.

8      Q.   Okay.  ████████████████████

█   ██████████████████████████████

█   ████████████████                          09:25:22

11     A.   I don't remember.

12     Q.   █████████████████████████

█   ██████████████████████████████

█   ██████████████████████████████

█   ████████████                        ████████

█      ██   ███████████████████

█      ██   ███████  █████████████████████

█   ████████████████████████

█      ██   █████████████

█      ██   ████████████████████     ████████

█      ██   ███████████████████

█      ██   ██  █████████████████████

23     A.   I don't remember.

24     Q.   Okay.  And so, when you went to get -- ██████

█   ██████████████████████████████       09:26:10

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 48

1    ██████████████████████████████████

 ████████████████████████████████████████████

 ████████████████████████████████████████████

 ██████████████████████ ; is that correct?

5         MR. FUNG:  Object to form of the question.   09:26:21

6    I also object as calling for privilege.

7         Caution the witness not to reveal the

8    substance of any privileged communications.

9         THE WITNESS:  That's correct.

10   BY MR. ISAACSON:                                  09:26:36

11        Q.   Did you understand the ████████████████

 ████████████████████████████████████████

 ███████████████████████████████

 ██████████████████████████████████████

 ████████████████████████████████████   ████████

 ████   ██████████████████████████████████

 ██████████████████████████

18        MR. FUNG:  Objection.  Form.

19        THE WITNESS:  I don't remember, but

20   ████████████████████████████████           09:27:10

21   BY MR. ISAACSON:

22        Q.   All right.

23             And to prepare yourself as a 30(b)(6)

24   witness, did you talk to anyone about ████████████

25   that provided you any facts that helped you      09:27:29

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 49

1  ███████████████████████████████

2          MR. FUNG:  Objection as to form.

3          THE WITNESS:  I spoke to counsel.

4  BY MR. ISAACSON:

5      Q.  And did counsel help you understand -- did   09:27:38

6  counsel provide you any facts that helped you

7  understand ███████████████████████████

8          MR. FUNG:  Caution the witness not to

9  reveal the contents of any privileged communication.

10         THE WITNESS:  No.                            09:27:52

11 BY MR. ISAACSON:

12     Q.  Did you -- do you recall understanding

13 during the negotiations that ████████████████

██ ███████████████████████████████████████████

██ ████████████████████████████████        :17

16         MR. FUNG:  Objection.  Form.

17         THE WITNESS:  I don't remember.

18 BY MR. ISAACSON:

19     Q.  Okay.  Have you -- as part of your

20 preparation as a 30(b)(6) witness, have you learned   09:28:28

21 any facts about ████████████████████████

██ █████████████████████████████████?

23     A.  No.

24     Q.  All right.  If we can flip to -- ███████

██ ████████████████████████████       09:28:57

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 50

1               All right.

14              MR. FUNG:  Objection.  Form.

15              THE WITNESS:

17     BY MR. ISAACSON:

18           Q.   Yeah.

19            So they --

09:30:31

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 51

1          You have -- am I correct that ███████████
██  ████████████████████████████████████████?

3          MR. FUNG:  Objection.  Form.

4          THE WITNESS:  I don't remember this at

5     all.                                           09:30:41

6     BY MR. ISAACSON:

7          Q.   The -- and to prepare as a 30(b)(6)

8     witness, you have not attempted to learn any facts

9     about ████████████████████████; is that

10    correct?                                        09:30:49

11         MR. FUNG:  Objection.  Form.  Also object

12    as calling for privilege.

13         Caution the witness not to reveal the

14    contents of any privileged communications.

15         THE WITNESS:  I have not.              09:31:00

16    BY MR. ISAACSON:

17         Q.   All right.

18         Do you have any understanding that ████
██  ████████████████████████████████████████
██  ███████████████████████████████        ████████
██  ████████████████████████████

22         MR. FUNG:  Objection.  Form.

23         THE WITNESS:  I don't remember.

24         MR. ISAACSON:  All right.  Let's go to

25    June 15th.  This will be -- I think this is 186.   09:31:38

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 52

1          (Tran Deposition Exhibit 186 was marked

2          for identification.)

3          THE COURT REPORTER:  Your mic is still

4    live, Counsel.  Counsel, your mic is still live.

5    Just -- yeah.                                    09:32:23

6          MR. ISAACSON:  This would be 186.

7    BY MR. ISAACSON:

8      Q.   So Qual -- QX186 is Bates stamped

9    ARM_'26001.  It includes attachments, and it runs

10   through Bates stamp '58320.  It has a cover e-mail   09:32:46

11   from Tim Herbert, dated June 15th, 2019, to Gerard

12   Williams.  It's CC'd to Manu Gulati and John Bruno

13   at Nuvia.

14          It says, ███████████████████████

███  ████████████████████████████████     ██████████

███  ███████████████████████████      █

███  █████████████████████████████████████████

███  ████████████████████████████████

███  ████████     ██████████████████████████████

███  ███████████████████████     ████████     ████████     ██████████

███  █████████████████████████████

███  ████████████████████     █████████████████████

███  ████████████████████████████████

███  ██████████████████████

███            ████████████████████████████     09:33:39

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 53

1    ██████████████████████

2         You're not copied on this e-mail.  Do you

3    recog- -- ████████████████████████████████

     █  ██████████████████████████

5         Do you see that?                         09:33:57

6    A.   I see it.

7    Q.   All right.

8         ████████████████████████████████████;

9    correct?

10        MR. FUNG:  Objection.  Form.              09:34:03

11        THE WITNESS:  Appears to be.

12   BY MR. ISAACSON:

13   Q.   Okay.  And so do you recognize the

14   documents that are attached ████████████████

     █  ████████████████████████████████   ████████████

     █  ████████████████████████████████

     █  ████   ████████████████████████████████

     █  ██████████████

19        MR. FUNG:  Objection to form.

20        THE WITNESS:  That's what it looks like.  09:34:38

21   BY MR. ISAACSON:

22   Q.   The -- do you recall ████████████████████

     █  ████████████████████████████████████████

     █  ██████████████

25        MR. FUNG:  Objection to form.           09:34:55

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

                                                        Page 54

1              THE WITNESS:  I don't remember.

2        BY MR. ISAACSON:

3              Q.    Okay.

4              The e-mail refers to ███████████████

  ██████████████████████████████████████████    ███████

  ███████████████████████████████████████

7              A.    No.  I didn't write this e-mail.

8              Q.    Do you recall working with a team on these

9        documents?

10             A.    I don't remember.                    09:35:17

11             Q.    All right.

12             He says, ███████████████████████████

  ████████████████████████████████████████████████████

  ███████████

15             Do you know what discussions those are  09:35:28

16        referring to?

17             A.    No.

18             Q.    It says, ████████████████████████████

  ████████████████████████████████████████████████████

  ███████████████████████████    ███████████

  ███████████████████████████████████████████████

  ██████████████████████████████████

23             A.    I don't remember.

24             Q.    Do you believe that that happened?

25             MR. FUNG:  Objection to form.            09:35:50

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 55

1          THE WITNESS:  I don't remember.

2   BY MR. ISAACSON:

3      Q.   All right.

4           If we can look at ███████████████████

        ████████████████████                        09:36:15

6           Do you see that?

7      A.   Yes.

8      Q.   It says, ███████████████████████

   ████████████████████████████████

   █████████████████████████████████████     ██████████

   ████████████████████████████████████████████

   ███████████████████████████   ████████████████████

   ███████████████████████████████

   ████████████████████████████████████████

   ████████████                               09:36:48

16     A.   I don't.

17          MR. FUNG:  Objection.  Form.

18   BY MR. ISAACSON:

19     Q.   Okay.  Do you have an understanding of

20   what it means today, ████████████         ██████████

    █████    █████████████████████████████

    █████    █████████   ████████████████████████████

    ████████████████████████████████████

    ████████████████████████████

    █████   ██████████████████████████████     09:37:23

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 56

1   ████████████████████████████████

    ███      ████      █████████████████████

    █████████████████████████████████████

    ████████████████████████████████

                                          09:37:40

6          MR. FUNG:  Objection.  Form.

7          THE WITNESS:  I don't remember.

8   BY MR. ISAACSON:

9      Q.   Okay.  And as part of your efforts to

10  prepare as a 30(b)(c) -- (6) witness, am I correct    09:37:49

11  you've not learned any facts from anybody else that

12  would tell you ████████████████████████████

    █████████████████████████████████████

    █████████████████████████

15         MR. FUNG:  Objection.  Form.             09:38:04

16         THE WITNESS:  No.

17  BY MR. ISAACSON:

18     Q.   I did another double negative with you

19  there and -- so I got to stop doing that.

20         Well, let me -- actually, I'll repeat the    09:38:20

21  question and see if I can get the correct answer.

22         Am I correct that you have not learned any

23  facts as -- in your preparation as a 30(b)(6)

24  witness from anybody else that would tell you ████

    █████████████████████████████████████        09:38:35

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 57

1    ████████████████████████████████████████

2    ████████████████████████████████

3          MR. FUNG:  Objection.  Form.

4    BY MR. ISAACSON:

5          Q.   Is that correct?                    09:38:43

6          A.   I have not learned any new facts.

7          Q.   Thank you.

8               And you recall no discussions with anyone

9    at Nuvia about this comment; is that correct?

10         A.   I don't recall.                     09:38:59

11         Q.   And you don't recall discussions about

12   this comment with anybody at Arm; is that correct?

13         MR. FUNG:  Objection.  Form.

14         Also caution the witness not to reveal

15   privileged communications.                     09:39:10

16         THE WITNESS:  I don't remember.

17   BY MR. ISAACSON:

18         Q.   All right.

19              If you turn the page to ████████████

20   ████████████████████████████████████████        ████████

21   ████████████

22              Do you see that?

23         A.   Yes.

24         Q.   All right.

25              ████████████████████████████        09:39:35

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 58



14        A.   No, I don't remember.

15        Q.   Do you have any understanding of what this   09:40:14

16   --

09:40:43

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 59

1          Q.    Okay.  The -- so what do you mean by ███

2     ████████████████████████████████

3     ████████████████

4               MR. FUNG:  Objection.  Form.

5               THE WITNESS:  ████████████████████     ████████

6     ████████████████████████████

7     ████████████████████████████████

8     BY MR. ISAACSON:

9          Q.   And what do you mean by ████████████████

10    ████████████████████████████████     ████████

11    ████████████████████████████████

12    ████████

13          ██    ████████████████

14          ██    ████████████

15          ██    ████████████████████████     ████████

16          ██    ████████████████████

17    ████████████████████████████

18    ████████████

19               MR. FUNG:  Objection to form.

20               THE WITNESS:  Yes.                          09:41:35

21    BY MR. ISAACSON:

22          Q.   Okay.  The Ar- -- ████████████████████

23    ████████████████████████████

24    ████████████████████████████

25               MR. FUNG:  Objection to form.              09:41:43

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

                                                    Page 60

1            THE WITNESS:  That's correct.

2      BY MR. ISAACSON:

3            Q.   Okay.  And the ArmARM, that manual does

4      not tell CPU developers how to implement the

5      architecture; is that correct?                09:41:57

6            MR. FUNG:  Objection to form.

7            THE WITNESS:  I have never read it.

8      BY MR. ISAACSON:

9            Q.   You're not familiar with the ArmARM?

10           A.   I know what it is, but I don't -- I don't  09:42:02

11     know what's in the contents.

12           Q.   All right.

13           ███████████████████

█            ███████████████████████

█       ██████████████████████████████        ████████

█       ██████████████████████████

█       ██████████

█              ███████████████

19           MR. FUNG:  Objection.  Form.

20           THE WITNESS:  That's correct.            09:42:26

21     BY MR. ISAACSON:

22           Q.   Okay.  If we can -- if you turn to the

23     next page, ████████████████████

█       ███████████████████████.

25           Do you see that?                         09:42:37

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 61

1      A.   Yes.

2      Q.

7           MR. FUNG:  Objection to form.

8           THE WITNESS:  No.

9  BY MR. ISAACSON:

10     Q.   Okay.  All right.                          09:43:09

11

                                                       09:44:14

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 62

1      ██████████████████████████████████████████

       ██████████████████████████████████████

       ████████████████████; correct?

4          A.   I don't remember.

5          Q.   All right.                              09:44:30

6               And you don't remember learning that --

7      ██████████████████████████████████████

       ███████████████████████████████████████

       ███████████████████████?

10              MR. FUNG:  Objection.  Form.           09:44:42

11     BY MR. ISAACSON:

12         Q.   ████████████████████████████████

       ██████████████████████████████

       ████████████████████████████████████████

       █████████████                               09:44:51

16         A.   I don't remember.

17         Q.   And you don't remember learning --

18     learning anything about that from anybody at Arm;

19     correct?

20              MR. FUNG:  Objection.  Form.           09:44:58

21              THE WITNESS:  I don't remember.

22     BY MR. ISAACSON:

23         Q.   Okay.  And you don't -- and you have not,

24     as a 30(b)(6) witness, tried to learn ██████

       ██████████████████████████████            09:45:05

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 63

1    ███████████████████████; correct?

2         MR. FUNG:  Objection.  Form.  Also seeks

3    privilege.

4         Caution the witness not to reveal the

5    content of any privileged communications.          09:45:14

6         THE WITNESS:  I'm sorry, can you repeat

7    the question?

8    BY MR. ISAACSON:

9    Q.    As a 30(b)(6) witness, you have not tried

10   to learn any facts about ████████████████  ████████

██   ████████████████████████████████████████

██   ████████████

13        MR. FUNG:  Same objections.

14        THE WITNESS:  I --

15        MR. FUNG:  Same caution to the witness.   09:45:30

16        THE WITNESS:  I have not learned.

17        MR. ISAACSON:  Okay.

18        THE COURT REPORTER:  Can I ask everybody

19   to slow down just a --

20        MR. ISAACSON:  Sure.                        09:45:38

21        THE COURT REPORTER:  -- beat, please.

22        Thank you.

23   BY MR. ISAACSON:

24   Q.    And then ████████████████████████████

██   ████████████████████  ██████████████████     09:45:44

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 64

12      A.   I don't remember.

13      Q.

19           MR. FUNG:  Objection.  Form.

20           THE WITNESS:

22  BY MR. ISAACSON:

23      Q.   Okay.

09:47:21

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 65

1          MR. FUNG:  Objection to form.

2     BY MR. ISAACSON:

3          Q.   -- is that correct?

4          A.   No.  ███████████████████████

██     ██████████████████████                    09:47:30

6          Q.   So they would re- -- they -- they would

7     re- --  ███████████████████████████

██     █████████████████████████████████████████████

██     ██████████████████████████████████

██     █████████                                   09:47:49

11          MR. FUNG:  Objection.  Form.

12          THE WITNESS:  █████████████████████

██     ████████████

14          MR. ISAACSON:  The -- all right.

15          So let me do June 17th, which is QX77.    09:48:00

16          THE WITNESS:  Could we take a break --

17          MR. ISAACSON:  Sure.

18          THE WITNESS:  -- right now, please.

19          Thanks.

20          MR. ISAACSON:  I forgot to say take a     09:48:11

21     break whenever you want.

22          THE WITNESS:  Thank you.

23          THE VIDEOGRAPHER:  Going off the record.

24     The time is 9:48.

25          (Short recess taken.)                    09:48:20

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 66

1          THE VIDEOGRAPHER:  We're back on the

2     record.  The time is 10:02.

3          MR. ISAACSON:  Thanks.

4          I'm giving you what's being marked as

5     QX187, which is Bates stamped ARM_58318 and '19.  At    10:02:32

6     the top it is an e-mail from Todd Lepinski to Tim

7     Herbert on August 9th, 2019, on top of an e-mail

8     from Gerard Williams to you, Mr. -- and Mr. Herbert

9     on the subject of the ████████████████

10         THE COURT REPORTER:  One second, Counsel.    10:03:01

11         THE WITNESS:  Thank you.

12    BY MR. ISAACSON:

13         Q.   Do you recognize the e-mail on -- that's

14    in the middle of the first page that continues on to

15    the next page on which you are copied on August 9th,    10:03:09

16    '29 -- 2019 as an e-mail you would have received on

17    or about that date?

18         A.   I don't remember it.

19         Q.   The -- it says, ████████████████

20    ████████████████████████████████    ████████

██    ████████████████████████

22         By the way, do you recall ever talking to

23    Gerard Williams?

24         A.   I don't remember.

25         Q.   Do you remember ever meeting Gerard    10:03:46

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 67

1    Williams?

2         A.   I don't remember.

3         Q.   Okay.  Do you think if Gerard Williams

4    walked in you would recognize him?

5         A.   No.                                      10:03:59

6         Q.

                                        correct?

12        A.   I don't remember.

13        Q.   The -- he says,

                                                         10:04:56

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 68

1   ████████████████████████████  ██████████████

2           Let me know when you've had a chance to

3   read that paragraph.

4       A.   (Witness reviews.)

5           I've read the paragraph.                    10:05:25

6       Q.   All right.

7           And so do you understand generally that

8   ██████████████████████████████████████

█   ██████████████████████████████

█   ████████████████████████████████████  ██████████

█   ████  ████  ████████████████████████

█   ████████████████████████████████

█   ████  ████  ██████████████████████████

█   ████████████████████████████████████

█   ████████████████                          10:05:58

16      A.   I don't remember.

17      Q.   All right.

18          And then on the second page of the e-mail,

19  there's a Sec- --  ██████████████████████.

20          Do you see that underneath his sig- --    10:06:27

21  underneath his - --

22      A.   Yes.

23      Q.   -- "Thanks, Gerard"?

24          Maybe you could take a look at that.  Tell

25  me when you've read it.                           10:06:36

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 69

```
 1        A.    (Witness reviews.)

 2              I've read it.

 3        Q.    All right.

 4        ████████████████████████████████████████

         ████████████████████████████████████    ████████

         ████████████████████████████████████

         ████████████████████████████    ████████████

         ████████████████████████████████████

         ████████████████████████████████████

         ████████                          ████████

         ████████████████████████████████

         ████████████████████████████████████

         ████████

14        A.    No.

15        Q.    Okay.  All right.                    10:07:30

16              MR. ISAACSON:  Can I have this one?

17              Oh, yes, it goes on.  I'm sorry.  Wait.

18    I've marked the wrong one here.

19              Can I look at your exhibit?  I may have

20    given you the wrong Bates stamp number.           10:08:23

21              Yeah, yeah, I got to replace this, yes.

22    It's the same document, but it's more complete.

23              THE COURT REPORTER:  Could we go off the

24    record?

25              MR. ISAACSON:  We don't need to.       10:08:39
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 70

```
 1              THE COURT REPORTER:  Okay.

