IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARM LTD., a U.K. corporation, | |
| Plaintiff, | |
| v. | C.A. No. 22-1146-MN |
| QUALCOMM INC., a Delaware corporation, QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, and NUVIA, INC., a Delaware corporation, | **REDACTED - PUBLIC VERSION** **(Filed August 28, 2024)** |
| Defendants. | |

**<u>ARM LTD'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>**

OF COUNSEL:

Daralyn Durie
Joyce Liou
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
jliou@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Kyle W.K. Mooney
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
(212) 336-4092
kmooney@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Daniel P. Muino
MORRISON & FOERSTER LLP
2100 L Street, NW
Suite 900
Washington, D.C. 20037
(202) 887-1501
dmuino@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Blvd.
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Plaintiff Arm Ltd.*

Dated: August 21, 2024

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ......................................................................................................... 1

II.   ARGUMENT .............................................................................................................. 2

    A.    The Court Should Grant Summary Judgment That Arm Properly Terminated the
         Nuvia ALA. ........................................................................................................ 2

        1.    Arm's Termination Arises from Undisputed Facts.............................................. 2

        2.    Qualcomm's Waiver Argument Does Not Create a Genuine Dispute of
             Material Fact. ...................................................................................................... 3

        3.    Termination Was Not Legally Limited, and Was Proper Anyway...................... 4

    B.    The Court Should Grant Summary Judgment That Arm Did Not Breach the Nuvia
         ALA and TLA. .................................................................................................... 6

    C.    The Court Should Grant Summary Judgment That Defendants Breached
         ███████    of the Nuvia ALA. ................................................................... 7

        1.    The Key Material Facts are Not Disputed. ......................................................... 7

        2.    Qualcomm's Arguments are Fundamentally Inconsistent with the Purpose
             and Structure of the Nuvia ALA. ...................................................................... 8

        3.    Nuvia's RTL is a ███████ of the ARM Technology. ................................. 10

        4.    References to ███████ Are Irrelevant........................................................... 11

        5.    Qualcomm's Contribution of Code Beyond Nuvia's RTL Does Not
             Avoid a Breach. ............................................................................................... 12

        6.    The Architecture Reference Manual Is ARM Technology, Even if Publicly
             Available. ......................................................................................................... 13

        7.    Nuvia's Designs are Subject to ███████ ...................................................... 14

        8.    Qualcomm's Argument That the Nuvia Code Was Not Yet a "Product"
             Does Not Create a Genuine Dispute of Material Fact. ...................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Carma Devs. (Cal.), Inc.* v. *Marathon Dev. Cal., Inc.*,
 2 Cal. 4th 342 (1992) ........................................................................................................5

*DuBeck v. Cal. Physicians' Serv.*,
 234 Cal. App. 4th 1254 (2015) .........................................................................................4

*H-D Mich., LLC v. Hellenic Duty Free Shops S.A.*,
 694 F.3d 827 (7th Cir. 2012) ............................................................................................5

*Hammerling v. Google, LLC*,
 No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024)................................................14

*Hersch v. Citizens Sav. & Loan Ass'n*,
 146 Cal. App. 3d 1002 (1983) ..........................................................................................4

*Int'l Fruit Genetics, LLC v. P.E.R. Asset Mgmt. Tr.*,
 No. 14-cv-05273-ODW(MRW), 2016 U.S. Dist. LEXIS 53232
 (C.D. Cal. Apr. 20, 2016)..................................................................................................4

*Jam Transp. Inc. v. Harleysville Mut. Ins. Co.*,
 937 F. Supp. 2d 532 (D. Del. 2013)..................................................................................3

*Kendall* v. *Ernest Pestana, Inc.*,
 40 Cal. 3d 488 (1985) .......................................................................................................5

*San Pablo Bay Pipeline Co. v. Pub. Utils. Comn'n*,
 221 Cal. App. 4th 1436 (2013) .......................................................................................11

