**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ARM LTD., a U.K. corporation, | |
| Plaintiff, | |
| v. | C.A. No. 22-1146-MN |
| QUALCOMM INC., a Delaware corporation, QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, and NUVIA, INC., a Delaware corporation, | **REDACTED - PUBLIC VERSION** **(Filed August 28, 2024)** |
| Defendants. | |

**DECLARATION OF NICHOLAS FUNG IN SUPPORT OF ARM LTD.'S**
**REPLY BRIEF IN SUPPORT OF ITS MOTIONS TO EXCLUDE AND STRIKE**
**CERTAIN EXPERT OPINIONS AND TESTIMONY OF MURALI ANNAVARAM,**
<u>**PATRICK KENNEDY, JOHN COATES, AND JOEL STECKEL**</u>

I, Nicholas Rylan Fung, declare as follows:

1.      I am an attorney with the law firm of Morrison & Foerster LLP ("Morrison & Foerster"), counsel for Plaintiff Arm Ltd. ("Arm") in the above-referenced action.

2.      I submit this declaration in support of Arm's Reply Brief in Support of its Motions to Exclude and Strike Certain Expert Opinions and Testimony of Murali Annavaram, Patrick Kennedy, John Coates, and Joel Steckel.

3.      Attached hereto as **Exhibit 1** is a true and correct copy of correspondence from Nicholas Fung to Catherine Nyarady, dated August 4, 2024.

4.      Attached hereto as **Exhibit 2** is a true and correct copy of the Reply Expert Report of W. Todd Schoettelkotte Relating to Remedies for Counterclaim-Plaintiffs' Claims, dated June 10, 2024.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 21st day of August, 2024 at Los Angeles, California.

*/s/ Nicholas Fung*
Nicholas Fung

# Exhibit 1

# ‖⊩ORRISON ‖⊩OERSTER

707 WILSHIRE BOULEVARD
SUITE 6000
LOS ANGELES
CALIFORNIA 90017-3543

TELEPHONE: 213.892.5200
FACSIMILE: 213.892.5454

WWW.MOFO.COM

MORRISON & FOERSTER LLP

AUSTIN, BEIJING, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG,
LONDON, LOS ANGELES, MIAMI,
NEW YORK, PALO ALTO, SAN DIEGO,
SAN FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

August 4, 2024

Writer's Direct Contact
+1 (213) 892-5348
NFung@mofo.com

BY EMAIL

**HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY**

Catherine Nyarady
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

    Re:    <u>Arm Ltd. v. Qualcomm Inc. et al.</u>, C.A. No. 22-1146-MN (D. Del.)

Counsel:

    We write in response to Qualcomm's July 24, 2024 letter regarding stale fact discovery issues, and to follow up on our July 26, 2024 email, and the parties July 12, 2024 in-person meet and confer and July 19, 2024 meet and confer, regarding the same.

    As detailed below, Arm has conducted certain good faith and reasonable investigations and provided documents and information consistent with Arm's prior offers and agreements and therefore we understand that the majority of Qualcomm's purported disputes have been resolved. We note, however, that Qualcomm's July 24 continues to ignore and mischaracterize Arm's prior explanations in emails, letters, and meet and confers, and follows the same pattern of Qualcomm slow rolling its responses, demanding immediate answers from Arm, and then manufacturing disputes based on Arm's refusal to follow Qualcomm's unilaterally set deadlines. As repeatedly explained, Qualcomm's endless shifting of positions on various issues, disregard for Arm's prior confirmations and explanations, and demand for immediate responses makes it extremely difficult for Arm to continue to consider Qualcomm's positions and attempt to resolve disputes without burdening the Court.

    Nonetheless, we remain committed to attempting to resolve the remaining disputes, while also maintaining that Qualcomm's purported discovery disputes are untimely and the parties do not have any agreement that Qualcomm has not waived these purported concerns by failing to pursue them in a timely matter.

# ⅢORRISON ᖴOERSTER

C. Nyarady
August 4, 2024
Page Two

**1. Arm's Good Faith, Reasonable, and Proportional Search, Collection, Review, and Production of Documents Related to Qualcomm's Counterclaims from Locations Such Documents Are Likely to be Found**

<u>Nuvia-Requested Features</u>.  Arm again explained during the July 12 in-person meet and confer that Arm has already provided discovery on these subjects, including in Arm's discovery responses and through deposition testimony.  (*See, e.g.*, Arm's First Supplemental Objections and Responses to Qualcomm's Fifth Set of Interrogatories (Nos. 26-28; 5/10/2024 G. Larri Depo. Tr. at 127:8-24, 201:9-202:4; 12/7/2023 M. Werkheiser Depo. Tr. at 54:10-55:15.)  Nonetheless, Arm conducted a good faith and reasonable investigation into the existence of documents showing that features requested by Nuvia were also (1) already part of Arm's development plan or (2) requested by other Arm partners, and confirms no such documents have been located.  Arm directs Qualcomm to the document previously produced at ARM_01462325, and the document produced as part of Arm's agreed-upon supplemental investigation and July 24 production at ARM_01468851, as examples of documents that include roadmaps related to Arm's CMN product.  Accordingly, Arm understands that Qualcomm's purported disputes concerning this subject have been resolved.

<u>CMN Features (RFP Nos. 131 and 132)</u>.  During the July 12 in-person meet and confer Qualcomm offered to narrow these requests, for the first time, to documents sufficient to show the features in each version of Arm's CMN product.  Arm has conducted a good-faith, reasonable, and proportional investigation into such documents and identifies the following documents: (1) technical reference manuals for representative versions of Arm's CMN that were made available for inspection on the source code computer on May 1 with the respective source code; (2) documents previously produced at ARM_SC_1_00010705, ARM_SC_1_00010673, ARM_SC_1_00010641, ARM_01441115, ARM_01441079, ARM_01441042, and ARM_0144988; (3) and documents produced as part of Arm's agreed-upon supplemental investigation and July 24 production at ARM_01468859, ARM_01468973, ARM_01468597, ARM_01468671, ARM_01468540, ARM_01468421, ARM_01468742, ARM_01468820, ARM_01468851, ARM_01468504, ARM_01468845, ARM_01468496.  Accordingly, Arm understands that Qualcomm's purported disputes concerning this subject have been resolved.

<u>Change Logs (RFP No. 47)</u>.  Arm has already confirmed, repeatedly and including during the July 12 in-person meet and confer, that (1) Arm produced release notes for the representative versions of the source code on the source code computer, which provide similar information as change logs; (2) the releases notes were produced with the representative versions of the source code and have been available for Qualcomm's expert's review on the source code computer in Morrison Foerster's Palo Alto office since his first visit on May 1; (3) "changelogs" for its CMN products are not maintained by Arm in the ordinary course of business; and (4) Arm's production of release notes is consistent with its

## IIIORRISON FOERSTER

C. Nyarady
August 4, 2024
Page Three

agreement to produce documents in its possession, custody, or control located via a reasonable, proportional search since September 27, 2019 regarding modifications to the CMN products.  (*See, e.g.*, 6/17/2024 N. Fung letter at 5-6; 6/6/2024 N. Fung letter at 9; 5/20/2024 letter from N. Fung at 10.)

To be clear, Qualcomm has Arm's production of release notes and Arm's confirmation that "changelogs" for its CMN products are not maintained by Arm in the ordinary course of business and Qualcomm is not entitled to any additional documents or information in response to RFP No. 147.  Nonetheless, as Qualcomm requested for the first time during the July 12 in-person meet and confer and in an attempt to resolve disputes without burdening the Court, Arm conducted a reasonable and good faith investigation and confirms that Arm uses GIT as the version control software for Arm's CMN product. Accordingly, Arm understands that Qualcomm's purported disputes concerning this subject have been resolved.

**Marketing Documents (RFP No. 154)**.  Prior to the July 12 in-person meet and confer, the only purported issue Qualcomm has raised concerning Arm's production of marketing documents relating to CMN was the "product requirements specification" referenced during the deposition of Arm's Rule 30(b)(6) witness.  (*See, e.g.*, 6/21/2024 letter from C. Nyarady at 8 (for RFP No. 154, "incorporate[ing] by reference the description above regarding Qualcomm's request for the production of the requested marketing requirement specification").  Nonetheless, as Qualcomm requested for the first time during the July 12 in-person meet and confer and in an attempt to resolve disputes without burdening the Court, Arm conducted a reasonable and good faith investigation into marketing documents, made a supplemental production of such documents on July 24, and identifies following Bates ranges:  ARM_01467542 – ARM_01468420.  Accordingly, Arm understands that Qualcomm's purported disputes concerning this subject have been resolved.

**Financial Documents (RFP Nos. 133, 134, 149, 150, 152, 153)**.  Arm maintains that Qualcomm has failed to identify any specific deficiencies with Arm's good faith, reasonable, and proportional search, collection, review, and production of documents related to Qualcomm's new counterclaims, including financial information, from locations such documents are likely to be found.  Rather, Qualcomm has repeatedly suggested certain things may be possible or that certain documents or information that Arm has not provided may exist without any basis or support that Arm's initial search, collection, review, and production of documents related to Qualcomm's new counterclaims as well as the follow up documents and information that Arm has provided through the discovery dispute process is not reasonable and proportional, particularly considering (1) Arm's detailed explanations regarding its good faith, reasonable, and proportional search, collection, review, and production of documents related to Qualcomm's new counterclaims from locations such documents are likely to be found; (2) the limited nature of Qualcomm's new counterclaims;

## ꟽⲞRRISON ⲞⲢⲢⲈⲢꟽ FOERSTER

C. Nyarady
August 4, 2024
Page Four

(3) Qualcomm's actions concerning the scope of discovery related to its new counterclaims, including Qualcomm's express statements to the Court during the March 5, 2024 hearing that Qualcomm would seek "the most narrow and limited universe" of discovery that Qualcomm needed (*see* 3/5/2024 Hearing Tr. at 13:20-14:7 ("We're really trying to make this very narrow, very limited to the exact problem that has arisen …."); id. at 15:18-20 ("We will do everything within our power to fit this narrow and limited additional discovery into the time that we had."); *id.* at16:2-4 ("[W]e are not asking for an elaborate discovery schedule, and we will work very hard to do this in the limited amount of time that we have.")); (4) the amount of time Qualcomm proposed for counterclaim discovery (D.I. 307, Ex. A); and (5) Qualcomm's failure to raise any procedures or issues for e-discovery relating to its new counterclaims, despite multiple meet and confers by the parties and the parties filing a stipulation with the proposed revised case schedule on March 25, 2024 (D.I. 307).

Nonetheless, in an attempt to resolve the parties' disputes without burdening the Court, Arm has conducted a reasonable and good faith investigation into the below categories of documents as agreed-upon during the July 12 in-person meet and confer.

***Internal documents relating to valuation of CMN***.  As Arm agreed during the July 12 in-person meet and confer, Arm conducted a good faith and reasonable investigation into the existence of such documents, including following up with Arm's Rule 30(b)(6) witness regarding purported testimony concerning such documents  Based on Arm's good faith and reasonable investigation, we confirm no such documents exist in the ordinary course of business and that Arm's Rule 30(b)(6) witness's purported testimony concerning such documents was based simply on his personal belief that such documents may exist.

***Documents sufficient to show list prices and actual prices associated with licensing features in CMN***.  Qualcomm's July 24 letter mischaracterizes Arm's statements in its June 17 letter and ignores lead-counsel's confirmations from the July 12 in-person meet and confer.  First, Arm's June 17 letter was limited to confirmation concerning "list prices and actual prices associated with licensing features of Arm's CMN product *that Nuvia requested or provided input on*."  (6/17/2024 letter from N. Fung at 10 (emphasis added).)  Qualcomm's July 24 letter, however, omits the emphasized language, seemingly to expand the scope of documents it claims should be produced.  Regardless, Arm confirmed during the in-person meet and confer that Arm's June 17 letter mistakenly omitted the "not" in Arm's confirmation and should have read that Arm confirms that it does *not* maintain in the ordinary course of business documents related to the list prices and actual prices associated with licensing features of Arm's CMN product that Nuvia requested or provided input on.  Arm further confirmed that this applied to all features in Arm's CMN and was not limited to the features Nuvia-requested or provided input on.  Accordingly, we understand Qualcomm's concerns as related to list prices and actual prices of CMN features have been resolved.

# ᴍORRISON ᴍOERSTER

C. Nyarady
August 4, 2024
Page Five

Qualcomm now seeks confirmation whether Arm maintains in the ordinary course of business documents related to the list prices and actual prices associated with CMN. (*See* 7/24/2022 letter from C. Nyarady at 3). But Request No. 50, which Qualcomm has previously relied on for actual and list prices but omits from its July 24 letter, is not so broad and is limited to list and actual prices associated with licensing features found in CMN, not CMN generally (*see* 6/21/2022 letter from C. Nyarady at 7). Nonetheless, in an attempt to resolve the parties' dispute without burdening the Court, Arm agreed during the July 12 in-person meet and confer to conduct a good faith but reasonable investigation into the existence of such documents. Arm has made a supplemental production on August 1 and identifies the document at ARM_01469008 as containing CMN pricing information.

***Documents sufficient to show sales, revenue, or profit from CMN.*** As repeatedly stated, Arm has already produced ARM_01460538, reflecting total royalty product history recorded for Arm's CMN products from January 1, 2017 through January 1, 2024, as kept in the ordinary course of business, and consistent with its responses to Qualcomm's discovery requests. Nonetheless, in an attempt to resolve disputes without burdening the Court, Arm conducted an additional good faith and reasonable investigation into the existence of any additional documents and confirms that no such additional documents exist as kept in the ordinary course of business.

***Documents regarding overall licensing revenue where CMN forms at least a portion of the license technology***. As stated during the July 12 in-person meet and confer, Qualcomm is not entitled to top-line royalty or license fees at, for example, the overall license or contract level, simply because CMN is one of the many technologies being licensed. Accordingly, in an attempt to resolve disputes without burdening the Court, Arm agreed to conduct a good faith and reasonable investigation into whether any additional documents exist relating to licensing revenue or royalties that have a closer fit to CMN, versus, for example, bundled at the overall license level. Arm has made a supplemental production on August 1 and identifies the document at ARM_01469008 as containing CMN pricing information.

## 2. Arm's Rule 30(b)(6) Deposition.

As stated during the July 12 in-person meet and confer, Arm will consider questions from Qualcomm related to Rule 30(b)(6) Topics covering source code and financial information but reserves its right to object to said questions depending on, for example, the number or scope of the questions.

**⁞⁞ORRISON ⁞⁞OERSTER**

C. Nyarady
August 4, 2024
Page Six

### 3. Qualcomm's Belated Request to Re-Review Thousands of Pages of Documents Produced Beginning a Year Ago

Qualcomm's July 24 letter continues to mischaracterize Arm's good-faith discussions concerning these documents and disregards the leisurely pace at which Qualcomm has pursued this issue. First, as Arm stated during the July 19 meet and confer, whether Qualcomm's request for Arm to re-review 69 documents is "a substantially narrowed set of documents" in comparison to the originally requested 1,100 documents (7/24/2024 letter from C. Nyarady at 5), is irrelevant, as the documents identified by Qualcomm still includes nearly 3,000 pages and presents a significant undertaking for Arm to re-review at this late stage.

