

**WILMINGTON**
RODNEY SQUARE

**Anne Shea Gaza**
P 302.571.6727
F 302.576.3439
agaza@ycst.com

November 22, 2024

**BY E-FILE AND HAND DELIVERY**

**REDACTED - PUBLIC VERSION**
(Filed December 2, 2024)

The Honorable Maryellen Noreika
United States District Court
for the District of Delaware
844 North King Street
Wilmington, DE 19801

Re:    *Arm Ltd. v. Qualcomm Inc., et al.*, C.A. No. 22-1146-MN

Dear Judge Noreika:

Arm respectfully submits this letter pursuant to the Court's order at the pretrial conference. (11/20/2024 Hr'g Tr. at 57:14-18.) Arm objects to Defendants' belated attempt to attack the pleadings on the eve of trial. As explained below, Arm has adequately pleaded each of the breach issues and requested remedies identified by Defendants.

At the pretrial conference, Defendants sought, for the first time, exclusion of (1) certain of Arm's requested remedies, and (2) breach of the assignment provision of the Nuvia ALA. (*Id.* at 45:15-19, 49:2-17, 53:23-54:2.) Yesterday, Defendants added a request to exclude (1) breach of confidentiality obligations in the Nuvia ALA and (2) declaratory judgment that all technology developed under the Nuvia ALA is unlicensed. (*See* Ex. A.)

**Breach of** ███████: Arm pled breach of the Nuvia ALA's assignment provision, ██████, in its Complaint. The Complaint alleges that Arm "terminated the licenses based on *Nuvia's material breach of the assignment provisions of the Nuvia licenses by entering into the acquisition of Nuvia without Arm's consent.*" (D.I. 1 at ¶ 39 (emphasis added).) Arm pled that "*Qualcomm's improper acquisition of the relevant Nuvia technology* in violation of Arm's standard provisions" threatens harm to Arm. (*Id.* at ¶ 57 (emphasis added).) Arm referred to the lack of "consent" repeatedly in the Complaint. (*Id.* at ¶¶ 27, 28, 36, 37, 39.) Qualcomm's response acknowledges and addresses the topic, referring to "consent" and ████████ numerous times. (*See, e.g.*, D.I. 300 ¶¶ 23-24, 84, 190, 193-194, 197-198, 203-204, 218-219, 251.) This alone resolves the issue.

When Arm moved for summary judgment that Arm properly terminated the Nuvia ALA based on Section 16.3, Defendants responded that "*Count 1 of Arm's Complaint alleges that Defendants breached* ████████ *of the Nuvia ALA*, giving Arm the right to terminate that agreement under ████████ for a material breach…" (D.I. 423 at 20 (emphasis added).)

1

Young Conaway Stargatt & Taylor, LLP
The Honorable Maryellen Noreika
November 22, 2024
Page 2

Defendants' response and oral argument contested the merits of the claim, not whether it was properly framed in the pleadings. (D.I. 423 at 20-21; D.I. 513 (10/30/2024 Hr'g Tr.) at 4:5-8 ("THE COURT: I want you to tell me, are you saying that the provision of ▮ was not breached? MR. ISAACSON: We are saying that it was not properly terminated"), 4:17-18 ("MR. ISAACSON: We did not breach the assignment provision."), 21:8-9 ("THE COURT: Is NuVia controlled by Qualcomm? MS. DUNN: No.").) Defendants' breach of ▮ is a predicate to whether Defendants complied with their post-termination obligations, as the parties' statements and arguments to the Court confirm.

The breach of ▮ was also raised and preserved in interrogatory responses and requests for admission, including Defendants' Interrogatory No. 8 and Arm's Requests for Admission No. 3-6 regarding the lack of consent to assignment. (Exs. B, C.) Discovery (as well as depositions) fully explored the issue. (*See, e.g.*, Ex. E at 95:6-103:9, 156:8-23; Ex. F at 183:12-25, 185:8-192:13, 195:4-196:6.)

Arm's Complaint pled Count I for Breach of Contract, and Arm's multiple bases for that cause of action are incorporated into the same. *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones"); *id.* at Rule 10 ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion"); *Hydrogen Master Rights Ltd. v. Weston*, 228 F. Supp. 3d 320, 337 (D. Del. 2017) (incorporation of allegations elsewhere in complaint into count sufficient). Because Arm pled the predicate breach of ▮ in its Complaint and Qualcomm contested consent in its Answer and Counterclaims, the pleadings unquestionably presented ▮ as one of the bases for Arm's action.

**Breach of ▮** Arm has also properly raised Defendants' breaches of the confidentiality provisions under ▮ of the Nuvia ALA. Arm's Complaint states that Arm terminated the Nuvia ALA for material breach via a letter dated February 1, 2022 (D.I. 1 at ¶ 39), and that letter expressly states that Nuvia violated "the confidentiality provisions under ▮" and "made unlicensed use of Arm's confidential information in violation of ▮" (D.I. 374, Ex. 19.) Confirming this underlying basis for the action, Defendants' responsive pleading refers to Arm confidential information repeatedly (D.I. 300 ¶¶ 5, 6, 23, 31, 36, 37, 49, 89, 107, 191-192), noting that Arm "alleged that NUVIA *violated the confidentiality provisions of* ▮ *of both of the NUVIA license agreements* by making unlicensed use of ARM's confidential information." (*Id.* ¶ 218 (emphasis added).) Both sides' pleadings thus reflect that breach of ▮ s restriction on the use of confidential information formed a basis for Arm's breach of contract claim. Fed. R. Civ. P. 8(d)(2), 10; *Weston*, 228 F. Supp. 3d at 337. Thereafter, Gerard Williams was extensively questioned regarding the handling of confidential information during Qualcomm's acquisition of Nuvia. (*See* Ex. E at 165:1-170:17.) And Defendants' response to Arm's motion for summary judgment spars substantively over the topic of the scope and treatment of Arm Confidential Information. (D.I. 423 at 12-15.) Defendants' confidentiality obligations and misuse of Arm's confidential information are squarely in the case.

Young Conaway Stargatt & Taylor, LLP
The Honorable Maryellen Noreika
November 22, 2024
Page 3

**Remedies:** Arm has properly requested the relief identified by Defendants: (1) unjust enrichment, (2) royalties and an accounting, (3) disgorgement, (4) an order requiring payment of royalties, an accounting, supplementary damages, and other monetary compensation, and (5) a declaratory judgment that technology developed under the Nuvia ALA is unlicensed.

