IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARM LTD., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 22-1146 (MN) |
| | ) |
| QUALCOMM INC., QUALCOMM | ) |
| TECHNOLOGIES, INC. and NUVIA, INC., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM ORDER

At Wilmington, this 10th day of December 2024;

Before the Court are the parties' motions to exclude certain expert testimony under Rule 702 of the Federal Rules of Evidence and the standard set forth in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). Plaintiff ARM, Ltd. ("Plaintiff" or "ARM") moves to exclude portions of the testimony of Defendants' expert Dr. Murali Annavaram. (D.I. 378). Defendants Qualcomm Inc., Qualcomm Technologies, Inc., and Nuvia, Inc. ("Defendants"), move to exclude portions of the testimony of ARM's experts Dr. Shuo-Wei (Mike) Chen and Dr. Robert Colwell. (D.I. 380). For the reasons set forth below, the Court DENIES the motions.[1]

---

[1] Each party submitted additional *Daubert* challenges that have since been mooted. ARM sought to exclude expert testimony from Dr. Patrick Kennedy, Dr. Joel Steckel, and Professor John Coates, and Defendants sought to exclude testimony from Todd Schoettelkotte, Dr. Ravi Dhar, and Professor Guhan Subramanian. (D.I. 375, 376, 377, 380). At the October 30, 2024 hearing, ARM informed the Court that it is dropping its trademark claims, and, therefore, testimony from Dr. Dhar and Dr. Steckel will not be presented at trial. (D.I. 513 at 33:15-23; *see also* D.I. 545 ¶ 1). The Court therefore denies the motions to exclude those experts as moot. Similarly, the parties agreed at the October 30 hearing that they will not call Professor Subramanian or Professor Coates at trial. (D.I. 513 at 32:15-33:5). Those challenges are likewise denied as moot. (*Id.*). Finally, at the November 20, 2024 pretrial conference, the parties informed the Court that they will not call experts Schoettelkotte and Kennedy at trial. (D.I. 530 at 6:8-18). Those motions are also denied as moot, with leave to renew if needed. (*Id.* at 6:19-24).

I.  **LEGAL STANDARD**

Rule 702 of the Federal Rules of Evidence requires the Court to take up the "gatekeeping role . . . of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597.  Any expert evidence sought to be admitted must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).  There are "a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider ex rel. Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (citation omitted).  In other words, expert evidence is admissible only if "the testimony is based on sufficient facts or data," "is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d).  The proponent of expert evidence bears the burden of demonstrating its admissibility by a preponderance of evidence.  *EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 92 (D. Del. 2016); *Daubert*, 509 U.S. at 592 n.10.

To be qualified under *Daubert*, an expert must "possess specialized expertise." *Schneider*, 320 F.3d at 404.  This is a liberal requirement – "a broad range of knowledge, skills, and training qualify an expert." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994) (citation omitted).  For the expert's evidence to "fit" the case, it "must be relevant for the purposes of the case and must assist the trier of fact." *Schneider*, 320 F.3d at 404.  And reliability "is based on 'good grounds,' i.e., if it is based on the methods and procedures of science." *Paoli*, 35 F.3d at 744.  "Good grounds" cannot be "subjective belief or speculation," but also need not be "the best methodology or unassailable research." *In re TMI Litig.*, 193 F.3d 613, 670 (3d Cir. 1999).  "Rather, the test is whether the particular opinion is based on valid reasoning and reliable methodology." *Id.* at 665 (citation omitted).  "The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.  Parties

offering expert evidence "do not have to demonstrate . . . that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable." *TMI*, 193 F.3d at 665 (quoting *Paoli*, 35 F.3d at 744).

"A judge frequently should find an expert's methodology helpful even when the judge thinks that the expert's technique has flaws sufficient to render the conclusions inaccurate." *Paoli*, 35 F.3d at 744-45. "Hearing the expert's testimony and assessing its flaws [can be] an important part of assessing what conclusion was correct." *Id.* at 745.

## II.     DISCUSSION

### A.     ARM's Motion

#### 1.     Dr. Murali Annavaram

ARM moves to exclude three categories of opinions offered by Dr. Annavaram in his opening and reply reports that, according to ARM, constitute legal opinions. (D.I. 379 at 6). ARM specifically challenges Dr. Annavaram's opinions on: (1) what constitutes an "Architecture Compliant Core under the Nuvia ALA"; (2) whether certain of Defendants' actions were undertaken "under" the contracts at issue; and (3) how Defendants "swapped out" ARM technology downloaded under the Nuvia ALA with ARM technology downloaded under the Qualcomm ALA. (*Id.*).

