## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARM LTD., | |
| Plaintiff, | |
| v. | C.A. No. 22-1146-MN |
| QUALCOMM INC., QUALCOMM TECHNOLOGIES, INC., and NUVIA, INC., | |
| Defendants. | |

## EXHIBIT B TO PLAINTIFF'S MOTION TO SEAL AND REDACT

Dated: January 3, 2025

OF COUNSEL:

Daralyn J. Durie
Joyce Liou
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
jliou@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Kyle W.K. Mooney
Kyle D. Friedland
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
(212) 468-8000
kmooney@mofo.com
kfriedland@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-1500
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5200
nfung@mofo.com

Daniel Muino
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, D.C.  20037
(202) 887-1500
dmuino@mofo.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Plaintiff Arm Ltd.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 3, 2025, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

Isaac B. Zaur
Nora Niedzielski-Eichner
CLARICK GUERON REISBAUM LLP
220 Fifth Avenue, 14th Floor
New York, NY 10001
izaur@cgr-law.com
nniedzie@cgr-law.com

Catherine Nyarady
Anna R. Gressel
Jacob A. Braly
Alexander M. Butwin
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
agressel@paulweiss.com
jbraly@paulweiss.com
abutwin@paulweiss.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
Anna P. Lipin
William T. Marks
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
kdunn@paulweiss.com
wisaacson@paulweiss.com
mzappala@paulweiss.com
ejmorgan@paulweiss.com
alipin@paulweiss.com
wmarks@paulweiss.com

Andrea L. D'Ambra
Susana Medeiros
Kira Latham
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019
andrea.dambra@nortonrosefulbright.com
susana.medeiros@nortonrosefulbright.com
kira.latham@nortonrosefulbright.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Plaintiff Arm Ltd.*

# Exhibit B

13:41:50

```
  1                    IN THE UNITED STATES DISTRICT COURT

  2                     FOR THE DISTRICT OF DELAWARE

  3

  4
        ARM LTD.,                        )
  5     a U.K. corporation,              )
                                         )
  6              Plaintiff,              )
                                         ) C.A. No. 22-1146(MN)
  7     v.                               )
                                         )
  8     QUALCOMM, INC.,                  )
        a Delaware corporation,          )
  9     et al.,                          )
                                         )
 10              Defendants.             )

 11

 12
                     Wednesday, November 20, 2024
 13                  2:00 p.m.
                     Pretrial Conference
 14

 15                  844 King Street
                     Wilmington, Delaware
 16

 17

 18     BEFORE:   THE HONORABLE MARYELLEN NOREIKA
                  United States District Court Judge
 19

 20

 21     APPEARANCES:

 22
                     YOUNG CONAWAY STARGATT & TAYLOR
 23                  BY:  ANNE SHEA GAZA, ESQ.
                     BY:  ROBERT M. VRANA, ESQ.
 24                  BY:  DANIEL MACKRIDES, ESQ.

 25                  -and-
```

```
 1    APPEARANCES (Cont'd):

 2
                    MORRISON FOERSTER, LLP
 3                  BY:  DARALYN DURIE, ESQ.
                    BY:  ERIK OLSON, ESQ.
 4                  BY:  DANIEL MUINO, ESQ.
                    BY:  SHAELYN DAWSON, ESQ.
 5                  BY:  NICHOLAS FUNG, ESQ.
                    BY:  HENRY HUTTINGER, ESQ.
 6                  BY:  LAURA GILBERT REMUS, ESQ.

 7
                            Counsel for the Plaintiff
 8

 9


10                  MORRIS NICHOLS ARSHT & TUNNELL LLP
                    BY:  JACK BLUMENFELD, ESQ.
11                  BY:  JENNIFER YING, ESQ.

12                  -and-

13                  PAUL WEISS
                    BY:  KAREN L. DUNN, ESQ.
14                  BY:  CATHERINE NYARDY, ESQ.
                    BY:  JACOB BRALY, ESQ.
15                  BY:  RUBY GARRETT, ESQ.
                    BY:  ERIN MORGAN, ESQ.
16                  BY:  ANNA LIPIN, ESQ.
                    BY:  FLINT PATTERSON, ESQ.
17
                            Counsel for the Defendants
18

19

20

                            - - - - - - - - - - - -
21

22

23

24                  COURTROOM DEPUTY:  All rise.  The United States

25    District Court for the District of Delaware is now in
```

14:04:02   1    session.    The Honorable Maryellen Noreika presiding.

14:04:02   2              THE COURT:  All right.  Good afternoon,

14:04:04   3    everyone.   Please be seated.

14:04:06   4              All right.  Ms. Gaza.

14:04:09   5              MS. GAZA:  Good afternoon, Your Honor.  Anne

14:04:11   6    Gaza from Young, Conaway on behalf of plaintiff, ARM.  I'm

14:04:15   7    joined today by Daralyn Durie, Erik Olson, Shaelyn Dawson,

14:04:22   8    Nicholas Fung, Daniel Muino, Henry Huttinger, Laura Gilbert

14:04:28   9    Remus all from Morrison Foerster as well as my colleagues,

14:04:32  10    Rehoboth Vrana and Daniel Mackrides.

14:04:35  11              THE COURT:  All right.  Good afternoon everyone.

14:04:37  12              MR. BLUMENFELD:  Good afternoon, Your Honor.

14:04:38  13              THE COURT:  Good afternoon.

14:04:39  14              MR. BLUMENFELD:  Jack Blumenfeld from Morris

14:04:44  15    Nichols for Qualcomm and NuVia.  With me at counsel table

14:04:47  16    are Karen Dunn, Catherine Nyrady and Jacob Braly from Paul

14:04:53  17    Weiss.  Behind them, Jennifer Ying from Morris Nichols, Erin

14:04:57  18    Morgan from Paul Weiss, and behind them, Flint Patterson,

14:05:02  19    Ruby Garrett and, Chris Longman from Qualcomm.

14:05:06  20              THE COURT:  All right.  Welcome to all of you

14:05:08  21    and good afternoon.

14:05:09  22              Okay.  All right.  Let me just get my document

14:05:19  23    ready here.

14:05:26  24              So I appreciate the letter that we received last

14:05:31  25    night from the defendants on simplifying the case.  I think

14:05:39  1    it's dropping the counterclaims.  How are we going to

14:05:43  2    resolve those?

14:05:46  3              MS. DUNN:  Your Honor, they're out of the case,

14:05:51  4    so we are dropping them as claims.

14:05:54  5              THE COURT:  So I always run into this problem

14:05:56  6    and then I get like after the case are they dismissed, are

14:06:00  7    they dismissed with prejudice, did you fail to put in

14:06:03  8    evidence on them, so I'm granting judgment, what are we

14:06:07  9    doing with them?  You can't just say we're dropping them.

14:06:10 10    They're in the case.  How do I get them out of it?

14:06:13 11              MS. DUNN:  We can file a voluntary withdraw of

14:06:16 12    the claims if that is what Your Honor would like.

14:06:22 13              THE COURT:  I want to know what you guys have

14:06:24 14    agreed to do.  So have you talked with the other side?

14:06:28 15              MS. DUNN:  We talked to the other side and

14:06:30 16    agreed that we would drop the claims so they're aware.  I

14:06:33 17    don't think we've talked mechanically how we would do that.

14:06:36 18    We're happy to do that and make a submission to the Court.

14:06:39 19              THE COURT:  That would be very helpful.

14:06:40 20              MS. DUNN:  Okay.

14:06:41 21              THE COURT:  And I don't mean to suggest that I

14:06:43 22    don't appreciate that you're dropping them, it's just that I

14:06:47 23    have gotten myself into trouble before when I don't figure

14:06:50 24    out what that means.

14:06:51 25              MS. DUNN:  Understood, Your Honor.  Plaintiff's

14:06:53  1    dropped their trademark claims last time on the record.

14:06:56  2          THE COURT:  We should probably do something

14:06:58  3    similar, so maybe you all can figure out how that works.  It

14:07:01  4    was just I should have thought of it before when they did

14:07:05  5    the trademark claims and I just didn't, but this morning for

14:07:08  6    some reason reading that letter I had a vision of the

14:07:11  7    posttrial briefing.

14:07:12  8          MS. DUNN:  Understood.

14:07:13  9          THE COURT:  And having to deal with it.

14:07:14  10          MS. DUNN:  We'll work it out.  Thank you, Your

14:07:17  11    Honor.

14:07:17  12          THE COURT:  Thank you.  Okay.

14:07:20  13          The Daubert motions, I have a draft order and

14:07:32  14    for whatever motions are remaining, other than the ones

14:07:38  15    defendants brought about Mr. Schoettelkotte, I am going to

14:07:42  16    deny them.  And I'll get you that opinion shortly.

14:07:49  17          I'm confused with respect to Mr. Schoettelkotte,

14:07:53  18    and I read his deposition, and I don't even know how the

14:07:58  19    person who took that deposition had the patience to deal

14:08:01  20    with it, because I was trying to understand what he was

14:08:05  21    testifying on and I don't -- I don't understand it.  I mean,

14:08:10  22    he's an accountant, so I would certainly understand if he

14:08:13  23    was going to testify about damages.  I don't think he should

14:08:16  24    be testifying to the jury that there are no money damages

14:08:20  25    because that's an issue for me.  So then it seemed like he's

14:08:26  1    left to say, hey, there is reputational damages or there is

14:08:31  2    potential damages for future contract, but for that, I'm not

14:08:38  3    sure why he is an expert to do that and he seems like he's

14:08:42  4    just relying on fact people, factual testimony from people

14:08:45  5    who could testify and the jury could decide.  So I just

14:08:50  6    don't understand what he's adding as an expert that's in his

14:08:58  7    expertise.

14:08:59  8              MR. OLSON:  So let me start with the opportunity

14:09:02  9    potentially as we did last time for simplification.  We have

14:09:07 10    told -- there was a discussion on this yesterday.  We don't

14:09:09 11    intend to call Mr. Schoettelkotte before the jury for any

14:09:12 12    purpose and they don't intend to call -- therefore don't

14:09:16 13    intend to call Mr. Kennedy.  Mr. Kennedy had been on two

14:09:19 14    issues, one, their counterclaims, they've now dropped those,

14:09:23 15    and then he was responsive to Mr. Schoettelkotte.

14:09:27 16    Mr. Schoettelkotte's testimony if at all will be relevant to

14:09:31 17    specific performance and you can decide what weight to give

14:09:35 18    it in that context.

14:09:37 19              THE COURT:  Okay.  So how about this.  I am

14:09:40 20    going to deny that motion as moot given that you're not

14:09:46 21    going to call him before the jury.  To the extent that you

14:09:49 22    do wind up calling him in front of me, you guys can re-raise

14:09:55 23    any concerns that you have and I'll deal with them.  Okay?

14:09:58 24              MR. OLSON:  Understood, Your Honor.

14:09:59 25              THE COURT:  All right.  Thank you for that.

14:10:00 1          Okay.  Are there any other issues, and I know

14:10:04 2   you guys offered to tell us in advance what you had come to

14:10:08 3   an agreement on and I thought it was just as easy at this

14:10:11 4   point for you to tell me here.  So I understand that

14:10:15 5   Mr. Schoettelkotte and Mr. Kennedy will not be testifying in

14:10:18 6   front of the jury.  Anything else that you all worked out?

14:10:25 7          MS. YING:  Your Honor, Jennifer Ying from Morris

14:10:27 8   Nichols on behalf of the defendants.  There are two

14:10:29 9   paragraphs in the PTO cover that we have resolved, and then

14:10:33 10  there are two MILs that the parties have reached agreement

14:10:37 11  on that we'll put on the record.  With regards to the PTO

14:10:40 12  cover, paragraph 49, the parties have agreed to adopt

14:10:45 13  defendants' proposal on demonstratives that need to be

14:10:48 14  disclosed.  For paragraph 72 in the PTO cover, the parties

14:10:55 15  have also agreed to adopt defendants' proposal regarding

14:10:59 16  disclosing transition statements in connection with

14:11:02 17  deposition testimony.

14:11:05 18          THE COURT:  Okay.

14:11:06 19          MS. YING:  I will turn the floor over to

14:11:08 20  Mr. Olson with regards to plaintiff, ARM MIL number 1 that

14:11:12 21  we've reached an agreement on and then I will put on the

14:11:15 22  record our agreement for defendants' MIL number 3 that we've

14:11:19 23  also reached agreement on.

14:11:20 24          THE COURT:  Okay.  Give me one second.  Remove

14:11:26 25  those other paragraphs.  Okay.  Which motion in limine is

14:11:30 1    this?

14:11:31 2        MR. OLSON:  This is motion in limine number 1

14:11:33 3    having to do with evidence and argument regarding specific

14:11:36 4    performance, Your Honor.  What the parties have agreed is

14:11:40 5    that -- I want to get the defendant -- they use -- I'm

14:11:48 6    reading from an e-mail.  The defendants agree not to make

14:11:52 7    arguments or present evidence regarding ARM's requested

14:11:55 8    remedies, specific performance, or the scope, nature or

14:11:59 9    impact of that requested remedy.  Plaintiffs understand that

14:12:04 10   defendants want to be able to present evidence regarding

14:12:07 11   Section 15.1 of the NuVia ALA and correspondence between the

14:12:13 12   parties and Qualcomm regarding ARM's request that Qualcomm

14:12:17 13   comply with that provision as well as examine ARM's

14:12:21 14   witnesses regarding the requests and the parties'

14:12:23 15   communications.  And as a reminder, Section 15.1 includes

14:12:27 16   the words licensee, NuVia.  We will immediately discontinue

14:12:34 17   any use and distribution of a series things and that

14:12:38 18   includes licensee shall either destroy or return to ARM a

14:12:42 19   series of things.

14:12:43 20       Further, defendants in their response and

14:12:47 21   agreement said that defendants intend to argue at trial that

14:12:49 22   the remedy provided in 15.1 includes the destruction of

14:12:54 23   material and that ARM sought destruction.  With those

14:12:58 24   statements, there is an agreement that there will not be,

14:13:01 25   again, evidence and argument regarding specific performance.

14:13:05  1                THE COURT:  All right.  And defendants agree?

14:13:10  2                MS. DUNN:  We do, Your Honor.

14:13:11  3                THE COURT:  Thank you.

14:13:13  4                MS. YING:  Your Honor, with respect to

14:13:17  5      defendants' motion in limine number 3, and that's regarding

14:13:19  6      the Apple v. Williams case and the use of documents from

14:13:23  7      that litigation, the parties have agreed that ARM may

14:13:26  8      question Mr. Williams about the substance of those documents

14:13:30  9      subject to the following:  ARM will not reference the NuVia

14:13:34 10      or Williams Bates stamps on those documents and will not

14:13:38 11      reference the Apple v. Williams litigation or that these

14:13:43 12      documents came from that litigation.  Defendants have

14:13:45 13      represented that the documents were collected prior to the

14:13:50 14      termination of the NuVia ALA and on that basis, ARM will not

14:13:54 15      examine Mr. Williams regarding whether he personally

14:13:57 16      possessed the documents produced in the Apple v. Williams

14:14:01 17      litigation following the termination of the NuVia ALA.

14:14:06 18                ARM will not argue that the possession of these

14:14:09 19      documents post termination of the NuVia ALA constitutes a

14:14:14 20      violation or breach of Section 15.1 of the NuVia ALA.  ARM

14:14:19 21      reserves the right to refer to the Bates stamps if

14:14:23 22      Mr. Williams denies that he personally possessed these

14:14:26 23      documents bearing the Williams stamps or that NuVia did not

14:14:30 24      possess the documents bearing the NuVia stamp.  And

14:14:33 25      defendants do not waive any argument that the Apple v.

14:14:36  1    William documents constitute ARM confidential information or

14:14:40  2    are subject to the NuVia ALA termination provision.

14:14:45  3              THE COURT:  All right.  Thank you.  And you all

14:14:47  4    agree to that, plaintiffs?

14:14:49  5              MS. DURIE:  Yes, Your Honor.

14:14:49  6              THE COURT:  Okay.  Thank you for coming to those

14:14:53  7    agreements.

14:14:53  8              All right.  Then we have ARM's motion in limine

14:14:59  9    number 2 which is excluding evidence that either party

14:15:03 10    breached the Qualcomm ALA including the October 22nd letter.

14:15:11 11    And this one -- all right.  Let me hear from ARM.

14:15:31 12              MR. OLSON:  Thank you, Your Honor.

14:15:39 13              First there is agreement within the papers that

14:15:45 14    defendants will not refer to the second lawsuit or to the

14:15:48 15    allegations of breach regarding Section ███

14:15:53 16              THE COURT:  Or ███

14:15:54 17              MR. OLSON:  Or ███ correct.  So those issues,

14:15:59 18    that part of the motion in limine is resolved.

14:16:02 19              It appears that the center of the issue is the

14:16:08 20    October 22nd letter.

14:16:09 21              THE COURT:  Just so I'm clear, it was -- I

14:16:14 22    didn't understand it to be referring to the lawsuit, I

14:16:17 23    understood it to be mentioning that there was another

14:16:20 24    breach.  So by you saying you're not going to refer to the

14:16:24 25    lawsuit, you mean they're not going to assert that there was

14:16:27  1    a breach?

14:16:28  2            MR. OLSON:  That they're not going to assert or

14:16:30  3    make claims, introduce evidence regarding a separate breach

14:16:34  4    of the ALA.  And I understand them to not -- to saying that

14:16:39  5    they're not going to refer to the lawsuit, I may have that

14:16:42  6    wrong.

14:16:42  7            THE COURT:  I wanted to make sure it was both.

14:16:45  8            MS. DUNN:  Yes, Your Honor, it was both, we

14:16:47  9    don't believe those breaches --

14:16:48 10            THE COURT:  You're not going to be talking about

14:16:50 11    those?

14:16:51 12            MS. DUNN:  Yes, we're not going to be talking

14:16:53 13    about it.

14:16:53 14            THE COURT:  All right.  Okay.  And I think I got

14:16:56 15    from the papers that you said with respect to that, the only

14:17:00 16    reason you would do that is if they opened the door to

14:17:03 17    something, which makes sense.

14:17:04 18            MS. DUNN:  Yes, Your Honor.

14:17:05 19            THE COURT:  Okay.  Then we have the October 22nd

14:17:07 20    letter which defendants says evidences ARM's scheme to

14:17:12 21    prevent Qualcomm from commercializing its custom CPU.

14:17:17 22            MR. OLSON:  Understood, Your Honor.  And we

14:17:18 23    don't believe that the letter has any probative evidence

14:17:21 24    towards the question of the license defense which is the

14:17:25 25    only issue under which it would have a meaning or importance

14:17:29  1    in connection with this trial.

14:17:30  2             And the license defense entirely depends on what

14:17:35  3    is the nature and scope of the Qualcomm ALA and license.  It

14:17:40  4    does not then depend on what notices of material breach were

14:17:45  5    given, whether those will result in cure, what discussions

14:17:48  6    are happening between the parties over cure and what will

14:17:52  7    happen if it is not cured.

14:17:54  8             Moreover, California and law generally says that

14:18:00  9    the motives for enforcing a contract are not relevant to the

14:18:06 10    determination of whether or not a breach has occurred within

14:18:10 11    the nature and scope of the existing contract.  You

14:18:14 12    determine the nature and scope of the contract based on the

14:18:18 13    language of the agreement and the scope of its license.  For

14:18:22 14    both of these reasons, the evidence is not relevant.

14:18:27 15             And the Century 21 case speaks to that issue.

14:18:31 16    So also the Century 21 case also cites a Seventh Circuit

14:18:36 17    opinion called *Tuf Racing Products v. American Suzuki* which

14:18:42 18    is 223 F.3d 585 from Judge Posner speaking to the same issue

14:18:48 19    regarding motive for enforcement.  Your motive for enforcing

14:18:53 20    a contract is not evidence of whether or not the contract is

14:18:57 21    being breached or not being breached in the context.

14:19:00 22             And given these circumstances, we don't believe

14:19:05 23    that it provides any relevance and it further then creates

14:19:08 24    undue prejudice under 403 in light of the creating a

14:19:16 25    question in the jury's mind regarding -- in many ways what

14:19:20  1  goes also to specific performance of what the downstream

14:19:24  2  effects may be one way or the other.

14:19:26  3            THE COURT:  All right.  Let me hear from

14:19:28  4  defendants.

14:19:28  5            MR. OLSON:  Thank you, Your Honor.

14:19:30  6            MS. NYARADY:  Thank you, Your Honor.  Catherine

14:19:34  7  Nyarady for Qualcomm.  As Mr. Olson said and is in our

14:19:38  8  papers, we do have a defense based on -- we have a

14:19:40  9  counterclaim and a defense based on the Qualcomm ALA covers

14:19:44 10  our products.  And with respect to Qualcomm's alleged breach

14:19:50 11  under the Qualcomm ALA, ARM itself has put that in the case

14:19:56 12  starting at the very beginning.  When you go to their answer

14:19:59 13  at DI 21, they say Qualcomm is not only trying to develop an

14:20:06 14  unlicensed product, but it's also materially breaching its

14:20:09 15  ALA with ARM.  It then goes on multiple more times in

14:20:14 16  paragraph 250 --

14:20:15 17            THE COURT:  Wait, I thought you guys agreed that

14:20:20 18  nobody was going to talk about breaching the Qualcomm ALA.

14:20:25 19            MS. NYARADY:  That's with respect to ARM's

14:20:27 20  breach of the ALA, that's the subject of the second lawsuit.

14:20:30 21  I think we're talking here the second piece of this that is

14:20:33 22  not agreed upon is the Qualcomm breach which is the subject

14:20:35 23  of that October 22nd letter as well.  And I'm just making

14:20:38 24  the point, Your Honor, that this breach has been in the case

14:20:42 25  since the very beginning.  And it's been in the case as a

14:20:46 1    result of the response that ARM gave to our counterclaim and

14:20:50 2    to our defense when we said that we're licensed under the

14:20:53 3    Qualcomm ALA.

14:20:55 4              So as early as November 15, 2022, in DI 21,

14:21:00 5    there are multiple allegations made by ARM in the pleadings,

14:21:07 6    at paragraph 250 they say Qualcomm is materially breaching

14:21:10 7    its own ALA and giving ARM the right to terminate that

14:21:15 8    agreement.  And Qualcomm -- the Qualcomm ALA does not

14:21:18 9    provide licensing coverage for the products in question.

14:21:21 10             There is more reference to this, there is at

14:21:23 11   least five or six references throughout their pleading.  In

14:21:26 12   the most recent pleading at DI 318, they repeal all these.

14:21:32 13   The breach of the Qualcomm ALA, it's not an issue in the

14:21:35 14   case in terms of it's not on the verdict form that they have

14:21:38 15   sought a breach of the Qualcomm ALA, but we have asked for a

14:21:42 16   determination that our products are covered by the Qualcomm

14:21:44 17   ALA, that is on our proposed verdict form.

14:21:48 18             And in response to that, there have been

14:21:50 19   repeated allegations that the Qualcomm ALA has been breached

14:21:55 20   by Qualcomm.  The letter on October 22nd is actually not new

14:21:59 21   news in the sense of alleging these breaches.  It has been

14:22:03 22   in the case squarely and we anticipate that it is going to

14:22:07 23   be raised by ARM in response to the arguments that we have

14:22:09 24   regarding the fact that our products are licensed.

14:22:12 25             In addition, most recently at the pretrial order

14:22:15 1    that was filed, in Exhibit 2 at paragraph 16, ARM confirms

14:22:23 2    that one of the issues that remains to be litigated is

14:22:26 3    whether Qualcomm's ALA provides a license to the technology

14:22:30 4    developed by NuVia prior to the acquisition, and then at

14:22:35 5    Exhibit 13 of the pretrial order in plaintiff's statement of

14:22:39 6    intended proofs, there are numerous paragraphs talking at

14:22:42 7    length about the Qualcomm ALA, the scope of the ALA.  In

14:22:49 8    addition -- the paragraphs for reference, it's 25, 26, 27 --

14:22:54 9            THE COURT:  But help me out, I don't understand

14:22:57 10   the scheme.  You want to say look, you're not saying we

14:23:05 11   didn't -- you're saying we didn't breach because whatever,

14:23:12 12   and then you're saying but we're licensed?  How is you being

14:23:22 13   licensed under a separate agreement a defense to whether

14:23:26 14   Qualcomm breached or NuVia breached the original agreement?

14:23:30 15           MS. NYARADY:  Well, Qualcomm and NuVia obviously

14:23:33 16   are separate parties.

14:23:34 17           THE COURT:  I know, I know, please don't tell me

14:23:36 18   that.  I get it.  I'm not that dumb.  I got it.

14:23:39 19           MS. NYARADY:  The issue, Your Honor, is the fact

14:23:41 20   that ARM has taken the position that Qualcomm is selling

14:23:45 21   unlicensed products currently.  And so the response to that

14:23:51 22   has been that we are licensed under the Qualcomm ALA, we are

14:23:54 23   allowed to take the technology from NuVia under the Qualcomm

14:23:58 24   ALA and work with that technology as we've done.

14:24:03 25           THE COURT:  They're arguing that part of the

14:24:04 1    breach is that you all, whichever party, was supposed to

14:24:10 2    destroy everything and didn't, and the defense is well,

14:24:20 3    we're licensed to have it, so we didn't have to destroy it?

14:24:24 4             MS. NYARADY:  Yes, Your Honor, I think that's

14:24:26 5    part of it.  That we got the material under the Qualcomm ALA

14:24:31 6    pre-termination and we're licensed under the Qualcomm ALA,

14:24:34 7    these are not unlicensed products.  We also importantly,

14:24:38 8    Your Honor, have an unclean hands defense.

14:24:40 9             THE COURT:  That's not going before the jury,

14:24:43 10   though, right?  Isn't that an equitable defense?

14:24:48 11            MS. NYARADY:  I think there is a question as to

14:24:51 12   the full scope of what's going to the jury.

14:24:53 13            THE COURT:  When are you going to decide that?

14:24:55 14   We're at the pretrial conference.

14:24:57 15            Let her finish this one and then I'll let you go

14:25:01 16   to that.  But yeah, okay.

14:25:04 17            MS. NYARADY:  But there are allegations

14:25:06 18   regarding why ARM refused, for example, to give consent to

14:25:10 19   the acquisition, and again, you know, we've said this

14:25:17 20   before, but part of the motivation was getting out from

14:25:20 21   under the Qualcomm ALA.  So the Qualcomm ALA has been

14:25:24 22   intertwined with a number of issues that are directly

14:25:27 23   relevant.

14:25:27 24            THE COURT:  Okay.  So I am going to grant this

14:25:30 25   motion in limine.  No other parties can assert that the

14:25:35  1    other one breached the Qualcomm ALA.  The October 22nd

14:25:42  2    letter defendants claim is relevant to show ARM's scheme but

14:25:47  3    it seems more prejudicial and confusing than helpful.  So I

14:25:53  4    am not going to allow that.  That being said, I don't think

14:25:58  5    that that ruling precludes defendants from arguing that the

14:26:04  6    products are licensed.  Right?  There is no -- just make

14:26:09  7    sure I'm not misunderstanding my ruling.

14:26:12  8         MS. NYARADY:  I would agree that your ruling

14:26:13  9    does not impact our ability to argue that the products are

14:26:15 10    licensed.

14:26:16 11         THE COURT:  Okay.  Thank you.  All right.  So

14:26:18 12    that is my ruling on plaintiff's motion in limine number 2.

14:26:22 13    And Ms. Dunn, if you want to tell me about unclean hands

14:26:26 14    just to get that out of the way, that's fine.

14:26:28 15         MS. DUNN:  So, Your Honor, I am prepared to

14:26:32 16    address an issue that came up in the pretrial order draft

14:26:37 17    which is this issue of whether ARM says that we have DJ

14:26:45 18    claims that are equitable.  Our view is they are not

14:26:49 19    equitable and there is a lot of law on this.  It's not been

14:26:52 20    briefed before Your Honor, there is Supreme Court precedent,

14:26:55 21    Third Circuit precedent.  I'm very happy to speak about this

14:26:59 22    today, but Your Honor may want --

14:27:00 23         THE COURT:  You can give me three pages and they

14:27:03 24    can respond in three pages, that's it.

