# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ARM LTD.,

                Plaintiff,

      v.

QUALCOMM INC., QUALCOMM
TECHNOLOGIES, INC., and NUVIA, INC.,

                Defendants.

C.A. No. 22-1146-MN

**REDACTED - PUBLIC VERSION
FILED JAN. 24, 2025**

## OPENING BRIEF IN SUPPORT OF PLAINTIFF ARM LTD.'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL

32767787.1

Dated: January 17, 2025

OF COUNSEL:

Daralyn J. Durie
Joyce Liou
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
jliou@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Kyle W.K. Mooney
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
(212) 336-4092
kmooney@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

Daniel Muino
MORRISON & FOERSTER LLP
2100 L Street, NW
Suite 900, Washington, D.C. 20037
(202) 887-1500
dmuino@mofo.com

YOUNG CONAWAY STARGATT &
     TAYLOR, LLP
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Plaintiff Arm Ltd.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF THE ARGUMENT ................................................... 1

NATURE AND STAGE OF THE PROCEEDINGS ................................................................. 2

STATEMENT OF FACTS ....................................................................................................... 2

ARGUMENT ............................................................................................................................ 4

I.      THE COURT SHOULD GRANT ARM JUDGMENT AS A MATTER OF LAW
        OR A NEW TRIAL. ...................................................................................................... 4

        A.      The Nuvia-Acquired Designs Are Not Licensed Under the Qualcomm
                ALA. ................................................................................................................. 4

                1.      The Nuvia-Acquired Designs Were Not Developed Under the
                        Licenses Granted in the Qualcomm ALA. ........................................... 5

                2.      The Nuvia-Acquired Designs Were Not Developed by or for
                        Qualcomm. .......................................................................................... 6

                3.      The Qualcomm License Is Limited to ████████████████ That Arm
                        ████████████████████████████████████████ .......................... 7

        B.      Nuvia Breached the Nuvia ALA (Question 1) ........................................... 9

        C.      Qualcomm Breached the Nuvia ALA (Question 2) ................................. 10

                1.      Qualcomm Breached as a Matter of Law. ......................................... 10

                2.      The Court Should Grant a New Trial Because the Jury's Erroneous
                        Verdict on Question 3 Likely Infected Its Verdict for Question 2. ......... 10

                3.      The Court Should Grant a New Trial on Question 2. ........................... 12

II.     THE COURT SHOULD GRANT A NEW TRIAL ON ALL THREE
        QUESTIONS. .............................................................................................................. 14

        A.      Questions 1 and 2 Are Not Distinct and Separable Issues ................... 15

        B.      Whether Qualcomm Is Licensed (Question 3) Is Not Distinct and Separable
                from Whether Nuvia Breached (Question 1). ......................................... 18

CONCLUSION ....................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Home Assur. Co. v. Sunshine Supermarket, Inc.*,
  753 F.2d 321 (3d Cir. 1985)................................................................16

*Brobeck, Phleger & Harrison v. Telex Corp.*,
  602 F.2d 866 (9th Cir. 1979) ...............................................................5

*Colonial Leasing of New England, Inc. v. Logistics Control Int'l*,
  770 F.2d 479 (5th Cir. 1985) ...............................................................16

*Cont'l Cas. Co. v. United States*,
  167 F.2d 107 (9th Cir. 1948) ...............................................................18

*Drumgold v. Callahan*,
  707 F.3d 28 (1st Cir. 2013)..................................................................15

*Elcock v. Kmart Corp.*,
  233 F.3d 734 (3d Cir. 2000)............................................................2, 14

*Encompass Off. Sols., Inc. v. La. Health Serv. & Indem. Co.*,
  919 F.3d 266 (5th Cir. 2019) ...............................................................16

*FNBN Rescon I, LLC v. Citrus El Dorado, LLC*,
  725 F. App'x 448 (9th Cir. 2018) ........................................................12

*Gasoline Prods. Co. v. Champlin Refining Corp.*,
  283 U.S. 494 (1931).......................................................................*passim*

*Iqbal v. Ziadeh*,
  10 Cal. App. 5th 1 (2017) ......................................................................5

*Kutner Buick, Inc. v. Am. Motors Corp.*,
  868 F.2d 614 (3d Cir. 1989)..................................................................14

*Melchior v. New Line Prods.*,
  106 Cal. App. 4th 779 (2003) ...............................................................12

*Morgan v. Covington Twp.*,
  563 F. App'x 896 (3d Cir. 2014) ............................................................4

*Nissho-Iwai Co. v. Occidental Crude Sales*,
  729 F.2d 1530 (5th Cir. 1984) ..............................................................16

*Norman v. Elkin*,
    849 F. Supp. 2d 418 (D. Del. 2012)..................................................................................9

*Norman v. Elkin*,
    860 F.3d 111 (3d Cir. 2017)..........................................................................................4

*Opal Labs Inc. v. Sprinklr, Inc.*,
    No. 3:18-cv-01192, 2022 WL 526167 (D. Or. Jan. 7, 2022).................................15

*Payton v. Abbott Labs*,
    780 F.2d 147 (1st Cir. 1985)........................................................................................16

*Phila. Indem. Ins. Co. v. SMG Holdings, Inc.*,
    44 Cal. App. 5th 834 (2019) .......................................................................................12

*Pryer v. C.O. 3 Slavic*,
    251 F.3d 448 (3d Cir. 2001)..........................................................................11, 15, 16

*Spence v. Bd. of Educ. of Christina Sch. Dist.*,
    806 F.2d 1198 (3d Cir. 1986)......................................................................................14

*Vizzini v. Ford Motor Co.*,
    569 F.2d 754 (3d Cir. 1977)........................................................................................14

*Williams v. Rene*,
    72 F.3d 1096 (3d Cir. 1995)........................................................................................18

*Williams v. Slade*,
    431 F.2d 605 (5th Cir. 1970) ......................................................................................18

*Williamson v. Consol. Rail Corp.*,
    926 F.2d 1344 (3d Cir. 1991)......................................................................................12

*Witco Chem. Corp. v. Peachtree Doors, Inc.*,
    787 F.2d 1545 (Fed. Cir. 1986)..................................................................................16

