IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARM LTD., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 22-1146 (MN) |
| | ) |
| QUALCOMM INC., QUALCOMM | ) |
| TECHNOLOGIES, INC. and NUVIA, INC., | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' POST-TRIAL BRIEF REGARDING EQUITABLE DEFENSES

| | |
|---|---|
| | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| | Jack B. Blumenfeld (#1014) |
| OF COUNSEL: | Jennifer Ying (#5550) |
| | Travis Murray (#6882) |
| Karen L. Dunn | 1201 North Market Street |
| William A. Isaacson | P.O. Box 1347 |
| Melissa F. Zappala | Wilmington, DE 19899 |
| William T. Marks | (302) 658-9200 |
| PAUL, WEISS, RIFKIND, | jblumenfeld@morrisnichols.com |
|   WHARTON & GARRISON LLP | jying@morrisnichols.com |
| 2001 K Street, NW | tmurray@morrisnichols.com |
| Washington, DC 20006 | |
| (202) 223-7300 | *Attorneys for Defendants* |
| | |
| Catherine Nyarady | |
| Erin J. Morgan | |
| Anna R. Gressel | |
| Jacob A. Braly | |
| Alexander M. Butwin | |
| PAUL, WEISS, RIFKIND, | |
|   WHARTON & GARRISON LLP | |
| 1285 Avenue of the Americas | |
| New York, NY 10019 | |
| (212) 373-3000 | |

January 29, 2025

# TABLE OF CONTENTS

Page

I. NATURE AND STAGE OF THE PROCEEDING ............................................................. 1

II. SUMMARY OF ARGUMENT ....................................................................................... 1

III. STATEMENT OF FACTS ............................................................................................. 2

IV. LEGAL STANDARD .................................................................................................... 2

V. ARGUMENT ................................................................................................................. 3

VI. CONCLUSION ............................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ajaxo, Inc.* v. *E*Trade Fin. Corp.*,
   261 Cal. Rptr. 3d 583 (Ct. App. 2020) ...................................................................................2

*Blain* v. *Doctor's Co.*,
   272 Cal. Rptr. 250 (Ct. App. 1990)......................................................................................2, 3

*Creditors Adjustment Bureau, Inc.* v. *Imani*,
   298 Cal. Rptr. 3d 227 (Ct. App. 2022) ...................................................................................3

*Fladeboe* v. *Am. Isuzu Motors, Inc.*,
   58 Cal. Rptr. 3d 225 (Ct. App. 2007) .....................................................................................3

*Guardianship of Saul H.*,
   514 P.3d 871 (Cal. 2022) ........................................................................................................2

*Kendall-Jackson Winery, Ltd.* v. *Superior Court*,
   76 Cal. App. 4th 970 (Ct. App. 1999).....................................................................................6

*Mattco Forge, Inc.* v. *Arthur Young & Co.*,
   60 Cal. Rptr. 2d 780 (Ct. App. 1997) .....................................................................................2

*Saks* v. *Int'l Longshore & Warehouse Union-Pac. Mar. Ass'n Benefit Plans*,
   637 F. App'x 282 (9th Cir. 2015) .................................................................................3, 6, 10

*Sketchley* v. *Lipkin*,
   222 P.2d 927 (Cal. Ct. App. 1950) ......................................................................................3, 6

**Other Authorities**

13 Witkin, Summary of Cal. Law § 9 (11th ed. 2024) ...................................................................3

25 Williston on Contracts § 67:18 (4th ed. 2024)...........................................................................3

**I.  NATURE AND STAGE OF THE PROCEEDING**

The Court held a combined jury and bench trial from December 13 to 20, 2024.  D.I. 547 ¶ 3.  The bench portion of the trial concerned certain equitable defenses raised by defendants Qualcomm Inc. and Qualcomm Technologies, Inc. (collectively, "Qualcomm") and Nuvia, Inc.  *Id.* ¶ 5.  The Court heard evidence on defendants' equitable defenses during the evening of December 17 and allowed the parties to lodge additional evidence without presenting it in open court.  Bench Tr. 3:12–77:7; Trial Tr. 842:22–843:2, 875:2–875:10; D.I. 574; D.I. 574, Exs. 1-10.  The Court also ordered that "all evidence admitted at the jury trial will be part of the record for any bench trial."  D.I. 518 ¶ 81.

