IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARM LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 22-1146 (MN) |
| ) | |
| QUALCOMM INC., QUALCOMM ) | |
| TECHNOLOGIES, INC. and NUVIA, INC., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' PROPOSED FINDINGS OF FACT**
<u>**REGARDING EQUITABLE DEFENSES**</u>

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
William T. Marks
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7300

Catherine Nyarady
Erin J. Morgan
Anna R. Gressel
Jacob A. Braly
Alexander M. Butwin
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

January 29, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

**Page**

I.    Arm's Breach of the Nuvia ALA ................................................................................... 1

    A.    Nuvia Provided Confidential Information to Arm Under the Nuvia ALA ............. 1

    B.    Arm Breached the Nuvia ALA by Failing to Destroy Nuvia Confidential Information ............................................................................................................. 2

II.    Arm's Breach of the Nuvia TLA ................................................................................... 4

    A.    Nuvia Licensed Arm's Coherent Mesh Network Product ..................................... 4

    B.    Nuvia Provided Confidential Information to Arm Under the Nuvia NDA and Nuvia TLA .............................................................................................................. 6

    C.    Arm Implemented Nuvia's Requested Features Into Its CMN Products ................ 7

    D.    Arm Did Not Destroy or Cease the Use of Nuvia Confidential Information After Termination of the Nuvia TLA ..................................................................... 9

Pursuant to the Court's Order of January 22, 2025 (D.I. 599), defendants Qualcomm Inc., Qualcomm Technologies, Inc., and Nuvia, Inc. provide the following proposed findings of fact related to their equitable defenses tried to the Court.[1]

## I.     ARM'S BREACH OF THE NUVIA ALA

### A.     Nuvia Provided Confidential Information to Arm Under the Nuvia ALA

1. Nuvia and Arm entered into an Architecture License Agreement on September 27, 2019 ("Nuvia ALA").  JTX-1.

2. The Nuvia ALA defined certain information as "Confidential Information," including "any information designated in writing by either party, by appropriate legend, as confidential" and "any information which if first disclosed orally is identified as confidential at the time of disclosure and is thereafter reduced to writing and sent to the other party within thirty (30) days after its oral disclosure and designated, by appropriate legend, as confidential."  JTX-1 § 1.8.

3. Nuvia then provided Arm with "information that was confidential to Nuvia" in the form of an Arm Architecture Compliance Kit "configuration file" for the implementation that Nuvia was building.  D.I. 574-1 at 95:15–20 (Agrawal); Bench Tr.11:24, 12:2–9 (Larri).

4. Guy Larri, an Arm Distinguished Engineer and Arm's designated corporate representative, and Vivek Agrawal, an Arm Senior Principal Engineer, both testified that the configuration file Nuvia provided to Arm "was confidential information of Nuvia under the

---

[1] The facts included herein are only relevant to Defendants' unclean hands defense as it pertains to Nuvia.  Both parties agreed that Defendants' equitable defenses will be mooted by entry of a partial judgment with respect to Qualcomm.  D.I. 594 at 3-4.  Should the Court grant Arm's post-trial motion on its claims against Qualcomm or the jury's verdict on Arm's claims against Qualcomm otherwise be vacated or set aside, Defendants reserve the right to rely on additional facts and exhibits introduced into evidence during the Bench Trial pertaining to separate defenses related to Qualcomm that are not cited herein.

agreement." D.I. 574–1 at 95:18–19 (Agrawal); Bench Tr. 12:5–7 (Larri).

5. Mr. Agrawal also testified that Nuvia provided Arm with other documents that Arm "categorized as Nuvia confidential." D.I. 574–1 at 97:17–97:22 (Agrawal); DTX-161.

### B. Arm Breached the Nuvia ALA by Failing to Destroy Nuvia Confidential Information

6. Arm notified Nuvia that it was terminating the Nuvia ALA and Nuvia Technology License Agreement ("Nuvia TLA") on February 1, 2022, with an effective termination date of March 1, 2022. JTX-8.

