## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ARM LTD., | |
| Plaintiff, | |
| v. | C.A. No. 22-1146-MN |
| QUALCOMM INC., QUALCOMM TECHNOLOGIES, INC., and NUVIA, INC., | |
| Defendants. | |

## PLAINTIFF ARM LTD.'S RESPONSIVE POST-TRIAL BRIEF
## <u>REGARDING EQUITABLE DEFENSES</u>

Dated: February 12, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington DC  20004
(202) 389-5000
gregg.locascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Joyce Liou
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
jliou@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Kyle W.K. Mooney
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
(212) 336-4092
kmooney@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Plaintiff Arm Ltd.*

Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

## TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................ 1

NATURE AND STAGE OF THE PROCEEDINGS .................................................................. 2

STATEMENT OF FACTS ........................................................................................................ 3

LEGAL STANDARD ............................................................................................................... 4

ARGUMENT ............................................................................................................................ 5

      I.      A BREACH OF CONTRACT IS INSUFFICIENT TO ESTABLISH AN
            UNCLEAN HANDS DEFENSE. ............................................................................ 5

      II.     ARM DID NOT BREACH ITS CONTRACTUAL OBLIGATIONS OR
            ACT WITH UNCLEAN HANDS. ......................................................................... 8

            A.     ARM HAD A LICENSE UNDER THE NUVIA TLA TO
                  CONTINUE USING THE CMN FEATURES REQUESTED BY
                  NUVIA. ..................................................................................................... 9

            B.     ARM DID NOT IMPROPERLY USE ANY NUVIA
                  CONFIDENTIAL INFORMATION POST-TERMINATION. .............. 13

            C.     ARM COMPLIED WITH ITS RETURN-OR-DESTROY
                  PROMISE TO THE EXTENT PERMITTED BY ITS
                  PRESERVATION OBLIGATIONS. ....................................................... 16

            D.     DEFENDANTS PRESENT NO EVIDENCE THAT ARM DID
                  NOT PROVIDE THE CONTRACTUALLY REQUIRED
                  CERTIFICATION. ................................................................................. 18

CONCLUSION ....................................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A. I. Gage Plumbing Supply Co. v. Local 300 of Int'l Hod Carriers*,
  202 Cal. App. 2d 197 (1962) ....................................................................................13

*Aguayo v. Amaro*,
  213 Cal. App. 4th 1102 (2013) ..................................................................................15

*Align Tech., Inc. v. 3Shape A/S*,
  C.A. No. 17-1647-LPS, 2020 WL 5979353 (D. Del. Oct. 8, 2020) ..........................8

*Ample Bright Dev., Ltd. v. Comis Int'l*,
  913 F. Supp. 2d 925 (C.D. Cal. 2012) ...................................................................4, 18

*Ball v. Johanns*,
  No. 07-cv-1190-LKK, 2008 WL 269069 (E.D. Cal. Jan. 29, 2008)......................12, 18

*Bank of Am., N.A. v. Roberts*,
  217 Cal. App. 4th 1386 (2013) ..............................................................................5, 17

*Brawley v. J.C. Interiors, Inc.*,
  161 Cal. App. 4th 1126 (2008) .................................................................................6

*Cal.-Agrex, Inc. v. Van Tassell*,
  258 F.R.D. 340 (N.D. Cal. 2009).............................................................................12

*Champy v. Beazer Homes Corp.*,
  No. 15-cv-4098-MBS, 2016 WL 6525484 (D.S.C. Nov. 2, 2016)..........................10

*Concrete Washout Sys., Inc. v. Neaton Cos., LLC*,
  No. 08-cv-02088-GEB, 2008 WL 11385581 (E.D. Cal. Oct. 22, 2008) ..................7

*Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*,
  890 F.2d 165 (9th Cir. 1989) .................................................................................1, 5

*Fairbairn v. Fid. Invs. Charitable Gift Fund*,
  No. 18-cv-04881-JSC, 2020 WL 999752 (N.D. Cal. Mar. 2, 2020)................4, 5, 19

*Filet Menu, Inc. v. C.C.L. & G., Inc.*,
  79 Cal. App. 4th 852 (2000) .....................................................................................6

*HDOS Franchise Brands, LLC v. El Paso Hot Dog, LLC*,
  No. 21-cv-00201, 2021 WL 5629923 (S.D. Cal. June 29, 2021) ..............................6

## TABLE OF AUTHORITIES
### (cont'd)

Page(s)

*Jade Fashion & Co., Inc. v. Harkham Industries, Inc.*,
    229 Cal. App. 4th 635 (2014) .................................................................................15, 19

*Jay Bharat Developers, Inc. v. Minidis*,
    167 Cal. App. 4th 437 (2008) ...........................................................................................7

*Katiroll Co. v. Kati Roll & Platters, Inc.*,
    C.A. No. 10-3620 (GEB), 2011 WL 2294260 (D.N.J. June 8, 2011)019) .............................14

*Kaufman v. Warner Bros. Ent'mt Inc.*,
    No. 16-cv-02248-PHX-JAT, 2019 WL 1150953 (D. Ariz. Mar. 13, 2019) .........................10

*LL B Sheet 1, LLC v. Loskutoff*,
    362 F. Supp. 3d 804 (N.D. Cal. 2019) ..............................................................................12

*Nelson v. Nelson*,
    No. A126962, 2011 WL 213857 (Cal. Ct. App. Jan. 25, 2011) .............................................6

*O'Flaherty v. Belgum*,
    115 Cal. App. 4th 1044 (2004) ........................................................................................14

*Oakhurst Indus., Inc. v. Tubeway Assocs., L.P.*,
    No. B201113, 2009 WL 4548342 (Cal. Ct. App. Dec. 7, 2009) ....................................1, 5, 6

*Passport Health, Inc. v. Travel Med, Inc.*,
    No. 09-cv-01753-GEB, 2011 WL 590723 (E.D. Cal. Feb. 10, 2011) ...................................13

