## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ARM LTD.,

                  Plaintiff,

        v.

QUALCOMM INC., QUALCOMM
TECHNOLOGIES, INC., and NUVIA, INC.,

              Defendants.

C.A. No. 22-1146-MN

## PLAINTIFF'S PROPOSED FINDINGS OF FACT REGARDING DEFENDANTS'
## <u>EQUITABLE DEFENSES</u>

Dated: February 12, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington DC  20004
(202) 389-5000
gregg.locascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Joyce Liou
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
jliou@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Kyle W.K. Mooney
Kyle D. Friedland
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
(212) 336-4092
kmooney@mofo.com
kfriedland@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Plaintiff Arm Ltd.*

370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

Daniel Muino
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington DC  20037
dmuino@mofo.com

## <u>TABLE OF CONTENTS</u>

**Page**

I.   ARM'S IMPLEMENTATION OF NUVIA COHERENT MESH NETWORK
     FEATURE REQUESTS ................................................................................. 1

     A.   The Nuvia TLA Grants Arm a License to Use Nuvia's CMN Feature
          Requests, Which Are Not Nuvia Confidential Information................................. 1

     B.   Nuvia Requested Features for CMN-Kampos Pursuant to Annex 1 of the
          Nuvia TLA. .................................................................................... 4

     C.   There Is No Evidence That Arm Used Documents Marked Confidential by
          Nuvia in Implementing the CMN Feature Requests or Evidence That
          Nuvia Asked Arm to Remove Features Post-Termination. ................................ 7

II.  ARM COMPARED NUVIA AND QUALCOMM CONFIGURATION FILES
     TO DISCOVER DEFENDANTS' BREACH OF THE NUVIA ALA ............................ 9

III. ARM'S POST-TERMINATION TREATMENT OF DOCUMENTS MARKED
     CONFIDENTIAL BY NUVIA .......................................................................... 10

Pursuant to the Court's Order of January 22, 2025 (D.I. 599), Plaintiff Arm Ltd. ("Arm") submits the following proposed findings of fact related to the equitable defenses asserted by Defendants Qualcomm Inc., Qualcomm Technologies, Inc. (together, "Qualcomm"), and Nuvia, Inc. ("Nuvia") and tried to the Court on December 17, 2024.

## I.    ARM'S IMPLEMENTATION OF NUVIA COHERENT MESH NETWORK FEATURE REQUESTS

1.    On September 27, 2019, Arm and Nuvia entered into an Architecture License Agreement ("Nuvia ALA") so that Nuvia could design customized CPUs that are compliant with the Arm instruction set architecture. JTX-0001.

2.    On September 27, 2019, Arm and Nuvia entered into a separate Technology License Agreement ("Nuvia TLA") (which is not in evidence) and its related Annex 1 (JTX-0004). Through the Nuvia TLA and its related Annex 1, Arm licensed to Nuvia certain off-the-shelf Arm products, including its Coherent Mesh Network ("CMN") product. JTX-0004 at 1.

3.    The CMN "allows the different components [of a system-on-a-chip] to communicate with each other" and to communicate "externally . . . outside of the chip." Bench Tr. at 18:4-16 (Werkheiser). Arm has released multiple versions of its CMN product, including CMN-650 (code name "Rhodes") and CMN-700 (code name "Kampos"). D.I. 593 ("Bench Tr.") at 28:19-23 (Defilippi).

### A.    THE NUVIA TLA GRANTS ARM A LICENSE TO USE NUVIA'S CMN FEATURE REQUESTS, WHICH ARE NOT NUVIA CONFIDENTIAL INFORMATION.

