IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ARM LTD., )
)
Plaintiff, )
)
v. ) C.A. No. 22-1146 (MN)
)
QUALCOMM INC., QUALCOMM )
TECHNOLOGIES, INC. and NUVIA, INC., )
)
Defendants. )

## DEFENDANTS' ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF ARM LTD.'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
William T. Marks
Anna P. Lipin
PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
(202) 223-7300

Catherine Nyarady
Erin J. Morgan
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

February 14, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

I.   NATURE AND STAGE OF THE PROCEEDING................................................................. 1

II.  SUMMARY OF ARGUMENT ......................................................................................... 1

III. STATEMENT OF FACTS ................................................................................................ 3

IV.  LEGAL STANDARD........................................................................................................ 3

V.   ARGUMENT ..................................................................................................................... 4

    A.   Arm Is Not Entitled to Judgment as a Matter of Law or a New Trial
        on Qualcomm's Counterclaim ................................................................................. 4

        1.   The Jury Heard Sufficient Evidence to Find that Qualcomm's
            CPUs Were Licensed Under the Qualcomm ALA ..................................... 4

        2.   The Jury Was Properly Charged with Interpreting the Qualcomm
            ALA and Deciding Whether Qualcomm's CPUs Were Created by
            Qualcomm Under the ALA's License ........................................................ 6

        3.   Arm's Interpretation of the Phrase "Applicable ARM Technology"
            Is Not a Basis to Set Aside the Verdict..................................................... 9

    B.   Arm Is Not Entitled to Judgment as a Matter of Law on Its Claim Against
        Nuvia Because It Cannot Show that the Jury Was Required to Find in Its
        Favor on All of the Elements of Its Claim ........................................................... 10

    C.   Arm Is Not Entitled to Judgment as a Matter of Law or a New Trial
        on Its Claim Against Qualcomm Because the Jury Heard Sufficient
        Evidence that Qualcomm Did Not Assume the Nuvia ALA .............................. 13

    D.   A Retrial of Arm's Claim Against Nuvia Would Not Require a Retrial
        of Arm's Claim Against Qualcomm or Qualcomm's Counterclaim ................... 16

VI.  CONCLUSION................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc.* v. *Hospira, Inc.*,
    336 F. Supp. 3d 333 (D. Del. 2018)................................................................3, 11

*Atlas Food Sys. & Servs., Inc.* v. *Crane Nat'l Vendors, Inc.*,
    99 F.3d 587 (4th Cir. 1996) ......................................................................17

*Boucher* v. *U.S. Suzuki Motor Corp.*,
    73 F.3d 18 (2d Cir. 1996)..........................................................................17

*Boyce* v. *Edis Co.*,
    224 F. Supp. 2d 814 (D. Del. 2002)............................................................4

*Brand Mktg. Grp.* v. *Intertek Testing Servs., N.A., Inc.*,
    801 F.3d 347 (3d Cir. 2015).....................................................................17

*Castano* v. *Am. Tobacco Co.*,
    84 F.3d 734 (5th Cir. 1996) .....................................................................17

*Fireman's Fund Ins. Co.* v. *Videfreeze Corp.*,
    540 F.2d 1171 (3d Cir. 1976).....................................................................3

*Gallick* v. *Baltimore & Ohio R.R. Co.*,
    372 U.S. 108 (1963)................................................................................16

*Gasoline Prods. Co.* v. *Champlin Refin. Co.*,
    283 U.S. 494 (1931)...........................................................................16, 17

*Great Coastal Exp., Inc.* v. *Teamsters*,
    511 F.2d 839 (4th Cir. 1975) ...................................................................20

*Houseman* v. *U.S. Aviation Underwriters*,
    171 F.3d 1117 (7th Cir. 1999) .............................................................17, 18

*In re Rhone-Poulenc Rorer, Inc.*,
    51 F.3d 1293 (7th Cir. 1995) ...................................................................16

*Jensen* v. *Traders & Gen. Ins. Co.*,
    345 P.2d 1 (Cal. 1959)..............................................................................9

*Leonard* v. *Stemtech Int'l Inc.*,
    834 F.3d 376 (3d Cir. 2016)........................................................................4

*LG Infocomm U.S.A., Inc.* v. *Euler Am. Credit Indem. Co.*,
    419 F. Supp. 2d 1248 (S.D. Cal. 2005)......................................................6, 8

*Lies* v. *Farrell Lines, Inc.*,
    641 F.2d 765 (9th Cir. 1981) ...........................................................................17

*Maffei* v. *N. Ins. Co. of New York*,
    12 F.3d 892 (9th Cir. 1993) .............................................................................7

*Mancini* v. *Northampton Cnty.*,
    836 F.3d 308 (3d Cir. 2016)........................................................................3, 4

*Mazer* v. *Lipschutz*,
    327 F.2d 42 (3d Cir. 1963).......................................................................16, 17

*Meso Scale Diagnostics, LLC* v. *Roche Diagnostics GmbH*,
    62 A.3d 62 (Del. Ch. 2013) ............................................................................15

*NRG Power Mktg., LLC* v. *Me. Pub. Utils. Comm'n*,
    558 U.S. 165 (2010) ........................................................................................15

*Pritchard* v. *Liggett & Myers Tobacco Co.*,
    370 F.2d 95 (3d Cir. 1966) .............................................................................17

*Pryer* v. *C.O. 3 Slavic*,
    251 F.3d 448 (3d Cir. 2001) ...........................................................................17

*R.S.E., Inc.* v. *Pennsy Supply, Inc.*,
    523 F. Supp. 954 (M.D. Pa. 1981) ..............................................................3, 11

*Recorded Picture Co.* v. *Nelson Ent., Inc.*,
    61 Cal. Rptr. 2d 742 (Ct. App. 1997) .............................................................14

*Rice* v. *Cmty. Health Ass'n*,
    203 F.3d 283 (4th Cir. 2000) .........................................................................17

*Robinson* v. *First State Cmty. Action Agency*,
    920 F.3d 1822 (3d Cir. 2019)..........................................................................20

*Romer* v. *Baldwin*,
    317 F.2d 919 (3d Cir. 1963)...........................................................................17

*Spence* v. *Bd. of Educ. of Christina Sch. Dist.*,
    806 F.2d 1198 (3d Cir. 1986)..........................................................................17

*Swentek* v. *USAIR, Inc.*,
    830 F.2d 552 (4th Cir. 1987) .........................................................................17