 2              MR. ISAACSON:  I'm going to mark this as

 3      QX188.

 4              MR. FUNG:  Counsel, you're not withdrawing

 5      Exhibit 187?                                      10:08:54

 6              MR. ISAACSON:  No.  There's -- there's

 7      no --

 8              MR. FUNG:  Okay.

 9              MR. ISAACSON:  -- no secret here.  Just

10      QX188 is a more complete version of the previous  10:08:59

11      document.

12              (Tran Deposition Exhibit 188 was marked

13              for identification.)

14      BY MR. ISAACSON:

15          Q.   QX188 is Bates stamped ARM_'25829 through 10:09:16

16      '31.  You'll see that it has in the middle of the

17      paragraph the e-mail from Gerard Williams to

18      Christine/Tim that we were looking at before.

19          A.   Mm-hmm.

20          Q.   All right.                               10:09:39

21      ██████████████████████████████████

██      ████████████████████████████████████

23          A.   I don't see anything.

24          Q.   On 188?

25          A.   (Indicating.)                            10:10:00
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
                                                        Page 71
 1             MR. BUTWIN:  It should be in -- the other

 2     document.

 3             THE WITNESS:  I think it's in that one.

 4             MR. ISAACSON:  Oh.  So -- oh, she gave it

 5     to me.  Sorry.  This is 188.                    10:10:13

 6     BY MR. ISAACSON:

 7        Q.  188.  So let me go -- you didn't have it

 8     in front of you, so let me --

 9        A.  So am I looking at --

10        Q.  Do you have 188?                          10:10:22

11             THE COURT REPORTER:  One at a time.

12             THE WITNESS:  I have 187 and 188.

13     BY MR. ISAACSON:

14        Q.  All right.

15             I apologize.  Oh, it's the other way      10:10:29

16     around.

17             MR. BUTWIN:  Yeah.

18             MR. ISAACSON:  I see.  I've confused this,

19     so I apologize.

20             THE WITNESS:  Thank you.                  10:10:44

21     BY MR. ISAACSON:

22        Q.  For the record, 187 is Bates stamped

23     ARM_'25829 through '31.  And Arm 188 is '58318 and

24     '19.

25             All right.                                10:11:03
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 72



1        ████████████████████████████████

█        ██████████████████████

█            ████████████████████████████████

█            ██        ████████████████████████████

█        ████████████████████████████████████████        ████████████

█        ██████████████████████

7        Q.    All right.

8              Williams says in his e-mail to you on the

9        ████████████████████████████████████████████████

█        ████████████████████████                    10:11:52

11             Do you see that?

12       A.    Yes.

13       Q.    And it says, ██████████████████████

█        ████████████████████████████████████████

█        ████                                        ████████████

█            ████████████████████████████████████████

█        ████████████████████████████████

18       A.    Per the e-mail, yes.

19       Q.    ████████████████████████████████████

█        ████████████                                ████████████

█            ██    ████████████████████████████████████

█        ████████████████████████████████████████

█            ██    ██████    ████████████████████████

█        ████████████████████████████

█            ████████████████████████████████████        10:12:35

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 73

1        Do you see that?

2      A.   I see that.

3      Q.   Okay.  ████████████████████████

  ██████████████████████████████████████

  ████████████████████                    10:12:49

6        MR. FUNG:  Objection.  Form.

7        THE WITNESS: ████████████████████

  ██████████████████████████████████

9  BY MR. ISAACSON:

10     Q.   Okay.  All right.            10:12:59

11        And now if we look at 188, you'll see the

12  e-mail was forwarded to Mr. Lepinski.

13     A.   Yes, I see it.

14     Q.   And Mr. Lepinski was Mr. Herbert's

15  manager; is that correct?            10:13:22

16     A.   At the time, yes.

17     Q.   Okay.  And he says, ████████████████

  ████████████████████████████████

  ██████████ ██████████████████ ██████████████

  ████████████████████ ███████ ██████████    ██████████

  ███████████████████████████████████

  ██████████████████████████████████

  █████████████████████████████████

24        MR. FUNG:  Objection.  Form.

25        THE WITNESS:  I don't remember.    10:13:51

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
                                                    Page 74
 1    BY MR. ISAACSON:

 2         Q.   Do you remember ███████████████████

      ███████████████████████████████████

      █████████████████████████████

 5              MR. FUNG:  Objection.  Form.        10:14:05

 6              THE WITNESS:  I don't remember.

 7    BY MR. ISAACSON:

 8         Q.   Okay.  All right.

 9              MR. ISAACSON:  Now let's do August 27th.

10    This will be 189, QX189.                       10:14:37

11              (Tran Deposition Exhibit 189 was marked

12              for identification.)

13    BY MR. ISAACSON:

14         Q.   All right.

15              Exhibit 189 is Bates stamped ARM_'25854  10:15:25

16    with an attachment that runs through '5872.  It's an

17    e-mail August 27, 2019, from Tim Herbert to Gerard

18    Williams, copied to you, on the subject of the

19    ███████████████████████████████

20              Do you agree that this is an e-mail you  10:15:56

21    would have received on or about this date,

22    August 27th, 2019?

23         A.   My name is on there; so, yes.

24         Q.   It says, ████████████████████████

      ████████████████████████████        10:16:10
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 75

1    ████████████████████████████████████

2    ████████████████████████████████

3         A.   No, I don't remember.

4         Q.   Okay.  It says, ████████████████

5    ████████████████████████████████████   ████████

6    ████████████████████████

7    ████████████████████████████████████

8    ████████████████████████████████

9         A.   I don't remember.

10        Q.   Do you know -- ████████████████   ████████

11   ████████████████████████████████████

12   ████████████████████

13        A.   I don't remember.

14        Q.   Okay.  Do you know who "David" refers to?

15        A.   No.                              10:16:52

16        Q.   ████████████████████████████

17   ████████████████████████████████████

18   ████████████████████████████

19        A.   Probably.

20        Q.   Okay.  ████████████████████████   ████████

21   ████████████

22   ████████████████████████████████

23        A.   Probably.

24        Q.   Do you recall doing those edits?

25        A.   I don't remember.              10:17:40

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 76

1      Q.   All right.

2           ████████████████████████████

█      ███████   ████████████████████████

█      ████████████████

5      A.   Yes.                          10:18:03

6      Q.   All right.

7           ████████████████████████

█      █████████████████████████████████

█      ███████████████████████████████████

█      ████████████████████████████████      ████████

█      █████████████████████████████████████

█      ██████████   █████████████████████████

█      ██████████████████   ████████████

█      ████████████████████████████

█      ██████████████████      ████████████████████   ████████████

█      ████████████   ████████████

█      ████████████████████████████████

█      █████████████████████████████████████

█      ████████████████████████

20     A.   Looks like it.                10:18:57

21     Q.   Okay.   ███████████████████████

█      ███████████████████████████████

█      ███████████████████████████████████

█      █████████████████████████████   █

█      █████████████████████████████     10:19:29

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 77

1

2

3

4

5

6

7

8

9

10    A.   Looks like it.                    10:20:01

11    Q.

12

13

14         MR. FUNG:  Objection.  Form.

15         THE WITNESS:

16

17

18  BY MR. ISAACSON:

19    Q.   All right.

20

21

22

23

24

25                                           10:20:59

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 78

1 ██████████████████████████████████

2 ██████████████████████████████████

3 ██████████████████████████████████

4        MR. FUNG:  Objection.  Form.

5        THE WITNESS:  I██████████████        ████████

6 ██████████████████████████

7 BY MR. ISAACSON:

8     Q.   Okay.  ██████████████████████

9 ████████████████████████████████████

10 ███████████████████████████        ████████

11 █████████████████████████████

12       ██   ████████████████████████

13       ██   ████  ████████████████████

14 ██████████████████████████

15       ████████████  ████████████████        ████████

16 ████████████████████████████████████

17 ████████████████████████████████████

18 ██████████████████████████

19        MR. FUNG:  Objection.  Form.

20        THE WITNESS:  ████████████████        ████████

21 ████████

22 BY MR. ISAACSON:

23     Q.   All right.

24        ████████████████████████

25     A.   I don't know.  ████████████        10:22:35

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 79

1    ██████████████████  --

2        Q.    Okay.

3        A.    --  ████████████████████

     ████████

5        Q.    All right.                          10:22:42

6            ██████████████████████████

     ████████████████████████████████

     █████

9            Do you see that?

10       A.    Yes.                                10:23:26

11       Q.    It says,  ██████████████████

     ████████████    ████████████████████

     ████████████████████████

     ██████████████████    ████████████████

     ████████████████████████████████    ██████

     ██████████████████████████████

     ███████████████████████

     █████████████████████    [As written]

19          ████████████████████████████

     ████████████████████████████████    ██████

     █████

     ██    ████████████████████████████

     ████████████████████    ████████████

     █████████████████████

25       Q.    Okay.  And would you give me an example   10:24:20

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 80

1

10:24:36

6        A.    Yes.

7        Q.    Okay.

10:25:24

21       Q.    Okay.

25       A.    Yes.          10:25:38

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 81

1       Q.    Okay. ███████████████████████

█   ███████████████████████████████

█   ██████████████████████████████████

█   ███████████████████████████████████

█   ████████████                              10:26:00

6            MR. FUNG:  Objection.  Form.

7            THE WITNESS: ████████████████████

█   ████████████████████████████

█   ████████████████████████████

█   ████████████████████████████████       10:26:14

11  BY MR. ISAACSON:

12      Q.   ████████████████████

█   ███████████████████████████

█   ███████████████████████████████████

█   ████████                                  10:26:25

16      A.   Yes.

17           MR. ISAACSON:  All right.  September 27th.

18           This is 190 now?

19           MR. BUTWIN:  Yeah.

20           MR. ISAACSON:  All right.  This will be    10:26:55

21  1- -- QX190.

22           (Tran Deposition Exhibit 190 was marked

23           for identification.)

24  BY MR. ISAACSON:

25      Q.   All right.                            10:27:23

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 82

1            The QX190 is dated -- well, first of all,

2     it's Bates stamped ARM_'2913 and with the

3     attachment, runs through '2987.

4            This is an -- it has a cover e-mail from

5     you, dated September 27th, 2019, to Gerard Williams   10:27:47

6     copying Mr. Herbert and Mr. Brittain about the Nuvia

7     Arm agreements.  It says, ███████████████

      ██ ████████████████████████████████████████

      ██ ██████████████████████████████   ██████

      ██ ██████████   ████████   ████████         ██████

      ██ ███████████████████████

      ██ ████████████████████████████████████

      ██ █████████

      ██ ██████████   █████████████████████

      ██ █████████████████████████         ██████

      ██ ██████████████

17         A.    No.

18         Q.    All right.

19             ████████████████████████████

      ██ ███████████████████████████████   ██████

      ██ ████████████████████████████████████████?

22         A.    That's what it looks like.

23         Q.    Okay.   ████████████████████████

      ██ ██████████████████████████████████

      ██ ██████████████████████████████   10:29:15

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 83

1       A.   Yes.

2       Q.   Okay. �_▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉   ▉▉▉▉

▉   ▉▉▉▉▉▉▉▉▉▉▉   ▉▉▉▉

▉   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉   ▉▉▉▉▉▉▉▉▉▉              10:29:44

11      A.   No.  I don't remember.

12      Q.   Okay. ▉▉▉▉▉▉▉▉▉▉▉

▉   ▉▉▉▉▉▉▉▉▉▉▉▉▉   ▉▉▉▉

▉   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉   ▉▉▉▉

▉   ▉▉▉▉▉▉▉▉▉▉▉

17      A.   I don't remember.

18      Q.   Okay. ▉▉▉▉▉▉▉▉▉

▉   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉   ▉▉▉▉

▉   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉   ▉▉▉▉▉▉▉▉▉

24           MR. FUNG:  Objection.  Form.

25           THE WITNESS:  I did not learn anything.   10:30:37

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 84

1    BY MR. ISAACSON:

2         Q.    ████████████████████████████

     ████████████████████  --

4         A.    Yes.

5         Q.    -- do you see it?                    10:31:15

6              ████████████████████████████

     ████████████████████████████████████

     ████████████████████████████████████

     ██████████████████████████████████

     ████████████████████████      ████        ████████

     ████████████████████████████████████

     ████████████████████

13            THE COURT REPORTER:  Could you slow down a

14    little bit.

15            MR. ISAACSON:  Sure.

16    BY MR. ISAACSON:

17        Q.    --  ████████████████████████████

     ████████████████████████████

19    ████████████

20            ████████████████████████████    ████████

     ████████████████    ████████████████████████

     ████████████████

     ████████████████████████████████

     ██████████████████████

25            MR. FUNG:  Objection.  Form.            10:31:52

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 85

1          THE WITNESS:  No.

2     BY MR. ISAACSON:

3          Q.   ███████    ████████████████████

█     ██████████████████████████████████

█     █████████████████████████████████████   ██████████

█     ████████████████████████████

7          A.   No.

8          Q.   Okay.   ███████████████████████

█     ███████████████████████████████████

██     ██████████████████████████████████   ██████████

██     █████████████████████████████████████

12          MR. FUNG:  Objection.  Form.

13          THE WITNESS:  I don't remember.

14     BY MR. ISAACSON:

15          Q.   ████████████████████████████████   ███████████

██     █████████████████████████████████████

██     █████████████████████████████████████████

██     █████████████████████████████████████████

██     ████████████████████████████

20          MR. FUNG:  Objection.                   10:32:52

21     BY MR. ISAACSON:

22          Q.   --  ████████████

23          MR. FUNG:  Objection.  Form.

24          THE WITNESS:  I don't remember.

25     BY MR. ISAACSON:                             10:32:58

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 86

```
 1        Q.    ████████████████████████████

 ■             ██████████████████████████████████

 ■             ███████████████████████

 4             MR. FUNG:  Objection.  Form.

 5             THE WITNESS:  No.                        10:33:23

 6   BY MR. ISAACSON:

 7        Q.   All right.

 8             ████████████████████████████████████

 ■             ████████████████████████████████

 ■             ████████████████████████.              10:34:05

11             Do you see that?

12        A.   Yes, I see it.

13        Q.   All right.

14             ██████████████████████████████
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 87

1    A.   Yes.

2    Q.   All right.

3    ████████████████████████████

█    ██████████████████████████████

█    ████████████████████████████        ████████

█    ██████████████████████

7         MR. FUNG:  Objection.  Form.

8         THE WITNESS:  I did not have any

9    communications.

10   BY MR. ISAACSON:                            10:35:17

11   Q.   Right.  █████████████████████

█    ██████████████████████████████

█    ██████████████████████████████████

█    ████████████████████████

15        When did that happen?                  10:35:31

16   A.   That was yesterday.

17   Q.   Okay.  And how long was your preparation?

18   A.   From 9:00 a.m. to 4:30 p.m.

19   Q.   Okay.  And that's -- that's the only time

20   you've spent preparing for the deposition, was the  10:35:47

21   time you spent yesterday?

22   A.   Yes.

23   Q.   Okay.  Other than the -- any

24   communications you had yesterday preparing for this

25   deposition, have you ever had communications with   10:35:59

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 88

1 ████████████████████████████████

██ ████████████████████████████

██ ████████████████████████████████

██ ████████████

5          MR. FUNG:  Object to the form.  Also          10:36:16

6    object as calling for privilege.

7          Caution the witness not to reveal the

8    contents of any privileged communications.

9          THE WITNESS: ███████████████████

██ ████████████████████████████████ ██████████

██ ██████████████

12   BY MR. ISAACSON:

13        Q.   ███████████████████████████

██    ███████████

15        A.   Yes.                                        10:36:32

16        Q.   Okay.  ████████████████████

██ ██████████████████████████████████

██ ████████████████████████████████

██ ████████████████████████████?

20          MR. FUNG:  Objection as to privilege.        10:36:49

21          Caution the witness not to reveal the

22   contents of any privileged communications.

23          THE WITNESS: ████████████████████

██ ██████████████

25   BY MR. ISAACSON:                                      10:36:58

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 89



1          Q.    Okay. ████████████████████████

BY MR. ISAACSON:

17         Q. ████████████████████████████

           MR. FUNG:  Objection.  Form.

20         THE WITNESS: ██████████████

                                              10:37:34

                                              10:38:12

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 90



3    BY MR. ISAACSON:

4         Q.   All right.

10:39:35

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 91

1       A.   I don't remember.

2       Q.

10:41:13

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 92

1

25            MR. FUNG:   I caution the witness not to        10:42:28

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 93

1    reveal the contents of any privileged

2    communications.

3             THE WITNESS:  I don't remember.

4    BY MR. ISAACSON:

5        Q.   All right.                            10:43:17

6    ███████████████████████████████

▮    ████████████████████████████████████

▮    ███████████████████████

9        A.   I see it.

10       Q.   All right.                            10:44:05

11   ███████████████████████████████

▮    ████████████████████████████████████

▮    █████████████████████████████████████

▮    ██████████████████████████████

▮    ██████████████████████████████    ████████

▮    █████████   ██████████

17            MR. FUNG:  Object- -- go ahead.

18            Objection.  Form.

19            MR. ISAACSON:  Did I read it wrong?

20            MR. FUNG:  You're omitting our response to  10:44:31

21   the topic, so...

22            MR. ISAACSON:  Oh, I'm just saying that's

23   the topic.

24            MR. FUNG:  Okay.

25            THE WITNESS:  Yes, I see it there.     10:44:35

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 94

1    BY MR. ISAACSON:

2        Q.   The -- that was a topic in which you

3    prepared for for this deposition; is that right?

4            MR. FUNG:  Objection.  Form.

5            THE WITNESS:  Yes.                        10:44:46

6    BY MR. ISAACSON:

7        Q.   Okay.  ████████████████████████

█    ██████████████████████████████████

█    ██████████

10           MR. FUNG:  Objection.  Form.              10:45:00

11           THE WITNESS:  Yes.

12   BY MR. ISAACSON:

13       Q.   ██████  ████████████████████████

█    ████████████████████████████████

█    ██████████████████                  █████████

█         ███  ████████████████████████████

█    ████████████████████████████

█         ███  ████  ████████████████████████

█    ████████████████████████████████

20           MR. FUNG:  I'll object as calling for     10:45:30

21   privilege.

22           Caution the witness not to reveal the

23   contents of any privileged communications.

24           THE WITNESS:  ████████████████████████

█    ████████                              ████████:42

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 95

1    BY MR. ISAACSON:

2        Q.    ██████████████████████████████

     ██████████████████████████████████████████

     ████████████████████████████████

5            MR. FUNG:  Objection.  Form.              10:45:53

6            THE WITNESS:  Yes.

7    BY MR. ISAACSON:

8        Q.    ███████████████████████████

     ██████████████████████████████████████████

     ██████████████████████████████████████    ████████

     ████████████████████████    ██████████████████

     ██████████████████████    ████████████████████

     █████████

     ████    ████████████████

     ████    ████    ████████████████    ████████████    ████████

     ██████████████████████████████████████████

     ████████████████████████████████████████

     ██████████████

19           MR. FUNG:  Objection.  Form.

20           THE WITNESS:  Yes.                      10:46:53

21   BY MR. ISAACSON:

22       Q.    ██████████████████████████████████

     █████████████████████████████████████

     █████████████████████████████████████

     ███████████████████████████████████████?   10:47:11

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 96

1          MR. FUNG:  Objection.  Form.

2          Also caution the witness not to reveal the

3     contents of any privileged communications.

4          THE WITNESS:  ████████████████████████

█     ████████                                        10:47:27

6     BY MR. ISAACSON:

7          Q.  ███████████████████████████████

█     ██████████████████████████████████████████████

█     ████████████████████████████████████

10         MR. FUNG:  Objection.  Form.         10:47:44

11         Also caution the witness not to reveal the

12    contents of any privileged communications.

13         THE WITNESS:  ████████████████████████

█     █████████████

█     ██████████████████:                        10:47:57

16         Q.  ██████████████████████████████

█     ██████████████████

█     ███████████████████████████████████████████

█     ████████████████████████████████████████████

█     █████████████                         ████████████

█     ████   ████

█     ████   ████████████████████████████████████

█     ████████

█     ████████████████████████████████████████████

█     ████████████████████████████████████  10:48:50

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 97

1    ▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▮    ▬▬▬▬▬▬▬▬▬▬▬

3            MR. FUNG:  Objection.  Form.

4            THE WITNESS:  ▬▬▬▬▬▬▬▬

▮    ▬▬▬▬▬▬▬▬▬▬        ▬▬▬▬

▮    ▬▬▬▬▬▬

▮        ▬    ▬▬▬▬    ▬▬▬▬▬▬▬▬

▮    ▬▬▬▬▬

9            MR. FUNG:  Objection.  Form.

10           THE WITNESS:  ▬▬▬▬▬▬▬▬    ▬▬▬▬

▮    ▬▬▬▬▬▬▬▬▬▬▬▬▬

▮    ▬▬▬▬▬▬▬▬▬

▮    ▬▬▬▬▬▬

▮        ▬    ▬▬▬▬

▮        ▬▬▬▬▬▬▬▬▬▬▬        ▬▬▬▬

▮    ▬▬▬▬▬

▮        ▬▬▬▬▬▬▬▬▬▬

▮    ▬▬▬▬▬▬▬▬▬▬▬▬

▮    ▬▬▬▬▬▬▬

20           MR. FUNG:  Objection.  Form.        10:49:34

21           THE WITNESS:  ▬▬▬▬▬▬▬▬

▮    ▬▬▬▬▬

▮    ▬▬▬▬▬▬

▮        ▬    ▬▬▬▬

▮        ▬▬▬▬▬▬▬▬▬▬▬        10:49:43

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 98



1

2

3          MR. FUNG:  Objection to form.

4          THE WITNESS:

18          MR. FUNG:  Objection.  Form.

19          THE WITNESS:

10:51:04

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 99

1     █████████████████

2       MR. FUNG:  Objection to form.

3   BY MR. ISAACSON:

4     Q. ████████████████

9       MR. FUNG:  Objection.  Form.

10      THE WITNESS: ████████████

10:51:41

21     MR. FUNG:  Objection to form.

22     THE WITNESS: ████████████

10:51:55

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 100



1

2      BY MR. ISAACSON:

3          Q.

7                  MR. FUNG:  Objection.  Form.

8                  THE WITNESS:

20                 MR. FUNG:  Objection to form.          10:52:53

21                 THE WITNESS:

                                                          10:53:12

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 101