*Smith v. NBC Universal*,
 524 F. Supp. 2d 315 (S.D.N.Y. 2007)..............................................................................7

*Third Story Music, Inc. v. Waits*,
 41 Cal. App. 4th 798 (1995) .............................................................................................5

*Wind Dancer Prod. Grp.* v. *Walt Disney Pictures*,
 10 Cal. App. 5th 56 (2017) ..........................................................................................3, 4

**Statutes**

Cal. Civ. Code § 1531....................................................................................................................4

## I.    INTRODUCTION

The Court should grant summary judgment that Arm properly terminated the Nuvia ALA. The key facts sufficient to satisfy ███████████████ are not disputed. There is no "reasonableness" requirement in ██████████ and Arm's refusal to consent to assignment was reasonable in any event, based on undisputed facts. Arm did not waive its right to terminate. Instead, Arm reserved its rights, Qualcomm expressly acknowledged that reservation, and ████████████ no waiver" clause precludes Qualcomm's waiver argument regardless.

The Court should also grant summary judgment on Qualcomm's counterclaims. Arm's use of Nuvia's suggestions regarding Arm's CMN product was licensed as both █████ under the Nuvia TLA and █████████ under the Nuvia ALA. Arm's running of a █████ in April 2022 to uncover Qualcomm's misconduct was not misuse of Nuvia's configuration file, and Qualcomm has no damages that might support its claim in any event.

Finally, the Court should grant summary judgment that Defendants breached ███████████ of the Nuvia ALA. Nuvia's pre-acquisition RTL code falls within the scope of the termination provisions based on the language of ████████████████ and the relevant Annex, along with the parties' unambiguous negotiation history. Upon termination, ██████████████ bars any further use of derivatives of ARM Technology or ARM Confidential Information, or products embodying either. The relevant language admits no exceptions, regardless of whether Defendants wrote additional RTL, added features, or continued work under a separate ALA. Undisputed facts establish that, after termination, Defendants continued to use Nuvia's pre-acquisition RTL in their cores. Nothing more is needed for summary judgment that Defendants breached the termination provisions, regardless of whether there may be disputes about the scope of Defendants' continuing use, because the Qualcomm ALA does not override these independent obligations or provide a license for the Nuvia technology.

## II.     ARGUMENT

### A.     The Court Should Grant Summary Judgment That Arm Properly Terminated the Nuvia ALA.

#### 1.     Arm's Termination Arises from Undisputed Facts.

Qualcomm does not contest three key facts that render Arm's termination proper: (1) Arm did not provide prior written consent to an assignment; (2) the acquisition was an assignment under ████████ (which defines ██████████████████████ ████████████████████████████████████████████████ ██████████████████████ and (3) the assignment via acquisition was a material breach incapable of remedy. (*See* Mot.[1] at 7-9.) These undisputed facts alone suffice for summary judgment that Arm's termination was proper.

Qualcomm also does not contest that termination was entirely consistent with (1) the understanding of ████████████████████████████████████ ████████████████████████████████████████████████ ██████████ (D.I. 374, Ex. 7 at QCARM_3835060) and (2) the certification of compliance with the termination provisions from Qualcomm and Nuvia in April 2022, *without objection to Arm's termination of the ALA*. Qualcomm argues that Arm acted in bad faith because it requested that Qualcomm "apply Nuvia royalty rates" to cores built from Nuvia's work under the Nuvia ALA. (Opp. at 23.) But those Nuvia royalty rates were contractually mandated by the ALA, not improperly demanded by Arm. Summary judgment is proper, and these facts separately justify the application of equitable estoppel for the reasons stated in the Opening Brief.[2] (Mot. at 9-11.)

---

[1] "Mot." is Arm's Opening Brief (D.I. 372), "Opp." is Qualcomm's Answering Brief (D.I. 423).