Second, Arm does not dispute that the parties were in agreement that Arm was willing to discuss further the unredactions of specific documents if Qualcomm articulated a rationale particular to those documents. In Arm's May 6 letter, Arm indicated its willingness to proceed with the offer outlined in its prior letter, which included discussing further unredactions. (*See* 5/6/2024 letter from N. Fung at 1.) Qualcomm then sat silent for months with regard to further discussions regarding unredactions. Indeed, despite sending numerous emails regarding the parties' discovery disputes relating to the original claims, not once did Qualcomm requested to further discuss unredactions. (*See* 5/29/2024 email from M. Vaughn to K. Friedland; 6/3/2024 email from M. Vaughn to K. Friedland; 6/7/2024 email from M. Vaughn to K. Friedland; 6/21/2024 email from M. Vaughn to K. Friedland; 6/26/2024 from M. Vaughn to K. Friedland.) Rather, Qualcomm first raised the issue again during the parties' July 12 in-person meet and confer on other issues, at which time Arm noted that, consistent with the above, Qualcomm had not requested to further discuss unredactions since Arm's offer in its May 6 letter. Qualcomm was unable to identify any such request during the July 12 in-person meet and confer and still does not in its July 24 letter, confirming that Qualcomm sat silent on this issue for months.

Third, any suggestion in Qualcomm's July 24 that the parties were scheduled, and Arm refused, to discuss this issue during the July 12 in-person meet and confer is wrong. Qualcomm did not identify this issue, nor any issues related to the original claims, as issues it sought to raise with the Court that resulted in the Court-order in-person meet and confer. (*See* 6/12/2024 email from J. Ying to R. Vrana ("Please let me know you availability to reach out to chambers regarding the discovery disputes relating to M. Son's deposition and the counterclaim discovery (see, e.g., June 11 email from M. Vaughn)); 6/17/2024 email from J. Ying to R. Vrana ("We would like to move forward with contact the Court regarding [our request for a deposition of M. Son] and the outstanding counterclaim discovery issues."); 6/18/2024 email from J. Ying to R. Vrana (listing the issues Qualcomm intends to raise with the Court, none of which related to discovery disputes on the original claims). Accordingly, when Qualcomm indicated its intent to add issues related to the original claims to the in-

# ΙΙΙORRISON FOERSTER

C. Nyarady
August 4, 2024
Page Seven

person meet and confer, Arm explicitly objected and stated that "Arm d[id] not agree that Qualcomm can simply add issues to the Court-ordered meet and confer involved lead trial counsel." (6/28/2024 email from K. Friedland to M. Vaughn).  And when Qualcomm raised the issue of redactions during the in-person meet and confer, the parties were in agreement that it was best for such discussion to take place on a different day with a smaller group, implicitly acknowledging that it was not an issue scheduled to be discussed during the Court-order in-person meet and confer.

Fourth, Arm has engaged in good-faith discussions regarding the remaining documents, including during the July 19 meet and confer.  Arm has also provided unredacted and lesser redacted copies of certain of the documents that Qualcomm has identified.  As we explained during the July 19 meet and confer, we were willing to engage in a document-by-document discussion of the remaining documents.  However, due to Qualcomm's continued failure to articulate the grounds for unredacting documents now, months after the close of fact discovery, and for documents that were produced as early as early as July, September, and October of 2023, we provided our position that Arm was not willing to conduct a wholesale re-review of the nearly 3,000 pages of documents.  Additionally, Qualcomm's claim that "ARM is not taking the position that its responsiveness redactions were appropriate" (7/24/2024 letter from C. Nyarady at 5), is wrong.  Arm's position has been and remains that its redactions of documents in this case are appropriate and it is surprising that Qualcomm would claim otherwise.

Fifth, Qualcomm's statement that it "intend[s] to update the Court that the parties were unable to reach agreement on this issue via the meet and confer process" (7/24/2024 letter from C. Nyarady at 5), is confusing.  As explained above, redactions were not one of the issues contemplated when Qualcomm contacted the Court resulting in the Court-ordered in-person meet and confer and Arm explicitly objected to Qualcomm's attempt to interject the issue (or any purported discovery disputes related to the original claims) into the in-person meet and confer.  That this issue has not yet been raised to Court is also consistent with Qualcomm' s statements during the July 19 meet and confer that, as a result of Arm's position, Qualcomm would need to raise the issue with the Court and the Court would likely order a separate in-person meet and confer.  To be clear, Arm's position is that this issue remains untimely, Qualcomm has not yet raised the issue with the Court, and, to the extent Qualcomm intends to do so, Qualcomm must follow the required discovery dispute process.

## 4. Deposition of Mr. Son

Qualcomm's July 24 letter mischaracterizes the parties' discussions during the July 12 in-person meet and confer in an apparent attempt to manufacture a dispute, and despite Arm's more than reasonable offer for a resolution.

# ⅢORRISON ᖴOERSTER

C. Nyarady
August 4, 2024
Page Eight

First, regarding Qualcomm's original RFAs Nos. 8 and 9 served on Oct. 18, 2023 that were the source of all proceedings before the court, Qualcomm wrongly claims that Arm was unable to provide a sufficient explanation as to Qualcomm's position that "ARM's Supplemental R&Os to RFA Nos. 8 and 9 are not consistent with the representations ARM has made to date, including ARM's representations to the Court during the March 7, 2024 hearing." (7/24/2024 letter from C. Nyarady at 5.)  But Arm has already explained, repeatedly, that the supplemental responses are consistent and again emphasized this during the July 12 in-person meet and confer. In contrast, it is Qualcomm who has still not explained, for example, its basis for claiming the responses are inconsistent with the deposition testimony of Rene Haas.  Additionally, as to purported inconsistencies with statements by Arm's counsel during the March 7 hearing, Arm explained during the in-person meet and confer that there is no such inconsistency and that Qualcomm's apparent basis seemed to turn on its strained interpretations of the word "expires."  Arm's comments and the written responses both convey that Mr. Son stated that Qualcomm's rights would end.

Regardless, Arm offered during the in-person meet and confer to have its lead counsel conduct a follow-up interview with Mr. Son regarding Arm's responses to Qualcomm's original RFA Nos. 8 and 9, including asking Mr. Son whether he remembers using the word "expires," and to supplement its responses to Qualcomm's original RFA Nos. 8 and 9 accordingly, which Qualcomm repeatedly rejected.

Second, Qualcomm claims that Arm was unable to provide a sufficient explanation as to Qualcomm's position that "ARM's Supplemental R&Os to RFA Nos. 8 and 9 are not credible because each falsely claims that the trial date in this case was 'set for late 2024' when Mr. Son met with Samsung in early October 2022." (7/24/2024 letter from C. Nyarady at 5.)  Qualcomm's purported concern seemingly turns on the use of the word "then" (which Qualcomm omits from its excerpt of the phrase on which is focuses) rather than "later" in the responses. Further, as Arm explained during the in-person meet and confer, Qualcomm raised this concern for the first time during the in-person meet and confer, and Arm had to follow up, but was willing to address the misunderstanding in any additional responses. Accordingly, any suggestion in Qualcomm's July 24 letter that Arm was unprepared or refused to discuss this concern during the in-person meet and confer is a mischaracterization of the discussion.

Third, Qualcomm now claims the purported credibility issues have been "further heightened" because "counsel of record for ARM did not personally discuss the substance of the discovery responses with Mr. Son" and, instead, a Morrison & Foerster partner in Tokyo's office engaged in such discussion.  (*See* 7/24/2024 letter from C. Nyarady at 5.) Qualcomm fails to provide any support for its argument and, regardless, Arm has offered to have lead counsel have an additional discussion with Mr. Son regarding Arm's responses to

# ⅢORRISON ⸱ FOERSTER

C. Nyarady
August 4, 2024
Page Nine

Qualcomm's original RFA Nos. 8 and 9. Moreover, attorneys from Morrison & Foerster discussed the substance of the responses with Mr. Son with direction from lead counsel in this litigation. This is a non-issue no matter how it is portrayed.

Fourth, while Arm has offered during the in-person meet and confer to have counsel of record speak with Mr. Son and provide yet another set of supplemental responses to Qualcomm's original RFA Nos. 8 and 9, Arm explicitly reserved its rights regarding to Qualcomm's untimely and overbroad amended RFAs and new ROGs served on June 3, 2024, months after the close of fact discovery and nearly ninety days after the Court's March 7 hearing regarding the parties' dispute, if Qualcomm would agree that Arm doing so would resolve the dispute. Qualcomm's July 24 letter, indicating that "it is unclear that any such conversation would obviate the need for Qualcomm's counsel to depose Mr. Son and test his first-hand knowledge" (7/24/2024 letter from C. Nyarady at 6), suggests Arm doing so will not resolve the dispute and Qualcomm intends to seek to depose Mr. Son regardless.

Fifth, as you know, Qualcomm agreed during the July 12 in-person meet and confer to follow up with Arm regarding its proposal to speak with Mr. Son and provide additional responses. Qualcomm then waited 12 days to send a letter following up on the parties' July 12 in-person meet and confer and demanded that Arm provide updated discovery responses in just two days. (*See* 7/26/2024 email from K. Friedland to M. Vaughn.) As we have explained previously, Qualcomm's repeated attempts to impose unreasonable deadlines are counterproductive where the parties are working in good faith to resolve disputes without burdening the Court.

Nonetheless, despite Qualcomm's mischaracterizations and apparent attempt to manufacture an impasse regardless of what Arm does or does not provide, Arm remains committed to resolving the dispute without burdening the Court in a manner that provides Qualcomm with verified written responses that could be used in Court. As to Qualcomm's original RFA Nos. 8 and 9 served on Oct. 18, 2023, Arm remains willing to have its lead counsel conduct a follow-up interview with Mr. Son regarding Arm's responses to those RFAs, including asking Mr. Son whether he remembers using the word "expires" given the specific comments on that issue in the conference and to supplement its responses to those RFAs with any new information. This should resolve the dispute.

As to Qualcomm's amended RFA Nos. 8-10 and 13 and new ROGs 30-32 served on June 3, 2024, that discovery was served over six months after the November 17, 2023 close of fact discovery and nearly three months after the Court's March 7, 2024 hearing regarding the parties' dispute. It remains untimely, overbroad, and not relevant or proportional to any issues in the case. Nonetheless, Arm is willing to have its lead counsel speak to Mr. Son about the expanded information requested in Amended RFA Nos. 8–10, and Interrogatory

**IIIORRISON FOERSTER**

C. Nyarady
August 4, 2024
Page Ten


Nos. 30–32, and to provide written verified responses for them.  We believe this should
resolve Qualcomm's request for a deposition of Mr. Son.  Please confirm.



Sincerely,

*/s/ Nicholas Fung*

Nicholas Fung

# Exhibit 2

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARM LTD., a U.K. corporation, | § § § | |
| Plaintiff, | § § | |
| v. | § § | C.A. No. 22-1146 (MN)) |
| QUALCOMM, INC., a Delaware corporation, QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, and NUVIA, INC., a Delaware corporation | § § § § § § § | |
| Defendants. | § § | |

REPLY EXPERT REPORT OF W. TODD SCHOETTELKOTTE
RELATING TO REMEDIES FOR COUNTERCLAIM-PLAINTIFFS' CLAIMS

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOLLOWING IS TRUE AND CORRECT.

_____
W. TODD SCHOETTELKOTTE

6-10-24
_____
EXECUTED ON

## Table of Contents

I.      INTRODUCTION ..................................................................................................... 1

II.     CREDENTIALS AND COMPENSATION ..................................................................... 2

III.    INFORMATION REVIEWED AND CONSIDERED ........................................................ 2

IV.     LEGAL FRAMEWORK FOR DAMAGES ..................................................................... 3

V.      SUMMARY OF OPINIONS ........................................................................................ 4

VI.     BACKGROUND ....................................................................................................... 5

        A.      Coherent Mesh Network ........................................................................ 5

        B.      Nuvia TLA and Nuvia ALA ................................................................... 6

        C.      Annex 1 to Qualcomm TLA .................................................................. 8

        D.      CMN Features at Issue .......................................................................... 9

VII.    ASSESSMENT OF THE KENNEDY COUNTERCLAIM REPORT .................................. 11

        A.      Summary ............................................................................................... 11

        B.      Kennedy's Damages Framework Is Based on Flawed Assumptions ................. 12

        i.      There is no evidence that licensing fees and royalties Arm received for its CMN
                products are in any way related to the inclusion of the At-Issue CMN Features
                .............................................................................................................. 13

        ii.     There is no evidence that Arm would have redeveloped the At-Issue CMN
                Features post-termination ............................................................................ 16

        iii.    Dr. Kennedy's damages framework is based on the alleged benefits to Arm and
                fails to identify any alleged damages or harm to Nuvia or Qualcomm ............. 18

        C.      Kennedy's Purported Methodology Is Flawed ....................................... 19

        i.      Kennedy's claims related to identification of relevant Arm licensees are
                unsupported ............................................................................................... 19

ii.    Kennedy's claims related to identification of relevant Arm licensees' fees and royalties are unsupported...................................................................................... 20

iii.   Kennedy failed to consider available documents to value the new features in ██████████████████████████████████████████████

iv.    Kennedy ignored evidence of value of At-Issue CMN Features in ████████████

v.     Kennedy failed to identify the relevant time period .............................................. 25

D.     Conclusion.................................................................................................................. 26

VIII.  OTHER ISSUES .................................................................................................................... 26

## I.   INTRODUCTION

1.       Plaintiff Arm Ltd. ("Arm" or "Plaintiff") has accused Defendants Qualcomm Inc., Qualcomm Technologies, Inc. (collectively, "Qualcomm") and Nuvia, Inc. ("Nuvia") (both collectively, "Defendants") of breaching the Nuvia Architecture License Agreement (the "Nuvia ALA").[1]   The details of this initial dispute are detailed in my opening expert report, dated December 20, 2023 ("Initial Report"), and my reply expert report, dated March 25, 2024 ("Reply Report"), submitted during the course of expert discovery in this litigation.

2.       After submission of my Initial Report, Qualcomm and Nuvia accused Arm of (a) breaching the Nuvia ALA by "fail[ing] to fulfill its termination obligations to NUVIA, as set forth in ███████ of the NUVIA ALA, ████████████████████████████████████████ ██████████████████████████████████████████████████" and (b) breaching the Nuvia TLA by "fail[ing] to fulfill its termination obligations to NUVIA, as set forth in ███████ ██████████████████████████████████████████████████████████ ████████████████████████" (collectively, the "Counterclaims").[2]

3.       On May 20, 2024, Patrick F. Kennedy, Ph.D. issued an expert report ("Kennedy Counterclaim Report") which includes his opinions as to the alleged damages associated with Nuvia's and Qualcomm's Counterclaims.  I have been retained as an expert on behalf of Arm to evaluate and respond to the Kennedy Counterclaim Report.  I was asked to assume for purposes of my report that that Arm is found liable for breach of the Nuvia ALA and Nuvia TLA, but I offer no opinion regarding liability.

---

[1] Complaint, August 31, 2022, pp. 16 – 18.
[2] Defendants' Answer and Defenses to Plaintiff's Complaint and Jury Demand and Defendants' Second Amended Counterclaims, March 13, 2024, pp. 84 – 85.

4.     My analysis, as set forth in this report, is based on information available to me as of the date of this report.

## II.   CREDENTIALS AND COMPENSATION

5.     I am a Senior Managing Director of J.S. Held LLC ("J.S. Held"), a global consulting firm providing specialized technical, scientific, financial, and advisory services.[3]  I currently serve as the firm's Intellectual Property Practice Lead.  My credentials were detailed in my Initial Report.  Attached as Schedule 1 to this report is a summary of my professional background and testifying experience, including all publications over the last ten years and all expert testimonies over the last four years.

6.     J.S. Held is compensated for my team's involvement in this matter based upon J.S. Held's hourly billing rates.  My time is currently billed at a rate of $695 per hour.  J.S. Held's fee is not contingent upon the outcome of this litigation or the opinions that I express.