Arm's Complaint requests: (1) "damages incidental to specific performance as a result of Defendants' breach of contract…including all pre-judgment and post-judgment interest at the maximum rate permitted by law"; (2) "[c]osts, expenses, and reasonable attorney fees under all applicable rules, statutes, and rules in common law that would be appropriate, with pre-judgment and post-judgment interest thereon at the maximum rate permitted by law"; (3) "[e]quitable relief addressing any infringement occurring after entry of judgment"; (4) "[s]uch other relief as the Court deems just and proper," and notes the need "to prevent the unjust enrichment of Qualcomm." (D.I. 1 at pp. 17, 26, 28.) Its initial disclosures represent that "Arm seeks damages for Defendants' ongoing delay in performing their contractual obligations, which cannot be calculated until specific performance is rendered." (Ex. D at 7.) Its interrogatory responses state that Arm may seek "incidental damages that it is entitled to beyond specific performance" including damages incidental to Defendants' breach. (Ex. B.) Defendants' counterclaim expressly seeks declaratory relief that Qualcomm's architected cores are fully licensed under Qualcomm's ALA and TLA for the full terms of those licenses. (D.I. 300 at ¶ 275(b).) Qualcomm's counterclaim thus itself provides the basis for Arm's request for the express denial of the declaration Qualcomm seeks. (*See* D.I. 318 at ¶¶ 274-277 (denying allegations of Qualcomm's declaratory judgment claim).)

Courts have routinely found that broad requests for all proper relief are sufficient even as to remedies not expressly identified. *Sheet Metal Workers' Int'l Ass'n Loc. 19 v. Herre Bros.*, 201 F.3d 231, 248–49 (3d Cir. 1999) (specific performance appropriate based on pleading for "[s]uch other relief as the Court deems just and reasonable"); *Sheet Metal Workers Loc. 19 v. Keystone Heating & Air Conditioning*, 934 F.2d 35, 40 (3d Cir. 1991) (Rule 8(a)(3) "does not require that the demand for judgment be pled with great specificity"); *Int'l Union of Elevator Constructors, AFL-CIO v. Reg'l Elevator Co.*, 847 F. Supp. 2d 691, 701 (D. Del. 2012) (specific performance request preserved where complaint requested "other such relief deemed just and proper"); *F.T.C. v. Cephalon, Inc.*, 100 F. Supp. 3d 433, 439 (E.D. Pa. 2015) (requesting "such other equitable relief as the Court finds necessary" sufficient for disgorgement). Except for default judgments, every "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c).

Further, Qualcomm cannot show any prejudice or surprise that might warrant exclusion. *See TQ Delta, LLC v. ADTRAN, Inc.*, C.A. No. 14-954-RGA, 2019 WL 4346530, at *1 (D. Del. Sept. 12, 2019) (factors to consider are "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the possibility of curing the prejudice; (3) the potential disruption of an orderly and efficient trial; (4) the presence of bad faith or willfulness in failing to disclose the evidence; and (5) the importance of the information withheld"). There is no prejudice here because Qualcomm was on notice through Arm's pleadings, discovery responses, and deposition testimony.  (*See* Exs. B-F; D.I. 1.)

3

Young Conaway Stargatt & Taylor, LLP
The Honorable Maryellen Noreika
November 22, 2024
Page 4

Respectfully submitted,

*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)

Enclosures

cc: All Counsel of Record (CM/ECF & Email)

# EXHIBIT A

**From:**  Morgan, Erin J <ejmorgan@paulweiss.com>
**Sent:**  Thursday, November 21, 2024 10:58 AM
**To:**  Fung, Nicholas Rylan; Nyarady, Catherine; GRP-QC; jying@morrisnichols.com; Blumenfeld, Jack
**Cc:**  MoFo_Arm_QCOM; YCST_Arm_Qualcomm@ycst.com
**Subject:**  RE: Arm Ltd. v. Qualcomm Inc., et al., C.A. No. 22-1146-MN

<mark>**External Email**</mark>

---

Hi Nick—

Below is a list of breaches and remedies we believe Arm did not plead.  Please let us know if you have questions or if you think there is anything the parties have previously discussed that has been left off the list.

Thanks,

Erin

*                *                *                *                *

**Breaches**
- ███████ of the Nuvia ALA
- ███████ of the Nuvia ALA

**Remedies**
- Unjust enrichment (Arm IOL ¶ 15) (Arm IOP ¶¶ 126-128).
- Royalties and an accounting (Arm IOL ¶ 16) (Arm IOP 120(b)).
- Disgorgement (Arm IOF ¶ 19) (Arm IOP ¶¶ 126, 128).
- An "order requiring Defendants to pay royalties, an accounting . . .  supplemental damages . . . and other monetary compensation as an equitable remedy for products using, incorporating, or based on technology developed under the Nuvia ALA that were manufactured or sold during periods in which Defendants have failed to comply with their obligations under Section 15.1, including prior to the effective date of specific performance" (emphasis added) (Arm IOP ¶ 120(b)); Arm IOF ¶ 18 (royalties, an accounting, supplemental damages).
- A "declaratory judgment that all technology developed under the Nuvia ALA is unlicensed, including code, *e.g.*, RTL and source code, tools, and specifications for custom CPUs, cores, semiconductor chips, systems-on-chips (SoCs), and other related technologies and products such as processor

cores including ███████████████████████ designs including ███████████████████████, and commercial products including Qualcomm's ████████████████████████████████ Arm IOP ¶ 121); Arm IOL ¶ 14.

**Erin J. Morgan** | Partner
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas | New York, NY 10019-6064
+1 212 373 3387 (Direct Phone) | +1 212 492 0387 (Direct Fax)
ejmorgan@paulweiss.com | www.paulweiss.com

---

**From:** Morgan, Erin J
**Sent:** Wednesday, November 20, 2024 9:32 PM
**To:** Fung, Nicholas Rylan <NFung@mofo.com>; Nyarady, Catherine <CNyarady@paulweiss.com>; GRP-QC <GRP-QC@paulweiss.com>; jying@morrisnichols.com; Blumenfeld, Jack <jblumenfeld@morrisnichols.com>
**Cc:** MoFo_Arm_QCOM <MoFo_Arm_QCOM@mofo.com>; YCST_Arm_Qualcomm@ycst.com
**Subject:** RE: Arm Ltd. v. Qualcomm Inc., et al., C.A. No. 22-1146-MN

Nick—

We identified several of these issues on the record today.  We will let you know of anything additional by 2 pm EST tomorrow (Nov 21).