The resolution of each of these challenges is the same. Dr. Annavaram's opinions are not legal interpretations, they merely provide analysis of the technologies at issue and apply Dr. Annavaram's technical expertise to the facts. Contrary to ARM's contentions, Dr. Annavaram "did not offer opinions as to the scope and meaning of the Agreement and its terms." *Roche Diagnostics Operations, Inc. v. Abbott Diabetes Care*, 756 F. Supp. 2d 598, 606 (D. Del. 2010), *aff'd sub nom. Roche Diagnostics Operations, Inc. v. Lifescan Inc.*, 452 F. App'x 989 (Fed. Cir. 2012). Instead, "he applied the definitions from the Agreement." *Id.* As Defendants rightly point

3

out, the three challenged categories of opinions here all concern fact questions central to the case. (D.I. 426 at 3).

First, Dr. Annavaram's opinion that "No Core was an Architecture Compliant Core Under the Nuvia ALA" involves the application of his technical expertise to the contract language as it was described to him by counsel. (*See, e.g.*, D.I. 388, Ex. 7 ¶ 219 (explaining that "I have been informed" of certain "requirement[s]" under the ALA)). ARM's own expert, Dr. Colwell, does the same thing. (*See* D.I. 383, Ex. 1 ¶¶ 84, 86, 95, 131).

Similarly, Dr. Annavaram's use of the terms "under the Nuvia ALA" or "under the Qualcomm ALA" are not legal conclusions. His reports use these phrases in the chronological sense, referring to the time periods during which certain actions took place. And, as with his other challenged opinions, Dr. Annavaram bases these on his "understanding" from talking to counsel, other experts, or company personnel. (*See, e.g.*, D.I. 388, Ex. 7 ¶ 91). As before, many of these challenged opinions come from Dr. Annavaram's rebuttal report, which respond to Dr. Colwell, who opines on the same issues ARM seeks to exclude. (*See id.* ¶¶ 233-52 (responding to D.I. 383, Ex. 1 ¶¶ 84, 95, 110-13, 153)). Accordingly, Dr. Annavaram's opinions are not impermissible legal conclusions.

Finally, ARM seeks to exclude Dr. Annavaram's reply report opinions on the "decoder file," (D.I. 388 Ex. 12 ¶¶ 19-35), as untimely on the basis that they were not disclosed in his opening report. (D.I. 379 at 11). Defendants respond that the challenged opinions are offered in direct response to Dr. Colwell's rebuttal report, (D.I. 427, Ex. 2 ¶¶ 26-34). (D.I. 426 at 6-7). ARM does not dispute this in its reply, instead arguing that there is no legal basis for it. (D.I. 457 at 2-3). However, a "reply expert report may cite to new evidence and data, so long as [it] is 'offered to directly contradict or rebut the opposing party's expert.'" *Cirba Inc. v. VMware, Inc.*, No. 19-

742 (GBW), 2023 WL 6799267, at *5 (D. Del. Mar. 30, 2023) (quoting *Pers. Audio, LLC v. Google LLC*, No. 17-1751 (CFC), 2021 WL 765763, at *4 (D. Del. Feb. 19, 2021)). Thus, because Dr. Annavaram's opinions on the decoder file are directly responsive to Dr. Colwell's rebuttal report, the Court finds that they are timely, and there is no need to evaluate the *Pennypack* factors.

ARM's motion to exclude Dr. Annavaram's opinions is, therefore, denied.

B. **Defendants' Motions**

1. **Dr. Shuo-Wei (Mike) Chen**

Defendants seek to exclude testimony from Dr. Chen, who offers opinions on Defendants' RTL code for the purpose of ascertaining whether that technology originated from ARM's code, and, therefore, constituted a breach of the Nuvia ALA. (D.I. 381 at 14). First, Defendants challenge Dr. Chen's quantitative opinions about the similarity of the pre- and post-acquisition technologies as irrelevant and unreliable. (*Id.*). As already discussed, however, squarely at issue here are the fact questions pertaining to which products and technologies were developed by which Defendants under which contract during which time period. Accordingly, Dr. Chen's side-by-side analysis of the products is relevant and would be helpful to the trier of fact. Fed. R. Evid. 702(a). Defendants' "fit" argument fails.