14:27:05 25         MS. DUNN:  We're happy to do that.

14:27:07  1          THE COURT:  How many issues are there?

14:27:11  2          MS. DUNN:  Well, we moved for a declaratory

14:27:14  3  judgment on five issues.

14:27:21  4          THE COURT:  What are the issues that you have a

14:27:22  5  dispute as to whether they're equitable or they're going to

14:27:26  6  the jury?  I don't care about --

14:27:29  7          MS. DUNN:  I think all of them, although I'm not

14:27:32  8  sure this has been discussed about granularity with the

14:27:37  9  parties.

14:27:37 10          THE COURT:  You have three pages to convince me.

14:27:40 11  You need to talk about it first.  And you need to get it to

14:27:43 12  my Friday, your part, and you can respond by Monday.

14:27:45 13          MS. DURIE:  Okay.

14:27:47 14          MS. DUNN:  Yes, Your Honor.

14:27:48 15          THE COURT:  Plaintiff's motion in limine number

14:27:50 16  3 seeks to exclude evidence relating to the nature, scope,

14:27:55 17  or amount of royalties paid by defendants to ARM under the

14:27:59 18  Qualcomm TLA.  ARM says those royalties are irrelevant to

14:28:06 19  the breach issues and defendants want to use the TLA royalty

14:28:10 20  to show ARM's motive behind the case, that it wants more

14:28:14 21  money and they also want to use it as part of their defense.

14:28:17 22          So can someone tell me, I tried to figure out

14:28:22 23  from looking at those contracts what these royalties are, I

14:28:25 24  think you just left off schedules or something because I

14:28:28 25  don't know.  So what are we talking about here?

14:28:32  1              MR. OLSON:  So we're talking about royalties

14:28:38  2    that are paid by Qualcomm to ARM --

14:28:41  3              THE COURT:  How much?

14:28:42  4              MR. OLSON:  There are in the neighborhood of █

14:28:47  5    █████    But they involve only what are called the TLAs,

14:28:53  6    and they involve products, none of which are in this case,

14:28:57  7    and involve cores that are licensed by ARM to Qualcomm, none

14:29:03  8    of which are in this case.  So what happens with a series of

14:29:09  9    older products, not in this case, ARM has licensed to

14:29:15 10    Qualcomm fully developed completed CPU cores, that

14:29:26 11    technology, Qualcomm has taken those cores and put them in

14:29:30 12    certain products.  None of those products where they did

14:29:32 13    that are in this case.  And after they put them in and sell

14:29:35 14    those, they then pay ARM a royalty under the TLA for that

14:29:42 15    fully developed core that they took and put in.  Different

14:29:45 16    than the ALA, it's not about an ALA, it's not about that at

14:29:50 17    all.

14:29:50 18              And the very specific concern that we have is

14:29:53 19    that the defendants will say we're paying █████████  in

14:29:59 20    royalties to you guys and that will create a prejudice and

14:30:05 21    ambiguity in the jury's mind as to whether or not we are

14:30:08 22    already being compensated for the activities that are at

14:30:14 23    issue in this case and there is zero doubt, there is zero

14:30:17 24    dispute that the royalties that are being paid and the

14:30:20 25    amounts involved have nothing to do with the items that are

14:30:24  1    in this case.

14:30:25  2            Now, defendants separately want to argue that

14:30:30  3    the differential in royalty rates, for example, between the

14:30:34  4    NuVia ALA and -- which was higher than the Qualcomm ALA was

14:30:39  5    a motivation to request consent or deny consent with respect

14:30:45  6    to the activities.  And they make claims about the

14:30:49  7    differential in rates as it applies to the ALA's and the

14:30:54  8    TLAs.  To be frank, we don't think that that is nearly as

14:30:58  9    prejudicial as a statement outstanding which I think is

14:31:03 10    severely prejudicial that we're paying you a lot of money

14:31:08 11    already, we're your big partner, we give you, you know, █████

14:31:14 12    ████████ whatever the number will be, and effectively

14:31:17 13    implying or suggesting that we've already been compensated

14:31:21 14    because there is no doubt that's not true.

14:31:22 15            Even the differential between the ALA's and the

14:31:26 16    TLAs we think is irrelevant and prejudicial.  The question

14:31:30 17    of motivation is sufficiently shown by the fact that the

14:31:33 18    NuVia ALA if it's relevant at all, which we've already

14:31:37 19    indicated we don't think it's relevant, if it's relevant at

14:31:40 20    all, the differential between the NuVia ALA which is

14:31:43 21    ███████████████████████████ more than the Qualcomm ALA, is

14:31:49 22    more than sufficient, but the reference to prior large

14:31:53 23    amounts being transferred for other technology in other

14:31:59 24    business arrangements for other products involving other

14:32:02 25    cores none of which are in this case we think should be

14:32:05  1    excluded.

14:32:12  2         MS. NYARADY:  Your Honor, I want to make it very

14:32:18  3    clear that defendants are not going to argue that ARM has

14:32:22  4    already been compensated for the conduct at issue in this

14:32:26  5    litigation through those TLA payments.

14:32:29  6         I would like to correct the record, though, when

14:32:31  7    Mr. Olson says that the TLA has nothing to do with the

14:32:36  8    products in the case, payments under the TLA.  That is

14:32:40  9    incorrect.  The products in this case actually have a

14:32:43 10    royalty under the ALA and the TLA.  So the TLA is relevant

14:32:50 11    in that regard.

14:32:50 12         But to be very clear, not only do we not intend

14:32:54 13    to imply that, we have on our witness -- I'm sorry, our

14:32:59 14    exhibit list, royalty credit memos that show that we have

14:33:04 15    tried to pay for the current products in the lawsuit under

14:33:08 16    the Qualcomm ALA, and so we are affirmatively going to put

14:33:13 17    in evidence that will resolve any of the concern that's been

14:33:17 18    raised by ARM in terms of, you know, misleading the jury or

14:33:20 19    confusing the jury.  We are not going to say that any of

14:33:23 20    these payments that have been made somehow, you know,

14:33:27 21    satisfy payments that should be made with respect to these

14:33:30 22    products.

14:33:31 23         Now with respect to the relevance of the TLA

14:33:36 24    payments, it seems to us that ARM is really attempting to

14:33:41 25    tell half the story, if you will, of the relationship

14:33:44 1  between the parties.  We are going to be -- Qualcomm is

14:33:48 2  going to be accused of acting in bad faith.  We think the

14:33:53 3  TLA payments and the performance under the TLA for all

14:33:56 4  products across the Ecosystem show that Qualcomm is acting

14:34:00 5  in good faith under the agreements, that in combination with

14:34:03 6  our attempts to pay for all the products even in the lawsuit

14:34:06 7  under our agreements go to that argument.  So we want to

14:34:09 8  show the entire relationship between the parties.

14:34:11 9          This is also in ARM's statement of facts and

14:34:15 10 issues for trial.  They talk about the long-standing

14:34:18 11 relationship and the interaction, both sides have referenced

14:34:23 12 the fact that Qualcomm is the largest customer of ARM, and

14:34:26 13 the TLA payments are evidence of the depth of the

14:34:31 14 relationship between the parties and the ongoing performance

14:34:33 15 by Qualcomm.  We think they're directly relevant to issues

14:34:37 16 that are in the case.

14:34:39 17         In addition as we said in our brief, there will

14:34:43 18 be evidence regarding the calculations that were done by ARM

14:34:50 19 about the difference between the ALA and the TLA amounts,

14:34:55 20 the royalty assessment.  In fact, on the very day that ARM

14:34:59 21 learned about the acquisition, there are documents showing

14:35:02 22 that they went and immediately did this calculation.

14:35:05 23         We are going to be talking at trial about the

14:35:08 24 work that's done by NuVia and by Qualcomm to develop these

14:35:12 25 products and innovate.  The difference in rates between the

14:35:15 1    TLA and the ALA is evidence of that because under the TLA,

14:35:19 2    as Mr. Olson said, products are provided that are more fully

14:35:24 3    formed.  And so what a TLA licensee gets versus what an ARM

14:35:30 4    -- sorry, an ALA licensee gets are going to be at issue in

14:35:34 5    the case and we're going to be talking a lot about the

14:35:38 6    innovative work that was done by NuVia and Qualcomm to

14:35:41 7    develop these products and build these products under the

14:35:44 8    ALA, so the difference in the ratings to that as well, and

14:35:48 9    it does demonstrate the difference in the value of what is

14:35:51 10   obtained by a licensee under these different agreements.

14:35:54 11           Also I would point out, Your Honor, that in the

14:36:01 12   pretrial order at Exhibit 13, where ARM set forth its

14:36:06 13   intended proofs, it talks about again in paragraph 41 the

14:36:10 14   long-standing business relationships that it has with its

14:36:14 15   licensee and how trust and integrity are an important part

14:36:18 16   of that.

14:36:18 17           In paragraph 114 it talks about the impact of

14:36:21 18   relationships with licensees.  In paragraph 115 and

14:36:26 19   elsewhere, it talks about the ecosystem, it calls it the

14:36:31 20   ecosystem of the ARM-based devices.  That ecosystem includes

14:36:35 21   all of the products that are under the Qualcomm TLA.  And

14:36:38 22   there repeated references in the record --

14:36:42 23           THE COURT:  I think I have heard enough.  All

14:36:44 24   right.  So I have ARM's motion in limine number 3.  It's

14:36:49 25   going to be granted in part and denied in part.  Granted to

14:36:52  1    the extent that the amount of money already paid under the

14:36:57  2    ALA for products other than the current products at issue, I

14:37:00  3    think that is not relevant.  Denied as to the different

14:37:03  4    royalty rates which appear to be relevant to defendants'

14:37:06  5    defense that ARM wrongfully withheld consent to transfer the

14:37:10  6    NuVia ALA to Qualcomm because ARM was dissatisfied with the

14:37:14  7    lower royalty rate it would receive.

14:37:16  8            All right.

14:37:17  9            MS. NYARADY:  Thank you, Your Honor.

14:37:18 10            THE COURT:  Now we get to Qualcomm -- maybe this

14:37:20 11    is you, Ms. Nyrady, Qualcomm's motion in limine number 1.

14:37:26 12            MR. BLUMENFELD:  With the Court's permission,

14:37:28 13    Mr. Braly is going to address that.

14:37:31 14            THE COURT:  All right.  Thank you.

14:37:34 15            MR. BRALY:  Good afternoon, Your Honor.  Jacob

14:37:36 16    Braly on behalf of defendants.

14:37:38 17            What we seek here in this motion in limine is to

14:37:41 18    exclude testimony and evidence regarding the specific dollar

14:37:45 19    amount of proceeds that the NuVia founders received during

14:37:49 20    the NuVia acquisition.  This evidence is irrelevant to the

14:37:54 21    claims at issue, and any potential relevance is

14:37:59 22    substantially outweighed by the likelihood of prejudice or

14:38:02 23    bias from a jury under 403.

14:38:05 24            To be clear, we are not seeking to exclude

14:38:08 25    evidence related to the acquisition price, to the fact that

14:38:11  1    the founders received compensation in the acquisition, or to

14:38:15  2    the fact that there is a bonus structure laid out and a term

14:38:20  3    sheet that was signed as part of the acquisition.  All of

14:38:23  4    the reasons that ARM provides in their response are

14:38:27  5    satisfied without disclosing the actual proceeds that were

14:38:31  6    made by the NuVia founders who are nonparties to this

14:38:36  7    action.  And including that information and introducing that

14:38:39  8    evidence into this case would only seek to inflame the jury.

14:38:42  9          To also address one of the issues that's raised

14:38:45 10    in ARM's response, they question whether a particular

14:38:50 11    milestone -- I think the last pending milestone payment was

14:38:53 12    paid out based on --

14:38:55 13          THE COURT:  How much money are we talking about?

14:38:59 14          MR. BRALY:  It is approximately 80 to $100

14:39:03 15    million, Your Honor.  Mr. Gulati in Exhibit 1A to our

14:39:08 16    opening brief provides a breakdown of the amount on pages

14:39:11 17    137 to 138, and describes both the stock transfer as well as

14:39:17 18    a cash payment and then, of course, there are milestone

14:39:20 19    payments as well.

14:39:22 20          THE COURT:  Okay.  Let me hear from the

14:39:24 21    plaintiff.

14:39:25 22          MS. DURIE:  Thank you, Your Honor.  Daralyn

14:39:30 23    Durie for ARM.

14:39:31 24          Evidence of the amount of money that the

14:39:34 25    founders stood to make by virtue of the acquisition is

14:39:39  1    highly relevant to their motivation for disregarding their

14:39:45  2    contractual obligations.  And closing that transaction

14:39:50  3    notwithstanding the consent requirement and failing to get

14:39:54  4    consent, and then using the ARM technology that had been

14:40:01  5    developed at NuVia in order to speed product development at

14:40:06  6    Qualcomm and get the milestone payments that had been

14:40:10  7    promised to them.  And I think the case law is quite clear

14:40:14  8    that evidence of the amount of money that a party stands to

14:40:19  9    gain is evidence of bias.  And it shows their motivation for

14:40:24 10    engaging in the specific conduct that is at issue in this

14:40:28 11    case.

14:40:28 12                THE COURT:  All right.  I think I have heard

14:40:30 13    enough.

14:40:30 14                MS. DURIE:  Thank you.

14:40:31 15                THE COURT:  I am going to deny the motion.  If

14:40:38 16    defendants -- I've already permitted defendants to use the

14:40:40 17    royalty rate to show motive and bias from plaintiff's part,

14:40:45 18    then plaintiff can also use Qualcomm's buyout figures to

14:40:49 19    show motive or bias of the NuVia folks.

14:40:53 20                Okay.  Qualcomm's motion in limine number 2,

14:40:58 21    defendants seek to preclude ARM from making arguments about

14:41:01 22    its ALA program, ALAs generally unless it produces all of

14:41:07 23    its third-party ALAs without redactions.  We had a little

14:41:11 24    bit of a discussion about this at the last hearing.  I'm not

14:41:16 25    sure if I screwed that up.  So I do need to understand

14:41:19  1    what's going on because plaintiff now seems to be saying

14:41:26  2    look, we're not going to use those, which I appreciate

14:41:30  3    because you didn't produce them, you shouldn't be able to

14:41:33  4    use them.

14:41:34  5            But what I'm not sure happens is instead it

14:41:37  6    seems like you're saying we're just going to have people

14:41:40  7    testify.  Well, what are you going to have them testify?

14:41:43  8    Are you going to have them testify about things that they

14:41:45  9    need those documents to cross-examine them on, or are you

14:41:48 10    going to testify about stuff that you've already produced

14:41:52 11    discovery on?  So that is what I need some help on.

14:41:55 12            MS. DURIE:  Thank you.  And the answer, Your

14:41:57 13    Honor, is the latter.  So we will have witnesses describe at

14:42:03 14    a high level the ALA program, and that there are ALA's with

14:42:11 15    a number of different companies.  That I think is not a

14:42:13 16    contested fact.  We do not intend to put in any evidence

14:42:17 17    about the specific terms of specific agreements that would

14:42:22 18    implicate in any way any information that was redacted from

14:42:27 19    those agreements.

14:42:28 20            The only -- the reason that this evidence is

14:42:32 21    relevant is to show -- in part to show harm.  Obviously the

14:42:38 22    details of that harm are for the remedies phase for a

14:42:43 23    specific performance, but Qualcomm has taken the position

14:42:46 24    that we need to show as an element of the breach of contract

14:42:50 25    claim harm from the breach.

14:42:51   1          THE COURT:  And I agree with that.

14:42:52   2          MS. DURIE:  Right.  And so we intend to have

14:42:56   3  testimony both that ARM is harmed by the unlicensed use of

14:43:00   4  our technology by Qualcomm and not being compensated for

14:43:06   5  that use in the way that they believe they should have been,

14:43:10   6  and that there is harm generally to ARM from the unlicensed

14:43:15   7  use of its technology, this is not the only ALA.

14:43:19   8          THE COURT:  But I need to know specifically what

14:43:23   9  you suggest someone is going to testify about because if

14:43:25  10  that person is going to say well, gosh, it affects our

14:43:30  11  ability to negotiate good prices on other ALA's, that seems

14:43:34  12  like something you should have produced.

14:43:36  13          MS. DURIE:  I understand.  We are not going to

14:43:39  14  have witness testimony that there has been any past

14:43:44  15  impairment in our ability to negotiate specific ALA terms

14:43:49  16  including rates.  We do think that to the extent that

14:43:55  17  Qualcomm's conduct was blessed here and that Qualcomm was

14:44:00  18  ultimately permitted to use unlicensed technology, that that

14:44:06  19  would have negative consequences going forward, but we're

14:44:10  20  not going to put in any testimony --

14:44:13  21          THE COURT:  How is that showing damages?  That's

14:44:16  22  showing speculative stuff for the future.  How is that

14:44:19  23  showing that you have been damaged by the breach?

14:44:22  24          MS. DURIE:  I think there is exigent harm to the

14:44:26  25  licensing ecosystem, but I think for purposes of showing

14:44:30  1    harm as an element of the breach of contract claim, the fact

14:44:34  2    that our technology is being used in an unlicensed fashion

14:44:39  3    without compensation, without in our view adequate

14:44:42  4    compensation --

14:44:43  5             THE COURT:  That one I understood.  I understood

14:44:45  6    that one.  I don't understand you saying and now we're going

14:44:50  7    to put someone up and he's not going to say we've already

14:44:53  8    been harmed because we couldn't negotiate better deals or

14:44:57  9    people were like you let Qualcomm get away with it, so we

14:45:03 10    can get away with paying less or something, you're not going

14:45:06 11    to do that and instead you want him to say well, it may

14:45:09 12    happen in the future, that doesn't seem like harm for a

14:45:12 13    breach of contract.  That seems kind of speculative and

14:45:18 14    future.

14:45:18 15             MS. DURIE:  I don't disagree that it is about

14:45:20 16    the future.  It is about why this lawsuit is important to

14:45:23 17    ARM, it is about why ARM made the decision which was as I

14:45:28 18    understand it literally unprecedented to sue one of its

14:45:32 19    licensees for the unlicensed use of its technology.

14:45:37 20             I agree that is not what we will be relying on,

14:45:40 21    it is the predicate for a determination of harm as an

14:45:44 22    element of a breach of contract claim, I believe that is the

14:45:47 23    harm that will be specific from the unlicensed use of this

14:45:50 24    technology.

14:45:50 25             THE COURT:  Let me ask you a question because it

14:45:53 1    sort of your explanation kind of raised this which is let's

14:45:59 2    say you go before the jury and the jury says there was a

14:46:04 3    breach, and the damage, there was damage and loss of

14:46:10 4    reputation, something like that.  Okay?  Something that's

14:46:13 5    damages, but that is sufficient to show damages for purposes

14:46:18 6    of making out a breach of contract claim.  And then you come

14:46:22 7    to me and you've already just said part of your damage may

14:46:27 8    be that you're not compensated adequately for the breach,

14:46:32 9    for the use of our technology, so it's using your technology

14:46:36 10   but not compensating you adequately.

14:46:39 11           So let's just say after I hear you out on that I

14:46:42 12   say it doesn't seem to me that there is no adequate monetary

14:46:47 13   relief.  What happens because there has been no request for

14:46:53 14   damages, and if I don't give you specific performance but

14:46:56 15   there is a breach, where are we?

14:46:59 16           MS. DURIE:  So the Court has the power in equity

14:47:04 17   to make awards incidental to an equitable request for

14:47:10 18   specific performance.

14:47:14 19           THE COURT:  Did you ask for that in the pretrial

14:47:16 20   order?

14:47:16 21           MS. DURIE:  We asked for that in the pleadings

14:47:18 22   and I believe it is in the pretrial order as well.

14:47:21 23           I do want to make clear that what I have been

14:47:24 24   talking about is harm as an element of a breach of contract

14:47:27 25   claim as distinct from damages.

14:47:29  1          THE COURT:  I understand.  But if you're going

14:47:31  2    to convince me -- if you want to tell the jury that our harm

14:47:36  3    is that we haven't been adequately compensated, I can't

14:47:41  4    pretend that I didn't hear that.  Compensation sounds

14:47:44  5    money-ish.

14:47:45  6          MS. DURIE:  I understand, and that is an element

14:47:46  7    of harm and I understand Your Honor's point.  So the answer

14:47:49  8    to your question I think is remedies that are incidental to

14:47:54  9    specific performance.

14:47:55 10          THE COURT:  All right.

14:47:56 11          MS. DURIE:  Thank you.

14:47:56 12          THE COURT:  Mr. Blumenfeld, did we help with

14:47:59 13    some of that?  So they're not going to put in ALA's, they're

14:48:04 14    not going to testify that anything -- that there was

14:48:10 15    anything in the past where they -- their negotiations or

14:48:13 16    their ALA's were somehow impacted, and that's damages.  I'm

14:48:21 17    not sure I'm going to let them put in something speculative

14:48:25 18    about the future, while maybe this will happen, maybe it

14:48:29 19    won't.  So that leaves us with an argument that they're not

14:48:35 20    being adequately compensated for their -- for the alleged

14:48:41 21    breach.  That seems like it's outside of this motion in

14:48:45 22    limine.  So what is left of the motion in limine that I need

14:48:49 23    to address?

14:48:51 24          MR. BLUMENFELD:  So a couple of things, Your

14:48:53 25    Honor, and I want to swing back to the damages issue that

14:48:55  1    you raised with Ms. Durie.  I don't think it's correct that

14:49:02  2    all they intend to do is call some executives and say oh,

14:49:06  3    there may be some harm to us in the future which Your Honor

14:49:11  4    has said you haven't decided whether you will let them do

14:49:15  5    that or not.  This came up a little bit during summary

14:49:18  6    judgment where they put in a declaration from two of the

14:49:20  7    executives.  In fact, if you read their MIL response it

14:49:24  8    specifically says --

14:49:25  9          THE COURT:  That caught my attention in the MIL,

14:49:29 10    we're going to have somebody testify and I'm like okay,

14:49:32 11    about what.

14:49:33 12          MR. BLUMENFELD:  It says about royalties that

14:49:36 13    have been decreased.  That doesn't sound like the future,

14:49:38 14    that sounds like --

14:49:39 15          THE COURT:  I understand, but we've now had a

14:49:44 16    representation that suggest that's not going to happen,

14:49:46 17    unless the royalties that have been decreased means that

14:49:49 18    they're not being paid, they're Qualcomm or NuVia royalties

14:49:55 19    that they're not getting paid.

14:49:56 20          MR. BLUMENFELD:  Right.  If I could hand up one

14:49:59 21    of the declarations they put in, this is a big part of our

14:50:02 22    concern.  It's from Williamson.  It came in in August, we

14:50:06 23    objected to it as part of the summary judgment proceedings

14:50:09 24    because it is speculative, and also because it does disclose

14:50:25 25    things or argues things that we didn't get discovery of

14:50:29  1  because we didn't get the ALA's in for other reasons.  But

14:50:33  2  if you look at Mr. Williamson's declaration, and he is

14:50:38  3  listed as a trial witness, so he's senior vice-president and

14:50:42  4  general manager, and he says in paragraph 6 that the

14:50:51  5  unlicensed use of ARM's technology has caused multiple harms

14:50:55  6  to ARM.  And then he goes on to explain that, and in

14:50:59  7  paragraph 7, he says based on my experience at ARM and

14:51:03  8  marketing and business roles since 2015, the industry's

14:51:08  9  perception of ARM's reputation and its ability to protect

14:51:12 10  its intellectual property impacts ARM's contracts with its

14:51:15 11  licensees, for example, it affects the terms that ARM's

14:51:19 12  licensees are willing to accept, their proposals during

14:51:23 13  negotiations, their willingness to comply with those issues.

14:51:26 14  Terms that may be impacted include that products are

14:51:29 15  licensed financial terms, scope of license technology, I

14:51:34 16  don't know how I'm supposed to be able to cross-examine him

14:51:37 17  on these things happen when I'm talking to our licensees, by

14:51:41 18  the way, you don't have the licenses so you can't use them

14:51:44 19  to cross-examine me --

14:51:47 20        THE COURT:  Hold on.  Let me ask.  Ms. Durie, I

14:51:51 21  would have thought based on our representations you weren't

14:51:53 22  planning to have him do that because I kind of agree,

14:51:57 23  Mr. Blumenfeld can't just say --

14:52:00 24        MS. DURIE:  That is correct, we are not going to

14:52:02 25  say that there have been any such impacts to date.

14:52:06  1          THE COURT:  But you want him to say but there

14:52:11  2    will be.

14:52:12  3          MS. DURIE:  I would like for him to be able to

14:52:15  4    say that one of the reasons that ARM brought this case is

14:52:20  5    because its licensee ecosystem is extremely important to it

14:52:28  6    and it is very important to ARM as an IP licensing entity

14:52:32  7    that its licensees respect its intellectual property.  And

14:52:38  8    that in ARM's view, if Qualcomm were able to use ARM

14:52:42  9    technology in an unlicensed fashion, that could have very

14:52:46 10    severe downstream consequences for ARM.  I don't expect

14:52:50 11    anyone to spend a long time belaboring the point.

14:52:53 12          I think at that high level, they are -- Qualcomm

14:52:57 13    has said that they are going to try to suggest that ARM's

14:53:01 14    reasons for refusing to consent and bringing the case was

14:53:06 15    because it wanted to get rid of the Qualcomm ALA.  Our

14:53:10 16    response to that is to say no, that is not true, the reason

14:53:14 17    that we are here is not because we want to get rid of the

14:53:17 18    Qualcomm ALA, the reason that we are here is because

14:53:20 19    Qualcomm is using our technology in an unlicensed fashion

14:53:23 20    and that is important to us.

14:53:24 21          But we don't intend to belabor the point and we

14:53:28 22    do not intend to make any argument that there has been any

14:53:31 23    specific effect in any specific license agreement that would

14:53:34 24    give rise to the need to cross-examine on that.

14:53:38 25          THE COURT:  So with that --

14:53:40 1        MR. BLUMENFELD: Your Honor, if you go on to --

14:53:42 2  I want to respond also to her point about motivation, how it

14:53:46 3  is their motivation. The suit gets in after, what Mr. Olson

14:53:50 4  said, after our motivation.

14:53:52 5        THE COURT: I know. Well, you are going to talk

14:53:55 6  about their motivation to sue, that's all I heard over here

14:53:58 7  is they're suing us because they want more money so I can

14:54:02 8  sort of see why they get to respond and say no, we're not

14:54:05 9  suing them because we want more money, we're suing them

14:54:09 10  because this is harmful to our business model.

14:54:12 11        MR. BLUMENFELD: Well, we will get to that

14:54:15 12  undoubtedly when things come up at trial, but on the

14:54:18 13  specific things that Ms. Durie said about what they're going

14:54:22 14  to do, if you turn to paragraph 11 and then paragraph 13 of

14:54:27 15  Mr. Williamson's declaration, he says he --

14:54:30 16        THE COURT: Yeah, let's just check before you

14:54:33 17  tell me, are you going -- this seems like past stuff, since

14:54:38 18  June people have contacted me and I have been damaged. So

14:54:43 19  we need -- you're not going to put this in.

14:54:46 20        MS. DURIE: That's correct, Your Honor.

14:54:47 21        THE COURT: Okay. So that was paragraph 11.

14:54:50 22        MS. DURIE: Paragraph 11, that's right.

14:54:52 23        THE COURT: And then --

14:54:53 24        MS. DURIE: I want to be clear, we're talking

14:54:55 25  about the phase in front of the jury, obviously specific

14:54:58 1    performance is a separate question and we'll address that at

14:55:01 2    a separate time in front of Your Honor.