## Statutes & Other Authorities

Cal. Civ. Code § 1589..................................................................................................12, 13

Fed. R. Civ. P.
    50(a) ..............................................................................................................................4
    54(b) ............................................................................................................................20
    59..................................................................................................................................9

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Qualcomm and Nuvia worked closely together in breaching Nuvia's Architecture License Agreement ("Nuvia ALA") with Arm both before and after Qualcomm acquired Nuvia. As a result, Arm terminated the Nuvia ALA and, after repeated attempts at resolution, demanded that Qualcomm and Nuvia stop using the pre-acquisition Nuvia code implementing Arm's proprietary CPU architecture. Defendants do not dispute the termination or the related duty to return or destroy derivatives and embodiments of what the Nuvia ALA calls the Arm Technology. But Defendants offer such a miserly interpretation of that duty—and such a sweeping vision of Qualcomm's rights under its separate ALA with Arm ("Qualcomm ALA")—that both Defendants would be free to continue using code implementing the Arm architecture even after Nuvia's license to that architecture terminated. Those arguments are inconsistent with the express terms of the relevant agreements.

The Court should therefore grant Arm judgment as a matter of law ("JMOL") across the board. First, the Qualcomm ALA does not grant Qualcomm a license to the Nuvia-developed code. Qualcomm's license under the Qualcomm ALA is limited to CPU cores developed (1) under the licenses granted in that ALA, (2) by or for Qualcomm, and (3) based on Arm Technology that Arm delivered to Qualcomm. The CPU designs and code Nuvia developed before it was acquired by Qualcomm check none of those boxes. Nuvia and Qualcomm each breached their return-or-destroy obligation under § 15.1 of the Nuvia ALA—an obligation Nuvia expressly accepted and that Qualcomm assumed through its conduct and by acquiring Nuvia. Following termination of the Nuvia ALA, the code created by Nuvia is not licensed to implement the Arm architecture under any ALA. Nonetheless, Qualcomm continues to use that code in its CPUs and products.

If the Court does not grant Arm JMOL, it should order a new trial on all issues. The jury deadlocked on whether Nuvia breached § 15.1, so a new trial is mandatory on that claim. The two

claims the jury did decide—whether Qualcomm breached § 15.1 and whether Qualcomm has a license to the Nuvia-developed code—are inseparable from the issue of Nuvia's breach. All three claims concern the same facts, the same course of conduct, and the parties' rights and obligations to the same technology. The two breach claims also involve the same contractual provision, while a finding that Nuvia breached its return-or-destroy obligation should be the death knell for Qualcomm's purported license argument. Given the significant factual and legal overlap between the three claims, there is no reason to depart from the "general presumption against partial new trials," *Elcock v. Kmart Corp.*, 233 F.3d 734, 758 (3d Cir. 2000), and the issues "cannot be submitted to the jury independently" without violating the Seventh Amendment's Reexamination Clause. *Gasoline Prods. Co. v. Champlin Refining Corp.,* 283 U.S. 494, 500 (1931).

## NATURE AND STAGE OF THE PROCEEDINGS

The Court held a four-day trial in December 2024. At the end of that trial, the jury was asked to answer three questions: (1) whether Nuvia breached Section 15.1(a) of the Nuvia ALA, (2) whether Qualcomm breached Section 15.1(a) of the Nuvia ALA, and (3) whether the Qualcomm CPUs based on code acquired in the Nuvia acquisition are licensed under the Qualcomm ALA (D.I. 569.)

The jury reached a verdict in Qualcomm's favor on Questions 2 and 3 but deadlocked on Question 1. (Tr. 1000:3-1004:10.) The Court accepted the verdict on Questions 2 and 3, declared a mistrial on Question 1, and excused the jury on December 20, 2024. (*Id.* at 1017:5-1021:3.) Arm now renews its motions for JMOL, and in the alternative, seeks a new trial.

## STATEMENT OF FACTS

Qualcomm signed an ALA with Arm in 2013. (JTX-0010; JTX-0011.) Nuvia was formed six years later, and entered into an unrelated, independent ALA with Arm in 2019. (JTX-0001; JTX-0002.) The pre-acquisition Nuvia code at issue was developed by Nuvia engineers under the

32767787.1

Nuvia ALA. (Tr. 390:7-24, 394:4-395:24, 784:3-10.) At that time, Nuvia had no relationship with Qualcomm, and was not operating under the Qualcomm ALA. (*Id.* 583:4-584:5.)

The Nuvia ALA expressly obligated Nuvia to obtain Arm's prior permission before undergoing a change of control or otherwise assigning Nuvia's rights under the Nuvia ALA. (JTX-0001 § 16.3.) Qualcomm announced its plan to acquire Nuvia in January 2021, without first consulting Arm. (PTX-0212 at 1-2; PTX-0234 at 2; Tr. 172:8-173:7, 216:14-23.) Qualcomm later asked on Nuvia's behalf to assign the Nuvia ALA and to transfer the pre-acquisition Nuvia code to Qualcomm. (Tr. 177:14-21; PTX-0234 at 2; PTX-0253 at 1-2; PTX-0268.) For months, Arm tried to negotiate with Qualcomm in good faith, but ultimately did not grant consent, because the parties couldn't agree on terms for the assignment. (PTX-0240; PTX-0247; PTX-0260 at 2; Tr. 180:20-181:7, 226:21-24.) Refusing to take no for an answer, Qualcomm nonetheless transferred Nuvia personnel and work product to itself and incorporated the pre-acquisition code Nuvia developed under the Nuvia ALA into Qualcomm designs in breach of the Nuvia ALA. (Tr. 409:16-21, 410:2-21, 412:9-20, 552:9-20, 809:1-12, 810:1-21.)