The jury returned a verdict in favor of Qualcomm that it did not breach the Nuvia ALA and that its products are licensed under Qualcomm's ALA, and the jury did not reach a verdict as to Arm's claim that Nuvia breached the Nuvia ALA.  D.I. 572 at 2.  The Court accepted the partial verdict and discharged the jury.  Trial Tr. 1016:17–1017:3, 1020:16–1021:2.  Defendants' equitable defenses remain pending.  In light of the trial evidence and the jury's verdict, defendants are withdrawing their defenses of waiver, estoppel, and laches.  For the reasons explained below, defendants now request that the Court find in their favor on their defense of unclean hands.[1]

**II.  SUMMARY OF ARGUMENT**

At trial, defendants proved the defense of unclean hands.  To succeed on that defense, defendants had the burden to prove that Arm acted inequitably such that its claims should be barred.  Defendants did so by proving that Arm itself breached the Nuvia ALA and TLA, in

---

[1] As defendants explained in their post-trial status report, the entry of judgment for Qualcomm pursuant to the jury's answer to Question 2 of the verdict form will moot the defense of unclean hands with respect to Qualcomm.  D.I. 594 at 3–4.  If, however, the Court were to grant Arm's post-trial motion on its claim against Qualcomm after the entry of judgment, D.I. 595, the defense of unclean hands would become live again and would preclude a judgment in Arm's favor.

particular, by doing exactly that which it accused Nuvia of doing—failing to safeguard confidential information.

The evidence proved that Arm failed to meet its obligations under Section 15.1(b) of both the Nuvia ALA and TLA. In both agreements, that provision required Arm to discontinue use of and destroy Nuvia Confidential Information upon Arm's termination of the agreement. But Arm witnesses testified at trial that Arm did not destroy Nuvia Confidential Information in its possession after termination. To the contrary, those witnesses testified that Arm not only used Nuvia Confidential Information but continued to incorporate it into Arm's products. Those uses of Nuvia Confidential Information by Arm violated Sections 15.1(b) of the Nuvia ALA and TLA and therefore constitute unclean hands and prohibit Arm from asserting that defendants violated Section 15.1(a) of the Nuvia ALA.

### III.   STATEMENT OF FACTS

The relevant facts are set forth in defendants' Proposed Findings of Fact ("PFOF"), filed concurrently herewith, and in the Argument section, as appropriate.

### IV.   LEGAL STANDARD

Nuvia had the burden to prove its unclean hands defense by a preponderance of the evidence. *See Ajaxo, Inc.* v. *E\*Trade Fin. Corp.*, 261 Cal. Rptr. 3d 583, 617 (Ct. App. 2020); *Mattco Forge, Inc.* v. *Arthur Young & Co.*, 60 Cal. Rptr. 2d 780, 796 (Ct. App. 1997); *see also Guardianship of Saul H.*, 514 P.3d 871, 880 (Cal. 2022) ("[P]reponderance of the evidence is the default burden of proof for findings of fact in civil cases."). Application of an unclean hands defense depends upon "the analogous case law, the nature of the misconduct, and the relationship of the misconduct to the claimed injuries." *Blain* v. *Doctor's Co.*, 272 Cal. Rptr. 250, 256 (Ct. App. 1990).