7. Arm's February 1 letter quoted from Section 15.1(a) of the Nuvia ALA, stating that Nuvia must, "[a]t Arm's option, either destroy or return to Arm any Arm Confidential Information, including any copies thereof in its possession and any Arm Technology or derivatives (including any translation, modification, compilation, abridgement or other form in which the Arm Technology has been recast, transformed or adapted) thereof in its possession." *Id*.

8. Section 15.1(b) of the Nuvia ALA states that, upon termination of the ALA by Arm, "ARM will immediately discontinue any use of LICENSEE Confidential Information disclosed under this ALA. ARM shall, at LICENSEE's option, either destroy or return to LICENSEE any LICENSEE Confidential Information." JTX-1 §15.1(b).

9. Under the terms of Section 15.1(b) of the Nuvia ALA, "[w]ithin one month after termination of this ALA, ARM will furnish to LICENSEE a certificate signed by a duly authorised representative of ARM that to the best of his or her knowledge, information and belief, after due enquiry, ARM has complied with provisions of this Clause." *Id*.

10. Arm did not present any evidence at trial that it provided the required certification of compliance.

11. Despite Arm's obligations under Section 15.1(b) of the Nuvia ALA, Mr. Agrawal

and Mark Werkheiser, an Arm Fellow, testified that Arm personnel were never asked or instructed to destroy Nuvia Confidential Information following termination of the Nuvia ALA: Mr. Agrawal testified that he was "never asked to destroy any [Nuvia Confidential] information," D.I. 574-1 at 95:25–96:08 (Agrawal); similarly, Mr. Werkheiser testified that he did not "remember any communication" from Arm instructing employees to destroy Nuvia Confidential Information and did not "think [he] did" so following termination of the Nuvia agreements," Bench Tr. 24:9–12 (Werkheiser).

12. Mr. Larri testified that "Arm did not take any specific action" following termination of the Nuvia ALA with respect to Nuvia Confidential Information. Bench Tr. 10:23–11:15 (Larri).

13. At trial, Arm did not dispute that Arm never provided instructions to destroy Nuvia Confidential Information, and no Arm witnesses testified that they had received such instructions.

14. Instead, Jeffrey DeFilippi, a product manager at Arm, was the only witness from Arm who testified live at trial about the destruction of Nuvia Confidential Information. Mr. DeFilippi testified that he did not know whether Nuvia's Confidential Information had been destroyed after Arm terminated the Nuvia agreements in March 2022. Bench Tr. 44:25-45:7.

15. Despite the requirement in Section 15.1(b) to destroy Nuvia Confidential Information within one month following termination of the Nuvia ALA, Mr. Agrawal sent an email to colleagues in January 2023—10 months after termination—informing them of the presence of Nuvia confidential documents in Arm's database and stating that Arm still had "access to those files in my unix project-scratch area." DTX-161.

16. Mr. Agrawal also informed his colleagues that the Nuvia "targetConfig" files "were checked-in" to Arm's databases and that "Git history can fetch Nuvia versions." *Id*.

17. At trial, Mr. Agrawal testified that the Nuvia Confidential documents could still be

accessed in January 2023 through Arm's "version control system" that allowed Arm "to pull those files from the revision control repositories." D.I. 574–1 at 99:01–11 (Agrawal).

18. Arm failed to comply with its obligations under Section 15.1(b) of the Nuvia ALA by retaining Nuvia Confidential Information following termination of the Nuvia ALA.

19. More than two months after termination, in May 2022, Mr. Agrawal used the Nuvia confidential configuration file for its Phoenix design to run a comparison against a confidential configuration file provided by Qualcomm for its Hamoa design "to understand the relationship between the new [Qualcomm-provided] piece of information and the existing [Nuvia-provided] piece of information." Bench Tr. 11:16–12:9 (Larri); D.I. 574–1 at 144:19–145:12 (Agrawal); DTX-170.

20. Arm's continued use of Nuvia Confidential Information more than a month following termination of the Nuvia ALA was another breach of Section 15.1(b) of the Nuvia ALA.