*Ricketts v. Compaction Plus, Inc.*,
    No. D036553, 2002 WL 264645 (Cal. Ct. App. Feb. 25, 2002)...........................................6

*RLI Ins. Co. v. City of Visalia*,
    297 F.Supp.3d 1038 (E.D. Cal. 2018)........................................................................1, 5, 8, 15

*Safety PPE, LLC v. Skanda Grp. of Indus. LLC*,
    No. 21-cv-3967-JFW, 2023 WL 2558549 (C.D. Cal. Feb. 13, 2023), *aff'd*, No.
    23-55241, 2024 WL 2816494 (9th Cir. June 3, 2024)...........................................................13

*Saks v. International Longshore & Warehouse Union-Pacific Maritime*
    *Association Benefit Plans*,
    637 F. App'x 282 (9th Cir. 2015) .................................................................................7, 8

*Schauerman v. Noble*,
    No. A119960, 2009 WL 775108 (Cal. Ct. App. Mar. 25, 2009)...........................................6

## TABLE OF AUTHORITIES
### (cont'd)

**Page(s)**

*Sketchley v. Lipkin*,
　　99 Cal. App. 2d 849 (1950) ...................................................................7, 8

*Sublett v. Henry's Turk & Taylor Lunch*,
　　21 Cal. 2d 273 (1942) ...........................................................................11

*United Food Group, LLC v. Cargill, Inc.*,
　　No. 11-cv-7752 SS, 2014 WL 12925566 (C.D. Cal. Dec. 18, 2014) ....................................16

*Walters v. PDI Mgmt. Servs.*,
　　No. 02-cv-01100-JDT-TAB, 2004 WL 2137513 (S.D. Ind. June 14, 2004) ..........................10

**Other Authorities**

Fed. R. Evid. 1002 ........................................................................10

Restatement (Second) Contract § 369 ...........................................................6

## INTRODUCTION AND SUMMARY OF ARGUMENT

Arm did not act with unclean hands. Arm upheld its contractual promises, worked in good faith to try to resolve its disputes with Defendants, and only turned to the courts when Defendants refused to stop using the pre-acquisition Nuvia code despite their contractual promise to do so. The Court should not close the courthouse doors on Arm's efforts to enforce contractual obligations based on an unclean hands defense that mirrors misguided contract arguments that Nuvia dropped in advance of trial, is factually unsupported, and is legally flawed.

As an initial matter, Defendants fail to grapple with the heavy burden required to establish unclean hands. It is not enough for Defendants to show that Arm committed some inadvertent breach of a contractual provision. Rather, unclean hands requires bad-faith conduct: courts applying California law hold that "[b]ad intent is the essence of the defense of unclean hands." *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989). Breach of contract does not require bad faith, and California courts regularly hold that plaintiffs who themselves breach a contractual provision may still bring contract claims seeking damages or specific performance. For that reason, Defendants are wrong to assume any purported Arm breach is sufficient to escape their obligations. "The act of breaching a contract cannot also be the exact same act that constitutes unclean hands—otherwise every breach of contract would implicate the doctrine of unclean hands." *RLI Ins. Co. v. City of Visalia*, 297 F.Supp.3d 1038, 1058 (E.D. Cal. 2018), *aff'd*, 770 F. App'x 377 (9th Cir. 2019); *see also Oakhurst Indus., Inc. v. Tubeway Assocs., L.P.*, No. B201113, 2009 WL 4548342, at *15 (Cal. Ct. App. Dec. 7, 2009) (theory that plaintiff's breach of contract's implied covenant precluded specific performance was "without merit").

Setting aside the legal flaws in Defendants' arguments, their unclean hands defense faces an even more fundamental problem: Arm did not breach any contractual provision in either the Nuvia Architecture License Agreement ("Nuvia ALA") or the Nuvia Technology License

Agreement ("Nuvia TLA"). Defendants' theories of breach all misread highly technical contract provisions that did not result in any prejudice to Defendants and that at worst showed that Arm treated Defendants the same as Arm's other customers. Defendants' claim that Arm misused "Confidential Information" in the form of Nuvia's requests for additional features in Arm's products, for example, ignores that Annex 1 to the Nuvia ALA expressly defines such feature requests as "Input" to which Arm has a perpetual license. (*See* Proposed Findings of Fact ("FOF") ¶¶ 4-10.) Defendants' complaint that Arm purportedly ran a "diff" comparing a Nuvia configuration file to a Qualcomm configuration file, meanwhile, ignores that Arm ran that comparison only in response to a Qualcomm request for verification of a new Qualcomm product. And Defendants' complaint that Arm did not "return or destroy" confidential information ignores that Defendants never asked that Arm take either of those steps, as well as the fact that Arm was required to preserve the relevant materials given its preservation obligations in this litigation.

None of Arm's actions gives rise to the sort of bad-faith, inequitable misconduct that unclean hands is intended to address. The Court should reject Defendants' unclean hands defense, and also dismiss with prejudice the now-abandoned waiver, estoppel, and laches defenses.

## NATURE AND STAGE OF THE PROCEEDINGS

In March 2024, Defendants (both Nuvia and Qualcomm) amended their counterclaim to allege a breach of contract claim based on the Nuvia agreements relating to Arm's alleged misuse of suggestions from Nuvia regarding Arm's CMN product and comparison of two prior configuration files (a "diff"). (D.I. 300.) The day before the pretrial conference, Defendants withdrew their contract claims. (D.I. 526.)

The Court held a four-day trial in December 2024. As part of those proceedings, the Court held a bench trial to address Defendants' equitable defenses on the evening of December 17. At the end of the four-day trial, the jury was asked to answer three questions: (1) whether Nuvia

breached Section 15.1(a) of the Nuvia ALA, (2) whether Qualcomm breached Section 15.1(a) of the Nuvia ALA, and (3) whether the Qualcomm CPUs based on code acquired in the Nuvia acquisition are licensed under the Qualcomm ALA. (D.I. 569.)