4.    Section G.2 of Annex 1 to the Nuvia TLA provides that Nuvia granted Arm a "worldwide non-exclusive, irrevocable, royalty free" license for "rights . . . embodied in the Input" to "(i) make, use, copy, modify, publish and create derivative works of the Input, (ii) to

1

publicly perform or display, import, broadcast, publish, transmit, distribute, license, offer to sell, and sell, rent, lease, or lend copies of the whole or any part of the Input (and derivative works thereof); and (iii) to sublicense to third parties the foregoing rights." JTX-0004 at 14 (§ G.2) ("LICENSEE hereby grants to ARM and its Subsidiaries, under all of LICENSEE's and its affiliates' (as applicable) Intellectual Property rights that are embodied in the Input, the following worldwide, nonexclusive, irrevocable, royalty free, fully paid up rights: (i) to make, use, copy, modify, publish and create derivative works of the Input; (ii) to publicly perform or display, import, broadcast, publish, transmit, distribute, license, offer to sell, and sell, rent, lease or lend copies of the whole or any part of the Input (and derivative works thereof) in the form of new products or as implemented into an existing product (and derivative works thereof); and (iii) to sublicense to third parties the foregoing rights (but only as incorporated in the ARM products and derivative works thereof), including the right to sublicense to further third parties.").

5.     "Input" is defined as "all suggestions, comments, feedback, ideas, or know-how (whether in oral or written form) provided by [Nuvia] to ARM in respect of a Development Release." JTX-0004 at 10 (§ A.20).

6.     Annex 1 also provided Nuvia the option to "exchange [] the CMN-Rhodes-Max for a single use license to the ARM Technology known as 'CMN-Kampos.'" JTX-0004 at 12 (§ B.4).

7.     Nuvia agreed that "any requests for changes to design and implementation of the CMN-Kampos shall be considered Input and subject to the provisions of Part G below in this Section 2." JTX-0004 at 12 (§ B.4(ii)).

8.      Section G.7 provides that, "[n]otwithstanding anything to the contrary in this Annex 1 or the TLA, the Input shall not be treated as confidential information by Arm and ARM shall be free to use, copy, disclose or otherwise distribute any Input to any third party . . . without obligation or restriction of any kind." JTX-0004 at 15 (§ G.7).

9.      The license to "Input" under Annex 1 to the Nuvia TLA is a standard provision that Arm provides to many licensees, and it provides Arm with the rights to make and use input and feedback provided by those licensees to Arm's products. Mr. Defilippi, Arm's Director of Project Management, testified that "[i]t's a provision that's included with all of our IP products and essentially what it states is any input provided by the partner or customer that Arm has the licensing rights to make, use and modify it as it sees fit." Bench Tr. 49:3-17 ("Q. And then if you go to page 14, there is part G. I will show that. And then if you look at G2, it says licensee hereby grants to Arm and its subsidiaries under all of licensees and affiliates as applicable intellectual property rights that are embodied in the input, the following worldwide, nonexclusive replicable, excuse me, royalty free fully paid up rights. And then it lists some rights, do you see that? A. Yes, I do. Q. In your experience at Arm, Mr. Defilippi, are you familiar with this type of provision? A. Yes, it's a provision that's included with all of our IP products and essentially what it states is any input provided by the partner or customer that Arm has the licensing rights to make, use and modify it as it sees fit.") (Defilippi).

10.     Annex 1 to the Nuvia TLA provides that Arm's license to Input received from Nuvia survives termination of the agreement. Section G.3 of Annex 1 to the Nuvia TLA states, "[t]he license granted in Clause G.2 of this Annex 1 shall survive expiration or termination of this Annex 1." JTX-0004 at 14 (§ G.3).

11.      Annex 1 also provides that "[Nuvia] may receive enhanced lead partner ('ELP')
access for CMN-Kampos where ELP is an engagement model enabling partner input when using
ARM's standard interconnect products through changes to the design and implementation, as
well as early access to the technology and models." JTX-0004 at 12 (§ B.4(ii)) ("LICENSEE
may receive enhanced lead partner ('ELP') access for CMN-Kampos where ELP is an
engagement model enabling partner input when using ARM's standard interconnect products
through changes to the design and implementation, as well as early access to the technology and
models. Partners engage early (pre-Alpha), and work with ARM to develop and incorporate
changes to the design. The number and scope of the changes will be based on mutual dialogue
with LICENSEE, and the commercially reasonable efforts of the ARM engineering team to
accept, commit to, and implement those changes. ARM manages the verification & delivery of
the product and delivers it as the standard RTL for the CMN-Kampos product. LICENSEE
agrees that any requests for changes to design and implementation of the CMN-Kampos shall be
considered Input and subject to the provisions of Part G below in this Section 2.").