*Thompson* v. *Asimos*,
    212 Cal. Rptr. 3d 158 (Ct. App. 2016) .............................................................6

*Tiffany & Co.* v. *Spreckels*,
262 P. 742 (Cal. 1927) ...................................................................................15

*Vizzini* v. *Ford Motor Co.*,
569 F.2d 754 (3d Cir. 1977) ..........................................................................17

*Whelan* v. *Abell*,
48 F.3d 1247 (D.C. Cir. 1995) ..................................................................16, 18

*Williams* v. *Rene*,
72 F.3d 1096 (3d Cir. 1995) ..........................................................................17

*Wolf* v. *Walt Disney Pictures & Television*,
76 Cal. Rptr. 3d 585 (Ct. App. 2008) ......................................................6, 9, 13

**Statutes**

Cal. Code Civ. Proc. § 1858 ...................................................................................9

**Rules**

Fed. R. Civ. P. 50 ..................................................................................................3

Fed. R. Civ. P. 59 .............................................................................................4, 16

**Other Authorities**

U.S. Const. amend. VII .................................................................................. *passim*

Jud. Council of Cal. Civ. Jury Instructions ..........................................................7, 8

## I.    NATURE AND STAGE OF THE PROCEEDING

The nature and stage of the proceeding are set forth in defendant Nuvia, Inc.'s opening brief in support of its renewed motions for judgment as a matter of law.  D.I. 598 at 1.

## II.    SUMMARY OF ARGUMENT

The jury found that Qualcomm did not breach the Nuvia ALA and that Qualcomm's CPUs that include designs acquired in the Nuvia acquisition are licensed under the Qualcomm ALA. The jury was attentive throughout trial and returned a verdict only after significant deliberation under agreed-upon jury instructions.  Arm provides no basis to overturn the jury's findings or for judgment as a matter of law on its claim against Nuvia.

A.    The jury heard sufficient evidence to find that Qualcomm's CPUs are licensed under the Qualcomm ALA.  The Qualcomm ALA licenses Qualcomm "to use the applicable ARM Technology to design and have designed, including all stages of implementation from specification though RTL design to generation of GDSII (subject to Clause 2.2 of the ALA) Architecture Compliant Cores," JTX-11 § 2, cl. B.1.1, which are microprocessor cores "developed" by Qualcomm under the Qualcomm ALA.  The jury heard substantial evidence that Qualcomm engaged in extensive design and development work to create its Arm-compliant CPUs, all of which Qualcomm started after the Nuvia acquisition.  And because those CPUs were not designed for the server market like Nuvia's pre-acquisition efforts, their design and development process differed fundamentally from the work Nuvia performed.  The jury was entitled to find that Qualcomm's CPUs were "designed" and "developed" by Qualcomm under the Qualcomm ALA.

Arm argues that the Qualcomm ALA does not cover Architecture Compliant Cores that include technology acquired by Qualcomm from another Arm licensee.  But under California law, the jury was required to determine the meaning of the contract because the contractual language was reasonably susceptible to both parties' interpretations and the parties presented conflicting

extrinsic evidence at trial in the form of the parties' understanding of the contract and their course of dealings. Arm engages in misdirection when it argues that the Qualcomm ALA does not cover the *Nuvia RTL*; the question put to the jury was whether *Qualcomm's CPUs* were licensed. Arm's argument concerning ARM Technology delivered under the Qualcomm ALA likewise fails: it improperly invades the jury's province as the factfinder and misinterprets the contract as well.

B.     Arm is not entitled to judgment as a matter of law on its breach claim against Nuvia. Arm bore the burden on that claim, but its motion addresses only one of several necessary elements of the claim. The motion fails for that reason alone. Even as to the element Arm does address—whether Nuvia complied with Section 15.1(a) of the Nuvia ALA—the jury had sufficient evidence to find that the Nuvia RTL was Nuvia Technology and not a derivative of ARM Technology, including because the aspects of the RTL that Arm's experts focused on at trial constituted 1% or less of the RTL and were entirely replaced by Qualcomm under the Qualcomm ALA.

C.     On Arm's breach claim against Qualcomm, the jury heard sufficient evidence to find that Qualcomm did not assume the Nuvia ALA, as Arm was required to prove. Arm presented no evidence that Qualcomm intended to assume Nuvia's obligations, and Arm witnesses testified that Qualcomm refused to assume the obligations of the Nuvia ALA, including its payment term. The thin evidence of assumption Arm cites does not show that the jury had to find in Arm's favor.

D.     As a last-ditch effort, Arm argues that the Seventh Amendment's Reexamination Clause requires the Court to throw out the jury's verdict entirely because of the mistrial on Arm's breach claim against Nuvia. But Arm has no traditional reexamination rights in an adverse verdict; it is Qualcomm that has a Seventh Amendment interest in protecting the jury's verdict. There is also no risk of an inconsistent verdict in a second trial limited to an alleged breach by Nuvia—particularly given that courts will find verdicts inconsistent only if there is no possible way to

reconcile them.  In addition, while not required, Nuvia will agree not to raise the first jury's verdict and the Qualcomm ALA before the jury in any retrial limited to Nuvia.

In any event, Arm's breach claim against Qualcomm and Qualcomm's counterclaim are not so intertwined with Arm's claim against Nuvia that a full retrial is necessary.  As to Qualcomm's counterclaim, the jury merely considered the meaning and scope of the Qualcomm ALA license; it determined nothing concerning Nuvia.  The jury's finding on Arm's claim against Qualcomm is independently supportable because the jury could have found for Qualcomm on the issue of assumption without making any finding that Qualcomm did not violate Section 15.1.

## III.    STATEMENT OF FACTS

The relevant facts are set forth in the argument section, as appropriate.

## IV.    LEGAL STANDARD

*Rule 50.*  Judgment as a matter of law "may be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Mancini* v. *Northampton Cnty.*, 836 F.3d 308, 314 (3d Cir. 2016).[1]  An even "stricter standard" applies where the movant bore the burden at trial:  there must be "insufficient evidence for permitting any different finding" from the one advanced by the movant—on every element of the movant's claim.  *Amgen Inc.* v. *Hospira, Inc.*, 336 F. Supp. 3d 333, 340–41 (D. Del. 2018) (quoting *Fireman's Fund Ins. Co.* v. *Videfreeze Corp.*, 540 F.2d 1171, 1177 (3d Cir. 1976)); *R.S.E., Inc.* v. *Pennsy Supply, Inc.*, 523 F. Supp. 954, 958 (M.D. Pa. 1981).  Judgment for a movant in that posture is "reserved for extreme circumstances."  *Fireman's Fund*, 540 F.2d at 1177.