```
 1  ████████████████

 2      ██████████████████

 ▮  ████████████████████████████████

 ▮  ███████████████████████████████

 ▮  ████████                              10:53:24

 6          MR. FUNG:  Objection --

 7  BY MR. ISAACSON:

 8      Q.  ████████████████████

 ▮      ██████████  ██████  █████████████

 ▮      ██████████  █████████████  ████

 ▮  ██████████  ████████████████

 ▮  ██████████████████████  ████

 ▮  ██████

 ▮  ████████████

 ▮      ██  ██████████████████████  ████

 ▮      ████████████████████████

 ▮  ████████

18          MR. FUNG:  Objection.  Form.  Asked and

19  answered.

20          THE WITNESS:  ██████████████████  ████

 ▮  ██████████████████

 ▮  ██████████████

 ▮      ██  ████████

 ▮      ████████████████████████

 ▮  ██████████████████████           10:54:07
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 102



```
 1              MR. FUNG:  Objection to form.

 2              THE WITNESS:  ███████████████

 █      ████████████████████████████████████████

 █      ██████████████████████████

 5   BY MR. ISAACSON:                              10:54:24

 6        Q.   ███████████

 █             █████████████████████████████████

 █      ████████████████████████████

 █      █████████████████████████████

10             Do you see that?                   10:54:49

11        A.   Yes.

12        Q.   Okay.  ██████████████████████████████

 █      ████████████████████████████████

 █      ███████████████████████████████████

 █      ██████████                         ███████████

 █           █  ██████████████████████████████████

 █      ███████████████████████████████████████

 █      ██████████████████████████████

 █      ████████████████████████████

 █      ██████████████████████         10:55:20

21        Q.   All right.

22             █████████████████████████████████████

 █      █████████████████████████████████████

 █      ████████████████████

25        A.   I don't remember.                  10:55:28
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 103

1          MR. FUNG:  Objection to form.

2     BY MR. ISAACSON:

3          Q.   Okay.  ████████████████████

     ███████████████████████████████████

     ████  correct?                              10:55:40

6          MR. FUNG:  Objection.  Form.

7          Also caution the witness not to reveal

8     privileged communications.

9          THE WITNESS:  ██████████████████

     ██████████████████████████             10:55:51

11    BY MR. ISAACSON:

12         Q.   Okay.  ████████████████████

     ███████████████████████████████████

     ██████████████████████████

15         MR. FUNG:  Same caution as to --          10:56:04

16    BY MR. ISAACSON:

17         Q.   ████████████████████████████

     ████████████████

19         MR. FUNG:  Objection as to privilege.

20         Caution the witness not to reveal the      10:56:12

21    contents of any privileged communications.

22         THE WITNESS:  ██████████████████

23    BY MR. ISAACSON:

24         Q.   ████████  ███████████████████

     ████████████████████████████████████     10:56:45

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 104

1 ████████████████████████████████

2 ██████████████████████████

3 ████████████████████████████████

4 ██████████

5          MR. FUNG:  Objection to form.                    10:57:43

6          THE WITNESS: ████████████████

7 BY MR. ISAACSON:

8     Q. ████████████████████████████

9 ██████████████████████████████

10 ██████████████████████████████████  ████████

11 ██████████████████████████████

12 ████████████████████████████

13 ██████████████

14          MR. FUNG:  Objection.  Form.

15          THE WITNESS:  Yes.                               10:58:22

16 BY MR. ISAACSON:

17     Q. ████████████████████████████

18 ██████████

19        ██████████████████████

20 ██████████████████████████  ████████

21 ██████████████████████████

22          MR. FUNG:  Objection.  Form.

23          THE WITNESS: ████████████████

24 ████████████████████████████████

25 ████████████████████                                     10:59:42

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 105

1          ████████████████████████████

2     ███████████████████

3     BY MR. ISAACSON:

4          Q.    ████████████████████████

5     ███████████████████████          ████████

6          ████████████████████████████

7     ████████████████████████████████

8     ██████████████████████████████████████

9     ████████████

10              MR. FUNG:  Objection to form.          11:00:25

11              THE WITNESS:  Yes.

12     BY MR. ISAACSON:

13          Q.    █████     ████████████████████

14     ████████████████████████████████████

15     ████████████████          ████████

16          ██     ████████████████

17          ██     ████████████████████████████

18     ██████████████████████████████████████

19     ██████████████████

20              MR. FUNG:  Objection as to privilege.    11:00:55

21              Caution the witness not to reveal the

22     contents of any privileged communications.

23              THE WITNESS:  I don't remember.

24     BY MR. ISAACSON:

25          Q.    ██████████████████████████        11:01:04

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 106

1    ████████████████████████████████████

2    ████████

3             MR. FUNG:  Objection to form.

4             THE WITNESS:  Yes.

5    BY MR. ISAACSON:                              11:01:15

6        Q.  ███████████████████████████

7    ██████████████████████████████████

8    ████████████████████

9             MR. FUNG:  Objection to form.

10            THE WITNESS:  Yes.              11:01:28

11   BY MR. ISAACSON:

12       Q.  ██████████

13            ███████████████████████

14   ███████████████████████████████████

15   ████████████████████████████████  ████████

16   ████████████████████████████████

17   ████████████████████████████████████

18   ████████████████

19            MR. FUNG:  Objection.  Form.

20            THE WITNESS:  █████████████████  ████████

21   ████████████████████████████████

22   ████████████████████████████  ███

23   ████████████████████████████

24   █████████████████████

25   BY MR. ISAACSON:                              11:02:18

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 107

11         MR. FUNG:  Objection to form.

12         THE WITNESS:

17  BY MR. ISAACSON:

18         Q.

23         MR. FUNG:  Objection.  Form.

24         THE WITNESS:

11:02:48

11:03:29

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 108

1    BY MR. ISAACSON:

2        Q.   All right.

3        ████████████████████████████

 ████████████████████████████████████

5            MR. FUNG:  Objection to form.                11:03:41

6            THE WITNESS:  Yes.

7    BY MR. ISAACSON:

8        Q.   ████████████████████████████

 ████████████████████████████████████

 ████████████████████████████████                        11:03:59

11       A.   I don't know.

12           MR. ISAACSON:  Is this a good time for a

13   break?

14           THE VIDEOGRAPHER:  We're going off the

15   record.  The time is 11:04.                          11:04:24

16           (Short recess taken.)

17           THE VIDEOGRAPHER:  We're back on the

18   record.  The time is 11:21.

19   BY MR. ISAACSON:

20       Q.   ████████████████████████████   ████████

 ████████████████████████████

 ████████████████████████████████████

 ████████████████████████

 ████████████████████████████

 ████████████████████████                                11:21:52

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 109

1 ███████████████████████████

[2] ██████████████████████████████

[3] █████████████████████████████

4          MR. FUNG:  Objection.  Form.

5          THE WITNESS:  Yes.                    11:22:06

6 BY MR. ISAACSON:

7     Q.   █████   █████████████████████

[8] ███████████████████████████████████████

[9] ████████████████████████████████

[10] ██████████████████████████████████████   ████████

[11] ████████████████

12          MR. FUNG:  Objection to form.

13          THE WITNESS:  I can't speculate.

14 BY MR. ISAACSON:

15     Q.   ██████████████████████████████   ████████

[16] ███████████████████████████████████████

[17] ███████████████████████████████████

[18] ██████████████████

[19] ██████████████████████████████████████

[20] ██████████████████████████████████████   11:23:35

21     A.   Yes.

22     Q.   ███████████████████████████████

[23] ████████████████████████████████████

[24] ████████████████

25     A.   That's correct.                      11:23:49

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 110

1          Q.    Okay. ████████████████████████

█   ████████████████████████████████████

█   ████████████████████████████

█         ██   ████████████████████████

█         ██   ████   ███████████████████   ████████

█   ███████████████████

█         ██   ████████████████████████████

█         ██   ████████████████████████████

█   ████████████████████████████████

█   ███████████                                ████████

█         ██   ████████████████████████

█   ████████████████████████████████████

█   █████████████████

14         Q.    All right.

15         A.    -- attached with that.              11:24:29

16         Q.    ████████████████████████████

█   █████████████████████████████████████████

█   ███████████████

19              MR. FUNG:  Objection to form.

20              THE WITNESS:  Yes.                    11:24:38

21   BY MR. ISAACSON:

22         Q.    All right.

23              The -- and are you familiar with the Arm

24   ISA, the instruction set architecture?

25              MR. FUNG:  Objection to form.         11:25:00

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 111

1          THE WITNESS:  What do you mean by

2    "familiar"?

3    BY MR. ISAACSON:

4          Q.   Have you looked at it before?

5          A.   No.                              11:25:08

6          Q.   All right.

7               The -- do you have an understanding of

8    what it is?

9          A.   ████████████████████████████

   ████████████████████████████████████████  ████████

   ████████████████████████████████████████

   ████████████████████████

   ██      █████████████████████████████████

   █████████████████████████████████████████

   █████████████████████████████████████████  ████████

   ██████████████

17         A.   To have --

18              MR. FUNG:  Object to -- sorry.

19              THE WITNESS:  I'm sorry.

20              MR. FUNG:  I'll object to form.  Also   11:25:46

21    object to this line of questioning as outside the

22    scope of the 30(b)(6) topics by which she's

23    designated.

24              Per the parties agreement, I am not going

25    to object every single time when I think something   11:25:54

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 112

1   is out of scope.  And per our agreement, we can

2   resolve objections later, after the deposition.

3              THE WITNESS:  ████████████████████

████  ████

5   BY MR. ISAACSON:                              11:26:16

6       Q.   And the Arm ISA can also be found on Arm's

7   website?

8              MR. FUNG:  Objection.  Form.

9              THE WITNESS:  I don't know.

10  BY MR. ISAACSON:                              11:26:25

11      Q.   And -- all right.

12

19      A.   No.

20      Q.

                                                  11:27:54

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 113

1        A.   No.

2        Q.   Okay.   ███████████████████████

 ████████████████████████████████████████

 ████████████████

5        A.   No.                              11:28:07

6             MR. ISAACSON:  All right.  ████████████

 ██████████████████████     ████████████████████████

 ████  -- or -- I mean -- I'm sorry, no.  Yeah.  I'm

9   sorry, yeah.  Just -- okay.

10            All right.  Give me the agreement, too, I   11:28:39

11  guess.

12            And we're on 191 and 192; is that right?

13            MR. BUTWIN:  That sounds right.

14            MR. ISAACSON:  Yeah.  All right.

15            So I'll mark as 191 the ALA with Qualcomm   11:29:21

16  and as 192 Annex 1.

17            (Tran Deposition Exhibit 191 was marked

18            for identification.)

19            (Tran Deposition Exhibit 192 was marked

20            for identification.)                         11:30:05

21  BY MR. ISAACSON:

22        Q.   All right.

23            Do you recognize 191, which is, as the --

24  ████████████████████████████████████████████████

 ████████████████████████████             11:30:15

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 114



1      A.   Yes.

2      Q.   And do you recognize Exhibit 192 as ████

       █ ███████████████████████████████████████

4      A.   Yes.

5      Q.   All right.                              11:30:32

6           And looking at 192, the annex, ████████

█ ████████████████████████████████████████████

█ █████████████████████████████████████████████

█ ████████████

10          MR. FUNG:  Objection to form.          11:30:58

11          THE WITNESS:  It appears to be.

12   BY MR. ISAACSON:

13     Q.   ██████████████████████████████

█ ██████████████████████████████████████████

█ ████████████████████████████████      ████████

█ ████████████████████████████████████████

█ █████████████████

18     A.   Yes.

19     Q.   Okay.  ██████████████████████████████

█ ████████████                           ████████

█ ██████████████████████████████████████

22     A.   Yes.

23     Q.   It says, ██████████████████████

█ ███████████████████████████████████████████

█ ████████████████████████████████  11:31:49

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 115



1      █████████

2          A.   Yes.

3          Q.   Okay.  ███████████████

█      ██████████████████████████████

█      █████████████                    11:32:07

6               MR. FUNG:  Objection to form.

7               THE WITNESS:  I don't know.  █████████

█      █████████

9      BY MR. ISAACSON:

10         Q.   All right.                 11:32:15

11              ████████████████████████

█      ████████████████████████████████

█      █████████████████████████████████

█      █████████

15              MR. FUNG:  Objection.  Form.    11:32:27

16              Also caution the witness not to reveal the

17     contents of any privileged communications.

18              THE WITNESS:  I don't know.

19     BY MR. ISAACSON:

20         Q.   All right.                 11:32:34

21              ████████████████████████████

█      ███████████████████████████████

█      ███████████████████████████████

█      ██████████████████████████████████

█      █████████████                    11:32:51

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 116

```
 1          A.   I don't know.

 2               MR. ISAACSON:  All right.  I need this

 3     one.

 4               All right.  This will be 193.

 5               (Tran Deposition Exhibit 193 was marked    11:33:51

 6               for identification.)

 7     BY MR. ISAACSON:

 8          Q.   All right.

 9               The -- 193 is Bates stamped ARM_'2098,

10     along with its attachment, through '2131.  It's an    11:34:33

11     e-mail dated June 16th, 2020, from Brett Bettesworth

12     at Qualcomm to Lynn -- how do you say her last name?

13          A.   Couillard.

14          Q.   -- Couillard -- thank you -- and to you

15     and some other individuals.                           11:34:56

16            ████████████████████████████████████

       ███  ███████████████████████████████████.

18               Do I have that right?

19          A.   That's what it appears to be.

20          Q.   Okay.  And it says, ███████████████    █████████

       ████████████████████████████████████████████

       ████████████████████████████████████  [As

23     read]

24            █████████████████████████████████████

       ██   ████████████████████████████████████████    11:35:22
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 117

1    ██████████████ ?

2         A.   I don't remember, but my name is on here,

3    so...

4         Q.   All right.

5         ████████████████████████████████    ██████████

6    ████████████████████████████████ .

7         A.   I see that.

8         Q.   Okay.  And Lynn Couillard, is she the vice

9    president of sales?

10        A.   Yes, for the North America region.        11:35:51

11        Q.   And she has been at Arm for at least five

12   years; is that right?

13        A.   Sounds about right, yeah.

14        Q.   Okay.  █████████████████████████████

15   ████████████████████████████████        █████████████

16         ██        █████████████████████████████████

17   ████████████████████

18        Q.   All right.

19        ████████████████████████████████████████

20   ████████████████████████████████        █████████████

21   ██████████████████

22        A.   I see it.

23        Q.   Okay.  It -- she says, ████████████████

24   ████████████████████████████████████████████████

25   █████████████████   ████████████████████        11:36:55

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 118

1 ████████████████████████████

 ██████████████████████

 ██████████████████

 ████████████████████████████

 ██████████████████████████████   ██████

 ██████

7          Is that -- do I have that right?

8     A.   Yes.

9     Q.   Okay.   ███████████████████

 ████████████████████                11:37:21

11         Is that -- that's what's going on here?

12    A.   It appears to be.

13    Q.   All right.

14         ████████████████████████████

 ████████████████████████████   ██████

 ████████████████████

 ██████████████████████

 ████████████████████████████

19         MR. FUNG:  Objection to form.

20 BY MR. ISAACSON:                    11:37:43

21    Q.   Do I have that right?

22    A.   That is what her comment says.

23    Q.   All right.  Here's another name that I may

24 mispronounce.