[2] There is undisputed evidence of detrimental reliance: Qualcomm's false certification delayed Arm's lawsuit while Arm sought clarity from Qualcomm (D.I. 421, Ex. 14; *id.*, Ex. 15), providing added time for Qualcomm to launch unlicensed products before trial. Arm also

In its response, Qualcomm relies on two affirmative defenses: (1) waiver and (2) whether Arm reasonably withheld consent. Both arguments are factually inaccurate, and legally wrong.

### 2.   Qualcomm's Waiver Argument Does Not Create a Genuine Dispute of Material Fact.

Statements by both parties at the outset of negotiations regarding the improper assignment confirm there was no waiver of Arm's right to terminate. On March 27, 2021, Arm wrote Qualcomm about the parties' negotiations regarding continuing use of the Nuvia technology, stating that █████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

Qualcomm thus expressly agreed and admitted that Arm did not waive any rights by negotiating with Qualcomm regarding resolution of the parties' dispute. Given these express statements, the settlement negotiations could not have been an act "so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." *Wind Dancer Prod. Grp.* v. *Walt Disney Pictures*, 10 Cal. App. 5th 56, 78 (2017); *Jam Transp. Inc. v. Harleysville Mut. Ins. Co.*, 937 F. Supp. 2d 532, 536 (D. Del. 2013) ("The facts relied upon to prove waiver must be unequivocal.").

The ALA is not just consistent with Arm's reservation of rights, but expressly forecloses Defendants' waiver argument, stating that ████████████████████████████████████

████████████████████████████████████████████████████

---

expended time, money, and resources to uncover Qualcomm's continued use of Nuvia RTL. These undisputed consequences support the application of equitable estoppel. (Mot. at 9-11.)

████████████████████████ "No waiver" clauses are enforceable under California law,

which governs the Nuvia ALA. *Hersch v. Citizens Sav. & Loan Ass'n*, 146 Cal. App. 3d 1002,

1009-10 (1983) (non-waiver provision enforceable under California law). And Qualcomm does

not point to any evidence that Arm unequivocally and intentionally waived these contractual

protections, which Qualcomm's cases require. *See Int'l Fruit Genetics, LLC v. P.E.R. Asset

Mgmt. Tr.*, No. 14-cv-05273-ODW(MRW), 2016 U.S. Dist. LEXIS 53232, at *19-20 (C.D. Cal.

Apr. 20, 2016) (no waiver where contract had express non-waiver provision and Defendants had

"not offered facts proving that [Plaintiff] freely and knowingly gave up its right" to enforce

contract provisions); *see also Wind Dancer*, 10 Cal. App. 5th at 78 (waiver must be express or

clearly inconsistent); *DuBeck v. Cal. Physicians' Serv.*, 234 Cal. App. 4th 1254, 1265 (2015)

(same). Defendants proceeded with the Nuvia cores after Arm provided unequivocal notice that

the assignment was improper, continuing use of Nuvia technology was improper, and Arm did

not "expressly or impliedly waive *any* of Arm's rights," including its right to terminate.

>    **3.    Termination Was Not Legally Limited, and Was Proper Anyway.**

Qualcomm's argument that Arm unreasonably withheld consent lacks a legal or factual

basis. The Nuvia ALA imposes █████████████████████████████████████████████

████████████ (D.I. 374, Ex. 9, ██████) Nor does California law. *See* Cal. Civ. Code § 1531

(novation requires manifestation of "intent" of parties, with no "reasonableness" requirement).

The Nuvia ALA uses ████████████████████████████████████████████████████████

In sharp contrast, the Qualcomm ALA includes ██████████████████████████████████

████████████████████████████████████████████████████████████ The

difference in language confirms that the omission from the Nuvia ALA was not an oversight, but

instead deliberate. It is also consistent with █████████████████████████████████████

███████████████████████████████████ (D.I. 374, Ex. 8.) And, contrary to Defendants'

argument, California's implied covenant of good faith and fair dealing cannot be used to contradict the express language of the agreement to which the parties agreed. *See Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798, 808 (1995) ("[C]ourts are not at liberty to imply a covenant directly at odds with a contract's express grant of discretionary power except in those relatively rare instances when reading the provision literally would, contrary to the parties' clear intention, result in an unenforceable, illusory agreement.").