## III.   INFORMATION REVIEWED AND CONSIDERED

7.     In connection with the preparation of this report, I have reviewed and considered the information included in my Initial Report and Reply Report, as well as additional documents and data produced by the parties; legal documents (and related exhibits); deposition testimony (and related exhibits); and publicly available information, articles, press releases, and Internet websites.  The additional documents and other information that I have reviewed and considered as of the date of this report include those cited throughout this report (including the footnotes) as well as those listed on Schedule 2 attached to this report.  I have also held discussions with Arm personnel, including those listed in my Initial and Reply Reports, as well as Jeff Defilippi (Senior

---

[3] J.S. Held and its affiliates and subsidiaries are not a certified public accounting firm and do not provide audit, attest, or any other public accounting services.  J.S. Held is not a law firm and does not provide legal advice.

Director of Product Management of Infrastructure Line of Business at Arm), Mark Werkheiser (Fellow at Arm), and Ying Yau (Senior Director of Licensing at Arm).  I have also had discussions with Arm's technical expert, Robert Colwell, Ph.D.  In addition, I have reviewed and considered the following 30(b)(6) deposition transcripts (and related exhibits), in addition to the deposition transcripts and exhibits referenced in my Initial and Reply Reports:

**Arm**

- Guy Larri, Distinguished Engineer

**Nuvia**

- Geetha Vedaraman, SOC Architect

8.    In addition to the above, I have also reviewed and considered the Kennedy Counterclaim Report, including the opinions, documents, and other information cited therein.  In forming my opinions in this case, I have relied upon the information and documents identified in my Initial Report, Reply Report, and this report, and I have also relied upon my more than 25 years of experience and expertise in analyzing remedies for misuse of intellectual property, analyzing the adequacy of damages to compensate for harms relating to the misuse of intellectual property, and assessing and calculating damages adequate to compensate for such harms.  My analysis in this case is ongoing.  Should additional information, such as documents or data provided by the parties, testimony, whether through expert report or deposition, or rulings issued by the Court, come to my attention after the date of this report, I may find it necessary to update or revise my analysis, opinions, and conclusions.  I reserve my right to do so.

## IV.    LEGAL FRAMEWORK FOR DAMAGES

9.    I am informed and understand that a party who proves liability for breach of a contract is entitled to damages adequate to compensate for the reasonable and foreseeable harm

suffered by the party.  I am informed and understand that the measure of damages must be non-speculative and ascertainable with reasonable certainty but need not be exact.

10.    I am informed and understand that, while generally not available as a remedy for breach of contract, a party can seek disgorgement of profits as an equitable remedy for breach of contract under a theory of quasi-contract.  I am informed and understand that disgorgement of profits is only available where there is no adequate remedy at law to redress the party's injury.  I am informed and understand that a party seeking disgorgement of profits based on breach of contract must show that the breaching party was unjustly enriched.  I am informed and understand that a party is unjustly enriched when they receive a benefit and unjustly retain the benefit at the expense of another.

## V.    SUMMARY OF OPINIONS

11.    In my opinion, Dr. Kennedy's opinions rely on flawed assumptions and a flawed methodology to calculate alleged damages associated with Arm's incorporation and use of what Dr. Kennedy refers to as the "At-Issue CMN Features."

12.    First, Dr. Kennedy's opinions are deficient because he relies on several flawed assumptions, including:

- Dr. Kennedy wrongly assumes that licensees have paid licensing fees and/or royalties to Arm because of the presence of any one or more of the At-Issue CMN Features in ARM CMN products.  Dr. Kennedy does not cite any evidence that supports that assumption, and I am aware of none.

- Dr. Kennedy wrongly assumes that Arm would invest in the redevelopment or reimplementation of one or more of the At-Issue CMN Features if Arm were forced to remove them from any Arm CMN product after termination of the Nuvia ALA and TLA.  Dr. Kennedy does not cite any evidence that supports that assumption, and I am aware of none.

- Dr. Kennedy wrongly assumes that Nuvia and Qualcomm have been harmed by any alleged benefits Arm has received from the At-Issue

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                    4

CMN Features.  Dr. Kennedy does not cite any evidence that supports that assumption, and I am aware of none.

13.    Second, Dr. Kennedy's purported methodology and damages are flawed for several additional reasons.  Dr. Kennedy does not calculate, in whole or in part, any specific alleged damages and his alleged methodology is also flawed for many reasons, including the following:

- Dr. Kennedy purports to identify relevant licensees, but simultaneously claims that he is lacking information about the relevant licensees.

- Dr. Kennedy claims to have insufficient information to identify relevant Arm licensees' fees and royalties, while simultaneously identifying documents with this information.

- Dr. Kennedy claims to have insufficient information to attribute value to new features in CMN-Kampos but fails to consider available documents which do provide insight regarding the value of new CMN features and reason for any potential price premium.

- Dr. Kennedy fails to perform or present a technical apportionment analysis, instead deferring to a lack of documents from Arm, despite his assertion that the At-Issue CMN features were driven by Nuvia's demand and feature requests.

- Dr. Kennedy contends that Arm's benefit would be "limited to the time period when Arm would independently develop that At-Issue CMN Features" but fails to identify that time period or explain why he has not identified that time period.

## VI.    BACKGROUND

14.    A discussion of the industry at issue, parties at issue, and the Nuvia TLA and ALA was included in Section VI of my Initial Report and is incorporated herein.

### A.  Coherent Mesh Network

15.    I understand the technology at issue in this matter is referred to as a Coherent Mesh Network ("CMN").  A CMN is an on-chip interconnect IP product that is designed to allow various components of a System-on-a-Chip ("SoC") (*i.e.*, CPUs, GPUs, accelerators, etc.) to

interact with each other and on-chip memory.[4]

16.   Arm's website describes the CMN-700 as follows: "[t]he Arm Neoverse CMN-700 Coherent Mesh Network is designed for intelligent connected systems across a wide range of applications, including networking infrastructure, storage, server, HPC, automotive, and industrial solutions.  The highly scalable mesh is optimized for Armv9 and Armv8-A processors, multichip configurations, and CXL attached devices. It can be customized across a wide range of performance points."[5]  Further, Arm's CMN-700 ███████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████"[6]

17.   Prior to the release of CMN-700 (also known as CMN-Kampos), Arm had previous versions referred to as CMN-600 (CMN-Porter) and (CMN-650) (CMN-Rhodes).[7]  CMN-600 was the first CMN product which Arm offered.[8]   Over the years, improvements to CMN have occurred, and been implemented in various versions, including CMN-600, CMN-600AE, CMN-650, and CMN-700.[9]

**B.   Nuvia TLA and Nuvia ALA**

18.   As discussed in my Initial Report, Arm and Nuvia executed the Nuvia TLA in September 2019.[10]  Arm and Nuvia also executed ███████ to the Nuvia TLA effective March 27, 2020.[11]  As part of ██████, Arm granted to Nuvia a non-exclusive, world-wide license to the

---

[4] Discussions with Jeff Defilippi and Mark Werkheiser; Deposition of Mark Werkheiser, December 7, 2023, p. 11.
[5] https://www.arm.com/products/silicon-ip-system/corelink-interconnect/cmn-700.
[6] Arm Neoverse CMN-700 Coherent Mesh Network, Technical Reference Manual, Revision: r3p2, p. 17.
[7] Colwell Rebuttal Report, pp. 11 – 15.
[8] Colwell Rebuttal Report, p. 12.
[9] Colwell Rebuttal Report, pp. 11 – 15.
[10] ARM_00111064 – 080.
[11] ARM_01436707 – 716.

███████████████████████████████████████

███████████████ Further, █████ provided an █████████████

███████████████████████████████████████

███████████ [13] Nuvia agreed to a license fee of ███████ for the rights granted in

███████ [14] ████████ also included █████████ as follows:



████████████ "█████" to include ████████████████████

███████████████████████████████████████

██████ "[16] ████████ also stated that ████████████████████

████████████████ [17] ████████ also stated that ████████████████

████████████████████████████ [18]

19.   Arm and Nuvia executed ████████████ to ████████ of the Nuvia TLA effective

January 18, 2021.[19] The ██████████ stated that ████████████████████

███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████  █  ████████████████

were identified in ████████████ to the Nuvia TLA.[21]

20.   In addition to the Nuvia TLA, the parties executed the Nuvia ALA in September

2019.[22]   The Nuvia ALA also indicated that █████████████████████████

██████████████████████████████ identified in ████████ of the Nuvia

ALA.[23] ██████████ was defined as ████████████████████████████

████████████████████████████████████████████████

████████████[24]

21.   As such, I understand that Arm asserts that "████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████[25]

C.   ██████████ to Qualcomm TLA

22.   Qualcomm and Arm first entered into a TLA in 1997.[26]   Effective July 23, 2021, Arm

and Qualcomm executed ████████ the Qualcomm TLA.[27]   ██████████ included rights to Arm

---

█ █████████████████████
█ █████████████████████████████
█ █████████████████████████████
█ ███████████████████████████████████
█ ███████████████
[25] Arm Ltd.'s First Supplemental Objections and Responses to Qualcomm's Fifth Set of Interrogatories
(Nos. 26-28), May 10, 2024, p. 21.
█ ██████████████████

products, including Neoverse CMN-700-Max Coherent Mesh Network.[28]  Qualcomm agreed to

pay a ███████████████████ for all the products included in ███████[29]  The royalty payment

was stated to be payable ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████ Specifically, the

███████████████████████████████████████████████ containing a

Neoverse CMN-700-Max Coherent Mesh Network.[31]

### D.  CMN Features at Issue

23.    Dr. Kennedy contends that the alleged damages relate to Arm's incorporation of the

following "At-Issue CMN Features" into Arm's CMN products: ████████████████████

████████████████████████████████████████████████████████████████████

███████████ These features were identified by Arm as those that "were requested by Nuvia and

implemented by Arm."[33]  The At-Issue CMN Features are also the only features addressed in the

Opening Expert Report of Dr. Murali Annavaram Regarding Qualcomm's Counterclaim dated

May 20, 2024 ("Annavaram Report").  Accordingly, I will focus on the At-Issue CMN Features in

this report.

24.    I understand from discussions with Mr. Werkheiser that he is not aware of any Arm

partners, aside from Qualcomm/Nuvia, using (or in the past having used) certain of the At-Issue

CMN Features, suggesting that those features had value only to Nuvia.  In particular, I

understand from discussions with Mr. Werkheiser that he is not aware of any Arm partners, aside

---

[28] QCARM_3485446 – 461 at 446 – 447.
[29] QCARM_3485446 – 461 at 459.
[30] QCARM_3485446 – 461 at 460.
[31] QCARM_3429791 – 872 at 819.
[32] Kennedy Counterclaim Report, p. 21.
[33] Arm Ltd.'s First Supplemental Objections and Responses to Qualcomm's Fifth Set of Interrogatories (Nos. 26-28), May 10, 2024, p. 18.

from Qualcomm/Nuvia, using ███████████████████████
████████████

25.    Additionally, I understand from discussions with Mr. Werkheiser that certain of the At-Issue CMN Features were requested by other Arm partners before they were requested by Nuvia, suggesting that those features were not necessarily attributable to Nuvia, but that they were not implemented in response to those requests.  In particular, I understand from discussions with Mr. Werkheiser that other partners requested ████████████████████████████ ████████████ before those features were requested by Nuvia, but that those features were not implemented in response to those requests.  I understand from discussions with Mr. Werkheiser that Arm's decision to not implement these features did not impact partners' acceptance of prior versions of CMN, suggesting a limited value (if any) for those features.[35]

26.    Although Dr. Kennedy focuses on only the At-Issue CMN Features, he also states that "[i]n or around August 2020, Counterclaim-Plaintiffs assert that Arm agreed to include over 25 enhancements to CMN-Kampos that were not featured in CMN-Rhodes.   In another spreadsheet, there are 17 features requested that were assessed validated, pushed to RTL, and supported by Arm."[36]  However, Mr. Werkheiser testified that Arm did not implement all the features requested by Nuvia.[37]  Mr. Werkheiser further testified that "about half of these I don't think we ended up implementing, if we are talking about this table ███████.  So that—that by definition, means not a majority.  And then there's a portion of these even that were implemented that weren't really—they were part of the CMN feature set exist—you know, before Nuvia made

---

[34] Discussions with Mark Werkheiser.
[35] Discussions with Mark Werkheiser.
[36] Kennedy Counterclaim Report, pp. 19 – 20.
[37] Deposition of Mark Werkheiser, December 7, 2023, pp. 52 – 53.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                    10

the request."[38]   Additionally, Mr. Werkheiser stated that "some [features] were already part of our kind of plan—a bunch of these were already part of our plan for CMN products."[39]   I understand from Mr. Werkheiser that the number of features requested by Nuvia did not exceed the typical number of feature requests made by Arm's lead partners.[40]

## VII.   ASSESSMENT OF THE KENNEDY COUNTERCLAIM REPORT

### A.   Summary

27.   In his report, Dr. Kennedy states that "this report provides [his] affirmative opinions of the damages resulting from Counterclaim-Defendant's alleged harmful acts, which are set forth in Counterclaim-Plaintiff's second amended counterclaims."[41]   However, Dr. Kennedy provides no quantification of damages in his report.   Specifically, Dr. Kennedy asserts that he described his methodology in his report "but do[es] not provide a numerical figure" since "sufficient information has not been produced…."[42]

28.   The Kennedy Counterclaim Report states that:

> In the but-for world, Arm would have had to develop the At-Issue CMN Features following the termination, and the features would not have been available to license until the At-Issue CMN Features were independently developed by Arm.   However, Arm allegedly received license fees and royalties for CMN-Kampos which are attributable, at least in part, to the Nuvia Confidential Information during the post-termination period.   The license fees and royalties attributable to the At-Issue CMN features during the period from termination up until Arm would have completed development, represent benefits Arm would not have otherwise received without the alleged breach.[43]

29.   Although Dr. Kennedy does not calculate damages, he does outline the following methodology that he would purportedly use to quantify alleged damages:

---

[38] Deposition of Mark Werkheiser, December 7, 2023, pp. 51, 55.
[39] Deposition of Mark Werkheiser, December 7, 2023, p. 54.
[40] Discussions with Mark Werkheiser.
[41] Kennedy Counterclaim Report, p. 1.
[42] Kennedy Counterclaim Report, p. 27.
[43] Kennedy Counterclaim Report, p. 22.

- "Identification of Relevant Arm Licensees;"[44]

- "Identification of Relevant Arm Licensees' Fees and Royalties;"[45]

- "Attributing Value to New Features in CMN-Kampos;"[46]

- "Relative Value of the At-Issue CMN Features to New Features;"[47] and

- "Limiting Fees to the Relevant Time Period."[48]

30.   I have reviewed and considered the Kennedy Counterclaim Report as well as documents and information referenced by Dr. Kennedy.   As described further below, Dr. Kennedy's assumptions and methodology are fundamentally flawed.  Throughout the remainder of this report, I provide my assessment of the discussion and conclusions set forth in the Kennedy Counterclaim Report.  Overall, Dr. Kennedy fails to distinguish between damages to Qualcomm or Nuvia and any benefit received by Arm.  Any lack of specific criticism is not meant to imply and is not agreement with Dr. Kennedy's opinions and conclusions.

### B.   Kennedy's Damages Framework Is Based on Flawed Assumptions

31.   Dr. Kennedy begins his "Damages Analysis"[49] with a discussion of his "Damages Framework."[50]  As discussed in more detail below, Dr. Kennedy's "Damages Framework" suffers from three fundamental flaws: (1) Dr. Kennedy provides no evidence that any licensee paid any licensing fees or royalties to Arm based on the presence of any one or more At-Issue CMN Features in any Arm CMN products (and I am aware of none); (2) Dr. Kennedy provides no evidence that Arm would invest in redeveloping or reimplementing any one or more of the At-Issue CMN Features if Arm were required to remove them from any Arm CMN product (and I

---

[44] Kennedy Counterclaim Report, pp. 24 – 25.
[45] Kennedy Counterclaim Report, pp. 25 – 26.
[46] Kennedy Counterclaim Report, p. 26.
[47] Kennedy Counterclaim Report, pp. 26 – 27.
[48] Kennedy Counterclaim Report, p. 27.
[49] Kennedy Counterclaim Report, p. 21.
[50] Kennedy Counterclaim Report, pp. 21 – 22.

am aware of none); and (3) Dr. Kennedy purports to address the benefit to Arm but does not identify any damages or harm caused to Nuvia or Qualcomm, does not quantify any damages or harm to Nuvia or Qualcomm, and does not disclose any methodology for calculating any damages or harm to Nuvia or Qualcomm.