Best,

Erin

**Erin J. Morgan** | Partner
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas | New York, NY 10019-6064
+1 212 373 3387 (Direct Phone) | +1 212 492 0387 (Direct Fax)
ejmorgan@paulweiss.com | www.paulweiss.com

---

**From:** Fung, Nicholas Rylan <NFung@mofo.com>
**Sent:** Wednesday, November 20, 2024 7:13 PM
**To:** Nyarady, Catherine <cnyarady@paulweiss.com>; GRP-QC <GRP-QC@paulweiss.com>; jying@morrisnichols.com; Blumenfeld, Jack

<[jblumenfeld@morrisnichols.com](mailto:jblumenfeld@morrisnichols.com)>
**Cc:** MoFo_Arm_QCOM <[MoFo_Arm_QCOM@mofo.com](mailto:MoFo_Arm_QCOM@mofo.com)>; [YCST_Arm_Qualcomm@ycst.com](mailto:YCST_Arm_Qualcomm@ycst.com)
**Subject:** Arm Ltd. v. Qualcomm Inc., et al., C.A. No. 22-1146-MN

Counsel,

At today's pretrial conference, Qualcomm represented to the Court that Arm had purportedly waived or failed to plead certain issues identified in Arm's pretrial order submissions.

Please identify by noon ET tomorrow (Nov. 21) all such issues that Qualcomm contends Arm waived or failed to plead, so that Arm may address these in our 3-page letter submission due on Friday.

Regards,

**Nicholas Fung**
Partner | Morrison Foerster
[nfung@mofo.com](mailto:nfung@mofo.com)
T: +1 (213) 892-5348

=========================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email. Learn about Morrison & Foerster LLP's [Privacy Policy](.).
.

This message is intended only for the use of the Addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please erase all copies of the message and its attachments and notify us immediately.

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ARM LTD., a U.K. corporation,<br>          Plaintiff,<br><br>          v.<br>QUALCOMM INC., a Delaware corporation,<br>QUALCOMM TECHNOLOGIES, INC., a<br>Delaware corporation, and NUVIA, INC., a<br>Delaware corporation,<br>          Defendants. | C.A. No. 22-1146-MN<br><br>**CONTAINS HIGHLY<br>CONFIDENTIAL – ATTORNEYS'<br>EYES ONLY INFORMATION** |

## ARM LTD.'S  FIRST (CORRECTED) SUPPLEMENTAL OBJECTIONS AND RESPONSES TO QUALCOMM'S FIRST SET OF INTERROGATORIES (NOS. 1-11)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Civil Rules of this Court ("Local Rules"), Arm Ltd. ("Arm") submits the following first supplemental responses and objections to Qualcomm's First Set of Interrogatories (Nos. 1-11), dated December 20, 2022, and deemed served when discovery opened on January 13, 2023 (each an "Interrogatory" and collectively the "Interrogatories").

## RESERVATION OF RIGHTS

1.      Arm's responses to the Interrogatories ("Responses") are made in accordance with the Federal Rules of Civil Procedure and based upon information currently available to Arm.  Arm responds to the Interrogatories without prejudice to Arm's right to supplement its Responses.  Arm provides these responses and objections to the best of its current knowledge, information, and belief, based on information readily and reasonably available to it after making a reasonable inquiry.  Arm expressly reserves the right to modify or supplement any Response and to assert additional objections to the Interrogatories as necessary or appropriate.

Further, Arm expects its exclusive licensing agreement with Arm China to continue to account for substantial Arm revenues from the PRC.

Arm presently believes that persons knowledgeable about these issues include Will Abbey (SVP, Sales & Partner Enablement; care of Arm Ltd.), Paul Williamson (SVP, GM IoT; care of Arm Ltd.), and Chris Bergey (SVP, GM Client Line of Business; care of Arm Ltd.), all employees of Arm.

Arm objects to this Interrogatory as it is overly broad, unduly burdensome, and disproportionate to the needs of the case, where "future business plans" is not defined in terms proportionate or relevant to the needs of the case, nor is it limited in time or scope or to particular aspects of Arm's business. Arm objects to this Interrogatory's use of the term "other intellectual property" to the extent it seeks confidential, proprietary, or trade secret information pertaining to Arm or third parties. Arm objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules.

**INTERROGATORY NO. 8:**

Describe, in detail, the complete factual and legal bases for your contention that "the prospective monetary damages from Qualcomm's circumvention and interference with ARM's control over its technology are not readily ascertainable or calculable, given the resulting future impact on ARM's relationships with existing and prospective customers." (D.I. 1 ¶ 56).

**RESPONSE TO INTERROGATORY NO. 8:**

Subject to its objections, Arm responds that the prospective monetary damages from Qualcomm's circumvention and interference with Arm's control over its technology are not readily ascertainable or calculable given the uncertainty regarding Qualcomm's plans, the

complexity of the relevant markets, and the complexity of the potential ways in which Qualcomm's activities may impact Arm, including Arm's position in the market, its reputation with customers and potential customers, and the perceived value of or necessity for its licenses.

The Nuvia ALA provided a rare license to develop Arm-based processor core designs, as described in Response to Interrogatory No. 6.  Arm granted this license and supported Nuvia's development efforts with the understanding that Nuvia was developing CPUs for data center servers that would have expanded the market for Arm's technology.  The Nuvia ALA safeguarded Arm's rights and expectations ███████████████████████████ ███████████████████████████████████.  Defendants breached this provision, enabling the Nuvia processor cores that Arm had supported for use in data center servers to be repurposed for use in other products, thus threatening to impact, among other things, Arm's own engineering teams, as described in Response to Interrogatory No. 6. Given the commercially sensitive, unique nature of the Nuvia ALA's license and corresponding requirements of its termination provision, monetary damages would not provide a substantial equivalent of Defendants' performance under the contract, in part because of the negative example set by Defendants for other Arm licensees and prospective licensees.  Defendants' breach of the Nuvia ALA "to compete more effectively against CPUs designed . . . by rival ARM licensees and ARM" (D.I. 18 ¶ 11) threatens to disrupt Arm's current and future business plans, undermine its role in the relevant marketplaces, jeopardize Arm's relationships with its existing and prospective customers and partners, cause it to lose goodwill, and inflict other reputational harm on Arm and its technology.