Additionally, Defendants question Dr. Chen's methodology, contending that he arbitrarily reviewed certain parts of the code (and others not at all), and otherwise lacked knowledge of how it compares across codebases. (D.I. 381 at 16). Their challenges, however, go to the strength of his conclusions rather than the scientific quality of his approach. *See Daubert*, 509 U.S. at 595. Dr. Chen lays out a clear mathematical process by which he conducted his analysis. Defendants may quibble with his decision to consider certain points of fact evidence and not others, but that is not sufficient to render his analysis unreliable. *See TMI*, 193 F.3d at 665.

Lastly, Defendants seek to strike what they call Dr. Chen's "qualitative opinions," on the basis that they rely upon a flawed methodology. (D.I. 381 at 18). But what Defendants really challenge are the underlying documents Chen relies on. Specifically, Defendants say Dr. Chen relies on outdated versions of the ARM Arm and Phoenix Reference Manual. *Id.* Once again, that is a question of the strength of Dr. Chen's conclusions, not his methodology, and, therefore, is properly the subject of cross-examination, not a Daubert exclusion. *See AVM Techs., LLC v. Intel Corp.*, No. 15-33 (RGA), 2017 WL 1536453, at *2 (D. Del. Apr. 27, 2017). Accordingly, the Court will deny Defendants' motions with respect to Dr. Chen.

### 2. Dr. Robert Colwell

Defendants also move to exclude certain opinions from Dr. Robert Colwell, who, like Dr. Chen, opines on whether Defendants' products incorporate ARM's technology. Defendants maintain that his opinions: (1) are exclusively based on Dr. Chen's analysis, which is unreliable; (2) misapply the terms of the contracts at issue; and (3) exceed the scope of the testimony to which they respond, to the extent they are offered in rebuttal. (D.I. 381 at 19-20).

In the preceding section, the Court found that Dr. Chen's opinions are reliable. Accordingly, Defendants' challenge to Dr. Colwell's opinions fails on that basis. Defendants' next argument, that Colwell misapplies the terms of the Nuvia ALA, essentially mirrors ARM's unsuccessful challenge to Dr. Annavaram's opinions on the same basis. As with those earlier challenges, whether the technology at issue here qualifies under each of the relevant contract terms is a fact issue for which each expert has been called to provide technical analysis. Defendants' contention that Dr. Colwell's technical opinions are improper is one of the fact questions that must ultimately go to the trier of fact. In any event, Dr. Colwell explains that he gleans his understanding of the contract definitions from the agreements themselves, for example, the Annex

to the Nuvia ALA. (D.I. 382, Ex. 25 ¶¶ 75-9, 117-22). Thus, Dr. Colwell's opinions are not "made up," and the Court declines to strike them. (D.I. 381 at 20).

Finally, Defendants seek to exclude Dr. Colwell's Counterclaim Rebuttal Report on the basis that it exceeds the scope of the opinions from Dr. Annavaram to which Dr. Colwell responds. (D.I. 381 at 19-20). The Court finds that Dr. Colwell's opinions are responsive to Dr. Annavaram's conclusions, however, (*see, e.g.*, D.I. 386, Ex. 29 ¶ 7), and will deny the motion to exclude them. *See Cirba*, 2023 WL 6799267, at *5.

### III. CONCLUSION

THEREFORE, for the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff ARM's Motion to Exclude Certain Expert Opinions and Testimony of John Coates (D.I. 375) is DENIED AS MOOT.

2. Plaintiff ARM's Motion to Exclude Certain Expert Opinions and Testimony of Joel Steckel (D.I. 376) is DENIED AS MOOT.

3. Plaintiff ARM's Motion to Exclude Certain Expert Opinions and Testimony of Patrick Kennedy (D.I. 377) is DENIED AS MOOT.

4. Plaintiff ARM's Motion to Exclude and Strike Certain Expert Opinions and Testimony of Murali Annavaram (D.I. 378) is DENIED.

5. Defendants' Motion to Exclude ARM's Expert Opinions (D.I. 380) is DENIED as to Dr. Shuo-Wei (Mike) Chen and Dr. Robert Caldwell and DENIED AS MOOT as to W. Todd Schoettelkotte, Guhan Subramanian, and Ravi Dhar.

*Maryellen Noreika*
The Honorable Maryellen Noreika
United States District Judge