14:55:04 3              THE COURT:  We can do that, I'm just saying the

14:55:06 4    extent that you want him to say I have been contacted by

14:55:09 5    people and our agreements are suffering, I would have

14:55:14 6    expected that all of that underlying stuff be produced, and

14:55:19 7    that you're not just going to have him get up there and say

14:55:24 8    it and leave Mr. Blumenfeld to say I don't know if that's

14:55:28 9    true or not.  So you can ask again to put it in if there is

14:55:33 10   a bench trial phase, but I still in a bench trial require

14:55:40 11   you to disclose stuff during discovery.

14:55:43 12             All right.  What about paragraph 12, did you

14:55:46 13   have a problem with paragraph 12, Mr. Blumenfeld?  This is

14:55:51 14   -- that's different, that's Qualcomm's position as to what's

14:55:54 15   licensed.

14:55:55 16             MR. BLUMENFELD:  It's 13, that's the other

14:55:56 17   issue.  But on this entire subject, I don't -- so they put

14:56:02 18   in a declaration saying I have talked to our partners, I

14:56:06 19   have talked to our licensees, here is what I have learned

14:56:09 20   from them.  They say that in the declaration.  They're not

14:56:12 21   going to do that at trial.  I don't know how he can get on

14:56:15 22   the stand and just say but this is going to happen.

14:56:18 23             THE COURT:  And I haven't quite gotten through

14:56:23 24   that.  I understand that concern.  I understand that

14:56:26 25   concern.  And I'm not -- but I guess what I'm thinking is I

14:56:33  1    need to understand more of what he's going to say, right?

14:56:37  2    Like, why can't he get up there and say this is our whole

14:56:41  3    business model, our business model is we licensed

14:56:45  4    technology, and you know, if you're going to be out there --

14:56:47  5    and we think we have great technology.  But it's important

14:56:50  6    to us that people respect our licenses because if people

14:56:54  7    don't respect our licenses, our business model is not worth

14:56:57  8    the paper that it's written on.  Right?

14:56:59  9              MS. DURIE:  Right.

14:56:59 10              THE COURT:  And then he can say and our

14:57:05 11    perception is that Qualcomm or NuVia, or I know there is two

14:57:10 12    different parties, I don't know who I'm talking about at

14:57:12 13    this moment, but you don't have to tell me there is two

14:57:16 14    different parties, whoever is not respecting our licenses,

14:57:19 15    probably both, right, neither of them respected the license

14:57:22 16    according to the plaintiff.  So that seems okay to me and

14:57:26 17    that's not speculative damages, that's saying it's important

14:57:30 18    to us that people respect it, and it's important to our

14:57:34 19    business model that people respect it, and they're not

14:57:37 20    respecting it.  And you can say well, you don't have any

14:57:40 21    evidence that it actually had an impact, but why can't he

14:57:44 22    get up there and say, come on, we're a licensing company,

14:57:47 23    all we do is enter agreements and if we say everybody can

14:57:51 24    just kind of pooh pooh our agreements, you know, it doesn't

14:57:55 25    -- the jury can look at that and be like well, that sounds

14:57:58  1    bad.

14:58:00  2            MR. BLUMENFELD:  So here is the problem with

14:58:02  3    that, and it goes to the question Your Honor raised with

14:58:05  4    Ms. Durie.  How do I cross-examine him?  Because, for

14:58:09  5    example, we know that they've entered into other licenses

14:58:13  6    since the termination of the NuVia license.  We all know

14:58:17  7    about Apple and there are others they've entered into since

14:58:21  8    then.  We don't have them, or we have them in redacted forms

14:58:26  9    that we don't know what the terms are.  We went through that

14:58:30 10    back in March with the Google licenses where the terms are

14:58:33 11    totally redacted.  So if he gets on the stand and says this

14:58:37 12    is going to affect our licensing program, it's going to

14:58:40 13    affect our ability to collect royalties, it's going to

14:58:43 14    affect people's willingness to take a license and all I can

14:58:46 15    say is well, people took licenses, right, and I don't have

14:58:51 16    those licenses and I can't cross-examine him on whether the

14:58:55 17    harm is real or whether it's just something he's making up

14:58:59 18    for the jury.

14:58:59 19            THE COURT:  Let me ask Ms. Durie on that

14:59:02 20    specific point because that one seems --

14:59:04 21            MS. DURIE:  So we're not arguing that there has

14:59:06 22    been any affect on any exigent license agreements because

14:59:11 23    the harm hasn't happened yet --

14:59:13 24            THE COURT:  Hold on, hold on.  If he's going to

14:59:16 25    get up there and say well, it's going to harm us in the

14:59:19  1    future and Mr. Blumenfeld could if he had the agreement say

14:59:23  2    good of you to say, but by the way, since this all happened,

14:59:28  3    you have entered into 89 license agreements and, in fact,

14:59:30  4    you got better terms than you ever had before, that's a

14:59:34  5    pretty good cross of him saying oh, it's going to now hurt

14:59:38  6    us.

14:59:39  7              MS. DURIE:  So I disagree --

14:59:41  8              THE COURT:  Well, I don't --

14:59:43  9              MS. DURIE:  But the distinction, I want to draw

14:59:44 10    the distinction between what will happen as a consequence of

14:59:48 11    Qualcomm being allowed to use technology in an unlicensed

14:59:53 12    way without consequences --

14:59:55 13              THE COURT:  Yes.  According to you -- hold on.

14:59:58 14              MS. DURIE:  Yes.

14:59:58 15              THE COURT:  According to you, Qualcomm has been

15:00:01 16    allowed to do this.

15:00:03 17              MS. DURIE:  Not yet.  We're in court litigating

15:00:07 18    over that very issue.  They have not gotten away with it.

15:00:11 19    They make -- if they were to get away with it, if this were

15:00:15 20    to not have a consequence, we would be harmed.  But we are

15:00:18 21    not saying -- there has been no --

15:00:21 22              THE COURT:  Now you're getting super

15:00:24 23    speculative.  So the jury has to now assume that the damage

15:00:28 24    is that they find that there is a breach, but they can't

15:00:32 25    find that there is a breach unless there is damage.  So I

15:00:35  1    can't -- that seemed wrong to me.

15:00:37  2           MS. DURIE:  So let me be clear.  The allegation

15:00:40  3    of harm for purposes of whether there was a breach is that

15:00:43  4    they are using our unlicensed technology and they are not

15:00:48  5    paying for it.  That is harm.  And that suffices to show

15:00:54  6    harm for purposes of a breach.

15:00:56  7           THE COURT:  You know what, that's all I'm going

15:00:59  8    to let him say at trial.  He cannot say -- no, he cannot say

15:01:02  9    and in the future, this is going to cause us problems if the

15:01:06 10    jury finds that there was a breach and this can all go and

15:01:11 11    they are allow to get away with it.  He cannot say it.

15:01:14 12    Okay?  He cannot say it.  You can stop arguing it because

15:01:20 13    you did not produce -- you did not produce information that

15:01:26 14    would allow the defendants to fairly cross-examine your

15:01:31 15    witnesses because I get it, you're saying well, they didn't

15:01:36 16    get away with it until the jury finds they got away with it.

15:01:40 17    The fact is they're doing it now.  There is no -- no, he

15:01:43 18    can't -- and so one, no, you didn't produce the documents.

15:01:47 19    Two, no, it seems awfully speculative to say we think that

15:01:52 20    at some point if the jury finds that there wasn't -- I don't

15:01:57 21    even know if the jury finds there was a breach or there

15:02:00 22    wasn't a breach that we're going to be harmed.

15:02:02 23           MS. DURIE:  It's not the jury verdict.  Let me

15:02:05 24    very be very clear, it's why we brought the lawsuit.  If we

15:02:09 25    had allowed this conduct to go unchallenged, if we had

15:02:12  1    allowed Qualcomm to use our IP in an unlicensed fashion and

15:02:16  2    not take an action, that would have threatened our

15:02:20  3    ecosystem, the reason we brought --

15:02:22  4         THE COURT:  There is a difference between saying

15:02:24  5    it will threaten our ecosystem and saying, and what that

15:02:28  6    means is we are going to be harmed in the future by people,

15:02:35  7    you know, everybody -- no one is going to respect our

15:02:39  8    licenses.  It's one thing if he gets up there and says this

15:02:42  9    is our business model, we need people to respect our

15:02:46 10    licenses, they're not respecting our licenses, okay, I don't

15:02:50 11    know exactly what that establishes, but the jury I suppose

15:02:54 12    could fairly draw an inference from that.  It's a very

15:02:58 13    different thing for him to say and by the way, we will be

15:03:01 14    harmed in the future, or we may be harmed in the future if

15:03:06 15    this is allowed.

15:03:07 16         MS. DURIE:  May I just say in response to the

15:03:09 17    attack on our motive for bringing the lawsuit, which

15:03:13 18    Qualcomm intends to put at issue by saying we refused to

15:03:17 19    consent to try to get out from under the Qualcomm ALA, we

15:03:20 20    would like our witness to be able to say that's not why

15:03:23 21    we're here, the reason why we're here, why we brought the

15:03:27 22    lawsuit and why we are insisting on our rights is because we

15:03:32 23    are a licensing shop.  If our technology is used in an

15:03:35 24    unlicensed fashion, that threatens our entire business model

15:03:39 25    and we're very concerned about what the consequences of that

15:03:43 1    would be.  We're not saying we're harmed by that --

15:03:46 2            THE COURT:  Yes, but the problem I have is --

15:03:49 3    and you can say that I'm talking about something different,

15:03:52 4    but I still think it's fair within the scope of

15:03:55 5    cross-examination, if your witness gets up there and says

15:03:58 6    all hell is going to break loose if people don't respect our

15:04:02 7    licenses, our business model is not worth the paper it's

15:04:05 8    written on, and Mr. Blumenfeld or Ms. Dunn or Ms. Nyrady or

15:04:10 9    whoever can't get up and say well, wait a second, everybody

15:04:15 10   knows that according to you, Qualcomm has not been

15:04:20 11   respecting our technology and has just been using it as you

15:04:22 12   say in an unlicensed manner and the sky has not fallen in,

15:04:28 13   in fact all of this other stuff has happened, the problem is

15:04:32 14   he can't say that or they can't say that because you didn't

15:04:35 15   produce the documents.

15:04:36 16           MS. DURIE:  I would think, Your Honor, we could

15:04:38 17   arrive at a stipulation to solve that problem because that

15:04:40 18   is not the argument that we are making.  We are saying if we

15:04:43 19   had not enforced our rights and just sat on the sidelines

15:04:48 20   and didn't take action to protect our intellectual property

15:04:52 21   and allowed the unlicensed use of our IP without

15:04:57 22   consequence, that is what would threaten our entire model,

15:05:00 23   not being here pursuing this litigation, but sitting on the

15:05:03 24   sidelines and not taking action.

15:05:05 25           If Qualcomm wants to cross-examine our witnesses

15:05:09  1    --

15:05:09  2           THE COURT:  How are they supposed to say we

15:05:11  3    don't believe you, that's not true?

15:05:14  4           MS. DURIE:  I think we could work out a

15:05:15  5    stipulation.  If their goal is to be able to establish that

15:05:19  6    we are not contending there has been any such harm with

15:05:23  7    respect to the terms of license agreements that we were able

15:05:27  8    to negotiate in view of the fact that we did file a lawsuit,

15:05:31  9    we have no problem with that, and I think we could work out

15:05:34 10    a stipulation to that effect.

15:05:36 11           THE COURT:  All right.  This is what I am going

15:05:37 12    to do.  You can't use the ALA.  It sounds like you don't

15:05:41 13    want to use the ALA.  And you can't use anything that's

15:05:44 14    happened to date, and it doesn't sound like you want to use

15:05:47 15    anything that's happened to date.  So that I will rule on.

15:05:55 16    Whatever happens, see if you can come up with a stipulation

15:05:57 17    that will allow you to deal with it.  If not, you can use

15:06:02 18    some of your trial time to argue the rest of this, whatever

15:06:05 19    is left of this motion to me.

15:06:07 20           MS. DURIE:  Understood.  Thank you, Your Honor.

15:06:09 21           THE COURT:  But I understood the motion to be

15:06:14 22    that defendants seek to preclude ARM from making argument

15:06:17 23    about its ALA product program and so I guess to the extent

15:06:21 24    that we're talking about not specific agreements but the

15:06:26 25    program, then I -- let me know what's left of that motion.

15:06:34  1          MR. BLUMENFELD:  I'm not sure, Your Honor, that

15:06:37  2     there is anything left that we need to deal with today.  We

15:06:40  3     may well get into the issue of them putting Mr. Williamson,

15:06:44  4     Mr. Abby, Mr. Haas, their witnesses on to talk about -- to

15:06:49  5     create an impression that there is a parade of horribles

15:06:53  6     that are going to happen and if that does --

15:06:54  7          THE COURT:  I understand.  I understand.  And

15:06:56  8     I'm not in any way precluding you from objecting to that, or

15:07:01  9     from raising that before the witnesses get on the stand and

15:07:04 10     asking for a proffer on what they're going to say on that so

15:07:08 11     we can address it.

15:07:09 12          MR. BLUMENFELD:  Thank you.

15:07:09 13          If I can respond to the colloquy that you had on

15:07:12 14     damages, this is kind of an interesting issue for us.  Back

15:07:15 15     when we were before you in March, you asked them whether

15:07:18 16     they were asserting a damages claim and they said no.  They

15:07:23 17     left themselves open to possibly doing it later.  They've

15:07:26 18     never given us a damages expert report.  They've never given

15:07:29 19     us a disclosure of a damages theory.  They haven't put --

15:07:33 20          THE COURT:  How scary it must be that they want

15:07:37 21     me to figure it out.

15:07:39 22          MR. BLUMENFELD:  But if you go to the pretrial

15:07:41 23     order, I don't know if you have it in front of you.

15:07:44 24          THE COURT:  I can pull it up.  Give me a second.

15:07:49 25          MR. BLUMENFELD:  It's Exhibit 13 to the pretrial

15:07:51  1    order.  It's in the pretrial order in a number of places.

15:08:02  2              THE COURT:  Okay.

15:08:03  3              MR. BLUMENFELD:  Starting at the bottom of

15:08:05  4    page 16, paragraph 120(b).

15:08:07  5              THE COURT:  Hold on, my exhibit -- I don't know

15:08:11  6    what this is.

15:08:15  7              MR. BLUMENFELD:  It's Exhibit 13 which is

15:08:17  8    plaintiff's statement of intended proof.

15:08:31  9              THE COURT:  Okay.  What paragraph?

15:08:33 10              MR. BLUMENFELD:  At the very bottom of the page

15:08:34 11    they list the relief they're seeking.  And paragraph B says

15:08:39 12    --

15:08:39 13              THE COURT:  I'm sorry, which page?

15:08:41 14              MR. BLUMENFELD:  Page 16.  Sorry, Your Honor.

15:08:44 15    Says an order requiring defendants to pay royalties, an

15:08:50 16    accounting pre and post-trial judgment interest,

15:08:53 17    supplemental damages, incidental damages and/or attorney's

15:08:58 18    fees and costs and other monetary compensation as an

15:09:02 19    equitable remedy.  And they have never disclosed this.

15:09:06 20    Their position they've always taken is it can't be

15:09:09 21    calculated.  Now they're saying oh, we're going to seek

15:09:13 22    damages, including I don't know what other monetary

15:09:16 23    compensation means.  If you look up damages in the legal

15:09:20 24    dictionary, it probably says monetary compensation.  If they

15:09:24 25    were going to put forth some kind of a damages theory, now I

15:09:29  1   don't think they have a right to do it later, we may end up

15:09:33  2   briefing that, but we're going to have a trial

15:09:36  3   December 16th, I would have thought that was the time to do

15:09:38  4   it and they didn't do it.  I don't think they get to come in

15:09:41  5   and say oh, if we win, then we'll put in the evidence that

15:09:46  6   we didn't give you before the jury trial.  I wanted to bring

15:09:50  7   that to your attention, they're not going to try to put in a

15:09:53  8   damages case on December 16th --

15:09:55  9          THE COURT:  No.  And presumably when I look at

15:09:58 10   any equitable relief that's requested I can either see what

15:10:03 11   they're asking you to do and come up with a number, not

15:10:07 12   withstanding that they told me monetary damages are not --

15:10:11 13   or I can say that it's been waived or some other equitable

15:10:16 14   reason I don't have to do that at their request because of

15:10:19 15   the positions that they have taken in this case.

15:10:23 16          But those are all issues that I don't think

15:10:25 17   we're going to address today.

15:10:27 18          MR. BLUMENFELD:  And we will undoubtedly be

15:10:29 19   taking the position that they can't raise that.

15:10:34 20          THE COURT:  Okay.

15:10:35 21          MS. DUNN:  Your Honor, on the list of things

15:10:38 22   that can't be addressed today, but based on the

15:10:42 23   representation of the plaintiffs of what they will not be

15:10:46 24   arguing with respect to harm and their acknowledgment that

15:10:50 25   harm is an element, I don't know that just alleging a

15:10:54  1   breach, which is basically what they're saying they're going

15:10:58  2   to do and having that suffice to harm is legally sufficient.

15:11:02  3          THE COURT:  Well, I think that there is enough

15:11:05  4   here to allow me to let them go to a jury and assert that

15:11:09  5   they have suffered harm.  So you're not getting summary

15:11:14  6   judgment today.  I understand what you're saying, but I

15:11:17  7   think in terms of saying things like reputational harm or

15:11:22  8   whatever, that there is enough that they can go to a jury.

15:11:25  9   So that's where I am on that.

15:11:27 10          MS. DUNN:  Okay.  I just want to make sure I put

15:11:29 11   the argument on the record because I don't know that under

15:11:32 12   the case law that that is true.

15:11:35 13          THE COURT:  Then appeal my denial of the summary

15:11:38 14   judgment that you just made right here.

15:11:41 15          Okay.  Now, other issues in the pretrial order.

15:11:48 16   I think that's all the motions in limine and Daubert --

15:11:51 17   Daubert's I haven't given you my order yet, the one I had a

15:11:56 18   question on.

15:11:56 19          Okay.  So then other issues.  The pending

15:12:10 20   motions, I don't think there are any pending motions here

15:12:14 21   except for the Daubert's, which I'll get you out soon.

15:12:20 22   Summary judgment I have resolved.  I'm denying it to the

15:12:24 23   extent that you don't think I already have.  And there was a

15:12:30 24   motion to compel or something, and I'm not granting that

15:12:37 25   either.

15:12:37  1          Okay.  Paragraph 11, settlement efforts.  I know

15:12:44  2   that I ordered you all to engage in discussions.  I know

15:12:50  3   it's not time yet for you to get back to me, but where are

15:12:54  4   we?

15:12:56  5          MR. OLSON:  Your Honor, the CEOs of ARM and

15:13:00  6   Qualcomm met on November 14th for as I understand it about

15:13:07  7   two hours with the general counsels as well.  Following that

15:13:13  8   executives are having discussions this week and we will be

15:13:17  9   more than happy to provide a follow-up on November 27th as

15:13:23 10   previously ordered.  I don't have more either as to

15:13:27 11   substance or otherwise that I can say.

15:13:29 12          THE COURT:  That's okay.  I don't need the

15:13:31 13   substance.  Where did they meet?

15:13:34 14          MR. OLSON:  They met in Palo Alto, actually in

15:13:39 15   Morrison Foerster's office, by agreement of the parties, the

15:13:42 16   outside counsel were not present.

15:13:43 17          THE COURT:  Okay.  Anything that the defendants

15:13:46 18   need to add to that?

15:13:47 19          MS. DUNN:  No, Your Honor.

15:13:48 20          THE COURT:  All right.  I expect those to

15:13:50 21   continue.

15:13:51 22          All right.  Paragraph 13, plaintiff's issues of

15:13:59 23   fact on whether defendants have been unjustly enriched and

15:14:05 24   ARM is entitled to royalties or disgorgement.

15:14:20 25          MS. DURIE:  I apologize, Your Honor.  Your Honor

15:14:22  1    is on --

15:14:23  2              THE COURT:  Paragraph 13 is plaintiff's issues

15:14:26  3    of fact.  When we looked through those in Exhibit 2, we had

15:14:31  4    questions about the assertion of unjust enrichment, which I

15:14:37  5    don't recall ever hearing about before, or disgorgement.

15:14:43  6              MS. DURIE:  I think the short answer is that

15:14:46  7    those would be issues, equitable issues for the --

15:14:52  8              THE COURT:  When did you think we were going to

15:14:54  9    deal with these equitable issues?

15:14:57 10              MS. DURIE:  I think, Your Honor, that the

15:14:59 11    parties at least are in agreement that it would make sense

15:15:04 12    following the jury verdict to set a further date to appear

15:15:08 13    in front of Your Honor and present any additional evidence

15:15:13 14    that bore on the remedies question.

15:15:35 15              THE COURT:  Okay.

15:15:40 16              MS. DUNN:  Your Honor, our position would be as

15:15:42 17    Mr. Blumenfeld said, these desired remedies were not pled.

15:15:58 18              THE COURT:  Okay.  I don't know what I'm

15:16:00 19    supposed to do.  I have no idea if they were pled.  Nobody

15:16:06 20    -- what am I supposed to do here?  When is it that you all

15:16:11 21    think I'm going to deal with this?  Like you're just going

15:16:15 22    to what -- first of all, if we need to deal with the

15:16:19 23    equitable issues, I typically deal with equitable issues in

15:16:23 24    the evenings while the jury is out during the time that

15:16:25 25    we're having a trial.  So you need to figure out how that

15:16:30 1  would work in this case.  And then if there is something

15:16:39 2  where you say well, we need the jury verdict in order to do

15:16:42 3  it, then how much time do you think you're going to need?

15:16:51 4  Because we ought to schedule it right now.  We can do it

15:16:55 5  right now.  So normally I would say we'll hear any equitable

15:17:00 6  issues in the evening after the jury leaves.  How's that

15:17:08 7  work?

15:17:09 8          MS. DUNN:  Your Honor, I think what the parties

15:17:12 9  had discussed, which I don't know if this is what the Court

15:17:18 10 is talking about, when it talks about equitable issues, that

15:17:22 11 if there is a jury verdict, there would be a remedies phase

15:17:25 12 to discuss specific performance.

15:17:27 13         THE COURT:  Yes.  But assume that there might be

15:17:31 14 other equitable issues, like I find based on the letters

15:17:34 15 that you're going to submit that unclean hands doesn't go to

15:17:38 16 the jury, it comes to me, that I allow for some of these

15:17:42 17 other disgorgement, whatever, I don't know, can we then do

15:17:51 18 those issues -- if the only issue is specific performance

15:17:54 19 that requires the jury, any other issues that I determine to

15:17:58 20 be equitable based on these letters, can we do those in the

15:18:02 21 evenings after the jury leaves?

15:18:04 22         MS. DUNN:  Your Honor, I think -- I have no

15:18:07 23 objection to that, but I think part of what's going on here,

15:18:11 24 and the parties I'm sure are at fault for this, is there are

15:18:15 25 things in these filings that -- where there is not agreement

15:18:19 1    that there should be on a decision on them at all because

15:18:23 2    they weren't pled so that is an issue --

15:18:25 3            THE COURT:  When did you think you were going to

15:18:28 4    raise that with me?  Truly, I'm like lost, you keep raising

15:18:33 5    new stuff to me, so when did you think you were going to

15:18:37 6    deal with this?

15:18:38 7            MS. DUNN:  Your Honor --

15:18:39 8            THE COURT:  You're just going to wait until

15:18:42 9    what, I set a hearing in April and then you could brief some

15:18:45 10   more?  No.

15:18:46 11           MS. DUNN:  I understand.

15:18:46 12           THE COURT:  No.  You guys can't do this

15:18:49 13   piecemeal stuff.  Okay?  So what's your plan because this

15:18:54 14   all has to be done.  You will have -- for equitable relief,

15:19:01 15   you have -- your options are the day after -- the evenings

15:19:05 16   after whatever, and then I have time on Thursday,

15:19:11 17   January 2nd, all day, and if necessary in the afternoon of

15:19:16 18   the 3rd.  So those are our times when we can do these

15:19:21 19   things.  Those are our times.  Tell me what your proposal is

15:19:25 20   to figure out what we're deciding in those times.

15:19:29 21           MS. DUNN:  Well, Your Honor, my proposal having

15:19:31 22   not consulted with the client on availability, but I'm not

15:19:35 23   going to make it anyway is to accept Your Honor's

15:19:38 24   January 2nd and 3rd time because that will also allow for us

15:19:43 25   to have a discussion with the other side about what should

15:19:47  1   not -- and potentially brief the Court on what does not have

15:19:51  2   to be decided at all because it was put into the PTO within

15:19:55  3   the last week.

15:19:56  4            THE COURT:  So just so you know, I let my

15:20:00  5   chambers have off from the 23rd until the 1st.  So when I

15:20:10  6   say I let them have off, I'm not making them deal with our

15:20:14  7   motions.

15:20:15  8            MS. DUNN:  Understood.

15:20:16  9            THE COURT:  So I need a motion, I need you to

15:20:18 10   tell me when --

15:20:19 11            MS. DUNN:  We can confirm this by next week.  I

15:20:23 12   think the question is -- you know, I want to give the Court

15:20:28 13   whatever room the Court wants.  Nobody expects anybody here

15:20:31 14   to work between the 23rd and the 1st certainly, but I do

15:20:34 15   think we would like to brief the issues of what have been

15:20:37 16   put in here as sort of a last minute that were not pled that

15:20:40 17   have not been litigated so the Court does not have to decide

15:20:44 18   those issues at night during a trial, our proposal --

15:20:47 19            THE COURT:  This is what I am going to do.  You

15:20:50 20   can Friday, you can have three pages to tell me what issues

15:20:56 21   you think -- actually, let's just start with this so I don't

15:21:01 22   have to wait until Friday.  What issues do you think are

15:21:04 23   going to the jury?

15:21:08 24            Plaintiff?

15:21:09 25            MS. DURIE:  ARM's claim for breach of the NuVia

15:21:17 1    ALA by NuVia and Qualcomm.  And NuVia and Qualcomm's

15:21:27 2    defenses to that breach.

15:21:29 3            THE COURT:  Okay.  Don't get to defenses.  Your

15:21:33 4    only claim is breach?

15:21:34 5            MS. DURIE:  Correct.

15:21:35 6            THE COURT:  You say NuVia breached by not

15:21:38 7    getting your approval when it did the triangular merger,

15:21:43 8    right?

15:21:44 9            MS. DURIE:  Yes.

15:21:44 10           THE COURT:  And that somehow you were damaged

15:21:49 11   and then Qualcomm breached by using that technology in an

15:21:54 12   unlicensed manner and I guess it was -- somebody said it was

15:21:57 13   supposed to be destroyed.

15:21:59 14           MS. DURIE:  Both NuVia and Qualcomm breached in

15:22:02 15   our view by closing the transaction.

15:22:05 16           THE COURT:  Okay.

15:22:05 17           MS. DURIE:  And continuing to use ARM

15:22:08 18   confidential --

15:22:08 19           THE COURT:  Okay.  That's your claim.  What

15:22:10 20   defenses, whether I agree or not, but tell me what defenses

15:22:16 21   you believe should be going to the jury even though

15:22:19 22   understand I may say some of them are equitable.

15:22:23 23           MS. DUNN:  First of all, the 16.3 breach was not

15:22:26 24   pled, and is also -- there is no remedy for it that the

15:22:33 25   plaintiffs have sought so our view what is going to the jury

15:22:38  1   is the breach of 15.1 which is the termination provision,

15:22:44  2   that is as to both NuVia and Qualcomm.

15:22:48  3        And then with respect to our defenses, we

15:22:53  4   believe that it is going to the jury whether we proved that

15:22:59  5   our CPUs are licensed under Qualcomm's ALA and whether we

15:23:05  6   proved that ARM's statements that the Qualcomm ALA expires

15:23:09  7   in 2025 are false.  And those were our DJ claims.

15:23:16  8        But this is one reason I thought the Court might

15:23:19  9   like briefing is that there is some -- the idea that the

15:23:23 10   16.3 is now a breach claim with a remedy that was pled is

15:23:29 11   not true.