Nuvia's and Qualcomm's actions triggered Arm's contractual right to terminate the Nuvia ALA. (JTX-0001 §§ 14.2(i), 16.3.) Arm exercised its termination rights on March 1, 2022. (JTX-0008; PTX-0376.) Termination triggered an obligation under § 15.1 of the Nuvia ALA to stop using, and to return or destroy, both (1) the Arm Technology delivered under the Nuvia ALA and (2) derivatives and embodiments of that technology developed by Nuvia under the Nuvia ALA. (JTX-0001 § 15.1; JTX-0008.) Neither Nuvia nor Qualcomm questioned Arm's right to terminate the Nuvia ALA or disputed their return-or-destroy obligations upon termination. (Tr. 183:12-16, 184:9-13, 406:4-8, 563:10-19.) Yet neither company complied with those obligations, despite the certification of compliance sent by Qualcomm and signed by Nuvia's former CEO that they had

done so. (JTX-0009 at 1-2; Tr. 409:16-21, 412:9-20, 552:9-20, 705:12-20, 809:1-12; PTX-0400 at 1; PTX-0897 at 1.) Despite Qualcomm's purported "swap out" of certain peripheral code written by Arm and provided under the unrelated Nuvia *Technology* License Agreement, Nuvia and Qualcomm did not remove the CPU code that Nuvia developed pre-acquisition that implements Arm's proprietary architecture. (Tr. 380:15-19, 390:7-24, 409:1-21, 824:21-24, PTX-0650 at 1.)

Instead, Qualcomm continued to use pre-acquisition Nuvia code in products that Qualcomm sells today. (Tr. 409:19-21, 412:9-20, 552:9-20, 809:1-12; 824:21-24.) After Arm learned that Qualcomm was using Nuvia-developed code that it certified had been destroyed, and after Arm's many attempts at resolution were ignored, Arm filed suit. (D.I. 1.)

## ARGUMENT

## I. THE COURT SHOULD GRANT ARM JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL.

The Court should grant JMOL in Arm's favor on all three questions presented to the jury. JMOL is appropriate "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). A court must "view[] the evidence in the light most favorable to the nonmoving party," *Morgan v. Covington Twp.*, 563 F. App'x 896, 899 (3d Cir. 2014) (citations omitted), but "a scintilla of evidence is not enough" to tip the scales in favor of the non-moving party. *Norman v. Elkin*, 860 F.3d 111, 129 (3d Cir. 2017) (citation omitted). Here, no reasonable jury could find that (1) Qualcomm has a license to the Nuvia-acquired designs that should have been destroyed; (2) Nuvia complied with its destruction obligations under the Nuvia ALA; or (3) Qualcomm complied with its destruction obligations under the same agreement. If JMOL is not granted, a new trial should be ordered on each issue.

## A. The Nuvia-Acquired Designs Are Not Licensed Under the Qualcomm ALA.

No reasonable jury could find that the Nuvia-acquired CPU designs are licensed under the Qualcomm ALA, which is governed by California law. (JTX-0010 § 16.15.) The "interpretation of [an] unambiguous contract . . . is solely a question of law" that the Court decides. *Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 871-72 (9th Cir. 1979); *see also Iqbal v. Ziadeh*, 10 Cal. App. 5th 1, 8 (2017). The Qualcomm ALA is an integrated agreement (JTX-0010 § 16.10), and neither party has asserted its terms are ambiguous or introduced parol evidence to vary its plain meaning. Nothing in the language of the Qualcomm ALA grants Qualcomm a license to CPU code or designs developed under a different ALA. Qualcomm's license is instead unambiguously limited to Architecture Compliant Cores developed (1) under the licenses granted in the Qualcomm ALA, (2) by or for Qualcomm, and (3) based on ███████████████████████████████ ████████████████. (JTX-0011 § A.6; JTX-0010 § ██.) The designs Qualcomm acquired from Nuvia satisfy none of those requirements.

### 1.    The Nuvia-Acquired Designs Were Not Developed Under the Licenses Granted in the Qualcomm ALA.

*First*, the Qualcomm ALA grants Qualcomm a license only to make Architecture Compliant Cores under the terms of the licenses granted in Annex 1 to the Qualcomm ALA. Section B.1.1 grants a license to use the "applicable Arm Technology" delivered by Arm to Qualcomm to design Architecture Compliant Cores. (JTX-0011 § B.1.1.) Annex 1 defines an Architecture Compliant Core as "a microprocessor core developed [1] *by or for LICENSEE* [2] *under the licenses granted in this Annex 1.*" (JTX-0011 § A.6 (all emphasis added throughout unless otherwise indicated).) Qualcomm's ALA thus grants Qualcomm a license for its employees to perform development work under the licenses granted in Annex 1 of the Qualcomm ALA, not some other ALA. Qualcomm may also, subject to the restrictions set forth in § 2.2 of the Qualcomm ALA, ████████████████████████████████████████████████████

████████████████████████████████████████.[1] (JTX-0010 §§ ███, 2.2; JTX-0011 §§ A.6, B.1.1.) But Qualcomm's ALA grants no rights with respect to CPU code developed by a third party under a different ALA, such as pre-acquisition Nuvia code developed by and for Nuvia under the Nuvia ALA. (*See* JTX-0010 § ███; JTX-0011 §§ A.6, B.1.1; Tr. 585:23-586:15.)

The undisputed evidence at trial established that Nuvia's pre-acquisition CPU code was *not* developed under the licenses granted in the Qualcomm ALA, but rather under the licenses granted in the Nuvia ALA. (PTX-0103 at 1-2; PTX-0260 at 2; Tr. 380:15-19, 390:7-24, 394:4-395:24, 583:4-584:5, 585:23-586:15, 784:3-10.) Nuvia cofounder Gerard Williams admitted that Nuvia entered into its ALA to develop an architecture compliant core. (Tr. 380:15-19, 390:7-24.) Jonathan Weiser, a Qualcomm attorney involved in negotiation of the Qualcomm ALA, conceded that Nuvia did not have any pre-acquisition rights under the Qualcomm ALA, when Nuvia was a separate company with no legal relationship to Qualcomm. (Tr. 583:4-584:5.) Qualcomm's CEO, Cristiano Amon, similarly admitted that Nuvia needed its separate Nuvia ALA to create the designs developed by Nuvia engineers before the acquisition. (Tr. 784:3-10, 786:9-19.)