## V. ARGUMENT

It is well established that "He who comes into Equity must come with clean hands." *Blain* v. *Doctor's Co.*, 272 Cal. Rptr. 250, 255 (Ct. App. 1990) (quotation omitted); *see* 13 Witkin, Summary of Cal. Law § 9 (11th ed. 2024). "Unclean hands applies when it would be inequitable to provide the plaintiff any relief, and provides a complete defense to both legal and equitable causes of action." *Fladeboe* v. *Am. Isuzu Motors, Inc.*, 58 Cal. Rptr. 3d 225, 235–36 (Ct. App. 2007) (unclean hands doctrine barred plaintiff automobile dealers' claims against defendant for improperly withholding consent to transfer dealership where one plaintiff transferred dealership license to second plaintiff without obtaining defendant's consent). Whether the defense applies in particular circumstances "depends upon the analogous case law, the nature of the misconduct, and the relationship of the misconduct to the claimed injuries." *Blain*, 272 Cal. Rptr. at 255. The equitable defense of unclean hands is thus "available to any defendant against whom specific performance is sought." 25 Williston on Contracts § 67:18 (4th ed. 2024); *see Creditors Adjustment Bureau, Inc.* v. *Imani*, 298 Cal. Rptr. 3d 227, 229 (Ct. App. 2022). Plaintiffs who have "wrongfully breached their contract [] have no right to demand of equity that it grant their claims." *Sketchley* v. *Lipkin*, 222 P.2d 927, 933 (Cal. Ct. App. 1950); *see Saks* v. *Int'l Longshore & Warehouse Union-Pac. Mar. Ass'n Benefit Plans*, 637 F. App'x 282, 284 (9th Cir. 2015) ("California has long permitted an unclean hands defense to be sustained on the basis of breach of contract.").

Here, defendants proved at trial that Arm's hands were unclean because it failed to satisfy its obligations under Section 15.1 of the Nuvia ALA and TLA, yet Arm alleges breach of Section 15.1 of the Nuvia ALA in this case. Arm has not destroyed or returned, and has continued to use, Nuvia Confidential Information after termination of the Nuvia ALA and TLA, in breach of both agreements. Arm terminated the Nuvia ALA and TLA effective March 1, 2022. PFOF ¶ 6. As

Arm has reiterated with respect to its case against Qualcomm and Nuvia under Section 15.1(a), Section 15.1(b) states that upon termination Arm was to "immediately discontinue any use of LICENSEE Confidential Information" and "either destroy [it] or return [it] to LICENSEE." PFOF ¶¶ 8, 52.  The agreements also required Arm to confirm its compliance with the obligations of Section 15.1(b) within one month of termination.  PFOF ¶ 9.  There is no evidence in the record that Arm provided Nuvia with the required confirmation.

Following termination, "Arm did not take any specific action" with regard to Nuvia Confidential Information.  PFOF ¶ 12 (quoting Bench Tr. 10:23–11:15 (Larri)).  Vivek Agrawal, an Arm Senior Principal Engineer, testified that he was "never asked to destroy any [Nuvia Confidential] information."  PFOF ¶ 11 (quoting D.I. 574-1 at 95:25–96:08).  Mark Werkheiser, an Arm Fellow, similarly testified that he did not "remember any communication" from Arm instructing employees to destroy Nuvia Confidential Information and did not "think [he] did" so following termination of the Nuvia agreements.  *Id*. (quoting Bench Tr. 24:9–12).  At trial, Arm made no attempt to refute Mr. Agrawal's or Mr. Werkheiser's testimony, nor did it present any contradictory evidence.  PFOF ¶ 13.

The trial record further showed that, instead of destroying Nuvia Confidential Information, Arm made affirmative use of it in two ways.  *First*, Arm used confidential Nuvia information related to the configuration of the CPU under design at Nuvia to compare with the configuration of one of Qualcomm's post-acquisition designs.  *Second*, Arm used certain confidential improvements to its Coherent Mesh Network ("CMN") requested by Nuvia.

1. Nuvia provided Arm with a confidential file used to configure the Arm Architecture Compliance Kit to work with Nuvia's in-development CPU design.  PFOF ¶ 3.  Arm knew the configuration file constituted Nuvia Confidential Information under the Nuvia ALA.  PFOF ¶ 4.

Arm has conceded that Nuvia also provided Arm with additional Nuvia Confidential Information sent by Nuvia's verification team. PFOF ¶ 5.