## II.   ARM'S BREACH OF THE NUVIA TLA

### A.   Nuvia Licensed Arm's Coherent Mesh Network Product

21. Arm licenses its Coherent Mesh Network product, also known as "CMN," to its TLA partners. Bench Tr. 28:12–23 (Defilippi); JTX-4 at 3.

22. Arm widely licenses its CMN product, including to companies that would compete with any product containing a custom core from Nuvia or Qualcomm. DTX-229; DTX-230.

23. CMN "allows the different components [of a system-on-a-chip] to communicate with each other" and to communicate externally outside of the chip. Bench Tr. 18:4–16 (Werkheiser).

24. Since 2014, Arm has released multiple versions of the CMN product, including CMN-650 (code name "Rhodes"), CMN-700 (code name "Kampos"), and CMN-S3 (code name "Cyprus"). Bench Tr. 28:19–23 (Defilippi).

25. On March 19, 2019, Arm entered into a Nondisclosure Agreement ("NDA") with Nuvia. DTX-580 at 5.

26. On September 27, 2019, the same day that Nuvia entered into the Nuvia ALA, Nuvia also entered into the Nuvia TLA and an Annex that licensed Arm's CMN-650 product, which was the then-current version of CMN on the market. JTX-4; Bench Tr. 4:21–25 (Geetha).

27. The Nuvia TLA Annex defines the term "Input" as "all suggestions, comments, feedback, ideas, or know-how (whether in oral or written form) provided by LICENSEE to ARM in respect of a Development Release" and separately "considered Input" "any requests for changes to design and implementation of the CMN-Kampos" if Nuvia elected to exchange CMN-Rhodes for CMN-Kampos and "receive[d] enhanced lead partner ('ELP') access for CMN-Kampos." JTX-4 § 2, cls. A.20, B.4(ii).

28. The Nuvia TLA Annex defines a "Development Release" as "a delivery of the ARM Technology not marked as 'LAC', 'EAC' or 'REL.'" JTX-4 § 2, cl. A.10.

29. At the time the Nuvia TLA was signed, the CMN-650 product had both an EAC and LAC release and therefore was not a "Development Release" under the Nuvia TLA. JTX-4 at 3.

30. On January 18, 2021, Nuvia amended the Annex to the Nuvia TLA to substitute the CMN-700 product for the CMN-650 product. JTX-7.

31. At the time that amendment to the Nuvia TLA Annex was signed, CMN-700 had both an EAC and LAC release and therefore was not a "Development Release" under the Nuvia TLA. JTX-7 at 1.

32. Arm did not identify any Development Releases of CMN-650 or CMN-700 provided to Nuvia.

33. Jeffrey Defilippi, Arm's Product Manager with responsibility for the CMN product, testified that he did not know the name of any Development Release of CMN Kampos provided to Nuvia, did not have access to any Development Release provided to Nuvia, did not have a role in the negotiation or drafting of the terms of the Nuvia TLA Annex, and had only looked closely at it in preparation for trial. Bench Tr. 59:8–61:1 (Defilippi).

34. Mr. Defilippi did not provide any explanation regarding the meaning of the "Input" definition as it relates to Development Releases, its interpretation at Arm, or any potential application to Nuvia's requested features beyond stating that the definition appeared in the TLA Annex. Bench Tr. 48:22–50:24 (Defilippi).

### B. Nuvia Provided Confidential Information to Arm Under the Nuvia NDA and Nuvia TLA

35. The Nuvia NDA contains a provision that defines Confidential Information as "any written or tangible information disclosed directly or indirectly between the Arm Group and the Company that is identified as confidential at the time of disclosure and designated, by appropriate legend, as confidential." DTX-580 at 6 § 1.2.

36. Mr. Defilippi testified that, upon entering into the NDA, Arm understood that Nuvia would exchange confidential information with Arm, including confidential information concerning CMN. Bench Tr. at 30:10–25, 31:6–12 (Defilippi).

37. Mr. Defilippi also testified that Arm received Nuvia Confidential Information after entering into the Nuvia NDA. Bench Tr. at 31:13–15 (Defilippi).