The jury reached a verdict in Qualcomm's favor on Questions 2 and 3 but deadlocked on Question 1. (Tr. 1000:3-1004:10.) The Court accepted the verdict on Questions 2 and 3, declared a mistrial on Question 1, and excused the jury on December 20, 2024. (*Id*. 1017:5-1021:3.) The parties filed post-trial motions addressing the jury's verdict on January 17, 2025. (D.I. 595, 597.) On January 29, 2025, Defendants filed their post-trial brief regarding their equitable defenses. (D.I. 602 ("Defs.' Br.").)

## STATEMENT OF FACTS

The relevant facts are set forth below and in Arm's concurrently filed Proposed Findings of Fact. On September 27, 2019, Arm and Nuvia entered into an Architecture License Agreement so that Nuvia could design customized CPUs that are compliant with the Arm instruction set architecture. (FOF ¶ 1.) The two companies entered into a separate Technology License Agreement and related Annex 1 on the same day; the Annex was admitted into evidence as JTX-0004, but Defendants did not make the Nuvia TLA itself part of the record. (FOF ¶ 2.) Under the terms of the Nuvia TLA, Arm licensed certain off-the-shelf products to Nuvia, including "CMN-Rhodes-Max." (FOF ¶ 2.)

Section G.2 of Annex 1 states that "[Nuvia] hereby grants to ARM and its Subsidiaries, under all of [Nuvia's] and its affiliates' (as applicable) Intellectual Property rights that are embodied in the Input, the following worldwide, nonexclusive, irrevocable, royalty free, fully paid up rights: (i) to make, use, copy, modify, publish and create derivative works of the Input." (FOF ¶ 4.) "Input" is defined as "all suggestions, comments, feedback, ideas, or know-how

3

(whether in oral or written form) provided by [Nuvia] to ARM in respect of a Development Release." (FOF ¶ 5 (quoting JTX-0004 at 10 (§ A.20)).)

Annex 1 also provided Nuvia the option to "exchange [] the CMN-Rhodes-Max for a single use license to the ARM Technology known as 'CMN-Kampos.'" (FOF ¶ 6 (quoting JTX-0004 at 12 (§ B.4)).) Nuvia "agree[d] that any requests for changes to design and implementation of the CMN-Kampos *shall be considered Input* and subject to the provisions of Part G below in this Section 2." (FOF ¶ 7 (quoting JTX-0004 at 12 (§ B.4(ii))) (emphasis added).) Section G.7 provides that, "[n]otwithstanding anything to the contrary in this Annex 1 or the TLA, the Input shall not be treated as confidential information by Arm and ARM shall be free to use, copy, disclose or otherwise distribute any Input to any third party . . . without obligation or restriction of any kind." (FOF ¶ 8.)

Nuvia requested certain features for implementation in CMN-Kampos, sending documents designated confidential to Arm. (*See* FOF ¶ 12.) Arm implemented certain Nuvia-requested features in CMN-Kampos, creating its own specifications for these features. (FOF ¶¶ 16, 18.) On January 18, 2021, Arm and Nuvia entered into an amendment to the Nuvia TLA to license "CMN-700-Max," the product number for CMN-Kampos. (FOF ¶ 13.)

Defendants did not present any evidence that Arm used Nuvia confidential documents regarding feature requests following termination of the Nuvia TLA and ALA. Only one or two features requested by Nuvia remain implemented in Arm's CMN products. (FOF ¶ 20.) Defendants did not request that Arm remove the Nuvia-requested CMN features following termination of the Nuvia TLA or ALA. (FOF ¶ 19.)

## LEGAL STANDARD

To prevail on a defense of unclean hands, Defendants have the burden of showing that Arm "acted unfairly or fraudulently respecting the matter in controversy." *Ample Bright Dev., Ltd. v.*

*Comis Int'l*, 913 F. Supp. 2d 925, 940 (C.D. Cal. 2012). "[T]he misconduct must prejudicially affect the rights of the person against whom the relief is sought so that it would be inequitable to grant such relief." *Fairbairn v. Fid. Invs. Charitable Gift Fund*, No. 18-cv-04881-JSC, 2020 WL 999752, at *4 (N.D. Cal. Mar. 2, 2020) ("Not every wrongful act constitutes unclean hands.") (citation omitted); *see also Bank of Am., N.A. v. Roberts*, 217 Cal. App. 4th 1386, 1400 (2013) (denying unclean hands defense where "there was nothing inequitable or prejudicial" to defendant regarding plaintiff's alleged misconduct).

## ARGUMENT

## I.    A BREACH OF CONTRACT IS INSUFFICIENT TO ESTABLISH AN UNCLEAN HANDS DEFENSE.

Defendants' unclean hands defense cannot succeed, first and foremost because Defendants rely on the wrong legal standard. Unclean hands is no easy test: the defense is reserved for conduct that "violates conscience, or good faith, or other equitable standards of conduct." *Oakhurst*, 2009 WL 4548342, at *18 (quoting *Kendall-Jackson Winery, Ltd. v. Superior Court*, 76 Cal. App. 4th 970, 979 (1999)). Unlike breach of contract (which does not turn on subjective intent), unclean hands requires bad faith: "[b]ad intent is the essence of the defense of unclean hands." *Dollar Sys.*, 890 F.2d at 173. Accidental, inadvertent, or even grossly negligent behavior by itself does not suffice. *Id.* Given this high standard, California courts and courts applying California law reject the argument Defendants make here, which assumes that just any contractual breach by a plaintiff necessarily precludes a plaintiff's contract-related claims or plaintiff's request for specific performance. That argument is "without merit." *Oakhurst*, 2009 WL 4548342, at *15-16; *see also id.* at *18 (breach of contract's implied covenant did not give rise to unclean hands); *RLI Ins. Co.*, 297 F.Supp.3d at 1058 ("The act of breaching a contract cannot also be the exact same act that constitutes unclean hands—otherwise every breach of contract would implicate the doctrine of

unclean hands."); *see also Dollar Sys.*, 890 F.2d at 173 ("[Plaintiff] cites no authority for its argument that simple breach of contract merits application of the unclean hands doctrine.").