**B.      NUVIA REQUESTED FEATURES FOR CMN-KAMPOS PURSUANT
TO ANNEX 1 OF THE NUVIA TLA.**

12.      Nuvia requested certain features for implementation in CMN-Kampos, sending
documents designated Nuvia Confidential to Arm. Bench Tr. 33:19-36:12, 60:15-61:1; DTX-
127; DTX-129; DTX-378; DTX-379; PTX-0197.

13.      At the time Arm and Nuvia entered into the Nuvia TLA in September 2019, the
released version of the CMN was named CMN-Rhodes. Bench Tr. 47:20-25. Annex 1 provided
Nuvia the option to "exchange [] the CMN-Rhodes-Max for a single use license to the ARM
Technology known as 'CMN-Kampos.'" JTX-0004 at 12 (§ B.4), Bench Tr. 47:8-19. On January

18, 2021, Arm and Nuvia entered into an amendment to the Nuvia TLA to license "CMN-700-Max," the product number for CMN-Kampos. JTX-0007; Bench Tr. 28:18-23, 55:11-56:1.

14.      Defendants knew that Nuvia's feature requests were for CMN-Kampos. Vedaraman Geetha, Defendants' witness, testified that her understanding was "any features that [Nuvia] had would go in [CMN-Kampos]." Bench Tr. 4:21-5:3 ("Q. What was your understanding of the status of Kampos at the time you joined Nuvia? A. I think at the time I joined Nuvia, there was no Kampos RTL. There was only Rhodes RTL, and so I remember that any features that we had would go in that. Q. By that do you mean that any features that Nuvia requested would go in Kampos? A. Yes.") (Geetha).

15.      The documents marked Nuvia Confidential were titled "CMN feature requests" (DTX-378), "Feature support and proposed timelines for CMN Kampos" (DTX-127; DTX-379), and "Proposed timeline for features yet to be delivered" (DTX-129; PTX-0197).

16.      Arm and Nuvia held regular meetings between their engineering teams regarding the CMN. As part of this process, Arm and Nuvia discussed the development of the CMN, features that Nuvia requested be implemented into the CMN, and whether such feature requests could be included in Arm's development timeline. Bench Tr. at 20:3-6 (Werkheiser); Bench Tr. at 31:16-20, 41:14-42:5, 52:7-13, 60:15-61:1 (Defilippi). Arm would then decide which of Nuvia's requests to implement. Bench Tr. at 54:9-14 (Defilippi). Nuvia's requests for features in Arm's CMN product were not unique to Nuvia: Arm solicited feedback from all of its CMN partners, which could be as many as twenty different partners for that particular generation of CMN. Bench Tr. at 52:7-13 ("Q. I think you indicated that Nuvia had requested some features for the CMN product, is that right? A. Yes, they did. Q. Is that common for Arm's licensees and

5

partners to do? A. Yes, we solicit feedback from all of our partners and that could be up to 20 in a particular generation.") (Defilippi).

17.     Arm granted Nuvia enhanced lead partner ("ELP") access, which granted Nuvia the ability to provide input on the development of the next generation of CMN and early releases of the new CMN products. Bench Tr. 41:14-42:5, 52:7-13, 60:15-61:1 (Defilippi). Arm granted Nuvia ELP access to CMN-Kampos consistent with the "Input" provisions of Annex 1. Bench Tr. 41:14-42:5 ("Q. And that was what Arm decided to do in its relationship with Nuvia, correct? A. Well, ultimately we went through our standard working model where Nuvia became one of our lead partners, we opened up a more detailed engineering engagement with Nuvia, we provided Nuvia with much more of Arm knowledge and support of the product development and we took again, their feature requests as part of the product development. Q. And for the next year after this, there were meetings with Nuvia where Arm was trying to suck knowledge out of the Nuvia team, correct? A. That's not the language I would use. I believe shortly after this time we executed a contract to license CMN technology, Nuvia got the lead partner rights, they benefited from understanding and creating the direction of the CMN product by reviewing detailed plans about what we were planning to build and providing feedback to that."), 52:7-13 ("Q. I think you indicated that Nuvia had requested some features for the CMN product, is that right? A. Yes, they did. Q. Is that common for Arm's licensees and partners to do? A. Yes, we solicit feedback from all of our partners and that could be up to 20 in a particular generation."), 60:15-61:1 ("Q. And there was no delivery of a development release in connection with the relationship between Nuvia and Arm, was there? A. I believe there was. Q. And what was -- what was the development release? A. Nuvia would have as a lead partner would have been given earlier releases of CMN Kampos. Q. Do you know what the development release name was? A. No, I