*Rule 59.*  A new trial motion should be granted "only when the great weight of the evidence

---

[1] All internal quotation marks, citations, and alterations have been omitted from case citations.

cuts against the verdict and a miscarriage of justice would result if the verdict were to stand"—in other words, when "the verdict cries out to be overturned or shocks the conscience." *Leonard* v. *Stemtech Int'l Inc.*, 834 F.3d 376, 386 (3d Cir. 2016). The trial court "should proceed cautiously" before overturning a verdict it considers against the weight of evidence, "since whenever a new trial is granted on this ground, the judge has necessarily substituted his or her judgment, at least to some extent, for that of the jury." *Boyce* v. *Edis Co.*, 224 F. Supp. 2d 814, 817 (D. Del. 2002).

## V. ARGUMENT

### A. Arm Is Not Entitled to Judgment as a Matter of Law or a New Trial on Qualcomm's Counterclaim.

Qualcomm's counterclaim for declaratory judgment asked the jury to determine whether "the Qualcomm CPUs that included designs acquired in the Nuvia acquisition"—namely, Qualcomm's Hamoa, Pakala, Nordschleife, and Pegasus cores, Tr. 428:13–430:12 (Williams, discussing DDX-2.1–2.2)—"are licensed under the Qualcomm ALA." D.I. 572 at 1. The jury answered yes. *Id.* Drawing "every fair and reasonable inference" in Qualcomm's favor, *Mancini*, 836 F.3d at 314, the trial record contained sufficient evidence to support that finding.

#### 1. *The Jury Heard Sufficient Evidence to Find that Qualcomm's CPUs Were Licensed Under the Qualcomm ALA.*

Annex 1 of the Qualcomm ALA licenses Qualcomm "to use the applicable ARM Technology to design and have designed, including all stages of implementation from specification though RTL design to generation of GDSII (subject to Clause 2.2 of the ALA) Architecture Compliant Cores." JTX-11 § 2, cl. B.1.1. An "Architecture Compliant Core" is "a microprocessor core developed by or for licensee under the licenses granted in . . . Annex 1." *Id.* § 2, cl. A.6. The jury reasonably found that Qualcomm "developed" and "design[ed]" Hamoa, Pakala, Nordschleife, and Pegasus "under the licenses granted" in the Qualcomm ALA.

Overwhelming evidence demonstrated that the extensive development process for those

CPUs began after Qualcomm acquired Nuvia in March 2021.  Gerard Williams testified that the "design start point" for Hamoa was in July 2021, months after the Nuvia acquisition closed, with Pakala, Nordschleife, and Pegasus starting even later.  Tr. 428:13–430:12 (discussing DDX-2.1– 2.2).  Asked to explain "the steps for designing a CPU," Mr. Williams described a "multiphase process" involving steps of analysis, iteration, development, writing, reviewing specifications, and coding.  Tr. 430:16–431:20.  When asked "what part of those stages . . . took place at Qualcomm," Mr. Williams said, "All of them."  *Id.*  Arm's expert agreed that Qualcomm "necessarily" went "through a complex process of designing and developing microarchitecture innovations" to develop its CPUs.  Tr. 508:4–15 (Colwell); *see also* Tr. 597:13–598:2 (Grisenthwaite).  That work was done by Qualcomm employees.  Tr. 400:13–15 (Williams); Tr. 579:15–22 (Weiser).

In addition, Qualcomm's post-acquisition development and design efforts were aimed at the compute, mobile, and automotive markets, whereas before the acquisition, Nuvia focused only on a server chip that Qualcomm abandoned after the acquisition.  Tr. 428:1–12 (Williams).  The jury heard extensive evidence about how the process of microarchitecture design and development is fundamentally oriented towards a desired end market, such that the design of a mobile chip, for example, involves different considerations and features than a server chip.  Tr. 647:9–21, 660:7– 662:9, 663:16–664:5 (Annavaram); Tr. 426:12–427:11 (Williams); *see also* Tr. 477:13–478:7 (Colwell, describing how "high-end expensive fast" chips would not work for mobile applications).  Those facts further support the jury's finding that Qualcomm engaged in "design" and "development" work for its CPUs within the scope of the license grant.

Arm argues that "Nuvia's pre-acquisition CPU code was *not* developed under the licenses granted in the Qualcomm ALA, but rather under the licenses granted in the Nuvia ALA."  Br. 6. Similarly, Arm argues that "Nuvia's pre-acquisition code was not developed *by* Qualcomm or *for*

Qualcomm." *Id.* But the jury had more than sufficient evidence to find that Qualcomm's CPUs *were* developed by Qualcomm under the Qualcomm ALA and to reject Arm's view of the facts.

### 2. The Jury Was Properly Charged with Interpreting the Qualcomm ALA and Deciding Whether Qualcomm's CPUs Were Created by Qualcomm Under the ALA's License.

Arm argues that the Qualcomm ALA license is "limited to Architecture Compliant Cores developed (1) under the licenses granted in the Qualcomm ALA, (2) by or for Qualcomm, and (3) based on Arm Technology delivered by Arm to Qualcomm under the Qualcomm ALA." Br. 5. Based on the jury instructions and the evidence before it, the jury was entitled to agree with Qualcomm's interpretation of the license and its application to Qualcomm's CPUs. Using the plain language of the Qualcomm ALA as well as extrinsic evidence: after acquiring Nuvia, Qualcomm proceeded "to use the applicable ARM Technology to design and have designed, including all stages of implementation from specification though RTL design to generation of GDSII . . . Architecture Compliant Cores." JTX-11 § 2, cl. B.1.1. The evidence showed that the work was done "by and for Qualcomm." The jury had ample evidence to conclude that "all" means all—and that all of Qualcomm's design and development work on Qualcomm's CPUs was Qualcomm's work protected under its ALA, including designs incorporating acquired technology.