25         Richard Grisenthwaite?           11:38:00

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
                                              Page 119

 1        A.    That's correct.

 2        Q.    Thank you.

 3              He's the executive vice president and

 4    chief architect for Arm; is that right?

 5        A.    Yes.                              11:38:13

 6        Q.    I have that he started at Arm in 1996.

 7              Does that sound right?

 8        A.    I don't know.

 9        Q.    But a long -- he's been at Arm a long

10    time?                                      11:38:20

11        A.    Yes.

12        Q.    Okay.  And he's the chief architect for

13    Arm architecture?

14        A.    Yes.

15        Q.    He'd be the highest ranking officer at Arm   11:38:25

16    responsible for that Arm architecture; is that

17    right?

18              MR. FUNG:  Objection.  Form.

19              THE WITNESS:  I think the CEO would be.

20    BY MR. ISAACSON:                           11:38:36

21        Q.    Okay.  Is he primarily responsible for the

22    changes that are made to the Arm architecture; that

23    is Mr. Grisenthwaite, not the CEO?

24              MR. FUNG:  Objection to form.

25              THE WITNESS:  I don't know.       11:38:50
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 120

```
 1    BY MR. ISAACSON:
 2        Q.   Okay.   ███████████████████████
      ███████████████████████████████████████
      ███████████████████████████████████████
      █████████████████                              11:38:58
 6        A.   I don't know.
 7        Q.   ████████████████████████████
      ████████████████████████████████████████
      ███████████████
10             MR. FUNG:  I'll object as outside the    11:39:14
11    scope of the 30(b)(6).
12             THE WITNESS:  I don't know.
13             MR. ISAACSON:  All right.  Let's do this.
14             This has previously been marked as QX76.
15    And I'll just give this right to you.            11:39:49
16             (Previously marked Deposition Exhibit QX76
17             was referenced.)
18             MR. ISAACSON:  And QX76 is Bates stamped
19    ARM_'25088 to '25091.
20    BY MR. ISAACSON:                                 11:40:00
21        Q.   The -- on the first page there's a top
22    e-mail forward from Mr. Grisenthwaite to Gerard
23    Williams and Matthew Gretton-Dann, if I'm
24    pronouncing his right.
25             Do you know who he -- Matthew Gretton-Dann  11:40:33
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 121

1    is?

2          A.    No.

3          Q.    Okay.  The -- if you turn to '25089,

4    Mr. -- at the bottom, Mr. Grisenthwaite is writing

5    on March 7th, 2019, ████████████████████████      ████████

     ████████████████

     ██████████████████████████████████

     ██████████████████████████████████████

     ████████████████████████████████████

10          MR. FUNG:  Objection to form.  Also object   11:41:00

11   as outside the scope of the 30(b)(6).

12          The witness may answer in her personal

13   capacity.

14          THE WITNESS:  I was not aware.

15   BY MR. ISAACSON:                                   11:41:10

16          Q.    Okay.  The -- he says, ████████████████

     ████████████████████████████████████████████████

     ██████████████████████████████████

     ██████████████████████████████

     ████████████████████            ██████████

     ████  ██████████████████████████████████

     ██████████████████████████████████

     ████████████████████

24          Q.    Okay.  He says, ████████████████████

     ████████████████████████████████████              11:41:35

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 122

1    ███████████████    [As written]

2         So who is Simon?

3    A.   I think he means Simon Segars, our CEO at

4    the time.

5    Q.   ███████████████████████    ████████

     ████████████████████████████████

     ████████████████████████████

8    MR. FUNG:  Objection.  Form.

9    THE WITNESS:  ████████████████

     ████████████████████████? 11:42:09

11   BY MR. ISAACSON:

12   Q.   Yeah.

13   A.   I believe so.

14   Q.   Okay.  ██████████████████████

     ███████████████? 11:42:14

16   A.   No.

17   Q.   Okay.  And moving to the next page,

18   there's a -- ████████████████████████

     ████████████████████████████████

     ████████████████████ 11:42:35

21   Do you see that?

22   A.   Yes.

23   Q.   It says, ████████████████████ ██

     █████████████████████████████

     ████████████████████████████ 11:42:52

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 123

3            So was that a true statement at the time?

4            MR. FUNG:  Objection.  Form.

5            THE WITNESS:  I don't know.  There's          11:43:12

6    portions of the ArmARM that are on our website.

7    BY MR. ISAACSON:

8        Q.   All right.

9            And then it says,

14            MR. FUNG:  Objection.  Form.

15            THE WITNESS:

17    BY MR. ISAACSON:

18        Q.   He goes on to say,

25            MR. FUNG:  Objection.  Form.          11:44:03

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 124

1           THE WITNESS:  I don't have any knowledge

2      on that.

3      BY MR. ISAACSON:

4           Q.   All right.

5                Moving to the first page of the e-mail --        11:44:12

6      of the chain, he said -- Mr. Grisenthwaite says at

7      the top to Mr. Williams, ███████████████

███████████████████████████████  ████

████████████████████████████████████

███████████████████████████                      11:44:37

11          A.   It looks like it.

12          Q.   Okay.   ███████████████████

███

███  █████████████████████████

███████████                                      11:44:49

16          Q.   All right.

17               The -- and then moving down, on

18     March 18th, 2019, it says, ███████████████

███████████████████  ████████████████

██████████████████████             █████████

████████████████████████████████

████████████████████████████████

███████████

          ███████████████████                    11:45:21

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 125

```
 1         A.   I'm not sure.  ████████████████ .
 2         Q.   And developer.arm.com would be the website
 3    where these materials would be available that he's
 4    referring to?
 5         A.   That is the Arm site where things are      11:45:36
 6    publicly available.
 7         Q.   Right.  And I take it that you had no
 8    knowledge that Mr. Grisenthwaite was telling Gerard
 9    Williams, copying Matthew Gretton-Dann, ██████████
██         ████████████████████████████████████            11:45:51
11              MR. FUNG:  Objection.  Form.
12              THE WITNESS:  No.  I don't have any
13    knowledge of that.
14    BY MR. ISAACSON:
15         Q.   Okay.  And did I ask you who Matthew        11:45:57
16    Gretton-Dann is?  Who's Matthew Gretton-Dann?
17         A.   I don't know who he is.
18         Q.   Maybe that's why I didn't remember.
19              ██████████████████████████████████████
██    ████████████████████████████████████████    ████████
██    ██████████████
22         A.   ████████████████████████
23         Q.   Okay.  All right.
24              MR. ISAACSON:  Can I have the June 17th?
25    BY MR. ISAACSON:                                      11:46:41
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 126

1        Q.    Based on what you understand to be

2   Mr. Grisenthwaite's responsibilities at Arm, would

3   you have an understanding as to ██████████████

    ████████████████████████████████████████

5             MR. FUNG:  Objection.  Form.              11:46:56

6             THE WITNESS:  I can't speculate.

7   BY MR. ISAACSON:

8        Q.    ████████████████████████████████

    ████████████████████████████████████████████

    ████████████████████████████████████████████ ████████

    ██████████████

    ████ ██  ██████████████████████████

    ████ ██  ████████████████████████████████████

    ████████████████████████████████████████████

    ████                                    ████████:22

16            MR. FUNG:  Objection.  Form.

17            THE WITNESS:  ██████████████████████

    ████████████████████████████████████████████

    ████████████████████████

20            MR. ISAACSON:  All right.  So this will be  11:47:42

21   194 -- oh, wait, no, it's already marked.  Okay.

22   6/17.

23            All right.  This has been previously

24   marked as QX77.

25            (Previously marked Deposition Exhibit QX77   11:47:58

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 127

1          was referenced.)

2          This is 76, I don't know if you wanted

3    another copy of it.

4          THE WITNESS:  Yeah, I have a second copy

5    of it.                                        11:48:06

6          MR. ISAACSON:  Oh, okay.  Here's 77.

7    BY MR. ISAACSON:

8      Q.   Okay.  QX77 is Bates stamped ARM_'80859

9    through '61.

10          This is an e-mail from Dermot O'Driscoll   11:48:25

11    at Arm on June 17th, 2019, to Mr. Grisenthwaite,

12    Drew Henry, Tim Herbert, copied to Mohamed Awad, ███

███ █████████████████████████████████

███        █████████████████████████████████████

███ █████████████████████████████                11:48:50

16     A.   █████████████████████████████████

███ ██████

███     ████  ██████  ███████████████████

███ ███████████████████████████████████████

███ ████████  ██████████████████████          █████████

███     ████  █████████████████████████████

███ ████████████████████████████████████

███ ██████████  █████████████████████████████

███ █████████████████

25          Q.   And who's Drew Henry?               11:49:37

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 128

1        A.   He probably has a different role back

2    then.  But today, I think he's our chief strategy

3    officer, I think.

4        Q.   Would he have been a lower title strategy

5    officer at this part -- in time?                    11:49:56

6             MR. FUNG:  Objection.  Form.

7             THE WITNESS:  I think at the time, he was

8    the GM for the infrastructure line of business.

9    BY MR. ISAACSON:

10       Q.   All right.  ████████████████      ██████████

     ██████████████████

     █          ███████████████████████

     █    ███████████████████████

     █        ██  ████████████████████████

     █    ███████████████████████████         11:50:19

16       Q.   And -- and who is Mohamed Awad?

17       A.   He had a different role at the time.  But

18   today, he's the GM for the infrastructure line of

19   business.

20       Q.   Was he in the infrastructure business     11:50:45

21   then?

22       A.   Yes.

23       Q.   And so, does this -- ████████████████

     █    █████████████████████████

     █    ███████████████████████████         11:50:56

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 129

1    ███████████████████████████████████

▮    ██████████████████████████████?

3         A.   It looks like it.

4         Q.   █████████████████████████

▮    ████████████████████████        ████████

▮    ██████████████████████████

▮    ████████████████████████████████████

▮    ████████████████

9              MR. FUNG:  Objection.  Form.

10             THE WITNESS:  I don't remember, but yes,    11:51:26

11   that would be a fair assessment.

12   BY MR. ISAACSON:

13        Q.   The -- and -- I don't know these titles.

14   The -- I think at this time, you were the managing

15   counsel in the legal department --                   11:51:49

16        A.   Yeah.

17        Q.   -- correct?

18        A.   Yes.

19        Q.   Right.  And so, these would be people in

20   the business side who you would report to if you     11:51:59

21   were working with them?

22             MR. FUNG:  Objection.  Form.

23             THE WITNESS:  I would work with them, but

24   I don't report to them.

25   BY MR. ISAACSON:                                      11:52:09

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

                                                          Page 130

1          Q.    Okay.  The -- all right.  All right.

2                At the bottom of first -- the first page,

3     Drew Henry wrote on June 17th, 2019.

4                Do you see that?

5          A.    Yes.                                     11:52:33

6          Q.    He says, ███████████████████████

      █████████████████████████████████████████

      ████████████████████████████████████████████

      ███████████████████████████

      ████████████████████████████████████     ██████████

      ████████████████████████████████████████

      ███████████████████████████████████████████

      ████████████████████████████████████

      ████   ████████████████████████████████

      ████████████████████████████████████     ████████

      █████████████████████████████████████

      █████████

      ████████████████████████████████████████

      ████████████████████████████████████████████

      ████████████████████████████████████     ██████████

      ████████

22                MR. FUNG:  Objection.  Form.

23     BY MR. ISAACSON:

24          Q.    Am I correct about that?

25          A.    I was not aware of these discussions.    11:53:19

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 131

1        Q.    All right.

2              And going to the second and third page on

3    June 17th, at the bottom, Mr. Grisenthwaite writes

4    to Drew Henry, Mohamed Awad and Tim Herbert ▮▮▮▮

▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮

▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮

▮ ▮▮▮▮▮▮▮▮▮

12             MR. FUNG:  Objection.

13   BY MR. ISAACSON:

14       Q.    Am I correct about that?

15             MR. FUNG:  Objection.  Form.                11:54:22

16             THE WITNESS:  I'm not aware of these

17   discussions.

18   BY MR. ISAACSON:

19       Q.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮

▮ ▮▮▮▮▮▮▮▮▮

22             MR. FUNG:  Objection.  Form.  Also,

23   outside the scope of the 30(b)(6) topics.

24             THE WITNESS:  I'm not aware that any

25   copyrights have expired.                            11:55:08

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 132

1    BY MR. ISAACSON:

2         Q.   And then if we can go back to the signed

3    agreement, which was 189, and if we can look at

4    paragraph -- wait, no, it's not 189.  It's

5    September.  190.                              11:55:47

6         All right.  ██████████████████████████

     ████████████████████████████████████████

     ██████████████

9         A.   Okay.

10        Q.   All right.                          11:56:12

11                  ███████████████████████████

     ██████████████     ██████████████████████████

     ████████████████████████████████████████████

     ████████████████████████████████████████████

15             Do you see that?                    11:56:27

16        A.   I see that.

17        Q.   All right.  All right.

18                  ███████████████████████████

     ████████████████████████████████████████████████

     ███████                                       11:56:53

21        A.   No, I don't remember any discussions, ████

     ██████████████████████

23        Q.   All right.

24                  ████████████████████████████

     ██████████████████████████████████████████     11:57:04

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 133



```
 1      ████████████████████████████████████

 2      ██    █████████████████████████

 3           A.   No, I did not participate in discussions.

 4           Q.   Okay.  And -- and before, from the --

 5      before this lawsuit was filed, ████████████   ████████

 6      ██    █████████████████████████████████

 7      ██    ██████████████████████████████

 8      ██    ██████████████████████████████

 9      ██    ██████

10               MR. FUNG:  Object as calling for        11:57:42

11      privilege.

12               Caution the witness not to disclose

13      privileged communications.

14               THE WITNESS:  No.

15      BY MR. ISAACSON:                                 11:57:54

16           Q.   All right.

17                ████████████████████████████

        ██       ███████████████████████████

        ██       █████████████████████████████

        ██       ███████████████     ████████

        ██   ██  █████████████

        ██   ██  ████████████████████████████

        ██       █████

        ██   ██  ████████████████████████████

        ██       ████████████████████████      11:58:57
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 134



```
 1     ████████████████████████████████████████

 2     ██████████████    ████████████████████████

 3     ██████████████████████████████████

 4          Q.   All right.

 5              ██████████████████████████████   ██████████

 6     ████████████████████████████████████████

 7     ████████████████████████████████████████

 8     ██████████████   ████████████████████████

 9     ████████████████████████████████████████

10     ████████████████████████████████████████   ████████

11     ████████████████████████████████████████

12     ████████████████████████████████████████

13     ██████████   ██████████████

14              ████████████████████████████

15     ████████████████████████████████████████   ████████

16     ████████████████████████

17              MR. FUNG:  Objection to form.

18              THE WITNESS:  I don't know if Arm did or

19     not.

20     BY MR. ISAACSON:                          12:00:47

21          Q.   ██████████████████████████████████

22     ████████████████████████████████████████

23     ████████████████████████████████████████?

24              MR. FUNG:  Objection.  Calls for

25     privilege.                                12:01:06
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 135

1              Caution the witness not to reveal the

2    contents of any privileged communications.

3              THE WITNESS:  ████████████████████

     ██████████████████████████████████████████

     ██████████████████████████████████  ███████

     ████

7    BY MR. ISAACSON:

8         Q.   ███████████████████████████

     ████████████████████████████████

     ████████                              12:01:24

11             MR. FUNG:  Same objection.  Same caution.

12             THE WITNESS:  I don't know.

13             MR. ISAACSON:  All right.  Can we -- can

14   we look at this?  I'm not going to do this.

15   BY MR. ISAACSON:                        12:02:41

16        Q.   All right.

17             And then -- again, returning to 190, the

18   agree- -- ██████████████████████████████

     █████████████████████████████████

     ████ -- '2972.                         12:03:24

21        A.   Are we in Exhibit 190?

22        Q.   Yes.  It should be attached to your 190.

23             MR. FUNG:  It is not attached to mine.

24             THE WITNESS:  It's not attached to mine

25   either.                                 12:03:37

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
                                              Page 136

 1            MR. ISAACSON:  Oh, okay.  ████████████

 █   ███████████████████   ████████████████████████

 █   ████████████████████████████

 4            Okay.  We'll mark this as -- what's the

 5   next number?                              12:04:22

 6            THE COURT REPORTER:  194.

 7            MR. ISAACSON:  194.  Maybe you already

 8   have this, but...

 9            (Tran Deposition Exhibit 194 was marked

10            for identification.)                12:04:45

11   BY MR. ISAACSON:

12       Q.  All right.

13            So Exhibit 194 is ██████████████████████

 █   ██████████████████████████ Bates stamped

15   ARM_'2972 to '2987.                         12:05:19

16            Do you recognize this as ████████████████

 █   ████████████

18       A.  Yes, but there's a second one.

19       Q.  A subsequent one, yeah.

20            But as -- as of this date, this was the  12:05:31

21   relevant ████████  correct?