Further, the undisputed facts confirm Arm's refusal to consent was reasonable. Courts have recognized that IP licensors frequently impose "restrictions" on assignment "to maintain control of the intellectual property." *See H-D Mich., LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 835 (7th Cir. 2012). Here, the differences between Nuvia and Qualcomm make Arm's denial of consent reasonable. Qualcomm refused to pay the relevant Nuvia rates. (D.I. 374, Ex. 17.) Arm, in contrast, reasonably expected Qualcomm to pay the rates Nuvia had negotiated for the technology. Nuvia was a start-up focused on a new market, servers for datacenters. (D.I. 374, Ex. 4.) Qualcomm was a large semiconductor company targeting older, larger, and more established markets. The two companies and their expected uses were thus drastically different.

Finally, Arm had every reason to contest Qualcomm's unilateral attempt to proceed under a 2013 ALA that had nothing to do with Nuvia's 2019 ALA or Nuvia's subsequent development work, while refusing to pay the relevant Nuvia royalty rates. This IP context is entirely different from commercial real estate leases. *Kendall* v. *Ernest Pestana, Inc.*, 40 Cal. 3d 488, 503 (1985). And California law makes clear that "termination of [a contract] for financial gain was not a breach of the covenant of good faith," particularly where termination "was clearly within reasonable expectations," as Mr. Williams's admissions confirm. *Carma Devs. (Cal.), Inc.* v. *Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 376 (1992); (D.I. 374, Ex. 8.)

**B.     The Court Should Grant Summary Judgment That Arm Did Not Breach the Nuvia ALA and TLA.**

Qualcomm's opposition confirms that the Court should separately grant summary judgment on each of Defendants' grounds for asserting that Arm breached the termination provisions of the Nuvia licenses. While Qualcomm's claims regarding CMN-Kampos and the ███████ are independent, the undisputed facts justify summary judgment on each.

The CMN allegations are resolved by the ███████ clause of the TLA. Qualcomm studiously avoids reference to the key language of ███████ which explicitly covers Nuvia's proposals regarding CMN-Kampos: ███████████████████████

███████████████████████████████████████

██████████████████████████████████ (emphasis added.) ███████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

(emphasis added).) Nuvia thus agreed that Arm could use any suggestions regarding CMN because Nuvia would benefit from Arm's implementation of Nuvia's suggestions. Contrary to Defendants' argument, nothing in ███████████ made Nuvia's status as an ███████ ███████ a condition precedent to Arm's right to use input from Nuvia. While ███ states that Nuvia may get ███ access to CMP-Kampos, this did not limit the scope of the license provided under ███ based on the last sentence of ████████████████.[3]

---

[3] The ██████████████ in the ALA are equally clear and broad. The ALA defines ███████████ ████████████████████████████████████████ Qualcomm's opposition does not dispute that CMN suggestions relate to Arm Technology. (*Id*. §2.23.)

Qualcomm's opposition also mischaracterizes the timing and scope of Arm's alleged use of the documents that Nuvia provided regarding CMN suggestions. Prior to termination of the TLA, Nuvia suggested CMN features in documents marked Nuvia Confidential, which Arm in turn used prior to termination. (Mot. at 18 (citing D.I. 374, Ex. 52 at 107:14-20, 113:25-115:14; *id.*, Ex. 54 at 21:19-22:2).) Qualcomm does not identify evidence that Arm re-used the relevant documents after termination, providing an independent ground for summary judgment.