> ### i. There is no evidence that licensing fees and royalties Arm received for its CMN products are in any way related to the inclusion of the At-Issue CMN Features

32. Dr. Kennedy's "Damages Framework" begins by stating that "Counterclaim-Plaintiffs assert that Arm benefits from use of the Nuvia Confidential Information by generating licensing fees and royalties by licensing Nuvia Confidential Information under various agreements to Qualcomm's competitors" and concludes that Arm "benefited through the receipt of licensing fees and royalties from CMN-Kampos technology that included value related to the Nuvia Confidential Information."[51]  But Dr. Kennedy fails to identify any evidence that any licensing fees and/or royalties Arm received for its CMN products are in any way related to the inclusion of any one or more At-Issue CMN Features, that the inclusion of any one or more At-Issue CMN Features drove demand for any Arm CMN products, or that Arm emphasized or specifically marketed any one or more of the At-Issue CMN Features.  For example, Dr. Kennedy does not identify any Arm licensee whose decision to license any CMN product at any point in time was based, in whole or in any part, on the presence of any one or more of the At-Issue CMN Features.  This is unsurprising, given the limited use of features and features requested only by Nuvia.  I am not aware of any such evidence and, instead, as further discussed below, my understanding is that licensing fees and royalties Arm received for its CMN products are not related to the inclusion of the At-Issue CMN Features.  Importantly, Dr. Kennedy's assumption

---

[51] Kennedy Counterclaim Report, pp. 21 – 22.

indicates that there are no damages to Nuvia or Qualcomm under the relevant legal standard as I understand it.  As such, given that the relevant information pertaining to damages to Nuvia would be within Nuvia's possession, Dr. Kennedy's statements regarding a lack of information are misguided.

33.    I understand that the At-Issue CMN Features are not key or important features of CMN-700.  For example, I understand from the June 10, 2024 Rebuttal Expert Report of Robert Colwell, Ph.D. ("Colwell Rebuttal Report") that the At-Issue CMN Features "have limited value and utility in terms of the overall CMN product."[52]  For example, it is my understanding that:

- ███████████████████████████████████ features were only requested by Nuvia and are not in use by any non-Nuvia Arm partners. [53]  This confirms that there has been no benefit to Arm beyond its relationship to Nuvia, and no corresponding harm to Nuvia (given that Nuvia obtained the use of a feature it requested).

- █████████████ feature, while requested by some Arm partners, is only known to be in use by Nuvia.[54]  This confirms that there has been no benefit to Arm beyond its relationship with Nuvia, and no harm to Nuvia (given Nuvia obtained the use of a feature it requested).

- ████████████████████████████████ features were requested by other Arm partners, but their significance in driving demand for CMN as a whole is minimal. [55]  This confirms that any benefit to Arm is not attributable to Nuvia's request.

34.    Dr. Kennedy's assumption ignores that certain At-Issue CMN Features are no longer available in CMN-700, or that there is no indication that other Arm customers use certain of the At-Issue CMN Features.  As discussed above, I understand from discussions with Mr. Werkheiser that he is not aware of any Arm partners, aside from Qualcomm/Nuvia, using (or in the past having used) certain of the At-Issue CMN Features such as ████████████████████████

---

[52] Colwell Rebuttal Report, p. 17.
[53] Colwell Rebuttal Report, pp. 23 and 28; Discussions with Mark Werkheiser..
[54] Colwell Rebuttal Report, p. 21.
[55] Colwell Rebuttal Report, pp. 33 – 34 and 36 – 37.

██████████████████████████████ [56]  I also understand that certain of these features are currently disabled—specifically, ██████████████████████████████ [57]  I also understand that certain of the At-Issue CMN Features were previously requested by other Arm partners, but were never implemented (indicating their absence did not impact partners' acceptance of prior versions of CMN)—specifically, ████████████████████████████████

███████ [58] ██████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████ Given the lack of demand, use, or availability of many of the At-Issue CMN Features, Dr. Kennedy's assumption that these features provided a benefit to Arm is unsupported.  At best, these were features from which Qualcomm/Nuvia benefited.  For example, Mr. Werkheiser testified that the requested CMN features "did improve the fabric for [Nuvia's] use cases, and most—most of the features were targeted to their use case." [60]  Mr. Larri testified that the features "may have had some incremental benefit.  Certainly, they had the benefit of keeping Nuvia happy as a customer, because Nuvia was asking for them, and we certainly strive to keep our customer happy." [61] ████████████████████

██████████████████████████████████████████

█████████████████

35.   In addition, based on my discussions with Mr. Defilippi, I understand the primary aspects of CMN-700 that are touted over previous versions include its ██████████████████

[56] Discussions with Mark Werkheiser.
[57] Discussions with Mark Werkheiser.
[58] Discussions with Mark Werkheiser.
[59] ████████████████████████████████
[60] Deposition of Mark Werkheiser, December 7, 2023, p. 54.
[61] Deposition of Guy Larri, May 10, 2024, p. 197.
[62] ██████████████████████████████████

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    15

████████████████████████████████████████████ [63,64] I understand that these

capabilities are separate and independent from the At-Issue CMN Features.[65]  Further, I note that

the CMN-700 ███████████████████████ identifies numerous ██████████████ [66] each of which I

understand are separate and independent of the At-Issue CMN Features.[67]  Indeed, I understand

that the absence of the At-Issue CMN Features would not have been a hinderance to Arm's ability

to release CMN-700 when it did.[68]  The absence of evidence that the At-Issue CMN Features were

necessary to release CMN-700 or that a particular licensee would not have licensed CMN-700 if

it did not include the At-Issue CMN Features, contradicts Dr. Kennedy's underlying premise that

the At-Issue CMN Features provide any value to Arm's ability to obtain license fees and royalties

for CMN-700 and that Arm would have had to redevelop the At-Issue CMN Features in the "but-

for" scenario posed by Dr. Kennedy.

### ii.   There is no evidence that Arm would have redeveloped the At-Issue CMN Features post-termination

36.   Dr. Kennedy also states that "[i]n the but-for world, where it is assumed that Arm

would have ceased using the Nuvia Confidential Information, Arm would have had to incur

expenses and development time to duplicate the efforts that Arm had previously undertaken in

---

[63] Discussions with Jeff Defilippi.
[64] Mr. Larri testified that "[t]he key change from the CMN Rhodes product to the Kampos product in its various releases was that the Kampos product ██████████████████████████████████████████████ whereas the earlier Rhodes product ████████████████████████████ ████████████████████████████ but did not ██████████████████ That was the most significant change from Rhodes to Kampos, and the most significant commercial driver for ARM to move forward and develop Kampos was the need to ██████████████████████████████████████████ ████████████████" (see Deposition of Guy Larri, May 10, 2024, pp. 83 – 84) Mr. Larri also testified that "[i]t was supporting the latest revision of the ██████████████████████████████████████████████████ ████████████████████████████████████████ (see Deposition of Guy Larri, May 10, 2024, p. 194).
[65] Discussions with Jeff Defilippi.
[66] Arm Neoverse CMN-700 Coherent Mesh Network, ████████████████████████████████ ██████
[67] Discussions with Jeff Defilippi.
[68] Discussions with Jeff Defilippi and Mark Werkheiser.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                              16

developing the Nuvia Confidential Information and associated At-Issue CMN Features."[69]   Dr. Kennedy also states that "during this development time or head start period, Arm would have benefited from receiving licensing fees and royalties related to the At-Issue CMN Features."[70]  Dr. Kennedy's assumption that Arm would have to "duplicate the efforts that [it] had previously undertaken in developing the Nuvia Confidential Information and associated At-Issue CMN Features" is fundamentally flawed because there is no evidence that if Arm was forced to remove the At-Issue CMN Features from its CMN product post-termination, Arm would have made any investment to redevelop and reimplement the features.  As discussed above, available evidence indicates that the At-Issue CMN Features did not drive the use of CMN-700 and their absence would not have impacted Arm's licensing of CMN-700 (or any other Arm product).  Accordingly, there is no basis to assume Arm would have had to reimplement any of the At-Issue CMN Features if Arm had removed them upon termination of the Nuvia ALA and TLA.

37.   Further, Dr. Kennedy fails to identify the alleged "development time or head start period" for any of the At-Issue CMN Features or any evidence that Arm previously "incur[red] expenses and development time … in developing the Nuvia Confidential information."[71]  Indeed, Dr. Kennedy does not provide any evidence for the costs, time, or timeline for the development of any particular CMN feature.  Instead, Dr. Kennedy provides a conclusory statement that Arm would have incurred expenses and development time, without addressing what this cost would even entail, much less how it is a measure of any benefit to Arm, nor does he explain how this would be an appropriate measure of harm to Qualcomm or Nuvia.  Further, as discussed above, there would have been no reason for Arm to redevelop the At-Issue CMN Features.

---

[69] Kennedy Counterclaim Report, pp. 21 – 22.
[70] Kennedy Counterclaim Report, p. 22.
[71] Kennedy Counterclaim Report, pp. 21 – 22.

Additionally, as discussed later in this report, even if there was a need to redevelop the At-Issue CMN Features, the time needed to do so would have been relatively minimal, as Mr. Larri discussed in his deposition.[72]

### iii. Dr. Kennedy's damages framework is based on the alleged benefits to Arm and fails to identify any alleged damages or harm to Nuvia or Qualcomm

38.    Importantly, the Kennedy Counterclaim Report provides no indication of harm to Nuvia or Qualcomm as a result of the alleged actions by Arm.  Specifically, Dr. Kennedy provides no indication that Nuvia (or Qualcomm) has lost sales or profits due to Arm's alleged actions, which is not surprising given the absence of any evidence that Nuvia or Qualcomm license CMN features, or even CMN, to others.  Further, Dr. Kennedy has provided no indication that Nuvia (or Qualcomm) has been unable to license the Nuvia Confidential Information and/or At-Issue CMN Features to third parties, therefore depriving Nuvia (or Qualcomm) of license fees or royalties, which again is not surprising, given the absence of licensing of CMN features, or even CMN, by Nuvia or Qualcomm to others.  In addition, Dr. Kennedy provides no indication that Nuvia (or Qualcomm) has been unable to implement the Nuvia Confidential Information and/or At-Issue CMN Features in its own products given Arm's implementation.  Dr. Kennedy also provides no indication of the research and development expenses that Nuvia incurred to develop the Nuvia Confidential Information and/or At-Issue CMN Features, which could provide a measure of value of the Nuvia Confidential Information and/or At-Issue CMN Features. ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ That

---

[72] Deposition of Guy Larri, May 10, 2024, pp. 191 and 196 – 197.
[73] ████████████████████████████████████████████

Dr. Kennedy provides no assessment of these types of harm or relevant information calls into question the underlying value, if any, of the At-Issue CMN Features.  ███████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████[4]  Finally, Dr. Kennedy, in failing to adequately address how Nuvia or Qualcomm have been harmed, fails to address at all whether any measure of harm would be inadequate to compensate Nuvia or Qualcomm.  Dr. Kennedy's flawed analysis of the benefit to Arm does not cure this deficiency.

### C.   Kennedy's Purported Methodology Is Flawed

39.   In addition to his flawed assumptions, Dr. Kennedy fails to provide a cognizable methodology to adequately analyze the appropriate damages owed to Defendants to compensate for any alleged breach by Arm.  In particular, Dr. Kennedy's methodology (1) makes unsupported claims regarding the ability to identify Arm licensees, (2) relies on an unsupported identification of relevant Arm license fees, (3) fails to consider relevant documents valuing CMN, (4) fails to consider documents valuing new CMN features, (5) ignores available evidence valuing the At-Issue CMN features, and (6) fails to identify the relevant time period for damages.

### i.   Kennedy's claims related to identification of relevant Arm licensees are unsupported

40.   Dr. Kennedy asserts that "[t]he first step in [his] analysis is to identify the relevant licenses where Arm licensees have a license to at least CMN-Kampos."[75]   Dr. Kennedy also contends that certain requested information was not available and that he has "reviewed the available information produced in this matter to date and describe[s] such information in the

---

[74] ████████████████████████████████████████
[75] Kennedy Counterclaim Report, p. 24.

following paragraphs."[76]

41.    As an initial matter, identifying Arm licensees is irrelevant because that information is only relevant to the benefit Arm would have received, and would not help measure the harm to Qualcomm or Nuvia.  Nevertheless, despite claiming not to have relevant information, Dr. Kennedy goes on to identify a number of CMN-700 licensees: ███████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████.[77]   As such, while claiming insufficient information, Dr. Kennedy was able to identify Arm's CMN-700 licensees, yet chose to do nothing with the available information.

### ii.    Kennedy's claims related to identification of relevant Arm licensees' fees and royalties are unsupported

42.    Dr. Kennedy states that "[t]he next step in [his] analysis is to identify the total license fees, license fees attributable to CMN-Kampos, royalties attributable to CMN-Kampos, and the terms of the agreement."[78]   Dr. Kennedy goes on to claim that if he had certain licensing documents that were not produced by Arm, he "would have analyzed the fees, royalties, and terms to identify revenue specifically related to CMN-Kampos."[79]   Despite this claim, Dr. Kennedy recognizes such information in the Nuvia TLA, Qualcomm TLA ████, and ████████ which indicates that Arm has received ████ in royalty payments through the end of 2023 for CMN-700.[80]

43.    Similar to other aspects of Dr. Kennedy's opinions, this claim by Dr. Kennedy concerns the wrong frame of reference.  An identification of Arm licensees' fees and royalties is

---

[76] Kennedy Counterclaim Report, p. 24.
[77] Kennedy Counterclaim Report, pp. 24 – 25.
[78] Kennedy Counterclaim Report, p. 25.
[79] Kennedy Counterclaim Report, p. 25.
[80] Kennedy Counterclaim Report, pp. 25 – 26.

only helpful for measuring the benefit to Arm, and not the harm to Nuvia and Qualcomm. Moreover, a proper metric in measuring that benefit, were it relevant, would be the royalties attributable to specific CMN features given the number of features and abundant absence of use of particular features.  As such, even under Dr. Kennedy's framing, the demand for said incremental and often unused features is minimal.

44.    I understand that for many of the licensees identified by Dr. Kennedy, they have a ███████████ license from Arm that would ████████████████████████████████████[81] For example, Mr. Larri testified that "there may be a ███████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████"[82]  I understand there are bundled licenses for CMN-700, including ████████████████████[83]  Additionally, several of the entities do not have a license to distribute products including CMN-700, such as ███████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████[84]    I   note   that   ███████████   includes   information   related   to ████████████████████████████████████████  which  Dr. Kennedy ignored.  I also note that ARM_01460538 also includes information regarding ███████ ████████████, which Dr. Kennedy does not discuss in his report.[85]



---

[81] Discussions with Ying Yau.
[82] Deposition of Guy Larri, May 10, 2024, p. 94 (see also pp. 94 – 95).
[83] Discussions with Ying Yau.
[84] Discussions with Ying Yau; ████████████████████
[85] Based on discussions with Ying Yau, I understand that ████████████ identifies the royalty payments that Arm has received for any licensee that has a license to CMN-700 with a specific royalty rate associated with CMN-700.