Arm's injuries from Defendants' breach of the Nuvia ALA are not limited to Defendants' anticipated underpayment of royalties owed to Arm.  Defendants' Answer and Amended

Complaint assert that "Qualcomm will in the future pay to ARM the lower royalty rate under its ALA for [Defendants'] custom CPUs, rather than the higher royalty rates under Qualcomm's TLA." (D.I. 18 ¶ 20.)  While the harm from lower royalty rates may be calculable, the harm to Arm's business model from such flagrant disregard of Arm's rights is incalculable, because of the potential knock-on effects if a prominent licensee can flagrantly breach its obligations, proceed with unlicensed technology, and undermine Arm's royalty framework.  Further, an unknown number of Arm's current customers may shift from exercising their TLA license rights, and from continuing to license new Arm technology, to using Defendants' Nuvia-based Products.  This shift, which could result in further lost royalties and licensing fees for Arm, would thereby undercut Arm's revenue streams and its position and reputation in the market. Defendants' Nuvia-based Products may also attract an unknown number of prospective Arm customers that otherwise would have licensed Arm technology under new Arm TLAs or annexes thereto.  Defendants' breach of the Nuvia ALA thus not only threatens to interfere with Arm's relationships with its customers and harm Arm's ability to license its own processor designs, but also to impair Arm's goodwill and brand name in the semiconductor industry.

Defendants' breaches further threaten to undermine Arm's relationship with its existing and prospective customers in unmeasurable ways by creating a harmful precedent and signal that other customers can breach their contractual obligations to Arm under their respective licenses, as Defendants have breached their own contractual obligations.  Defendants' circumvention and interference with Arm's control over its technology may negatively impact Arm's ability to enforce its intellectual property rights because it creates a harmful potential precedent and signals that other entities can likewise circumvent those rights.  Further, Defendants' activities threaten to undermine Arm's relationships with its customers and devalue Arm's intellectual

property rights, jeopardizing Arm's customer relationships and the value of its intellectual property. Those changes could have a compounding effect of reducing Arm's revenues or negatively impacting its profitability, which would in turn impact Arm's operations and financial condition and prospects.

Defendants' breach of the Nuvia ALA also threatens Arm's business model, creating risk of business losses that cannot be reasonably identified. Defendants' actions may put pressure on Arm to change the structure and terms of Arm's customer relationships or its business models, including its product offerings, which may impact Arm's ability to meet the needs of its customers and continue to drive innovation. For example, Arm caters to its customer base through its development of processor designs, and Defendants' threat to Arm's customer base could require changes to Arm's business model. Any such changes would likely affect Arm's profit margins and could impact its business, results of operations, financial condition, and prospects.

Arm objects to this Interrogatory because Arm cannot know the future impact of Qualcomm's plans, where Arm, unlike Qualcomm, does not know what Qualcomm's current or future plans are or what Qualcomm may do. Arm objects to this Interrogatory to the extent it seeks confidential, proprietary, or trade secret information pertaining to third parties, by asking Arm to quantify damages that incorporate Arm's plans and that involve Arm's business relationships with third parties. Arm further objects to this Interrogatory as it is premature in that it seeks information that is likely to be the subject of additional expert testimony prior to the time set by the Court for final expert witness disclosures.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8:**

Subject to its objections, Arm responds that the prospective monetary damages from Qualcomm's circumvention and interference with ARM's control over its technology are not readily ascertainable or calculable given the uncertainty regarding Qualcomm's plans, the complexity of the relevant markets, and the complexity of the potential ways in which Qualcomm's activities may impact Arm, including Arm's position in the market, its reputation with customers and potential customers, and the perceived value of or necessity for its licenses.

The Nuvia ALA provided a rare license to develop Arm-based processor core designs, as described in Response to Interrogatory No. 6. Arm granted this license and supported Nuvia's development efforts with the understanding that Nuvia was developing CPUs for data center servers that would have expanded the market for Arm's technology. The Nuvia ALA safeguarded Arm's rights and expectations by ███████████████████████████████ ████████████████████████████████████. As described in Arm's Complaint, Defendants breached this provision, thereby enabling the Nuvia processor cores that Arm had supported for use in data center servers to be repurposed for use in other products, thus threatening to impact, among other things, Arm's own engineering teams, as described in Response to Interrogatory No. 6. Given the commercially sensitive, unique nature of the Nuvia ALA's license and corresponding requirements of its termination provision, monetary damages would not provide a substantial equivalent to Defendants' performance under that contract, in part because of the negative example set by Defendants for other Arm licensees and prospective licensees, as previously discussed. Defendants' breach of the Nuvia ALA "to compete more effectively against CPUs designed . . . by rival ARM licensees and ARM," (D.I. 18 ¶ 11), threatens to disrupt Arm's current and future business plans, undermine its role in the

relevant marketplaces, jeopardize Arm's relationships with its existing and prospective customers and partners, cause it to lose goodwill, and inflict other reputational harm on Arm and its technology.

Arm's injuries from Defendants' breach of the Nuvia ALA are not limited to Defendants' anticipated underpayment of royalties owed to Arm.  Defendants' Answer and Amended Complaint assert that "Qualcomm will in the future pay to ARM the lower royalty rate under its ALA for [Defendants'] custom CPUs, rather than the higher royalty rates under Qualcomm's TLA."  (D.I. 18 ¶ 20.)  While the harm from lower royalty rates may be calculable, the harm to Arm's business model from such flagrant disregard of Arm's rights is incalculable, because of the potential knock-on effects if a prominent licensee can flagrantly breach its obligations, proceed with unlicensed technology, and undermine Arm's royalty framework.  Further, an unknown number of Arm's current customers may shift from exercising their TLA license rights, and from continuing to license new Arm technology, to using Defendants' Nuvia-based Products.  This shift, which could result in further lost royalties and licensing fees for Arm, would thereby undercut Arm's revenue streams and its position and reputation in the market. Defendants' Nuvia-based Products may also attract an unknown number of prospective Arm customers that otherwise would have licensed Arm technology under new Arm TLAs or annexes thereto.  Defendants' breach of the Nuvia ALA thus not only threatens to interfere with Arm's relationships with its customers and harm Arm's ability to license its own processor designs, but also to impair Arm's goodwill and brand name in the semiconductor industry.