15:23:30 12        THE COURT:  Yes.  But where does unclean hands

15:23:32 13   fall into this?  You're just telling me what you think are

15:23:35 14   issues.  I don't know what the claims are.  Like they have a

15:23:38 15   breach of contract claim, you have a we didn't breach

15:23:43 16   defense.  I don't know what these other things are.  You

15:23:45 17   have a license defense.  Is that a license defense to a

15:23:48 18   breach of contract that you didn't breach?  I don't know.

15:23:53 19        MS. DUNN:  Yeah, Your Honor, is the answer.  And

15:23:56 20   I mean, on our verdict form we have the 15.1 breach between

15:24:02 21   -- as to Qualcomm and as to NuVia, both companies.  We have

15:24:05 22   a question that gets to unclean hands, which is whether we

15:24:11 23   have proven that ARM acted towards Qualcomm in such a way

15:24:15 24   that ARM -- that the relief it seeks should be denied, the

15:24:19 25   relief that it seeks.  We have a question --

15:24:22  1          THE COURT:  Hold on.  Originally you said 15.1,

15:24:26  2   CPUs licensed under the Qualcomm and ARM's statements are

15:24:30  3   false.

15:24:30  4          MS. DUNN:  I apologize.

15:24:32  5          THE COURT:  I don't know, now you're talking

15:24:34  6   about unclean hands based on facts that I don't know what

15:24:38  7   the basis for those are.  These are the basis of unclean

15:24:41  8   hands or unclean hands is somehow different and I find it

15:24:44  9   really kind of frustrating that we're at a pretrial

15:24:48 10   conference and you guys haven't talked about what's in this

15:24:51 11   case.  And to the extent that they raised issues that are in

15:24:54 12   the pretrial order that you said they didn't raise, I don't

15:24:57 13   know what you were keeping it a secret for.

15:24:59 14          MS. DUNN:  I understand, Your Honor.

15:25:01 15          THE COURT:  I still -- I'm lost.  15.1.

15:25:03 16          MS. DUNN:  So with respect to the defenses that

15:25:08 17   we believe go to the jury, unclean hands.

15:25:13 18          THE COURT:  Based on?

15:25:14 19          MS. DUNN:  Factually based on or based on?

15:25:17 20          THE COURT:  What is the basis of your unclean

15:25:19 21   hands defense?  What did they do?

15:25:22 22          MS. DUNN:  First of all, they waited a year to

15:25:28 23   terminate.  During that year they used the threat of

15:25:32 24   termination to try to negotiate up their royalty rates.

15:25:38 25   They interfered with our customers.  They told Samsung that

15:25:41  1    our license would expire.  They -- I won't go into all the

15:25:49  2    internal documents that we have from ARM, but it's clear

15:25:54  3    what was going on, that they slow rolled the negotiations on

15:25:58  4    purpose.  So there is a whole host of unclean hands facts

15:26:05  5    that support this defense.

15:26:07  6            Some of those facts similarly support the waiver

15:26:10  7    defense because ARM acted as if -- I should say as an

15:26:19  8    antecedent matter.  Qualcomm even before the merger closed

15:26:22  9    or the acquisition closed alerted ARM that it would be

15:26:27 10    preceding under the Qualcomm ALA with the NuVia employees,

15:26:32 11    it was very clear, and that was a year before the contract

15:26:35 12    was terminated.

15:26:36 13            THE COURT:  Okay.  Okay.  Fine, unclean hands

15:26:39 14    based on whatever you just said.  Waiver based on the fact

15:26:42 15    that they waited a year.  What else do you think is going to

15:26:45 16    the jury?

15:26:46 17            MS. DUNN:  And then that we are licensed under

15:26:50 18    our license agreement.  And then our declaratory judgment

15:26:57 19    request about ARM's statements to our license -- to our

15:27:01 20    customer that our license would expire is false.

15:27:06 21            THE COURT:  That's it?

15:27:07 22            MS. DUNN:  I believe that's it, unless somebody

15:27:09 23    here tells me I'm forgetting something.  I'm sorry, ARM's

15:27:14 24    failure to perform under the NuVia ALA, which we would

15:27:18 25    elicit evidence of that as a defense.  Obviously we're not

15:27:23  1    bringing that as a separate claim.

15:27:28  2            THE COURT:  Okay.  So you are then on Friday

15:27:34  3    going to submit to me three pages that tell me why unclean

15:27:39  4    hands and waiver and anything else that may be equitable is

15:27:42  5    not equitable.  And you can have until the end of the day

15:27:48  6    Monday to respond, plaintiff.  And then what other equitable

15:28:00  7    issues would there be based on any possible decision by the

15:28:06  8    jury?

15:28:08  9            MS. DURIE:  I think the additional issues are

15:28:11 10    all remedies issues.  We do believe that we have pled a

15:28:18 11    request both for specific performance and for various other

15:28:22 12    categories of relief incidental to that request.  But all of

15:28:26 13    those would be remedies issues for the Court.

15:28:29 14            THE COURT:  Okay.  So then what we're going to

15:28:32 15    do is you guys need to talk and you need to identify to them

15:28:37 16    what you think has not been properly pleaded and then when

15:28:42 17    they tell you what those things are, you can send me three

15:28:45 18    pages that say no, here they're pleaded.

15:28:50 19            MS. DURIE:  Right.

15:28:51 20            THE COURT:  Okay.  And then you can respond by

15:28:53 21    the end of the day Monday to that.

15:28:54 22            MS. DUNN:  Understood, Your Honor.  Thank you.

15:28:57 23            THE COURT:  And I am toying with the idea

15:29:01 24    depending on whether this is -- many of these issues are, in

15:29:08 25    fact, equitable that we may just have a four-day jury trial

15:29:12  1    and one of those days will be equitable issues.  But it may

15:29:17  2    also be that I deal with the other equitable issues during

15:29:23  3    the trial and then we can deal with any specific performance

15:29:28  4    issues on the 2nd.  But I need to figure that out once I see

15:29:34  5    your submissions.

15:29:39  6              Okay.  Exhibits.  There was something that I saw

15:29:51  7    that suggested somebody wanted to submit an edited exhibit

15:29:59  8    list or something.

15:30:03  9              MS. YING:  Your Honor, the parties have

15:30:05 10    continued to confer since the filing of the PTO on the 13th

15:30:08 11    and I believe both sides have updates to their exhibit lists

15:30:13 12    as well as their deposition designations that they have

15:30:16 13    exchanged with each other so we would just need to get those

15:30:19 14    into the version of the PTO that Your Honor has, whether we

15:30:24 15    do that via a revised --

15:30:28 16              THE COURT:  Why weren't they included?  I mean,

15:30:30 17    it's a pretrial order.  I don't usually allow for -- I mean,

15:30:35 18    why -- it's kind of a waste of my time to have to deal with

15:30:39 19    a pretrial order and then we have like other little bits of

15:30:43 20    it in a different portion of the record.  So why weren't --

15:30:48 21    why wasn't this done before?

15:30:50 22              MS. YING:  I think, Your Honor, to be frank I

15:30:52 23    think the parties have continued to confer on outstanding

15:30:56 24    issues.

15:30:56 25              THE COURT:  But conferring suggests that you

15:30:58  1    would lessen the exhibits and the deposition designations.

15:31:01  2    I'm getting the feeling that you're adding.

15:31:04  3              MS. YING:  I believe there may have been

15:31:07  4    additions as well as deletions.  I can't speak to both of

15:31:10  5    them.

15:31:10  6              THE COURT:  Why do I let that happen?

15:31:13  7              MS. YING:  I think, Your Honor, we've made these

15:31:16  8    edits in good faith and have been agreed upon, so I think,

15:31:20  9    you know, the parties would like to submit that universe to

15:31:25 10    Your Honor if Your Honor would allow us to do so.  And I'll

15:31:30 11    let anyone from ARM speak as well, I think Mr. --

15:31:34 12              THE COURT:  I don't understand.  It's not

15:31:36 13    supposed to be a piecemeal thing.  What are you doing?  Why

15:31:40 14    wasn't it in there first?  What's the big pause?

15:31:45 15              MR. HUTTINGER:  I think in large part the

15:31:46 16    changes to the exhibit list are things like fixing,

15:31:50 17    correcting end Bates numbers and are not terribly

15:31:54 18    substantial.

15:31:55 19              THE COURT:  You don't really need to do it, do

15:31:56 20    you, if you all agree?  What's the big deal?

15:32:00 21              MR. HUTTINGER:  There are a handful of

15:32:01 22    supplemental exhibits.

15:32:02 23              THE COURT:  Why weren't they included?

15:32:04 24              MS. YING:  I think what happened to be frank, I

15:32:06 25    think the parties were looking at -- for example, I know

15:32:09 1    there are some things, some of the expert reports they were

15:32:11 2    trying to figure out if they had the correct date ranges and

15:32:15 3    we may or may not have realized paper copies of things were

15:32:18 4    sent.  There were continuing discussion about these that we

15:32:22 5    flagged to basically sort out after the 13th whether the PTO

15:32:26 6    was due and it was not intended to --

15:32:29 7                THE COURT:  No, the problem I have is then when

15:32:31 8    I have to look at a pretrial order and there is an issue, I

15:32:35 9    have to go find other portions, that's why I expect people

15:32:39 10   to do what they need to do and give me a pretrial order that

15:32:42 11   is the universe of what they intend to include.  And I don't

15:32:49 12   want a -- if you're going to say give me another 900 page

15:32:53 13   pretrial order if that was going to be the suggestion.

15:32:55 14               MS. DURIE:  I was going to suggest that we

15:32:58 15   submit an amended pretrial order that replaced this with the

15:33:03 16   additional exhibits.

15:33:06 17               THE COURT:  Yeah, that's an additional 900 page

15:33:09 18   document which I could live without.  Thanks.  So I am not

15:33:13 19   hearing that this is anything that's terribly important, so

15:33:18 20   is it important?  And if so, tell me what these things are

15:33:22 21   that are so important now that you need them but they

15:33:25 22   weren't so important that you cared enough to put them in

15:33:28 23   originally.

15:33:30 24               MS. NYARADY:  Your Honor, I want to say with

15:33:32 25   respect to the deposition designations, the additions there

15:33:35  1    have to do with the fact that the parties conferred after

15:33:38  2    the filing of the pretrial order in an effort to whittle

15:33:43  3    down the witness list and some of the will calls moved off,

15:33:47  4    some of the may calls moved off necessitating some of the

15:33:50  5    additional designations for people that perhaps are no

15:33:53  6    longer coming to trial.  And there was a paragraph in the

15:33:56  7    pretrial order that I think is in dispute that relates to

15:33:59  8    this as well in terms of this, so it would be important for

15:34:02  9    us to update those designations, but it's an effort by the

15:34:06 10    parties to streamline who is really being called live.

15:34:11 11            THE COURT:  That's what I needed.  Thank you.

15:34:12 12    You may do that.

15:34:13 13            MS. NYARADY:  Thank you, Your Honor.

15:34:14 14            THE COURT:  You may do that.  But I don't want a

15:34:17 15    whole new pretrial order and what you need to do is you need

15:34:21 16    to work with Ms. Welham to have those things added to or

15:34:26 17    swapped out in the pretrial order because I don't want parts

15:34:30 18    of it in all different places.

15:34:32 19            MS. NYARADY:  Thank you, Your Honor.

15:34:33 20    Understood.

15:34:33 21            THE COURT:  Okay.  Paragraph 39.  Documents.

15:35:10 22    Defendant, can you help me understand what the point of your

15:35:12 23    proposal was.  I don't know that I care, but I don't really

15:35:17 24    understand what the point is.

15:35:19 25            MS. NYARADY:  Yes, Your Honor.  Thank you.  So

15:35:21 1    this, I think as a practical matter it probably has no

15:35:25 2    impact, but we did not want to have a stipulation in the

15:35:29 3    pretrial order that said that documents that were produced

15:35:33 4    by a party are deemed to be business records of that party

15:35:36 5    because we produced all of the documents with a Qualcomm

15:35:41 6    Bates number.  Some of the documents are NuVia business

15:35:44 7    records, some of them are Qualcomm business records, so we

15:35:48 8    were trying -- and I appreciate that maybe the language

15:35:52 9    didn't serve its purpose if it's not understandable, but I

15:35:55 10   was trying to get across that it is a business record for

15:35:58 11   the party that created the document.  So the requirements of

15:36:03 12   being created in the regular course of business activity and

15:36:06 13   that they were kept by the business, we wanted to make it

15:36:10 14   clear that the NuVia documents are not Qualcomm business

15:36:14 15   records and vice versa.  I think where this really comes up

15:36:17 16   is more in a 602 issue depending on which witness they try

15:36:21 17   to use it with which document was created.  I don't think it

15:36:25 18   impacts how the trial is going to go, but I just wanted to

15:36:29 19   be clear on the record that we can't enter into a

15:36:31 20   stipulation that every document produced with a Qualcomm

15:36:35 21   Bates number in the litigation as Qualcomm business record.

15:36:39 22            THE COURT:  It could have come in NuVia.

15:36:42 23            MS. NYARADY:  Correct.

15:36:43 24            THE COURT:  What's the problem with that?

15:36:44 25            MS. DURIE:  My concern is we didn't understand

15:36:46  1    what the practical important of this was.  Qualcomm produced

15:36:50  2    all of these documents so they were all maintained by

15:36:52  3    Qualcomm.  We do understand that some of them were created

15:36:55  4    at NuVia.  It wasn't clear to us what distinction the

15:36:58  5    defendants were trying to draw or for what purpose.

15:37:01  6              THE COURT:  Did you ask?

15:37:03  7              MS. DURIE:  I did not personally participate in

15:37:06  8    the meet and confer.

15:37:08  9              THE COURT:  I mean, that's silly.  Right?  You

15:37:15 10    submit this to me, we had to spend our time looking at this,

15:37:17 11    we had to spend our time trying to figure out what this

15:37:21 12    meant and you don't even know, you don't even bother to talk

15:37:24 13    to each other.  That's just kind of -- that's not very

15:37:28 14    respectful of anyone's time but your own.

15:37:31 15              MS. NYARADY:  Your Honor, we did discuss this at

15:37:33 16    the meet and confer.  I was on the meet and confer.  I want

15:37:37 17    to say what I told you, I told ARM, I want to make that

15:37:40 18    clear.  We are not trying to disrespect the Court's time.  I

15:37:43 19    made it clear that I thought there was no practical impact

15:37:46 20    to the trial.  We were preserving because we had different

15:37:49 21    parties and different business records.

15:37:50 22              THE COURT:  All right.  Defendants' proposals

15:37:54 23    are accepted.

15:38:05 24              Paragraph 48 on demonstratives.

15:38:11 25              MS. DURIE:  We have resolved that one, Your

15:38:13  1    Honor.

15:38:13  2             THE COURT:  There is no dispute?

15:38:15  3             MS. DURIE:  Correct.

15:38:15  4             THE COURT:  You say absent agreement

15:38:17  5    demonstratives are illustrative.  I'm saying they're not

15:38:21  6    evidence even if you agree to it.

15:38:23  7             MS. DURIE:  Understood.

15:38:25  8             THE COURT:  Paragraph 51 and 52 on witness

15:38:32  9    lists.  Is there an issue on this one?

15:38:41 10             MR. FUNG:  Yes, Your Honor.  Nicholas Fung on

15:38:46 11    behalf of plaintiff, ARM.  The first issue, we object to

15:38:49 12    Qualcomm's identification of a witness named Nick Jones.

15:38:53 13    Nick Jones was never included on any of Qualcomm's initial

15:38:56 14    disclosures.  We found out for the first time a few weeks

15:38:59 15    ago that Qualcomm intended to call him at trial when they

15:39:02 16    added him to their initial witness list.  We spoke to

15:39:04 17    Qualcomm about this and they pointed us to an interrogatory

15:39:08 18    response, a supplemental interrogatory response where

15:39:11 19    Mr. Jones was listed along with seven other witnesses as

15:39:14 20    having knowledge in response to that interrogatory.  That's

15:39:16 21    not sufficient at all to provide us notice that they were

15:39:19 22    calling Mr. Jones at trial.

15:39:21 23             There is case law supporting the proposition

15:39:23 24    that simply mentioning a witness in a rog response does not

15:39:27 25    provide notice that that witness be called at trial.  We

15:39:31  1    believe Mr. Jones should be precluded from testifying.  So

15:39:34  2    that's one of the issues.

15:39:35  3             The other issue is Qualcomm has objected to ten

15:39:39  4    of our witnesses, or may call witnesses because they were

15:39:42  5    never deposed.  And we narrowed this dispute quite a bit on

15:39:47  6    Monday.  We've agreed not to call four of those ten

15:39:50  7    witnesses and today we can agree not to call five of the

15:39:54  8    remaining six of the witnesses.  We would like to reserve

15:39:57  9    our ability to call Mr. Jeff Defilippi.  Mr. Defilippi was

15:40:05 10    disclosed on our initial disclosures.  Qualcomm did have a

15:40:08 11    chance to depose him during fact discovery, they chose not

15:40:12 12    to, and they still oppose Mr. Defilippi.  They requested a

15:40:17 13    deposition of him.  We don't think they're entitled to it.

15:40:21 14             THE COURT:  When did they ask for a deposition

15:40:23 15    of him?

15:40:24 16             MR. FUNG:  During the pretrial order.

15:40:25 17             THE COURT:  But never did before?

15:40:27 18             MR. FUNG:  No Your Honor.

15:40:28 19             THE COURT:  It was in your Rule 26 disclosures?

15:40:30 20             MR. FUNG:  Yes, the third amended Rule 26

15:40:32 21    disclosers.  With that being said to moot this dispute, if

15:40:35 22    Qualcomm would agree not to call Mr. Jones, we will agree

15:40:39 23    not to call Mr. Defilippi, but if they intend to present

15:40:44 24    Mr. Jones, we don't think they're allowed, we would want to

15:40:49 25    call Mr. Defilippi.

15:40:51 1          Thank you.

15:40:51 2          THE COURT:  Okay.

15:40:52 3          MS. NYARADY:  Your Honor, with respect to Nick

15:40:57 4  Jones, he was not only identified in an interrogatory

15:41:01 5  response, but he was also identified at the deposition of

15:41:08 6  Ms. Voss back in November of 2023.  And under the law, we

15:41:14 7  think that is sufficient.  The rules specifically says that

15:41:18 8  you have a duty to supplement if the person is not otherwise

15:41:22 9  identified through discovery.  And, in fact, when you go to

15:41:26 10 the committee notes it specifically says that there is no

15:41:30 11 obligation to supplement, for example, when a witness is

15:41:36 12 disclosed during the taking of a deposition.  But we

15:41:40 13 understand he was not on the initial disclosures.  We think

15:41:43 14 he was disclosed as being involved.  He was identified at

15:41:46 15 the deposition and in the rog response for the same subject

15:41:49 16 matter.

15:41:49 17         THE COURT:  And the interrogatory response, that

15:41:52 18 wasn't like on the last day of fact discovery or anything?

15:41:55 19         MS. NYARADY:  No, it was not.  There were still

15:41:57 20 depositions taking place a month after that.  And so, you

15:42:01 21 know, we think that he ought to be allowed to testify at

15:42:04 22 trial.

15:42:07 23         THE COURT:  Okay.  So if he should be allowed to

15:42:10 24 testify at trial, why can't Mr. Defilippi --

15:42:15 25         MS. NYARADY:  So --

15:42:16  1              THE COURT:  -- who actually was disclosed in

15:42:19  2     Rule 26 disclosures.

15:42:20  3              MS. NYARADY:  He was disclosed in the Rule 26

15:42:22  4     disclosures for the limited purpose of the counterclaim that

15:42:25  5     we have dropped.  It was in April of 2024.  And we were not

15:42:29  6     able to take his deposition because by virtue of being

15:42:32  7     allowed to add that counterclaim we said we would only take

15:42:36  8     one 30(b)(6) deposition which is what we did.  They did not

15:42:39  9     put him up for that.  At the same time, Your Honor, to make

15:42:43 10     life easy, I don't object to him being at trial if we could

15:42:47 11     have a short trial deposition.

15:42:49 12              THE COURT:  Would you agree to a deposition of

15:42:50 13     Mr. Jones?

15:42:51 14              MS. NYARADY:  We absolutely would, Your Honor.

15:42:53 15              THE COURT:  How about that, I let you both

15:42:55 16     depose them pretrial?

15:42:57 17              MR. FUNG:  I mean, I want to make one

15:42:59 18     clarification.  Those interrogatory responses where

15:43:02 19     Mr. Jones was disclosed, it was three weeks before the fact

15:43:05 20     discovery, it was buried in the list of eight witnesses.  I

15:43:08 21     want to make --

15:43:09 22              THE COURT:  Buried seems a little dramatic for

15:43:12 23     eight.

15:43:13 24              MR. FUNG:  Understood, Your Honor.  Your

15:43:15 25     proposal allowing us to take a deposition of Mr. Jones, that

15:43:18  1    will be acceptable to us.

15:43:20  2                    THE COURT:  Okay.

15:43:24  3                    MS. NYARADY:  Your Honor, in terms of the

15:43:26  4    deposition, we would propose a couple of hours for each

15:43:28  5    witness.

15:43:29  6                    THE COURT:  You can both figure that out.

15:43:31  7                    MS. NYARADY:  Okay.

15:43:32  8                    THE COURT:  Paragraph 56, you can't agree on who

15:43:44  9    the corporate representative is, really?

15:43:51 10                    MS. NYARADY:  So Your Honor, subsequent to

15:43:53 11    having filed a pretrial order, we did exchange names with

15:43:57 12    respect to the corporate representatives.  We have no

15:44:01 13    objection.  We haven't heard from ARM as to whether they

15:44:05 14    have any objection, but I think perhaps this is resolved.

15:44:09 15                    MS. DURIE:  We do not.  I don't know that there

15:44:13 16    would be a basis for one, but we do not have one.

15:44:16 17                    THE COURT:  I am just going to strike -- I don't

15:44:21 18    even know what I'm doing with this paragraph at this moment,

15:44:24 19    but the parties may each have a corporate representative sit

15:44:28 20    at the table.  And experts are not excluded from the

15:44:32 21    courtroom.  And I don't care if there is agreement on who

15:44:40 22    the corporate representatives are, but if you have one,

15:44:44 23    that's terrific.

15:44:45 24                    Okay.  68.  The witness will be called only

15:45:01 25    once.  There are so many words here with the -- what is the

15:45:08 1    crux of the dispute?

15:45:09 2              MS. DURIE:  Apologies.  We have included on our

15:45:12 3    witness list Gerard Williams, the former CEO of NuVia, now a

15:45:18 4    senior vice-president at Qualcomm.  We would intend to call

15:45:21 5    him in our case-in-chief adverse as we believe the rules

15:45:26 6    permit.  Qualcomm has objected to that.  And I do not

15:45:32 7    understand the basis for that objection and I will assure

15:45:35 8    the Court it is not for lack of asking, but we will let them

15:45:39 9    speak for themselves.

15:45:42 10             MS. NYARADY:  Your Honor, we had proposed a

15:45:47 11   different course of action where the witnesses will be

15:45:50 12   called only once, will be called by the sponsoring party and

15:45:54 13   allowing the other side to go beyond the scope in cross.

15:46:00 14   And we would propose leaving open ARM's case until

15:46:03 15   Mr. Williams testifies and they finish cross-examining him

15:46:08 16   so saving the JMOLs until after he testifies, we think it

15:46:12 17   would be more orderly.

15:46:14 18             And as part of trying to resolve this, we also

15:46:18 19   put in there that if this is adopted that the witness can be

15:46:24 20   -- any live witness can be presented by deposition and the

15:46:28 21   opposing party's presentation of their case.

15:46:31 22             THE COURT:  I am going to allow NuVia -- ARM to

15:46:34 23   call Mr. Williams in its case-in-chief and to the extent

15:46:39 24   that defendant wants to ask whatever it wants to ask in the

15:46:44 25   middle of that case-in-chief, defendants may.

15:46:48  1          MS. NYARADY:  So if I understand, Your Honor, we

15:46:50  2    can go beyond the scope for cross and put him on once, it

15:46:54  3    will just be in ARM's case, is that what you're saying?

15:46:57  4          THE COURT:  Yes.

15:46:58  5          MS. NYARADY:  And with respect to the video, we

15:47:00  6    would ask that if he's going to be called in their case that

15:47:03  7    they not be allowed to play video and present him in their

15:47:07  8    case.

15:47:09  9          THE COURT:  That seems fair.

15:47:10 10          MS. DURIE:  That's fine.

15:47:12 11          MS. NYARADY:  Thank you, Your Honor.

15:47:13 12          THE COURT:  Okay.  We already talked about 78

15:47:21 13    and 79, equitable stuff.  The trial order, I don't know what

15:47:43 14    the dispute is.

15:47:45 15          MS. DURIE:  I think this turns entirely on

15:47:47 16    whether the Court -- what the Court determines with respect

15:47:50 17    to the counterclaims and whether they are equitable or legal

15:47:55 18    and what gets tried to the jury.  I don't think there is any

15:47:59 19    other dispute other than that embedded in here.

15:48:01 20          THE COURT:  Okay.

15:48:02 21          MS. DUNN:  Your Honor, I agree with counsel on

15:48:04 22    that.  And we will brief this.  I want to say, though,

15:48:11 23    strongly that the law is that they are not equitable.  So --

15:48:15 24          THE COURT:  I don't care what you say, prove it.

15:48:18 25    Show me in your papers.  Okay?

15:48:19  1          MS. DUNN:  We will do so.

15:48:20  2          THE COURT:  You keep telling me that.  It's not

15:48:22  3  helpful.  It just makes me annoyed, and I rather not be

15:48:27  4  annoyed.  You promised me you're going to show me, I'll read

15:48:30  5  the case.

15:48:31  6          MS. DUNN:  Sounds good.

15:48:32  7          THE COURT:  You just saying I feel strongly

15:48:34  8  about it is kind of counterproductive and it makes both of

15:48:38  9  us feel bad right now.  Why don't you sit down and you can

15:48:41 10  submit your papers.

15:48:44 11          Length of trial.  I am going to hold off on that

15:48:49 12  until I make a determination as to what's going to go in

15:48:54 13  front of the jury.

15:48:56 14          Jury selection.  You all have agreed -- well, I

15:49:03 15  don't remember.  I have a bunch of trials coming up.  Have

15:49:08 16  you been asked if you'll agree to let a magistrate judge

15:49:12 17  pick the jury on the 12th or the 13th?

15:49:15 18          MS. DURIE:  Yes.  And I believe we have agreed

15:49:17 19  that we will.

15:49:19 20          MS. NYARADY:  Yes, Your Honor.

15:49:20 21          THE COURT:  Great.  Sealing the courtroom.

15:49:31 22  Generally if you want to seal the courtroom you have to meet

15:49:38 23  the standard from the Third Circuit which is a very

15:49:43 24  difficult standard to meet.  It's basically strict scrutiny

15:49:48 25  which means you probably lose.  If you do think that you can

15:49:53  1    meet that and you want the courtroom closed for some reason,

15:49:56  2    you must tell me in advance.  If you don't tell me in

15:50:01  3    advance, then I am definitely going to deny the request, and

15:50:07  4    either you won't be able to seal the courtroom or you won't

15:50:10  5    be able to if it's the other side's information use that in

15:50:14  6    the way that you want.

15:50:15  7              Why is all this stuff under seal for thirty days

15:50:29  8    after the conclusion of the trial?  I mean, we're going to

15:50:33  9    have exhibits that are shown up on the screen.  What's my

15:50:35  10   basis to say it's appropriate that those be sealed?

15:50:42  11             MS. DURIE:  I believe, Your Honor, this is a

15:50:44  12   reference to transcripts of sealed testimony and sealed

15:50:47  13   exhibits.  So it would provide time for the parties to

15:50:53  14   undesignate portions of those for public consumption.

15:50:58  15             THE COURT:  All right.  Thank you for that

15:50:59  16   clarification.  That's okay.

15:51:00  17             The parties may access the courtroom to set up

15:51:06  18   anything they want on Friday, December the 13th in the

15:51:09  19   afternoon.  Contact Mr. Buckson about that.