## 2. The Nuvia-Acquired Designs Were Not Developed by or for Qualcomm.

*Second*, this same evidence established that Nuvia's pre-acquisition code was not developed *by* Qualcomm or *for* Qualcomm. (Tr. 585:23-586:15.) The Nuvia-acquired designs thus are not licensed under the Qualcomm ALA, which limits the universe of licensed Architecture Compliant Cores to those "developed by or for" Qualcomm. (JTX-0011 § A.6.) Qualcomm relied

---

[1] Section 2.2 requires ████████████████████████████████████████████████████████████████████████████████████████████████████████. (JTX-0010 § 2.2.) Nuvia's development work does not satisfy any of these conditions.

on allegedly "broad" language in the Qualcomm ALA giving it the right "to design and have designed . . . including all stages of implementation from specification through RTL design to generation of GDSII." (Tr. 927:20-22, 928:5-23; JTX-0011 § B.1.1.) But that language is "subject to Clause 2.2 of the ALA" which ███████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██ (JTX-0011 § B.1.1; JTX-0010 § 2.2.) The clause merely gives *Qualcomm* the right to design a core using the expressly delineated restrictions set forth in § 2.2 of the Qualcomm ALA. It does not relieve Qualcomm of its obligation to ████████████████████████████████████████

████████████████████████████████████████████████████████. (JTX-0010

§ ███ JTX-0011 §§ A.6, B.1.1.) The language in §§ B.1.1 & 2.2 thus grants no rights with respect to Nuvia's pre-acquisition code, which was developed by and for Nuvia under the Nuvia ALA, without any direction or input from Qualcomm. (Tr. 585:23-586:15.)

The ████████ and "Subsidiaries" terms in the Qualcomm ALA likewise do not confer a license. While the Qualcomm ALA █████████████████████████████ there is no evidence Qualcomm entered into a ████████████████████████████████ consistent with the limits § 2.2 imposes. (JTX-0010 §§ ████, 2.2.) Instead, Qualcomm's pre-acquisition attempts to use Nuvia's CPU core designs were rebuffed by Mr. Williams, leading to Qualcomm's subsequent acquisition of Nuvia. (PTX-1197 at 1-4; Tr. 394:4-396:10, 796:7-797:8.) And "Subsidiaries" is limited to a company controlled by Qualcomm, with the license operative "only for the period during which such control exists," thereby excluding pre-acquisition Nuvia. (JTX-0010 § 1.23.)

3.    **The Qualcomm License Is Limited to** ████████████████ **That Arm**
████████████████████████████████████████

*Third*, the Qualcomm ALA grants a license only to ████████████████████████

██████████████████████████ That is clear from the face of the agreement, which

defines ████████████████ as the technology ██████████████████████████████████

███████████████████ (JTX-0010 §§ ███ ███.) This license, by its plain terms, does not

provide a license to designs like the Nuvia-acquired cores, which were developed using technology

Arm delivered to Nuvia under a different ALA. (JTX-0010 § ██████████████████████████

██████████████████████████).) That should be the end of the matter. Code and designs

Nuvia developed before it had any relationship with Qualcomm could not possibly have been

developed using ████████████████████████████████████████████████.

    If more were needed, however, the Qualcomm ALA disclaims any license to Arm

technology generally, such as Arm technology created by others or delivered by Arm under another

ALA. The Qualcomm ALA provides that ███████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████ (JTX-

0010 § 2.6.) The technology that Arm delivered to Nuvia under the Nuvia ALA, which Nuvia used

to develop its CPU code, is "Arm technology" (rather than ████████████████) for purposes of

the Qualcomm ALA, and thus expressly excluded from the Qualcomm ALA's license by § 2.6.

    Nor does the Qualcomm ALA provide a license merely because Qualcomm did not

formally start certain products or designs until after the Nuvia acquisition. By Qualcomm's own

admission, it did not begin the CPU designs used in Hamoa, Pakala, Pegasus, and other products

from scratch, but instead incorporated pre-acquisition Nuvia code. (Tr. 409:16-21 ("Q. You didn't

swap out the RTL that Nuvia had written, right? A. No, because we did not believe that it was

required. Q. And Qualcomm then incorporated Nuvia's technology into Qualcomm products;

right? A. Yes, Qualcomm used that technology from Nuvia."), 412:9-20, 552:9-20, 705:12-20,

32767787.1

8

809:1-12; PTX-0400 at 1; PTX-0892 ("do arm know that we are using Phoenix in Hamoa based on our use of the tools?"); PTX-0897 at 1.) Dr. Chen's unrebutted code analysis showed that a substantial portion of the code for these Qualcomm CPUs was copied from the pre-acquisition Nuvia code. (Tr. 536:12-538:5 (comparing Qualcomm CPUs to the Nuvia Phoenix CPU).) The Qualcomm ALA does not provide a license to the code developed by Nuvia prior to the acquisition, regardless of whether the Nuvia-developed code was not yet complete or not fully verified. The license under the Qualcomm ALA does not turn on the state of Nuvia's code, but rather on whether the code was developed by or for Qualcomm using ███████████████████████████████ ████████████████ (JTX-0010 § ██; JTX-0011 § A.6.)

Because the unambiguous contract language establishes three times over that Qualcomm does not have a license to pre-acquisition Nuvia code, the Court should grant JMOL. At a minimum, however, a new trial is warranted because the jury's verdict is against the great weight of the evidence. *See* Fed. R. Civ. P. 59; *Norman v. Elkin*, 849 F. Supp. 2d 418, 424 (D. Del. 2012).

## B.    Nuvia Breached the Nuvia ALA (Question 1).

The Court should also grant JMOL that Nuvia breached § 15.1 of the Nuvia ALA. Nuvia does not dispute that Arm terminated the Nuvia ALA, or that upon termination Nuvia must "immediately discontinue any use and distribution of all ARM Technology" and must destroy or return "any ARM Technology or derivatives" in its possession. (JTX-0001 § 15.1.) The only conclusion supported by the record is that Nuvia breached those obligations by not returning or destroying the pre-acquisition code. (JTX-0001 § 15.1; JTX-0009 at 2; Tr. 409:16-21, 410:2-21, 412:9-20, 552:9-20, 705:12-20, 809:1-12; PTX-0400 at 1; PTX-0897 at 1.)