Arm admitted that, in May 2022—more than two months after it terminated the Nuvia ALA—it ran a digital comparison of Nuvia's confidential configuration file with a configuration file provided by Qualcomm for one of Qualcomm's custom CPUs "to understand the relationship between the new [Qualcomm-provided] piece of information and the existing [Nuvia-provided] piece of information." PFOF ¶ 19 (quoting Bench Tr. 11:16–12:9 (Larri)). The undisputed record evidence shows that Mr. Agrawal ran the "diff" comparison between Qualcomm's configuration file for its Hamoa design and the Nuvia confidential configuration file for the Phoenix design in order to determine whether Nuvia design work had been used at Qualcomm. *Id.*

Eight months later, in January 2023, Mr. Agrawal emailed his colleagues to inform them of the presence of Nuvia confidential documents in Arm's source-code databases. He stated that Arm still had "access to those files from [his] unix project-scratch area" and that, because the Nuvia configuration files "were checked-in," the "Git history can fetch Nuvia versions," which would allow Arm employees access to view confidential information regarding Nuvia's design work. PFOF ¶¶ 15–16 (quoting DTX-161). At trial, Mr. Agrawal testified that, as of January 2023, Arm employees could still continue to access Nuvia confidential documents "from the revision control repositories" within Arm's "version control system." PFOF ¶ 17 (quoting D.I. 574-1 at 99:01–99:11). Those documents constituted Nuvia Confidential Information under the Nuvia ALA. PFOF ¶¶ 3–5, 15.

Arm thus not only failed to destroy Nuvia Confidential Information after termination of the Nuvia ALA; it continued to use that information for almost a year after termination. That unrebutted evidence proves Arm's violation of Section 15.1(b) of the Nuvia ALA and constitutes

5

inequitable conduct that precludes it from pursuing its claim for breach of the Nuvia ALA. *See Sketchley*, 222 P.2d at 933; *Saks*, 637 F. App'x at 284 (affirming, under California law, application of unclean hands to breach of contract action where defendant proved that plaintiff breached).

2. Arm also continued to use Nuvia Confidential Information under the Nuvia TLA after its termination of that agreement. The termination provision states that "ARM will immediately discontinue any use of LICENSEE Confidential Information disclosed under this ALA. ARM shall, at LICENSEE's option, either destroy or return to LICENSEE any LICENSEE Confidential Information." PFOF ¶¶ 8, 52. Arm's treatment of confidential information under the TLA bears directly on whether it is equitable to permit Arm to bring its own claim relating to Arm Confidential Information. Under California law, "any evidence of a plaintiff's unclean hands in relation to the transaction before the court or which affects the equitable relations between the litigants in the matter before the court should be available to enable the court to effect a fair result in the litigation." *Kendall-Jackson Winery, Ltd.* v. *Superior Court*, 76 Cal. App. 4th 970, 985 (Ct. App. 1999).

As part of its TLA licensing program, Arm offers licensees a CMN product that "allows the different components [of a system-on-a-chip] to communicate with each other." PFOF ¶¶ 21, 23 (quoting Bench Tr. 18:4–16 (Werkheiser)). Arm has offered that product for at least a decade, with Arm releasing various iterations, including CMN-650 (codename "Rhodes"), CMN-700 (codename "Kampos"), and CMN-S3 (codename "Cyprus"). PFOF ¶ 24. Arm widely licenses its CMN product, including to companies that would compete with any product containing a custom core from Nuvia or Qualcomm. PFOF ¶ 22. Arm has admitted that its CMN products currently available on the market, including Kampos, include Nuvia Confidential Information in the form of features requested by Nuvia under the Nuvia TLA. PFOF ¶ 57.

In March 2019, Nuvia expressed an interest in licensing CMN from Arm and entered into a nondisclosure agreement ("NDA"), which enabled Nuvia to obtain additional information concerning the CMN product. PFOF ¶¶ 25, 35–37. As explained at trial by Jeffrey Defilippi, Arm's Product Manager with responsibility for CMN, Arm understood during negotiation of the NDA that Nuvia intended to provide Arm with Nuvia Confidential Information concerning the CMN, which Arm subsequently received.[2] PFOF ¶¶ 35–37. Those exchanges of information provided a framework through which Nuvia was then able to discuss modifications and improvements to the CMN with Arm. After initial discussions with Arm, Nuvia engineers analyzed Arm's then-current CMN product (CMN-650/Rhodes) and requested that Arm add certain features for use in Nuvia's in-development server chip. PFOF ¶¶ 39–42.