38. After entering into the Nuvia TLA, Arm held regular meetings with Nuvia's engineering team to discuss CMN. Bench Tr. 20:3–6 (Werkheiser); Bench Tr. 31:16-20 (Defilippi); PTX-1220.

39. Nuvia's engineering team internally evaluated CMN-650 to determine what

features would be required in CMN-650 or the follow-on CMN-700 product to support Nuvia's performance features. Bench Tr. 4:16–5:17 (Geetha).

40.     In the course of meetings between Arm and Nuvia, Nuvia discussed the development of CMN, as well as features that Nuvia requested be implemented into the CMN product and the timeline for their delivery to Nuvia. Bench Tr. 20:7–14 (Werkheiser), 32:18–25 (Defilippi).

41.     During those calls, Nuvia would walk through lists of features that it was requesting and informed Arm as to the priority of the various features. Bench Tr. 6:17–23 (Geetha).

42.     In order to further improve the CMN product, Nuvia provided Arm with documents that were designated "Nuvia Confidential" and contained descriptions of features to be added to Arm's CMN products. DTX-845 at 17; Bench Tr. 7:9–14 (Geetha); DTX-126; DTX-127; DTX-128; DTX-129; DTX-378; DTX-379; PTX-197.

43.     The confidential documents provided by Nuvia contained lists of the features that Nuvia was requesting, categorized the features based on functionality or performance, and set forth the requested timeline for delivery to Nuvia. DTX-126; DTX-127; DTX-128; DTX-129; DTX-378; DTX-379; PTX-197.

44.     At the time that Nuvia provided its feature requests in 2019 and 2020, it had not yet substituted CMN-700 for CMN-650, and some of the requests were labeled to indicate that Nuvia wanted them implemented in the future CMN-700 product. JTX-4 at 3; JTX-7; DTX-126; DTX-127; DTX-128; DTX-129; DTX-378; DTX-379; PTX-197.

### C.     Arm Implemented Nuvia's Requested Features Into Its CMN Products

45.     Internally, upon learning of Nuvia's request to make feature modifications for CMN, high level Arm employees discussed "sucking knowledge out of Gerard's team [i.e., Mr. Williams' team at Nuvia], much of which has probably been gained by Apple R&D, ought to drive

us towards engaging on our road map, not providing full-fat modification rights." DTX-1809 at 2; Bench Tr. 37:21-39:12 (Defilippi).

46. Arm employees were further discussing that Arm should "accommodate as many of the Nuvia requests within our road map product to absorb Apple/Nuvia knowledge and make our products better." DTX-1809 at 3.

47. Arm implemented many of the Nuvia requested features, which Arm witnesses acknowledged improved the functionality of the CMN product. Bench Tr. 21:9–22:2 (Werkheiser); Bench Tr. 30:24–31:1, 35:12–22, 36:5–24 (Defilippi).

48. Despite Nuvia providing confidential feature requests for the CMN that it intended to use in its own products, Arm also implemented the requested features in CMN products that were made available to other Arm customers. Bench Tr. 22:3–8 (Werkheiser); Bench Tr. 31:2–5 (Defilippi).

49. Arm did not present any documentary evidence at trial or otherwise identify features requested by Nuvia had been requested by other partners.

50. Arm did not present any documentary evidence of Arm's CMN plans or roadmaps that showed which features requested by Nuvia were already planned by Arm, and Mr. Larri testified that he did not know how to distinguish any of the requested features. Bench Tr. 14:23–3 (Larri).

51. Arm offered no documentary evidence to support Mr. Werkheiser's testimony that certain of Nuvia's requested features were already included in Arm's roadmap. Bench Tr. 22:12–20 (Werkheiser). To the contrary, Mr. Larri testified that there were "five requests that were made by Nuvia that were not made by another Arm partner, and were not already party of the road map for the CMN product." Bench Tr. 12:22–13:2.