These decisions make sense. Following their holdings is the only way to reconcile unclean hands with black-letter contract principles. It is well established, for example, that "not every breach by a plaintiff . . . will prevent him from obtaining a decree for specific performance." *Nelson v. Nelson*, No. A126962, 2011 WL 213857, at *6 (Cal. Ct. App. Jan. 25, 2011) (citation and quotation omitted); *see also Oakhurst*, 2009 WL 4548342, at *20; *HDOS Franchise Brands, LLC v. El Paso Hot Dog, LLC*, No. 21-cv-00201, 2021 WL 5629923, at *6 (S.D. Cal. June 29, 2021) (granting preliminary injunction, despite plaintiffs' purported breach of franchise agreement); Restatement (Second) Contract § 369 ("Specific performance or an injunction may be granted in spite of a breach by the party seeking relief, unless the breach is serious enough to discharge the other party's remaining duties of performance."). A rule that unclean hands precludes specific performance any time the plaintiff also breached the contract is flatly inconsistent with this principle.

Defendants' rule would equally upend well-settled principles about when a plaintiff can recover damages in a contract case. As Defendants concede, unclean hands provides "a complete defense to both legal and equitable causes of action." *Schauerman v. Noble*, No. A119960, 2009 WL 775108, at *5 (Cal. Ct. App. Mar. 25, 2009) (citation and quotation omitted). But the general rule is that a breach by the plaintiff does not justify a breach by the defendant or preclude the plaintiff from recovering damages. *See, e.g.*, *Ricketts v. Compaction Plus, Inc.*, No. D036553, 2002 WL 264645, at *3 (Cal. Ct. App. Feb. 25, 2002) (rejecting argument that "the trial court erred in awarding damages on Ricketts's breach of contract claims because the court found Ricketts breached the same contract" because "the failure to perform one severable part of a contract does

not bar recovery for performance of another party."); *Filet Menu, Inc. v. C.C.L. & G., Inc.*, 79 Cal. App. 4th 852, 860 (2000) (similar); *Brawley v. J.C. Interiors, Inc.*, 161 Cal. App. 4th 1126 (2008) (both parties recovered); *Concrete Washout Sys., Inc. v. Neaton Cos., LLC*, No. 08-cv-02088-GEB, 2008 WL 11385581, at *3 (E.D. Cal. Oct. 22, 2008) (defendant's breach not excused, even if defendant "may [also] have a claim for damages"); *cf. Jay Bharat Developers, Inc. v. Minidis*, 167 Cal. App. 4th 437, 443-44 (2008) ("Under basic contract principles, when one party to a contract feels that the other contracting party has breached its agreement, the non-breaching party may either stop performance and assume the contract is avoided or continue its performance and sue for damages. Under no circumstance may the non-breaching party stop performance and continue to take advantage of the contract's benefits.") (citation and quotation omitted). Defendants' position here would render these principles a dead letter. Nothing in principle or precedent supports that result.

Nothing in Defendants' cases requires that result either. (*See* Defs.' Br. at 3.) To be sure, *Sketchley* stated that plaintiffs who have "wrongfully breached their contract [] have no right to demand of equity that it grant their claims." *Sketchley v. Lipkin*, 99 Cal. App. 2d 849, 858 (1950). But that was not an unclean hands holding, and instead stands for the more modest proposition that "equity follows the law"—so when a plaintiff has no breach of contract claim as a matter of law given their own "willful breach," equity is "without authority to grant what the law denies." *Id.* Were there any doubt that *Sketchley* does not stand for the proposition that a breach by the plaintiff necessarily establishes unclean hands in a contract case, as Defendants contend, no California court has read *Sketchley* that way in the seventy-five years since that decision issued.

That leaves *Saks v. International Longshore & Warehouse Union-Pacific Maritime Association Benefit Plans*, 637 F. App'x 282 (9th Cir. 2015). *Saks* is a short, unpublished *per*

7

*curiam* opinion that holds that the appellant in that case waived all of his arguments. *Id.* at 284.

*Saks* also references *Sketchley*, but its unpublished reasoning does not support the theory that any

contractual breach supports an unclean hands defense, particularly where that broader holding

would conflict with decades of more recent California contract jurisprudence. Indeed, even in *Saks*,

there were facts that could show bad faith separate from any mere contractual breach—the doctor

in *Saks* "continu[ed] to collect payments for treatments" even after his medical license was

suspended, knowingly collecting over a million dollars in improper payments. *Id.* at 284-85. *Saks*

also involved only an equitable quantum meruit claim, not the breach and specific performance

claims that Arm brings in this case. *Id.* at 283. District courts in the Ninth Circuit have not felt

compelled to follow *Saks*'s lead, *e.g.*, *RLI Ins. Co.*, 297 F.Supp.3d at 1058, and neither should this

Court. Nothing in Defendants' cases shows that a simple contractual breach suffices to invoke an

unclean hands defense.

This fundamental legal flaw in Defendants' arguments is reason enough to reject their

unclean hands defense. Defendants' arguments turn solely on their assertion that Arm breached

the Nuvia ALA and TLA. But even if that were true (and it is not), Defendants do not even attempt

to show that Arm's alleged breaches violate the conscience or reflect bad intent. Defendants cannot

try to fill in that gap in reply, *see Align Tech., Inc. v. 3Shape A/S*, C.A. No. 17-1647-LPS, 2020

WL 5979353, at *3 n.5 (D. Del. Oct. 8, 2020) (citing D. Del. L.R. 7.1.3(c)(2)), and without that

evidence and argument, they have no unclean hands defense.