don't, I don't have access to the actual one. Q. You don't know whether it falls into the definition or doesn't fall into this definition? A. I know that we provided early releases.") (Defilippi).

### C. THERE IS NO EVIDENCE THAT ARM USED DOCUMENTS MARKED CONFIDENTIAL BY NUVIA IN IMPLEMENTING THE CMN FEATURE REQUESTS OR EVIDENCE THAT NUVIA ASKED ARM TO REMOVE FEATURES POST-TERMINATION.

18.     When Arm decided to implement a requested feature, it would create its own specification and perform the development work itself. Mr. Defilippi testified that the actual implementation "would be done by [Arm's] engineering team," and that Arm's engineers "would take the feature request, Arm would develop its own specification for the feature and then go off and implement it in the product itself." Bench Tr. 54:15-20, 30:10-13 ("Q. You were working together to try to get product developed, right? A. Arm was implementing the product, and we were accepting Nuvia's feedback on features.") (Defilippi). He also testified that "once [the input] gets transferred over, to [Arm's] own documentation, it would be used in that documentation, our Arm documentation." Bench Tr. 54:21-55:1 ("Q. And after Arm has that input, I think you said it puts together its own documentation, is it still relying on that input for the implementation itself? A. No, once it gets transferred over, to our own documentation, it would be used in that documentation, our Arm documentation.") (Defilippi).

19.     Nuvia understood that its requests for CMN features would be licensed to Arm under the Nuvia TLA because Nuvia never requested that Arm remove the Nuvia-requested features from the CMN product following termination. Mr. Defilippi testified that he was "not aware of any requests to remove features after termination." Bench Tr. 58:6-9 ("Q. Are you aware of any requests by Nuvia or Qualcomm to remove any CMN features following termination? A. I'm not aware of any requests to remove features after termination.") (Defilippi).

20.    There were only five or so CMN feature requests unique to Nuvia, and even as to those five features, most of them were deprecated following termination of the Nuvia TLA and are no longer maintained. Bench Tr. at 58:10-17 ("Q. How many of the features specifically requested by Nuvia are still in CMN? A. From my recollection, there was on the order of five that were Nuvia specific, and in the follow on product CMN S3, Cyprus, a couple of those were actually deprecated where we moved or no longer supported this type of product. Q. How many do you think are left total? A. My guess is one or two.") (Defilippi). Only one or two Nuvia CMN feature requests remain in the product. *Id.*

21.    Mr. Defilippi testified that he was "not aware of any continued use of" the documents marked as Nuvia Confidential Information after the features were implemented as "at that point we would have been using our technical reference with our customers, and feature development would have been completed at that time as well." Bench Tr. at 55:2-10 ("Q. In terms of confidential materials that Nuvia may have provided regarding feature requests, are you aware of any use of those documents after the features were implemented? A. No, I'm not aware of any continued use of those documents, and CMN 700 was released in the '21, 2022 time frame, and at that point we would have been using our technical reference with our customers, and feature development would have been completed at that time as well.") (Defilippi). He further testified that, after termination of the Nuvia TLA, "the CMN product was released at that stand point so we would have been using our own documentation and it would have been implemented in the product at that time." Bench Tr. at 56:2-7 ("Q. Are you aware of any use of the documentation that Nuvia provided after the termination of the Nuvia agreement? A. No, I'm not, like I said the CMN product was released at that stand point so we would have been using

8

our own documentation and it would have been implemented in the product at that time.")
(Defilippi).