Under California law, the jury is required to resolve a dispute over the meaning of a contract if the contractual language is "reasonably susceptible" to both parties' interpretations and the parties presented conflicting extrinsic evidence at trial. *Wolf* v. *Walt Disney Pictures & Television*, 76 Cal. Rptr. 3d 585, 602 (Ct. App. 2008).[2] Here, Qualcomm interpreted the license

---

[2] *Thompson* v. *Asimos*, 212 Cal. Rptr. 3d 158, 174 (Ct. App. 2016) ("The threshold question for trial and appellate courts is whether the writing is ambiguous—that is, reasonably susceptible to more than one interpretation."); *LG Infocomm U.S.A., Inc.* v. *Euler Am. Credit Indem. Co.*, 419 F. Supp. 2d 1248, 1258 (S.D. Cal. 2005) ("ambiguous" means "capable of two or more constructions, both of which are reasonable"); *Maffei* v. *N. Ins. Co. of New York*, 12 F.3d 892, 898 (9th Cir. 1993)

grant in Annex 1 to cover any designs or Architecture Compliant Cores developed by Qualcomm; Arm sought to read in a requirement that a microprocessor core must be developed from scratch, without any design work acquired from another Arm licensee. When Qualcomm sought summary judgment on licensure, D.I. 391 at 12–15, Arm successfully argued, citing California law, that issues relating to the Qualcomm ALA were for the jury to decide. D.I. 416 at 15–17.

At trial, the Court stated in uncontested instructions that the jury "must decide what the parties intended" by considering "the usual and ordinary meaning of the language used in the contract as well as the circumstances surrounding the making of the contract." D.I. 568 § 3.4. The Court also instructed based on California Civil Jury Instruction (CACI) 318 that, "In deciding what the words in a contract meant to the parties, you may consider how the parties acted after the contract was created but before any disagreement between the parties arose." *Id.* § 3.7.

The jury applied those instructions to the competing extrinsic evidence regarding the meaning of the Qualcomm ALA. Qualcomm presented evidence that there is no requirement in the ALA requiring Qualcomm to start development from scratch without any acquired technology. That included internal Arm communications in which Arm employees understood that the Qualcomm ALA would cover technology acquired from Nuvia. DTX-90 at 5 (Arm's Chief Architect Grisenthwaite: "QC have a reasonably bombproof arch license that covers everything in the duration (to mid 2020s at least)"); DTX-47 at 1 (P. Williamson chat January 12, 2021: "Qualcomm Nuvia is a problem. Qualcomm already have a v8 arch license"); DTX-52 at 1 (K. Shivashankar chat January 12, 2021: "Nuvia team will be able to use the architecture license which Qualcomm has"); DTX-144 at 1 (R. Haas chat January 12, 2021: "I have no idea why we

---

("ordinarily summary judgment is improper" where a contract term is "ambiguous" because "differing views of the intent of parties will raise genuine issues of material fact").

did an architecture deal with a Start-up. . . We have left a route to blow a hole in our revenue plan . . . Qualcomm already have a v9 architecture license"); DTX-145 at 3 (R. Haas chat January 13, 2021: "I'm struggling not to be pissed that we set up a route for Qualcomm to collapse the payments to Arm and also to reduce our leverage to sell our features and value to others . . . Feels like in our chess game we left ourselves very exposed").  As noted in the comments to CACI 318, "The practical interpretation of the contract by one party, evidenced by his words or acts, can be used against him on behalf of the other party."

The course of the parties' dealings also supported the jury's verdict.  Qualcomm submitted evidence that Arm gave verification approval under the Qualcomm ALA to Qualcomm's Phoenix CPU, which Arm knew contained Nuvia RTL.  DTX-358; DTX-165; DTX-168 at 2; Tr. 458:19–461:6 (Williams).  Qualcomm also told Arm that it expected to operate under the Qualcomm ALA.  DTX-1196; Tr. 576:9–577:23 (Weiser); *see* Tr. 456:23–457:7 (Williams).  Under California law, "When the parties to a contract perform under it and demonstrate by their conduct that they knew what they were talking about the courts should enforce that intent."  CACI 318 cmt.

On the other side, Arm witnesses testified at trial concerning their expectations that Qualcomm was not entitled to develop products under the Qualcomm ALA unless they were "starting from scratch"—testimony necessarily rejected by the jury.  Tr. 229:15–230:13 (Williamson); *LG Infocomm*, 419 F. Supp. 2d at 1258 (plaintiff's attempt "to introduce evidence of its reasonable expectations under the policy" implied the relevant contract term was "ambiguous").  Arm also presented contested evidence of what Arm's counsel said "reflects the course of dealings" of a prior instance where Qualcomm sought consent from Arm to acquire another Arm licensee.  Tr. 179:22–180:6 (Abbey); Tr. 220:4–17 (Williamson); Tr. 89:2–10 (Arm counsel); Tr. 587:4–588:3 (Weiser).

Arm points to no contract language indicating that the Qualcomm ALA license, including the phrase "all stages of development," excludes development incorporating acquired technology. Instead, Arm supports its theory with its own inferences from the contract language. Arm is improperly attempting to set aside the jury's verdict properly based on the evidence and instructions and instead write into the Qualcomm ALA a term that prohibits Qualcomm from using acquired RTL. But a court cannot "insert what has been omitted" from a contract. Cal. Code Civ. Proc. § 1858; *Jensen* v. *Traders & Gen. Ins. Co.*, 345 P.2d 1, 3 (Cal. 1959). And even if the contract were reasonably susceptible to Arm's interpretation, the contract would also at least be reasonably susceptible to Qualcomm's contrary interpretation. *Wolf*, 76 Cal. Rptr. 3d at 602.

Arm's argument about the meaning of the Qualcomm ALA also addresses the wrong question. The jury was not asked whether "the Nuvia-acquired CPU designs"—that is, the Nuvia RTL—were licensed. The jury was asked whether the "Qualcomm CPUs" were licensed. D.I. 572. The Court recognized the distinction during discussions regarding the wording of the third question on the verdict form: "they're saying look, we have other stuff that you guys are complaining about that we did later . . . where we modified it or we made changes to things, so we don't think it is what we acquired." Tr. 871:19–25. Arm ultimately did not object to wording on the verdict form focused on "the Qualcomm CPUs." *See* Tr. 873:3–14.

### 3. Arm's Interpretation of the Phrase "Applicable ARM Technology" Is Not a Basis to Set Aside the Verdict.

Arm further argues that "the Qualcomm ALA grants a license only to 'Arm Technology' that Arm delivered to Qualcomm under the Qualcomm ALA," and that "Code and designs Nuvia developed before it had any relationship with Qualcomm could not possibly have been developed" using any such ARM Technology. Br. 7–8. That argument again requires setting aside the contractual language and the extrinsic evidence supporting the jury's verdict.