22       A.  Yes.

23       Q.  The -- all right.

24            The -- ████████████████████████████████

 █   ███████████████████████████████████████████  12:06:33
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 137

3        A.    Yes.

4        Q.    ▬▬▬▬▬▬▬▬▬▬▬▬

                                                12:07:13

11            MR. FUNG:  Objection to form.

12            THE WITNESS:  I don't know.

13    BY MR. ISAACSON:

14        Q.    ▬▬▬▬▬▬▬▬▬▬▬▬

                                                12:08:07

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 138

```
 1              MR. ISAACSON:  So this would be a good

 2      time for lunch.

 3              THE VIDEOGRAPHER:  Going off the record.

 4      The time is 12:09.

 5              (Lunch recess taken.)                12:09:08

 6              THE VIDEOGRAPHER:  We're back on the

 7      record.  The time is 12:51.

 8      BY MR. ISAACSON:

 9         Q.   All right.  I will show you what's been

10      previously marked as QX55.                   12:51:43

11              (Previously marked Deposition Exhibit QX55

12              was referenced.)

13              THE WITNESS:  Thank you.

14      BY MR. ISAACSON:

15         Q.   I believe you referred to this document  12:51:56

16      before.  This is -- do you recognize this as ██████

██   █████████████████████████████████  ████████

██   ████████████████████████████████████

██   ███████

20         A.   Yes.                                 12:52:12

21         Q.   All right.

22                 ██████████████████████████

██   ███████████████████  █████████████████

██   ████████████████████████████████████

██            █████████████████████████       12:52:30
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 139



13      A.   I don't know if they're the same or

14   different.

15      Q.   All right.                                12:53:19

16           So just to help you out then, take a look

17   at what we marked as Exhibit 194.  That's the

18   earlier one.

19      A.   It looks like there have been some

20   changes.                                          12:53:53

21      Q.   Yes.  And previously,

12:54:17

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 140

1          MR. FUNG:  Objection.  Form.

2          THE WITNESS: ████████████████████

   ████████████████████████████

4   BY MR. ISAACSON:

5      Q.   Right. ███████████████      ███████

   █████████████████████████

   ██████████████████████?

8          MR. FUNG:  Objection.  Form.

9          THE WITNESS: ████████████████

   ███████████████████████████    12:54:46

11  BY MR. ISAACSON:

12     Q.   I'm sorry, I'm not sure what you're

13  referring to.

14     A.   ████████████████████████

   ████████  █████████████          12:54:58

16     Q.   Okay.  All right.

17          And so, is it your belief that -- ██████

   █████████████████████████████

   ████████████████████████████

   ███  ██  ██████████████████████      ███████

   ██  ████████████████████

   ██  ██  ███

   ██  ██  █████████████████████

   ██  ██  ████████

   ██      ████████████████████████    12:55:54

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 141

1    ████████████████████████████

▮    ████████████████████████████

▮    ██████████████████████████

▮    ██████████████████████████

▮    ████████████████████████████████    ███████

▮    ████████████████████████████

▮    ██████████████████████

8            MR. FUNG:  Objection.  Form.

9            THE WITNESS:  I don't know what it

10   consists of specifically in its entirety.        12:56:32

11           MR. ISAACSON:  All right.  Let me have the

12   12/20/21.  This.

13           And the next number is 195?

14           THE COURT REPORTER:  Yes.

15           MR. ISAACSON:  Thanks.              12:57:12

16           All right.  Can we mark this as QX195.

17           (Tran Deposition Exhibit 195 was marked

18           for identification.)

19   BY MR. ISAACSON:

20       Q.  QX195, it's Bates stamped ARM_'88656    12:58:05

21   through '684.  It's entitled ███████████

▮    ███████████████████████████████████████

▮    ██████████████████████████████ [As read]

24           Have you seen this document before?

25           MR. FUNG:  I'll object to this line of    12:58:34

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 142

1    questions about this document as outside the scope

2    of the 30(b)(6) notice.  She can testify in her

3    personal capacity.

4              THE WITNESS:  No, I've never seen it

5    before.                                          12:58:45

6    BY MR. ISAACSON:

7         Q.   All right.

8              Did you have any involvement in regulatory

9    submissions with respect to the potential

10   acquisition by Nvidia of Arm?                    12:58:52

11        A.   What do you mean by "involvement"?

12        Q.   Well, describe to me any involvement that

13   you had in regulatory submissions having to do with

14   the potential acquisition by Nvidia of Arm.

15        A.   ███████████████████████████    ███████████

█    ███████████

17        Q.   The -- so this is a submission that was

18   made in the United Kingdom to the competition

19   authority there, the CMA.

20             Were you aware that there were proceedings  12:59:44

21   in the CMA relating to whether the acquisition by

22   Nvidia of Arm would be approved?

23             MR. FUNG:  Objection to form.

24             THE WITNESS:  I'm sorry, was I aware that

25   what was?                                        12:59:56

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 143

1    BY MR. ISAACSON:

2         Q.   That there were regulatory proceedings in

3    the United Kingdom, in Great Britain, to determine

4    whether the po- -- the acquisition -- an acquisition

5    by Nvidia of Arm would be approved?              01:00:07

6              MR. FUNG:  Objection to form.

7              THE WITNESS:  I'm aware, yes.

8    BY MR. ISAACSON:

9         Q.   Okay.  And -- so these are statements

10   being made to the regulatory authority in the United   01:00:19

11   Kingdom.

12             And if you look at page 6, under Section

13   E, the first paragraph -- do you see Section E in

14   the first paragraph?

15        A.   Mm-hmm.                                01:00:43

16        Q.   And the second sentence there says, ▮

25             MR. FUNG:  Objection to form.          01:01:14

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 144

```
 1            THE WITNESS:  I didn't write this.
 2     BY MR. ISAACSON:
 3         Q.   I understand that.
 4              ████████████████████████████████
 5      ██████████████████████████████████████████      ████████
 6      ████████████████████████████████████
 7              MR. FUNG:  Objection to form.
 8              THE WITNESS:  Yes.
 9     BY MR. ISAACSON:
10         Q.   All right.                              01:01:35
11              And then at the bottom of page 7, the
12     first three words there -- or the -- the last three
13     words on page 7, continuing on to the next page, it
14     says, ████████████████████████████████████
15      ██████████████████████████████████████████      ████████
16      ██████████████████████████████████
17      ██████████████████████████████
18              ████████████████████████████████████
19      ██████████████████████████████████████████
20      ██████████████████████████                      ██████:07
21              MR. FUNG:  Objection to form.
22              THE WITNESS:  That's correct, ██████████
23      ██████████████████████████████████████
24     BY MR. ISAACSON:
25         Q.   All right.                              01:02:27
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 145

1              And then on page 21, there's a section

2      called █████████████████████████████

3          A.   Yes, I see it.

4          Q.   And the second paragraph there says,

5      ████████████████████████████████         ████████

 ▮     ████████████████████████████████████

 ▮     ████████████████████████████████████

 ▮     █████████████████████████████████████████

 ▮     █████████████████████████████████████████

 ▮     ██████████                              ████████

 ▮              ███████████████████████████

 ▮     ███████████████████████████████████

 ▮     ███████████████

14             MR. FUNG:  Objection to form.

15             THE WITNESS:  ████████████████    ████████

 ▮     ████████████

17     BY MR. ISAACSON:

18         Q.   Okay.  And do you have any explanation why

19     ██████████████████████████████████

 ▮     ██████████████████████████████████████  ████████

 ▮     █████████████████████████████████

 ▮     ████████████████████

23             MR. FUNG:  Objection to form.

24             THE WITNESS:  I can't speculate or gu- --

25     or guess to that.                        01:03:41

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 146

1     BY MR. ISAACSON:

2         Q.   So on page 15, in the first full

3     paragraph, it says, ██████████████████████

██████████████████████████████

██████████████████████    ████████      ██████████

██████████████████████████████

████████████████████████████████

██████████████████████████████

              ██████████████████████████████

██████████████████████████████████████    ██████████

████████████████

12              MR. FUNG:  Objection to form.

13              THE WITNESS:  I don't think I understand

14    the context of what -- of where this paragraph is --

15    the context of the paragraph.                    01:05:05

16    BY MR. ISAACSON:

17        Q.   Okay.   ████████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████    ████████████

████████████████████████████

          ████████████    ████████████████████

██████████████████████████████████████

██████████████████████████████

██████████████████████████████            01:06:34

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 147

1   ██████████████████████████████████

    ████████

    ███████████████████████████████

    █████████████████████

    ████████████████████████████    ██████

    ████████████████████████

    ██████████████████████████

    ████████████████████

    ████████████████████████  █████████

    █████████████████████████████████████  ██████████

    █████████████████████

    ███████████████████████████████

    █████████████████████████

    ████████████████████████████████████

    ████████████████████████████████████    01:07:19

16          MR. FUNG:  Objection to form.

17          THE WITNESS:  Yes -- yes, that's correct.

18          MR. ISAACSON:  All right.  Let's -- let's

19   do January 12, 2021.

20          This will be 196.  Is that what we're on?   01:08:22

21          THE COURT REPORTER:  Yes.

22          MR. ISAACSON:  No, did I give -- hold on a

23   second here.

24          There, that looks better.

25          Thanks.                                      01:08:41

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

                                                            Page 148

```
 1              THE COURT REPORTER:  Counsel.

 2              MR. ISAACSON:  Oh, it's previously -- I'm

 3    sorry, you're right.  It's previously been marked as

 4    QX52.  So --

 5              (Previously marked Deposition Exhibit QX52   01:08:47

 6              was referenced.)

 7              MR. FUNG:  Thank you.

 8    BY MR. ISAACSON:

 9         Q.   So QX52 is Bates stamped ARM_'1242365 and

10    '66.  This is a Teams message produced by Arm.         01:09:05

11    The -- or a series of messages.  And these include

12    communications with Karthik Shivashankar, who you

13    told me who he was this morning, but would you

14    remind me?

15         A.   Yeah, he is the senior director of         01:09:32

16    licensing.

17         Q.   Okay.  All right.

18              And who is Paul Williamson?

19         A.   He's the general manager of the IoT line

20    of business.                                          01:10:02

21         Q.   ███████████████████████████████

      ████████████████████████████████████

      ████████████████████████████████

      ████████████████████████████████████

      ██████████                                           01:10:23
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 149

1           MR. FUNG:  Objection to form.

2           Also caution the witness not to disclose

3    the contents of privileged communications.

4           THE WITNESS:  No, I was not involved.

5    BY MR. ISAACSON:                                    01:10:32

6        Q.   So, for example, Mr. Williamson says,

7

15          MR. FUNG:  Objection to form.        01:10:59

16   BY MR. ISAACSON:

17       Q.

24       A.   No.

25       Q.   Okay.  Karthik Sha- -- Shivashankar says,   01:11:21

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 150

1    ███████████████████████████████████

     ████████████████████████████████

     █████████████████████████████████

     ██████████████████████████████████████

     ████████████████████████████████    ██████████

     ██████████████████████

7              MR. FUNG:  Objection to form.

8              THE WITNESS:  I was not aware of any

9    discussions on that.

10             MR. ISAACSON:  All right.                01:12:00

11             February 10th and March 16th.

12   BY MR. ISAACSON:

13        Q.   So after Qualcomm's -- well, actually, in

14   connection with Qualcomm's acquisition of Nuvia,

15   ███████████████████████████████████    ██████████

     ████████████████████████████████████

17             MR. FUNG:  Objection.  Form.  Also calls

18   for privilege.

19             Caution the witness not to disclose the

20   contents of any privileged communications.        01:12:38

21             THE WITNESS:  I think there were some

22   discussions around it, yes.

23   BY MR. ISAACSON:

24        Q.   And what was your involvement in those

25   discussions?                                       01:12:45

Page 151

1          MR. FUNG:  Same caution as to privilege.

2          THE WITNESS:  I don't think I can answer

3     that without revealing any privileged information.

4     BY MR. ISAACSON:

5          Q.   I don't want any communications that you     01:12:54

6     received or sent.  I just would like you to define

7     your role in that.

8          MR. FUNG:  Same caution.

9          THE WITNESS:  ███████████████████████

      ███████████████████████████████             01:13:02

11         THE COURT REPORTER:  Could you say that

12    again?  "I think"?

13         THE WITNESS:  --  ██████████████████████

      ███████████████████████████████████

      ██████████                                   01:13:09

16    BY MR. ISAACSON:

17         Q.   And did you have discussions about

18    ████████████████████████████████████████████

      ████████████████████████████████████

      ███████████                                  01:13:23

21         MR. FUNG:  Objection.  Calls for

22    privilege.

23         Caution the witness not to reveal the

24    contents of any privileged communications.

25         If you can do so, you can answer.        01:13:27

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 152

```
 1              THE WITNESS:  No.
 2     BY MR. ISAACSON:
 3        Q.   This may have been my fault because I -- I
 4     want to make sure I got the question right on the
 5     record --                                          01:13:50
 6        A.   Okay.
 7        Q.   --  ████████████████████████████████
       ████████████████████████████████████
       ████████████████████████████████████████
       ██████████████████████████████████████        ████████████
       ██████████
12              MR. FUNG:  Same objection as to privilege.
13              Same caution to the witness.
14              MR. ISAACSON:  And that's a yes-or-no
15     question.                                          01:14:11
16              THE WITNESS:  ██████████████████████
17              MR. ISAACSON:  All right.
18              So this would be 196.
19              (Tran Deposition Exhibit 196 was marked
20              for identification.)                       01:14:40
21     BY MR. ISAACSON:
22        Q.   Exhibit 196 is a series of Teams messages
23     Bates stamped ARM_'97557 through '62 beginning on
24     February 10th, 2020.
25              And on page '60 -- '560, on February 10th  01:15:04
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 153

1    at [verbatim]  2021 at 5:22 [sic] -- so it's the

2    fourth one down on the page -- there's a message

3    from Karthik Shivashankar saying,

01:15:53

11           MR. FUNG:  Objection to form.

12           THE WITNESS:

15   BY MR. ISAACSON:                              01:16:04

16       Q.

18           MR. FUNG:  Objection to form.

19           THE WITNESS:  I'm -- I was not aware.

20   BY MR. ISAACSON:                              01:16:14

21       Q.   Okay.

:26

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 154

```
 1              MR. FUNG:  Objection to form.

 2              Also caution the witness not to disclose

 3      privileged communications.

 4              THE WITNESS:  I was not involved.

 5              MR. ISAACSON:  All right.              01:16:36

 6              And then -- let me have the March 16th.

 7              This should be 197.

 8              (Tran Deposition Exhibit 197 was marked

 9              for identification.)

10      BY MR. ISAACSON:                              01:17:02

11          Q.   Exhibit QX197 is Bates stamped

12      ARM_'1293190 through '203.  It's a series of Teams

13      messages.

14              And -- all right.

15              And on page 195 -- actually, 194, it says  01:17:38

16      in the middle of the page on March 16th, 2021, at

17      3:44, Karthik Shivashankar, or it's -- one, two,

18      three, four, five -- six up, it says,  ████████████

██      ████████████████████████████████   ██████████████

██      ████████████████████████████████████       ██████████

██      ████████████████████████████████████

22              Who is Mr. Bhatnagar?

23          A.   He works for Karthik.

24          Q.   Okay.  ████████████████████████

██      ████████████████████████████████       01:18:39
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 155

1    ██████████████████████████████████████████?

2            MR. FUNG:  Objection to form.

3            THE WITNESS:  ████████████████████████

     ███████████████████████████████████████████.

5    BY MR. ISAACSON:                                    01:19:03

6        Q.    All right.

7              The -- you don't -- do you know, ████

     ███████████████████████████████████████

     ████████████████████████████████

10           MR. FUNG:  Objection to form.            01:19:15

11           THE WITNESS:  ████████████████████████

12   BY MR. ISAACSON:

13       Q.    All right.

14             The -- then you continue to the next page,

15   there's a discussion of a deck that's being         01:19:22

16   prepared.

17             Do you see that?

18       A.    Yes.

19       Q.    It says at the bottom, ████████████████

     ████████████████████████████████  ███     ██████████

     █████████

     ███████████████  ████████████████████

     █████████

24       A.    Yes.

25       Q.    And who is Doreen?                        01:19:44

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 156

1          A.   She was on the legal team.

2          Q.   All right.

3          ███████████████████████████████████

          ██████████████████████████████████

          ████████████████████████                    01:19:58

6               MR. FUNG:  Objection to form.

7               THE WITNESS:  I don't remember.

8     BY MR. ISAACSON:

9          Q.   All right.

10              And in terms of the Qualcomm ALA that we    01:20:25

11    looked at earlier, this was Exhibit 191.  ██████

      ████████████████████████████████

      █████████████████████████

      ████████  ██████████████████████

      ██████████████████████████████      ████████

      ██████████████████████████████████

      ████  ███████████████████████

      ████  █████  ████████████████████

      ███████████████████████████████████

      █████  ████████████████████████████  ████████

      ██████████████

      ████  ████

      ████  █████  █████████████████████

      ████████████████████████████████

      ████████████████████████████████      01:22:05

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 157

1          ███████████

2                  MR. FUNG:  Objection.  Form.

3                  THE WITNESS:  Yes, that's correct.

4     BY MR. ISAACSON:

5          Q.   All right.                          01:22:20

6                ████████████████████████████

 ██    █████████████████████████████

 ██    ███████████████████████████████████████

 ██    ██████████████████████████████████

 ██    ████████████████████████████████████████   █████████

 ██    ████████████████████████████████   ██

 ██    ████████████████████████████████████████

 ██    █████████████████████   █████████

 ██    ██████   ████████████████████████

 ██    ███████   █████████████████████████████   █████████

 ██    ██████████████████████

 ██    ██████   ██████████████████████████████

 ██    ████████████████████

19                 MR. ISAACSON:  Let's see.  June 6th, 2020.

20                 No, actually, I'll leave that -- I'll      01:23:04

21     leave that be.

22     BY MR. ISAACSON:

23          Q.   And then looking at the actual license in

24     this agreement, ████████████████████████████████████

 ██    ███████████████████████████████████      01:23:57

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 158

1 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇ ▇▇▇▇▇▇▇▇▇▇▇  ▇▇▇▇

4 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇ ▇▇▇▇▇▇   correct?                              01:24:14

6      A.   Yes.

7      Q.   Okay.   ▇▇▇▇▇▇▇▇▇▇▇▇

▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇

10 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇  ▇▇▇

▇ ▇▇▇▇▇▇▇▇▇  ▇▇▇▇▇▇

▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇

▇ ▇▇▇▇▇▇▇▇▇▇

▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇  ▇▇▇

▇ ▇▇▇

▇ ▇▇▇▇▇▇▇▇▇▇▇▇

▇ ▇▇▇▇▇▇▇▇▇▇▇▇

▇ ▇▇▇

20          MR. FUNG:  Objection.  Form.               01:25:15

21          THE WITNESS:  Yes.

22 BY MR. ISAACSON:

23      Q.   And putting those together, the Qualcomm

24 ALA ▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇ ▇▇▇▇▇▇▇▇   correct?                              01:25:25

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 159

1          MR. FUNG:  Objection.  Form.

2          THE WITNESS: ███████████████████

   ███████████████████

4    BY MR. ISAACSON:

5       Q.   Right. ████████?                     01:25:34

6       A.   Yes.

7       Q.   The -- now, looking at ██████████████

25      A.   Excuse me.                           01:27:10

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 160

1       Q.   -- █████████████████████████████

████████████████   ████████   ████████████████

████████████

          ████████████████████████████████████

███████████████████████████████████████   ████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████

9               MR. FUNG:  Objection.  Form.

10              THE WITNESS:  ███████████████████   ████████████

███████████████████████████████████████████

████████████████████████████████████

13    BY MR. ISAACSON:

14        Q.   ████████████████████████████████████

██████████████████████████████████████████   ████████████

████████

17              MR. FUNG:  Objection.  Form.

18              THE WITNESS:  Yes, it looks like it.

19    BY MR. ISAACSON:

20        Q.   Now, for a core to be compliant with Arm    01:28:15

21    architecture, ████████████████████████████████████

████████████████████████████

23              MR. FUNG:  Objection.  Form.  Also,

24    outside the scope of the 30(b)(6) topics.  The

25    witness may answer in her personal capacity.          01:28:27

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 161

1        THE WITNESS: ████████████████████
█ ███████████████████████████████████.

3   BY MR. ISAACSON:

4        Q.   ██████████████████
█        ██   ████████████   █████   ██████     ██████
█   ███████████████
█        ██   ██████   ██████████████
█   ██████████████████████████
█   ██████████████████████████
█   ██████████                                      01:28:54

11        MR. FUNG:  Objection.  Form.

12        THE WITNESS: ██████████████████
█   ██████████████████   ██████████████████
█   ████████

15   BY MR. ISAACSON:                            01:29:02

16        Q.   Okay.  Looking at ██████████
█   ████████████████████████████████████
█   ██████████████████████████████
█   ████████████████████████████████
█   ██████████                                      01:29:32

21        A.   Sorry, the pages on mine are --

22        Q.   Page 8 of 13 --

23        A.   -- kind of off.

24        Q.   -- at the bottom. ██████████████
█   █                                               01:29:46

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 162

1        A.   Yes.

2             MR. FUNG:  So, Counsel, the exhibit I've

3    been handed has two copies stapled together.

4             MR. ISAACSON:  Oh.

5             MR. FUNG:  I'm not sure what is going on    01:30:03

6    here.

7             MR. ISAACSON:  Hopefully, there's one

8    complete -- the other one -- pages 1 through -- oh.

9             THE WITNESS:  Yeah, my --

10            MR. ISAACSON:  Yeah, I see it.  I got --    01:30:13

11            MR. BUTWIN:  For this copy, that's sort

12   of -- that's how it was produced -- that's how it's

13   been produced.

14            MR. ISAACSON:  Okay.  All right.  I'll

15   live with that, and just still ask -- see --         01:30:20

16   BY MR. ISAACSON:

17       Q.   If you turn to the first page, 8 of 13,

18   ███████████████████████████████████████

19       A.   Yes, I see it.

20       Q.   Okay.  And there it says, ████████████      ████████

     ████████████████████████████████████████

     ████████████████       ██████████████████████

     ████████

24            Do you see that?

25       A.   Yes.                                        01:30:39

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 163

1        Q.    Okay.  Is there anything within the

2    agreement that says that ████████████████████████

     ████████████████████████████████████████

4              MR. FUNG:  Objection.  Form.

5              THE WITNESS: ██████████████████    ██████████

     ████████████████████████████████████████

     ████████████████████████████████████

     ██████████████████████████████████████████████

     ████████████████████████    ██████████████████

     ████████████████████    ██████████████████    ██████████

     ██████████████████

12   BY MR. ISAACSON:

13       Q.    All right.  The -- all right.

14             And then if I can take you back to the

15   Nuvia ALA, and we were looking at the signed copies    01:32:06

16   in QX190.  And back to ████████████████████████

     ████████████████████████████████████.

18       A.    Yes.

19       Q.    And you see ██████████████████████████

     ██████████████████████████████████    ██████████

     ████████████████████████████████

22       A.    Yes.

23       Q.    Okay.  ████████████████████████████████

     ██████████████████████████████████████.

25             Do you see that?                            01:33:02

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 164

1            MR. FUNG:  Object -- Objection.  Form.

2            THE WITNESS:  I see it there, but I don't

3    know why it's there.

4    BY MR. ISAACSON:

5        Q.   All right.                                01:33:11

6            And do you know that -- do the ob- -- █



16       Q.   All right.

17           So you would not apply -- you do not

18   believe the ████████████████████████████████

20           MR. FUNG:  Objection.  Form.            01:34:43

21           THE WITNESS:  ████████████████

                                                       01:35:00

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 165

1    BY MR. ISAACSON:

2         Q.    ██████████████████████████

     ████████████████████

     ███    ██    ██████████████████

     ███    ██    ██████████████████    ██████

     ███    ███████    ████████████████████

     ███    ██████████████

8              MR. FUNG:  Objection.  Form.

9              THE WITNESS:  ██████████████████

██    ██████████████████████████    ██████████

██    ██████████████    ████████████████

██    ██████████████████████

13   BY MR. ISAACSON:

14        Q.    All right.

15              But does that mean -- so I still can't    01:35:35

16   tell from your answer.  You're giving me the words

17   back.

18              But in your interpretation, once you read

19   this, is it your understanding that ██████████████

██    ██████████████████████████            01:35:51

21              MR. FUNG:  Objection.  Asked and answered.

22              THE WITNESS:  ████████████████████

██    ████████████████████████████

██    ████████████████████████████

██    ██████████████            01:36:11

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 166