Summary judgment regarding Arm's ███████████ is also warranted. Qualcomm does not dispute that Arm never used the results of the ████ in any product or commercial activity. Nor do Defendants show how a comparison of the characteristics of a Nuvia and a Qualcomm configuration file to uncover Defendants' false certification constitutes a use of information within the Nuvia file. Defendants also fail to show in their opposition or expert reports how this ████ resulted in any damages. None of the allegedly missing discovery goes to this issue. The foregoing thus warrants summary judgment.[4]

### C. The Court Should Grant Summary Judgment That Defendants Breached ███████████ of the Nuvia ALA.

#### 1. The Key Material Facts are Not Disputed.

Qualcomm's opposition ignores the key facts that form the basis for Arm's motion for summary judgment on breach, instead focusing on purported fact issues that are irrelevant to the application of ███████████ The key facts are not disputed: In 2019, Nuvia sought to license the Arm v8 Architecture from Arm to develop an ███████████ for the server market. (D.I. 374, Ex. 4; *id.* Ex. 5 at 38:19-20.) After Nuvia licensed the Arm architecture via the

---

[4] Summary judgment as to CMN suggestions is similarly warranted because Qualcomm has adduced no evidence of damages. *See Smith v. NBC Universal*, 524 F. Supp. 2d 315, 330 (S.D.N.Y. 2007) ("Damages are an essential element of a breach of contract claim under California law.") Qualcomm's argument regarding pending discovery disputes on Arm's licensing royalties for CMN is unavailing, because even if Qualcomm prevailed, there is no reason to think Arm's royalties reflect or suggest harm to Defendants.

Nuvia ALA, Nuvia engineers wrote RTL code for this Arm-based core. (D.I. 374, Ex. 5 at 29:6-18, 41:2-7; *id.*, Ex. 32 at 32:13-24, 71:24-72:25, 157:1-25; *id.*, Ex. 22 at 79:17-20.) Nuvia engineers "used the documents that define the Arm architecture"—including the Arm v8-A Architecture Reference Manual—"when they wrote the code for [Nuvia's] ███ core." (Mot. at 14.) And "the final version of Nuvia's code for the ███ core submitted to Arm for verification" was an "████████████." (Mot. at 13; D.I. 374, Ex. 9 § 1.8.)

After Arm terminated the ALA, ████████████████████████ ████████████████████████████████████████ ███ But even after termination, "Qualcomm continued developing [the Nuvia] ███ core and Server SoC." (D.I. 23, Answer ¶ 207.) And Defendants "used pre-acquisition RTL developed under the Nuvia ALA in post-termination designs like ███ and products like Qualcomm's Snapdragon Elite X." (Mot. at 16.) Qualcomm admits in its own summary judgment motion that its products "incorporated some Nuvia RTL code." (D.I. 391 at 14.)

Based on these uncontested facts, Defendants breached ████████ which covers Nuvia's pre-acquisition RTL for the reasons stated in Arm's Opening Brief. And the Qualcomm ALA does not override the independent obligations of ███ or provide a license for the Nuvia technology, as set forth in Arm's opposition.[5] A trial may be necessary to resolve other factual disputes, including the full scope of Defendants' breach and appropriate remedies. But a trial is not needed to establish that Defendants breached ████████ (D.I. 374, Ex. 9 § 15.1.)

## 2.   Qualcomm's Arguments are Fundamentally Inconsistent with the Purpose and Structure of the Nuvia ALA.

The key arguments presented in Defendants' opposition require the Court to interpret the

---

[5] Arm refutes Qualcomm's arguments regarding whether (1) the Qualcomm ALA does not provide a license for the Nuvia technology and (2) Qualcomm is bound by the termination provisions in its opposition to Qualcomm's motion for summary judgment. (D.I. 416 at 7-16.)

Nuvia ALA to *exclude* Arm's v8-A Architecture (which is "defined" in the Arm v8-A

Architecture Reference Manual (D.I. 374, Ex. 30 § A.9)) from the licensed ARM Technology.