### iii.   Kennedy failed to consider available documents to value the new features in CMN-700

45.   Dr. Kennedy states that "[a]fter identifying the relevant license fees and royalties, the next step is to quantify the value attributable to the new features including the At-Issue CMN Features found in CMN-Kampos and previous technologies like CMN-Rhodes."[86]  Dr. Kennedy goes on to assert that with ███████████, he would "apply the CMN-Kampos price premium to the CMN-Kampos license fees and royalties to determine the value attributable to the new features found in CMN-Kampos."[87]

46.   However, Dr. Kennedy could have considered the evidence he cites in his report when comparing CMN-650 and CMN-700.  Specifically, Dr. Kennedy describes that in the Nuvia TLA, "Arm identified a ████████████████ to CMN-Rhodes with an upgrade option to CMN-Kampos and payable over five years."[88]  As shown in the ██████████ to the Nuvia TLA ███████, the ██████████████████████████████████████████████████[89] Indeed, Figure 4 of the Kennedy Counterclaim Report indicates CMN-Kampos-Max is subject to a ████████████ from CMN-Rhodes-Max.[90]

47.   Nevertheless, Dr. Kennedy's price premium approach is flawed because he fails to consider that factors other than new features could attribute to a price premium.  Several factors could contribute to a change in price.  For example, compatibility with the latest Arm architecture could affect pricing.  As discussed previously in this report, CMN-700 is compatible with ARM V9, whereas CMN-650 is compatible only up through ARM V8.  As such, Dr. Kennedy has not explained how he would account for this significant difference between CMN-650 and CMN-700

---

[86] Kennedy Counterclaim Report, p. 26.
[87] Kennedy Counterclaim Report, p. 26.
[88] Kennedy Counterclaim Report, p. 25 (citing QCARM_0275743 – 763 at 757 and ARM_00003621 – 624).
[89] ARM_00003621 – 624 at 623.
[90] Kennedy Counterclaim Report, p. 25 (citing ARM_00082871 – 723 and ARM_00082874, tab "Pricing Model").

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                22

and whether any price premium can be attributed to "new features" and not other factors such as licensees' ability to implement CMN-700 into the latest version of Arm's products.

48.    Arm's licensing model could also affect pricing.  As discussed in my Initial Report, Arm's licensing is sophisticated and based on an ecosystem where many factors could influence the fluctuation of pricing.[91]  Dr. Kennedy fails to account for these or any other factors and their impact on pricing.

49.    A price premium could also be impacted by economic factors such as general inflation.  As Arm stated in its 2nd Amended 2023 F-1 filing, "[d]emand for our products and services is largely dependent on the semiconductor and electronics industries, which are volatile, intensely competitive and generally characterized by declining ASPs over the life of a generation of chips.  The effect of those prices decreases is compounded by the fact that our royalty rates generally decrease with volume of sales increases [].  Additionally, demand for our products and services decrease if growth in the semiconductor or electronics industries slows or declines."[92] The fact that Dr. Kennedy does not account for (or even mention) these types of impacts, and the other issues discussed above, calls his methodology into question.

### iv.    Kennedy ignored evidence of value of At-Issue CMN Features in CMN-700

50.    Dr. Kennedy states that "[a]nother step in [his] analysis is to consider the technical importance of the Nuvia Confidential Information relative to all of the new features found in CMN-Kampos."[93]  After claiming that certain information was not produced by Arm, Dr. Kennedy asserts that "[i]f sufficient information to conduct an apportionment had been produced and therefore an apportionment could be conducted, then [he] would apply this apportionment

---

[91] Initial Report, pp. 17 and 37.
[92] ARM_01259705 – 105 at 732.
[93] Kennedy Counterclaim Report, p. 26.

which would reflect the relative value of the At-Issue CMN Features to all of the new features in CMN-Kampos, to the value attributable to the new features found in CMN-Kampos, resulting in the value attributable to the At-Issue CMN Features."[94]

51.     However, Dr. Kennedy does not explain why this step must solely rely on information produced by Arm.  In fact, Dr. Kennedy relies on a conversation with Ram Srinivasan (Senior Director at Qualcomm) in his discussion of this step.[95]  Further, in my experience, the information related to this step described by Dr. Kennedy could be considered as part of a technical expert's report, yet the Annavaram Report includes no such analysis.  Dr. Kennedy's failure to set out to perform or present a technical apportionment, while claiming it would be necessary, reflects another example as to why his methodology is fundamentally flawed.

52.     Further, as discussed in this report, evidence and testimony indicate the At-Issue CMN Features have little to no additional value to CMN-700 licensees—perhaps with the exception of Nuvia, which would not support harm to Nuvia (instead a benefit) or a benefit to Arm (instead, the expense of adding features for a single licensee without further compensation). Even so, as discussed previously, Nuvia's witness described the At-Issue CMN Features as "incremental."  For example, there is no evidence that the primary drivers of the adoption of CMN-700 and its key features are related to the At-Issue CMN Features.  In addition, CMN-700 licensees would not have adopted CMN-700 any differently without the At-Issue CMN Features given their lack of use or availability.  Finally, as I understand from Dr. Colwell, each of the At-Issue CMN Features is unimportant to the operation of CMN and would not be a strong driver of adoption by Arm partners.[96]

---

[94] Kennedy Counterclaim Report, p. 27.
[95] Kennedy Counterclaim Report, p. 27.
[96] Discussions with Dr. Robert Colwell.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

### v.    Kennedy failed to identify the relevant time period

53.    Dr. Kennedy states that "Arm's benefit received would be limited to the time period when Arm would independently develop the At-Issue CMN Features, and [he] would apportion the value attributable to the At-Issue CMN Features to this time period only."[97]  However, the Kennedy Counterclaim Report omits the amount of time purportedly necessary for Arm to redevelop the At-Issue CMN Features.  I note that of the information identified in paragraph 56 of the Kennedy Counterclaim Report that Dr. Kennedy states he does not have, none are related to the amount of time required to develop or redevelop the At-Issue CMN Features.  Nevertheless, given that Nuvia and Qualcomm are asserting alleged misuse of Nuvia's Confidential Information and At-Issue CMN Features, setting forth the time to develop such confidential information and features would presumably be available to Nuvia or Qualcomm. For example, Nuvia should know when it allegedly first requested the At-Issue CMN Features, and when those features were first implemented as Nuvia was also involved in reoccurring meetings with Arm concerning its CMN product and its features.[98]  Yet, Dr. Kennedy does not analyze information from Nuvia or Qualcomm.  In my experience, the information related to the time to develop or redevelop the At-Issue CMN Features could be considered as part of a technical expert's report, yet the Annavaram Report includes no such analysis.

54.    In any event, Dr. Kennedy ignored testimony from Mr. Larri related to the time it took Arm to develop features requested by Nuvia.  Specifically, Mr. Larri testified that it took "[h]alf a person year, so half a year of one full-time engineer."[99]  By way of comparison, Mr. Larri testified that in total, "there had been a team of ██████ working on CMN over ███████

---

[97] Kennedy Counterclaim Report, p. 27.
[98] Discussions with Jeff Defilippi and Mark Werkheiser.
[99] Deposition of Guy Larri, May 10, 2024, p. 191.

████," and that "███████ years of work for the development of CMN was a conservative estimate."[100]  Further, Mr. Larri testified that "many of the requests [from Nuvia] were of this type of category of taking something and just making it deeper or a bit wider, not really any kind of fundamental change to the design, and that most of the—well, all of the suggestions that had uniquely come from Nuvia were quite simple.  In the context of something that has ███████ ████████████████████████ of technical reference manual, you know, this kind of—they were very, very small incremental changes on top of something that was already big and complex."[101]  Similarly, Mr. Larri testified that Nuvia "had a number of different goals and they were all quite small changes on a very complex system that already existed."[102]

### D.  Conclusion

55.  In his conclusion, Dr. Kennedy states that "had Arm developed the Nuvia Confidential Information independently after the termination of the Nuvia ALA and Nuvia TLA, then Arm would not have inappropriately received more license fees and royalties than it should have."[103]  However, as discussed in this report, Dr. Kennedy provides no evidence or analysis to substantiate this assumption.  As such, Dr. Kennedy appears to accept this assertion as fact.  As discussed in this report, numerous documents and testimony call into question Dr. Kennedy's assumptions and indicate that the At-Issue CMN Features have little to no value to CMN-700 outside of Nuvia's intended use.

## VIII.  OTHER ISSUES

56.  This report represents my analysis, opinions, and conclusions at this time and is based on information available to me as of the date above.  The citations listed in this report are

---

[100] Deposition of Guy Larri, May 10, 2024, p. 191.
[101] Deposition of Guy Larri, May 10, 2024, pp. 196 – 197.
[102] Deposition of Guy Larri, May 10, 2024, p. 199.
[103] Kennedy Counterclaim Report, p. 27.

illustrative, and as part of my analysis, I also considered the additional documents and other information listed on Schedule 2.  If additional information or testimony becomes available to me, I may revise or supplement my analysis, opinions, and conclusions, and I may modify or supplement my report as necessary.  I may testify at trial regarding any related matter raised by the parties after the date of this report if asked to do so by the Court or the parties' attorneys.  I may be asked to develop additional schedules or exhibits for trial purposes related to my analysis, opinions, and conclusions.  I may also be asked to develop and rely on demonstratives at trial or any pre-trial proceeding.  I may also be asked to develop additional schedules or exhibits if asked to do so by the Court or the parties' attorneys, post-trial.  This report is intended solely for use in the above-referenced litigation and is not to be used for any other purpose.



**Schedule 1**

# W. Todd Schoettelkotte, CPA, CVA
## *Senior Managing Director*

333 Clay Street, Suite 3960
Houston, Texas 77002
713-335-5455 | tschoettelkotte@jsheld.com

**Certifications**
Certified Public Accountant, Texas
Certified Valuation Analyst

**Professional Affiliations**
State Bar of Texas' Grievance
Committee, Committee Member,
2004 – 2009

Federal Bar Association,
South Texas Chapter, Treasurer,
2007 – 2015

Institution for Law and Technology
Advisory Board Member

**Associations**
American Institute of Certified
Public Accountants

Texas Society of Certified Public
Accountants

Licensing Executives Society

National Association of Certified
Valuators and Analysts

**Education**
Master of Accounting
Rice University, Houston, TX

BS Management
Rice University, Houston, TX

W. Todd Schoettelkotte is a Senior Managing Director of Ocean Tomo, a part of J.S. Held LLC, a global consulting firm providing specialized technical, scientific, financial, and advisory services. Mr. Schoettelkotte has more than 25 years of experience in the evaluation and quantification of economic damages arising from patent, copyright and trademark infringement, and trade secret misappropriation disputes. His clients have included numerous Fortune 500 companies in a wide variety of industries including semiconductor, telecommunication, energy, consumer products, life sciences and computers (hardware, software and the internet). Mr. Schoettelkotte has been recognized by Intellectual Asset Management Magazine as one of the leading patent damages experts in the United States. Mr. Schoettelkotte's background is in accounting, finance and economics, and he has a specific, focused understanding of those issues integral to the valuation and management of intellectual property.

**Intellectual Property Valuation**

Mr. Schoettelkotte has directed numerous valuation projects related to patents, trademarks and trade secrets. A significant portion of his practice is focused on the determination of royalty rates and terms for licensing agreements. Additionally, Mr. Schoettelkotte has conducted numerous studies involving lost profits and unjust enrichment.

In the process of assisting clients in the valuation of intellectual property assets, Mr. Schoettelkotte has participated in the identification and review of business plans, market studies, financial documents and other related information.

**Patent, Copyright and Trademark Infringement**

Mr. Schoettelkotte has performed market analyses/studies wherein the patented, trademarked or copyrighted product is sold, assessed lost profits stemming from alleged infringements, evaluated the contribution of the patented process/method to the end product and established the economic value of the underlying intellectual property.

Mr. Schoettelkotte is skilled in the application of the Georgia-Pacific factors to the determination of reasonable royalty rates. He has determined reasonable royalty rates within infringement suits on many occasions in numerous industries. Over the course of his career, Mr. Schoettelkotte has reviewed hundreds of license agreements, providing a broad frame of reference for reasonable royalty damages analyses. Mr. Schoettelkotte has testified in federal and state court and arbitration proceedings on matters involving intellectual property valuation, lost profits, reasonable royalty and economic damages issues.

**Articles and Presentations**

"Intellectual Property Damages," Chicago-Kent College of Law, October 15, 2019

"Damages in Other Areas of Intellectual Property," The University of Arizona IP Conference, March 5, 2018

**W. Todd Schoettelkotte**

"Impact of Recent Court Cases on 'Real World' Royalty Rates," LES (USA & Canada) Houston Chapter, July 20, 2017

"What is Discoverable and Admissible for Damages, Willfulness and Other Purposes," Intellectual Property Owners Association, March 21, 2011

"Strategies in Intellectual Property," Chicago Kent, College of Law, Spring 2004 – 2010

Damages, Part II: "Litigation Strategies" – 15th Annual Advanced Patent Law Institute - University of Texas School of Law, October 28-29, 2010

"IP Damages and Valuation," Global Intellectual Property Management, Georgetown University Law Center, July 2, 2008

"Keys for Effectively Working with Your Damages Expert Throughout the Litigation Life Cycle," Houston Bar Association, March 22, 2007

"Advanced Evidence and Discovery – Working With Experts From Start To Finish" – Texas Bar Association, April-May 2006

"Trademarks – Financial Disclosure and Corporate Governance" – International Trademark Association, Emerging Issues in Trademark Law Forum, February 2-3, 2006

"Valuation of IP – A Licensing Perspective" – Lighthouse Seminar Group, IP Licensing Nuts & Bolts, March 3, 2005

"Measuring the Value of Damages in Trademark Infringement Claims" – DuPont's 18th Annual CLE Intellectual Property Law Seminar, October 12, 2004

"Measuring the Value of Damages in Patent and Trademark Claims" – Houston CPA Society, September 2004

"Measuring Damages in Trademark Infringement and Related Claims in Light of Recent Court Decisions" – The 19th Annual Intellectual Property Law Conference – American Bar Association, April 1, 2004

"Intellectual Property Damages: Patents & Trademarks" – Houston CPA Society "Litigation and Valuation Services Committee," January 28, 2004

Co-Author: "Accounting for Attorneys" – University of Oregon School of Law, November 12, 2003

"What are the Financial Stakes in Litigation? What are the Costs and the Return on Investment (ROI) That Can Be Expected? The Question of Intangible Returns?" – 2003 Fourth International Conference on Intellectual Property by CNCPI, October 7, 2003, Paris, France

"Current Issues in the Analysis of Reasonable Royalties in Patent Infringement Actions" – 2003 Licensing Executives Society Annual Meeting, September 24, 2003

Co-Author FTI Consulting Training Course: "Calculating Damages in Patent Infringement – A Lost Profits and Reasonable Royalty Case Study," July 17, 2003



**W. Todd Schoettelkotte
Four Year List of Testimony
As of June 2024**

| CASE DESCRIPTION / TYPE OF TESTIMONY |
|---|

*CMC Materials, LLC v. DuPont de Nemours., et al.;* U.S. District Court, District of Delaware (Wilmington), Rebuttal Expert Report, Deposition

*BlueRadios, Inc. v. Kopin Corporation, Inc.;* U.S. District Court, District of Colorado (Denver), Rebuttal Expert Report, Deposition, Supplemental Rebuttal Expert Report, Deposition, Trial

*Continuous Composites, Inc. v. Markforged, Inc.;* U.S. District Court, District of Delaware, Expert Report, Reply Report, Deposition, Trial

*Lindis Biotech GmbH v. Amgen Inc.;* U.S. District Court, District of Delaware, Initial Report, Expert Report, Reply Report, Deposition

*In the Matter of Certain Semiconductor Devices, and Methods of Manufacturing Same and Products Containing the Same (Respondents);* U.S. International Trade Commission, Washington, D.C., Expert Report, Deposition, Hearing