Defendants' breaches further threaten to undermine Arm's relationship with its existing and prospective customers in unmeasurable ways by creating a harmful precedent and signal that other customers can breach their contractual obligations to Arm under their respective licenses,

as Defendants have breached their own contractual obligations. Defendants' circumvention and interference with Arm's control over its technology may negatively impact Arm's ability to enforce its intellectual property rights because it creates a harmful potential precedent and signals that other entities can likewise circumvent those rights. Further, Defendants' activities threaten to undermine Arm's relationships with its customers and devalue Arm's intellectual property rights, jeopardizing Arm's customer relationships and the value of its intellectual property. Those changes could have a compounding effect of reducing Arm's revenues or negatively impacting its profitability, which would in turn impact Arm's operations and financial condition and prospects.

Defendants' breach of the Nuvia ALA also threatens Arm's business model, creating risk of business losses that cannot be reasonably identified. Defendants' actions may put pressure on Arm to change the structure and terms of Arm's customer relationships or its business models, including its product offerings, which may impact Arm's ability to meet the needs of its customers and continue to drive innovation. For example, Arm caters to its customer base through its development of processor designs, and Defendants' threat to Arm's customer base could require changes to Arm's business model. Any such changes would likely affect Arm's profit margins and could impact its business, results of operations, financial condition, and prospects.

Arm incorporates by reference its responses and objections to Qualcomm's Interrogatory No. 6. Arm is entitled to specific performance because monetary damages are inadequate to fully compensate it for Qualcomm and Nuvia's past and continued breaches of the assignment and termination provisions of the Nuvia Agreement. Qualcomm and Nuvia have breached a valid contract, Arm has abided by its own terms of the Nuvia agreement, and Qualcomm and

Nuvia could have discontinued use and distribution of any Arm Confidential Information, Arm Technology, derivatives or embodiments of such Arm Confidential Information and Arm Technology, and any products embodying such technology or information, and destroyed or returned all Arm Confidential Information, Arm Technology, and derivatives or embodiments of such Arm Confidential Information and Arm Technology to abide by the agreement, but did not. A remedy which does not require the discontinued use and distribution of any Arm Confidential Information, Arm Technology, derivatives or embodiments of such Arm Confidential Information and Arm Technology, and any products embodying such technology or information, and the destruction or return of all Arm Confidential Information, Arm Technology, and derivatives or embodiments of such Arm Confidential Information and Arm Technology under the Nuvia agreement would not fully compensate Arm for the harm that Qualcomm and Nuvia have caused, and continue to cause, to Arm.

No amount of monetary damages is quantifiable to compensate Arm for Qualcomm and Nuvia's continued use of Arm Confidential Information and Arm Technology, derivatives or embodiments of such Arm Confidential Information and Arm Technology, and products embodying such technology or information.  For example, if Qualcomm is not required to destroy Arm Technology and Arm Confidential Information (including the information which is essential to the Nuvia cores), Qualcomm will continue to sell processor cores based on Arm Technology and Arm Confidential Information received under the Nuvia agreement.  This continued sale would cause continuous harm to Arm, which monetary damages cannot quantify, which is realized and tangible, and which will continue into an indefinite period of time unless enjoined.  Accordingly, Arm would not receive full, fair, and complete relief in lieu of an equitable remedy requiring Qualcomm to provide Arm with the benefit of the bargain it is

entitled to under the Nuvia agreement, and to discontinue use and distribution of any Arm Confidential Information, Arm Technology, derivatives or embodiments of such Arm Confidential Information and Arm Technology, and any products embodying such technology or information, and destroy or return all Arm Confidential Information, Arm Technology, and derivatives or embodiments of such Arm Confidential Information and Arm Technology, including Nuvia cores based on Arm Confidential Information and Arm Technology.

Specifically, full, fair, and complete relief is not possible because money damages would be impracticable and not readily quantifiable. For example, Arm's business operates on an extensive licensing ecosystem. (*See, e.g.*, ARM_01236577-579). Arm designs processor core architecture, which it then licenses to downstream customers who use that technology in the most sophisticated and innovative semiconductors on the market today. (*See id.*) Public documentation corroborates that Arm's licensing ecosystem is well-established, widespread, and is based on the use of underlying Arm confidential information and derivatives or embodiments thereof. (*See, e.g.*, ARM_01236577-01236744).

Arm's business model relies on the cooperation and support of its licensees. Arm provides confidential information, technical support, and similar services to assist licensees in their use of Arm technology. A delicate ecosystem exists between Arm and its licensees, and its licensees to each other. If one licensee were to circumvent this system, it would harm the balance of the licensing ecosystem which is critical to Arm's financial future. Arm identifies the following individuals as knowledgeable regarding Arm's licensing ecosystem: Lynn Couillard, Will Abbey, Paul Williamson. Arm identifies the following individuals as knowledgeable about Arm's license agreements: Christine Tran.

Like any Arm licensee, Nuvia had access to Arm Technology and Arm Confidential Information pursuant to its ALAs and its agreement with Arm.  Arm provided Arm Confidential Information and Arm Technology.  Nuvia used Arm Confidential Information and Arm Technology to create the ███████████ and related products under its Arm ALA.  Nuvia then transferred that technology created under its Arm ALA to Qualcomm after Qualcomm acquired Nuvia.  Qualcomm remains in possession of Arm Confidential Information, Arm Technology, derivatives or embodiments of such Arm Confidential Information and Arm Technology, and products embodying such technology or information, refuses to destroy it, and has incorporated it into its future business plans as derivatives or embodiments of Arm Confidential Information and Arm Technology.  This continued use of Arm Technology, Arm Confidential Information, and derivatives or embodiments of such Arm Confidential Information and Arm Technology in breach of the Nuvia agreement risks undermining Arm's entire licensing ecosystem in perpetuity if an equitable remedy is not imposed.