15:51:15  20             Paragraph 95.  At the pretrial conference, this

15:51:21  21   sounds ominous.  At the pretrial conference defendants would

15:51:24  22   like to discuss with the Court the process by which they may

15:51:27  23   work around a counsel conflict.

15:51:31  24             MR. BLUMENFELD:  Your Honor, we hope this won't

15:51:34  25   even come up, but we have an issue with an agreement by Paul

15:51:44  1   Weiss lawyers not to get into issues involving Apple.  I'm

15:51:48  2   not sure that there will be any issues involving Apple that

15:51:51  3   come up at trial, but if there is something that one of

15:51:54  4   their witness says about Apple, we would like to have the

15:51:58  5   opportunity to have Ms. Ying or I do the short part of that

15:52:02  6   cross-examination.  I don't think there is any opposition to

15:52:05  7   that.

15:52:07  8           MS. DURIE:  There is no objection to that.

15:52:10  9           THE COURT:  That sounds find.

15:52:13 10           MR. BLUMENFELD:  Thank you.

15:52:16 11           THE COURT:  So I have jury selection will take

15:52:25 12   place on the 16th, so apparently I'm just not familiar with

15:52:39 13   what's been done, if that's the case, then with respect to

15:52:41 14   the voir dire and the preliminary instructions, the voir

15:52:50 15   dire, plaintiffs have to bring copies for the jurors.  You

15:52:53 16   have to get them 24 hours, by noon the day before we're

15:52:57 17   going to select the jury which at this point would be the

15:53:00 18   12th.

15:53:04 19           On or before noon on Friday, December 13th, the

15:53:09 20   parties need to provide electronic versions of all trial

15:53:13 21   exhibits to the exhibit list to us in a single folder.  The

15:53:17 22   best way to do that is to get them to us on a flash drive,

15:53:20 23   but work with your IT departments and coordinate with

15:53:25 24   Mr. Buckson so we can have all trial exhibits electronically

15:53:28 25   on the first day of trial.  The exhibits need to be named

15:53:30  1  with their exhibit numbers, JTX, PTX, just say JTX 1, PTX 2,

15:53:40  2  so if I hit the files at top they'll come up in order.

15:53:44  3  Additionally as previously mentioned -- it wasn't previously

15:53:48  4  mentioned, but each morning the parties need to send an

15:53:51  5  e-mail to Mr. Buckson and Ms. Welham each trial day the

15:53:56  6  witness folders for each witness.  The witness folders

15:53:58  7  should contain the exhibits that would have otherwise gone

15:54:00  8  into a witness binder organized by exhibit number.  Also

15:54:04  9  include any demonstratives to be used with that witness.

15:54:08  10         And direct exams that are happening, to the

15:54:11  11  extent that there is going to be a cross binder that should

15:54:15  12  also be provided to me by flash drive, and in that one, if

15:54:19  13  you're going to use a deposition, include the deposition for

15:54:23  14  me.  You need to send the cross binders to me, but if you

15:54:28  15  don't want to send the cross binders to the other side until

15:54:31  16  the witness is called, that's fine.  And that's just because

15:54:34  17  we don't take paper copies of these things, so that way I

15:54:38  18  have them all in one place to pull things up if there is a

15:54:43  19  dispute.

15:54:45  20         Juror notebooks, if you guys agree on a set of

15:54:48  21  documents that the jury should have in binders, that's fine,

15:54:51  22  if you don't agree, then there are no jury binders.

15:54:54  23         You won't need to play the patent video, is that

15:55:00  24  right?

15:55:00  25         MS. DURIE:  I don't think so, Your Honor.

15:55:02  1          THE COURT:  That's just in here from a different

15:55:07  2  case.  That's good.  I don't know why you would want to.

15:55:11  3          Sorry.

15:55:14  4          After trial, I need for you to review the trial

15:55:18  5  transcript and submit any corrections to the court reporter

15:55:21  6  no later than two weeks after trial.  That way when we get

15:55:24  7  to post-trial briefs we don't have to deal with errata.

15:55:29  8          Juror lunches, have you guys talked about

15:55:35  9  whether you want to provide lunches for the jury?

15:55:37 10          MS. DURIE:  Yes.

15:55:38 11          THE COURT:  All right.  Thank you for that.  And

15:55:43 12  I think those were the issues that I had to discuss.

15:55:49 13  Anything else?

15:55:51 14          MS. DURIE:  Not for the plaintiff, Your Honor.

15:55:55 15          MS. NYARADY:  Your Honor, there were a couple of

15:55:57 16  disputes in the voir dire.  I don't know if you want to take

15:56:00 17  that up now.

15:56:01 18          THE COURT:  No.  I'm just going to decide those.

15:56:03 19  I don't need to hear anything more on those.  I generally

15:56:07 20  with respect to voir dire just do my normal.  And maybe if I

15:56:14 21  see something, but I did notice that the list of witnesses

15:56:28 22  went on for about three pages.  Are we really -- are all

15:56:34 23  those people really need to be on there?

15:56:37 24          MS. NYARADY:  I would think not, especially in

15:56:39 25  light of conversations that we had.

15:56:41  1       THE COURT:  Why don't you guys provide me with

15:56:43  2   an updated list that doesn't look quite so awful for jurors.

15:56:51  3       MS. NYARDY:  We will also make a change just to

15:56:53  4   take OUT the language that addresses the counterclaim that

15:56:55  5   has been dropped.

15:56:57  6       And the other last question I had, Your Honor,

15:56:59  7   was whether you want us -- we had listed every lawyer who

15:57:04  8   has touched this case for each of the firms.  Would you want

15:57:08  9   us to do that, because that list is quite long as well, or

15:57:11 10   do you only want lawyers who are going to appear before the

15:57:15 11   jury?

15:57:17 12       THE COURT:  So I would say only lawyers who

15:57:21 13   appear before the jury, or -- but that includes if they're

15:57:25 14   going to be in court even if they're not identified, or if

15:57:30 15   they are somehow identified in a deposition.  Sometimes it

15:57:36 16   will say Ms. Smith, just so that -- you know, the point of

15:57:40 17   that is just to make sure nobody knows them.  I don't think

15:57:44 18   it will be an issue.  It will be anyone who appears in court

15:57:48 19   whether they're speaking or not, and whether they're live or

15:57:52 20   on video.

15:57:53 21       MS. NYARADY:  Understood.  Thank you, Your

15:57:55 22   Honor.

15:57:56 23       THE COURT:  Anything else?

15:58:00 24       MS. NYARADY:  Not for the defendants.

15:58:01 25       THE COURT:  All right.  Thank you everyone.

15:58:05  1                    COURTROOM DEPUTY:  All rise.  Court is

15:58:07  2      adjourned.

3                       (Court adjourned at 3:58 p.m.)

4

5              I hereby certify the foregoing is a true and
accurate transcript from my stenographic notes in the proceeding.

6

7                                  /s/ Dale C. Hawkins
Official Court Reporter
8                                  U.S. District Court

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## $

**$100** [1] - 25:14
███ ██ █

## /

**/s** [1] - 77:7

## 1

**1** [4] - 7:20, 8:2, 24:11, 74:1
**11** [4] - 35:14, 35:21, 35:22, 48:1
**114** [1] - 23:17
**115** [1] - 23:18
**12** [2] - 36:12, 36:13
**120(b)** [1] - 45:4
**12th** [2] - 71:17, 73:18
**13** [8] - 15:5, 23:12, 35:14, 36:16, 44:25, 45:7, 48:22, 49:2
**137** [1] - 25:17
**138** [1] - 25:17
**13th** [5] - 58:10, 60:5, 71:17, 72:18, 73:19
**14th** [1] - 48:6
**15** [1] - 14:4
**15.1** [8] - 8:11, 8:15, 8:22, 9:20, 54:1, 54:20, 55:1, 55:15
**16** [3] - 15:1, 45:4, 45:14
**16.3** [2] - 53:23, 54:10
**16th** [3] - 46:3, 46:8, 73:12
**1A** [1] - 25:15
**1st** [2] - 52:5, 52:14

## 2

**2** [6] - 10:9, 15:1, 17:12, 26:20, 49:3, 74:1
**20** [1] - 1:12
**200** [2] - 19:4, 19:19
**2015** [1] - 33:8
**2022** [1] - 14:4
**2023** [1] - 66:6
**2024** [2] - 1:12, 67:5
**2025** [1] - 54:7
**21** [4] - 12:15, 12:16, 13:13, 14:4
**22-1146(MN** [1] - 1:6
**223** [1] - 12:18
**22nd** [6] - 10:10, 10:20, 11:19, 13:23, 14:20, 17:1
**23rd** [2] - 52:5, 52:14

**24** [1] - 73:16
**25** [1] - 15:8
**250** [2] - 13:16, 14:6
**26** [5] - 15:8, 65:19, 65:20, 67:2, 67:3
**27** [1] - 15:8
**27th** [1] - 48:9
**2:00** [1] - 1:13
**2nd** [3] - 51:17, 51:24, 58:4

## 3

**3** [4] - 7:22, 9:5, 18:16, 23:24
**30(b)(6** [1] - 67:8
**318** [1] - 14:12
**39** [1] - 61:21
**3:58** [1] - 77:3
**3rd** [2] - 51:18, 51:24

## 4

**403** [2] - 12:24, 24:23
**41** [1] - 23:13
**48** [1] - 63:24
**49** [1] - 7:12

## 5

██ ██ █
**51** [1] - 64:8
**52** [1] - 64:8
**56** [1] - 68:8
**585** [1] - 12:18

## 6

**6** [1] - 33:4
**602** [1] - 62:16
**68** [1] - 68:24

## 7

**7** [1] - 33:7
**72** [1] - 7:14
**78** [1] - 70:12
**79** [1] - 70:13

## 8

██ █
**80** [1] - 25:14
**844** [1] - 1:15
**89** [1] - 39:3

## 9

**900** [2] - 60:12, 60:17
**95** [1] - 72:20

## A

**Abby** [1] - 44:4
**ability** [6] - 17:9, 28:11, 28:15, 33:9, 38:13, 65:9
**able** [11] - 8:10, 27:3, 33:16, 34:3, 34:8, 41:20, 43:5, 43:7, 67:6, 72:4, 72:5
**absent** [1] - 64:4
**absolutely** [1] - 67:14
**accept** [2] - 33:12, 51:23
**acceptable** [1] - 68:1
**accepted** [1] - 63:23
**access** [1] - 72:17
**according** [4] - 37:16, 39:13, 39:15, 42:10
**accountant** [1] - 5:22
**accounting** [1] - 45:16
**accurate** [1] - 77:5
**accused** [1] - 22:2
**acknowledgment** [1] - 46:24
**acquisition** [9] - 15:4, 16:19, 22:21, 24:20, 24:25, 25:1, 25:3, 25:25, 56:9
**acted** [2] - 54:23, 56:7
**acting** [2] - 22:2, 22:4
**action** [5] - 25:7, 41:2, 42:20, 42:24, 69:11
**activities** [2] - 19:22, 20:6
**activity** [1] - 62:12
**actual** [1] - 25:5
**add** [2] - 48:18, 67:7
**added** [2] - 61:16, 64:16
**adding** [2] - 6:6, 59:2
**addition** [3] - 14:25, 15:8, 22:17
**additional** [5] - 49:13, 57:9, 60:16, 60:17, 61:5
**additionally** [1] - 74:3
**additions** [1] - 59:4, 60:25
**address** [7] - 17:16, 24:13, 25:9, 31:23, 36:1, 44:11, 46:17
**addressed** [1] - 46:22
**addresses** [1] - 76:4
**adequate** [2] - 29:3, 30:12
**adequately** [4] - 30:8, 30:10, 31:3, 31:20
**adjourned** [2] - 77:2, 77:3

**adopt** [2] - 7:12, 7:15
**adopted** [1] - 69:19
**advance** [3] - 7:2, 72:2, 72:3
**adverse** [1] - 69:5
**affect** [4] - 38:12, 38:13, 38:14, 38:22
**affects** [2] - 28:10, 33:11
**affirmatively** [1] - 21:16
**afternoon** [9] - 3:2, 3:5, 3:11, 3:12, 3:13, 3:21, 24:15, 51:17, 72:19
**ago** [1] - 64:15
**agree** [19] - 8:6, 9:1, 10:4, 17:8, 28:1, 29:20, 33:22, 53:20, 59:20, 64:6, 65:7, 65:22, 67:12, 68:8, 70:21, 71:16, 74:20, 74:22
**agreed** [12] - 4:14, 4:16, 7:12, 7:15, 8:4, 9:7, 13:17, 13:22, 59:8, 65:6, 71:14, 71:18
**agreement** [21] - 7:3, 7:10, 7:21, 7:22, 7:23, 8:21, 8:24, 10:13, 12:13, 14:8, 15:13, 15:14, 34:23, 39:1, 48:15, 49:11, 50:25, 56:18, 64:4, 68:21, 72:25
**agreements** [13] - 10:7, 22:5, 22:7, 23:10, 27:17, 27:19, 36:5, 37:23, 37:24, 38:22, 39:3, 43:7, 43:24
**al** [1] - 1:9
**ALA** [61] - 8:11, 9:14, 9:17, 9:19, 9:20, 10:2, 10:10, 11:4, 12:3, 13:9, 13:11, 13:15, 13:18, 13:20, 14:3, 14:7, 14:8, 14:13, 14:15, 14:17, 14:19, 15:3, 15:7, 15:22, 15:24, 16:5, 16:6, 16:21, 17:1, 19:16, 20:4, 20:18, 20:20, 20:21, 21:10, 21:16, 22:19, 23:1, 23:4, 23:8, 24:2, 24:6, 26:22, 27:14, 28:7, 28:15, 34:15, 34:18, 41:19, 43:12,

43:13, 43:23, 53:1, 54:5, 54:6, 56:10, 56:24
**ALA's** [7] - 20:7, 20:15, 27:14, 28:11, 31:13, 31:16, 33:1
**ALAs** [2] - 26:22, 26:23
**alerted** [1] - 56:9
**allegation** [1] - 40:2
**allegations** [4] - 10:15, 14:5, 14:19, 16:17
**alleged** [2] - 13:10, 31:20
**alleging** [2] - 14:21, 46:25
**allow** [10] - 17:4, 40:11, 40:14, 43:17, 47:4, 50:16, 51:24, 58:17, 59:10, 69:22
**allowed** [12] - 15:23, 39:11, 39:16, 40:25, 41:1, 41:15, 42:21, 65:24, 66:21, 66:23, 67:7, 70:7
**allowing** [2] - 67:25, 69:13
**Alto** [1] - 48:14
**ambiguity** [1] - 19:21
**amended** [2] - 60:15, 65:20
**American** [1] - 12:17
**amount** [6] - 18:17, 24:1, 24:19, 25:16, 25:24, 26:8
**amounts** [3] - 19:25, 20:23, 22:19
**ANNA** [1] - 2:16
**ANNE** [1] - 1:23
**Anne** [1] - 3:5
**annoyed** [2] - 71:3, 71:4
**answer** [5] - 13:12, 27:12, 31:7, 49:6, 54:19
**antecedent** [1] - 56:8
**anticipate** [1] - 14:22
**anyway** [1] - 51:23
**apologies** [1] - 69:2
**apologize** [2] - 48:25, 55:4
**appeal** [1] - 47:13
**appear** [4] - 24:4, 49:12, 76:10, 76:13
**APPEARANCES** [2] - 1:21, 2:1
**Apple** [8] - 9:6, 9:11, 9:16, 9:25, 38:7, 73:1, 73:2, 73:4

**applies** [1] - 20:7
**appreciate** [4] - 3:24, 4:22, 27:2, 62:8
**appropriate** [1] - 72:10
**approval** [1] - 53:7
**April** [2] - 51:9, 67:5
**argue** [6] - 8:21, 9:18, 17:9, 20:2, 21:3, 43:18
**argues** [1] - 32:25
**arguing** [5] - 15:25, 17:5, 38:21, 40:12, 46:24
**argument** [9] - 8:3, 8:25, 9:25, 22:7, 31:19, 34:22, 42:18, 43:22, 47:11
**arguments** [3] - 8:7, 14:23, 26:21
**ARM** [67] - 1:4, 3:6, 7:20, 8:18, 8:23, 9:7, 9:9, 9:14, 9:18, 9:20, 10:1, 10:11, 13:11, 13:15, 14:1, 14:5, 14:7, 14:23, 15:1, 15:20, 16:18, 17:7, 18:17, 18:18, 19:2, 19:7, 19:9, 19:14, 21:3, 21:18, 21:24, 22:12, 22:18, 22:20, 23:3, 23:12, 23:20, 24:5, 24:6, 25:4, 25:23, 26:4, 26:21, 28:3, 28:6, 29:17, 33:6, 33:7, 34:4, 34:6, 34:8, 34:10, 43:22, 48:5, 48:24, 53:17, 54:23, 54:24, 56:2, 56:7, 56:9, 59:11, 63:17, 64:11, 68:13, 69:22
**ARM's** [24] - 8:7, 8:12, 8:13, 10:8, 11:20, 13:19, 17:2, 18:20, 22:9, 23:24, 25:10, 33:5, 33:9, 33:10, 33:11, 34:8, 34:13, 52:25, 54:6, 55:2, 56:19, 56:23, 69:14, 70:3
**ARM-based** [1] - 23:20
**arrangements** [1] - 20:24
**arrive** [1] - 42:17
**ARSHT** [1] - 2:10
**assert** [4] - 10:25, 11:2, 16:25, 47:4
**asserting** [1] - 44:16

**assertion** [1] - 49:4
**assessment** [1] - 22:20
**assume** [2] - 39:23, 50:13
**assure** [1] - 69:7
**attack** [1] - 41:17
**attempting** [1] - 21:24
**attempts** [1] - 22:6
**attention** [2] - 32:9, 46:7
**attorney's** [1] - 45:17
**August** [1] - 32:22
**availability** [1] - 51:22
**awards** [1] - 30:17
**aware** [1] - 4:16
**awful** [1] - 76:2
**awfully** [1] - 40:19

**B**

**bad** [3] - 22:2, 38:1, 71:9
**based** [17] - 12:12, 13:8, 13:9, 23:20, 25:12, 33:7, 33:21, 46:22, 50:14, 50:20, 55:6, 55:18, 55:19, 56:14, 57:7
**basis** [7] - 9:14, 55:7, 55:20, 68:16, 69:7, 72:10
**Bates** [5] - 9:10, 9:21, 59:17, 62:6, 62:21
**bearing** [2] - 9:23, 9:24
**BEFORE** [1] - 1:18
**beginning** [2] - 13:12, 13:25
**behalf** [4] - 3:6, 7:8, 24:16, 64:11
**behind** [3] - 3:17, 3:18, 18:20
**belabor** [1] - 34:21
**belaboring** [1] - 34:11
**bench** [2] - 36:10
**best** [1] - 73:22
**better** [2] - 29:8, 39:4
**between** [14] - 8:11, 12:6, 20:3, 20:15, 20:20, 22:1, 22:8, 22:14, 22:19, 22:25, 39:10, 41:4, 52:14, 54:20
**beyond** [2] - 69:13, 70:2
**bias** [4] - 24:23, 26:9, 26:17, 26:19
**big** [4] - 20:11, 32:21, 59:14, 59:20

**binder** [2] - 74:8, 74:11
**binders** [4] - 74:14, 74:15, 74:21, 74:22
**bit** [3] - 26:24, 32:5, 65:5
**bits** [1] - 58:19
**blessed** [1] - 28:17
**BLUMENFELD** [22] - 2:10, 3:12, 3:14, 24:12, 31:24, 32:12, 32:20, 35:1, 35:11, 36:16, 38:2, 44:1, 44:12, 44:22, 44:25, 45:3, 45:7, 45:10, 45:14, 46:18, 72:24, 73:10
**Blumenfeld** [8] - 3:14, 31:12, 33:23, 36:8, 36:13, 39:1, 42:8, 49:17
**bonus** [1] - 25:2
**bore** [1] - 49:14
**bother** [1] - 63:12
**bottom** [2] - 45:3, 45:10
**BRALY** [3] - 2:14, 24:15, 25:14
**Braly** [3] - 3:16, 24:13, 24:16
**breach** [47] - 9:20, 10:15, 10:24, 11:1, 11:3, 12:4, 12:10, 13:10, 13:20, 13:22, 13:24, 14:13, 14:15, 15:11, 16:1, 18:19, 27:24, 27:25, 28:23, 29:1, 29:13, 29:22, 30:3, 30:6, 30:8, 30:15, 30:24, 31:21, 39:24, 39:25, 40:3, 40:6, 40:10, 40:21, 40:22, 47:1, 52:25, 53:2, 53:4, 53:23, 54:1, 54:10, 54:15, 54:18, 54:20
**breached** [10] - 10:10, 12:21, 14:19, 15:14, 17:1, 53:6, 53:11, 53:14
**breaches** [2] - 11:9, 14:21
**breaching** [3] - 13:14, 13:18, 14:6
**break** [1] - 42:6
**breakdown** [1] - 25:16
**brief** [6] - 22:17, 25:16, 51:9, 52:1, 52:15, 70:22
**briefed** [1] - 17:20

**briefing** [3] - 5:7, 46:2, 54:9
**briefs** [1] - 75:7
**bring** [2] - 46:6, 73:15
**bringing** [3] - 34:14, 41:17, 57:1
**brought** [5] - 5:15, 34:4, 40:24, 41:3, 41:21
**Buckson** [3] - 72:19, 73:24, 74:5
**build** [1] - 23:7
**bunch** [1] - 71:15
**buried** [2] - 67:20, 67:22
**business** [20] - 20:24, 23:14, 33:8, 35:10, 37:3, 37:7, 37:19, 41:9, 41:24, 42:7, 62:4, 62:6, 62:7, 62:10, 62:12, 62:13, 62:14, 62:21, 63:21
**buyout** [1] - 26:18
**BY** [19] - 1:23, 1:23, 1:24, 2:3, 2:3, 2:4, 2:4, 2:5, 2:5, 2:6, 2:10, 2:11, 2:13, 2:14, 2:14, 2:15, 2:15, 2:16, 2:16

**C**

**C.A** [1] - 1:6
**calculated** [1] - 45:21
**calculation** [1] - 22:22
**calculations** [1] - 22:18
**California** [1] - 12:8
**cannot** [4] - 40:8, 40:11, 40:12
**care** [4] - 18:6, 61:23, 68:21, 70:24
**cared** [1] - 60:22
**case** [47] - 3:25, 4:3, 4:6, 4:10, 9:6, 12:15, 12:16, 13:11, 13:24, 13:25, 14:14, 14:22, 18:20, 19:6, 19:8, 19:9, 19:13, 19:23, 20:1, 20:25, 21:8, 21:9, 22:16, 23:5, 25:8, 26:7, 26:11, 34:4, 34:14, 46:8, 46:15, 47:12, 50:1, 55:11, 64:23, 69:5, 69:14, 69:21, 69:23, 69:25, 70:3, 70:6, 70:8, 71:5, 73:13, 75:2, 76:8
**case-in-chief** [3] -

69:5, 69:23, 69:25
**cash** [1] - 25:18
**categories** [1] - 57:12
**Catherine** [2] - 3:16, 13:6
**CATHERINE** [1] - 2:14
**caught** [1] - 32:9
**caused** [1] - 33:5
**center** [1] - 10:19
**Century** [2] - 12:15, 12:16
**CEO** [1] - 69:3
**CEOs** [1] - 48:5
**certain** [1] - 19:12
**certainly** [2] - 5:22, 52:14
**certify** [1] - 77:5
**chambers** [1] - 52:5
**chance** [1] - 65:11
**change** [1] - 76:3
**changes** [1] - 59:16
**check** [1] - 35:16
**chief** [3] - 69:5, 69:23, 69:25
**chose** [1] - 65:11
**Chris** [1] - 3:19
**Circuit** [3] - 12:16, 17:21, 71:23
**circumstances** [1] - 12:22
**cites** [1] - 12:16
**claim** [13] - 17:2, 27:25, 29:1, 29:22, 30:6, 30:25, 44:16, 52:25, 53:4, 53:19, 54:10, 54:15, 57:1
**claims** [11] - 4:4, 4:12, 4:16, 5:1, 5:5, 11:3, 17:18, 20:6, 24:21, 54:7, 54:14
**clarification** [2] - 67:18, 72:16
**clear** [16] - 10:21, 21:3, 21:12, 24:24, 26:7, 30:23, 35:24, 40:2, 40:24, 56:2, 56:11, 62:14, 62:19, 63:4, 63:18, 63:19
**client** [1] - 51:22
**closed** [3] - 56:8, 56:9, 72:1
**closing** [2] - 26:2, 53:15
**colleagues** [1] - 3:9
**collect** [1] - 38:13
**collected** [1] - 9:13
**colloquy** [1] - 44:13
**combination** [1] - 22:5
**coming** [3] - 10:6, 61:6, 71:15

commercializing [1] - 11:21
committee [1] - 66:10
communications [1] - 8:15
companies [2] - 27:15, 54:21
company [1] - 37:22
compel [1] - 47:24
compensated [7] - 19:22, 20:13, 21:4, 28:4, 30:8, 31:3, 31:20
compensating [1] - 30:10
compensation [7] - 25:1, 29:3, 29:4, 31:4, 45:18, 45:23, 45:24
completed [1] - 19:10
comply [2] - 8:13, 33:13
CONAWAY [1] - 1:22
Conaway [1] - 3:6
concern [6] - 19:18, 21:17, 32:22, 36:24, 36:25, 62:25
concerned [1] - 41:25
concerns [1] - 6:23
conclusion [1] - 72:8
conduct [4] - 21:4, 26:10, 28:17, 40:25
confer [5] - 58:10, 58:23, 63:8, 63:16
Conference [1] - 1:13
conference [4] - 16:14, 55:10, 72:20, 72:21
conferred [1] - 61:1
conferring [1] - 58:25
confidential [2] - 10:1, 53:18
confirm [1] - 52:11
confirms [1] - 15:1
conflict [1] - 72:23
confused [1] - 5:17
confusing [2] - 17:3, 21:19
connection [2] - 7:16, 12:1
consent [8] - 16:18, 20:5, 24:5, 26:3, 26:4, 34:14, 41:19
consequence [3] - 39:10, 39:20, 42:22
consequences [4] - 28:19, 34:10, 39:12, 41:25
constitute [1] - 10:1
constitutes [1] - 9:19

consulted [1] - 51:22
consumption [1] - 72:14
Cont'd [1] - 2:1
contact [1] - 72:19
contacted [2] - 35:18, 36:4
contain [1] - 74:7
contending [1] - 43:6
contested [1] - 27:16
context [2] - 6:18, 12:21
continue [1] - 48:21
continued [2] - 58:10, 58:23
continuing [1] - 53:17, 60:4
contract [15] - 6:2, 12:9, 12:11, 12:12, 12:20, 27:24, 29:1, 29:13, 29:22, 30:6, 30:24, 54:15, 54:18, 56:11
contracts [2] - 18:23, 33:10
contractual [1] - 26:2
conversations [1] - 75:25
convince [2] - 18:10, 31:2
coordinate [1] - 73:23
copies [3] - 60:3, 73:15, 74:17
core [1] - 19:15
cores [4] - 19:7, 19:10, 19:11, 20:25
corporate [4] - 68:9, 68:12, 68:19, 68:22
corporation [2] - 1:5, 1:8
correct [9] - 10:17, 21:6, 32:1, 33:24, 35:20, 53:5, 60:2, 62:23, 64:3
correcting [1] - 59:17
corrections [1] - 75:5
correspondence [1] - 8:11
costs [1] - 45:18
counsel [4] - 3:15, 48:16, 70:21, 72:23
Counsel [2] - 2:7, 2:17
counsels [1] - 48:7
counterclaim [1] - 13:9, 14:1, 67:4, 67:7, 76:4
counterclaims [1] - 4:1, 6:14, 70:17
counterproductive [1] - 71:8

couple [3] - 31:24, 68:4, 75:15
course [3] - 25:18, 62:12, 69:11
court [6] - 39:17, 75:5, 76:14, 76:18, 77:1, 77:3
COURT [175] - 1:1, 3:2, 3:11, 3:13, 3:20, 4:5, 4:13, 4:19, 4:21, 5:2, 5:9, 5:12, 6:19, 6:25, 7:18, 7:24, 9:1, 9:3, 10:3, 10:6, 10:16, 10:21, 11:7, 11:10, 11:14, 11:19, 13:3, 13:17, 15:9, 15:17, 15:25, 16:9, 16:13, 16:24, 17:11, 17:23, 18:1, 18:4, 18:10, 18:15, 19:3, 23:23, 24:10, 24:14, 25:13, 25:20, 26:12, 26:15, 28:1, 28:8, 28:21, 29:5, 29:25, 30:19, 31:1, 31:10, 31:12, 32:9, 32:15, 33:20, 34:1, 34:25, 35:5, 35:16, 35:21, 35:23, 36:3, 36:23, 37:10, 38:19, 38:24, 39:8, 39:13, 39:15, 39:22, 40:7, 41:4, 42:2, 43:2, 43:11, 43:21, 44:7, 44:20, 44:24, 45:2, 45:5, 45:9, 45:13, 46:9, 46:20, 47:3, 47:13, 48:12, 48:17, 48:20, 49:2, 49:8, 49:15, 49:18, 50:13, 51:3, 51:8, 51:12, 52:4, 52:9, 52:19, 53:3, 53:6, 53:10, 53:16, 53:19, 54:12, 55:1, 55:5, 55:15, 55:18, 55:20, 56:13, 56:21, 57:2, 57:14, 57:20, 57:23, 58:16, 58:25, 59:6, 59:12, 59:19, 59:23, 60:7, 60:17, 61:11, 61:14, 61:21, 62:22, 62:24, 63:6, 63:9, 63:22, 64:2, 64:4, 64:8, 65:14, 65:17, 65:19, 66:2, 66:17, 66:23, 67:1, 67:12, 67:15, 67:22, 68:2, 68:6, 68:8, 68:17, 69:22, 70:4, 70:9, 70:12, 70:20, 70:24, 71:2, 71:7,