The unambiguous language of the Nuvia ALA identifies an "Architecture Compliant Core[]" as a non-limiting example of a "derivative[]" of "ARM Technology." (JTX-0001 § 1.8.) Pre-acquisition code developed by Nuvia for the purposes of creating an Architecture Compliant

Core is a "derivative" of Arm Technology and the Arm Architecture Reference Manual in the same way as a finished Architecture Compliant Core. (JTX-0001 §§ 1.5, 1.8; DTX-1587.) Yet Nuvia retained that pre-acquisition code and supplied it to Qualcomm for incorporation into Qualcomm designs and products, rather than discontinuing and destroying that code as required under Section 15.1(a) of the Nuvia ALA. (Tr. 409:16-21, 410:2-21, 412:9-20, 552:9-20, 705:12-20, 809:1-12.) That code remains in Qualcomm's products. (Tr. 409:16-21, 426:5-11, 536:12-538:5 (Dr. Chen's unrebutted code analysis).) Nuvia breached as a matter of law.

### C.    Qualcomm Breached the Nuvia ALA (Question 2).

#### 1.    Qualcomm Breached as a Matter of Law.

The Court should also grant JMOL that Qualcomm breached § 15.1 of the Nuvia ALA, for many of the same reasons. Qualcomm assumed the Nuvia ALA for the reasons discussed in Section I.C.3 below. The destruction obligations thus remain the same under § 15.1 regardless of whether the breaching party is Nuvia or Qualcomm. Qualcomm did not comply with those obligations, instead incorporating pre-acquisition Nuvia CPU code into its products. (JTX-0009 at 2; Tr. 409:16-21, 410:2-21, 412:9-20, 552:9-20, 705:12-20, 809:1-12; PTX-0400 at 1; PTX-0897 at 1.) Qualcomm's ALA does not excuse its failure to comply with its return-or-destroy obligations under the Nuvia ALA. For the reasons discussed in Section I.A, the Qualcomm ALA does not grant Qualcomm a license to those materials, which remain subject to an independent return-or-destroy obligation under the Nuvia ALA regardless.

#### 2.    The Court Should Grant a New Trial Because the Jury's Erroneous Verdict on Question 3 Likely Infected Its Verdict for Question 2.

If the Court does not grant JMOL, a new trial on Question 2 is necessary. Qualcomm's license defense for Arm's breach claim is inseparable from its flawed argument that it has a license

32767787.1

10

to the pre-acquisition Nuvia code. Overturning the jury's verdict on Question 3 would thus also require a new trial on Question 2.

Qualcomm repeatedly argued that it could not be found to be in breach of the Nuvia ALA because the Qualcomm ALA provided a license to the pre-acquisition Nuvia code. (Tr. 134:16-135:19, 149:2-3, 153:20-24, 456:23-457:7, 577:16-23, 807:18-808:4, 928:5-23, 933:4-8, 942:11-15, 948:6-949:15.) One of Qualcomm's witnesses, Mr. Weiser, testified that Qualcomm "had [its] own architecture license, a broad architecture license that we felt covered the activities, that the employees and the work of the employees that came over would be covered under the Qualcomm ALA." (Tr. 577:16-23.) Another witness, Mr. Amon, told the jury that the Qualcomm ALA applies to Qualcomm designs, which "may include Nuvia technology." (Tr. 807:18-808:4; *see also id.* 456:23-457:7.) Qualcomm further relied on documents claiming that "Qualcomm already has an ALA and TLA with ARM, [so] there should not be any additional agreements required as a result of the acquisition." (PTX-0242 at 2; *see also* PTX-0234 at 2; PTX-0253 at 1.) Qualcomm also invoked this evidence and its license defense in both its opening statement and its closing argument. (Tr. 134:16-135:19, 149:2-3, 153:20-24, 928:5-23, 933:4-8, 942:11-15, 948:6-949:15.)

Given that Qualcomm's license defense pervaded this case, the jury's erroneous finding that Qualcomm has a license plainly influenced its decision on Arm's breach claim. But where, as here, Qualcomm's license claim and Arm's breach claim are "so interwoven," the license claim cannot be retried without re-trying the breach claim as well. *Gasoline Prods.*, 283 U.S. at 500. This is not a rare case where "it is plain that the error which has crept into one element of the verdict did not *in any way* affect the determination *of any other issue.*" *Pryer v. C.O. 3 Slavic*, 251 F.3d 448, 455 (3d Cir. 2001) (citations omitted). Thus, granting JMOL that Qualcomm does not have a license (Question 3) would also require a re-trial on Arm's breach claim against Qualcomm

(Question 2).

### 3.     The Court Should Grant a New Trial on Question 2.

The Court should grant a new trial on whether Qualcomm breached the Nuvia ALA for a second reason: a finding that Qualcomm did not assume the Nuvia ALA would be against the great weight of the evidence. Qualcomm's post-acquisition conduct in this case leaves no doubt it assumed Nuvia's obligations under the Nuvia ALA. Any contrary factual finding by the jury "cries out to be overturned." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991).

Under California law, a party assumes the obligations of a contract when it knowingly accepts (or transfers to itself) the benefits of the contract. Cal. Civ. Code § 1589; *see FNBN Rescon I, LLC v. Citrus El Dorado, LLC*, 725 F. App'x 448, 451 (9th Cir. 2018) ("Because Rescon is owned by Stearns SPV I, a wholly-owned subsidiary of Stearns, the benefits of Citrus's performance ultimately ran to Stearns."); *Melchior v. New Line Prods.*, 106 Cal. App. 4th 779, 788 (2003) (defendant who "voluntarily accepted the benefit" of an agreement "by law consented to the obligations arising under" the agreement). By accepting and using the Nuvia code developed under the Nuvia ALA in Qualcomm products (Tr. 356:12-21, 401:5-18, 412:9-20, 809:1-12; PTX-0234 at 2; PTX-0212 at 1-2; PTX-0296 at 2), Qualcomm assumed Nuvia's obligations under the Nuvia ALA. *See Phila. Indem. Ins. Co. v. SMG Holdings, Inc.*, 44 Cal. App. 5th 834, 842-44 (2019) (non-party estopped from disclaiming some provisions while accepting benefits of others).