Once Nuvia entered into the TLA with Arm, it executed an Annex to license CMN-650/Rhodes. PFOF ¶ 26. Nuvia continued to request CMN feature improvements from Arm by providing Arm with documents designated "Nuvia Confidential" containing descriptions of the requested features categorized based on improvement to performance or functionality and setting forth requested timelines for delivery of the improved CMN product to Nuvia. PFOF ¶¶ 42–43. Those documents constituted Nuvia Confidential Information under the TLA because they were labeled "Nuvia Confidential." PFOF ¶¶ 2, 52. The documents were labeled confidential and indicated that the features should be implemented in Arm's future CMN-700/Kampos product. PFOF ¶¶ 42, 44. Nuvia and Arm's engineering teams also met on a regular basis so that Nuvia could explain its confidential feature requests and discuss the development and modification of the

---

[2] The Nuvia NDA contained a provision that defined Confidential Information as "any written or tangible information disclosed directly or indirectly between the Arm Group and the Company that is identified as confidential at the time of disclosure and designated, by appropriate legend, as confidential." PFOF ¶ 35 (quoting DTX-580 at 6 § 1.2).

CMN product.[3]  PFOF ¶¶ 40-41.  Following these meetings, Nuvia would provide additional confidential documentation that echoed the discussions between the companies.  PFOF ¶ 42.

At the same time that Nuvia sought to improve the CMN product, Arm saw an opportunity to "suck[] knowledge out of Gerard's team" at Nuvia in order to benefit Arm competitively.  PFOF ¶ 45 (quoting DTX-1809 at 2).  Arm employees were directed to "accommodate as many of the NuVia requests within our roadmap product to absorb Apple/Nuvia knowledge and make our products better."  PFOF ¶ 46 (quoting DTX-1809 at 3).  As Mr. Werkheiser testified, Arm recognized that Nuvia's requested features improved the functionality of CMN, and Arm implemented many of those features as a result.  PFOF ¶ 47.  Once the features were implemented, Arm then offered the improved version of CMN to other customers, including to Nuvia's potential competitors in the market.  PFOF ¶ 48.  Arm does not dispute that fact.  PFOF ¶ 57.

At trial, Arm conceded that it did not remove the Nuvia-requested features from its CMN products following termination of the Nuvia TLA.  PFOF ¶¶ 53–57.  Arm also produced representative source code of its CMN products, including the Kampos and Cyprus versions currently available on the market.  Defendants' expert, Dr. Murali Annavaram, reviewed that code and testified that he found several of Nuvia's requested features implemented in each respective version of the CMN.  PFOF ¶ 58.  That evidence was undisputed at trial.  Arm separately admitted in interrogatory responses that certain of Nuvia's requested features remain in the Kampos product on the market today.  PFOF ¶ 57.  Those actions constitute ongoing violations of the Nuvia TLA.

---

[3] "Confidential Information" includes "any information which if first disclosed orally is identified as confidential at the time of disclosure and is thereafter reduced to writing and sent to the other party within thirty (30) days after its oral disclosure and designated, by appropriate legend, as confidential."  PFOF ¶ 2; *see id.* ¶ 52.

Arm continues to receive royalties from Nuvia and Qualcomm's competitors that have licensed the CMN products implementing Nuvia's confidential features. PFOF ¶ 60.

At trial, Arm argued that Nuvia's confidential feature requests constituted "Input" under Annex 1 to the Nuvia TLA, which allegedly entitled Arm to post-termination rights to them. Bench Tr. 49:3–50:24. But Arm presented no documentary evidence supporting that argument, and the plain language of the TLA Annex contradicts its witness testimony. The Annex defines "Input" as "all suggestions, comments, feedback, ideas, or know-how (whether in oral or written form) provided by LICENSEE to ARM in respect of a Development Release." PFOF ¶ 27 (quoting JTX-4 § 2, cl. A.20). In turn, the Annex defines "Development Release" as "ARM Technology *not marked* as 'LAC', 'EAC' or 'REL'." PFOF ¶ 28 (quoting JTX-4 § 2, cl. A.10) (emphasis added). Nuvia licensed only "LAC" and "EAC" releases of CMN; it never licensed a Development Release, meaning that its feature requests were not "Input." PFOF ¶¶ 29–31. Arm did not identify any Development Release of CMN licensed by Nuvia. PFOF ¶¶ 32–33. And Arm's only witness on the "Input" point admitted that he had no role in negotiating or drafting the TLA Annex and had only reviewed it in preparation for trial. PFOF ¶ 33. Further, he failed to explain the nature of Arm's rights to "Input" (beyond stating that the term appeared in the TLA Annex) or the potential application of those rights to Nuvia's requested features. PFOF ¶ 34.[4] The record is thus clear that Arm improperly used Nuvia Confidential Information after termination of the Nuvia TLA.