8

### D. Arm Did Not Destroy or Cease the Use of Nuvia Confidential Information After Termination of the Nuvia TLA

52. The Nuvia TLA contained a destruction provision at Section 15.1(b) that was identical to the Nuvia ALA and required Arm to destroy Nuvia Confidential Information after March 1, 2022, as well as identical definitions of Confidential Information. *See* DTX-845 at 4.

53. Mr. Werkheiser testified that he did not destroy documents designated as "Nuvia Confidential" following termination of the Nuvia TLA. Bench Tr. at 24:9–15 (Werkheiser).

54. Mr. Defilippi testified that he is not aware of whether all of Nuvia's confidential documents were destroyed following termination. Bench Tr. 44:16–45:7 (Defilippi).

55. Arm's failure to destroy Nuvia Confidential Information provided under the Nuvia TLA was a breach of Section 15.1(b) of the Nuvia TLA.

56. Arm witnesses testified that Arm has continued to maintain the features requested by Nuvia in the current version of CMN products that exist on the market. Bench Tr. 12:10–13:2, 15:4–17 (Larri); Bench Tr. 23:18–23 (Werkheiser); DTX-845 at 12, 17–18.

57. Arm has also admitted in interrogatory responses filed in this case that certain of Nuvia's requested features remain in the CMN-Kampos product. DTX-845 at 12, 17-18.

58. Review of the source code for the CMN-Kampos and CMN-Cyprus products currently available on the market shows that several of the Nuvia requested features are still implemented. Bench Tr. 68:10–71:12 (Annavaram).

59. Arm's continued use of Nuvia Confidential Information in products currently available on the market is a violation of Section 15.1(b) of the Nuvia TLA.

60. Arm continues to receive royalties from the CMN products that it makes available on the market containing Nuvia's requested features. DTX-229; DTX-230; Bench Tr. 15:18–16:7 (Larri).

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
William T. Marks
Paul, Weiss, Rifkind,
  Wharton & Garrison LLP
2001 K Street, N.W.
Washington, DC 20006

Catherine Nyarady
Erin J. Morgan
Anna Gressel
Jacob Braly
Paul, Weiss, Rifkind,
  Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019

January 29, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

_____
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Defendants*

10

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on January 29, 2025, upon the following in the manner indicated:

| | |
|---|---|
| Anne Shea Gaza, Esquire<br>Robert M. Vrana, Esquire<br>Samantha G. Wilson, Esquire<br>YOUNG CONAWAY STARGATT & TAYLOR, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Joyce Liou, Esquire<br>Daralyn J. Durie, Esquire<br>Shaelyn Dawson, Esquire<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA 94105<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Erik J. Olson, Esquire<br>Meet Yatin Mehta, Esquire<br>MORRISON & FOERSTER LLP<br>755 Page Mill Road<br>Palo Alto, CA 94304<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Scott F. Llewellyn, Esquire<br>Sarah E. Brickey, Esquire<br>MORRISON & FOERSTER LLP<br>4200 Republic Plaza<br>370 Seventeenth Street<br>Denver, CO 80202-5638<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

| | |
|---|---|
| Daniel P. Muino, Esquire<br>Reebehl G. El-Hage, Esquire<br>David Nathaniel Tan, Esquire<br>Sydney K. Cooper, Esquire<br>MORRISON & FOERSTER LLP<br>2100 L Street, NW, Suite 900<br>Washington, D.C.  20037<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Nicholas Rylan Fung, Esquire<br>Henry Huttinger, Esquire<br>Laura Gilbert Remus, Esquire<br>Zach B. Quinlan, Esquire<br>MORRISON & FOERSTER LLP<br>707 Wilshire Boulevard<br>Los Angeles, CA  90017<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Kyle W.K. Mooney, Esquire<br>Kyle D. Friedland, Esquire<br>MORRISON & FOERSTER LLP<br>250 West 55th Street<br>New York, NY  10019<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Michael J. DeStefano, Esquire<br>MORRISON & FOERSTER LLP<br>600 Brickell Avenue, Suite 1560<br>Miami, FL  33131<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

*/s/ Jennifer Ying*

Jennifer Ying (#5550)