## II.    ARM DID NOT BREACH ITS CONTRACTUAL OBLIGATIONS OR ACT WITH UNCLEAN HANDS.

Even if a simple breach of contract could establish the unclean hands defense, Arm did not

breach here—much less commit the type of *bad-faith* breach needed to establish unclean hands.

### A.    ARM HAD A LICENSE UNDER THE NUVIA TLA TO CONTINUE USING THE CMN FEATURES REQUESTED BY NUVIA.

Arm has not breached the Nuvia TLA by maintaining certain "features requested by Nuvia" in CMN-Campos. (Defs.' Br. at 6.) This theory of breach runs headlong into the Nuvia TLA's plain text. As Defendants admit, the TLA grants Arm a license to all "Input" provided by Nuvia. (*Id.* at 9.) Defendants argue that Arm nevertheless does not have a license to continue using features requested by Nuvia because "Input" is purportedly limited to features "provided . . . in respect of a Development Release." (*Id.*) In Defendants' view, Nuvia "never licensed a Development Release," and so its feature requests cannot have been "input." (*Id.*)

This argument ignores separate provisions in Annex 1, which grant Arm a perpetual license to maintain Nuvia-requested CMN features whether or not they are related to a "Development Release." Annex 1 provides that "any requests for changes to design and implementation of the CMN-Kampos *shall be considered Input* and subject to the provisions of Part G…" (FOF ¶ 7 (quoting JTX-0004 at 12 (§ B.4(ii))) (emphasis added).) Section G.7 in turn provides that, "[n]otwithstanding anything to the contrary in this Annex 1 or the TLA, the Input"—here, the feature requests relating to CMN-Kampos—"shall not be treated as confidential information by Arm and ARM shall be free to use, copy, disclose or otherwise distribute any Input to any third party . . . without obligation or restriction of any kind." (FOF ¶ 8.)

In addition, Annex 1 to the Nuvia TLA grants a "worldwide non-exclusive, irrevocable, royalty free" license for "rights . . . embodied in the Input" to "(i) make, use, copy, modify, publish and create derivative works of the Input, (ii) to publicly perform or display, import, broadcast, publish, transmit, distribute, license, offer to sell, and sell, rent, lease, or lend copies of the whole or any part of the Input (and derivative works thereof); and (iii) to sublicense to third parties the

foregoing rights." (FOF ¶ 4 (quoting JTX-0004 at 14 (§ G.2)).) The license grant to such Input "survive[s] expiration or termination." (FOF ¶ 10 (quoting JTX-0004 at 14 (§ G.3)).)

Arm thus had (and has) a perpetual license to the CMN-Kampos feature requests as Input, whether or not they were made in connection with a Development Release. Defendants admit that the feature requests were for "Arm's future CMN-700/Kampos product." (Defs.' Br. at 7.) The record similarly shows that the feature requests were directed to the Kampos product.[1] On the plain text of Annex 1, there was no breach. And, although Defendants contend in a footnote that Annex 1 cannot apply where Defendants purportedly were not given "enhanced lead partner" access (*id.* at 9 n.4), that is also wrong: Arm provided Nuvia with enhanced lead partner access to CMN-Kampos consistent with the "Input" provisions of Annex 1. (FOF ¶ 17.) Further, Arm's license to Input with respect to Kampos does not turn on enhanced lead partner status, as sections B.4 and G.7 make clear (as discussed above).

Separately, Defendants' "Input" theory of breach would also fail to establish the bad faith needed to establish an unclean hands defense for numerous additional reasons. If Arm breached (and it did not), it suggests, at most, that Arm misread the contract. There was no malice.

*First*, Defendants failed to introduce the Nuvia TLA (JTX-0003) into evidence. (*See* D.I. 581, 582.) This alone forecloses Defendants' theory of breach, as the Best Evidence Rule requires Defendants to introduce that written agreement into evidence to prove its contents. *See* Fed. R. Evid. 1002; *Kaufman v. Warner Bros. Ent'mt Inc.*, No. 16-cv-02248-PHX-JAT, 2019 WL

---

[1] Documents on which Defendants rely are titled "Feature support and proposed timelines for CMN Kampos." (FOF ¶ 15.) Moreover, Defendants' witness, Vedaraman Geetha, testified that her understanding was that any features Nuvia requested would go in CMN-Kampos. (FOF ¶ 14 ("Q. What was your understanding of the status of Kampos at the time you joined Nuvia? A. I think at the time I joined Nuvia, there was no Kampos RTL. There was only Rhodes RTL, and so I remember that any features that we had would go in that. Q. By that do you mean that any features that Nuvia requested would go in Kampos? A. Yes." (quoting D.I. 593 ("Bench Tr.") at 4:21-5:3 (Geetha))).)

1150953, at *4 (D. Ariz. Mar. 13, 2019) (refusing to reconsider grant of summary judgment against party asserting contract where party failed to introduce written contract); *Champy v. Beazer Homes Corp.*, No. 15-cv-4098-MBS, 2016 WL 6525484, at *2 (D.S.C. Nov. 2, 2016); *Walters v. PDI Mgmt. Servs.*, No. 02-cv-01100-JDT-TAB, 2004 WL 2137513, at *4 (S.D. Ind. June 14, 2004) (denying summary judgment in favor of party asserting contract where party did not introduce written agreement). Indeed, "where a written contract is relied upon, its introduction is required because it is the best evidence of the actual agreement." *Sublett v. Henry's Turk & Taylor Lunch*, 21 Cal. 2d 273, 275 (1942). Defendants' arguments prove why introducing the agreement into evidence is essential. Without that written agreement in evidence, Defendants cannot establish how the Nuvia TLA defined "Confidential Information" or whether Arm could have breached those terms. Defendants' failure to introduce the Nuvia TLA into evidence forecloses all of their arguments based on Arm's alleged breach of that agreement.