22.    Arm believed in good faith that Nuvia's requests were licensed as "Input" under
Annex 1 to the Nuvia TLA. Bench Tr. 51:6-12 ("Q. What do you understand that feedback
clause to permit Arm to do? A. Yes, because we are receiving potentially IP from partners, we
have to ensure that we have the license to use it as we see fit, and that could be as parts of a
specification that could go into an architecture specification or it could be used for product
development."), 58:18-22 ("Q. Do you believe Arm has a license to maintain those one or two
features specifically requested by Nuvia that may remain? A. Yes, I do, I believe we have a
license grant to continue to use those features.") (Defilippi).

## II.    ARM COMPARED NUVIA AND QUALCOMM CONFIGURATION FILES TO DISCOVER DEFENDANTS' BREACH OF THE NUVIA ALA

23.    In May 2022, following termination of the Nuvia ALA, Qualcomm requested
verification that its Hamoa CPU was an Architecture Compliant Core. PTX-0400 at 1.

24.    Arm suspected, but did not know, that Hamoa was a "production version tapeout
of earlier signed-off CPU (internal sample) called as Phoenix in Feb-2022" and came "from the
Nuvia design team." PTX-0400 at 1. Arm was not aware of any custom "CPU designs from
Qualcomm (not Nuvia) in the last couple of years" prior to termination of the Nuvia ALA.
DTX-168 at 1.

25.    On January 19, 2022, Ziad Asghar, a Qualcomm employee, asked Manu Gulati,
another Qualcomm employee, "do arm know that we are using Phoenix in Hamoa based on our
use of the tools?" PTX-0892.

26.    Guy Larri, a Distinguished Engineer at Arm, testified that another Arm Engineer,
Vivek "Agrawal did a DIFF on one file in response to Qualcomm sending to Arm a new piece of

confidential information to seek approval for a tapeout. The only thing Mr. Agrawal did was a comparison of the new piece of information and that one existing file, being a configuration file for Arm's architecture compliance kit, to understand the relationship between the new piece of information and the existing piece of information." Bench Tr. 11:16-12:1 ("Q. So is it your testimony that Mr. Agrawal did not access Nuvia confidential information after termination of the Nuvia agreements? A. Mr. Agrawal did a DIFF on one file in response to Qualcomm sending to Arm a new piece of confidential information to seek approval for a tapeout. The only thing Mr. Agrawal did was a comparison of the new piece of information and that one existing file, being a configuration file for Arm's architecture compliance kit, to understand the relationship between the new piece of information and the existing piece of information.") (Larri).

27.    Defendants did not present any evidence at trial that Arm used the Nuvia configuration files for any purpose other than running the "diff" to determine whether Defendants were in compliance with Section 15(a) of the Nuvia ALA and whether Arm had verification obligations under the Qualcomm ALA. Defendants did not present any evidence that Arm used the Nuvia configuration files in any Arm design, any Arm product, or any other part of Arm's business.

## III.    ARM'S POST-TERMINATION TREATMENT OF DOCUMENTS MARKED CONFIDENTIAL BY NUVIA

28.    Section 15.1(b) of the Nuvia ALA states in part that "ARM shall, at LICENSEE's option, either destroy or return to LICENSEE any LICENSEE Confidential Information." JTX-0001 at 14 (§ 15.1).

29.    At trial, Defendants did not present any evidence that they ever requested that Arm return or destroy Nuvia Confidential Information.

10

30.    Mr. Defilippi testified that he was not aware of any requests from Defendants to remove any features in Arm's CMN products following termination of the Nuvia ALA and Nuvia TLA. Bench Tr. 58:6-9 ("Q. Are you aware of any requests by Nuvia or Qualcomm to remove any CMN features following termination? A. I'm not aware of any requests to remove features after termination.") (Defilippi).

31.    Arm's ability to return or destroy Nuvia Confidential Information was also limited by its document preservation obligations in this litigation. This is confirmed by Defendants' April 1, 2022, certification of compliance with Section 15.1(a) of the Nuvia ALA. In that certification, Defendants stated that "[f]urther, Nuvia has independent preservation obligations that require it to hold all relevant documents and electronically stored information ('ESI') thus making permanent destruction of all ARM Confidential Information not feasible at this time." JTX-0009 at 2. Arm proceeded in the same manner with respect to the Nuvia Confidential Information in its possession, discontinuing any use rather than destroying.