9

Arm's argument also fails because it relies on the definition of ARM Technology from the body of the ALA, not from the controlling Annex. When Annex 1 provisions conflict with those in the ALA, Annex 1 controls. JTX-11 (cover); Tr. 571:6–20 (Weiser). Annex 1's definition does not include any requirement that ARM Technology be "delivered by" Arm to Qualcomm and licenses Qualcomm "to design and have designed, including all stages of implementation" an Architecture Compliant Core. JTX-11 § 2, cl. A.10.

Arm's argument is substantively wrong, too. Arm relies on Section 2.6 of the Qualcomm ALA, which states that Qualcomm does not have "a license to use any ARM technology except the ARM Technology." JTX-10 § 2.6; *see* Br. 8. Arm argues that what constitutes ARM Technology under the Nuvia ALA becomes unlicensed ARM technology when used for purposes of the Qualcomm ALA. Br. 8. Arm did not present that argument to the jury, but even if it had, the jury could have rejected it based on the contractual language and relevant extrinsic evidence.

Nor does Arm explain why the Nuvia RTL would constitute ARM Technology under the Nuvia ALA. Arm did not create the Nuvia RTL; Nuvia did. That RTL was protected under the Nuvia ALA as "Nuvia Technology." The term "Arm technology" is undefined in the Qualcomm ALA, and Arm makes no effort to show that acquired design work—particularly work protected as the licensee's own technology under a separate ALA—somehow constitutes "Arm technology."

## B. Arm Is Not Entitled to Judgment as a Matter of Law on Its Claim Against Nuvia Because It Cannot Show that the Jury Was Required to Find in Its Favor on All of the Elements of Its Claim.

To prevail on its breach claim against Nuvia, Arm had to prove that Nuvia failed to perform under Section 15.1(a) of the Nuvia ALA; that Arm suffered harm; and that Nuvia's failure caused the harm. D.I. 568 § 3.3. As Nuvia has explained in its post-trial motion (D.I. 598), it is Nuvia—not Arm—that is entitled to judgment as a matter of law, because the jury lacked sufficient evidence to find for Arm on the required elements. But even if the Court concluded otherwise,

Arm still could not satisfy its even more stringent burden here: demonstrating that no reasonable jury could decide a single element against Arm. *Amgen*, 336 F. Supp. 3d at 340–41.

As a preliminary matter, Arm's motion ignores the elements of harm and causation. D.I. 568 § 3.3. By failing to address those elements, it cannot show it is entitled to judgment as a matter of law. *See R.S.E.*, 523 F. Supp. at 958.

With respect to failure of performance: Arm's theory at trial was that Nuvia had to destroy the Nuvia RTL. Tr. 893:24–894:24 (Arm closing); Tr. 506:13–17 (Colwell). But as explained in Nuvia's post-trial motion, the jury had more than sufficient evidence to find in Nuvia's favor. The jury was permitted to find that the Nuvia RTL was "Nuvia Technology" not subject to Section 15.1(a). D.I. 598 at 8–10. The jury was also permitted to find that the Nuvia RTL was not derivative of any ARM Technology. As Nuvia has explained, the Arm ARM does not constitute ARM Technology under the Nuvia ALA, and the Nuvia RTL was not a derivative of the only actual ARM Technology identified at trial—the confidential architecture extensions. *Id.* at 10–16.

In addition, the arguable ARM Technology that Arm's experts identified in the Nuvia RTL at the time of acquisition were opcodes and register-definition files. *Id.* at 17–18. The evidence showed that those files consisted of 1% or less of the Nuvia RTL and were deleted and replaced with new opcode and register-definition files generated by Qualcomm engineers under Qualcomm's ALA. Tr. 445:3–448:4 (Williams); Tr. 667:10–668:15, 669:21–674:13 (Annavaram, discussing DDX-3.12–3.17); DTX-401; DTX-401A. Mr. Williams also testified that it is "completely false" to say that the RTL was derived from the Arm ARM, because developing microarchitecture "comes from experience, it comes from know how, researching independently, doing studies on the ideas that you come up with." Tr. 443:12–444:3. Dr. Murali Annavaram testified that it is "well-known in the community of people who actually build processors that

architecture reference manuals cannot teach you how to actually implement the CPU itself." Tr. 651:18–25; *see* Tr. 649:3–14, 655:23–656:13, 663:16–664:5.  The Arm ARM even states that "It is not intended to describe how to build an implementation of the" CPU.  DTX-1587 at 33; *see also* DTX-486 at 12 ("Architecture does not tell you how a processor is built or how it works.").  In light of all of that evidence, this is not the rare case in which the party with the burden at trial is entitled to judgment as a matter of law or a new trial.

Arm argues that the Nuvia RTL was necessarily a derivative of ARM Technology because it was written "for the purposes of creating an Architecture Compliant Core," and the Nuvia ALA includes "Architecture Compliant Core" as "a non-limiting example" of a "derivative" under the definition of "Confidential Information."  Br. 9–10; *see* JTX-1 § 1.8(i).  As Nuvia has explained (D.I. 598 at 18–19), the Nuvia ALA is not reasonably susceptible to that interpretation.  It is based on an implied and unexplained definition of "derivative" for which Arm provides no support and which the jury was entitled to reject.  The scope of the definition rejected by the jury would have to be breathtaking:  a "derivative" would be any RTL that has the purpose of eventually creating an Architecture Compliant Core, even where (as here) no such core was developed.

The Nuvia ALA is at least reasonably susceptible to Nuvia's interpretation for another reason.  As Nuvia explained in its post-trial motion, only Architecture Compliant Cores "recast, transformed or adapted" from ARM Technology are derivative of ARM Technology, while cores "recast, transformed or adapted" from Nuvia Technology are Nuvia Architecture Compliant Cores. D.I. 598 at 18–19.  The jury heard extrinsic evidence as to why the term "Architecture Compliant Core" was included in the definition of "Confidential Information," *id.* at 19, and the jury was entitled to credit that evidence and accept Nuvia's interpretation.  *Wolf*, 76 Cal. Rptr. 3d at 602.