```
 1    BY MR. ISAACSON:

 2          Q.      ████████████████████████████

       ██████████████████████████

 4              MR. FUNG:  Objection.  Asked and answered.

 5    Also to the form of the question.              01:36:24

 6              THE WITNESS:  █████████████████

       ████████████████████████████████

       ████████████

 9              MR. ISAACSON:  Okay.  All right.  Let me

10    take a break, and I'll be wrapping up soon, so...   01:36:36

11              MR. FUNG:  Five-minute break then?

12              MR. ISAACSON:  Yeah, okay.  Might be ten.

13              THE VIDEOGRAPHER:  We're going off the

14    record.  The time is 1:36.

15              (Short recess taken.)              01:55:23

16              THE VIDEOGRAPHER:  Going back on the

17    record.  The time is 1:55.

18              MR. ISAACSON:  I have -- I have no more

19    questions for you today.

20              THE COURT REPORTER:  One second.      01:55:37

21              MR. ISAACSON:  No more questions for you

22    today.  Thank you for your time.

23              Just for the record, Qualcomm reserves its

24    rights with respect to the parties' discussions on

25    Topics 14 and 43.                            01:55:47
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 167

1          As you are aware, the parties disagree

2     with respect to the scope of the testimony that Arm

3     must be -- must provide.  And this has to do with

4     redactions to ALAs that the parties have had

5     disputes about.                                    01:55:59

6          And Qualcomm -- Arm has limited its

7     testimony to unredacted revisions of the ALA and we

8     have -- these ALAs, and we've not agreed to that.

9     And -- and that also pertains to 43 with respect to

10    ███████████████████████████████████        █████████

11    █  ████████████████████

12          And then we also reserve our rights to

13    review this testimony and reach conclusions about

14    whether the witness has been properly prepared as a

15    30(b)(6) witness.                                  01:56:30

16          And we don't expect you to agree with any

17    of that.  We're just reserving our rights.

18          MR. FUNG:  Understood.  We obviously

19    disagree.  We've produced the redacted versions of

20    the ALAs.  We've also produced lesser redacted     01:56:45

21    versions of the ALAs.

22          We've made this witness available to

23    testify as to those ALAs.  You have declined to

24    pursue any testimony on those ALAs.

25          And we ob- -- obviously disagree that this  01:56:53

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 168

1    witness was unprepared for any of the other topics

2    on which she was asked about, so we consider this

3    deposition closed on these topics.

4              And I would like to take a five-minute

5    break before coming back.  I might have -- I might    01:57:06

6    have some questions.

7              MR. ISAACSON:  Okay.

8              MR. FUNG:  But take a -- take a

9    five-minute break.

10             THE VIDEOGRAPHER:  Going off the record.    01:57:12

11   The time is 1:57.

12             (Short recess taken.)

13             THE VIDEOGRAPHER:  Going back on the

14   record.  The time is 2:06.

15             MR. FUNG:  We have no questions.             02:06:27

16             We designate this transcript highly

17   confidential, attorneys' eyes only, pending further

18   review.  And the witness reserves the right to

19   review the transcript.

20             With that, we are done.                      02:06:38

21             MR. ISAACSON:  Good luck with the traffic

22   to San Jose.

23             THE VIDEOGRAPHER:  We're off the record at

24   4:0 -- 2:06 p.m., and this concludes today's

25   testimony given by Christine Tran.  The total number   02:06:52

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 169

1     of media units used was six and will be retained by

2     Veritext.

3                  (Proceedings concluded, 2:06 p.m.,

4                  December 19, 2023.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 170

1                    CERTIFICATE OF REPORTER

2           I, Hanna Kim, a Certified Shorthand

3     Reporter, do hereby certify:

4                That prior to being examined, the witness

5     in the foregoing proceedings was by me duly sworn to

6     testify to the truth, the whole truth, and nothing

7     but the truth;

8                That said proceedings were taken before me

9     at the time and place therein set forth and were

10    taken down by me in shorthand and thereafter

11    transcribed into typewriting under my direction and

12    supervision;

13           I further certify that I am neither

14    counsel for, nor related to, any party to said

15    proceedings, not in anywise interested in the

16    outcome thereof.

17                Further, that if the foregoing pertains to

18    the original transcript of a deposition in a federal

19    case, before completion of the proceedings, review

20    of the transcript [x] was [ ] was not requested.

21                In witness whereof, I have hereunto

22    subscribed my name.

23

24

                   Hanna Kim

25                 CLR, CSR No. 13083

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
                                                    Page 171

 1    Nicholas Fung, Esq.

 2    nfung@mofo.com

 3                         December 22, 2023

 4    RE:    ARM Ltd. v. Qualcomm Inc., Et Al.

 5          12/19/2023, Christine Tran (#6326938)

 6          The above-referenced transcript is available for

 7    review.

 8          Within the applicable timeframe, the witness should

 9    read the testimony to verify its accuracy. If there are

10    any changes, the witness should note those with the

11    reason, on the attached Errata Sheet.

12          The witness should sign the Acknowledgment of

13    Deponent and Errata and return to the deposing attorney.

14    Copies should be sent to all counsel, and to Veritext at

15     cs-ny@veritext.com.

16

17    Return completed errata within 30 days from

18    receipt of testimony.

19      If the witness fails to do so within the time

20    allotted, the transcript may be used as if signed.

21

22                     Yours,

23                     Veritext Legal Solutions

24

25
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 172

1    ARM Ltd. v. Qualcomm Inc., Et Al.

2    Christine Tran (#6326938)

3                    E R R A T A   S H E E T

4    PAGE_____ LINE_____ CHANGE_____

5    _____

6    REASON_____

7    PAGE_____ LINE_____ CHANGE_____

8    _____

9    REASON_____

10   PAGE_____ LINE_____ CHANGE_____

11   _____

12   REASON_____

13   PAGE_____ LINE_____ CHANGE_____

14   _____

15   REASON_____

16   PAGE_____ LINE_____ CHANGE_____

17   _____

18   REASON_____

19   PAGE_____ LINE_____ CHANGE_____

20   _____

21   REASON_____

22

23   _____     _____

24   Christine Tran                              Date

25

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 173

1   ARM Ltd. v. Qualcomm Inc., Et Al.

2   Christine Tran (#6326938)

3                    ACKNOWLEDGEMENT OF DEPONENT

4       I, Christine Tran, do hereby declare that I

5   have read the foregoing transcript, I have made any

6   corrections, additions, or changes I deemed necessary as

7   noted above to be appended hereto, and that the same is

8   a true, correct and complete transcript of the testimony

9   given by me.

10

11   _____    _____

12   Christine Tran                       Date

13   *If notary is required

14                    SUBSCRIBED AND SWORN TO BEFORE ME THIS

15                    _____ DAY OF _____, 20___.

16

17

18                    _____

19                    NOTARY PUBLIC

20

21

22

23

24

25

# Exhibit 10

| | |
|---|---|
| **From:** | Sender Unspecified |
| **To:** | Manu Gulati <>;Ziad Asghar <> |
| **Sent:** | |
| **Subject:** | (No Subject) |
| **Attachments:** | rsmf.zip |

Ziad Asghar
2022-01-19T19:50:28.0000000Z
do arm know that we are using ██████████ based on our use of the tools?

Ziad Asghar
2022-01-19T19:50:32.0000000Z
does

QCARM_2417783

# Exhibit 11

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF DELAWARE

 3

 4

 5   ARM LTD., a U.K. corporation,        )
                                          )
 6            Plaintiff,                   ) Case No. 22-1146-MN
                                          )
 7              vs.                        )
                                          )
 8   QUALCOMM INC., a Delaware            )
     corporation, QUALCOMM TECHNOLOGIES,)
 9   INC., a Delaware corporation, and  )
     NUVIA, INC., a Delaware             )
10   corporation,                        )
                                          )
11            Defendants.                 )
     _____)

12

13

14              C O N F I D E N T I A L

15              ATTORNEYS' EYES ONLY

16

17      VIDEOTAPED DEPOSITION OF QUALCOMM 30(b)(6)

18              designee ZIAD ASGHAR

19

20

21            Deposition taken on:
              Wednesday, November 8, 2023, 8:39 a.m.
22
              12531 High Bluff Drive, Suite 100
23            San Diego, California

24
     Reported By:  Kimberly Reichert, CSR 10986
25   Job No. J10465669
```



Case 1:22-cv-01146-MN   Document 439-2   Filed 08/16/24   Page 158 of 194 PageID #: 29350

ZIAD ASGHAR  Conf. AEO - 30b6                                    November 08, 2023
ARM, LTD. V. QUALCOMM INC.                                                      2

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF DELAWARE

 3

 4

 5   ARM LTD., a U.K. corporation,        )
                                          )
 6            Plaintiff,                   ) Case No. 22-1146-MN
                                          )
 7               vs.                       )
                                          )
 8   QUALCOMM INC., a Delaware            )
     corporation, QUALCOMM TECHNOLOGIES,)
 9   INC., a Delaware corporation, and   )
     NUVIA, INC., a Delaware             )
10   corporation,                        )
                                          )
11            Defendants.                 )
     _____)

12

13

14

15

16

17                C O N F I D E N T I A L

18            ATTORNEYS' EYES ONLY videotaped deposition

19   of QUALCOMM 30(b)(6)designee ZIAD ASGHAR, taken on

20   behalf of the Plaintiff, at 12531 High Bluff Drive,

21   Suite 100, San Diego, California, commencing at

22   8:39 a.m., Wednesday, November 8, 2023, before

23   Kimberly Reichert, Certified Shorthand Reporter

24   No. 10986.

25
```



Case 1:22-cv-01146-MN   Document 439-2   Filed 08/16/24   Page 159 of 194 PageID #: 29351

ZIAD ASGHAR  Conf. AEO - 30b6                              November 08, 2023
ARM, LTD. V. QUALCOMM INC.                                                3

```
 1   APPEARANCES OF COUNSEL:

 2   For the Plaintiff:

 3                        MORRISON & FOERSTER LLP
                          By:  DANIEL P. MUINO, ESQ.
 4                        2100 L Street, NW
                          Suite 900
 5                        Washington, DC  20037
                          dmuino@mofo.com
 6

 7   For Defendants:

 8                        PAUL, WEISS, RIFKIND, WHARTON
                          & GARRISON, LLP
 9                        By:  JACOB BRALY, ESQ.
                              CATHERINE NYARADY, ESQ.
10                        1285 Avenue of the Americas
                          New York, New York  10019
11                        jbraly@pualweiss.com
                          cnyarady@paulweiss.com
12

13                        QUALCOMM INCORPORATED
                          QUALCOMM LEGAL COUNSEL
14                        By:  KURT KJELLAND, ESQ.
                          5775 Morehouse Drive
15                        San Diego, California  92121
                          kurtk@qualcomm.com
16

17

18

19   Also Present:  Rene Sanchez, Videographer

20

21

22

23

24

25
```



Case 1:22-cv-01146-MN   Document 439-2   Filed 08/16/24   Page 160 of 194 PageID #: 29352

ZIAD ASGHAR  Conf. AEO - 30b6                    November 08, 2023
ARM, LTD. V. QUALCOMM INC.                                    4

```
 1                        I N D E X

 2    DEPONENT                 EXAMINED BY              PAGE

 3    ZIAD ASGHAR              MR. MUINO                  9

 4

 5

 6    EXHIBITS FOR IDENTIFICATION                       PAGE

 7    Plaintiff's

 8    Exhibit 1       LinkedIn Profile for              14
                      Ziad Asghar
 9
      Exhibit 2       Arm Ltd's First Notice of         29
10                    Deposition of Qualcomm

11    Exhibit 3       Arm Ltd's First Notice of         34
                      Deposition of Nuvia, Inc.
12
      Exhibit 4       Amended and Restated Architecture 36
13                    License Agreement between Arm
                      Limited and Qualcomm Global Trading
14
      Exhibit 5       E-mail to Andy Oberst             75
15                    from Ziad Asghar
                      dated 5/15/2013
16
      Exhibit 6       A document about Arm as a company 76
17                    and looking at what their business
                      model looks like
18
      Exhibit 7       E-mail chain                      87
19                    top e-mail to Akash Palkhiwala
                      dated 3/10/2019
20
      Exhibit 8       E-mail chain                      95
21                    top e-mail to Travis Lanier, et al.
                      dated 9/9/2019
22
      Exhibit 9       Document entitled "ARM            99
23                    alternative strategies"

24    Exhibit 10      E-mail chain                     105
                      top e-mail to Quinn Li, et al.
25                    dated 6/19/2020
```



Case 1:22-cv-01146-MN   Document 439-2   Filed 08/16/24   Page 161 of 194 PageID #: 29353

ZIAD ASGHAR  Conf. AEO - 30b6                    November 08, 2023
ARM, LTD. V. QUALCOMM INC.                                        5

1   EXHIBITS FOR IDENTIFICATION (Cont.)              PAGE

2   Plaintiff's

3   Exhibit 11      E-mail chain                      115
                    top e-mail to Cristiano Amon, et al.
4                   dated 8/27/2020

5   Exhibit 12      E-mail chain                      126
                    top e-mail to Azzedine Touzni, et al.
6                   dated 1/13/2021

7   Exhibit 13      Document entitled "Qualcomm to     140
                    Acquire Nuvia" dated 1/13/2021
8
    Exhibit 14      E-mail chain                      144
9                   top e-mail to Michelle Gerevas
                    dated 2/8/2021
10
    Exhibit 15      E-mail to Rajiv Gupta, et al.     146
11                  from Raghu Sankuratri
                    dated 1/20/2021
12
    Exhibit 16      Letter to Paul Williamson         157
13                  from Ziad Asghar
                    dated 1/27/2021
14
    Exhibit 17      E-mail to Ziad Asghar             167
15                  from Paul Williamson
                    dated 5/18/2021
16
    Exhibit 18      E-mail chain                      171
17                  top e-mail to Rajiv Gupta, et al.
                    dated 7/1/2021
18
    Exhibit 19      Letter to Ziad Asghar             171
19                  from Paul Williamson
                    dated 2/2/2021
20
    Exhibit 20      Letter to Paul Williamson         176
21                  from Ziad Asghar
                    dated 2/3/2021
22
    Exhibit 21      Letter to Paul Williamson         179
23                  from Ziad Asghar
                    dated 2/25/2021
24