That approach is fundamentally at odds with undisputed facts leading up to, the language

included in, and the events that followed the execution of the Nuvia ALA. The record shows that

the Arm v8 Architecture, the Reference Manual, and the RTL that Nuvia wrote (in developing

the ████ core, which both parties agree is an ███████████████) sit at the center of

the license. They are also at the center of what Nuvia had to stop using when Arm terminated the

ALA.

███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

█████████████

    The ALA is replete with references to the Arm architecture and Reference Manual. It is,

after all, an *Architecture* License Agreement. The ALA ████████████████

███████████████████████████████████████

██████████████ (D.I. 374, Ex. 9.) Nuvia must verify that products comply with all

requirements of the Arm architecture, including ███████████████ specified in the

Armv8-A Architecture Reference Manual, and ███████████████████████

███████ Annex 1 is named ███████████████(*Id.* Ex. 30, at 1). The first section

of Annex 1 (labeled ███████████████████████████(*Id.*

at 2.) The Annex defines ███████████████

███████████████████████████ (*Id.* at A.6).

The first item under ███████████████████(*Id.* at A.18.) The

definition of ██████████████████████████████████████████████████████

████████████████████████████████████████████ (*Id.* at A.9.) The ALA and

Annex contain numerous other examples.

 Once Nuvia executed the ALA, its engineers used the Armv8-A Profile and the Arm

Architecture Reference Manual to write the RTL code for its new server CPU. Defendants'

interrogatory responses confirm that ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████ Deposition testimony ██████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████ This

Nuvia code was the building block for an ████████████████████ named ████████

 Given the focus of the ALA on the Arm architecture as defined in the Architecture

Reference Manual, and the undisputed facts about Nuvia's intent and actions, Defendants'

attempt to exclude the Arm v8-A Profile and the Arm v8-A Architecture Reference Manual from

Arm Technology cannot be reconciled with the contract or the record. ARM Technology

includes the Arm v8-A architecture and corresponding Reference Manual.

   **3.**  **Nuvia's RTL is a "Derivative" of the ARM Technology.**

 The same facts that establish the inclusion of the Arm v8-A Profile and Reference

Manual within ARM Technology also make clear why Nuvia's RTL is a ████████████

████████████████████████████████████████████████ RTL is the form into which Nuvia

has ████████████████████████ the Arm v-8A Profile, as further described in pages 12-13 of

the Opening Brief. Defendants never dispute that "[t]he RTL code Nuvia developed pre-

acquisition is the building block of [Qualcomm's] final, verified ████████████████████.["]

(Mot. at 16.) Qualcomm's engineers referred to Nuvia's code at the time of acquisition as an "Arm-compliant core." (D.I. 421, Ex. 11 at 162:5-16.)

Defendants' opposition makes no effort to explain its assertion that, while the RTL code for a completed, verified core is a derivative of ARM Technology under the express language of the ALA, the same RTL code one day prior to verification is not. *See San Pablo Bay Pipeline Co. v. Pub. Utils. Comn'n*, 221 Cal. App. 4th 1436, 1460 (2013) (finding narrow category covered by a broader definition under the axiom the "greater contains the less"). Both reflect nearly identical work product. Nor is there any reason why, following termination, the parties would permit Nuvia to continue to use RTL created by Nuvia leading up to a final, verified core, but expressly stop use of RTL from a final verified core. Both present equivalent risks of improper, unlicensed use upon termination. RTL is similarly the foundation for ███████ ████████████████████████████████████████ another category that is explicitly subject to discontinuance and destruction. (D.I. 374, Ex. 9 ████████ Qualcomm again offers no legal, economic, or contractual reason why Arm would permit Nuvia perpetual, unlicensed use of RTL for an incomplete core, while requiring discontinuance and destruction of RTL from verified cores and products made therefrom. Nor does it point to any extrinsic evidence that draws this illogical distinction, or might create a material dispute of fact.