*Demaray LLC v. Samsung Electronics Co. Ltd., et al.:* U.S. District Court, Western District of Texas (Waco), Rebuttal Expert Report, Deposition, Supplemental Report, Deposition, Second Supplemental Report, Deposition, Trial

*Ningde Amperex Technology Limited v. Zhuhai CosMX Battery Co., Ltd., et al.;* U.S. District Court, Eastern District of Texas (Marshall), Initial Report, Rebuttal Expert Report, Deposition, Trial

*HID Global Corporation v. Vector Flow., et al.;* U.S. District Court, District of Delaware (Wilmington), Expert Report, Reply Report, Deposition, Trial

*Persawvere, Inc. v. Milwaukee Electric Tool, Corporation;* U.S. District Court, District of Delaware (Wilmington), Rebuttal Expert Report, Deposition, Trial

*Beacon Navigation GmbH v. Bayerische Motoren Werke AG; BMW of North America, LLC and BMW Manufacturing Co., LLC;* U.S. District Court, Southern District of Michigan, Expert Report, Deposition

*Plastipak Packaging, Inc. v. Nestlé Waters North America, Inc.;* U.S. District Court, Eastern District of Virginia (Alexandria), Opening Expert Report, Rebuttal Expert Report, Supplemental Expert Report, Supplemental Rebuttal Expert Report, Deposition

*Ollnova Technologies Limited v. ecobee Technologies, ULC d/b/a Ecobee;* U.S. District Court, Eastern District of Texas (Marshall), Rebuttal Expert Report, Deposition, Trial

*EIS, Inc. v. IntiHealth GER GmbH, et al.;* U.S. District Court, District of Delaware, Expert Report, Rebuttal Expert Report, Commercial Success Report, Reply Report, Trial

*Bay Materials, LLC v. 3M Company;* U.S. District Court, District of Delaware (Wilmington), Declaration, Deposition, Commercial Success Report, Deposition



**W. Todd Schoettelkotte**
**Four Year List of Testimony**
**As of June 2024**

| CASE DESCRIPTION / TYPE OF TESTIMONY |
| --- |

*Fate Therapeutics, Inc., et al. v. Shoreline Biosciences, Inc., et al.;* U.S. District Court, Southern District of California (San Diego), Rebuttal Expert Report, Deposition

*Delta Air Lines, Inc. v. Marriott International, Inc.;* U.S. District Court, Northern District of Georgia (Atlanta), Rebuttal Expert Report, Supplemental Rebuttal Report, Deposition

*Textron Innovations Inc. v. SZ DJI Technology Co., Ltd., et al.;* U.S. District Court, Western District of Texas (Waco), Expert Report, Deposition, Supplemental Expert Report, Trial

*VoIP-Pal.com, Inc. v. Verizon Communications Inc., et al.;* U.S. District Court, Western District of Texas (Waco), Rebuttal Expert Report, Deposition

*Ragnarok Game, LLC and ESDFOS, LLC v. ZeniMax Media Inc, et al.;* Superior Court of the State of California, County of Los Angeles, Central District, Opening Expert Report, Rebuttal Expert Report, Deposition

*DivX, LLC v. Harman International Industries, Inc.;* New York Supreme Court, New York County, Expert Report, Rebuttal Expert Report, Deposition

*Shimon Maimon v. Lockheed Martin Corporation;* Judicial Arbitration and Mediation Services, Rebuttal Expert Report, Deposition, Arbitration

*WSOU Investments, LLC d/b/a Brazos Licensing and Development v. ZTE Corporation;* U.S. District Court, Western District of Texas (Waco), Rebuttal Expert Report, Deposition

*Wonderland Switzerland AG v. Evenflo Company, Inc.;* U.S. District Court, District of Delaware (Wilmington), Expert Report, Reply Report, Deposition, Supplemental Expert Report, Trial

*NNCrystal US Corporation and The Board of Trustees of The University of Arkansas v. Nanosys, Inc.;* U.S. District Court, District of Delaware, Expert Report, Reply Report, Deposition

*Pavemetrics Systems, Inc. v. Tetra Tech, Inc. and Tetra Tech Tas Inc.;* U.S. District Court, Central District of California (Los Angeles), Expert Report, Deposition, Trial

*Global Tubing, LLC v. Tenaris Coiled Tubes, LLC and Tenaris, S.A.;* U.S. District Court, Southern District of Texas (Houston), Expert Report, Deposition

*The Cookie Department, Inc. v. The Hershey Company, One Brands, LLC;* U.S. District Court, Northern District of California (Oakland), Rebuttal Expert Report, Deposition

*Unirac, Inc. v. EcoFasten Solar, LLC and Esdec, Inc.;* U.S. District Court, District of Delaware, Expert Reports, Deposition



**W. Todd Schoettelkotte**
**Four Year List of Testimony**
**As of June 2024**

| CASE DESCRIPTION / TYPE OF TESTIMONY |
| --- |

*In the Matter of Certain Integrated Circuits, Chipsets, and Electronic Devices, and Products Containing the Same (Respondents)*; U.S. International Trade Commission, Washington, D.C., Rebuttal Expert Report, Deposition

*In the Matter of Certain High-Density Fiber Optic Equipment and Components Thereof (Complainant)*; U.S. International Trade Commission, Washington, D.C., Expert Report, Deposition, Witness Statement, Hearing; Enforcement Proceeding - Expert Report, Supplement to the Expert Report, Deposition, 2nd Supplement to the Expert Report, 3rd Supplement to the Expert Report, Witness Statement, 4th Supplement to the Expert Report, Supplement to Witness Statement, Hearing

*Blue Mountain Holdings, Ltd., et al. v. Bliss Nutraceticals LLC, et al.*; U.S. District Court, Northern District of Georgia (Atlanta), Expert Report, Deposition

*Gibson Brands, Inc. v. Armadillo Distribution Enterprises, Inc. and Concordia Investment Partners, LLC*; U.S. District Court, Eastern District of Texas (Sherman), Rebuttal Expert Report, Deposition, Supplemental Rebuttal Expert Report, Trial

*Conformis, Inc. v. Medacta USA, Inc. and Medacta International SA;* U.S. District Court, District of Delaware, Rebuttal Expert Report, Supplemental Rebuttal Expert Report, Deposition

*In the Matter of Certain Silicon Photovoltaic Cells and Modules with Nanostructures, and Products Containing Same (Respondents);* U.S. International Trade Commission (Washington, D.C.), Expert Report, Deposition, Witness Statement, Hearing

*EcoFactor, Inc. v. Google LLC;* U.S. District Court, Western District of Texas (Waco), Expert Report, Deposition, Supplemental Report, Trial, Declaration

*G.W. Lisk Company, Inc. v. GITS Manufacturing Company*; U.S. District Court, Southern District of Iowa (Central), Expert Report, Reply Report, Deposition

*American Eagle Outfitters, Inc. and Retail Royalty Company v. Walmart, Inc.*; U.S. District Court, Western District of Pennsylvania (Pittsburgh), Expert Report, Rebuttal Report, Deposition

*Simply Wireless, Inc. v. T-Mobile US, Inc., et al.*; U.S. District Court, Eastern District of Virginia (Alexandria), Expert Report, Reply Report, Deposition, Sur-Sur Reply Report

*Gentex Corporation v. Galvion LTD and Galvion Inc.*; U.S. District Court, District of Delaware (Wilmington), Expert Report, Reply Report, Deposition

*Kirsch Research and Development, LLC v. DuPont de Nemours, Inc., FT Synthetics, Inc. and Atlas Roofing Corporation*; U.S. District Court, Eastern District of Texas (Texarkana), Expert Report, Deposition

*Malvern PanAnalytical Inc. v. TA Instruments-Waters LLC and Waters Technologies Corporation;* U.S. District Court, District of Delaware (Wilmington), Expert Report, Rebuttal Report, Reply Report, Deposition

*Finalrod IP, LLC v. Endurance Lift Solutions, Inc.;* U.S. District Court, Eastern District of Texas (Marshall), Expert Report, Deposition



**W. Todd Schoettelkotte**
**Four Year List of Testimony**
**As of June 2024**

| CASE DESCRIPTION / TYPE OF TESTIMONY |
| --- |

*Pierce Manufacturing, Inc. and Oshkosh Corporation v. <u>E-One, Inc. and REV Group, Inc.</u>*; U.S. District Court, Middle District of Florida (Tampa), Declaration, Expert Report, Deposition, Trial

*<u>Polar Electro Oy</u> v. Suunto Oy, et al.*; U.S. District Court, District of Utah (Central), Expert Report, Deposition

*<u>Wonderland Switzerland AG</u> v. Evenflo Company, Inc., et al.*; U.S. District Court, District of Delaware (Wilmington), Expert Report, Reply Report, Deposition, Trial

*Lufkin Industries, Inc. v. <u>International Business Machines Corporation, et al.</u>*; 159th Judicial District Court of Angelina County, Texas, Expert Report #1, Supplemental Report #1, Expert Report #2, Supplemental Report #2, Deposition

*<u>The Hillman Group, Inc.</u> v. KeyMe, LLC*; U.S. District Court, Eastern District of Texas (Marshall), Expert Report, Deposition #1, Consolidated Report, Deposition #2

*Team Worldwide Corporation v. <u>Academy, LTD d/b/a Academy Sports + Outdoors, et al.</u>*; U.S. District Court, Eastern District of Texas (Marshall), Expert Report, Rebuttal Report, Deposition #1, Deposition #2, Supplemental Report

*<u>Nevro Corp.</u> v. Boston Scientific Corporation, et al.*; U.S. District Court, Northern District of California (San Francisco), Expert Report, Supplemental Report, Deposition, Declaration

*Carnegie Institution of Washington, et al. v. <u>Pure Grown Diamonds, Inc., et al.</u>*; U.S. District Court, Southern District of New York (Foley Square), Expert Report, Supplemental Report, Deposition

*In the Matter of Certain High-Density Fiber Optic Equipment and Components Thereof (<u>Complainant</u>)*; U.S. International Trade Commission, Washington, D.C., Expert Report, Deposition, Witness Statement, Hearing

*<u>Nissei ASB Co. and Nissei ASB Machine, Co., LTD.</u> v. R&D Tool & Engineering Co.*; U.S. District Court, Western District of Missouri (Western), Expert Report, Reply Report, Deposition

*<u>Jager Pro Incorporated</u> v. Bull Creek Welding and Fabrication, Inc.*; U.S. District Court, Eastern District of Arkansas (Central), Expert Report, Deposition

# Arm Ltd. v. Qualcomm, Inc., Qualcomm Technologies, Inc. and Nuvia, Inc.
## Documents and Other Information Considered

Schedule 2

| ARM_ | | ARM_ | | ARM_ | | ARM_ | | ARM_ | | ARM_ | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Begin | End | Begin | End | Begin | End | Begin | End | Begin | End | Begin | End |
| 3 | 3 | 45276 | 45276 | 85679 | 85679 | 109803 | 109803 | 1228047 | 1228047 | 1236645 | 1236653 |
| 17 | 18 | 45334 | 45335 | 85680 | 85680 | 109806 | 109819 | 1228048 | 1228048 | 1236654 | 1236666 |
| 19 | 21 | 45393 | 45393 | 85682 | 85682 | 109822 | 109822 | 1228049 | 1228049 | 1236667 | 1236670 |
| 22 | 23 | 49072 | 49075 | 85687 | 85687 | 109855 | 109865 | 1228050 | 1228050 | 1236671 | 1236677 |
| 45 | 45 | 49139 | 49132 | 86088 | 86088 | 109982 | 109985 | 1228051 | 1228051 | 1236678 | 1236682 |
| 244 | 381 | 51071 | 51073 | 86164 | 86245 | 109991 | 109991 | 1228052 | 1228052 | 1236683 | 1236683 |
| 382 | 509 | 51088 | 51088 | 86247 | 86251 | 110165 | 110168 | 1228053 | 1228053 | 1236684 | 1236690 |
| 510 | 632 | 51378 | 51379 | 86285 | 86293 | 111064 | 111080 | 1228054 | 1228054 | 1236691 | 1236697 |
| 2166 | 2167 | 52468 | 52471 | 86829 | 86837 | 112064 | 112067 | 1228055 | 1228055 | 1236698 | 1236699 |
| 2198 | 2202 | 52794 | 52816 | 87367 | 87371 | 114880 | 114880 | 1228056 | 1228056 | 1236700 | 1236702 |
| 2226 | 2230 | 56424 | 56433 | 87449 | 87449 | 116328 | 116337 | 1228057 | 1228057 | 1236703 | 1236707 |
| 2280 | 2280 | 56439 | 56441 | 87451 | 87451 | 118835 | 118938 | 1228058 | 1228058 | 1236708 | 1236710 |
| 2953 | 2987 | 56519 | 56529 | 87699 | 87702 | 120302 | 120303 | 1228059 | 1228059 | 1236711 | 1236730 |
| 3621 | 3624 | 56538 | 56552 | 87854 | 87856 | 120530 | 120536 | 1228060 | 1228060 | 1236731 | 1236733 |
| 24810 | 24810 | 56882 | 56894 | 87936 | 87937 | 1215343 | 1215344 | 1228061 | 1228061 | 1236734 | 1236739 |
| 24815 | 24815 | 56900 | 56909 | 88045 | 88303 | 1215409 | 1215409 | 1228062 | 1228062 | 1236740 | 1236742 |
| 24817 | 24817 | 57152 | 57157 | 88371 | 88386 | 1215423 | 1215423 | 1228063 | 1228063 | 1236743 | 1236744 |
| 24819 | 24819 | 57479 | 57481 | 88390 | 88408 | 1215632 | 1215633 | 1228064 | 1228064 | 1237494 | 1237494 |
| 24820 | 24820 | 57594 | 57596 | 88655 | 88655 | 1215634 | 1215635 | 1228065 | 1228065 | 1237617 | 1237617 |
| 24825 | 24825 | 57594 | 57597 | 88656 | 88684 | 1215997 | 1216001 | 1228066 | 1228066 | 1238999 | 1239003 |
| 24826 | 24826 | 58159 | 58163 | 88892 | 88903 | 1226492 | 1226492 | 1228073 | 1228073 | 1239440 | 1239440 |
| 24837 | 24837 | 59363 | 59363 | 88906 | 88918 | 1226504 | 1226504 | 1228074 | 1228074 | 1239441 | 1239441 |
| 24838 | 24838 | 60458 | 60512 | 92674 | 92679 | 1226630 | 1226630 | 1228075 | 1228075 | 1239442 | 1239442 |
| 24841 | 24841 | 63607 | 63610 | 92784 | 92787 | 1228026 | 1228026 | 1228213 | 1228217 | 1239443 | 1239443 |
| 24844 | 24844 | 63692 | 63693 | 93852 | 93852 | 1228027 | 1228027 | 1231674 | 1231676 | 1239444 | 1239444 |
| 24851 | 24851 | 63694 | 63696 | 94543 | 94545 | 1228028 | 1228028 | 1231852 | 1231852 | 1239445 | 1239445 |
| 26001 | 26019 | 67288 | 67289 | 95370 | 95449 | 1228029 | 1228029 | 1232495 | 1232512 | 1239446 | 1239446 |
| 26092 | 26093 | 78754 | 78754 | 95578 | 95578 | 1228030 | 1228030 | 1232526 | 1232572 | 1239447 | 1239447 |
| 26471 | 26490 | 79507 | 79514 | 95579 | 95579 | 1228031 | 1228031 | 1232756 | 1232756 | 1239448 | 1239448 |
| 32604 | 32604 | 80910 | 80912 | 95580 | 95580 | 1228032 | 1228032 | 1233718 | 1233718 | 1239449 | 1239449 |
| 32650 | 32654 | 81942 | 81944 | 95789 | 95790 | 1228033 | 1228033 | 1235135 | 1235137 | 1239450 | 1239450 |
| 37458 | 37461 | 81945 | 81947 | 95791 | 95791 | 1228034 | 1228034 | 1235144 | 1235144 | 1239451 | 1239451 |
| 37462 | 37465 | 81962 | 81963 | 96011 | 96011 | 1228035 | 1228035 | 1235148 | 1235148 | 1239452 | 1239452 |
| 37713 | 37713 | 82268 | 82269 | 96692 | 96715 | 1228036 | 1228036 | 1235149 | 1235149 | 1239453 | 1239453 |
| 37718 | 37718 | 82426 | 82428 | 97388 | 97420 | 1228037 | 1228037 | 1236577 | 1236579 | 1239454 | 1239457 |
| 37729 | 37729 | 82714 | 82716 | 97512 | 97512 | 1228038 | 1228038 | 1236580 | 1236580 | 1239458 | 1239458 |
| 40078 | 40080 | 82717 | 82717 | 97522 | 97522 | 1228039 | 1228039 | 1236581 | 1236587 | 1239459 | 1239459 |
| 40237 | 40241 | 82717 | 82728 | 97527 | 97528 | 1228040 | 1228040 | 1236588 | 1236593 | 1239460 | 1239460 |
| 40283 | 40285 | 82871 | 82873 | 97966 | 97967 | 1228041 | 1228041 | 1236594 | 1236595 | 1239461 | 1239461 |
| 40289 | 40306 | 82874 | 82874 | 98968 | 99018 | 1228042 | 1228042 | 1236596 | 1236604 | 1239462 | 1239462 |
| 43894 | 43919 | 82925 | 82937 | 104678 | 104678 | 1228043 | 1228043 | 1236605 | 1236609 | 1239463 | 1239463 |
| 44650 | 44692 | 83252 | 83258 | 109518 | 109560 | 1228044 | 1228044 | 1236610 | 1236612 | 1239464 | 1239464 |
| 45250 | 45253 | 83356 | 83356 | 109734 | 109750 | 1228045 | 1228045 | 1236616 | 1236617 | 1239465 | 1239465 |
| 45262 | 45264 | 85677 | 85677 | 109778 | 109778 | 1228046 | 1228046 | 1236618 | 1236644 | 1239466 | 1239466 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