Arm's licensing ecosystem is a valuable asset, harm to which creates tangible harm to Arm.  Arm has significantly invested time and money into developing its licensing ecosystem. Arm has invested substantial amounts into research and development of its licensed products and has invested substantial amounts into the sales and negotiation efforts to license its technology on a worldwide basis.  Moreover, for ALA programs such as Nuvia's, Arm must pull engineering resources to support said ALA programs.

Moreover, Arm has been harmed by lost opportunity costs by pulling resources from other projects to assist Nuvia in the development of products under its ALA.  The lost opportunities, including the time, effort and non-tangible value of the engineering support Arm provided to Nuvia is not readily quantifiable and monetary damages would be inadequate to

Technology delivered under that agreement, while Nuvia-based Products are based on ARM Technology delivered under the Nuvia ALA.

Arm objects to this Interrogatory as it inaccurately quotes Paragraph 4 of Arm's Answer and Affirmative Defenses to Defendants' Amended Counterclaim. Arm further objects to this Interrogatory as it calls for information that is as readily available to Qualcomm as it is to Arm. Arm objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules.

Dated: March 1, 2024

OF COUNSEL:

Michael A. Jacobs
Joyce Liou
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
mjacobs@mofo.com
jliou@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
 */s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com
*Attorneys for Plaintiff Arm Ltd.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 1, 2024, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

Isaac B. Zaur
Nora Niedzielski-Eichner
CLARICK GUERON REISBAUM LLP
220 Fifth Avenue, 14th Floor
New York, NY 10001
izaur@cgr-law.com
nniedzie@cgr-law.com

Catherine Nyarady
Anna R. Gressel
Madalyn G. Vaughn
Jacob A. Braly
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
agressel@paulweiss.com
mvaughn@paulweiss.com
jbraly@paulweiss.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
Brian Shiue
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
kdunn@paulweiss.com
wisaacson@paulweiss.com
mzappala@paulweiss.com
ejmorgan@paulweiss.com
bshiue@paulweiss.com

Andrea L. D'Ambra
Susana Medeiros
Kira Latham
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019
andrea.dambra@nortonrosefulbright.com
susana.medeiros@nortonrosefulbright.com
kira.latham@nortonrosefulbright.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square

1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Plaintiff Arm Ltd.*

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARM LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-1146 (MN) |
| | ) | |
| QUALCOMM INC., QUALCOMM | ) | |
| TECHNOLOGIES, INC. and NUVIA, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF ARM LTD.'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT QUALCOMM INC.

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure and the Local Civil Rules of this Court, Plaintiff ARM Ltd. ("ARM") requests that Defendant Qualcomm Inc., Qualcomm Technologies, Inc., and Nuvia, Inc. ("NUVIA") (collectively, "Defendants" or "Qualcomm") serve ARM with its written responses to these requests for admission within thirty (30) days of service.

## DEFINITIONS

1.      "Arm" or "Plaintiff" means Arm Ltd., and its officers, directors, and employees, and the officers, directors, and employees of its related corporate entities and their subsidiaries.

2.      "Qualcomm" means Defendants Qualcomm Inc. and Qualcomm Technologies, Inc., and any of their officers, directors, employees, corporate parents, subsidiaries, affiliates, agents, consultants, independent contractors, experts, investigators, representatives, predecessors-in-interests, successors-in-interest, licensees, licensors, and/or collaborators.

3.      "Nuvia" means Defendant Nuvia, Inc. and any of its officers, directors, employees, corporate parents, subsidiaries, affiliates, agents, consultants, independent

in part, you shall set forth in detail the reason(s) why you cannot truthfully admit or deny the matter in whole or in part.

3.     If you qualify an answer or deny only a part of the matter of which an admission is requested, you shall specify so much of it as is true and qualify or deny the remainder.

4.     If you object to any of the following Requests, set forth that objection and state the reasons for the objection. If you object only in part to any of these Requests, you are required to respond to the other part(s) of these Requests notwithstanding your objection.

5.     If you withhold information pursuant to a claim of privilege, please state:

a.     that information or material responsive to the Request has been withheld;

b.     the part of the Request to which the withheld material or information relates; and

c.     the privilege(s) asserted.

6.     You are under a duty to supplement your responses to the following Requests if you learn that they were incomplete or incorrect when made or, although complete and correct when made, are no longer complete and correct.  An amended or supplemental response to each Request must be made reasonably promptly after you discover the necessity for such response.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

The Nuvia ALA was a valid and enforceable agreement.

**REQUEST FOR ADMISSION NO. 2:**

Nuvia assigned the Nuvia ALA to Qualcomm.

**REQUEST FOR ADMISSION NO. 3:**

Arm did not consent to Nuvia's assignment of the Nuvia ALA to Qualcomm.

**REQUEST FOR ADMISSION NO. 4:**

5

Arm consented to Nuvia's assignment of the Nuvia ALA to Qualcomm.

**REQUEST FOR ADMISSION NO. 5:**

Arm did not consent to Nuvia's assignment of the Nuvia ALA to Qualcomm before

Nuvia assigned the Nuvia ALA to Qualcomm.

**REQUEST FOR ADMISSION NO. 6:**

Arm consented to Nuvia's assignment of the Nuvia ALA to Qualcomm before Nuvia

assigned the Nuvia ALA to Qualcomm.

**REQUEST FOR ADMISSION NO. 7:**

Arm terminated the Nuvia ALA effective March 1, 2022.

**REQUEST FOR ADMISSION NO. 8:**

Nuvia used Arm Confidential Information to develop █████████████.

**REQUEST FOR ADMISSION NO. 9:**

Qualcomm developed an Arm architecture-compatible product under the Qualcomm

ALA before Qualcomm's acquisition of Nuvia.

**REQUEST FOR ADMISSION NO. 10:**

Qualcomm did not develop an Arm architecture-compatible product under the Qualcomm

ALA before Qualcomm's acquisition of Nuvia.

**REQUEST FOR ADMISSION NO. 11:**

The █████████ design uses Arm Confidential Information.

**REQUEST FOR ADMISSION NO. 12:**

The ████████ design incorporates at least part of the █████████████.

**REQUEST FOR ADMISSION NO. 13:**

The █████████ design uses Arm Confidential Information.