71:21, 72:15, 73:9, 73:11, 75:1, 75:11, 75:18, 76:1, 76:12, 76:23, 76:25
Court [18] - 1:18, 2:25, 4:18, 17:20, 30:16, 50:9, 52:1, 52:12, 52:13, 52:17, 54:8, 57:13, 69:8, 70:16, 72:22, 77:7, 77:8
Court's [2] - 24:12, 63:18
COURTROOM [2] - 2:24, 77:1
courtroom [6] - 68:21, 71:21, 71:22, 72:1, 72:4, 72:17
cover [3] - 7:9, 7:12, 7:14
coverage [1] - 14:9
covered [1] - 14:16
covers [1] - 13:9
CPU [2] - 11:21, 19:10
CPUs [2] - 54:5, 55:2
create [2] - 19:20, 44:5
created [4] - 62:11, 62:12, 62:17, 63:3
creates [1] - 12:23
creating [1] - 12:24
credit [1] - 21:14
cross [17] - 27:9, 33:16, 33:19, 34:24, 38:4, 38:16, 39:5, 40:14, 42:5, 42:25, 69:13, 69:15, 70:2, 73:6, 74:11, 74:14, 74:15
cross-examination [2] - 42:5, 73:6
cross-examine [8] - 27:9, 33:16, 33:19, 34:24, 38:4, 38:16, 40:14, 42:25
cross-examining [1] - 69:15
crux [1] - 69:1
cure [2] - 12:5, 12:6
cured [1] - 12:7
current [2] - 21:15, 24:2
custom [1] - 11:21
customer [2] - 22:12, 56:20
customers [1] - 55:25

D

Dale [1] - 77:7
damage [5] - 30:3, 30:7, 39:23, 39:25

damaged [3] - 28:23, 35:18, 53:10
damages [23] - 5:23, 5:24, 6:1, 6:2, 28:21, 30:5, 30:14, 30:25, 31:16, 31:25, 37:17, 44:14, 44:16, 44:18, 44:19, 45:17, 45:22, 45:23, 45:25, 46:8, 46:12
DANIEL [2] - 1:24, 2:4
Daniel [2] - 3:8, 3:10
DARALYN [1] - 2:3
Daralyn [2] - 3:7, 25:22
date [5] - 33:25, 43:14, 43:15, 49:12, 60:2
Daubert [2] - 5:13, 47:16
Daubert's [2] - 47:17, 47:21
DAWSON [1] - 2:4
Dawson [1] - 3:7
days [2] - 58:1, 72:7
deal [16] - 5:9, 5:19, 6:23, 43:17, 44:2, 49:9, 49:21, 49:22, 49:23, 51:6, 52:6, 58:2, 58:3, 58:18, 59:20, 75:7
deals [1] - 29:8
December [4] - 46:3, 46:8, 72:18, 73:19
decide [5] - 6:5, 6:17, 16:13, 52:17, 75:18
decided [2] - 32:4, 52:2
deciding [1] - 51:20
decision [3] - 29:17, 51:1, 57:7
declaration [5] - 32:6, 33:2, 35:15, 36:18, 36:20
declarations [1] - 32:21
declaratory [2] - 18:2, 56:18
decreased [2] - 32:13, 32:17
deemed [1] - 62:4
defendant [3] - 8:5, 61:22, 69:24
defendants [33] - 3:25, 5:15, 7:8, 8:6, 8:10, 8:20, 8:21, 9:1, 9:12, 9:25, 10:14, 11:20, 13:4, 17:2, 17:5, 18:17, 18:19, 19:19, 20:2, 21:3, 24:16, 26:16, 26:21,

40:14, 43:22, 45:15, 48:17, 48:23, 63:5, 69:25, 72:21, 76:24
**Defendants** [2] - 1:10, 2:17
**defendants'** [6] - 7:13, 7:15, 7:22, 9:5, 24:4, 63:22
**defense** [18] - 11:24, 12:2, 13:8, 13:9, 14:2, 15:13, 16:2, 16:8, 16:10, 18:21, 24:5, 54:16, 54:17, 55:21, 56:5, 56:7, 56:25
**defenses** [6] - 53:2, 53:3, 53:20, 54:3, 55:16
**Defilippi** [6] - 65:9, 65:12, 65:23, 65:25, 66:24
**definitely** [1] - 72:3
**DELAWARE** [1] - 1:2
**Delaware** [3] - 1:8, 1:15, 2:25
**deletions** [1] - 59:4
**demonstrate** [1] - 23:9
**demonstratives** [4] - 7:13, 63:24, 64:5, 74:9
**denial** [1] - 47:13
**denied** [3] - 23:25, 24:3, 54:24
**denies** [1] - 9:22
**deny** [5] - 5:16, 6:20, 20:5, 26:15, 72:3
**denying** [1] - 47:22
**departments** [1] - 73:23
**depose** [2] - 65:11, 67:16
**deposed** [1] - 65:5
**deposition** [21] - 5:18, 5:19, 7:17, 58:12, 59:1, 60:25, 65:13, 65:14, 66:5, 66:12, 66:15, 67:6, 67:8, 67:11, 67:12, 67:25, 68:4, 69:20, 74:13, 76:15
**depositions** [1] - 66:20
**depth** [1] - 22:13
**DEPUTY** [2] - 2:24, 77:1
**describe** [1] - 27:13
**describes** [1] - 25:17
**designations** [5] - 58:12, 59:1, 60:25, 61:5, 61:9

**desired** [1] - 49:17
**destroy** [3] - 8:18, 16:2, 16:3
**destroyed** [1] - 53:13
**destruction** [2] - 8:22, 8:23
**details** [1] - 27:22
**determination** [4] - 12:10, 14:16, 29:21, 71:12
**determine** [2] - 12:12, 50:19
**determines** [1] - 70:16
**develop** [3] - 13:13, 22:24, 23:7
**developed** [4] - 15:4, 19:10, 19:15, 26:5
**development** [1] - 26:5
**devices** [1] - 23:20
**DI** [3] - 13:13, 14:4, 14:12
**dictionary** [1] - 45:24
**difference** [5] - 22:19, 22:25, 23:8, 23:9, 41:4
**different** [16] - 19:15, 23:10, 24:3, 27:15, 36:14, 37:12, 37:14, 41:13, 42:3, 55:8, 58:20, 61:18, 63:20, 63:21, 69:11, 75:1
**differential** [4] - 20:3, 20:7, 20:15, 20:20
**difficult** [1] - 71:24
**dire** [4] - 73:14, 73:15, 75:16, 75:20
**direct** [1] - 74:10
**directly** [2] - 16:22, 22:15
**disagree** [2] - 29:15, 39:7
**disclose** [2] - 32:24, 36:11
**disclosed** [8] - 7:14, 45:19, 65:10, 66:12, 66:14, 67:1, 67:3, 67:19
**disclosers** [1] - 65:21
**disclosing** [2] - 7:16, 25:5
**disclosure** [1] - 44:19
**disclosures** [6] - 64:14, 65:10, 65:19, 66:13, 67:2, 67:4
**discontinue** [1] - 8:16
**discovery** [7] - 27:11, 32:25, 36:11, 65:11, 66:9, 66:18, 67:20
**discuss** [4] - 50:12,

63:15, 72:22, 75:12
**discussed** [2] - 18:8, 50:9
**discussion** [4] - 6:10, 26:24, 51:25, 60:4
**discussions** [3] - 12:5, 48:2, 48:8
**disgorgement** [3] - 48:24, 49:5, 50:17
**dismissed** [2] - 4:6, 4:7
**dispute** [10] - 18:5, 19:24, 61:7, 64:2, 65:5, 65:21, 69:1, 70:14, 70:19, 74:19
**disputes** [1] - 75:16
**disregarding** [1] - 26:1
**disrespect** [1] - 63:18
**dissatisfied** [1] - 24:6
**distinct** [1] - 30:25
**distinction** [3] - 39:9, 39:10, 63:4
**distribution** [1] - 8:17
**DISTRICT** [2] - 1:1, 1:2
**District** [4] - 1:18, 2:25, 77:8
**DJ** [2] - 17:17, 54:7
**document** [5] - 3:22, 60:18, 62:11, 62:17, 62:20
**documents** [22] - 9:6, 9:8, 9:10, 9:12, 9:13, 9:16, 9:19, 9:23, 9:24, 10:1, 22:21, 27:9, 40:18, 42:15, 56:2, 61:21, 62:3, 62:5, 62:6, 62:14, 63:2, 74:21
**dollar** [1] - 24:18
**done** [7] - 15:24, 22:18, 22:24, 23:6, 51:14, 58:21, 73:13
**door** [1] - 11:16
**doubt** [2] - 19:23, 20:14
**down** [2] - 61:3, 71:9
**downstream** [2] - 13:1, 34:10
**draft** [2] - 5:13, 17:16
**dramatic** [1] - 67:22
**draw** [3] - 39:9, 41:12, 63:5
**drive** [2] - 73:22, 74:12
**drop** [1] - 4:16
**dropped** [4] - 5:1, 6:14, 67:5, 76:5
**dropping** [4] - 4:1, 4:4, 4:9, 4:22
**due** [1] - 60:6

**dumb** [1] - 15:18
**Dunn** [3] - 3:16, 17:13, 42:8
**DUNN** [41] - 2:13, 4:3, 4:11, 4:15, 4:20, 4:25, 5:8, 5:10, 9:2, 11:8, 11:12, 11:18, 17:15, 17:25, 18:2, 18:7, 18:14, 46:21, 47:10, 48:19, 49:16, 50:8, 50:22, 51:7, 51:11, 51:21, 52:8, 52:11, 53:23, 54:19, 55:4, 55:14, 55:16, 55:19, 55:22, 56:17, 56:22, 57:22, 70:21, 71:1, 71:6
**DURIE** [57] - 2:3, 10:5, 18:13, 25:22, 26:14, 27:12, 28:2, 28:13, 28:24, 29:15, 30:16, 30:21, 31:6, 31:11, 33:24, 34:3, 35:20, 35:22, 35:24, 37:9, 38:21, 39:7, 39:9, 39:14, 39:17, 40:2, 40:23, 41:16, 42:16, 43:4, 43:20, 48:25, 49:6, 49:10, 52:25, 53:5, 53:9, 53:14, 53:17, 57:9, 57:19, 60:14, 62:25, 63:7, 63:25, 64:3, 64:7, 68:15, 69:2, 70:10, 70:15, 71:18, 72:11, 73:8, 74:25, 75:10, 75:14
**Durie** [7] - 3:7, 25:23, 32:1, 33:20, 35:13, 38:4, 38:19
**during** [11] - 24:19, 32:5, 33:12, 36:11, 49:24, 52:18, 55:23, 58:2, 65:11, 65:16, 66:12
**duty** [1] - 66:8

## E

**e-mail** [2] - 8:6, 74:5
**early** [1] - 14:4
**easy** [2] - 7:3, 67:10
**ecosystem** [7] - 23:19, 23:20, 28:25, 34:5, 41:3, 41:5
**Ecosystem** [1] - 22:4
**edited** [1] - 58:7
**edits** [1] - 59:8
**effect** [2] - 34:23, 43:10

**effectively** [1] - 20:12
**effects** [1] - 13:2
**effort** [2] - 61:2, 61:9
**efforts** [1] - 48:1
**eight** [2] - 67:20, 67:23
**either** [6] - 8:18, 10:9, 46:10, 47:25, 48:10, 72:4
**electronic** [1] - 73:20
**electronically** [1] - 73:24
**element** [6] - 27:24, 29:1, 29:22, 30:24, 31:6, 46:25
**elicit** [1] - 56:25
**elsewhere** [1] - 23:19
**embedded** [1] - 70:19
**employees** [1] - 56:10
**end** [4] - 46:1, 57:5, 57:21, 59:17
**enforced** [1] - 42:19
**enforcement** [1] - 12:19
**enforcing** [2] - 12:9, 12:19
**engage** [1] - 48:2
**engaging** [1] - 26:10
**enriched** [1] - 48:23
**enrichment** [1] - 49:4
**enter** [2] - 37:23, 62:19
**entered** [3] - 38:5, 38:7, 39:3
**entire** [4] - 22:8, 36:17, 41:24, 42:22
**entirely** [2] - 12:2, 70:15
**entitled** [2] - 48:24, 65:13
**entity** [1] - 34:6
**equitable** [27] - 16:10, 17:18, 17:19, 18:5, 30:17, 45:19, 46:10, 46:13, 49:7, 49:9, 49:23, 50:5, 50:10, 50:14, 50:20, 51:14, 53:22, 57:4, 57:5, 57:6, 57:25, 58:1, 58:2, 70:13, 70:17, 70:23
**equity** [1] - 30:16
**Erik** [1] - 3:7
**ERIK** [1] - 2:3
**Erin** [1] - 3:17
**ERIN** [1] - 2:15
**errata** [1] - 75:7
**especially** [1] - 75:24
**ESQ** [19] - 1:23, 1:23, 1:24, 2:3, 2:3, 2:4,

2:4, 2:5, 2:6, 2:6, 2:10, 2:11, 2:13, 2:14, 2:14, 2:15, 2:15, 2:16, 2:16
**establish** [1] - 43:5
**establishes** [1] - 41:11
**et** [1] - 1:9
**evening** [1] - 50:6
**evenings** [3] - 49:24, 50:21, 51:15
**evidence** [29] - 4:8, 8:3, 8:7, 8:10, 8:25, 10:9, 11:3, 11:23, 12:14, 12:20, 18:16, 21:17, 22:13, 22:18, 23:1, 24:18, 24:20, 24:25, 25:8, 25:24, 26:8, 26:9, 27:16, 27:20, 37:21, 46:5, 49:13, 56:25, 64:6
**evidences** [1] - 11:20
**exactly** [1] - 41:11
**examination** [2] - 42:5, 73:6
**examine** [10] - 8:13, 9:15, 27:9, 33:16, 33:19, 34:24, 38:4, 38:16, 40:14, 42:25
**examining** [1] - 69:15
**example** [6] - 16:18, 20:3, 33:11, 38:5, 59:25, 66:11
**exams** [1] - 74:10
**except** [1] - 47:21
**exchange** [1] - 68:11
**exchanged** [1] - 58:13
**exclude** [3] - 18:16, 24:18, 24:24
**excluded** [2] - 21:1, 68:20
**excluding** [1] - 10:9
**executives** [3] - 32:2, 32:7, 48:8
**exhibit** [8] - 21:14, 45:5, 58:7, 58:11, 59:16, 73:21, 74:1, 74:8
**Exhibit** [7] - 15:1, 15:5, 23:12, 25:15, 44:25, 45:7, 49:3
**exhibits** [10] - 58:6, 59:1, 59:22, 60:16, 72:9, 72:13, 73:21, 73:24, 73:25, 74:7
**exigent** [2] - 28:24, 38:22
**existing** [1] - 12:11
**expect** [3] - 34:10, 48:20, 60:9

**expected** [1] - 36:6
**expects** [1] - 52:13
**experience** [1] - 33:7
**expert** [4] - 6:3, 6:6, 44:18, 60:1
**expertise** [1] - 6:7
**experts** [1] - 68:20
**expire** [2] - 56:1, 56:20
**expires** [1] - 54:6
**explain** [1] - 33:6
**explanation** [1] - 30:1
**extent** [6] - 6:21, 24:1, 28:16, 36:4, 43:23, 47:23, 55:11, 69:23, 74:11
**extremely** [1] - 34:5

## F

**F.3d** [1] - 12:18
**fact** [24] - 6:4, 14:24, 15:19, 20:17, 22:12, 22:20, 24:25, 25:2, 27:16, 29:1, 32:7, 39:3, 40:17, 42:13, 43:8, 48:23, 49:3, 56:14, 57:25, 61:1, 65:11, 66:9, 66:18, 67:19
**facts** [4] - 22:9, 55:6, 56:4, 56:6
**factual** [1] - 6:4
**factually** [1] - 55:19
**fail** [1] - 4:7
**failing** [1] - 26:3
**failure** [1] - 56:24
**fair** [2] - 42:4, 70:9
**fairly** [2] - 40:14, 41:12
**faith** [3] - 22:2, 22:5, 59:8
**fall** [1] - 54:13
**fallen** [1] - 42:12
**false** [3] - 54:7, 55:3, 56:20
**familiar** [1] - 73:12
**fashion** [5] - 29:2, 34:9, 34:19, 41:1, 41:24
**fault** [1] - 50:24
**fees** [1] - 45:18
**few** [1] - 64:14
**figure** [10] - 4:23, 5:3, 18:22, 44:21, 49:25, 51:20, 58:4, 60:2, 63:11, 68:6
**figures** [1] - 26:18
**file** [2] - 4:11, 43:8
**filed** [2] - 15:1, 68:11
**files** [1] - 74:2

**filing** [2] - 58:10, 61:2
**filings** [1] - 50:25
**financial** [1] - 33:15
**fine** [5] - 17:14, 56:13, 70:10, 74:16, 74:21
**finish** [2] - 16:15, 69:15
**firms** [1] - 76:8
**first** [9] - 10:13, 18:11, 49:22, 53:23, 55:22, 59:14, 64:11, 64:14, 73:25
▮▮▮
**fixing** [1] - 59:16
**flagged** [1] - 60:5
**flash** [2] - 73:22, 74:12
**FLINT** [1] - 2:16
**Flint** [1] - 3:18
**floor** [1] - 7:19
**FOERSTER** [1] - 2:2
**Foerster** [1] - 3:9
**Foerster's** [1] - 48:15
**folder** [1] - 73:21
**folders** [2] - 74:6
**folks** [1] - 26:19
**follow** [1] - 48:9
**follow-up** [1] - 48:9
**following** [4] - 9:9, 9:17, 48:7, 49:12
**FOR** [1] - 1:2
**foregoing** [1] - 77:5
**forgetting** [1] - 56:23
**form** [3] - 14:14, 14:17, 54:20
**formed** [1] - 23:3
**former** [1] - 69:3
**forms** [1] - 38:8
**forth** [2] - 23:12, 45:25
**forward** [1] - 28:19
**founders** [4] - 24:19, 25:1, 25:6, 25:25
**four** [3] - 20:21, 57:25, 65:6
▮▮▮▮
**four-day** [1] - 57:25
**frank** [3] - 20:8, 58:22, 59:24
**Friday** [6] - 18:12, 52:20, 52:22, 57:2, 72:18, 73:19
**front** [7] - 6:22, 7:6, 35:25, 36:2, 44:23, 49:13, 71:13
**frustrating** [1] - 55:9
**full** [1] - 16:12
**fully** [3] - 19:10, 19:15, 23:2

**FUNG** [7] - 2:5, 64:10, 65:16, 65:18, 65:20, 67:17, 67:24
**Fung** [2] - 3:8, 64:10
**future** [13] - 6:2, 28:22, 29:12, 29:14, 29:16, 31:18, 32:3, 32:13, 39:1, 40:9, 41:6, 41:14

## G

**gain** [1] - 26:9
**Garrett** [1] - 3:19
**GARRETT** [1] - 2:15
**GAZA** [2] - 1:23, 3:5
**Gaza** [2] - 3:4, 3:6
**general** [2] - 33:4, 48:7
**generally** [5] - 12:8, 26:22, 28:6, 71:22, 75:19
**Gerard** [1] - 69:3
**GILBERT** [1] - 2:6
**Gilbert** [1] - 3:8
**given** [6] - 6:20, 12:5, 12:22, 44:18, 47:17
**goal** [1] - 43:5
**Google** [1] - 38:10
**gosh** [1] - 28:10
**grant** [1] - 16:24
**granted** [2] - 23:25
**granting** [2] - 4:8, 47:24
**granularity** [1] - 18:8
**great** [2] - 37:5, 71:21
**guess** [3] - 36:25, 43:23, 53:12
**Gulati** [1] - 25:15
**guys** [11] - 4:13, 6:22, 7:2, 13:17, 19:20, 51:12, 55:10, 57:15, 74:20, 75:8, 76:1

## H

**Haas** [1] - 44:4
**half** [2] - 20:21, 21:25
**hand** [1] - 32:20
**handful** [1] - 59:21
**hands** [13] - 16:8, 17:13, 50:15, 54:12, 54:22, 55:6, 55:8, 55:17, 55:21, 56:4, 56:13, 57:4
**happy** [4] - 4:18, 17:21, 17:25, 48:9
**harm** [25] - 27:21, 27:22, 27:25, 28:6, 28:24, 29:1, 29:12,

29:21, 29:23, 30:24, 31:2, 31:7, 32:3, 38:17, 38:23, 38:25, 40:3, 40:5, 40:6, 43:6, 46:24, 46:25, 47:2, 47:5, 47:7
**harmed** [8] - 28:3, 29:8, 39:20, 40:22, 41:6, 41:14, 42:1
**harmful** [1] - 35:10
**harms** [1] - 33:5
**Hawkins** [1] - 77:7
**hear** [7] - 10:11, 13:3, 25:20, 30:11, 31:4, 50:5, 75:19
**heard** [4] - 23:23, 26:12, 35:6, 68:13
**hearing** [4] - 26:24, 49:5, 51:9, 60:19
**hell** [1] - 42:6
**help** [4] - 15:9, 27:11, 31:12, 61:22
**helpful** [3] - 4:19, 17:3, 71:3
**HENRY** [1] - 2:5
**Henry** [1] - 3:8
**hereby** [1] - 77:5
**high** [2] - 27:14, 34:12
**higher** [1] - 20:4
**highly** [1] - 26:1
**hit** [1] - 74:2
**hold** [7] - 33:20, 38:24, 39:13, 45:5, 55:1, 71:11
**Honor** [90] - 3:5, 3:12, 4:3, 4:12, 4:25, 5:11, 6:24, 7:7, 8:4, 9:2, 9:4, 10:5, 10:12, 11:8, 11:18, 11:22, 13:5, 13:6, 13:24, 15:19, 16:4, 16:8, 17:15, 17:20, 17:22, 18:14, 21:2, 23:11, 24:9, 24:15, 25:15, 25:22, 27:13, 31:25, 32:3, 35:1, 35:20, 36:2, 38:3, 42:16, 43:20, 44:1, 45:14, 46:21, 48:5, 48:19, 48:25, 49:10, 49:13, 49:16, 50:8, 50:22, 51:7, 51:21, 54:19, 55:14, 57:22, 58:9, 58:14, 58:22, 59:7, 59:10, 60:24, 61:13, 61:19, 61:25, 63:15, 64:1, 64:10, 65:18, 66:3, 67:9, 67:14, 67:24, 68:3, 68:10, 69:10, 70:1, 70:11,

70:21, 71:20, 72:11, 72:24, 74:25, 75:14, 75:15, 76:6, 76:22
**Honor's** [2] - 31:7, 51:23
**HONORABLE** [1] - 1:18
**Honorable** [1] - 3:1
**hope** [1] - 72:24
**horribles** [1] - 44:5
**host** [1] - 56:4
**hours** [3] - 48:7, 68:4, 73:16
**hurt** [1] - 39:5
**Huttinger** [1] - 3:8
**HUTTINGER** [3] - 2:5, 59:15, 59:21

**I**

**idea** [3] - 49:19, 54:9, 57:23
**identification** [1] - 64:12
**identified** [6] - 66:4, 66:5, 66:9, 66:14, 76:14, 76:15
**identify** [1] - 57:15
**illustrative** [1] - 64:5
**immediately** [2] - 8:16, 22:22
**impact** [6] - 8:9, 17:9, 23:17, 37:21, 62:2, 63:19
**impacted** [2] - 31:16, 33:14
**impacts** [3] - 33:10, 33:25, 62:18
**impairment** [1] - 28:15
**implicate** [1] - 27:18
**imply** [1] - 21:13
**implying** [1] - 20:13
**importance** [1] - 11:25
**important** [14] - 23:15, 29:16, 34:5, 34:6, 34:20, 37:5, 37:17, 37:18, 60:19, 60:20, 60:21, 60:22, 61:8, 63:1
**importantly** [1] - 16:7
**impression** [1] - 44:5
**IN** [1] - 1:1
**INC** [1] - 1:8
**incidental** [4] - 30:17, 31:8, 45:17, 57:12
**include** [4] - 33:14, 60:11, 74:9, 74:13
**included** [4] - 58:16, 59:23, 64:13, 69:2
**includes** [5] - 8:15,

8:18, 8:22, 23:20, 76:13
**including** [4] - 10:10, 25:7, 28:16, 45:22
**incorrect** [1] - 21:9
**indicated** [1] - 20:19
**industry's** [1] - 33:8
**inference** [1] - 41:12
**inflame** [1] - 25:8
**information** [5] - 10:1, 25:7, 27:18, 40:13, 72:5
**initial** [4] - 64:13, 64:16, 65:10, 66:13
**innovate** [1] - 22:25
**innovative** [1] - 22:25
**insisting** [1] - 41:22
**instead** [2] - 27:5, 29:11
**instructions** [1] - 73:14
**integrity** [1] - 23:15
**intellectual** [3] - 33:10, 34:7, 42:20
**intend** [13] - 6:11, 6:12, 6:13, 8:21, 21:12, 27:16, 28:2, 32:2, 34:21, 34:22, 60:11, 65:23, 69:4
**intended** [5] - 15:6, 23:13, 45:8, 60:6, 64:15
**intends** [1] - 41:18
**interaction** [1] - 22:11
**interest** [1] - 45:16
**interesting** [1] - 44:14
**interfered** [1] - 55:25
**internal** [1] - 56:2
**interrogatory** [6] - 64:17, 64:18, 64:20, 66:4, 66:17, 67:18
**intertwined** [1] - 16:22
**introduce** [1] - 11:3
**introducing** [1] - 25:7
**involve** [3] - 19:5, 19:6, 19:7
**involved** [2] - 19:25, 66:14
**involving** [3] - 20:24, 73:1, 73:2
**IP** [3] - 34:6, 41:1, 42:21
**irrelevant** [3] - 18:18, 20:16, 24:20
**ish** [1] - 31:5
**issue** [30] - 5:25, 10:19, 11:25, 12:15, 12:18, 14:13, 15:19, 17:16, 17:17, 19:23, 21:4, 23:4, 24:2,