Qualcomm acquired Nuvia with its eyes wide open that it would need to assume the Nuvia ALA to use Nuvia's CPU designs. Qualcomm knew that the Nuvia ALA defined an acquisition to be an assignment of the Nuvia ALA (Tr. 396:23-397:1) and that Arm objected to the transfer of the Nuvia designs to Qualcomm. (PTX-0240 ("[A]ny transfer of designs, rights, or licenses under NUVIA's agreements with Arm to Qualcomm will require and be subject to Arm's prior consent"); PTX-0260 at 2 ("It is our intention for the NUVIA design and derivatives thereof to comply with

32767787.1

ARM's agreement with NUVIA, as it appears uncontested that such designs were created pursuant to those agreements."); PTX-0247.) Qualcomm nevertheless acquired Nuvia and used pre-acquisition Nuvia code in Qualcomm designs and products, thereby accepting the obligations that ran with that code. (PTX-0212 at 1-2; PTX-0234 at 2; PTX-0296 at 2; Tr. 356:12-21, 357:20-25, 423:19-21, 552:9-20, 809:1-12, 810:12-21.)

Qualcomm also acted as if it had assumed the Nuvia ALA. Qualcomm, not Nuvia, requested consent under § 16.3 of the Nuvia ALA. (Tr. 177:14-21; PTX-0253 at 2.) Qualcomm, rather than Nuvia, negotiated with Arm regarding the transfer of pre-acquisition Nuvia code. (PTX-0268.) Qualcomm sent the false certification of compliance following termination. (JTX-0009 at 1-2.) And Qualcomm's counterclaim in this case alleged that it had the right to enforce the Nuvia ALA. (D.I. 300 ¶¶ 278-281.) Qualcomm and Nuvia were effectively the same entity for purposes of the Nuvia ALA, given Qualcomm's ownership and control of Nuvia. (PTX-0285; Tr. 549:19-550:1, 589:9-591:4, 804:14-20.) What had previously been "'NUVIA engineering' are now Qualcomm engineers." (PTX-0285.) Even "officer[s] of Nuvia" now receive a "paycheck [that] comes from Qualcomm," (Tr. 590:12-16; *see also* Tr. 356:12-21, 401:5-18, 412:9-20, 589:18-591:4, 809:1-12.)

Qualcomm cannot accept the benefits of the Nuvia ALA without also accepting the burdens. California law is clear that "voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting." Cal. Civ. Code § 1589. The obligations of the Nuvia ALA include the duty upon termination (under § 15.1) to destroy the pre-acquisition code that Nuvia developed under the Nuvia ALA. (JTX-0001 § 15.1.) When Qualcomm decided not to comply

with that obligation, it breached the Nuvia ALA. The jury's contrary verdict is against the great weight of the evidence.

## II.    THE COURT SHOULD GRANT A NEW TRIAL ON ALL THREE QUESTIONS.

If the Court does not grant Arm JMOL, it should order a new trial on all issues. A new trial is required as a matter of right on whether Nuvia breached the Nuvia ALA (Question 1) because the jury deadlocked on that issue. "[A] new trial is required" where "there was a mistrial." *Kutner Buick, Inc. v. Am. Motors Corp.*, 868 F.2d 614, 617 (3d Cir. 1989). The new trial on that single issue necessitates a new trial across the board on all three questions, because the issues in this case are "so interwoven" that they "cannot be submitted to the jury independently" without violating the Seventh Amendment's Reexamination Clause. *Gasoline Prods.*, 283 U.S. at 500.

Given the constitutional stakes, the Third Circuit has adopted a "general presumption against partial new trials." *Elcock*, 233 F.3d at 758. The key question is whether "it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." *Id.* (citation omitted). Thus, Nuvia and Qualcomm must show that the three jury questions in this case are *not* "too interwoven to allow a fair determination" in separate trials, *Spence v. Bd. of Educ. of Christina Sch. Dist.*, 806 F.2d 1198, 1202 (3d Cir. 1986), and that this case does not present a "tangled or complex fact situation" that makes it difficult to separate out those three issues. *Vizzini v. Ford Motor Co.*, 569 F.2d 754, 760 (3d Cir. 1977).

Defendants cannot make either showing here. It is hardly "clear[]" that the question whether Nuvia breached § 15.1(a) of the Nuvia ALA is "distinct and separable" from the question whether Qualcomm breached the same provision, or whether the code Qualcomm acquired from Nuvia is licensed under the separate Qualcomm ALA. *Elcock*, 233 F.3d at 758. Resolving those issues in separate trials would instead require the second jury to impermissibly reexamine the same factual issues and make new findings on issues the first jury considered. *See Gasoline Prods.*, 283

32767787.1

14

U.S. at 499-501. To avoid that constitutional problem, the Court should follow "[t]he general practice after a mistrial" of ordering "a full retrial of all issues in the case." *Drumgold v. Callahan*, 707 F.3d 28, 46 (1st Cir. 2013) (affirming full retrial where first jury resolved some issues but hung on others); *Opal Labs Inc. v. Sprinklr, Inc.*, No. 3:18-cv-01192, 2022 WL 526167, at *1 (D. Or. Jan. 7, 2022) (mistrial as to breach and fraud claims demanded new trial as to other breach claims because "partial retrial on liability for certain claims and damages presents a significant risk of jury confusion, uncertainty, and inconsistent verdicts").

### A.    Questions 1 and 2 Are Not Distinct and Separable Issues.

Here, "[t]here [is] no conceivable fashion by which a second jury could fairly evaluate" whether Nuvia breached "without also fully appreciating" the facts that give rise to Arm's breach claim against Qualcomm. *Pryer*, 251 F.3d at 458. The predicate facts for Arm's breach claim against Qualcomm are not merely intertwined with, but are largely the same as, those that underlie Arm's claim against Nuvia. Both claims arise from the same provision in the same contract. The jury was instructed to apply the same elements for both questions against Nuvia and Qualcomm. (D.I. 568, Instr. 3.3.) Both juries would need to decide the scope and meaning of § 15.1, including whether and why Nuvia code is a "derivative" of "ARM Technology," and how much of the pre-acquisition Nuvia code Qualcomm reused. (JTX-0001 § 15.1.)