---

[4] The 2019 Annex also contained a provision that treated "any requests for changes to design and implementation of the CMN-Kampos" as "Input" if Nuvia both exercised its right to exchange CMN-Rhodes for CMN-Kampos and "received enhanced lead partner ('ELP') access for CMN-Kampos." PFOF ¶ 27 (quoting JTX-4 § 2, cl. B.4(ii)). Nuvia exchanged CMN-Rhodes for CMN-Kampos in January 2021, well after it had provided Arm with many of the confidential feature requests, PFOF ¶¶ 30, 44, and Arm presented no evidence at trial that Nuvia "received enhanced lead partner access."

\* \* \* \* \*

In sum, the trial evidence proves that Arm failed to destroy or return, and continues to use, Nuvia Confidential Information, in violation of Section 15.1 of both the Nuvia ALA and TLA. That breach renders Arm's hands unclean, precluding it from seeking relief for defendants' alleged breach of the Nuvia ALA.  *See Saks*, 637 F. App'x at 284.

## VI. CONCLUSION

Defendants respectfully request that the Court find in their favor on their equitable defense of unclean hands and enter judgment for defendants on Count I of Arm's complaint.

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
William T. Marks
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7300

Catherine Nyarady
Erin J. Morgan
Anna R. Gressel
Jacob A. Braly
Alexander M. Butwin
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

January 29, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

_____
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Defendants*

10

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 29, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on January 29, 2025, upon the following in the manner indicated:

| | |
|---|---|
| Anne Shea Gaza, Esquire<br>Robert M. Vrana, Esquire<br>Samantha G. Wilson, Esquire<br>YOUNG CONAWAY STARGATT & TAYLOR, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE  19801<br>*Attorneys for Plaintiff* | VIA ELECTRONIC MAIL |
| Joyce Liou, Esquire<br>Daralyn J. Durie, Esquire<br>Shaelyn Dawson, Esquire<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA  94105<br>*Attorneys for Plaintiff* | VIA ELECTRONIC MAIL |
| Erik J. Olson, Esquire<br>Meet Yatin Mehta, Esquire<br>MORRISON & FOERSTER LLP<br>755 Page Mill Road<br>Palo Alto, CA  94304<br>*Attorneys for Plaintiff* | VIA ELECTRONIC MAIL |
| Scott F. Llewellyn, Esquire<br>Sarah E. Brickey, Esquire<br>MORRISON & FOERSTER LLP<br>4200 Republic Plaza<br>370 Seventeenth Street<br>Denver, CO  80202-5638<br>*Attorneys for Plaintiff* | VIA ELECTRONIC MAIL |

| | |
|---|---|
| Daniel P. Muino, Esquire<br>Reebehl G. El-Hage, Esquire<br>David Nathaniel Tan, Esquire<br>Sydney K. Cooper, Esquire<br>MORRISON & FOERSTER LLP<br>2100 L Street, NW, Suite 900<br>Washington, D.C. 20037<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Nicholas Rylan Fung, Esquire<br>Henry Huttinger, Esquire<br>Laura Gilbert Remus, Esquire<br>Zach B. Quinlan, Esquire<br>MORRISON & FOERSTER LLP<br>707 Wilshire Boulevard<br>Los Angeles, CA 90017<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Kyle W.K. Mooney, Esquire<br>Kyle D. Friedland, Esquire<br>MORRISON & FOERSTER LLP<br>250 West 55th Street<br>New York, NY 10019<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Michael J. DeStefano, Esquire<br>MORRISON & FOERSTER LLP<br>600 Brickell Avenue, Suite 1560<br>Miami, FL 33131<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

*/s/ Jennifer Ying*

Jennifer Ying (#5550)