*Second*, Defendants did not present evidence that Arm improperly used documents designated Nuvia Confidential Information. The Confidential Information consists of only five documents marked as "Nuvia Confidential." (*See* D.I. 603 ¶ 42 (citing DTX-127, DTX-129, DTX-378, DTX-379, PTX-0197); FOF ¶ 12.) These documents were titled "CMN feature requests," "Feature support and proposed timelines for CMN Kampos," and "Proposed timeline for features yet to be delivered." (FOF ¶ 15.) They were Input.

Yet Defendants failed to present evidence that Arm used these documents following termination of the Nuvia TLA. Instead, Arm's Director of Product Management for CMN, Jeff Defilippi, testified that Arm ceased using these documents long before termination, and that Arm did not use the Nuvia documents in deciding how to implement the requested CMN features. As Mr. Defilippi explained, when Arm decided to implement a requested feature, it would create its

own specification and perform the development work itself. (FOF ¶ 18.) By the time CMN-Kampos was released—nearly a year before the TLA terminated—Arm had no need to continue using these documents, nor is there any evidence it did so. (FOF ¶ 21.)

*Third*, even if Arm could have somehow breached the TLA's confidentiality provisions, Arm did not act in bad faith—instead, it only treated Nuvia the same as every other Arm customer. The trial record shows that Arm regularly solicits feedback from all of its partners. The license to "Input" under Annex 1 of the Nuvia TLA is a standard provision that Arm provides to many licensees, and it provides Arm with the rights to make and use input and feedback provided by those licensees to Arm's products. (FOF ¶ 9 ("It's a provision that's included with all of our IP products and essentially what it states is any input provided by the partner or customer that Arm has the licensing rights to make, use and modify it as it sees fit." (quoting Bench Tr. at 49:3-17 (Defilippi))).) Arm did not single out Nuvia or act in a manner that imposed any injury (let alone a targeted injury) on Nuvia.

The evidence presented at trial also confirms that Nuvia understood that its requests for CMN features would be licensed to Arm under the Nuvia TLA, because Nuvia never requested that Arm remove the Nuvia-requested features from the CMN product following termination. (FOF ¶ 19.) "[B]ecause all parties to the [Nuvia TLA] were aware of what was taking place, [Arm's] conduct was not inequitable with respect to Defendants." *Cal.-Agrex, Inc. v. Van Tassell*, 258 F.R.D. 340, 352 (N.D. Cal. 2009).

All of this is more than enough to reject any bad-faith unclean hands defense. Arm did not breach the Nuvia TLA, but even if it did, its breach would at most have been inadvertent or negligent, not in bad faith. *See, e.g.*, *Ball v. Johanns*, No. 07-cv-1190-LKK, 2008 WL 269069, at *3 (E.D. Cal. Jan. 29, 2008) ("[U]nclean hands might be avoided if there is inadvertent or innocent

behavior in good faith.") (internal quotations omitted); *LL B Sheet 1, LLC v. Loskutoff*, 362 F. Supp. 3d 804, 821 (N.D. Cal. 2019) (no unclean hands where "[d]efendant cites no evidence" that plaintiff's failure to perform due diligence in transaction "was somehow made in bad faith") (applying California law). Instead, the trial testimony shows that Arm "[did] not have unclean hands when" it operated "in good faith," believing that Nuvia's requests were licensed as "Input" under Annex 1. *A. I. Gage Plumbing Supply Co. v. Local 300 of Int'l Hod Carriers*, 202 Cal. App. 2d 197, 207 (1962); (FOF ¶ 22.) This is particularly true where there were only five CMN feature requests unique to Nuvia, and even as to those five features, most are no longer maintained. (FOF ¶ 20 (testimony that one or two Nuvia CMN feature requests remain in the product).)

*Fourth*, Defendants fail to offer evidence regarding whether or how Arm's treatment of information under the Nuvia *TLA* "occurred in a transaction directly related to the rights and responsibilities of the parties" to the contract at issue: the Nuvia *ALA*. *Passport Health, Inc. v. Travel Med, Inc.*, No. 09-cv-01753-GEB, 2011 WL 590723, at *5 (E.D. Cal. Feb. 10, 2011); *see also Safety PPE, LLC v. Skanda Grp. of Indus. LLC*, No. 21-cv-3967-JFW, 2023 WL 2558549, at *7 (C.D. Cal. Feb. 13, 2023), *aff'd*, No. 23-55241, 2024 WL 2816494 (9th Cir. June 3, 2024) (finding no unclean hands where defendants failed to demonstrate relevance to contract at issue). The two contracts are separate agreements that impose distinct rights and responsibilities. This flaw again cuts across all of Defendants' arguments based on the Nuvia TLA.

**B.    ARM DID NOT IMPROPERLY USE ANY NUVIA CONFIDENTIAL INFORMATION POST-TERMINATION.**

Defendants also do not show that Arm's "diff" comparison amounted to a breach of the Nuvia ALA, much less that this comparison resulted in unclean hands. Defendants briefly assert that "in May 2022 . . . [Arm] ran a digital comparison of Nuvia's confidential configuration file with a configuration file provided by Qualcomm for one of Qualcomm's custom CPUs." (Defs.'

Br. at 5.) Defendants assert that Arm ran this "diff" comparison "to determine whether Nuvia design work had been used at Qualcomm" and that this somehow breached the Nuvia ALA. (*Id.*)

These arguments do not show a breach, let alone the bad-faith inequity needed to establish unclean hands, particularly where Defendants omit that Arm's "diff" comparison was prompted by Defendants' own request for verification of their "Hamoa core" product. Qualcomm requested verification of its Hamoa core in May 2022. (FOF ¶ 23.) To determine whether Arm had verification obligations—and whether Defendants had stopped using code developed under the Nuvia ALA in compliance with Section 15.1, as they had previously certified—Arm compared a configuration file provided by Nuvia with one provided by Qualcomm (the "diff"). (FOF ¶ 26.) This comparison demonstrated that Defendants were continuing to use code from Phoenix in Hamoa.