32.    It likewise was not feasible for Arm to return or destroy all Nuvia Confidential information once the Nuvia ALA and TLA were terminated. Mr. Larri testified that, by the time of termination, a "document preservation order had been issued, so even things that would be normally destroyed in the normal course of business would be preserved." Bench Tr. 11:6-15 (Larri). Mr. Larri also testified that Arm's employees "had no reason to access the Nuvia confidential information" post-termination. Bench Tr. 11:6-15 ("Q. So the access by Arm personnel, such that it existed, during the normal course of business remained the same post-termination. Is that correct? A. The access remained the same with the two provisos that the document preservation order had been issued, so even things that would be normally destroyed in the normal course of business would be preserved, and as people had no reason to access the

11

Nuvia confidential information, and they were very busy with many other things, that they would not have had any reason to access it.") (Larri).

33.     Neither the Nuvia ALA nor the Nuvia TLA provides that Nuvia Confidential Information must be quarantined following termination. The Nuvia ALA provides that "ARM will immediately discontinue any use of LICENSEE Confidential Information disclosed under this ALA." JTX-0001 § 15.1(b). The Nuvia TLA contains similar provisions regarding discontinuance of use.

34.     Following termination of the Nuvia ALA and Nuvia TLA, Arm discontinued use of Nuvia Confidential Information in compliance with Section 15.1(b) of both the Nuvia ALA and the Nuvia TLA. Arm's Chief Commercial Officer, Will Abbey, testified that "to the best of [his] knowledge, yes, we were in compliance" with the termination provisions of the Nuvia ALA and Nuvia TLA. D.I. 588 ("Jury Tr.") 185:15-18 ("Q. Do you understand Arm to be in compliance with those termination provisions? A. To the best of my knowledge, yes, we were in compliance.") (Abbey). Mr. Defilippi also testified that at the time of termination, he was not aware of any use of Nuvia documentation and that "[Arm] would have been using [its] own documentation." Bench Tr. 56:2-7 ("Q. Are you aware of any use of the documentation that Nuvia provided after the termination of the Nuvia agreement? A. No, I'm not, like I said the CMN product was released at that stand point so we would have been using our own documentation and it would have been implemented in the product at that time.") (Defilippi).

35.     Mr. Abbey presented undisputed testimony that Arm certified its compliance with Section 15.1 following termination of the Nuvia ALA and Nuvia TLA. Jury Tr. 185:11-14 ("Q. And do you have an understanding of whether Arm certified it was in compliance with those termination provisions? A. Yes, to the best of my knowledge, yes.") (Abbey). Defendants offered

no testimony that Arm failed to certify compliance with Section 15.1, nor does the record contain

any documentary evidence in support of their contention.

Dated: February 12, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington DC  20004
(202) 389-5000
gregg.locascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Joyce Liou
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
jliou@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Kyle W.K. Mooney
Kyle D. Friedland
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
(212) 336-4092
kmooney@mofo.com
kfriedland@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

_/s/ Anne Shea Gaza_
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Plaintiff Arm Ltd.*

14

370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 12, 2025, a copy of the foregoing

document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

Isaac B. Zaur
Nora Niedzielski-Eichner
CLARICK GUERON REISBAUM LLP
220 Fifth Avenue, 14th Floor
New York, NY 10001
izaur@cgr-law.com
nniedzie@cgr-law.com

Catherine Nyarady
Anna R. Gressel
Jacob A. Braly
Alexander M. Butwin
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
agressel@paulweiss.com
jbraly@paulweiss.com
abutwin@paulweiss.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
Anna P. Lipin
William T. Marks
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
kdunn@paulweiss.com
wisaacson@paulweiss.com
mzappala@paulweiss.com
ejmorgan@paulweiss.com
alipin@paulweiss.com
wmarks@paulweiss.com

Andrea L. D'Ambra
Susana Medeiros
Kira Latham
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019
andrea.dambra@nortonrosefulbright.com
susana.medeiros@nortonrosefulbright.com
kira.latham@nortonrosefulbright.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Plaintiff Arm Ltd.*