C.     **Arm Is Not Entitled to Judgment as a Matter of Law or a New Trial on Its Claim Against Qualcomm Because the Jury Heard Sufficient Evidence that Qualcomm Did Not Assume the Nuvia ALA.**

To prove that Qualcomm breached the Nuvia ALA, Arm had to satisfy the same elements as it did against Nuvia and also prove that Qualcomm formed a contract with Arm by assuming the Nuvia ALA.  D.I. 568 §§ 3.2–3.3.  Arm cannot show that it was impossible for the jury to find in Qualcomm's favor on the issue of assumption.

Qualcomm was not a party to the Nuvia ALA, and to prove assumption under an undisputed jury instruction, Arm had to prove that Qualcomm intended to assume Nuvia's obligations under the Nuvia ALA.  D.I. 568 § 3.2; *see* D.I. 567 § 3.2 (proposed instructions); Tr. 864:23–865:8 (charge conference).  Arm never identified a single document in which Qualcomm agreed to do so or showing Qualcomm intended to do so.  Tr. 148:21–149:1 (defendants' opening); Tr. 456:23–457:3 (Williams);  Tr.  803:6–804:1,  808:7–9  (Amon);  Tr.  958:11–959:3,  969:17–970:7 (defendants' closing); DTX-110.

Assuming the Nuvia ALA obligations would have meant paying Nuvia's higher rates.  Arm correspondence and witnesses at trial complained that Qualcomm refused an assumption or move of the Nuvia ALA to Qualcomm, including its royalty rates.  PTX-260 at 2 (Williamson:  "on the condition  that  Qualcomm  agrees  to  assume  the  existing  terms  and  conditions");  PTX-268 (Qualcomm says request in PTX-260 is "unreasonable"); Tr. 226:21–24, 228:23–229:5, 243:4–24 (Williamson); Tr. 268:25–269:16, 305:5–15 (Haas).  Arm's "position was quite clear, we would agree to consent [to move the contract] if the whole contract, including our royalty rates, moves from Nuvia to Qualcomm.  They rejected that."  Tr. 180:20–181:7 (Abbey).  The jury heard ample evidence that Qualcomm took the position that it had its own ALA and "there should not be any additional agreements required as a result of the acquisition."  PTX-242 at 2; PTX-277; DTX-1196; Tr. 456:23–457:7 (Williams); Tr. 762:9–22, 801:8–11, 803:6–804:1 (Amon).  And because

Qualcomm refused to accept the Nuvia ALA, including its rates, Arm refused to assign it to Qualcomm. PTX-260; Tr. 180:20–22 (Abbey); Tr. 226:21–24 (Williamson); Tr. 305:8–15 (Haas).

Arm contends that, even if Qualcomm did not explicitly assume the Nuvia ALA, it *impliedly* assumed it by accepting "the benefits of the contract"—namely, by "accepting and using" the Nuvia RTL. Br. 12. But the Court instructed the jury on that principle, Tr. 884:20–885:7, and Arm offers no reason why the jury's verdict was impermissible given the evidence that Qualcomm refused to accept the Nuvia obligations or intended to accept those obligations.

The principle that assumption of the obligations of a contract can be inferred from acceptance of the benefits "has generally been held to apply only where the person accepting the benefit was a party to the original transaction." *Recorded Picture Co.* v. *Nelson Ent., Inc.*, 61 Cal. Rptr. 2d 742, 748 (Ct. App. 1997). Even where it applies more broadly, assumption can be inferred only where "*all* the benefits of a full performance have inured to" a party. *Id.* There is no evidence that Qualcomm received all of the benefits of Arm's performance of the Nuvia ALA, a contract under which Arm provided a license for Nuvia to develop Architecture Compliant Cores, and support and updates related to that development, in exchange for valuable consideration from Nuvia. To the contrary, as stated above, Qualcomm informed Arm it would not be operating under the Nuvia license and would not assume the obligations of the Nuvia ALA.

The jury was additionally entitled to reject Arm's view that the Nuvia RTL constituted a "benefit" of the Nuvia ALA. After all, Nuvia developed the RTL; Arm did not provide it to Nuvia. Tr. 444:19–24, 454:5–8 (Williams); Tr. 542:13–19 (Chen); Tr. 597:13–598:5 (Grisenthwaite). Arm cites no authority treating anything *resulting from use of* the contractual consideration as a "benefit" of the contract, as opposed to the consideration itself.

The evidence Arm cites regarding assumption is also thin. Arm cites evidence that

14

Qualcomm asked Arm if the Nuvia acquisition "poses any concerns for ARM." PTX-234 at 2. But Qualcomm's CEO testified that Qualcomm's "understanding was we did not need their consent to acquire Nuvia," and Qualcomm "requested the consent later because Arm was insisting they need it." Tr. 762:2–16, 802:11–13 (Amon). And if anything, the fact that Qualcomm rehired Nuvia's employees as its own undercuts Arm's arguments that Qualcomm intended to operate under the Nuvia ALA. Arm is thus left asserting that Qualcomm impliedly made certain Nuvia-related communications on behalf of Qualcomm and not its Nuvia subsidiary. In particular, the certification of compliance Arm cites was signed by Nuvia, not Qualcomm. Br. 13; JTX-9. That evidence hardly mandated a finding of assumption or rendered a contrary finding irrational.[3]

Arm separately argues that "Qualcomm knew that the Nuvia ALA defined an acquisition to be an assignment of the Nuvia ALA and that Arm objected to the transfer of the Nuvia designs to Qualcomm," but "Qualcomm nevertheless acquired Nuvia." Br. 12, 13. Arm waived any such argument by consenting to a jury instruction that "Qualcomm did not assume the Nuvia ALA merely by acquiring Nuvia." Tr. 864:12–865:2 (charge conference). In any event, under Delaware law, a reverse triangular merger does not affect an assignment of a contract by operation of law. *Meso Scale Diagnostics, LLC* v. *Roche Diagnostics GmbH*, 62 A.3d 62, 81–83 (Del. Ch. 2013); Tr. 858:8–861:16. And whatever definition of "assignment" Arm and Nuvia used in the Nuvia ALA for purposes of their obligations, that definition could not bind *Qualcomm*, which was not a party to the agreement. *E.g.*, *Tiffany & Co.* v. *Spreckels*, 262 P. 742, 747 (Cal. 1927); *NRG Power Mktg., LLC* v. *Me. Pub. Utils. Comm'n*, 558 U.S. 165, 175 n.4 (2010).