25



Case 1:22-cv-01146-MN   Document 439-2   Filed 08/16/24   Page 162 of 194 PageID #: 29354

ZIAD ASGHAR  Conf. AEO - 30b6                         November 08, 2023
ARM, LTD. V. QUALCOMM INC.                                              6

1    EXHIBITS FOR IDENTIFICATION (Cont.)              PAGE

2    Plaintiff's

3    Exhibit 22       Technology License Agreement       184
                      between Arm Limited and Nuvia, Inc.
4
     Exhibit 23       Letter to Paul Williamson           192
5                     from Ziad Asghar
                      dated 3/14/2021
6
     Exhibit 24       E-mail chain                        196
7                     top e-mail from RK Chunduru
                      dated 7/1/2021
8
     Exhibit 25       E-mail chain                        202
9                     top e-mail from Ziad Asghar
                      dated 5/7/2022
10
     Exhibit 26       E-mail to Will Abbey, et al.        205
11                    from Ziad Asghar
                      dated 3/25/2021
12
     Exhibit 27       E-mail chain                        207
13                    top e-mail to Ziad Asghar
                      dated 4/2/2021
14
     Exhibit 28       E-mail to Manu Gulati and           214
15                    Ziad Asghar from Sender Unspecified

16   Exhibit 29       E-mail chain                        216
                      top e-mail to RK Chunduru
17                    dated 4/21/2021

18   Exhibit 30       E-mail chain                        221
                      top e-mail to Cristiano Amon
19                    dated 9/21/2021

20   Exhibit 31       Letter to Gerard Williams III       224
                      from Carolyn Herzog
21                    dated 2/1/2022

22   Exhibit 32       E-mail chain                        227
                      top e-mail to Karl Whealton
23                    dated 3/1/2022

24   Exhibit 33       Global CPU Transition Plan as       243
                      Part of Nuvia
25



Case 1:22-cv-01146-MN   Document 439-2   Filed 08/16/24   Page 163 of 194 PageID #: 29355

ZIAD ASGHAR  Conf. AEO - 30b6                          November 08, 2023
ARM, LTD. V. QUALCOMM INC.                                              7

```
 1    EXHIBITS FOR IDENTIFICATION (Cont.)              PAGE

 2    Plaintiff's

 3    Exhibit 34      E-mail chain                      249
                      top e-mail to Asaf Shen, et al.
 4                    dated 3/9/2022

 5    Exhibit 35      E-mail chain                      252
                      top e-mail to Alex Katouzian
 6                    dated 8/15/2022

 7    Exhibit 36      E-mail chain                      254
                      top e-mail to Ziad Asghar and Jim
 8                    Thompson dated 7/22/2022

 9    Exhibit 37      E-mail chain                      259
                      top e-mail to Ziad Asghar
10                    dated 8/23/2022

11    Exhibit 38      E-mail to Ziad Asghar and Tejas   264
                      Krishnamohan from Sender Unspecified
12
      Exhibit 39      E-mail chain                      269
13                    top e-mail to Ziad Asghar, et al.
                      from Savi Soin
14                    dated 11/21/2022

15

16

17    QUESTIONS INSTRUCTED NOT TO ANSWER:

18       PAGE    LINE

19        13      9

20        29      25

21       184      23

22

23

24

25
```



Case 1:22-cv-01146-MN   Document 439-2   Filed 08/16/24   Page 164 of 194 PageID #: 29356

ZIAD ASGHAR  Conf. AEO - 30b6                          November 08, 2023
ARM, LTD. V. QUALCOMM INC.                                              8

```
 1                    SAN DIEGO, CALIFORNIA

 2             WEDNESDAY, NOVEMBER 8, 2023; 8:39 A.M.

 3

 4        THE VIDEOGRAPHER:  Good morning.  This is tape

 5   No. 1 to the videotaped deposition of Ziad Asghar

 6   testifying in the matter of Arm Limited, a UK

 7   Corporation versus Qualcomm Inc., et al.  This case

 8   is being heard before the United States District

 9   Court for the District of Delaware.  The case number

10   is 22-1146-MN.  This deposition is being held at

11   12531 High Bluff Drive, Suite 100 in San Diego,

12   California 92130.  Today's date is November 8th,

13   2023, and the time is 8:39 a.m. Pacific Standard

14   Time.

15             My name is Rene Sanchez and I'm the

16   videographer here with our court reporter Kim

17   Reichert.  Would counsel please introduce yourselves

18   and your affiliations and the witness will be sworn.

19        MR. MUINO:  Daniel Muino of Morrison & Foerster

20   for plaintiff Arm Limited.

21        MR. BRALY:  Jacob Braly with Paul, Weiss for

22   defendants and the witness.  With me are Catherine

23   Nyarady, also from Paul, Weiss, and Kurt Kjelland

24   from Qualcomm.

25   ///
```



```
 1                          ZIAD ASGHAR,

 2                deponent, was sworn and examined

 3                    and testified as follows:

 4

 5        THE REPORTER:  Mr. Asghar, will you raise your

 6   right hand for me, please.  Do you solemnly state

 7   that the evidence you shall give in this matter now

 8   pending shall be the truth, the whole truth and

 9   nothing but the truth so help you God?

10        THE WITNESS:  I do.

11

12                          EXAMINATION

13   BY MR. MUINO:

14        Q     Good morning, Mr. Asghar.

15        A     Good morning.

16        Q     Could you please state your name for the

17   record?

18        A     Ziad Asghar.

19        Q     What is your current address?

20        A     My current home address is

21

22        Q     Are you currently employed by Qualcomm?

23        A     I am.

24        Q     And what is your current position at

25   Qualcomm?
```



Case 1:22-cv-01146-MN   Document 439-2   Filed 08/16/24   Page 166 of 194 PageID #: 29358

ZIAD ASGHAR  Conf. AEO - 30b6                                    November 08, 2023
ARM, LTD. V. QUALCOMM INC.                                                    10

 1        A    My current position is SVP product

 2   management or senior V.P. of product management.

 3        Q    Is that for a specific Qualcomm product,

 4   like the Snapdragon product?

 5        A    So my role is horizontally across the

 6   company, which means my team creates all the

 7   technology IPs from a product perspective for all

 8   the different businesses that Qualcomm operates in

 9   for application process and technology.

10        Q    Have you ever had your deposition taken

11   before?

12        A    I have.

13        Q    How many times?

14        A    If I recall, once.

15        Q    When was that?

16        A    I believe it was during COVID times, so

17   I'm not exactly sure, but a couple years plus.

18        Q    2020?

19        A    I don't remember exactly.  I think about

20   '20, '21.

21        Q    Do you recall which case that was?

22        A    This was a case that had to do with one of

23   our -- a case that had to do with Samsung.

24        Q    You were testifying in your capacity as

25   your position at Qualcomm?



```
 1        A     Yes.

 2        Q     Do you recall the -- in a general sense

 3   the nature of the case?

 4        A     It's been a little while, but it had to do

 5   with process technology.

 6        Q     Was Qualcomm the plaintiff or the

 7   defendant in the case?

 8        A     I think we were neither from what I

 9   recall, but it's been a while.

10        Q     Apart from that, have you had your

11   deposition taken on other occasions?

12        A     No.

13        Q     Have you ever testified in court?

14        A     No, I haven't.

15        Q     So you might remember from your last

16   experience, but the basic ground rule here is that

17   you and I should try to avoid speaking over one

18   another so the court reporter can take down

19   everything that we're saying.  So, if you give me a

20   chance to finish my questions, I'll give you a

21   chance to answer fully; is that okay?

22        A     Sounds good.

23        Q     From time to time counsel might object to

24   a question that I ask.  Unless he instructs you not

25   to answer a question, you should go ahead and answer
```



Case 1:22-cv-01146-MN   Document 439-2   Filed 08/16/24   Page 168 of 194 PageID #: 29360

ZIAD ASGHAR  Conf. AEO - 30b6                         November 08, 2023
ARM, LTD. V. QUALCOMM INC.                                          12

```
 1   to the best of your ability.

 2           Do you understand that?

 3       A    I understand.

 4       Q    I usually take breaks about every hour.

 5   If you need a break in between, just let me know.  I

 6   understand we will do a short lunch break today and

 7   I know there's an hour period where you need to have

 8   a meeting, so we will respect that time as well.

 9       A    I appreciate it.

10       Q    Is there any reason that you can't give

11   full and complete testimony today?

12       A    Shouldn't be any reason.

13       Q    Did you do anything to prepare for today's

14   deposition?

15       A    I had a discussion with my lawyers.

16       Q    And which lawyers did you have a

17   discussion with?

18       A    All three of them here.

19       Q    How many occasions did you meet with them?

20       A    Just once.

21       Q    When was that?

22       A    Monday.

23       Q    How long did that last?

24       A    A few hours.

25       Q    Did you review any documents to prepare
```



```
 1   for your deposition today?
 2       A    We went through the information for some
 3   related information, yes.
 4       Q    Which information did you go through?
 5       MR. BRALY:  I'm going to caution you not to
 6   reveal anything that we discussed in the course of
 7   our prep on Monday.
 8   BY MR. MUINO:
 9       Q    I'm just looking for the identity of
10   documents that you looked at without revealing
11   anything that you discussed with the attorneys.
12       MR. BRALY:  I'm going to instruct you not to
13   answer that question.
14   BY MR. MUINO:
15       Q    Are you going to follow counsel's
16   instruction?
17       A    I will.
18       Q    Do you recall, were there any documents
19   that you reviewed that refreshed your recollection?
20       A    Not much really.
21       Q    Do you remember how many documents you
22   looked at?
23       A    I don't remember how many in number.  We
24   reviewed a few documents.
25       Q    Apart from the meeting on Monday with
```



Case 1:22-cv-01146-MN  Document 439-2  Filed 08/16/24  Page 170 of 194 PageID #: 29362

ZIAD ASGHAR  Conf. AEO - 30b6                          November 08, 2023
ARM, LTD. V. QUALCOMM INC.                                          14

```
 1   counsel, did you meet with or discuss or have

 2   discussions with anyone else to prepare for today's

 3   deposition?

 4        A    No.

 5        Q    Did you speak with anyone else at the

 6   company about their depositions?

 7        A    No.

 8        Q    You're aware that others at Qualcomm have

 9   had their depositions taken in connection with this

10   case?

11        A    Yes.

12        Q    You haven't had a chance to speak with any

13   of the others about their depositions?

14        A    No.

15        MR. MUINO:  I'd like to mark as Exhibit 1 some

16   content from your LinkedIn page.  This will be

17   Asghar Exhibit 1.

18                  (Plaintiff's Exhibit 1 was marked for

19   identification by the deposition officer and is

20   attached hereto.)

21   BY MR. MUINO:

22        Q    Mr. Asghar, do you recognize this as

23   content from your LinkedIn page?

24        A    Yes, seems like it.

25        Q    And I'm just going to use this to help us
```



Case 1:22-cv-01146-MN   Document 439-2   Filed 08/16/24   Page 171 of 194 PageID #: 29363

ZIAD ASGHAR  Conf. AEO - 30b6                           November 08, 2023
ARM, LTD. V. QUALCOMM INC.                                            15

1   go through your background.  I'd like to go to the

2   "Education" portion first on the second page.  So it

3   says here you obtained a Master's of Science degree

4   in electrical engineering from Purdue University; is

5   that correct?

6        A    That's correct.

7        Q    That was in 1997?

8        A    That's right.

9        Q    You attended the UC San Diego and you

10  obtained an MBA in 2006; is that correct?

11       A    That's right.

12       Q    You also obtained a Master's of Science

13  degree in telecommunications engineering from

14  Southern Methodist University in 2000; is that

15  correct?

16       A    That's right.

17       Q    I'm doing this out of order.  Then

18  University of Alabama, Bachelor of Science in

19  electrical engineering.  You obtained that degree in

20  1996?

21       A    That's correct.

22       Q    Your time as a student at any of these

23  institutions, did you study anything or learn

24  anything about Arm technology, do you recall?

25       A    I don't recall.



 1        Q     At the time --

 2        A     It's been a little while.

 3        Q     Understood.  At the time do you recall if

 4   you were aware of Arm the company or its technology?

 5        A     Not as much really, not that I recall.

 6        Q     I'd like to take a look at your

 7   professional experience, and let's do it backwards.

 8   Let's start on the second page.  Texas Instruments,

 9   it says here you were a senior systems engineer and

10   project lead from October 2000 to January 2007; is

11   that correct?

12        A     Yes.

13        Q     And, generally speaking, what were your

14   responsibilities in that role?

15        A     This was communications systems

16   engineering work for cellular standards.

17        Q     Was this related to any particular TI

18   products?

19        A     Yes, this was related to TI products for

20   the cellular market.

21        Q     Did your work at TI in this time frame

22   involve any Arm technology?

23        A     No, I was more focused on the

24   communications aspect of it, which was different.

25        Q     Were you aware -- was TI an Arm licensee?



Case 1:22-cv-01146-MN   Document 439-2   Filed 08/16/24   Page 173 of 194 PageID #: 29365

ZIAD ASGHAR  Conf. AEO - 30b6                    November 08, 2023
ARM, LTD. V. QUALCOMM INC.                                      17

1        A     Yes.

2        Q     At the time, though, you weren't working

3   on Arm technology?

4        A     No.

5        Q     All right.  If we go up, the next position

6   here is "3G R&D Texas Instruments, Inc."

7              Do you see that?

8        A     Uh-huh.

9        Q     What is 3G R&D?

10       A     3G is third-generation wireless standards

11   research and development.

12       Q     Was that a different role than the first

13   role that we talked about at TI?

14       A     It is an extension of that role still in

15   te cellular technology domain.

16       Q     Generally speaking -- let me back up.  The

17   title that you had here was "Systems Engineering

18   Team Manager."

19              Do you see that?

20       A     Yes.

21       Q     And generally speaking, what were your

22   responsibilities in that role?

23       A     I had a small team that was working on

24   developing UMTS modem algorithms.

25       Q     Modem?



Case 1:22-cv-01146-MN   Document 439-2   Filed 08/16/24   Page 174 of 194 PageID #: 29366

ZIAD ASGHAR  Conf. AEO - 30b6                        November 08, 2023
ARM, LTD. V. QUALCOMM INC.                                          18

1        A    UMTS modem, yes.

2        Q    In that role were you working with Arm

3    technology?

4        A    No.

5        Q    Okay.  Next on the list chronologically,

6    still at Texas Instruments, this is "Operator and

7    Strategy Manager."

8             Do you see that?

9        A    Yes.

10       Q    And you held that position from June 2007

11   to September 2008; is that correct?

12       A    Yes, that's right.

13       Q    Generally, what were your responsibilities

14   in that role?

15       A    It was to take cellular technologies and

16   actually work with operators to get them deployed,

17   essentially.

18       Q    And again, did that position have any

19   connection to Arm technology?

20       A    No.

21       Q    The next position here, and it appears the

22   last position you held at Texas Instruments, was

23   "OMAP Platform Manager"?

24       A    That's right.

25       Q    Do you see that?



1      A     Uh-huh.

2      Q     You held that position from October 2008

3  to March 2010; is that correct?

4      A     That's correct.

5      Q     What does OMAP stand for?

6      A     OMAP is an application processor for

7  smartphones.

8      Q     And what were your responsibilities in

9  that position?

10      A     So here, basically I had transitioned to

11  product management work, so think of it as me

12  defining the features and capabilities of this

13  application processor.

14      Q     Did that work pertain to Arm technology in

15  any way?

16      A     Arm technology was used in this

17  application processor.

18      Q     How was Arm technology used?

19      A     So in a typical application processor you

20  have multiple blocks.  You might have a camera unit,

21  video, a CPU, a graphics unit and so on and so

22  forth.  The CPU was licensed from Arm.

23      Q     Do you remember which Arm CPU you were

24  licensing for that purpose?

25      A     It's been a little while.  I don't recall



Case 1:22-cv-01146-MN  Document 439-2  Filed 08/16/24  Page 176 of 194 PageID #: 29368

ZIAD ASGHAR  Conf. AEO - 30b6                    November 08, 2023
ARM, LTD. V. QUALCOMM INC.                                     20

```
 1   at this time, no.

 2       Q    What role did you have in connection with

 3   that Arm processor that was being used?

 4       A    So my role was more on the chip or product

 5   that TI was creating at that time.  It was about

 6   what should be the capabilities of that CPU as it's

 7   implemented by Texas Instruments, which would be,

 8   you know, radius capabilities of processor, the Fmax

 9   and other things.

10       Q    Did you have any responsibility with

11   respect to the Arm license that TI had?

12       A    I did not.

13       Q    At the time, had you seen TI's Arm

14   license?

15       A    I hadn't.

16       Q    All right.  After Texas Instruments you

17   went to work for Qualcomm; is that right?

18       A    That's right.

19       Q    You started out as a "Staff Manager, QCT

20   Strategy"; is that correct?

21       A    That's correct.

22       Q    You held that position from April 2010 to

23   September 2011; is that right?

24       A    That's correct.

25       Q    Why did you decide to join Qualcomm in
```



Case 1:22-cv-01146-MN   Document 439-2   Filed 08/16/24   Page 177 of 194 PageID #: 29369

ZIAD ASGHAR  Conf. AEO - 30b6                          November 08, 2023
ARM, LTD. V. QUALCOMM INC.                                            21

```
 1   2010?
 2        A    Qualcomm had a lot of promise.  It had
 3   great technology, and TI at that point in time was
 4   transitioning away from wireless, at least that was
 5   my reading.
 6        Q    What does QCT stand for?
 7        A    Qualcomm CDMA Technologies.
 8        Q    What were your responsibilities in that
 9   role?
10        A    At this point in time, I was in a team
11   that was working on competitive analysis of these
12   chips that were provided for the smartphone space.
13        Q    Competitive analysis you said?
14        A    Uh-huh.
15        Q    Do you recall who Qualcomm's competitors
16   were in that space?
17        A    There were a lot at that time, but
18   companies like Texas Instruments, Broadcom, Ramsys,
19   STRX, and so on.
20        Q    In that role did you have any involvement
21   with Arm technology?
22        A    No.
23        Q    Were you aware at that time that Qualcomm
24   had Arm licenses?
25        A    Yes, I was.
```



1    Q    But at the time you didn't have any

2    involvement in connection with those licenses?