### 4.    References to "Nuvia Technology" Are Irrelevant.

Defendants wrongly seek to exclude Nuvia's RTL from the requirements of ████████ ██████ based on the definitions of ████████████████████████████████████████████ ████████████████████████████████████ (Opp. at 7; *see also id.* at 17-18.) But those terms are used only in ██████████████████████████████████████ and thus only play a role in determining Arm's obligations under ██████████████ with respect to the use of ████████████████████████████████ after termination. In contrast, nothing



in ███████████████████ excludes those █████████████████████

██████ under the termination provisions. Instead, those obligations apply to ██████

████████████████████████████████████ without a carve out for

whether those ██████████████████████████

The reference to ████████████████████████ confirms

the merit of Arm's position. ███████████████ refers to Nuvia work product in both

places. The ALA exists so that *Nuvia*, not Arm, can ███████████████████

████████. After termination, █████████████████ prohibit Nuvia from

████████████████████ ████████████████████████

██████████████████████████████████████

███████████████████████ Separately, after

termination, ███████████████████████████

██████████████. But they do so without granting Nuvia any continuing rights to use

derivatives or embodiments of Arm technology or confidential information.

5.    **Qualcomm's Contribution of Code Beyond Nuvia's RTL Does Not Avoid a Breach.**

Qualcomm argues that because Qualcomm contributed additional code to its cores

(beyond the Nuvia code it obtained via the acquisition), Defendants have not breached the

termination provisions. But breach does not turn on the scope of Defendants' use of Qualcomm

code. It turns on whether Defendants continued to use Nuvia's pre-acquisition RTL code after

termination. Qualcomm has admitted that its products "incorporate[] *some* Nuvia RTL code."

(D.I. 391 at 14.) On this point, Defendants' pleadings are unambiguous: (a) Nuvia developed "a

custom CPU . . . known as the ██████ Core." (D.I. 300, ¶ 9); (b) "[T]hroughout 2021 to the

present day . . . , Qualcomm continued development work on the ██████ Core and SoCs

incorporating the ████ Core . . . ." (*id.* ¶ 30); and (c) "When Qualcomm acquired NUVIA, NUVIA had certain technology for a CPU core (i.e., the ████ Core) . . . . Qualcomm continued to develop the ████ Core and Server SoC" (*id.* ¶ 208). Qualcomm's use of Nuvia's pre-acquisition RTL establishes breach, regardless of whether Qualcomm performed additional, post-acquisition development work. Defendants' argument might raise questions about the scope of their breach, but it is irrelevant to whether Defendants breached.

Given all this, Qualcomm's critique of Arm's source code expert, Dr. Chen, is irrelevant.[6] (Opp. at 7-8.) Qualcomm contests his opinions about the scope of Defendants' breach, but its separate concessions establish that Defendants have used the Nuvia RTL. The same is true for disputes about the differences among Qualcomm's products. So long as those products include any Nuvia RTL—and Defendants admit they do—Defendants have breached ████████.

### 6. The Architecture Reference Manual Is ARM Technology, Even if Publicly Available.

As noted above, the ALA repeatedly references the Arm Architecture Reference Manual as part of the ARM Technology licensed under the ALA. ████████████████ ████████████████████████ regardless of whether they may also be subject to discontinuance and destruction via ████████████████ ████████████████████████████████ ████████████ Further, ████████████████ ████████████████████████████████ ████████████████████ Accordingly, ████████

---

[6] Qualcomm's critique of Dr. Chen is also substantively meritless, as Arm explains in its *Daubert* opposition. (D.I. 414 at 15-21.)