# Arm Ltd. v. Qualcomm, Inc., Qualcomm Technologies, Inc. and Nuvia, Inc.
## Documents and Other Information Considered

Schedule 2

| ARM_ Begin | ARM_ End |
|---|---|
| 1239467 | 1239469 |
| 1239470 | 1239470 |
| 1239471 | 1239471 |
| 1239472 | 1239472 |
| 1239473 | 1239473 |
| 1239474 | 1239474 |
| 1239475 | 1239475 |
| 1239476 | 1239476 |
| 1239477 | 1239477 |
| 1239478 | 1239478 |
| 1239479 | 1239479 |
| 1239483 | 1239483 |
| 1239485 | 1239485 |
| 1239486 | 1239486 |
| 1239488 | 1239488 |
| 1239490 | 1239490 |
| 1239493 | 1239493 |
| 1239495 | 1239495 |
| 1239504 | 1239504 |
| 1239789 | 1240096 |
| 1240202 | 1240203 |
| 1240204 | 1240225 |
| 1240226 | 1240236 |
| 1240237 | 1240280 |
| 1240281 | 1240282 |
| 1240283 | 1240304 |
| 1240305 | 1240307 |
| 1240308 | 1240325 |
| 1240326 | 1240353 |
| 1240354 | 1240381 |
| 1240382 | 1240391 |
| 1240392 | 1240412 |
| 1240413 | 1240437 |
| 1240438 | 1240447 |
| 1240448 | 1240448 |
| 1240449 | 1240469 |
| 1240470 | 1240507 |
| 1240508 | 1240526 |
| 1241187 | 1241187 |
| 1241589 | 1241589 |
| 1241597 | 1241598 |
| 1241616 | 1241620 |
| 1243410 | 1243629 |
| 1243875 | 1243995 |

| ARM_ Begin | ARM_ End |
|---|---|
| 1245599 | 1245617 |
| 1245618 | 1245618 |
| 1245619 | 1245640 |
| 1245641 | 1245672 |
| 1245673 | 1245703 |
| 1245704 | 1245705 |
| 1245706 | 1245719 |
| 1245720 | 1245726 |
| 1245727 | 1245755 |
| 1245756 | 1245793 |
| 1245794 | 1245813 |
| 1245814 | 1245837 |
| 1245838 | 1245848 |
| 1245849 | 1245890 |
| 1245891 | 1245914 |
| 1245915 | 1245938 |
| 1245939 | 1245940 |
| 1245941 | 1245978 |
| 1245979 | 1246020 |
| 1246021 | 1246042 |
| 1246043 | 1246066 |
| 1246067 | 1246085 |
| 1246086 | 1246111 |
| 1246112 | 1246134 |
| 1246135 | 1246157 |
| 1246158 | 1246194 |
| 1246195 | 1246197 |
| 1246198 | 1246224 |
| 1246225 | 1246227 |
| 1250306 | 1250306 |
| 1250307 | 1250307 |
| 1259704 | 1259704 |
| 1259705 | 1260105 |
| 1260121 | 1260391 |
| 1260418 | 1260686 |
| 1262030 | 1262366 |
| 1265340 | 1265342 |
| 1265728 | 1265733 |
| 1266931 | 1266990 |
| 1266995 | 1267070 |
| 1271909 | 1271926 |
| 1271927 | 1271928 |
| 1271929 | 1271953 |
| 1281879 | 1281879 |

| ARM_ Begin | ARM_ End |
|---|---|
| 1282466 | 1282575 |
| 1284005 | 1284007 |
| 1286878 | 1286998 |
| 1291148 | 1291148 |
| 1291202 | 1291202 |
| 1291691 | 1291745 |
| 1292638 | 1292644 |
| 1292866 | 1292866 |
| 1292867 | 1292914 |
| 1294035 | 1294036 |
| 1294037 | 1294038 |
| 1296809 | 1296825 |
| 1302854 | 1302857 |
| 1302909 | 1302912 |
| 1305265 | 1305265 |
| 1305375 | 1305375 |
| 1305479 | 1305479 |
| 1305515 | 1305515 |
| 1305785 | 1305785 |
| 1309668 | 1309669 |
| 1311070 | 1311084 |
| 1315342 | 1315364 |
| 1425186 | 1425186 |
| 1425194 | 1425198 |
| 1426109 | 1426156 |
| 1427450 | 1427492 |
| 1427522 | 1427522 |
| 1427523 | 1427537 |
| 1435422 | 1435423 |
| 1435455 | 1435456 |
| 1435466 | 1435466 |
| 1436707 | 1436716 |
| 1436796 | 1436801 |
| 1436919 | 1436946 |
| 1437116 | 1437117 |
| 1437128 | 1437128 |
| 1437135 | 1437136 |
| 1437178 | 1437179 |
| 1437214 | 1437216 |
| 1437222 | 1437233 |
| 1450767 | 1450768 |
| 1460538 | 1460538 |
| 1462242 | 1462255 |
| 1462325 | 1462360 |

| ARM_ Begin | ARM_ End |
|---|---|
| 1465116 | 1465121 |

| MASA_ Begin | MASA_ End |
|---|---|
| 00001719 | 00001724 |

| QCARM_ Begin | QCARM_ End |
|---|---|
| 2821 | 2823 |
| 2825 | 2827 |
| 20009 | 20010 |
| 275507 | 275543 |
| 275743 | 275763 |
| 276221 | 276248 |
| 276430 | 276430 |
| 276431 | 276441 |
| 315570 | 315583 |
| 332490 | 332490 |
| 337839 | 337855 |
| 337857 | 337899 |
| 338277 | 338284 |
| 338297 | 338311 |
| 338573 | 338576 |
| 338983 | 338989 |
| 339100 | 339127 |
| 339326 | 339335 |
| 340961 | 340961 |
| 341136 | 341178 |
| 342825 | 342841 |
| 343120 | 343142 |
| 343143 | 343222 |
| 343533 | 343587 |
| 343649 | 343650 |
| 343954 | 343976 |
| 350826 | 350848 |
| 351402 | 351483 |
| 352878 | 352906 |
| 356834 | 356845 |
| 363482 | 363482 |
| 550518 | 550529 |
| 557206 | 557207 |
| 569125 | 569164 |
| 569461 | 569494 |
| 584330 | 584332 |

| QCARM_ Begin | QCARM_ End |
|---|---|
| 591730 | 591732 |
| 591733 | 591736 |
| 591737 | 591740 |
| 591741 | 591745 |
| 592425 | 592431 |
| 2414807 | 2414813 |
| 2417783 | 2417783 |
| 2422682 | 2422711 |
| 2423231 | 2423233 |
| 2424464 | 2424466 |
| 2424496 | 2424498 |
| 2424621 | 2424623 |
| 2425046 | 2425048 |
| 2425297 | 2425299 |
| 2426801 | 2426803 |
| 2426804 | 2426806 |
| 2426807 | 2426814 |
| 2426815 | 2426821 |
| 2426822 | 2426836 |
| 2426837 | 2426852 |
| 2426855 | 2426855 |
| 2426856 | 2426881 |
| 2426882 | 2426882 |
| 2426883 | 2426884 |
| 2426885 | 2426886 |
| 2426888 | 2426888 |
| 2426889 | 2426891 |
| 2426892 | 2426894 |
| 2426895 | 2426897 |
| 2429058 | 2429059 |
| 2554114 | 2554116 |
| 3318368 | 3318368 |
| 3337797 | 3337799 |
| 3400486 | 3400548 |
| 3404294 | 3404353 |
| 3426632 | 3426638 |
| 3429791 | 3429872 |
| 3434164 | 3434165 |
| 3437962 | 3438003 |
| 3438004 | 3438037 |
| 3438074 | 3438074 |
| 3438075 | 3438113 |
| 3438114 | 3438152 |

| QCARM_ Begin | QCARM_ End |
|---|---|
| 3438153 | 3438193 |
| 3438194 | 3438234 |
| 3438235 | 3438275 |
| 3452409 | 3452442 |
| 3452662 | 3452664 |
| 3452665 | 3452667 |
| 3452668 | 3452672 |
| 3452720 | 3452723 |
| 3452805 | 3452807 |
| 3453808 | 3453810 |
| 3453866 | 3453868 |
| 3453870 | 3453872 |
| 3453873 | 3453874 |
| 3453875 | 3453877 |
| 3453879 | 3453881 |
| 3454302 | 3454304 |
| 3457104 | 3457104 |
| 3460229 | 3460233 |
| 3460451 | 3460453 |
| 3474751 | 3474828 |
| 3478016 | 3478018 |
| 3485446 | 3485461 |
| 3485462 | 3485541 |
| 3519910 | 3519912 |
| 3520810 | 3520812 |
| 3520813 | 3520815 |
| 3520816 | 3520818 |
| 3520819 | 3520821 |
| 3520822 | 3520825 |
| 3520826 | 3520829 |
| 3520830 | 3520834 |
| 3522610 | 3522611 |
| 3522895 | 3522902 |
| 3522546 | 3526553 |
| 3535535 | 3535535 |
| 3535536 | 3535536 |
| 3536628 | 3536629 |
| 3536886 | 3536888 |
| 3536889 | 3536891 |
| 3536892 | 3536894 |
| 3536895 | 3536897 |
| 3536898 | 3536901 |
| 3536902 | 3536905 |
| 3536921 | 3536933 |

# Arm Ltd. v. Qualcomm, Inc., Qualcomm Technologies, Inc. and Nuvia, Inc.
## Documents and Other Information Considered

Schedule 2

| QCARM_ | | QCARM_ | | QCARM_ | | QCARM_ | | QCARM_ | | QCARM_ | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Begin | End | Begin | End | Begin | End | Begin | End | Begin | End | Begin | End |
| 3537376 | 3537378 | 3682258 | 3682368 | 3859365 | 3859367 | 3919919 | 3919921 | 7434227 | 7434227 | 7627803 | 7627804 |
| 3537713 | 3537715 | 3819781 | 3819782 | 3862422 | 3862422 | 3920067 | 3920067 | 7434228 | 7434229 | 7629881 | 7629883 |
| 3537773 | 3537776 | 3819785 | 3819785 | 3862424 | 3862425 | 6920658 | 6920661 | 7471719 | 7471722 | 7634056 | 7634056 |
| 3616504 | 3616505 | 3819786 | 3819787 | 3880649 | 3880650 | 7389922 | 7389940 | 7497370 | 7497373 | 7635065 | 7635065 |
| 3626049 | 3626050 | 3839281 | 3839282 | 3912281 | 3912281 | 7389941 | 7389981 | 7497374 | 7497374 | 7646660 | 7646660 |
| 3674878 | 3674879 | 3839896 | 3839911 | 3912283 | 3912284 | 7427707 | 7427707 | 7505464 | 7505464 | | |

| Legal Documents and Related Exhibits |
|---|

2022-08-31 - Complaint
2022-09-30 - Defendants' Answer and Defenses to Plaintiff's Complaint and Jury Demand and Defendants' Counterclaim
2022-10-26 - Defendants' Answer and Defenses to Plaintiff's Complaint and Jury Demand and Defendants' Amended Counterclaim
2022-11-15 - Plaintiff Arm Ltd.'s Answer and Affirmative Defenses to Defendant Qualcomm Inc., Qualcomm Technologies, Inc., and Nuvia, Inc.'s Amended Counterclaim
2023-02-27 - Arm Ltd.'s Objections and Responses to Qualcomm's First Set of Interrogatories, Nos. 1-11
2023-02-27 - Arm Ltd.'s Objections and Responses to Qualcomm's First Set of Requests for Production, Nos. 1-36
2023-02-27 - Defendants' Responses and Objections to Plaintiff's First Set of Interrogatories, Nos. 1-13
2023-02-27 - Defendants' Responses and Objections to Plaintiff's First Set of Requests for Production, Nos. 1-51
2023-04-04 - Arm Ltd.'s First Amended Objections and Responses to Qualcomm's First Set of Requests for Production, Nos. 1-36
2023-04-26 - Corrected Second Amended Complaint for Willful Patent Infringement
2023-05-04 - Defendants' Responses and Objections to Plaintiff's Second Set of Requests for Production, Nos. 52-58
2023-05-05 - Arm Ltd.'s First Objection and Responses to Qualcomm's Second Set of Requests for Production, Nos 37-50
2023-06-23 - Defendants' First Supplemental Responses and Objections to Plaintiff's First Set of Interrogatories, Nos. 1-4 and 6
2023-07-14 - Arm Ltd.'s First Objection and Responses to Qualcomm's Third Set of Requests for Production, Nos. 51-54
2023-08-23 - Defendants' Responses and Objections to Plaintiff's Third Set of Requests for Production, Nos. 59-122
2023-10-02 - Arm Ltd.'s Objections and Responses to Qualcomm's Second Set of Interrogatories, Nos. 12-19
2023-10-02 - Plaintiff Arm Ltd.'s Objections and Responses to Defendant Qualcomm's Fourth Set of Requests for Production, Nos. 55-70
2023-10-20 - Defendants' Responses and Objections to Plaintiff's First Set of Requests for Admission, Nos. 1-30
2023-10-26 - Defendants' Supplemental and Amended Response and Objections to Plaintiff's First Set of Interrogatories, No. 5
2023-10-26 - Correspondence Email from J. Braly to J. Li
2023-10-27 - Defendants' Responses and Objections to Plaintiff's Second Set of Interrogatories
2023-11-09 - Arm Ltd.'s Objections and Responses to Qualcomm's Third Set of Interrogatories, No. 20
2023-11-17 - Arm Ltd.'s First Supplemental Objections and Responses to Qualcomm's Second Set of Interrogatories, Nos. 12-19
2023-11-17 - Arm Ltd.'s Objections and Responses to Qualcomm's Fourth Set of Interrogatories, Nos. 21-25
2023-11-17 - Arm Ltd.'s Second Supplemental Objections and Responses to Qualcomm's First Set of Interrogatories, Nos. 1-11
2023-11-17 - Arm Ltd.'s Supplemental Objections and Responses to Qualcomm's Third Set of Interrogatories, No. 20
2023-11-17 - Defendants' First Supplemental Reponses and Objections to Plaintiff's Second Set of Interrogatories, Nos. 15-16
2023-11-17 - Defendants' Responses and Objections to Plaintiff's Fourth Set of Requests for Production, No. 123
2023-11-17 - Plaintiff Arm Ltd.'s Objection and Responses to Defendant Qualcomm's Fifth Set of Requests for Production, Nos. 71-124
2023-11-17 - Plaintiff Arm Ltd.'s Responses and Objections to Qualcomm's First Requests for Admissions to Plaintiff, Nos. 1-30
2024-02-12 - Plaintiff Arm Ltd.'s Objections and Responses to Qualcomm's Sixth Set of Requests for Production (Nos. 125-147)
2024-03-13 - Defendant's Answer and Defenses to Plaintiff's Complaint and Jury Demand and Defendants' Second Amended Counterclaims
2024-04-29 - Arm Ltd.'s Objections and Response to Qualcomm's Fifth Set of Interrogatories (Nos. 26-28)
2024-05-02 - Arm Ltd.'s Responses and Objections to Qualcomm's Seventh Set of Requests for Production (Nos. 148-154)
2024-05-07 - Defendant's Responses and Objections to Plaintiff's Third Set of Interrogatories (Nos. 26-29)
2024-05-10 - Arm Ltd.'s Objections and Responses to Qualcomm's Sixth Set of Interrogatories (No. 29)
2024-05-10 - Arm Ltd.'s First Supplemental Objections and Responses to Qualcomm's Fifth Set of Interrogatories (Nos. 26-28)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