Dated: September 20, 2023

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Robert M. Vrana*

OF COUNSEL:

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)

Michael A. Jacobs
Joyce Liou
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
mjacobs@mofo.com
jliou@mofo.com

Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

*Attorneys for Plaintiff Arm Ltd.*

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

30799208

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 20, 2023, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

Catherine Nyarady
Anna R. Gressel
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
agressel@paulweiss.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
kdunn@paulweiss.com
wisaacson@paulweiss.com
mzappala@paulweiss.com
ejmorgan@paulweiss.com

Andrea L. D'Ambra
Susana Medeiros
Kira Latham
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019
andrea.dambra@nortonrosefulbright.com
susana.medeiros@nortonrosefulbright.com
kira.latham@nortonrosefulbright.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com
*Attorneys for Plaintiff Arm Ltd.*

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ARM LTD., a U.K. corporation, | |
| Plaintiff, | |
| v. | C.A. No. 22-1146-MN |
| QUALCOMM INC., a Delaware corporation, QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, and NUVIA, INC., a Delaware corporation, | |
| Defendants. | |

## PLAINTIFF ARM LTD.'S RULE 26(a)(1) INITIAL DISCLOSURES

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, Plaintiff Arm Ltd. ("Arm") makes the following initial disclosures to Defendants Qualcomm Inc., Qualcomm Technologies, Inc., (collectively "Qualcomm") and NuVia, Inc. ("Nuvia") (collectively "Defendants"), in the above-captioned action, including any appeals therefrom ("Litigation"). By making these initial disclosures, Arm does not represent that it is identifying every document, item of electronically stored information, tangible thing, or witness that might be relevant to its claims and defenses in this action. Further, Arm notes that persons who are not now associated with or employed by Arm may have relevant information. Arm is not purporting in the following disclosures to make disclosures on behalf of, or based on the information available to, all such persons. Rather, Arm's initial disclosures represent a good faith effort to identify information that Arm reasonably believes to be relevant to its claims and defenses.

Arm provides these initial disclosures subject to and without waiving: (i) any applicable privilege, doctrine, immunity, or right, including without limitation the attorney-client privilege and the work product doctrine; (ii) the right to object on the grounds of competency, relevancy,

materiality, hearsay, undue burden, or any other proper ground, to the use of any such information for any purposes, in whole or in part, in this action or any other action or proceeding; and (iii) the right to object on any and all grounds at any time to any other discovery request or proceeding involving or relating to the subject matter of these initial disclosures in any proceeding in this action or in any other action.  Further, Arm notes that its disclosure obligation is limited by the Federal Rules of Civil Procedure, the Local Rules of the District of Delaware, and any governing case law.

Arm makes these initial disclosures based on Arm's current knowledge, and upon information that is reasonably available to Arm at this time and within its possession, custody or control.  Arm's investigation is ongoing, and Arm reserves the right to amend, supplement, or withdraw these disclosures.  Arm provides the disclosures contained herein, and in any subsequent amended or supplemental disclosures, subject to the above objections and qualifications.

### A.    <u>Rule 26(a)(1)(A)(i): Individuals Likely to Have Discoverable Information</u>

Based on information currently and reasonably available to Arm, Arm identifies the following individuals likely to have discoverable information that Arm may use to support its claims or defenses, unless identified solely for impeachment.  Arm does not represent that these individuals have relevant documents in their possession, custody, or control, and does not waive its right to object to the production of any document or tangible thing in the possession of any of these individuals on the basis of the attorney client privilege, the work product doctrine, relevance, or any other objection.  Discovery in this case is just beginning and Arm's investigation is ongoing.  Arm is unaware of other individuals warranting disclosure at this time, but Arm may add or remove individuals as discovery continues and once it learns more

information about Defendants' counterclaim.  By making these initial disclosures, Arm does not waive its right to object to the deposition or trial testimony of any individual below under the Federal Rules of Civil Procedure, Federal Rules of Evidence, and Delaware Local Rules.

| Name | Contact | Potential areas of knowledge (at least) |
|---|---|---|
| Andrew Howard | Arm<br><br>Contact through counsel | Arm's commercial strategy. |
| Asim Chaudhry | Arm<br><br>Contact through counsel | Development of Arm-based technology. |
| Chris Bergey | Arm<br><br>Contact through counsel | Arm's infrastructure line of business; Arm's relationship with Qualcomm and Nuvia. |
| Dawn (Hill) Montemagni | Arm<br><br>Contact through counsel | Arm's relationship with Qualcomm. |
| David Brittain | Arm<br><br>Contact through counsel | Arm's relationship with Nuvia through 2021. |
| Jannik Nelson | Arm<br><br>Contact through counsel | Arm's revenue operations. |
| Jonathan Armstrong | Arm<br><br>Contact through counsel | Arm's brand management and trademarks. |
| Karthik Shivashankar | Arm<br><br>Contact through counsel | Arm's commercial strategy and licensing. |
| Martin Weidmann | Arm<br><br>Contact through counsel | Development and purported verification of Arm-based technology. |

| Name | Contact | Potential areas of knowledge (at least) |
|---|---|---|
| Paul Williamson | Arm<br><br>Contact through counsel | Arm's relationship with Qualcomm in 2021 and 2022. |
| Peter Greenhalgh | Arm<br><br>Contact through counsel | Design, development, and operation of Arm-based technology. |
| Rene Haas | Arm<br><br>Contact through counsel | Arm's business strategy and client relationships. |
| Richard Grisenthwaite | Arm<br><br>Contact through counsel | Design, development, operation, and purported verification of Arm-based technology; Arm's relationship with Qualcomm and Nuvia. |
| Simon Segars | Arm<br><br>Contact through counsel | Arm's relationships with Qualcomm and Nuvia. |
| Tim Herbert | Arm<br><br>Contact through counsel | Licensing of Arm technology to Nuvia. |
| Vivek Agrawal | Arm<br><br>Contact through counsel | Development, operation, and purported verification of Arm-based technology. |
| Will Abbey | Arm<br><br>Contact through counsel | Arm's relationships with Qualcomm and Nuvia. |
| Cristiano Amon | Qualcomm<br><br>Known to Defendants | Qualcomm's sales, marketing, financial, and business strategy; design and development of Arm-based technology; Qualcomm's acquisition of Nuvia. |
| Gerard Williams | Qualcomm/Nuvia<br><br>Known to Defendants | Design, development, and operation of Arm-based technology; Qualcomm's acquisition of Nuvia; Nuvia's certification of compliance with the termination provisions of its Arm licenses. |
| Jignesh Trivedi | Qualcomm<br><br>Known to Defendants | Design, development, operation, and purported verification of Arm-based technology. |