24:21, 26:10, 31:25, 36:17, 39:18, 41:18, 44:3, 44:14, 50:18, 51:2, 60:8, 62:16, 64:9, 64:11, 65:3, 72:25, 76:18
**issues** [47] - 6:14, 7:1, 10:17, 15:2, 16:22, 18:1, 18:3, 18:4, 18:19, 22:10, 22:15, 25:9, 33:13, 46:16, 47:15, 47:19, 48:22, 49:2, 49:7, 49:9, 49:23, 50:6, 50:10, 50:14, 50:18, 50:19, 52:15, 52:18, 52:20, 52:22, 54:14, 55:11, 57:7, 57:9, 57:10, 57:13, 57:24, 58:1, 58:2, 58:4, 58:24, 65:2, 73:1, 73:2, 75:12
**IT** [1] - 73:23
**items** [1] - 19:25
**itself** [1] - 13:11

**J**

**JACK** [1] - 2:10
**jack** [1] - 3:14
**JACOB** [1] - 2:14
**Jacob** [2] - 3:16, 24:15
**January** [2] - 51:17, 51:24
**Jeff** [1] - 65:9
**JENNIFER** [1] - 2:11
**Jennifer** [2] - 3:17, 7:7
**JMOLs** [1] - 69:16
**joined** [1] - 3:7
**Jones** [11] - 64:12, 64:13, 64:19, 64:22, 65:1, 65:22, 65:24, 66:4, 67:13, 67:19, 67:25
**JTX** [2] - 74:1
**Judge** [2] - 1:18, 12:18
**judge** [1] - 71:16
**judgment** [9] - 4:8, 18:3, 32:6, 32:23, 45:16, 47:6, 47:14, 47:22, 56:18
**June** [1] - 35:18
**juror** [2] - 74:20, 75:8
**jurors** [2] - 73:15, 76:2
**jury** [55] - 5:24, 6:5, 6:11, 6:21, 7:6, 16:9, 16:12, 18:6, 21:18, 21:19, 24:23, 25:8, 30:2, 31:2, 35:25,

37:25, 38:18, 39:23, 40:10, 40:16, 40:20, 40:21, 40:23, 41:11, 46:6, 47:4, 47:8, 49:12, 49:24, 50:2, 50:6, 50:11, 50:16, 50:19, 50:21, 52:23, 53:21, 53:25, 54:4, 55:17, 56:16, 57:8, 57:25, 70:18, 71:13, 71:14, 71:17, 73:11, 73:17, 74:21, 74:22, 75:9, 76:11, 76:13
**jury's** [2] - 12:25, 19:21

**K**

**KAREN** [1] - 2:13
**Karen** [1] - 3:16
**keep** [2] - 51:4, 71:2
**keeping** [1] - 55:13
**Kennedy** [3] - 6:13, 7:5
**kept** [1] - 62:13
**kind** [10] - 29:13, 30:1, 33:22, 37:24, 44:14, 45:25, 55:9, 58:18, 63:13, 71:8
**King** [1] - 1:15
**knowledge** [1] - 64:20
**knows** [2] - 42:10, 76:17

**L**

**lack** [1] - 69:8
**laid** [1] - 25:2
**language** [3] - 12:13, 62:8, 76:4
**large** [2] - 20:22, 59:15
**largest** [1] - 22:12
**last** [9] - 3:24, 5:1, 6:9, 25:11, 26:24, 52:3, 52:16, 66:18, 76:6
**latter** [1] - 27:13
**Laura** [1] - 3:8
**LAURA** [1] - 2:6
**law** [7] - 12:8, 17:19, 26:7, 47:12, 64:23, 66:6, 70:23
**lawsuit** [12] - 10:14, 10:22, 10:25, 11:5, 13:20, 21:15, 22:6, 29:16, 40:24, 41:17, 41:22, 43:8
**lawyer** [1] - 76:7
**lawyers** [3] - 73:1, 76:10, 76:12

**learned** [2] - 22:21, 36:19
**least** [2] - 14:11, 49:11
**leave** [1] - 36:8
**leaves** [3] - 31:19, 50:6, 50:21
**leaving** [1] - 69:14
**left** [7] - 6:1, 18:24, 31:22, 43:19, 43:25, 44:2, 44:17
**legal** [2] - 45:23, 70:17
**legally** [1] - 47:2
**length** [2] - 15:7, 71:11
**less** [1] - 29:10
**lessen** [1] - 59:1
**letter** [9] - 3:24, 5:6, 10:10, 10:20, 11:20, 11:23, 13:23, 14:20, 17:2
**letters** [2] - 50:14, 50:20
**level** [2] - 27:14, 34:12
**license** [19] - 11:24, 12:2, 12:3, 12:13, 15:3, 33:15, 34:23, 37:15, 38:6, 38:14, 38:22, 39:3, 43:7, 54:17, 56:1, 56:18, 56:19, 56:20
**licensed** [17] - 14:2, 14:24, 15:12, 15:13, 15:22, 16:3, 16:6, 17:6, 17:10, 19:7, 19:9, 33:15, 36:15, 37:3, 54:5, 55:2, 56:17
**licensee** [7] - 8:16, 8:18, 23:3, 23:4, 23:10, 23:15, 34:5
**licensees** [7] - 23:18, 29:19, 33:11, 33:12, 33:17, 34:7, 36:19
**licenses** [12] - 33:18, 37:6, 37:7, 37:14, 38:5, 38:10, 38:15, 38:16, 41:8, 41:10, 42:7
**licensing** [6] - 14:9, 28:25, 34:6, 37:22, 38:12, 41:23
**life** [1] - 67:10
**light** [2] - 12:24, 75:25
**likelihood** [1] - 24:22
**limine** [15] - 7:25, 8:2, 9:5, 10:8, 10:18, 16:25, 17:12, 18:15, 23:24, 24:11, 24:17, 26:20, 31:22, 47:16
**limited** [1] - 67:4

**LIPIN** [1] - 2:16
**list** [13] - 21:14, 45:11, 46:21, 58:8, 59:16, 61:3, 64:16, 67:20, 69:3, 73:21, 75:21, 76:2, 76:9
**listed** [3] - 33:3, 64:19, 76:7
**lists** [2] - 58:11, 64:9
**literally** [1] - 29:18
**litigated** [2] - 15:2, 52:17
**litigating** [1] - 39:17
**litigation** [7] - 9:7, 9:11, 9:12, 9:17, 21:5, 42:23, 62:21
**live** [4] - 60:18, 61:10, 69:20, 76:19
**LLP** [2] - 2:2, 2:10
**long-standing** [2] - 22:10, 23:14
**Longman** [1] - 3:19
**look** [8] - 15:10, 27:2, 33:2, 37:25, 45:23, 46:9, 60:8, 76:2
**looked** [1] - 49:3
**looking** [3] - 18:23, 59:25, 63:10
**loose** [1] - 42:6
**lose** [1] - 71:25
**loss** [1] - 30:3
**lost** [2] - 51:4, 55:15
**lower** [1] - 24:7
**LTD** [1] - 1:4
**lunches** [2] - 75:8, 75:9

## M

**MACKRIDES** [1] - 1:24
**Mackrides** [1] - 3:10
**magistrate** [1] - 71:16
**mail** [2] - 8:6, 74:5
**maintained** [1] - 63:2
**manager** [1] - 33:4
**manner** [2] - 42:12, 53:12
**March** [2] - 38:10, 44:15
**marketing** [1] - 33:8
**Maryellen** [1] - 3:1
**MARYELLEN** [1] - 1:18
**material** [3] - 8:23, 12:4, 16:5
**materially** [2] - 13:14, 14:6
**matter** [3] - 56:8, 62:1, 66:16

**mean** [9] - 4:21, 5:21, 10:25, 54:20, 58:16, 58:17, 63:9, 67:17, 72:8
**meaning** [1] - 11:25
**means** [5] - 4:24, 32:17, 41:6, 45:23, 71:25
**meant** [1] - 63:12
**mechanically** [1] - 4:17
**meet** [7] - 48:13, 63:8, 63:16, 71:22, 71:24, 72:1
**memos** [1] - 21:14
**mentioned** [2] - 74:3, 74:4
**mentioning** [2] - 10:23, 64:24
**merger** [2] - 53:7, 56:8
**met** [2] - 48:6, 48:14
**middle** [1] - 69:25
**might** [2] - 50:13, 54:8
**MIL** [4] - 7:20, 7:22, 32:7, 32:9
**milestone** [3] - 25:11, 25:18, 26:6
███████████████████
**MILs** [1] - 7:10
**mind** [2] - 12:25, 19:21
**minute** [1] - 52:16
**misleading** [1] - 21:18
**misunderstanding** [1] - 17:7
**model** [9] - 35:10, 37:3, 37:7, 37:19, 41:9, 41:24, 42:7, 42:22
**moment** [2] - 37:13, 68:18
**Monday** [4] - 18:12, 57:6, 57:21, 65:6
**monetary** [5] - 30:12, 45:18, 45:22, 45:24, 46:12
**money** [5] - 5:24, 18:21, 20:10, 24:1, 25:13, 25:24, 26:8, 31:5, 35:7, 35:9
**money-ish** [1] - 31:5
**month** [1] - 66:20
**moot** [2] - 6:20, 65:21
**moreover** [1] - 12:8
**Morgan** [1] - 3:18
**MORGAN** [1] - 2:15
**morning** [2] - 5:5, 74:4
**MORRIS** [1] - 2:10
**Morris** [3] - 3:14, 3:17,

7:7
**MORRISON** [1] - 2:2
**Morrison** [2] - 3:9, 48:15
**most** [2] - 14:12, 14:25
**motion** [21] - 6:20, 7:25, 8:2, 9:5, 10:8, 10:18, 16:25, 17:12, 18:15, 23:24, 24:11, 24:17, 26:15, 26:20, 31:21, 31:22, 43:19, 43:21, 43:25, 47:24, 52:9
**motions** [6] - 5:13, 5:14, 47:16, 47:20, 52:7
**motivation** [9] - 16:20, 20:5, 20:17, 26:1, 26:9, 35:2, 35:3, 35:4, 35:6
**motive** [6] - 12:19, 18:20, 26:17, 26:19, 41:17
**motives** [1] - 12:9
**moved** [3] - 18:2, 61:3, 61:4
**MR** [43] - 3:12, 3:14, 6:8, 6:24, 8:2, 10:12, 10:17, 11:2, 11:22, 13:5, 19:1, 19:4, 24:12, 24:15, 25:14, 31:24, 32:12, 32:20, 35:1, 35:11, 36:16, 38:2, 44:1, 44:12, 44:22, 44:25, 45:3, 45:7, 45:10, 45:14, 46:18, 48:5, 48:14, 59:15, 59:21, 64:10, 65:16, 65:18, 65:20, 67:17, 67:24, 72:24, 73:10
**Muino** [1] - 3:8
**MUINO** [1] - 2:4
**multiple** [3] - 13:15, 14:5, 33:5
**must** [2] - 44:20, 72:2

## N

**named** [2] - 64:12, 73:25
**names** [1] - 68:11
**narrowed** [1] - 65:5
**nature** [5] - 8:8, 12:3, 12:11, 12:12, 18:16
**nearly** [1] - 20:8
**necessary** [1] - 51:17
**necessitating** [1] - 61:4
**need** [39] - 7:13, 18:11, 26:25, 27:9, 27:11, 27:24, 28:8, 31:22, 34:24, 35:19, 37:1, 41:9, 44:2, 48:12, 48:18, 49:22, 49:25, 50:2, 50:3, 52:9, 57:15, 58:4, 58:13, 59:19, 60:10, 60:21, 61:15, 73:20, 73:25, 74:4, 74:14, 74:23, 75:4, 75:19, 75:23
**needed** [1] - 61:11

40:23, 41:16, 42:16, 43:4, 43:20, 46:21, 47:10, 48:19, 48:25, 49:6, 49:10, 49:16, 50:8, 50:22, 51:7, 51:11, 51:21, 52:8, 52:11, 52:25, 53:5, 53:9, 53:14, 53:17, 53:23, 54:19, 55:4, 55:14, 55:16, 55:19, 55:22, 56:17, 56:22, 57:9, 57:19, 57:22, 58:9, 58:22, 59:3, 59:7, 59:24, 60:14, 60:24, 61:13, 61:19, 61:25, 62:23, 62:25, 63:7, 63:15, 63:25, 64:3, 64:7, 66:3, 66:19, 66:25, 67:3, 67:14, 68:3, 68:7, 68:10, 68:15, 69:2, 69:10, 70:1, 70:5, 70:10, 70:11, 70:15, 70:21, 71:1, 71:6, 71:18, 71:20, 72:11, 73:8, 74:25, 75:10, 75:14, 75:15, 75:24, 76:3, 76:21, 76:24
**Muino** [1] - 3:8
**MUINO** [1] - 2:4
**multiple** [3] - 13:15, 14:5, 33:5
**must** [2] - 44:20, 72:2

**negative** [1] - 28:19
**negotiate** [5] - 28:11, 28:15, 29:8, 43:8, 55:24
**negotiations** [3] - 31:15, 33:13, 56:3
**neighborhood** [1] - 19:4
**never** [6] - 44:18, 45:19, 64:13, 65:5, 65:17
**new** [3] - 14:20, 51:5, 61:15
**news** [1] - 14:21
**next** [1] - 52:11
**NICHOLAS** [1] - 2:5
**nicholas** [1] - 64:10
**Nicholas** [1] - 3:8
**Nichols** [3] - 3:15, 3:17, 7:8
**NICHOLS** [1] - 2:10
**Nick** [3] - 64:12, 64:13, 66:3
**night** [3] - 3:25, 52:18
**nobody** [4] - 13:18, 49:19, 52:13, 76:17
**none** [4] - 19:6, 19:7, 19:12, 20:25
**nonparties** [1] - 25:6
**noon** [2] - 73:16, 73:19
**NOREIKA** [1] - 1:18
**Noreika** [1] - 3:1
**normal** [1] - 75:20
**normally** [1] - 50:5
**notebooks** [1] - 74:20
**notes** [2] - 66:10, 77:5
**nothing** [2] - 19:25, 21:7
**notice** [3] - 64:21, 64:25, 75:21
**notices** [1] - 12:4
**notwithstanding** [1] - 26:3
**November** [5] - 1:12, 14:4, 48:6, 48:9, 66:6
**number** [18] - 7:20, 7:22, 8:2, 9:5, 10:9, 16:22, 17:12, 18:15, 20:12, 23:24, 24:11, 26:20, 27:15, 45:1, 46:11, 62:6, 62:21, 74:8
**numbers** [2] - 59:17, 74:1
**numerous** [1] - 15:6
**NuVia** [3] - 3:15, 8:11, 8:16, 9:9, 9:14, 9:17, 9:19, 9:20,

9:23, 9:24, 10:2, 15:4, 15:14, 15:15, 15:23, 20:4, 20:18, 20:20, 22:24, 23:6, 24:6, 24:19, 24:20, 25:6, 26:5, 26:19, 32:18, 37:11, 38:6, 52:25, 53:1, 53:6, 53:14, 54:2, 54:21, 56:10, 56:24, 62:6, 62:14, 62:22, 63:4, 69:3, 69:22
**NYARADY** [33] - 13:6, 13:19, 15:15, 15:19, 16:4, 16:11, 16:17, 17:8, 21:2, 24:9, 60:24, 61:13, 61:19, 61:25, 62:23, 63:15, 66:3, 66:19, 66:25, 67:3, 67:14, 68:3, 68:7, 68:10, 69:10, 70:1, 70:5, 70:11, 71:20, 75:15, 75:24, 76:21, 76:24
**Nyarady** [1] - 13:7
**NYARDY** [2] - 2:14, 76:3
**Nyrady** [3] - 3:16, 24:11, 42:8

## O

**object** [2] - 64:11, 67:10
**objected** [3] - 32:23, 65:3, 69:6
**objecting** [1] - 44:8
**objection** [5] - 50:23, 68:13, 68:14, 69:7, 73:8
**obligation** [1] - 66:11
**obligations** [1] - 26:2
**obtained** [1] - 23:10
**obviously** [4] - 15:15, 27:21, 35:25, 56:25
**occurred** [1] - 12:10
**October** [6] - 10:10, 10:20, 11:19, 13:23, 14:20, 17:1
**OF** [1] - 1:2
**offered** [1] - 7:2
**office** [1] - 48:15
**Official** [1] - 77:7
**older** [1] - 19:9
**OLSON** [13] - 2:3, 6:8, 6:24, 8:2, 10:12, 10:17, 11:2, 11:22, 13:5, 19:1, 19:4, 48:5, 48:14
**Olson** [6] - 3:7, 7:20,

13:7, 21:7, 23:2, 35:3
**ominous** [1] - 72:21
**once** [4] - 58:4, 68:25, 69:12, 70:2
**one** [31] - 6:14, 7:24, 10:11, 13:2, 15:2, 16:15, 17:1, 25:9, 29:5, 29:6, 29:18, 32:20, 34:4, 38:20, 40:18, 41:7, 41:8, 47:17, 54:8, 58:1, 63:25, 64:9, 65:2, 67:8, 67:17, 68:16, 68:22, 73:3, 74:12, 74:18
**ones** [1] - 5:14
**ongoing** [1] - 22:14
**open** [2] - 44:17, 69:14
**opened** [1] - 11:16
**opening** [1] - 25:16
**opinion** [2] - 5:16, 12:17
**opportunity** [2] - 6:8, 73:5
**oppose** [1] - 65:12
**opposing** [1] - 69:21
**opposition** [1] - 73:6
**options** [1] - 51:15
**order** [31] - 5:13, 14:25, 15:5, 17:16, 23:12, 26:5, 30:20, 30:22, 44:23, 45:1, 45:15, 47:15, 47:17, 50:2, 55:12, 58:17, 58:19, 60:8, 60:10, 60:13, 60:15, 61:2, 61:7, 61:15, 61:17, 62:3, 65:16, 68:11, 70:13, 74:2
**ordered** [2] - 48:2, 48:10
**orderly** [1] - 69:17
**organized** [1] - 74:8
**original** [1] - 15:14
**originally** [2] - 55:1, 60:23
**otherwise** [3] - 48:11, 66:8, 74:7
**ought** [2] - 50:4, 66:21
**OUT** [1] - 76:4
**outside** [2] - 31:21, 48:16
**outstanding** [2] - 20:9, 58:23
**outweighed** [1] - 24:22
**own** [2] - 14:7, 63:14

## P

**p.m** [2] - 1:13, 77:3
**page** [6] - 45:4, 45:10, 45:13, 45:14, 60:12, 60:17
**pages** [8] - 17:23, 17:24, 18:10, 25:16, 52:20, 57:3, 57:18, 75:22
**paid** [7] - 18:17, 19:2, 19:24, 24:1, 25:12, 32:18, 32:19
**Palo** [1] - 48:14
**paper** [4] - 37:8, 42:7, 60:3, 74:17
**papers** [5] - 10:13, 11:15, 13:8, 70:25, 71:10
**parade** [1] - 44:5
**paragraph** [29] - 7:12, 7:14, 13:16, 14:6, 15:1, 23:13, 23:17, 23:18, 33:4, 33:7, 35:14, 35:21, 35:22, 36:12, 36:13, 45:4, 45:9, 45:11, 48:1, 48:22, 49:2, 61:6, 61:21, 63:24, 64:8, 68:8, 68:18, 72:20
**paragraphs** [4] - 7:9, 7:25, 15:6, 15:8
**part** [19] - 10:18, 15:25, 16:5, 16:20, 18:12, 18:21, 23:15, 23:25, 25:3, 26:17, 27:21, 30:7, 32:21, 32:23, 50:23, 59:15, 69:18, 73:5
**participate** [1] - 63:7
**particular** [1] - 25:10
**parties** [31] - 7:10, 7:12, 7:14, 8:4, 8:12, 9:7, 12:6, 15:16, 16:25, 18:9, 22:1, 22:8, 22:14, 37:12, 37:14, 48:15, 49:11, 50:8, 50:24, 58:9, 58:23, 59:9, 59:25, 61:1, 61:10, 63:21, 68:19, 72:13, 72:17, 73:20, 74:4
**parties'** [1] - 8:14
**partner** [1] - 20:11
**partners** [1] - 36:18
**parts** [1] - 61:17
**party** [8] - 10:9, 16:1, 26:8, 26:23, 62:4, 62:11, 69:12
**party's** [1] - 69:21

**past** [3] - 28:14, 31:15, 35:17
**patent** [1] - 74:23
**patience** [1] - 5:19
**Patterson** [1] - 3:18
**PATTERSON** [1] - 2:16
**Paul** [3] - 3:16, 3:18, 72:25
**PAUL** [1] - 2:13
**pause** [1] - 59:14
**pay** [4] - 19:14, 21:15, 22:6, 45:15
**paying** [4] - 19:19, 20:10, 29:10, 40:5
**payment** [2] - 25:11, 25:18
**payments** [9] - 21:5, 21:8, 21:20, 21:21, 21:24, 22:3, 22:13, 25:19, 26:6
**pending** [3] - 25:11, 47:19, 47:20
**people** [17] - 6:4, 27:6, 29:9, 35:18, 36:5, 37:6, 37:18, 37:19, 38:15, 41:6, 41:9, 42:6, 60:9, 61:5, 75:23
**people's** [1] - 38:14
**perception** [2] - 33:9, 37:11
**perform** [1] - 56:24
**performance** [16] - 6:17, 8:4, 8:8, 8:25, 13:1, 22:3, 22:14, 27:23, 30:14, 30:18, 31:9, 36:1, 50:12, 50:18, 57:11, 58:3
**perhaps** [2] - 61:5, 68:14
**permission** [1] - 24:12
**permit** [1] - 69:6
**permitted** [2] - 26:16, 28:18
**person** [3] - 5:19, 28:10, 66:8
**personally** [3] - 9:15, 9:22, 63:7
**phase** [4] - 27:22, 35:25, 36:10, 50:11
**pick** [1] - 71:17
**piece** [1] - 13:21
**piecemeal** [2] - 51:13, 59:13
**place** [3] - 66:20, 73:12, 74:18
**places** [2] - 45:1, 61:18
**Plaintiff** [2] - 1:6, 2:7

**plaintiff** [10] - 3:6, 7:20, 25:21, 26:18, 27:1, 37:16, 52:24, 57:6, 64:11, 75:14
**plaintiff's** [8] - 4:25, 15:5, 17:12, 18:15, 26:17, 45:8, 48:22, 49:2
**plaintiffs** [5] - 8:9, 10:4, 46:23, 53:25, 73:15
**plan** [1] - 51:13
**planning** [1] - 33:22
**play** [2] - 70:7, 74:23
**pleaded** [2] - 57:16, 57:18
**pleading** [2] - 14:11, 14:12
**pleadings** [2] - 14:5, 30:21
**pled** [7] - 49:17, 49:19, 51:2, 52:16, 53:24, 54:10, 57:10
**point** [13] - 7:4, 13:24, 23:11, 31:7, 34:11, 34:21, 35:2, 38:20, 40:20, 61:22, 61:24, 73:17, 76:16
**pointed** [1] - 64:17
**pooh** [2] - 37:24
**portion** [1] - 58:20
**portions** [2] - 60:9, 72:14
**position** [6] - 15:20, 27:23, 36:14, 45:20, 46:19, 49:16
**positions** [1] - 46:15
**Posner** [1] - 12:18
**possess** [1] - 9:24
**possessed** [2] - 9:16, 9:22
**possession** [1] - 9:18
**possible** [1] - 57:7
**possibly** [1] - 44:17
**post** [3] - 9:19, 45:16, 75:7
**post-trial** [2] - 45:16, 75:7
**posttrial** [1] - 5:7
**potential** [2] - 6:2, 24:21
**potentially** [2] - 6:9, 52:1
**power** [1] - 30:16
**practical** [2] - 62:1, 63:1, 63:19
**pre** [2] - 16:6, 45:16
**pre-termination** [1] - 16:6
**precedent** [2] - 17:20,

17:21
**preceding** [1] - 56:10
**preclude** [2] - 26:21, 43:22
**precluded** [1] - 65:1
**precludes** [1] - 17:5
**precluding** [1] - 44:8
**predicate** [1] - 29:21
**prejudice** [4] - 4:7, 12:24, 19:20, 24:22
**prejudicial** [4] - 17:3, 20:9, 20:10, 20:16
**preliminary** [1] - 73:14
**prepared** [1] - 17:15
**present** [6] - 8:7, 8:10, 48:16, 49:13, 65:23, 70:7
**presentation** [1] - 69:21
**presented** [1] - 69:20
**preserving** [1] - 63:20
**president** [2] - 33:3, 69:4
**presiding** [1] - 3:1
**presumably** [1] - 46:9
**pretend** [1] - 31:4
**pretrial** [29] - 14:25, 15:5, 16:14, 17:16, 23:12, 30:19, 30:22, 44:22, 44:25, 45:1, 47:15, 55:9, 55:12, 58:17, 58:19, 60:8, 60:10, 60:13, 60:15, 61:2, 61:7, 61:15, 61:17, 62:3, 65:16, 67:16, 68:11, 72:20, 72:21
**Pretrial** [1] - 1:13
**pretty** [1] - 39:5
**prevent** [1] - 11:21
**previously** [3] - 48:10, 74:3
**price** [1] - 24:25
**prices** [1] - 28:11
**probative** [1] - 11:23
**problem** [9] - 4:5, 36:13, 38:2, 42:2, 42:13, 42:17, 43:9, 60:7, 62:24
**problems** [1] - 40:9
**proceeding** [1] - 77:5
**proceedings** [1] - 32:23
**proceeds** [2] - 24:19, 25:5
**process** [1] - 72:22
**produce** [5] - 27:3, 40:13, 40:18, 42:15
**produced** [8] - 9:16, 27:10, 28:12, 36:6,

62:3, 62:5, 62:20, 63:1
**produces** [1] - 26:22
**product** [3] - 13:14, 26:5, 43:23
**Products** [1] - 12:17
**products** [27] - 13:10, 14:9, 14:16, 14:24, 15:21, 16:7, 17:6, 17:9, 19:6, 19:9, 19:12, 20:24, 21:8, 21:9, 21:15, 21:22, 22:4, 22:6, 22:25, 23:2, 23:7, 23:21, 24:2, 33:14
**proffer** [1] - 44:10
**program** [5] - 26:22, 27:14, 38:12, 43:23, 43:25
**promised** [2] - 26:7, 71:4
**proof** [1] - 45:8
**proofs** [2] - 15:6, 23:13
**properly** [1] - 57:16
**property** [3] - 33:10, 34:7, 42:20
**proposal** [7] - 7:13, 7:15, 51:19, 51:21, 52:18, 61:23, 67:25
**proposals** [2] - 33:12, 63:22
**propose** [2] - 68:4, 69:14
**proposed** [2] - 14:17, 69:10
**proposition** [1] - 64:23
**protect** [2] - 33:9, 42:20
**prove** [1] - 70:24
**proved** [2] - 54:4, 54:6
**proven** [1] - 54:23
**provide** [8] - 14:9, 48:9, 64:21, 64:25, 72:13, 73:20, 75:9, 76:1
**provided** [3] - 8:22, 23:2, 74:12
**provides** [4] - 12:23, 15:3, 25:4, 25:16
**provision** [3] - 8:13, 10:2, 54:1
**PTO** [7] - 7:9, 7:11, 7:14, 52:2, 58:10, 58:14, 60:5
**PTX** [2] - 74:1
**public** [1] - 72:14
**pull** [2] - 44:24, 74:18
**purpose** [5] - 6:12,