The second jury, moreover, will consider the same facts as the first jury: the same pre-acquisition Nuvia technology, the same pre-acquisition course of conduct, the same corporate acquisition, the same post-acquisition communications, the same transfer of technology, the same witnesses, and the same reuse by Defendants of the same code in the same post-acquisition products. (PTX-0234 at 2; PTX-0240; PTX-0247; PTX-0253 at 1-2; PTX-0260 at 2; PTX-0268; JTX-0009; Tr. 172:8-173:7, 177:14-21, 180:20-181:7, 216:14-23, 226:21-24, 390:7-24, 394:4-395:24, 401:5-18, 590:25-591:7, 409:16-21, 410:2-21, 412:9-20, 552:9-20, 784:3-10, 809:1-12.)

32767787.1

The "tangled [and] complex fact[ual] situation" in this case, *Pryer*, 251 F.3d at 455 (citations omitted), would necessarily require introducing evidence relating to Qualcomm's conduct at a new trial addressing Nuvia's breach, improperly allowing a second jury to "assess[] the same evidence" the first jury considered and to second-guess the first jury's factual findings. *See Payton v. Abbott Labs*, 780 F.2d 147, 154 (1st Cir. 1985); *see also Colonial Leasing of New England, Inc. v. Logistics Control Int'l*, 770 F.2d 479, 481 (5th Cir. 1985).

Courts consistently grant new trials on related issues where, as here, there is overlapping evidence or proof. *See, e.g.*, *Am. Home Assur. Co. v. Sunshine Supermarket, Inc.*, 753 F.2d 321, 329 (3d Cir. 1985) (new trial on multiple claims and defenses required where issues relevant to both); *Encompass Off. Sols., Inc. v. La. Health Serv. & Indem. Co.*, 919 F.3d 266, 277 (5th Cir. 2019) (new trial on tort and contract claims ordered in action against insurer because breach of contract was basis for tort claims); *Witco Chem. Corp. v. Peachtree Doors, Inc.*, 787 F.2d 1545, 1549 (Fed. Cir. 1986) (ordering new trial on all issues where patent infringement arguments were "indistinguishably woven with the factual underpinnings of the validity and enforceability determinations and the subject matter of the contract"); *Colonial Leasing*, 770 F.2d at 481 (common questions required new trial on multiple issues); *Nissho-Iwai Co. v. Occidental Crude Sales*, 729 F.2d 1530, 1539 (5th Cir. 1984) (partial retrial limited to fraud claim denied where fraud claim "required an understanding of the contract claim").

Here, the only distinction between the two breach claims is the defendant. But that distinction is illusory. Following the announcement of the acquisition, and long before the termination obligations that form the basis for the breach of § 15.1 arose, Nuvia and Qualcomm stopped acting independently. (PTX-0285; PTX-0296 at 2; Tr. 400:13-15, 588:19-591:17.) Instead, Qualcomm effectively merged all of Nuvia, including its technology and personnel, into

Qualcomm's own operations and development work nearly a year before the termination obligations under the Nuvia ALA arose. (PTX-0285; PTX-0296 at 2; Tr. 400:13-15, 590:22-591:4.) As discussed above, Qualcomm thereafter used the pre-acquisition code Nuvia had developed in Qualcomm designs and products, continuing to do so even after Arm terminated the Nuvia ALA.

Qualcomm's conduct thus is "interwoven" with Nuvia's breach. *Gasoline Prods.*, 283 U.S. at 500. The conduct that establishes a breach of § 15.1 took place nearly a year after Qualcomm's acquisition of Nuvia, and was directed by Qualcomm, through Qualcomm employees, including former Nuvia personnel. (*See, e.g.*, JTX-0009 at 1-2.) This conduct includes, but is not limited to, the response to Arm's termination of the Nuvia ALA, delivery of Defendants' certification, the alleged swap-out, the response to Arm's pre-suit correspondence, Qualcomm's continued use of pre-acquisition Nuvia code, and the defense of this claim. (Tr. 226:4-20, 404:17-23, 409:16-21; PTX-0234 at 2; PTX-0240; PTX-0260 at 2; PTX-0268; JTX-0009 at 1-2.)

A new jury on Question 1 could not ignore Qualcomm's role in Nuvia's breach and look solely to Nuvia's conduct. There is no new instruction to the jury or explanation of the prior verdict that could separate Qualcomm and Nuvia's conduct after the acquisition. Qualcomm negotiated with Arm in 2021 and 2022 (PTX-0234 at 2; PTX-0240; PTX-0260 at 2; PTX-0268; Tr. 226:4-20); Nuvia's employees, work product, code, and designs were transferred to Qualcomm (PTX-0296 at 2; Tr. 590:25-591:7); and the response to the obligation to stop use of derivatives and embodiments of Arm Technology under § 15.1(a) was overseen by Qualcomm and implicated Qualcomm's products. (JTX-0001 § 15.1; Tr. 410:14-21, 412:9-20, 809:1-12.)

This case does not arise from the independent conduct of independent parties acting at different times, or with respect to different aspects of distinct chronologies. It is instead like other

cases in which courts have required claims against different defendants to be retried together, based on the existence of common factual issues. *See, e.g.*, *Williams v. Rene*, 72 F.3d 1096, 1101 (3d Cir. 1995) (new trial "must extend" to both defendant-employee and defendant-employer in auto accident case); *Williams v. Slade*, 431 F.2d 605, 609 (5th Cir. 1970) (rejecting partial new trial given the interrelated nature of the two defendants' potential liability); *Cont'l Cas. Co. v. United States*, 167 F.2d 107, 109 (9th Cir. 1948) (new trial for a surety required new trial for surety's principals as any new trial for surety "would be on grounds that in justice would require a similar relief for" individuals). Although Nuvia separately entered into the Nuvia ALA, and separately developed pre-acquisition code under the Nuvia ALA, the separation between Nuvia and Qualcomm ceased with Qualcomm's acquisition. (PTX-0285; PTX-0296 at 2; Tr. 400:13-15, 590:2-16, 590:22-591:4.) The breach of § 15.1—whether for purposes of Arm's claim against Nuvia or against Qualcomm—arises from the joint activities of Nuvia and Qualcomm, and the relevant conduct is not "distinct and separable." *Gasoline Prods.*, 283 U.S. at 500.