Arm's comparison of the Nuvia configuration file to the Qualcomm file to assess its contractual rights and obligations does not support an unclean hands defense. *O'Flaherty v. Belgum*, 115 Cal. App. 4th 1044, 1060 (2004) ("[T]he doctrine of unclean hands must not be applied where to do so would create an injustice.") (citation and quotation omitted); *c.f. Katiroll Co. v. Kati Roll & Platters, Inc.*, C.A. No. 10-3620 (GEB), 2011 WL 2294260, at *2 (D.N.J. June 8, 2011) ("The assertion of potentially valid rights is not unclean hands, but is a rightful exercise of those rights.").

Defendants failed to present any evidence in support of their assumption that the "diff" constituted improper "use" of Nuvia Confidential Information under the Nuvia ALA. There is no evidence in the record that Arm used the content of the Phoenix configuration file in any Arm design, product, or development. Instead, it is undisputed that Arm used the results of the "diff" only to determine whether Defendants were in compliance with Section 15.1 and whether Arm

had verification obligations under the Qualcomm ALA. (FOF ¶ 26 ("Q. So is it your testimony that Mr. Agrawal did not access Nuvia confidential information after termination of the Nuvia agreements? A. Mr. Agrawal did a DIFF on one file in response to Qualcomm sending to Arm a new piece of confidential information to seek approval for a tapeout. The only thing Mr. Agrawal did was a comparison of the new piece of information and that one existing file, being a configuration file for Arm's architecture compliance kit, to understand the relationship between the new piece of information and the existing piece of information." (quoting Bench Tr. at 11:16-12:1 (Larri))).) This comparative exercise, without more, does not constitute the affirmative "use" that is contemplated and prohibited by the Nuvia ALA following termination. A preliminary effort to verify Nuvia's compliance with its termination obligations in connection with Defendants' request to verify a CPU design under the Qualcomm ALA is not a breach of the relevant contracts.

Further, Defendants failed to present any evidence that running the diff was behavior "tainted by inequity or bad faith." *RLI Ins. Co.*, 287 F. Supp. 3d at 1058. Defendants identify no authority for their assumption that an attempt to determine whether Arm had contractual rights or obligations with respect to the Qualcomm configuration file necessarily constituted "the kind of bad faith, unconscionable conduct that a trial court, sitting as a court of equity, can reasonably conclude is sufficient to invoke the doctrine of unclean hands." *Aguayo v. Amaro*, 213 Cal. App. 4th 1102, 1113 (2013). Defendants also failed to offer any evidence that this purported "use" was misconduct that "prejudicially affected its rights." *Jade Fashion & Co., Inc. v. Harkham Industries, Inc.*, 229 Cal. App. 4th 635, 654 (2014) (denying unclean hands defense).

Defendants' assertion that Arm employees could theoretically "access" Nuvia configuration files—which were overwritten—because they existed in a previous version of a version control repository (Defs.' Br. at 5) is also insufficient to qualify as improper "use" of Nuvia

15

Confidential Information under the ALA. At trial, Defendants produced no evidence that, aside from running the "diff," Arm ever accessed the diff or the Nuvia configuration file again. In the absence of a showing that Arm did more than retain "access" to Nuvia configuration files stored deep within a version control system, Arm's actions do not constitute "any form of fraud, deceit, bad faith, or other unconscionable or inequitable conduct" that might support an unclean hands defense. *United Food Group, LLC v. Cargill, Inc.*, No. 11-cv-7752 SS, 2014 WL 12925566, at *3 (C.D. Cal. Dec. 18, 2014).

### C.    ARM COMPLIED WITH ITS RETURN-OR-DESTROY PROMISE TO THE EXTENT PERMITTED BY ITS PRESERVATION OBLIGATIONS.

Defendants also fail to establish unclean hands on the theory that Arm "has not destroyed or returned . . . Nuvia Confidential Information" and therefore breached "the Nuvia ALA and TLA." (Defs.' Br. at 3-4.) This theory ignores relevant contractual text and the litigation history.

*First*, Defendants ignore that Arm had no obligation to either "return" or "destroy" Nuvia's Confidential Information in the absence of direction from Nuvia. By the terms of Section 15.1(b) of the Nuvia ALA, Arm was under no obligation to either return or destroy Nuvia Confidential Information in the absence of an election by Defendants as to which should occur. (FOF ¶ 28 ("ARM shall, at LICENSEE's option, either destroy or return to LICENSEE any LICENSEE Confidential Information." (quoting JTX-0001 at 14 (§ 15.1))).) Although it is not in evidence, the terms of the Nuvia TLA are similar. This makes any inaction by Arm under Section 15.1(b) of both agreements the result of Defendants' choice—a result that cannot support an unclean hands defense.

Arm's witness testimony at trial affirmed that Defendants never requested the return or destruction of Nuvia Confidential Information following termination. (FOF ¶ 30 ("Q. Are you aware of any requests by Nuvia or Qualcomm to remove any CMN features following termination?

16

A. I'm not aware of any requests to remove features after termination." (quoting Bench Tr. 58:6-9 (Defilippi))).) Thus, Defendants fail to establish contractual breach. And, even if Defendants could show a breach of this obligation, Defendants certainly do not establish bad faith—Defendants cannot show that Arm's breach was so inequitable as to constitute bad faith, when Defendants did not ask for Arm to return or destroy the Confidential Information in any event.

*Second*, Defendants also ignore that Arm could not destroy the relevant Confidential Information given Arm's preservation obligations in this litigation. Defendants did not raise these claims through amendment until Arm and Qualcomm were already more than 16 months into this litigation. Litigation preservation obligations had long since arisen before notice was given.