---

[3] Arm separately notes that the counterclaims in this case were pleaded on behalf of "Qualcomm" without specifying more clearly that some were asserted only on Nuvia's behalf, Br. 13, but Arm never presented evidence of that pleading to the jury. (And to be clear, Defendants' position is that only Nuvia had the ability to assert a breach of the Nuvia ALA.)

### D. A Retrial of Arm's Claim Against Nuvia Would Not Require a Retrial of Arm's Claim Against Qualcomm or Qualcomm's Counterclaim.

Federal Rule of Civil Procedure 59(a) expressly states that a court may grant a new trial "on all or some of the issues" tried to the jury. Invoking the Supreme Court's decision in *Gasoline Products Co.* v. *Champlin Refining Co.*, 283 U.S. 494 (1931), Arm contends, based on the Seventh Amendment, that all of the claims in this case are so intertwined that a retrial must set aside the jury verdicts against it. In making its determinations following the jury's answers to the three questions in this case, the court's duty is to "attempt to harmonize the [jury's] answers, if it is possible under a fair reading of them." *Gallick* v. *Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 119 (1963). Contrary to that principle, Arm argues for hypothetical conclusions on the jury's findings that would require vacating the work completed by the jury in this case.

The Reexamination Clause protects the "right to have juriable issues determined by the first jury impaneled to hear them (provided there are no errors warranting a new trial), and not reexamined by another finder of fact." *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995). That right is "the *verdict winner's* constitutional right," *Whelan* v. *Abell*, 48 F.3d 1247, 1252 (D.C. Cir. 1995) (emphasis added), in that it protects the prevailing party from having another jury second-guess the favorable verdict the party already obtained. Because the jury found in Qualcomm's favor, Qualcomm—and not Arm—would suffer prejudice from any reexamination of the facts found by the first jury. *Mazer* v. *Lipschutz*, 327 F.2d 42, 52 (3d Cir. 1963) (it would not be "fair" to require the defendant's individual negligence "to be retried or to grant a new trial to the plaintiff" on that issue because of an instructional error limited to vicarious liability).

Arm also cannot show that a limited retrial permitted by Rule 59(a) would be impermissible here. Under *Gasoline Products*, a partial retrial is permissible where "the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." 283

16

U.S. at 500. The prohibition on reexamination is inapplicable once that standard is met because the prohibition exists "for the very practical reason that if separate juries are allowed to pass on issues involving overlapping legal and factual questions the verdicts rendered by each jury could be inconsistent." *Castano* v. *Am. Tobacco Co.*, 84 F.3d 734, 750–51 (5th Cir. 1996); *see Houseman* v. *U.S. Aviation Underwriters*, 171 F.3d 1117, 1128 (7th Cir. 1999). In the absence of inconsistent jury verdicts, no Seventh Amendment issue exists. And a court may find verdicts inconsistent only if "there is no possible way to reconcile the jury's verdicts." *Brand Mktg. Grp.* v. *Intertek Testing Servs., N.A., Inc.*, 801 F.3d 347, 366–67 (3d Cir. 2015).

Under that framework, courts have routinely held that a trial court has discretion to order a partial retrial.[4] *Gasoline Products* is such a case: there, the Supreme Court required a partial retrial of liability and damages on the counterclaim while not requiring retrial of the plaintiff's claim. 283 U.S. at 500–01. Most of the Third Circuit's cases holding that a partial retrial is impermissible under *Gasoline Products*, including several that Arm cites, involve the question whether damages can be tried separately from liability. *E.g., Pryer* v. *C.O. 3 Slavic*, 251 F.3d 448, 455 (3d Cir. 2001); *Williams* v. *Rene*, 72 F.3d 1096, 1101 (3d Cir. 1995); *Spence* v. *Bd. of Educ. of Christina Sch. Dist.*, 806 F.2d 1198, 1202 (3d Cir. 1986); *Vizzini* v. *Ford Motor Co.*, 569 F.2d 754, 761 (3d Cir. 1977); *Romer* v. *Baldwin*, 317 F.2d 919, 923 (3d Cir. 1963). Because the claims the jury resolved in Qualcomm's favor are separable from Arm's claim against Nuvia, a retrial limited to Nuvia is permissible.

To avoid any doubt on this issue, Nuvia will agree that, for any retrial of Arm's claim

---

[4] *E.g.*, *Rice* v. *Cmty. Health Ass'n*, 203 F.3d 283, 290 (4th Cir. 2000); *Boucher* v. *U.S. Suzuki Motor Corp.*, 73 F.3d 18, 23 (2d Cir. 1996); *Atlas Food Sys. & Servs., Inc.* v. *Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 599 (4th Cir. 1996); *Lies* v. *Farrell Lines, Inc.*, 641 F.2d 765, 774 (9th Cir. 1981); *Pritchard* v. *Liggett & Myers Tobacco Co.*, 370 F.2d 95, 95–96 (3d Cir. 1966); *Mazer*, 327 F.2d at 52.

against Nuvia, it will not argue that the first jury's two verdicts or the Qualcomm ALA limits the second jury's ability to find Nuvia liable for breach of Section 15.1(a) of the Nuvia ALA. *Whelan*, 48 F.3d at 1252 (Seventh Amendment reexamination rights are waivable). Nuvia will also agree not to mention the first jury's verdict to the second jury or raise the first jury's verdict as a basis for objecting to any of Arm's evidence, as long as Arm does not open the door by arguing to the jury that Qualcomm breached the Nuvia ALA. Defendants would only raise the first jury's verdict and the Qualcomm ALA in the equitable-remedy phase if Arm were to prevail in a second trial and seek remedies against Qualcomm based on Nuvia's conduct. Regardless, Arm's arguments that the claims are intertwined do not justify overturning those verdicts.

*Arm's claim against Qualcomm.* Contrary to Arm's suggestion, the questions of Nuvia's liability and Qualcomm's liability for breach of the Nuvia ALA are not so closely linked that the mistrial on the Nuvia claim requires retrial of the Qualcomm claim. Those claims involve different defendants, and the claims do not stand or fall together. Any verdict on retrial of Nuvia's liability could easily be reconciled with the verdict on Qualcomm's liability on the ground that the first jury found for Qualcomm on the issue of assumption. *Swentek* v. *USAIR, Inc.*, 830 F.2d 552, 560 (4th Cir. 1987) (no abuse of discretion to order partial retrial where jury's verdict was likely based on discrete factual determinations not implicated by claim to be retried). Even Arm assumes that the jury found for Qualcomm on assumption by moving for a new trial on that ground. Br. 12; Tr. 884:8–885:16 (jury instructions); Tr. 897:20–900:6 (Arm closing); D.I. 568 §§ 3.2–3.3. A retrial limited to Nuvia's liability would not require any inquiry into Qualcomm's alleged assumption, so there is no risk of overlapping factual findings.[5]

---

[5] Arm suggests that "Qualcomm and Nuvia worked closely together in breaching" the Nuvia ALA, Br. 1, but it cites no evidence that Nuvia did any design work after the acquisition.