3         A    No.

4         Q    Who were you reporting to when you were a

5    staff manager for QCT strategy?

6         A    At that time I was reporting to Keith

7    Kressin.

8         Q    Do you know what his position was?

9         A    I believe he was -- at that time when I

10   joined, he was senior director of QCT strategy.

11        Q    Of QCT strategy?

12        A    Yes, same job function.

13        Q    The next position that you held at

14   Qualcomm was "Director of QCT Strategy"; is that

15   correct?

16        A    That's right.

17        Q    And did you take over Mr. Kressin's

18   position?

19        A    Not at this time.

20        Q    You held that director position from

21   October 2011 to April 2014; is that correct?

22        A    That's right.

23        Q    And what were your responsibilities in

24   that role?

25        A    It was still the competitive analysis



Case 1:22-cv-01146-MN   Document 439-2   Filed 08/16/24   Page 179 of 194 PageID #: 29371

ZIAD ASGHAR  Conf. AEO - 30b6                        November 08, 2023
ARM, LTD. V. QUALCOMM INC.                                          23

 1  role, but expanded to have a larger team.

 2      Q    Who were you reporting to when you were in

 3  that position?

 4      A    I believe I was still reporting to Keith.

 5      Q    In that role, did you have any involvement

 6  with Arm or Arm technology?

 7      A    Not that I recall.

 8      Q    The next position listed here is "Senior

 9  Director, QCT Strategy"; is that correct?

10      A    That's correct.

11      Q    And you held that position from May 2014

12  to April 2017; is that correct?

13      A    That's right.

14      Q    What were your responsibilities in that

15  role?

16      A    Still focused on competitive analysis,

17  but, of course, helping define product for Qualcomm

18  along with the competitor work.

19      Q    Any involvement with Arm or Arm technology

20  in that time frame?

21      A    I may have been in meetings, but I don't

22  recall exactly at this point in time.

23      Q    Did your work in that role of senior

24  director, did it involve the Arm licenses or license

25  technology?



1        A     At this time, no.

2        Q     And who did you report to when you held

3    that position?

4        A     I'm not exactly sure when, but at some

5    point in time Keith moved away.  I don't know when

6    that transition happened and I had other managers in

7    the interim.

8        Q     Do you remember which other managers you

9    had?

10       A     I don't really remember all of them, but

11   one of them was Andy Oberst for a little bit and

12   then he moved on.

13       Q     Can you spell that last name?

14       A     O-b-e-r-s-t.

15       Q     All right.  It states your next position

16   was "Vice President, Product Management, Snapdragon

17   Roadmap & Application Processor Technologies;" is

18   that correct?

19       A     That's right.

20       Q     It says you held that position from

21   April 2017 to November 2022; is that correct?

22       A     That's right.

23       Q     What were your responsibilities in that

24   role?

25       A     Yeah, in this role I was in charge of what



Case 1:22-cv-01146-MN   Document 439-2   Filed 08/16/24   Page 181 of 194 PageID #: 29373

ZIAD ASGHAR  Conf. AEO - 30b6                          November 08, 2023
ARM, LTD. V. QUALCOMM INC.                                              25

 1  we call Roadmap planning, which means all the

 2  different chips that we do, and also looking at the

 3  application processor technologies from a product

 4  management perspective.

 5       Q    When you say "All the different chips that

 6  we do," what are you referring to?

 7       A    So Qualcomm creates chips or silicon

 8  products for different markets and, like I explained

 9  earlier, we have different technologies that go into

10  these chips.  So my role was defining exactly which

11  technologies would go into each and every chip.

12       Q    And is that -- you had responsibility at

13  that point for all of the chips that Qualcomm

14  manufactured?

15       A    I think at the beginning it was just on

16  the handset or the smartphone side, but later on it

17  went into -- I don't know when exactly, but covering

18  most of the chips that Qualcomm does.

19       Q    The Snapdragon chip, is that a chip for

20  mobile devices?

21       A    Snapdragon is a marketing brand which goes

22  across mobile, PC and other markets, not just for

23  handset.

24       Q    One of your responsibilities as VP of

25  product management was for the Snapdragon family of



Case 1:22-cv-01146-MN   Document 439-2   Filed 08/16/24   Page 182 of 194 PageID #: 29374

ZIAD ASGHAR  Conf. AEO - 30b6                                    November 08, 2023
ARM, LTD. V. QUALCOMM INC.                                                    26

 1   products?

 2        A    That's right.

 3        Q    Now, during this time did you have

 4   involvement with Arm or Arm technology?

 5        A    Yes.

 6        Q    What involvement did you have with Arm at

 7   this time?

 8        A    Just like when I'm defining these

 9   products, I have all these technologies that go in

10   them.  One of them is the CPU and the CPU is

11   licensed from Arm.

12        Q    Part of your role was interacting with Arm

13   to license their technology for Qualcomm's purposes?

14        A    Yes.

15        Q    And were you the lead person at Qualcomm

16   with respect to interacting with Arm?

17        MR. BRALY:  Objection --

18   BY MR. MUINO:

19        Q    You can answer.

20        A    Like I explained, I had a previous manager

21   who used to be doing this role so I'm not exactly

22   sure when the transition happened, but somewhere

23   around the role I was one of the people involved in

24   the licensing with Arm, one of the team because it's

25   a large team that works on this.



Case 1:22-cv-01146-MN   Document 439-2   Filed 08/16/24   Page 183 of 194 PageID #: 29375

ZIAD ASGHAR  Conf. AEO - 30b6                               November 08, 2023
ARM, LTD. V. QUALCOMM INC.                                                 27

1      Q      Other than you, who else at Qualcomm was

2   involved in interacting with Arm with respect to

3   licensing technology?

4      A      We had product management team members,

5   engineering team members, and we had contract team

6   members and legal team members.

7      Q      And in a hierarchal sense, were you the

8   lead over the other guys or was this a horizontal

9   structure?

10     A      More horizontal structure.

11     Q      The last position that's listed here for

12   Qualcomm is "Senior Vice President Product

13   Management, Snapdragon Application Processor

14   Technologies & Roadmap"; is that correct?

15     A      Yes.

16     Q      You held that position from November of

17   2022 to the present; is that right?

18     A      That's right.

19     Q      That's your position today?

20     A      Yes.

21     Q      Your responsibilities in that role, are

22   they the same as the vice president

23   responsibilities?

24     A      Pretty much.

25     Q      Did they change in any way?



1      A      A lot more focused on other technologies,

2  working on artificial intelligence and really

3  bringing those capabilities out to the market.

4      Q      In your position -- as your previous

5  position as vice president product management, who

6  were you reporting to?

7      A      In my role as vice president, the last

8  before I transitioned to senior V.P., I was

9  reporting to Chris Patrick.

10     Q      What was Mr. Patrick's position?

11     A      SVP and GM, I believe product management.

12     Q      And in your present role as SVP of product

13  management, who do you report to?

14     A      I report to Durga Malladi now.

15     Q      Durga Malladi you said?

16     A      Yes.

17     Q      How do you spell the last name?

18     A      M-a-l-l-a-d-i.

19     Q      Is that a man or a woman?

20     A      It's a man.

21     Q      What is his position?

22     A      SVP and GM product management.

23     Q      At the top of this LinkedIn page it also

24  says that you're a board member of EvoNexus; is that

25  right?



Case 1:22-cv-01146-MN   Document 439-2   Filed 08/16/24   Page 185 of 194 PageID #: 29377

ZIAD ASGHAR  Conf. AEO - 30b6                    November 08, 2023
ARM, LTD. V. QUALCOMM INC.                                      29

```
 1        A     That's right.

 2        Q     What is EvoNexus?

 3        A     EvoNexus is a -- I think of it as an

 4   incubator that actually incubates new startups.

 5        Q     Is that connected to Qualcomm in any way?

 6        A     No, it's a local San Diego incubator.

 7        Q     You've held that position since August of

 8   2022; is that correct?

 9        A     That's right.

10        Q     And you still hold that position?

11        A     That's right.

12        Q     Do you own any Qualcomm stock?

13        A     Yes, I do.

14        MR. MUINO:  I'd like to mark as Exhibit 2 "ARM

15   LTD's First Notice of Deposition of Qualcomm, Inc.

16   and Qualcomm Technologies, Inc. Pursuant to Federal

17   Rule of Civil Procedure 30(b)(6)."

18                   (Plaintiff's Exhibit 2 was marked for

19   identification by the deposition officer and is

20   attached hereto.)

21   BY MR. MUINO:

22        Q     Mr. Asghar, have you seen this document

23   before?

24        A     I haven't.

25        Q     This wasn't a document you reviewed in
```



Case 1:22-cv-01146-MN   Document 439-2   Filed 08/16/24   Page 186 of 194 PageID #: 29378

ZIAD ASGHAR  Conf. AEO - 30b6                           November 08, 2023
ARM, LTD. V. QUALCOMM INC.                                           30

```
 1   preparation for today?
 2        MR. BRALY:  Don't answer that question.
 3   BY MR. MUINO:
 4        Q    Are you going to follow your counsel's
 5   instruction?
 6        A    I will.
 7        Q    You said you don't recall having seen this
 8   document before; right?
 9        A    No.
10        Q    I'd like to turn to page 8.  Mr. Asghar,
11   you understand that you have been designated by
12   Qualcomm to testify on behalf of the company
13   regarding certain topics today.  Do you understand
14   that?
15        A    I do.
16        Q    I want to just go through the topics to
17   confirm these are the topics you're prepared to
18   testify on.  The first I understand is topic 15 that
19   starts on the top of page 8.  It says:
20                   "Qualcomm's attempts to develop
21              Arm-compatible cores and chipsets
22              under Qualcomm ALA prior to
23              Qualcomm's acquisition of Nuvia,
24              including for each such attempt the
25              timeline, Qualcomm's investment
```



Case 1:22-cv-01146-MN   Document 439-2   Filed 08/16/24   Page 187 of 194 PageID #: 29379

ZIAD ASGHAR  Conf. AEO - 30b6                          November 08, 2023
ARM, LTD. V. QUALCOMM INC.                                          31

```
 1                (money and resources), the personnel
 2                involved, the outcome and an
 3                identification of any commercialized
 4                product(s) developed."
 5                Do you see that?
 6        A       I do.
 7        Q       And are you prepared to testify on that
 8    topic today?
 9        A       Yes, as much as I recall.
10        Q       Topic 16 is the second one, and it says:
11                "Qualcomm's acquisition of
12                Nuvia, including the timeline for
13                the acquisition, Qualcomm's reasons
14                for the acquisition and the terms
15                and conditions of the acquisition."
16                You are prepared to testify on that topic
17    today?
18        A       Yes.
19        Q       The third topic is Topic 20.  And it says:
20                "Qualcomm's development of any
21                products or technology using or
22                based on any products or technology
23                acquired from Nuvia based on
24                Qualcomm's acquisition of Nuvia."
25                You are prepared to testify on that topic
```



Case 1:22-cv-01146-MN   Document 439-2   Filed 08/16/24   Page 188 of 194 PageID #: 29380

ZIAD ASGHAR  Conf. AEO - 30b6                          November 08, 2023
ARM, LTD. V. QUALCOMM INC.                                            32

```
 1   today?
 2        A    Yes.
 3        Q    The next topic is on page 12.  It's Topic
 4   29 and it is:
 5                   "Qualcomm's or Nuvia's business
 6              plans and timeline for the Nuvia
 7              technology and Nuvia-based products
 8              including how, if at all, those
 9              business plans changed following
10              Arm's termination of the Nuvia ALA."
11        A    Yes.
12        Q    You are prepared to testify on that topic
13   today?
14        A    Yes.
15        Q    The next topic is 30.  And it is:
16                   "Qualcomm's or Nuvia's
17              development plans and timeline for
18              the Nuvia technology and Nuvia-based
19              products including how, if at all,
20              those development plans changed
21              following Arm's termination of the
22              Nuvia ALA."
23              You are prepared to testify on that topic
24   today?
25        A    Yes.
```



Case 1:22-cv-01146-MN   Document 439-2   Filed 08/16/24   Page 189 of 194 PageID #: 29381

ZIAD ASGHAR  Conf. AEO - 30b6                                    November 08, 2023
ARM, LTD. V. QUALCOMM INC.                                                     33

```
 1      Q    The next topic is Topic 31.  It is:
 2                 "Qualcomm's or Nuvia's
 3            commercialization of the Nuvia
 4            technology and Nuvia-based products,
 5            including, without limitation, the
 6            timeline for commercialization, any
 7            verification process for such
 8            products, and the manufacture of any
 9            such commercial products."
10            You are prepared to testify on that topic
11   today?
12      A    Yes.
13      Q    Next topic is 33.  It is:
14                 "Qualcomm's or Nuvia's
15            sampling, attempts to achieve design
16            wins, achieved design wins,
17            attempted sales, sales, and
18            distribution of the Nuvia technology
19            and Nuvia-based products."
20            You're prepared to testify on that topic
21   today?
22      A    Yes, as much as I recall.
23      Q    And the last topic for this notice is
24   Topic 36, which is:
25
```



Case 1:22-cv-01146-MN   Document 439-2   Filed 08/16/24   Page 190 of 194 PageID #: 29382

ZIAD ASGHAR  Conf. AEO - 30b6                    November 08, 2023
ARM, LTD. V. QUALCOMM INC.                                    34

1      ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2      ▮▮▮▮▮▮ ▮▮▮▮ ▮▮▮▮

3      ▮▮▮▮ ▮▮▮▮▮▮▮

4      ▮▮▮▮▮▮▮▮▮▮

5      ▮▮▮▮▮▮▮▮▮▮▮▮

6      ▮▮▮▮

7      You are prepared to testify on that topic

8 today?

9     A   Yes.

10     MR. BRALY:  I just want to put on the record

11 that we reserve our objections to all of the

12 30(b)(6) topics as stated in our responses and

13 objections.

14     MR. MUINO:  Mr. Asghar, I want to show you a

15 second deposition notice.  We'll do this one faster.

16 This will be Asghar Exhibit 3, and it is "ARM, LTD's

17 First Notice of Deposition of Nuvia, Inc. Pursuant

18 to Federal Rule of Civil Procedure 30(b)(6)."

19         (Plaintiff's Exhibit 3 was marked for

20 identification by the deposition officer and is

21 attached hereto.)

22 BY MR. MUINO:

23     Q   Do you understand, Mr. Asghar, that you

24 have been designated to testify on certain topics

25 set forth in this document as well?



Case 1:22-cv-01146-MN   Document 439-2   Filed 08/16/24   Page 191 of 194 PageID #: 29383

ZIAD ASGHAR  Conf. AEO - 30b6                          November 08, 2023
ARM, LTD. V. QUALCOMM INC.                                        35

```
 1        A     As 30(b)(6), yes.

 2        Q     And I'll direct you to those topics.

 3   They're largely similar to the ones we just read, so

 4   I won't read them into the record, but I'll ask you

 5   to read them to yourself.  If we could look at Topic

 6   No. 12, please, just read that to yourself.

 7        A     Yes.

 8        Q     Topic 16 on page 9, if you could read that

 9   to yourself.

10        A     Yes.

11        Q     Topic 25 on page 11, if you could read

12   that one to yourself.

13        A     Yes.

14        Q     Topic 26 on that same page.

15        A     Yes.

16        Q     Topic 27 on that same page.

17        A     Yes.

18        Q     And Topic 32 on page 12, please.

19        A     Yes.

20        Q     You understand that you have been

21   designated to testify on these topics 12, 16, 25,

22   26, 27, and 32; correct?

23        A     Yes.

24        Q     And are you prepared to do so today?

25        A     Yes.
```



Case 1:22-cv-01146-MN   Document 439-2   Filed 08/16/24   Page 192 of 194 PageID #: 29384

ZIAD ASGHAR  Conf. AEO - 30b6                                    November 08, 2023
ARM, LTD. V. QUALCOMM INC.                                                      36

```
 1        MR. BRALY:  We also reserve our objections on
 2   the 30(b)(6) topics as stated in our responses and
 3   objections.
 4        MR. MUINO:  All right.  I'm going to mark the
 5   next exhibit.  This will be Exhibit 4, which is a
 6   document that starts with Bates label ARM_55357, and
 7   it is the "Amended and Restated Architecture License
 8   Agreement Between Arm and Qualcomm."
 9                  (Plaintiff's Exhibit 4 was marked for
10   identification by the deposition officer and is
11   attached hereto.)
12        MR. BRALY:  I also want to state on the record
13   for the 30(b)(6) topics, we're not going to object
14   to scope for the questions, but we're reserving the
15   right to those objections as well.
16   BY MR. MUINO:
17        Q    Mr. Asghar, do you recognize this
18   document?
19        MR. BRALY:  Do we have an agreement on that?
20        MR. MUINO:  Yes.
21        MR. BRALY:  Okay.
22        THE WITNESS:  I've seen parts of it because I'm
23   more focused on the product side, which is the
24   financial part of it.
25   ///
```



1  BY MR. MUINO:

2      Q    You have reviewed this ALA before, at

3  least parts of it?

4      A    Limited parts of it.

5      Q    Do you recall when you first reviewed some

6  parts of the ALA?

7      A    I don't know the exact date.  I don't

8  recall.

9      Q    And when you did review parts of this

10  Qualcomm ALA, which parts did you review, do you

11  recall?

12      A    Yes, since I'm on the product side,

13  typically I'm focused on the financial terms.

14      Q    Financial terms, you mean -- what do you

15  mean by that?

16      A    Royalty rates and so on.

17      Q    What was your purpose for reviewing those

18  parts of the ALA?

19      A    In creating the CPU technology Roadmap for

20  Qualcomm, we, of course, want to understand

21  everything about that technology in terms of how

22  much would it cost us to be able to commercialize

23  the product base.

24      Q    You need to know the royalty rates under

25  this agreement; correct?



```
 1        A     (Witness nods head.)

 2        Q     Is that correct?

 3        A     Yes.

 4        Q     We'll refer to this today as "the Qualcomm

 5   ALA"; is that okay?

 6        A     Sure.

 7        Q     The effective date of this ███████████

 8   █████████████████████████████████████████  ███████

 9        Do you see that at the very top?

10        A     ██████████.

11        Q     It says ████████ at the top.  The first

12   sentence says:

13                      ████████████████████████

14               █████████████████████████████████████

15               ████████████████████████████████████

16               ██████████

17        A     Sure.

18        Q     Do you see that?  At that time, May 30th,

19   2013, you were the director of QCT strategy.  Does

20   that sound right?

21        A     Yes.

22        Q     Were you involved in the negotiation with

23   Arm for this ALA?

24        A     No, I wasn't.

25        Q     Do you know who was involved on the
```