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████ "[W]here a

contract expressly defines a term, we cannot reject that definition simply because it may deviate

from our expectations." *Hammerling v. Google, LLC*, No. 22-17024, 2024 WL 937247, at *2

(9th Cir. Mar. 5, 2024) (citing Cal. Civ. Code § 1644). That Defendants' lawyers purport to find

this "bizarre" does not change the words of the contract or create a genuine dispute of fact. (Opp.

at 13.) Defendants notably cite no extrinsic evidence that indicates any of the parties were

confused by this definition or shared the opinions of Defendants' lawyers. Whether the

Reference Manual is publicly available is irrelevant.

Moreover, the public version of the Architecture Reference Manual expressly supports

this interpretation of the relevant language. It states: "No license, express or implied . . . to any

intellectual property rights is granted by this document unless specifically stated . . . . The right

to use, copy and disclose this document may be subject to license restrictions in accordance with

the terms of the agreement entered into by Arm and the party that Arm delivered this document

to." (D.I. 421, Ex. 12 at iii.) This is entirely consistent with the inclusion of the Arm Reference

Manual as licensed technology under the ALA.

### 7.     Nuvia's Designs are Subject to ████████████

Qualcomm makes the surprising, and illogical, argument that the ALA was intended to

protect only a CPU design created by Arm. (Opp. at 17.) But the ALA does not limit

█████████████████████████████████████████████████████████████

████ nor would it make sense to do so. (*See, e.g.*, D.I. 374, Ex. 9 ████ Arm designs and

licenses its own cores and other technology through its TLAs. (Mot. at 3.) In contrast, an ALA

████████████████████████████████████████████ The primary reason to execute an

ALA is to ████████████████████████████████████

█████████████████████████ Limiting an ████████████████████████████████

███ would be flatly inconsistent with the language and purpose of the ALA.

### 8.   Qualcomm's Argument That the Nuvia Code Was Not Yet a "Product" Does Not Create a Genuine Dispute of Material Fact.

Qualcomm's argument that the Nuvia code was not yet a "product" does not defeat

summary judgment. (Opp. at 18-21.) Arm's motion does not turn on whether the Nuvia RTL

code is a "product." RTL code is a building block for a product. Arm's motion distinguished

between the pre-acquisition Nuvia code and Qualcomm's subsequent products that use that code.

(*See, e.g.*, Mot. at 16 ("Defendants used *pre-acquisition RTL* developed under the Nuvia ALA in

post-termination designs like ██████ and *products like Qualcomm's Snapdragon Elite X*.")

(emphasis added).) The ALA termination provisions █████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████████████████████████

Dated: August 21, 2024

OF COUNSEL:

Daralyn Durie
Joyce Liou
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
jliou@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Kyle W.K. Mooney
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
(212) 336-4092
kmooney@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Daniel P. Muino
MORRISON & FOERSTER LLP
2100 L Street, NW
Suite 900
Washington, D.C. 20037
(202) 887-1501
dmuino@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Blvd.

YOUNG CONAWAY STARGATT &
  TAYLOR, LLP


 /s/ Anne Shea Gaza
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Plaintiff Arm Ltd.*

Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 21, 2024, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

Isaac B. Zaur
Nora Niedzielski-Eichner
CLARICK GUERON REISBAUM LLP
220 Fifth Avenue, 14th Floor
New York, NY 10001
izaur@cgr-law.com
nniedzie@cgr-law.com

Catherine Nyarady
Anna R. Gressel
Jacob A. Braly
Alexander M. Butwin
Samantha Mehring
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
agressel@paulweiss.com
jbraly@paulweiss.com
abutwin@paulweiss.com
smehring@paulweiss.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
Anna P. Lipin
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
kdunn@paulweiss.com
wisaacson@paulweiss.com
mzappala@paulweiss.com
ejmorgan@paulweiss.com
alipin@paulweiss.com

Andrea L. D'Ambra
Susana Medeiros
Kira Latham
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019
andrea.dambra@nortonrosefulbright.com
susana.medeiros@nortonrosefulbright.com
kira.latham@nortonrosefulbright.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Plaintiff Arm Ltd.*