# Arm Ltd. v. Qualcomm, Inc., Qualcomm Technologies, Inc. and Nuvia, Inc.
## Documents and Other Information Considered

Schedule 2

| Deposition Transcripts and Related Exhibits | | | |
|---|---|---|---|
| 2023-09-22 - Rohit Singh | 2023-11-03 - Gerard Williams | 2023-11-29 - Lynn Bos | 2023-12-14 - Laura Sand |
| 2023-10-12 - Manu Gulati | 2023-11-08 - Ziad Asghar | 2023-11-30 - Karthik Shivashankar | 2023-12-19 - Christine Tran |
| 2023-10-20 - Ramakrishna Chunduru | 2023-11-09 - Paul Williamson | 2023-12-01 - Pradeep Kanapathipillai | 2023-12-20 - Ian Thornton |
| 2023-10-25 - Jignesh Trivedi | 2023-11-15 - Christiano Amon | 2023-12-07 - Mark Werkheiser | 2024-05-10 - Guy Larri |
| 2023-10-25 - Tim Herbert | 2023-11-15 - Richard Grisenthwaite | 2023-12-08 - Geeta Balakrishnan | 2024-05-16 - Geetha Vedaraman |
| 2023-10-27 - Nitin Sharma | 2023-11-16 - Simon Segars | 2023-12-08 - Jonathan Armstrong | |
| 2023-10-27 - Will Abbey | 2023-11-28 - Jim Thompson | 2023-12-12 - Rene Haas | |
| 2023-11-02 - Lynn Couillard | 2023-11-28 - Michael Roberts | 2023-12-14 - Vivek Agrawal | |

| Expert Reports |
|---|
| 2024-02-27 - Expert Report of Patrick F. Kennedy, PhD. |
| 2024-05-20 - Opening Expert Report of Dr. Murali Annavaram Regarding Qualcomm's Counterclaim |
| 2024-05-20 - Expert Report of Patrick F. Kennedy, Ph.D. |
| 2024-06-10 - Rebuttal Expert Report of Dr. Robert P. Colwell to Dr. Annavaram's Opening Expert Report Regarding Qualcomm's Counterclaim |

| Publicly Available Information/Other |
|---|
| Ampere's Second Mot. for Protective Order |
| Arm Holdings plc Amendment No. 2 to Form F-1, September 5, 2023 |
| Arm Holdings plc Form 424(b)(4), September 14, 2023 |
| Arm Holdings plc FQ2 2024 Earnings Call Transcripts, November 8, 2023 |
| Arm Holdings plc FQ3 2024 Earnings Call Transcripts, February 7, 2024 |
| Arm Holdings plc FQ3 2024 Results Presentation, February 7, 2024 |
| Arm Holdings plc Q2 FY 2024 Key Financial Data |
| Arm Holdings plc Q2 FY 2024 Shareholder Letter |
| Arm Holdings plc Q3 FY 2024 Key Financial Data |
| Arm Holdings plc Q3 FY 2024 Shareholder Letter |
| Arm Neoverse CMN-700 Coherent Mesh Network, Technical Reference Manual, Revision: r3p2, p. 17. |
| Bhandarkar, Dileep, and Douglas W. Clark. "Performance from architecture: comparing a RISC and a CISC with similar hardware organization." Proceedings of the fourth international conference on Architectural support for programming languages and operating systems. 1991 |
| Hearing Transcript, September 29, 2023 |
| https://9to5mac.com/2019/11/15/three-former-apple-execs-create-new-chip-company-will-compete-with-intel-and-amd/ |
| https://aws.amazon.com/what-is/cpu/ |
| https://community.fs.com/article/what-is-a-server-cpu.html |
| https://download.intel.com/newsroom/kits/40thanniversary/pdfs/What_is_a_Microprocessor.pdf |
| https://futurumgroup.com/about-us/who-we-are/ |
| https://futurumgroup.com/insights/qualcomm-snapdragon-x-elite-and-███-cpu-aim-to-disrupt-the-pc-market/ |
| https://hbr.org/2022/08/in-uncertain-times-the-best-strategy-is-adaptability |
| https://investor.qualcomm.com/segments/qct |
| https://investors.arm.com/static-files/187d293b-42eb-48b0-b82f-e78bce4da9e4 |
| https://medium.com/silicon-reimagined/performance-delivered-a-new-way-8f0f5ed283d5 |
| https://mixed-news.com/en/samsung-xr-devices-will-use-google-and-qualcomm-tech/ |
| https://newsroom.arm.com/news/arm-announces-closing-of-initial-public-offering |
| https://nvidianews.nvidia.com/news/nvidia-introduces-grace-cpu-superchip |
| https://pc-tablet.com/qualcomm-throws-down-the-gauntlet-snapdragon-xr2-gen-2-challenges-apples-vision-pro-in-mixed-reality-race/ |
| https://podcasts.apple.com/us/podcast/qualcomm-ceo-on-what-he-really-thinks-of-apple/id1091374076?i=1000565773375) |
| https://seekingalpha.com/article/4422252-qualcomm-incorporated-qcom-ceo-steve-mollenkopf-on-q2-2021-results-earnings-call-transcript |
| https://semiengineering.com/knowledge_centers/integrated-circuit/ic-types/processors/central-processing-unit-cpu/ |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

## Arm Ltd. v. Qualcomm, Inc., Qualcomm Technologies, Inc. and Nuvia, Inc.
### Documents and Other Information Considered

Schedule 2

| Publicly Available Information/Other (cont.) |
| --- |

https://support.microsoft.com/en-us/windows/common-pc-and-device-terms-4542f069-4cf7-431a-bb6b-c6cbdbe3e6e9
https://techcrunch.com/2020/09/14/nuvia-series-b
https://viewpoint.pwc.com/dt/us/en/pwc/pwc_sec_volume_US/8000_registration_an_US/sec_8110_form_f1_US.html#pwc-topic.dita_fb3ce65d-0b9d-4db7-92ff-4e1fd99ba885
https://web.archive.org/web/20210115193713/https://nuviainc.com/
https://web.archive.org/web/20210316180114/https://nuviainc.com/
https://web.archive.org/web/20210422062904/https://nuviainc.com/nuvia-raises-53-million-to-reimagine-silicon-design-for-the-data-center/
https://www.americanbar.org/groups/tort_trial_insurance_practice/committees/automobile-litigation/safety_regulatory_considerations/
https://www.androidauthority.com/mobile-processors-2022-2741344/
https://www.arm.com/architecture/cpu
https://www.arm.com/glossary/adas
https://www.arm.com/glossary/connected-devices
https://www.arm.com/glossary/cpu
https://www.arm.com/glossary/iot-devices
https://www.arm.com/glossary/isa
https://www.arm.com/glossary/risc
https://www.arm.com/glossary/smart-devices
https://www.arm.com/glossary/soc-development
https://www.arm.com/partners
 https://www.arm.com/products/silicon-ip-system/corelink-interconnect/cmn-700
https://www.cnbc.com/2022/09/01/why-arms-lawsuit-against-qualcomm-is-a-big-deal.html
https://www.cnbc.com/2023/09/14/arm-ipo-what-is-risc-v-and-why-does-arm-call-the-rival-product-a-risk.html
https://www.cnbc.com/2023/11/09/how-arm-gained-chip-dominance-with-apple-nvidia-amazon-and-qualcomm.html
https://www.cnet.com/tech/computing/qualcomms-pc-chip-could-mean-windows-pcs-as-good-as-apple-macbooks/
https://www.currency.me.uk/convert/gbp/usd
https://www.digitaltrends.com/computing/what-is-a-cpu/
https://www.eweek.com/servers/cavium-introduces-thunderx2-arm-server-chip-for-data-center-systems/
https://www.forbes.com/sites/jonmarkman/2023/12/05/qualcomms-x-elite-crushes-apple-arm-holdings-stocks-surge/?sh=5f330d9e7d04
https://www.forbes.com/sites/startswithabang/2018/02/13/chaos-theory-the-butterfly-effect-and-the-computer-glitch-that-started-it-all/?sh=4b460bee69f6
https://www.ftc.gov/system/files/documents/cases/d09404_part_3_complaint_public_version.pdf
https://www.gigabyte.com/Article/server-processors-the-core-of-a-server-s-performance
https://www.gigabyte.com/Glossary/cisc
https://www.globenewswire.com/news-release/2019/11/15/1948072/0/en/NUVIA-Raises-53-Million-to-Reimagine-Silicon-Design-for-the-Data-Center.html
https://www.intel.com/content/www/us/en/newsroom/resources/moores-law.html
https://www.intel.com/content/www/us/en/products/docs/processors/xeon/server-processor-overview.html
https://www.intel.com/content/www/us/en/support/articles/000056236/intel-nuc.html
https://www.investopedia.com/articles/markets/012216/worlds-top-10-semiconductor-companies-tsmintc.asp
https://www.lenovo.com/us/en/glossary/cpu-core/
https://www.lenovo.com/us/en/glossary/instruction-set-architecture/
https://www.lenovo.com/us/en/glossary/x86/
https://www.linkedin.com/in/ivan-knez/
https://www.linkedin.com/in/peter-greenhalgh-8900789b/
https://www.linkedin.com/in/shultzwang/
https://www.linkedin.com/in/todd-lepinski-ababaa9/
https://www.mckinsey.com/featured-insights/mckinsey-explainers/what-is-the-internet-of-things
https://www.pcmag.com/news/qualcomm-snapdragon-x-elite-▮▮▮-chip-tests
https://www.pcworld.com/article/1382740/qualcomm-dubs-nuvia-cpu-▮▮▮-on-track-for-2023.html
https://www.precedenceresearch.com/microprocessor-market
https://www.qualcomm.com/content/dam/qcomm-martech/dm-assets/documents/M29QualcommPDFa.pdf
https://www.qualcomm.com/news/onq/2022/11/qualcomm-▮▮▮-custom-cpu-at-center-of-next-gen-premium-experiences-on-snapdragon-platforms
https://www.qualcomm.com/news/releases/2005/11/qualcomm-introduces-worlds-most-advanced-mobile-microprocessor

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Arm Ltd. v. Qualcomm, Inc., Qualcomm Technologies, Inc. and Nuvia, Inc.**   Schedule 2
**Documents and Other Information Considered**

| Publicly Available Information/Other (cont.) |
| --- |

https://www.qualcomm.com/news/releases/2021/01/qualcomm-acquire-nuvia
https://www.qualcomm.com/news/releases/2021/03/qualcomm-completes-acquisition-nuvia
https://www.qualcomm.com/news/releases/2023/10/qualcomm-unleashes-snapdragon-x-elite--the-ai-super-charged-plat
https://www.qualcomm.com/products
https://www.qualcomm.com/products/technology/processors
https://www.qualcomm.com/research/extended-reality
https://www.qualcomm.com/snapdragon/overview
https://www.sec.gov/files/reada10k.pdf
https://www.techspot.com/article/1856-aiming-for-atoms-chip-manufacturing/
https://www.telink-semi.com/system-on-chip/
https://www.tomshardware.com/news/arm-based-cpus-set-to-double-notebook-pc-market-share-by-2027
https://www.tomshardware.com/pc-components/cpus/arm-pc-market-share-shrinks-mercury-research
https://www.tomshardware.com/reviews/glossary-soc-system-on-chip-definition,5890.html
https://www.wired.com/story/apples-new-macbook-pro-chips-flex-power-custom-silicon/
NuVia, Inc., Private Company Profile, S&P Capital IQ
Nvidia-Arm, A report to the Secretary of State for Digital, Culture, Media & Sport on the anticipated acquisition by NVIDIA Corporation of Arm Limited, July 20, 2021
Performance from Architecture: Comparing a RISC and a CICS with Similar Hardware Organization, Bhandarkar & Clark
Qualcomm Inc. Form 10-K for the fiscal year ended September 24, 2023
Qualcomm Inc. Form 10-K for the fiscal year ended September 26, 2021
Qualcomm Incorporated FQ1 2024 Earnings Call Transcripts, January 31, 2024
Qualcomm Incorporated, Form 10-K for fiscal year ended September 24, 2023
Reference Manual on Scientific Evidence, Federal Judicial Center and National Research Council of the National Academies
S&P Capital IQ, Infineon Technologies AG Transaction Details, Merger/Acquisition: Cypress Semiconductor Corporation
S&P Capital IQ, Nuvia, Inc. Transaction Details, Merger/Acquisition: Qualcomm Technologies, Inc.
S&P Capital IQ, Nuvia, Inc. Transaction Details, Private Placement: Mayfield Fund, LLC
The Sedona Conference, Commentary on Monetary Remedies in Trade Secret Litigation, 24 SEDONA CONF. J. 349 (2023)
Weil, Roman L., et al. Litigation Services Handbook: The Role of the Financial Expert, 6th Edition, Wiley, 2017

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on August 21, 2024, a copy of the foregoing

document was served on the counsel listed below in the manner indicated:

**<u>BY EMAIL</u>**

Jack B. Blumenfeld
Jennifer Ying
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

Isaac B. Zaur
Nora Niedzielski-Eichner
CLARICK GUERON REISBAUM LLP
220 Fifth Avenue, 14th Floor
New York, NY 10001
izaur@cgr-law.com
nniedzie@cgr-law.com

Catherine Nyarady
Anna R. Gressel
Jacob A. Braly
Alexander M. Butwin
Samantha Mehring
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
agressel@paulweiss.com
jbraly@paulweiss.com
abutwin@paulweiss.com
smehring@paulweiss.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
Anna P. Lipin
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
kdunn@paulweiss.com
wisaacson@paulweiss.com
mzappala@paulweiss.com
ejmorgan@paulweiss.com
alipin@paulweiss.com

Andrea L. D'Ambra
Susana Medeiros
Kira Latham
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019
andrea.dambra@nortonrosefulbright.com
susana.medeiros@nortonrosefulbright.com
kira.latham@nortonrosefulbright.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Plaintiff Arm Ltd.*

2