| Name | Contact | Potential areas of knowledge (at least) |
|---|---|---|
| John Bruno | Qualcomm<br><br>Known to Defendants | Design, development, and operation of Arm-based technology. |
| Manu Gulati | Qualcomm<br><br>Known to Defendants | Design, development, and operation of Arm-based technology. |
| Nitin Sharma | Qualcomm<br><br>Known to Defendants | Design, development, operation, and purported verification of Arm-based technology. |
| RK Chunduru | Qualcomm<br><br>Known to Defendants | Arm's relationship with Qualcomm; Qualcomm's discussions with Arm regarding the acquisition of Nuvia. |
| Ziad Asghar | Qualcomm<br><br>Known to Defendants | Arm's relationship with Qualcomm; Qualcomm's discussions with Arm regarding the acquisition of Nuvia. |

Arm does not consent to or authorize Defendants' communication with current or former employees of Arm.  All communications with such individuals should be through Arm's counsel.

In addition to the individuals identified above, the following individuals may have discoverable information: (i) persons deposed during this litigation and persons identified during depositions or discovery responses; (ii) persons identified in Defendants' initial disclosures or any supplements or amendments thereto; and (iii) other individuals with relevant knowledge currently or previously at Qualcomm or Nuvia.

Arm will identify any testifying expert witnesses as required by Rule 26(a)(2) and any applicable Local Rule or Court Order.

Because discovery and Arm's investigation and analysis of this matter is ongoing, Arm reserves the right to supplement or amend this information and to designate or call further witnesses at trial.  Arm also reserves the right to seek discovery from other persons when it subsequently learns they are likely to have discoverable and relevant information.

**B.     Rule 26(a)(1)(A)(ii): Documents, Electronically Stored Information, and Tangible Things**

The following are categories of documents (originals or copies), besides expert materials for disclosure under Rule 26(a)(2), that Arm may have in its possession, custody, or control, that it may use to support its claims or defenses, unless solely for impeachment.  These disclosures do not constitute admissions to the relevance or admissibility of the identified materials or waive any attorney-client privilege, work product privilege, work product protection, or other applicable protection or immunity.  By making these disclosures, Arm reserves the right to object to the admissibility, relevance, and the like of such documents and evidence.  Arm continues to investigate other documents, electronically stored information, and tangible things that it may use to support its claims or defenses and may supplement this disclosure.

| *Description* |
| --- |
| Licenses and agreements between Arm and Defendants |
| Documents relating to the Arm technology licensed to Defendants |
| Documents and communications relating to Defendants' development of Arm-based technology |
| Communications between Arm and Defendants, including, but not limited to, emails and letters regarding Qualcomm's acquisition of Nuvia |
| Documents relating to Qualcomm's acquisition of Nuvia and other Arm licensees |
| Documents relating to Arm's trademarks, including, but not limited to, U.S. Registration Nos. 5,692,669 and 5,692,670 |
| Documents relating to the harm to Arm's business from Defendants' actions |
| Any other materials on which Arm's witnesses or experts may rely |

Arm may also rely on documents produced by Defendants or by non-parties in support of its claims or defenses.

Arm's investigation for discoverable information that it may use to support its claims and defenses in this action is ongoing.  Arm reserves the right to supplement these disclosures or

provide an appropriate other form of notice of such information. Arm reserves its right to object to the production of documents within the categories described herein on any basis permitted by the Federal Rules of Civil Procedure.

### C.     Rule 26(a)(1)(A)(iii): Damages

Arm is seeking specific performance pursuant to its contract in light of the harm to Arm and its ecosystem that cannot be compensated by money damages. Arm seeks damages for Defendants' ongoing delay in performing their contractual obligations, which cannot be calculated until specific performance is rendered. Arm also seeks damages related to its claims regarding Defendants' trademark infringement and false designation of origin, along with attorney's fees, costs, and any punitive, exemplary, and enhanced damages as authorized by law. As discovery is ongoing, the amount of damages is not ascertainable at this time. Arm will offer expert testimony regarding damages as required by Rule 26(a)(2), the Court's Scheduling Order, and any applicable Local Rule or Court order. Because Arm's fact investigation remains ongoing, Arm expressly reserves the right to supplement these disclosures as discovery continues and it receives more information from Defendants.

### D.     Rule 26(a)(1)(A)(iv): Insurance Agreements

Arm is not aware of any insurance policy responsive to Rule 26(a)(1)(A)(iv). Arm's fact investigation remains ongoing and Arm expressly reserves the right to supplement this disclosure as discovery continues and it receives more information from Defendants.

* * *

Arm makes these initial disclosures based on the information that is now reasonably available to it. Arm expressly reserves the right to amend, supplement, withdraw or modify these initial disclosures as appropriate based upon its future evaluation of facts and evidence in

its possession, and upon further investigation and discovery in this action.

Dated: January 13, 2022                    YOUNG CONAWAY STARGATT & TAYLOR, LLP

OF COUNSEL:

Michael A. Jacobs
Joyce Liou                                  _/s/ Robert M. Vrana_
MORRISON & FOERSTER LLP                     Anne Shea Gaza (No. 4093)
425 Market Street                           Robert M. Vrana (No. 5666)
San Francisco, CA  94105                    Samantha G. Wilson (No. 5816)
(415) 268-7000                              Rodney Square
mjacobs@mofo.com                            1000 North King Street
jliou@mofo.com                              Wilmington, DE  19801
                                            (302) 571-6600
                                            agaza@ycst.com
Erik J. Olson                               rvrana@ycst.com
MORRISON & FOERSTER LLP                     swilson@ycst.com
755 Page Mill Road
Palo Alto, CA  94304                        _Attorneys for Plaintiff Arm Ltd._
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on January 13, 2023, a copy of the foregoing document was served on the persons listed below in the manner indicated:

**<u>BY EMAIL</u>**

Jack B. Blumenfeld
Jennifer Ying
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
kdunn@paulweiss.com
wisaacson@paulweiss.com
mzappala@paulweiss.com
ejmorgan@paulweiss.com


YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Plaintiff Arm Ltd.*

# EXHIBIT E
# (redacted in full)

# EXHIBIT F
# (redacted in full)