56:4, 62:9, 63:5, 67:4
**purposes** [4] - 28:25, 30:5, 40:3, 40:6
**pursuing** [1] - 42:23
**put** [30] - 4:7, 7:11, 7:21, 13:11, 19:11, 19:13, 19:15, 21:16, 27:16, 28:20, 29:7, 31:13, 31:17, 32:6, 32:21, 35:19, 36:9, 36:17, 41:18, 44:19, 45:25, 46:5, 46:7, 47:10, 52:2, 52:16, 60:22, 67:9, 69:19, 70:2
**putting** [1] - 44:3

---

# Q

**QUALCOMM** [1] - 1:8
**Qualcomm** [94] - 3:15, 3:19, 8:12, 10:10, 11:21, 12:3, 13:7, 13:9, 13:11, 13:13, 13:18, 13:22, 14:3, 14:6, 14:8, 14:13, 14:15, 14:16, 14:19, 14:20, 15:7, 15:14, 15:15, 15:20, 15:22, 15:23, 16:5, 16:6, 16:21, 17:1, 18:18, 19:2, 19:7, 19:10, 19:11, 20:4, 20:21, 21:16, 22:1, 22:4, 22:12, 22:15, 22:24, 23:6, 23:21, 24:6, 24:10, 26:6, 27:23, 28:4, 28:17, 29:9, 32:18, 34:8, 34:12, 34:15, 34:18, 34:19, 37:11, 39:11, 39:15, 41:1, 41:18, 41:19, 42:10, 42:25, 48:6, 53:1, 53:11, 53:14, 54:2, 54:6, 54:21, 54:23, 55:2, 56:8, 56:10, 62:5, 62:7, 62:14, 62:20, 62:21, 63:1, 63:3, 64:15, 64:17, 65:3, 65:10, 65:22, 69:4, 69:6
**Qualcomm's** [11] - 13:10, 15:3, 24:11, 26:18, 26:20, 28:17, 36:14, 53:1, 54:5, 64:12, 64:13
**questions** [1] - 49:4
**quite** [5] - 26:7, 36:23, 65:5, 76:2, 76:9

---

# R

**Racing** [1] - 12:17
**raise** [4] - 6:22, 46:19, 51:4, 55:12
**raised** [7] - 14:23, 21:18, 25:9, 30:1, 32:1, 38:3, 55:11
**raising** [2] - 44:9, 51:4
**ranges** [1] - 60:2
**rate** [2] - 24:7, 26:17
**rates** [6] - 20:3, 20:7, 22:25, 24:4, 28:16, 55:24
**rather** [1] - 71:3
**ratings** [1] - 23:8
**re** [1] - 6:22
**re-raise** [1] - 6:22
**reached** [3] - 7:10, 7:21, 7:23
**read** [3] - 5:18, 32:7, 71:4
**reading** [2] - 5:6, 8:6
**ready** [1] - 3:23
**real** [1] - 38:17
**realized** [1] - 60:3
**really** [9] - 21:24, 55:9, 59:19, 61:10, 61:23, 62:15, 68:9, 75:22, 75:23
**reason** [10] - 5:6, 11:16, 27:20, 34:16, 34:18, 41:3, 41:21, 46:14, 54:8, 72:1
**reasons** [5] - 12:14, 25:4, 33:1, 34:4, 34:14
**receive** [1] - 24:7
**received** [3] - 3:24, 24:19, 25:1
**recent** [1] - 14:12
**recently** [1] - 14:25
**record** [10] - 5:1, 7:11, 7:22, 21:6, 23:22, 47:11, 58:20, 62:10, 62:19, 62:21
**records** [5] - 62:4, 62:7, 62:15, 63:21
**redacted** [3] - 27:18, 38:8, 38:11
**redactions** [1] - 26:23
**refer** [4] - 9:21, 10:14, 10:24, 11:5
**reference** [6] - 9:9, 9:11, 14:10, 15:8, 20:22, 72:12
**referenced** [2] - 22:11
**references** [2] - 14:11, 23:22
**referring** [1] - 10:22

**refused** [2] - 16:18, 41:18
**refusing** [1] - 34:14
**regard** [1] - 21:11
**regarding** [17] - 7:15, 8:3, 8:7, 8:10, 8:12, 8:14, 8:25, 9:5, 9:15, 10:15, 11:3, 12:19, 12:25, 14:24, 16:18, 22:18, 24:18
**regards** [2] - 7:11, 7:20
**regular** [1] - 62:12
**Rehoboth** [1] - 3:10
**related** [1] - 24:25
**relates** [1] - 61:7
**relating** [1] - 18:16
**relationship** [4] - 21:25, 22:8, 22:11, 22:14
**relationships** [2] - 23:14, 23:18
**relevance** [3] - 12:23, 21:23, 24:21
**relevant** [14] - 6:16, 12:9, 12:14, 16:23, 17:2, 20:18, 20:19, 21:10, 22:15, 24:3, 24:4, 26:1, 27:21
**relief** [7] - 30:13, 45:11, 46:10, 51:14, 54:24, 54:25, 57:12
**relying** [2] - 6:4, 29:20
**remaining** [2] - 5:14, 65:8
**remains** [1] - 15:2
**remedies** [8] - 8:8, 27:22, 31:8, 49:14, 49:17, 50:11, 57:10, 57:13
**remedy** [5] - 8:9, 8:22, 45:19, 53:24, 54:10
**remember** [1] - 71:15
**reminder** [1] - 8:15
**remove** [1] - 7:24
**REMUS** [1] - 2:6
**Remus** [1] - 3:9
**repeal** [1] - 14:12
**repeated** [2] - 14:19, 23:22
**replaced** [1] - 60:15
**report** [1] - 44:18
**reporter** [1] - 75:5
**Reporter** [1] - 77:7
**reports** [1] - 60:1
**representation** [2] - 32:16, 46:23
**representations** [1] - 33:21
**representative** [2] -

68:9, 68:19
**representatives** [2] - 68:12, 68:22
**represented** [1] - 9:13
**reputation** [2] - 30:4, 33:9
**reputational** [2] - 6:1, 47:7
**request** [9] - 8:12, 20:5, 30:13, 30:17, 46:14, 56:19, 57:11, 57:12, 72:3
**requested** [4] - 8:7, 8:9, 46:10, 65:12
**requests** [1] - 8:14
**require** [1] - 36:10
**requirement** [1] - 26:3
**requirements** [1] - 62:11
**requires** [1] - 50:19
**requiring** [1] - 45:15
**reserve** [1] - 65:8
**reserves** [1] - 9:21
**resolve** [3] - 4:2, 21:17, 69:18
**resolved** [5] - 7:9, 10:18, 47:22, 63:25, 68:14
**respect** [27] - 5:17, 9:4, 11:15, 13:10, 13:19, 20:5, 21:21, 21:23, 34:7, 37:6, 37:7, 37:18, 37:19, 41:7, 41:9, 42:6, 43:7, 46:24, 54:3, 55:16, 60:25, 66:3, 68:12, 70:5, 70:16, 73:13, 75:20
**respected** [1] - 37:15
**respectful** [1] - 63:14
**respecting** [4] - 37:14, 37:20, 41:10, 42:11
**respond** [7] - 17:24, 18:12, 35:2, 35:8, 44:13, 57:6, 57:20
**response** [17] - 8:20, 14:1, 14:18, 14:23, 15:21, 25:4, 25:10, 32:7, 34:16, 41:16, 64:18, 64:20, 64:24, 66:5, 66:15, 66:17
**responses** [1] - 67:18
**responsive** [1] - 6:15
**rest** [1] - 43:18
**result** [2] - 12:5, 14:1
**return** [1] - 8:18
**review** [1] - 75:4
**revised** [1] - 58:15
**rid** [2] - 34:15, 34:17
**rights** [2] - 41:22,

42:19
**rise** [3] - 2:24, 34:24, 77:1
**ROBERT** [1] - 1:23
**rog** [2] - 64:24, 66:15
**roles** [1] - 33:8
**rolled** [1] - 56:3
**room** [1] - 52:13
**royalties** [12] - 18:17, 18:18, 18:23, 19:1, 19:20, 19:24, 32:12, 32:17, 32:18, 38:13, 45:15, 48:24
**royalty** [10] - 18:19, 19:14, 20:3, 21:10, 21:14, 22:20, 24:4, 24:7, 26:17, 55:24
**RUBY** [1] - 2:15
**Ruby** [1] - 3:19
**Rule** [4] - 65:19, 65:20, 67:2, 67:3
**rule** [1] - 43:15
**rules** [2] - 66:7, 69:5
**ruling** [4] - 17:5, 17:7, 17:8, 17:12
**run** [1] - 4:5

**S**

**Samsung** [1] - 55:25
**sat** [1] - 42:19
**satisfied** [1] - 25:5
**satisfy** [1] - 21:21
**saving** [1] - 69:16
**saw** [1] - 58:6
**scary** [1] - 44:20
**schedule** [1] - 50:4
**schedules** [1] - 18:24
**scheme** [3] - 11:20, 15:10, 17:2
**Schoettelkotte** [5] - 5:15, 5:17, 6:11, 6:15, 7:5
**Schoettelkotte's** [1] - 6:16
**scope** [12] - 8:8, 12:3, 12:11, 12:12, 12:13, 15:7, 16:12, 18:16, 33:15, 42:4, 69:13, 70:2
**screen** [1] - 72:9
**screwed** [1] - 26:25
**scrutiny** [1] - 71:24
**seal** [3] - 71:22, 72:4, 72:7
**sealed** [3] - 72:10, 72:12
**sealing** [1] - 71:21
**seated** [1] - 3:3
**second** [6] - 7:24,

10:14, 13:20, 13:21, 42:9, 44:24
**secret** [1] - 55:13
**Section** [4] - 8:11, 8:15, 9:20, 10:15
**see** [5] - 35:8, 43:16, 46:10, 58:4, 75:21
**seek** [5] - 24:17, 25:8, 26:21, 43:22, 45:21
**seeking** [2] - 24:24, 45:11
**seeks** [3] - 18:16, 54:24, 54:25
**seem** [2] - 29:12, 30:12
**select** [1] - 73:17
**selection** [2] - 71:14, 73:11
**sell** [1] - 19:13
**selling** [1] - 15:20
**send** [4] - 57:17, 74:4, 74:14, 74:15
**senior** [2] - 33:3, 69:4
**sense** [3] - 11:17, 14:21, 49:11
**sent** [1] - 60:4
**separate** [6] - 11:3, 15:13, 15:16, 36:1, 36:2, 57:1
**separately** [1] - 20:2
**series** [3] - 8:17, 8:19, 19:8
**serve** [1] - 62:9
**session** [1] - 3:1
**set** [5] - 23:12, 49:12, 51:9, 72:17, 74:20
**settlement** [1] - 48:1
**seven** [1] - 64:19
**Seventh** [1] - 12:16
**severe** [1] - 34:10
**severely** [1] - 20:10
**SHAELYN** [1] - 2:4
**Shaelyn** [1] - 3:7
**shall** [1] - 8:18
**SHEA** [1] - 1:23
**sheet** [1] - 25:3
**shop** [1] - 41:23
**short** [3] - 49:6, 67:11, 73:5
**shortly** [1] - 5:16
**show** [14] - 17:2, 18:20, 21:14, 22:4, 22:8, 26:17, 26:19, 27:21, 27:24, 30:5, 40:5, 70:25, 71:4
**showing** [5] - 22:21, 28:21, 28:22, 28:23, 28:25
**shown** [2] - 20:17, 72:9

**shows** [1] - 26:9
**side** [5] - 4:14, 4:15, 51:25, 69:13, 74:15
**side's** [1] - 72:5
**sidelines** [2] - 42:19, 42:24
**sides** [2] - 22:11, 58:11
**signed** [1] - 25:3
**silly** [1] - 63:9
**similar** [1] - 5:3
**similarly** [1] - 56:6
**simplification** [1] - 6:9
**simplifying** [1] - 3:25
**simply** [1] - 64:24
**single** [1] - 73:21
**sit** [2] - 68:19, 71:9
**sitting** [1] - 42:23
**six** [2] - 14:11, 65:8
**sky** [1] - 42:12
**slow** [1] - 56:3
**Smith** [1] - 76:16
**solve** [1] - 42:17
**someone** [3] - 18:22, 28:9, 29:7
**sometimes** [1] - 76:15
**soon** [1] - 47:21
**sorry** [6] - 21:13, 23:4, 45:13, 45:14, 56:23, 75:3
**sort** [4] - 30:1, 35:8, 52:16, 60:5
**sought** [3] - 8:23, 14:15, 53:25
**sound** [2] - 32:13, 43:14
**sounds** [7] - 31:4, 32:14, 37:25, 43:12, 71:6, 72:21, 73:9
**speaking** [2] - 12:18, 76:19
**speaks** [1] - 12:15
**specific** [26] - 6:17, 8:3, 8:8, 8:25, 13:1, 19:18, 24:18, 26:10, 27:17, 27:23, 28:15, 29:23, 30:14, 30:18, 31:9, 34:23, 35:13, 35:25, 38:20, 43:24, 50:12, 50:18, 57:11, 58:3
**specifically** [4] - 28:8, 32:8, 66:7, 66:10
**speculative** [7] - 28:22, 29:13, 31:17, 32:24, 37:17, 39:23, 40:19
**speed** [1] - 26:5
**spend** [3] - 34:11, 63:10, 63:11

**sponsoring** [1] - 69:12
**squarely** [1] - 14:22
**stamp** [1] - 9:24
**stamps** [3] - 9:10, 9:21, 9:23
**stand** [3] - 36:22, 38:11, 44:9
**standard** [2] - 71:23, 71:24
**standing** [2] - 22:10, 23:14
**stands** [1] - 26:8
**STARGATT** [1] - 1:22
**start** [2] - 6:8, 52:21
**starting** [2] - 13:12, 45:3
**statement** [4] - 15:5, 20:9, 22:9, 45:8
**statements** [5] - 7:16, 8:24, 54:6, 55:2, 56:19
**STATES** [1] - 1:1
**States** [2] - 1:18, 2:24
**stenographic** [1] - 77:5
**still** [5] - 36:10, 42:4, 55:15, 65:12, 66:19
**stipulation** [6] - 42:17, 43:5, 43:10, 43:16, 62:2, 62:20
**stock** [1] - 25:17
**stood** [1] - 25:25
**stop** [1] - 40:12
**story** [1] - 21:25
**streamline** [1] - 61:10
**Street** [1] - 1:15
**strict** [1] - 71:24
**strike** [1] - 68:17
**strongly** [2] - 70:23, 71:7
**structure** [1] - 25:2
**stuff** [10] - 27:10, 28:22, 35:17, 36:6, 36:11, 42:13, 51:5, 51:13, 70:13, 72:7
**subject** [6] - 9:9, 10:2, 13:20, 13:22, 36:17, 66:15
**submission** [1] - 4:18
**submissions** [1] - 58:5
**submit** [8] - 50:15, 57:3, 58:7, 59:9, 60:15, 63:10, 71:10, 75:5
**subsequent** [1] - 68:10
**substance** [3] - 9:8, 48:11, 48:13

**substantial** [1] - 59:18
**substantially** [1] - 24:22
**sue** [2] - 29:18, 35:6
**suffered** [1] - 47:5
**suffering** [1] - 36:5
**suffice** [1] - 47:2
**suffices** [1] - 40:5
**sufficient** [5] - 20:22, 30:5, 47:2, 64:21, 66:7
**sufficiently** [1] - 20:17
**suggest** [5] - 4:21, 28:9, 32:16, 34:13, 60:14
**suggested** [1] - 58:7
**suggesting** [1] - 20:13
**suggestion** [1] - 60:13
**suggests** [1] - 58:25
**suing** [3] - 35:7, 35:9
**suit** [1] - 35:3
**summary** [5] - 32:5, 32:23, 47:5, 47:13, 47:22
**super** [1] - 39:22
**supplement** [2] - 66:8, 66:11
**supplemental** [3] - 45:17, 59:22, 64:18
**support** [2] - 56:5, 56:6
**supporting** [1] - 64:23
**suppose** [1] - 41:11
**supposed** [7] - 16:1, 33:16, 43:2, 49:19, 49:20, 53:13, 59:13
**Supreme** [1] - 17:20
**Suzuki** [1] - 12:17
**swapped** [1] - 61:17
**swing** [1] - 31:25

## T

**table** [2] - 3:15, 68:20
**talks** [4] - 23:13, 23:17, 23:19, 50:10
**TAYLOR** [1] - 1:22
**technology** [25] - 15:3, 15:23, 15:24, 19:11, 20:23, 26:4, 28:4, 28:7, 28:18, 29:2, 29:19, 29:24, 30:9, 33:5, 33:15, 34:9, 34:19, 37:4, 37:5, 39:11, 40:4, 41:23, 42:11, 53:11
**ten** [2] - 65:3, 65:6
**term** [1] - 25:2
**terminate** [2] - 14:7, 55:23

**terminated** [1] - 56:12
**termination** [8] - 9:14, 9:17, 9:19, 10:2, 16:6, 38:6, 54:1, 55:24
**terms** [14] - 14:14, 21:18, 27:17, 28:15, 33:11, 33:14, 33:15, 38:9, 38:10, 39:4, 43:7, 47:7, 61:8, 68:3
**terribly** [2] - 59:17, 60:19
**terrific** [1] - 68:23
**testifies** [2] - 69:15, 69:16
**testify** [11] - 5:23, 6:5, 27:7, 27:8, 27:10, 28:9, 31:14, 32:10, 66:21, 66:24
**testifying** [4] - 5:21, 5:24, 7:5, 65:1
**testimony** [8] - 6:4, 6:16, 7:17, 24:18, 28:3, 28:14, 28:20, 72:12
**THE** [177] - 1:1, 1:2, 1:18, 3:2, 3:11, 3:13, 3:20, 4:5, 4:13, 4:19, 4:21, 5:2, 5:9, 5:12, 6:19, 6:25, 7:18, 7:24, 9:1, 9:3, 10:3, 10:6, 10:16, 10:21, 11:7, 11:10, 11:14, 11:19, 13:3, 13:17, 15:9, 15:17, 15:25, 16:9, 16:13, 16:24, 17:11, 17:23, 18:1, 18:4, 18:10, 18:15, 19:3, 23:23, 24:10, 24:14, 25:13, 25:20, 26:12, 26:15, 28:1, 28:8, 28:21, 29:5, 29:25, 30:19, 31:1, 31:10, 31:12, 32:9, 32:15, 33:20, 34:1, 34:25, 35:5, 35:16, 35:21, 35:23, 36:3, 36:23, 37:10, 38:19, 38:24, 39:8, 39:13, 39:15, 39:22, 40:7, 41:4, 42:2, 43:2, 43:11, 43:21, 44:7, 44:20, 44:24, 45:2, 45:5, 45:9, 45:13, 46:9, 46:20, 47:3, 47:13, 48:12, 48:17, 48:20, 49:2, 49:8, 49:15, 49:18, 50:13, 51:3, 51:8, 51:12,

52:4, 52:9, 52:19, 53:3, 53:6, 53:10, 53:16, 53:19, 54:12, 55:1, 55:5, 55:15, 55:18, 55:20, 56:13, 56:21, 57:2, 57:14, 57:20, 57:23, 58:16, 58:25, 59:6, 59:12, 59:19, 59:23, 60:7, 60:17, 61:11, 61:14, 61:21, 62:22, 62:24, 63:6, 63:9, 63:22, 64:2, 64:4, 64:8, 65:14, 65:17, 65:19, 66:2, 66:17, 66:23, 67:1, 67:12, 67:15, 67:22, 68:2, 68:6, 68:8, 68:17, 69:22, 70:4, 70:9, 70:12, 70:20, 70:24, 71:2, 71:7, 71:21, 72:15, 73:9, 73:11, 75:1, 75:11, 75:18, 76:1, 76:12, 76:23, 76:25
**themselves** [2] - 44:17, 69:9
**theory** [2] - 44:19, 45:25
**therefore** [1] - 6:12
**they've** [6] - 6:14, 38:5, 38:7, 44:17, 44:18, 45:20
**thinking** [1] - 36:25
**Third** [2] - 17:21, 71:23
**third** [2] - 26:23, 65:20
**third-party** [1] - 26:23
**thirty** [1] - 72:7
**threat** [1] - 55:23
**threaten** [2] - 41:5, 42:22
**threatened** [1] - 41:2
**threatens** [1] - 41:24
**three** [8] - 17:23, 17:24, 18:10, 52:20, 57:3, 57:17, 67:19, 75:22
**throughout** [1] - 14:11
**Thursday** [1] - 51:16
**TLA** [17] - 18:18, 18:19, 19:14, 21:5, 21:7, 21:8, 21:10, 21:23, 22:3, 22:13, 22:19, 23:1, 23:3, 23:21
**TLAs** [3] - 19:5, 20:8, 20:16
**today** [7] - 3:7, 17:22, 44:2, 46:17, 46:22, 47:6, 65:7

**took** [3] - 5:19, 19:15, 38:15
**top** [1] - 74:2
**totally** [1] - 38:11
**touched** [1] - 76:8
**towards** [2] - 11:24, 54:23
**toying** [1] - 57:23
**trademark** [2] - 5:1, 5:5
**transaction** [2] - 26:2, 53:15
**transcript** [2] - 75:5, 77:5
**transcripts** [1] - 72:12
**transfer** [2] - 24:5, 25:17
**transferred** [1] - 20:23
**transition** [1] - 7:16
**trial** [40] - 8:21, 12:1, 22:10, 22:23, 33:3, 35:12, 36:10, 36:21, 40:8, 43:18, 45:16, 46:2, 46:6, 49:25, 52:18, 57:25, 58:3, 61:6, 62:18, 63:20, 64:15, 64:22, 64:25, 66:22, 66:24, 67:10, 67:11, 70:13, 71:11, 72:8, 73:3, 73:20, 73:24, 73:25, 74:5, 75:4, 75:6, 75:7
**trials** [1] - 71:15
**triangular** [1] - 53:7
**tried** [3] - 18:22, 21:15, 70:18
**trouble** [1] - 4:23
**true** [7] - 20:14, 34:16, 36:9, 43:3, 47:12, 54:11, 77:5
**truly** [1] - 51:4
**trust** [1] - 23:15
**try** [5] - 34:13, 41:19, 46:7, 55:24, 62:16
**trying** [9] - 5:20, 13:13, 60:2, 62:8, 62:10, 63:5, 63:11, 63:18, 69:18
**Tuf** [1] - 12:17
**TUNNELL** [1] - 2:10
**turn** [2] - 7:19, 35:14
**turns** [1] - 70:15
**two** [9] - 6:13, 7:8, 7:10, 32:6, 37:11, 37:13, 40:19, 48:7, 75:6
**typically** [1] - 49:23

## U

**U.K** [1] - 1:5
**U.S** [1] - 77:8
**ultimately** [1] - 28:18
**unchallenged** [1] - 40:25
**unclean** [13] - 16:8, 17:13, 50:15, 54:12, 54:22, 55:6, 55:7, 55:8, 55:17, 55:20, 56:4, 56:13, 57:3
**under** [33] - 11:25, 12:24, 13:11, 14:2, 15:13, 15:22, 15:23, 16:5, 16:6, 16:21, 18:17, 19:14, 21:8, 21:10, 21:15, 22:3, 22:5, 22:7, 23:1, 23:7, 23:10, 23:21, 24:1, 24:23, 41:19, 47:11, 54:5, 55:2, 56:10, 56:17, 56:24, 66:6, 72:7
**underlying** [1] - 36:6
**understandable** [1] - 62:9
**understood** [15] - 4:25, 5:8, 6:24, 10:23, 11:22, 29:5, 43:20, 43:21, 52:8, 57:22, 61:20, 64:7, 67:24, 76:21
**undesignate** [1] - 72:14
**undoubtedly** [2] - 35:12, 46:18
**undue** [1] - 12:24
**UNITED** [1] - 1:1
**United** [2] - 1:18, 2:24
**universe** [2] - 59:9, 60:11
**unjust** [1] - 49:4
**unjustly** [1] - 48:23
**unless** [4] - 26:22, 32:17, 39:25, 56:22
**unlicensed** [19] - 13:14, 15:21, 16:7, 28:3, 28:6, 28:18, 29:2, 29:19, 29:23, 33:5, 34:9, 34:19, 39:11, 40:4, 41:1, 41:24, 42:12, 42:21, 53:12
**unprecedented** [1] - 29:18
**up** [32] - 6:22, 17:16, 26:25, 29:7, 32:5, 32:20, 35:12, 36:7, 37:2, 37:22, 38:17,

38:25, 41:8, 42:5, 42:9, 43:16, 44:24, 45:23, 46:1, 46:11, 48:9, 55:24, 62:15, 67:9, 71:15, 72:9, 72:17, 72:25, 73:3, 74:2, 74:18, 75:17
**update** [1] - 61:9
**updated** [1] - 76:2
**updates** [1] - 58:11

## V

**value** [1] - 23:9
**various** [1] - 57:11
**verdict** [7] - 14:14, 14:17, 40:23, 49:12, 50:2, 50:11, 54:20
**versa** [1] - 62:15
**version** [1] - 58:14
**versions** [1] - 73:20
**versus** [1] - 23:3
**via** [1] - 58:15
**vice** [3] - 33:3, 62:15, 69:4
**vice-president** [2] - 33:3, 69:4
**video** [4] - 70:5, 70:7, 74:23, 76:20
**view** [6] - 17:18, 29:3, 34:8, 43:8, 53:15, 53:25
**violation** [1] - 9:20
**virtue** [2] - 25:25, 67:6
**vision** [1] - 5:6
**voir** [4] - 73:14, 75:16, 75:20
**voluntary** [1] - 4:11
**Voss** [1] - 66:6
**VRANA** [1] - 1:23
**Vrana** [1] - 3:10

## W

**wait** [4] - 13:17, 42:9, 51:8, 52:22
**waited** [2] - 55:22, 56:15
**waive** [1] - 9:25
**waived** [1] - 46:13
**waiver** [3] - 56:6, 56:14, 57:4
**wants** [5] - 18:20, 42:25, 52:13, 69:24
**waste** [1] - 58:18
**ways** [1] - 12:25
**Wednesday** [1] - 1:12
**week** [3] - 48:8, 52:3, 52:11
**weeks** [3] - 64:14,

67:19, 75:6
**weight** [1] - 6:17
**Weiss** [3] - 3:17, 3:18, 73:1
**WEISS** [1] - 2:13
**welcome** [1] - 3:20
**Welham** [2] - 61:16, 74:5
**whichever** [1] - 16:1
**whittle** [1] - 61:2
**whole** [3] - 37:2, 56:4, 61:15
**William** [1] - 10:1
**Williams** [11] - 9:6, 9:8, 9:10, 9:11, 9:15, 9:16, 9:22, 9:23, 69:3, 69:15, 69:23
**Williamson** [2] - 32:22, 44:3
**Williamson's** [2] - 33:2, 35:15
**willing** [1] - 33:12
**willingness** [2] - 33:13, 38:14
**Wilmington** [1] - 1:15
**win** [1] - 46:5
**wind** [1] - 6:22
**withdraw** [1] - 4:11
**withheld** [1] - 24:5
**withstanding** [1] - 46:12
**witness** [25] - 21:13, 28:14, 33:3, 41:20, 42:5, 61:3, 62:16, 64:8, 64:12, 64:16, 64:24, 64:25, 66:11, 68:5, 68:24, 69:3, 69:19, 69:20, 73:4, 74:6, 74:8, 74:9, 74:16
**witnesses** [14] - 8:14, 27:13, 40:15, 42:25, 44:4, 44:9, 64:19, 65:4, 65:7, 65:8, 67:20, 69:11, 75:21
**words** [2] - 8:16, 68:25
**works** [1] - 5:3
**worth** [2] - 37:7, 42:7
**written** [2] - 37:8, 42:8
**wrongfully** [1] - 24:5

## Y

**year** [4] - 55:22, 55:23, 56:11, 56:15
**yesterday** [1] - 6:10
**YING** [9] - 2:11, 7:7, 7:19, 9:4, 58:9, 58:22, 59:3, 59:7,

59:24
**Ying** [3] - 3:17, 7:7, 73:5
**YOUNG** [1] - 1:22
**Young** [1] - 3:6

## Z

**zero** [2] - 19:23