Indeed, the overlapping factual issues pose a real risk of inconsistent verdicts. As one example, the two juries may have different views about what § 15.1 requires or to what it applies. As another example, a finding by the second jury that Nuvia breached would negate Qualcomm's defense to breach based on purportedly "swap[ping] out" certain Arm materials under the Nuvia Technology License Agreement, potentially contradicting the original verdict. (Tr. 457:16-18.) Worse still, a second jury may conclude that Qualcomm's assumption of Nuvia's obligations establishes that Qualcomm, rather than Nuvia, breached § 15.1, contrary to the original verdict. The same jury needs to decide both breach claims to avoid these types of conflicts.

### B. Whether Qualcomm Is Licensed (Question 3) Is Not Distinct and Separable from Whether Nuvia Breached (Question 1).

Question 3 is equally interwoven with the facts that form the basis for Questions 1 and 2.[2] Defendants relied on Qualcomm's purported license to the Nuvia-acquired code as a defense to both breach claims in its pre-trial filings and correspondence. (*See* D.I. 529 at 1; PTX-0234 at 2; PTX-0242 at 2.) In those filings, Defendants described their declaratory judgment counterclaim on the Qualcomm ALA license (Question 3) as an "inverted lawsuit" of Arm's breach-of-contract claims against *both* Defendants. (D.I. 529 at 1.) Defendants adhered to that position at trial, where they relied on witness testimony and documents to support their position that the Qualcomm ALA license permits Qualcomm to use the Nuvia-acquired code regardless of what the Nuvia ALA says. (*See, e.g.*, Tr. 456:20-457:7, 577:16-23, 807:18-808:4; PTX-0242 at 2; PTX-0234 at 2; PTX-0253 at 1.) Defendants pulled this evidence together in closing to argue that the Qualcomm ALA provided a defense to the breach claims against *both* Nuvia and Qualcomm. (*See* Tr. 928:5-23, 942:11-15, 948:6-949:15; *see also id.* at 134:16-135:19, 149:2-3, 153:20-24.) The license question presented by Question 3 pervaded Qualcomm's defense as to Questions 1 and 2 at trial.

Defendants cannot run away from the intertwined nature of the license and breach issues now. But were there any doubt those claims are closely-related, the record unambiguously establishes those issues are inseparable. Whether Qualcomm has a license under the Qualcomm ALA implicates the same pre-acquisition Nuvia code as Arm's breach claim against Nuvia and requires a similar deep dive into the facts and course of conduct among Arm, Nuvia, and Qualcomm as Arm's breach claim. Resolving Qualcomm's license defense and Arm's breach claims thus requires drawing overlapping factual findings regarding (1) Nuvia's development of the pre-acquisition code, (2) Qualcomm's use of that pre-acquisition Nuvia code, and (3) the

---

[2] Questions 2 and 3 are inextricably intertwined for the reasons discussed in Section I.C.2. That is another reason why a new trial on Questions 1 and 2 requires a new trial on Question 3.

parties' communications over whether that use was licensed under the Qualcomm ALA. (Tr. 404:2-5, 409:19-21, 412:9-20, 809:1-12; PTX-0234 at 2; PTX-0240; PTX-0260 at 2; PTX-0268.)

If more were needed, a finding that Nuvia breached the Nuvia ALA would call into question a verdict that Qualcomm has a license to the Nuvia-acquired code under the Qualcomm ALA. Qualcomm has no viable theory for how it could have a license to code Nuvia shared with Qualcomm in breach of the Nuvia ALA and that Nuvia was contractually obligated to destroy once Arm terminated that agreement. (*See* JTX-0001 §§ 1.8, 3.1, 15.1(a); Tr. 394:11-395:24, 591:3-4.) For that reason alone, the license and breach issues are inseparable.

Qualcomm ultimately did not bring a claim seeking a declaration regarding the scope of its license rights under the Qualcomm ALA in the abstract. (D.I. 12; D.I. 300.) Instead, Qualcomm specifically requested a declaration regarding its right under the Qualcomm ALA with respect to specific technology: the pre-acquisition Nuvia code and designs that are also the subject of Arm's breach claims against Nuvia (Question 1) and Qualcomm (Question 2). (D.I. 12 ¶ 246; D.I. 300 ¶ 275.) The interwoven nature of the issues is reflected in the language of the verdict form, which refers to "designs acquired in the Nuvia acquisition." (D.I. 572.) Those designs are embodied in the code that is subject to the restrictions of § 15.1—the contractual provision at the center of Arm's breach claims. These interwoven issues, which turn on overlapping factual and contractual questions, must be resolved by the same jury in a single trial.  If the Court nonetheless concludes that either Question 2 or Question 3 are distinct and separable from Question 1, certification that the partial judgment on the separate question(s) is a final judgment under Rule 54(b) is appropriate.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Arm JMOL, or at a minimum, grant a new trial on all issues.

32767787.1

Dated: January 17, 2025

OF COUNSEL:

Daralyn J. Durie
Joyce Liou
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
jliou@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Kyle W.K. Mooney
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
(212) 336-4092
kmooney@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

Daniel Muino
MORRISON & FOERSTER LLP
2100 L Street, NW
Suite 900, Washington, D.C. 20037
(202) 887-1500
dmuino@mofo.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP


 */s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Plaintiff Arm Ltd.*

32767787.1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 17, 2025, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

Isaac B. Zaur
Nora Niedzielski-Eichner
CLARICK GUERON REISBAUM LLP
220 Fifth Avenue, 14th Floor
New York, NY 10001
izaur@cgr-law.com
nniedzie@cgr-law.com

Catherine Nyarady
Anna R. Gressel
Jacob A. Braly
Alexander M. Butwin
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
agressel@paulweiss.com
jbraly@paulweiss.com
abutwin@paulweiss.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
Anna P. Lipin
William T. Marks
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
kdunn@paulweiss.com
wisaacson@paulweiss.com
mzappala@paulweiss.com
ejmorgan@paulweiss.com
alipin@paulweiss.com
wmarks@paulweiss.com

Andrea L. D'Ambra
Susana Medeiros
Kira Latham
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019
andrea.dambra@nortonrosefulbright.com
susana.medeiros@nortonrosefulbright.com
kira.latham@nortonrosefulbright.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Plaintiff Arm Ltd.*