Notably, in their post-termination certification to Arm, Defendants stated that they could not destroy Arm Confidential Information due to ESI preservation obligations. (FOF ¶ 31 ("Further, Nuvia has independent preservation obligations that require it to hold all relevant documents and electronically stored information ('ESI') thus making permanent destruction of all ARM Confidential Information not feasible at this time." (quoting JTX-0009 at 2)).) Arm proceeded in the same manner with respect to the Nuvia Confidential Information in its possession, discontinuing any use rather than destroying. (FOF ¶ 32 ("Q. So the access by Arm personnel, such that it existed, during the normal course of business remained the same post-termination. Is that correct? A. The access remained the same with the two provisos that the document preservation order had been issued, so even things that would be normally destroyed in the normal course of business would be preserved, and as people had no reason to access the Nuvia confidential information, and they were very busy with many other things, that they would not have had any reason to access it." (quoting Bench Tr. 11:6-15 (Larri))).)

Defendants' own position thus confirms that there was "nothing inequitable or prejudicial" about Arm's similar treatment of Nuvia's Confidential Information following termination. *Bank of Am., N.A.*, 217 Cal. App. 4th at 1400 (finding no unclean hands). Arm's retention of Nuvia Confidential Information in light of its preservation obligations was entirely proper, and Defendants confirmed this by their own actions. Arm's preservation of Nuvia Confidential Information while discontinuing use is not inequitable when it mirrors Defendants' written position, asserted nearly two years before Defendants accused Arm of any wrong-doing. *See, e.g.*, *Ample Bright Dev., Ltd.*, 913 F. Supp. 2d at 940 (misconduct must "affect the equitable relations between the litigants" for a finding of unclean hands) (citation and quotation omitted).

*Third*, and finally, Arm did not actually use the Nuvia Confidential Information following termination of the Nuvia ALA and TLA. At trial, Arm witnesses testified regarding Arm's good-faith efforts to comply with Section 15.1 and discontinue use of Nuvia Confidential Information post-termination. (FOF ¶ 34.) Defendants offer no testimony or documentary evidence showing otherwise. Accordingly, a finding of unclean hands must be "avoided" given Arm's evidence of its "behavior in good faith." *Johanns*, 2008 WL 269069, at *3.

### D.    DEFENDANTS PRESENT NO EVIDENCE THAT ARM DID NOT PROVIDE THE CONTRACTUALLY REQUIRED CERTIFICATION.

Defendants also cannot establish unclean hands on the theory that Arm did not "confirm its compliance with the obligations of Section 15.1(b)" in both the ALA and the TLA "within one month of termination." (Defs.' Br. at 4.) This argument is contradicted by undisputed witness testimony and is insufficient to support unclean hands regardless.

At trial, Arm's Chief Commercial Officer, Will Abbey, testified that Arm certified its compliance with Section 15.1 following termination of the Nuvia ALA and TLA. (FOF ¶ 35.) This testimony is consistent with Arm's position in its responsive pleadings in November 2022. (D.I.

23 ¶ 233 ("Arm denies that it never certified its own compliance with the termination provisions; instead, Arm certified its own compliance with the Nuvia ALA and TLA's termination provisions on April 1, 2022, with the certification sent to Nuvia in the manner specified by the Nuvia agreements.").) In contrast, Defendants offer no evidence that Arm failed to certify compliance with Section 15.1.

Notwithstanding Arm's testimony and Defendants' lack thereof, Defendants also have not shown that any alleged failure to provide a documentary certification "prejudicially affected its rights." *Jade Fashion & Co.*, 229 Cal. App. 4th at 654. Nor could they, given their failure to complain about the purported absence of a written certification at the time. Unlike the harm from Nuvia's false and misleading certification, Defendants do not identify any way in which they were harmed by the purported absence of a written certification by Arm, despite obviously being on notice of the absence by the date certification was required. Because Defendants have not presented testimony or evidence showing that they were "prejudiced as a result" of the "alleged misconduct," 2020 WL 999752, at *5, a purported failure to provide a writing certifying compliance with Section 15.1 cannot give rise to the level of prejudicial or inequitable conduct required to establish unclean hands.

## CONCLUSION

For the foregoing reasons, the Court should reject Defendants' unclean hands defense. Because "[D]efendants are withdrawing their defenses of waiver, estoppel, and laches" (Defs.' Br. 1), the Court should dismiss those defenses with prejudice.

Dated: February 12, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC  20004
(202) 389-5000
gregg.locascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Joyce Liou
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
jliou@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Kyle W.K. Mooney
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
(212) 336-4092
kmooney@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street

YOUNG CONAWAY STARGATT &
  TAYLOR, LLP


_/s/ Anne Shea Gaza_
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

_Attorneys for Plaintiff Arm Ltd._

Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on February 12, 2025, a copy of the foregoing

document was served on the counsel listed below in the manner indicated:

**<u>BY EMAIL</u>**

Jack B. Blumenfeld
Jennifer Ying
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

Isaac B. Zaur
Nora Niedzielski-Eichner
CLARICK GUERON REISBAUM LLP
220 Fifth Avenue, 14th Floor
New York, NY 10001
izaur@cgr-law.com
nniedzie@cgr-law.com

Catherine Nyarady
Anna R. Gressel
Jacob A. Braly
Alexander M. Butwin
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
agressel@paulweiss.com
jbraly@paulweiss.com
abutwin@paulweiss.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
Anna P. Lipin
William T. Marks
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
kdunn@paulweiss.com
wisaacson@paulweiss.com
mzappala@paulweiss.com
ejmorgan@paulweiss.com
alipin@paulweiss.com
wmarks@paulweiss.com

Andrea L. D'Ambra
Susana Medeiros
Kira Latham
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019
andrea.dambra@nortonrosefulbright.com
susana.medeiros@nortonrosefulbright.com
kira.latham@nortonrosefulbright.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Plaintiff Arm Ltd.*

2