Arm's primary argument is that the "predicate facts" for its claim against Qualcomm are "largely the same" as for its claim against Nuvia and that the second jury "will consider the same facts as the first jury." Br. 15. Arm also argues that the second jury would need to consider Qualcomm's post-acquisition conduct in order to determine whether Nuvia breached the Nuvia ALA. *Id.* Both of those arguments suffer from the same flaw: they are arguments about the *evidence* the second jury would need to consider and not about the *facts* it would need to find. "The Seventh Amendment is concerned about factual conclusions, not evidence," and the prohibition against reexamination "is not against having two juries review the same evidence, but rather against having two juries decide the same essential issues." *Houseman*, 171 F.3d at 1128.

**Qualcomm's counterclaim.** Arm's argument that its claim against Nuvia is too intertwined with Qualcomm's licensure counterclaim to permit a partial retrial also fails, because the jury's finding on the Qualcomm ALA can easily be reconciled with the failure to reach a verdict on Nuvia's liability. Those issues involve different parties, different, "independent, unrelated" contracts, different conduct, and different claims. Arm Br. 2; Tr. 125:16–126:2 (Arm opening: the Qualcomm "agreement doesn't have anything to do with what Nuvia was allowed to do"); Tr. 901:3–22 (Arm closing; similar). Arm's claim against Nuvia concerns whether Nuvia violated the Nuvia ALA by failing to destroy the Nuvia RTL; Qualcomm's counterclaim concerns whether the license grant in the Qualcomm ALA covered Qualcomm's CPUs.

Arm contends that those issues are interwoven because the jury would need to take a "deep dive into the facts and course of conduct among [the parties] as Arm's breach claim." Br. 19. But Arm does not explain why the jury phase of any retrial of its claim against Nuvia would require inquiry into Qualcomm's license under its own ALA. And as noted, the possibility that the juries could consider some of the same evidence is irrelevant. What matters is whether the jury is asked

to decide the same factual issues again.  The answer to that question is no, as demonstrated by the fact that the jury instructions given on Arm's breach claim against Nuvia do not even mention Qualcomm's licensure.  D.I. 568 §§ 2.2, 3.3.  Nor did Qualcomm raise the Qualcomm ALA as a defense to those claims on summary judgment.  D.I. 391 at 12–15.

Arm claims that a finding that Nuvia breached the Nuvia ALA would call into question the first jury's "verdict that Qualcomm has a license to the Nuvia-acquired code under the Qualcomm ALA."  Br. 20.  But as already explained, that argument misstates the verdict, in which the jury found that *Qualcomm's CPUs* are licensed.  Any verdict on retrial of Nuvia's liability would be harmonized with the existing verdict on Qualcomm's counterclaim because they arise under two different contracts:  even if a jury were to find that Nuvia breached the Nuvia ALA, the verdict on Qualcomm's counterclaim could stand on the ground that the licensure of Qualcomm's cores does not depend on whether those cores contain acquired RTL.

Arm's separate speculation that the jury might have found for Qualcomm on the breach claim on the basis of licensure cannot overcome the nearly conclusive presumption "that jurors follow the instructions given to them by the trial court."  *Robinson* v. *First State Cmty. Action Agency*, 920 F.3d 182, 191–92 (3d Cir. 2019).  The jury *was* instructed on Qualcomm's assumption defense, which provided a sufficient basis for the jury to find for Qualcomm on the breach claim regardless of the verdict on Qualcomm's counterclaim.  Arm's "speculation . . . as to what the jury considered in its deliberations" provides no basis for requiring the claims to be retried together.  *Great Coastal Exp., Inc.* v. *Teamsters*, 511 F.2d 839, 847 (4th Cir. 1975).

## VI.    CONCLUSION

Arm's motion for judgment as a matter of law and for a new trial should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Defendants*

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
William T. Marks
Anna P. Lipin
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
(202) 223-7300

Catherine Nyarady
Erin J. Morgan
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

Andrea L. D'Ambra
Susana Medeiros
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY  10019
(212) 318-3000

Kira Latham
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX  75201
(214) 855-8000

February 14, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 14, 2025, upon the following in the manner indicated:

Anne Shea Gaza, Esquire                                *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Samantha G. Wilson, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Plaintiff*

Joyce Liou, Esquire                                    *VIA ELECTRONIC MAIL*
Daralyn J. Durie, Esquire
Shaelyn Dawson, Esquire
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Plaintiff*

Erik J. Olson, Esquire                                 *VIA ELECTRONIC MAIL*
Meet Yatin Mehta, Esquire
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
*Attorneys for Plaintiff*

Scott F. Llewellyn, Esquire                            *VIA ELECTRONIC MAIL*
Sarah E. Brickey, Esquire
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202-5638
*Attorneys for Plaintiff*

Daniel P. Muino, Esquire                    *VIA ELECTRONIC MAIL*
Reebehl G. El-Hage, Esquire
David Nathaniel Tan, Esquire
Sydney K. Cooper, Esquire
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, D.C.  20037
*Attorneys for Plaintiff*

Nicholas Rylan Fung, Esquire                *VIA ELECTRONIC MAIL*
Henry Huttinger, Esquire
Laura Gilbert Remus, Esquire
Zach B. Quinlan, Esquire
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
*Attorneys for Plaintiff*

Kyle W.K. Mooney, Esquire                   *VIA ELECTRONIC MAIL*
Kyle D. Friedland, Esquire
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
*Attorneys for Plaintiff*

Michael J. DeStefano, Esquire               *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
600 Brickell Avenue, Suite 1560
Miami, FL  33131
*Attorneys for Plaintiff*

Gregg F. LoCascio, P.C.                     *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Plaintiff*

Jay Emerick, Esquire                        *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Plaintiff*

*/s/ Jennifer Ying*
Jennifer Ying (#5550)