IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARM LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-1146 (MN) |
| | ) | |
| QUALCOMM INC., QUALCOMM | ) | |
| TECHNOLOGIES, INC. and NUVIA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
POST-TRIAL BRIEF REGARDING EQUITABLE DEFENSES**

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
William T. Marks
Anna P. Lipin
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7300

Catherine Nyarady
Erin J. Morgan
Jacob A. Braly
Alexander M. Butwin
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

February 19, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

Page

I.    ARGUMENT ........................................................................................................ 1

    A.    Arm's Inequitable Breach of Contract Constitutes Unclean Hands ...................... 1

    B.    Defendants Proved at Trial That Arm's Hands Became Unclean When It
        Breached Section 15.1 of the Nuvia TLA and ALA. ............................................... 3

        1.    Arm Breached the Nuvia TLA by Continuing to Use Nuvia-Requested
            Features in Its CMN Product. ..................................................................... 3

        2.    Arm Breached the Nuvia ALA by Using Nuvia's Confidential
            Configuration Files Months After It Terminated the Nuvia ALA. .............. 7

    C.    Preservation Obligations and Certification Are No Excuse. ................................. 9

II.    CONCLUSION ...................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acceptance Indem. Ins. Co.* v. *JJA Auto Sales, LLC*,
No. 15 Civ. 02954, 2017 WL 1333612 (E.D. Pa. Feb. 3, 2017),
*aff'd*, 716 F. App'x 134 (3d Cir. 2018)........................................................................5

*Alanis* v. *Nelson*,
No. 11 Civ. 02583 (JEM), 2011 WL 13130700 (C.D. Cal. Dec. 9, 2011),
*aff'd*, 561 F. App'x 595 (9th Cir. 2014)......................................................................7

*Bistrian* v. *Levi*,
448 F. Supp. 3d 454 (E.D. Pa. 2020) ...........................................................................5

*Dollar Sys., Inc.* v. *Avcar Leasing Sys., Inc.*,
890 F.2d 165 (9th Cir. 1989) ........................................................................................1

*In-N-Out Burgers* v. *Smashburger IP Holder LLC*,
No. 17 Civ. 1474 (JVS), 2018 WL 7891028 (C.D. Cal. 2018)....................................1

*Katiroll Co.* v. *Kati Roll & Platters, Inc.*,
No. 10 Civ. 03620 (GEB), 2011 WL 2294260(D.N.J. Jun. 8, 2011) .........................8

*Kendall-Jackson Winery, Ltd.* v. *Superior Court*,
76 Cal. App. 4th 970 (Ct. App. 1999)..............................................................2, 6, 7

*Nelson* v. *Nelson*,
No. A126962, 2011 WL 213857 (Cal. Ct. App. Jan. 25, 2011) .................................1

*O'Flaherty* v. *Belgum*,
9 Cal. Rptr. 3d 286 (Ct. App. 2004) ...........................................................................8

*Oakhurst Indus., Inc.* v. *Tubeway Assocs., L.P.*,
No. B201113, 2009 WL 4548342 (Cal. Ct. App. Dec. 7, 2009) .................................1

*Passport Health, Inc.* v. *Travel Med, Inc.*,
No. 09 Civ. 01753 (GEB), 2011 WL 590723 (E.D. Cal. Feb. 10, 2011) ...................7

*Ricketts* v. *Compaction Plus, Inc.*,
No. D036553, 2002 WL 264645 (Cal. Ct. App. Feb. 25, 2002)...................................1

*Ridgway* v. *Ford Dealer Comput. Servs., Inc.*,
114 F.3d 94 (6th Cir. 1997) ..........................................................................................4

*RLI Ins. Co.* v. *City of Visalia*,
  297 F. Supp. 3d 1038 (E.D. Cal. 2018),
  *aff'd*, 770 F. App'x 377 (9th Cir. 2019)....................................................................................3

*Rowen Petroleum Props., LLC* v. *Hollywood Tanning Sys., Inc.*,
  No. 08 Civ. 4764 (NLH), 2013 WL 12303311 (D.N.J. Sept. 30, 2013)....................................5

*Safety PPE, LLC* v. *Skanda Group of Industries LLC*,
  No. 21 Civ. 3967 (JFW), 2023 WL 2558549 (C.D. Cal. Feb. 13, 2023)...................................7

*Saks* v. *Int'l Longshore & Warehouse Union-Pac. Mar. Ass'n Benefit Plans*,
  637 F. App'x 282 (9th Cir. 2015) .......................................................................................2, 3

*Schauerman* v. *Noble*,
  No. A119960, 2009 WL 775108 (Cal. Ct. App. Mar. 25, 2009) .............................................1

*Sketchley* v. *Lipkin*,
  222 P.2d 927 (Cal. Ct. App. 1950) ......................................................................................2

**Other Authorities**

25 Williston on Contracts § 67:18 (4th ed. 2024)............................................................................2

31 Wright & Miller, *Federal Practice and Procedure* § 7184 (2d ed. 2024).................................4

Cal. R. of Ct. 8.1115 .......................................................................................................................1

U.S. Ct. of App. 9th Cir. Rule 36-3. ...............................................................................................2

## I.    ARGUMENT

### A.    Arm's Inequitable Breach of Contract Constitutes Unclean Hands

Defendants contend that Arm's claims are barred because Arm acted inequitably by breaching the same contractual obligations that form the basis for its own claim.  D.I. 602 at 1–2, 6.  In response, Arm spends pages disputing an argument defendants did not make: that *any* contractual breach by a plaintiff is sufficient to establish a defense of unclean hands.  Arm cites several cases that stand the uncontroversial proposition that a plaintiff's claims are not barred because it may have committed a minor or immaterial breach.  *E.g.*, *Oakhurst Indus., Inc.* v. *Tubeway Assocs., L.P.*, No. B201113, 2009 WL 4548342, at *15 (Cal. Ct. App. Dec. 7, 2009); *Dollar Sys., Inc.* v. *Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989); *Nelson* v. *Nelson*, No. A126962, 2011 WL 213857, at *6 (Cal. Ct. App. Jan. 25, 2011).[1]  Similarly, Arm references the "general rule" that a breach by one party does not excuse a breach by the other, citing cases that either do not involve unclean hands or where the breach is not also inequitable.  D.I. 606 at 6–7 (collecting cases).

Defendants' unclean hands defense does not rely on an "[a]ccidental, inadvertent, or grossly negligent," or "simple" breach of contract by Arm.  D.I. 606 at 5–6.  Instead, defendants' unclean hands defense is based on Arm's inequitable and inconsistent conduct in suing defendants for the purported breach of an obligation that Arm itself has not fulfilled.  *See* D.I. 602 at 1–2, 6; *cf. In-N-Out Burgers* v. *Smashburger IP Holder LLC*, No. 17 Civ. 1474 (JVS), 2018 WL 7891028,

---

[1] Arm cites four unpublished state court cases that, according to California rules, "must not be cited or relied on by a court or a party."  Cal. R. of Ct. 8.1115(a); *see Oakhurst Indus.*, 2009 WL 4548342; *Nelson*, 2011 WL 213857; *Schauerman* v. *Noble*, No. A119960, 2009 WL 775108 (Cal. Ct. App. Mar. 25, 2009); *Ricketts* v. *Compaction Plus, Inc.*, No. D036553, 2002 WL 264645 (Cal. Ct. App. Feb. 25, 2002).  These cases have "neither precedential nor even potentially persuasive value."  *Id.* cmt. to (e)(3).

at *7 (C.D. Cal. Dec. 21, 2018) (denying motion to strike unclean hands defense where both parties allegedly engaged in false advertising).

California law recognizes that the unclean hands defense may invoke "[a]ny conduct that violates conscience, or good faith, or other equitable standards of conduct" so long as it relates to the plaintiff's cause of action. *Kendall-Jackson Winery, Ltd.* v. *Superior Court*, 90 Cal. Rptr. 2d 743, 749 (Ct. App. 1999). Breach of contract can satisfy this requirement. D.I. 602 at 6 (citing *Sketchley* v. *Lipkin*, 222 P.2d 927, 933 (Cal. Ct. App. 1950) and *Saks* v. *Int'l Longshore & Warehouse Union-Pac. Mar. Ass'n Benefit Plans*, 637 F. App'x 282, 284 (9th Cir. 2015)).

Arm's efforts to distinguish these authorities fall short. *Sketchley* and *Saks* establish the basic proposition that a breach of contract *can* be the inequitable conduct that forms the basis for a defense of unclean hands. *See* 25 Williston on Contracts § 67:18 (4th ed. 2024) ("Where the plaintiff has already committed a material breach of the contract, specific performance will be refused."). Arm insists incorrectly that *Sketchley* did not even involve the doctrine of unclean hands. D.I. 606 at 7. In a passage Arm does not quote, *Sketchley* states that the party would be denied recovery because "his hands are unclean" and "Equity does not aid him who has breached his agreement." 222 P.2d at 934.

Arm attempts to distinguish *Saks* by arguing that courts have rejected the Ninth Circuit's understanding that California law has "long permitted an unclean hands defense to be sustained on the basis of breach of contract." *Saks*, 637 F. App'x 282 at 284; *see* D.I. 606 at 6.[2] But the only case Arm cites to support this supposed repudiation rejected an unclean hands defense because

---

[2] Arm also purports to distinguish *Saks* on the ground that it is unpublished and that it "holds that the appellant in that case waived all of his arguments." D.I. 606 at 7–8. The latter is irrelevant, as the Ninth Circuit offered an alternative holding on the merits of the unclean hands defense. *Saks*, 637 F. App'x at 284. As to the former, unlike the unpublished state court cases cited by Arm, *see* n.1, *supra*, *Saks* is citable, persuasive authority under Ninth Circuit Rule 36-3.

there was no breach of contract to support the defense. *RLI Ins. Co.* v. *City of Visalia*, 297 F. Supp. 3d 1038, 1058 (E.D. Cal. 2018), *aff'd*, 770 F. App'x 377 (9th Cir. 2019). The court found an agreement did not require the insurer to indemnify the defendant city and thus rejected the city's unclean hands defense because it presented the "exact legal arguments" which the court "already resolved" in the insurer's favor. *Id.*

> **B.    Defendants Proved at Trial That Arm's Hands Became Unclean When It Breached Section 15.1 of the Nuvia TLA and ALA.**
>
> > **1.    *Arm Breached the Nuvia TLA by Continuing to Use Nuvia-Requested Features in Its CMN Product.***

Arm makes four arguments why its continued implementation of Nuvia-requested features in its CMN product does not render its hands unclean: (1) all feature requests were "Input," to which Arm has a perpetual license; (2) Arm's continued implementation does not violate Section 15.1 of the TLA because Arm no longer uses Nuvia Confidential documents communicating the features; (3) Arm did not act in bad faith; and (4) a breach of the Nuvia TLA cannot render Arm's hands unclean for purposes of the Nuvia ALA. Each argument is wrong.

**Input.** Arm reads Section 2, Clause B.4(ii) of the 2019 Nuvia TLA Annex to treat all "requests for changes to design and implementation of the CMN-Kampos" as "Input," regardless of whether those requests were made "in connection with a Development Release." D.I. 606 at 9 (quoting JTX-4 § 2, cl. B.4(ii)). Arm's interpretation is flawed for at least two reasons.

*First*, Clause B.4's "Input" provision is triggered only after a licensee "elect[s] to exchange" CMN-Rhodes for CMN-Kampos. JTX-4 § 2, cl. B.4. Nuvia did not make this exchange until January 18, 2021, after it had already sent Arm the CMN feature requests at issue. D.I. 603 ¶¶ 30–31, 44.

*Second*, Arm ignores that Clause B.4(ii)'s treatment as "Input" of "any requests to changes to design and implementation of the CMN-Kampos" applies only where a licensee "receive[s]

enhanced lead partner ('ELP') access for CMN-Kampos[.]" JTX-4 § 2, cl. B.4(ii).  Enhanced lead

partners had "early access" to CMN-Kampos and "engage[d] early (pre-Alpha)[.]"  *Id.*  Arm cites

no documentary evidence that Nuvia had ELP access or engaged pre-alpha, and Arm's sole witness

could not recall any specifics regarding releases that Nuvia may have received.  *See* Bench Tr.

60:22–61:1 (Defilippi lacked knowledge of what Arm provided to Nuvia).  Thus, there is no viable

evidence supporting Arm's contention.

**Section 15.1.**  Arm claims that because the Nuvia TLA is not in evidence, the Court cannot

confirm its definition of "Confidential Information" or Arm's obligations upon termination.  D.I.

606 at 10–11.  But where, as here, a party fails to object at trial to the introduction of "relevant

evidence regarding the terms of [a] contract" that was not itself introduced, any such objection is

waived.  *Ridgway* v. *Ford Dealer Comput. Servs., Inc.*, 114 F.3d 94, 98 (6th Cir. 1997); *see* 31

Wright & Miller, *Federal Practice and Procedure* § 7184 (2d ed. 2024).  Moreover, Arm does

not—and cannot—contest that the Nuvia TLA definition of Confidential Information and

termination provision match those found in the Nuvia ALA, which is in evidence.  D.I. 603 ¶ 52.

Arm's proposed findings of fact further state that the provisions contain the same restrictions,

noting that the "Nuvia TLA contains similar provisions regarding discontinuance of use" as the

Nuvia ALA and that "Arm discontinued use of Nuvia Confidential Information in compliance with

Section 15.1(b) of both the Nuvia ALA ***and the Nuvia TLA***."  D.I. 607 ¶¶ 33–34 (emphasis added).

Arm has repeatedly tied the two termination provisions together, including in its February 1, 2022

termination letter that quotes Section 15.1 as applied to both agreements, D.I. 603 ¶¶ 6–7, and in

its response to Interrogatory No. 26 that states it "complied with Section 15.1(b) of the Nuvia ALA

and TLA by discontinuing use of materials designated 'Nuvia Confidential.'" DTX-845 at 5, 8.[3]

Next, Arm asserts that Nuvia Confidential Information consists only of documents marked "Nuvia Confidential," not the Nuvia-requested features, and that defendants "failed to present evidence that Arm used these documents following termination of the Nuvia TLA." D.I. 606 at 11–12. As an initial matter, "Confidential Information" includes "information designated in writing . . . as confidential," D.I. 603 ¶¶ 2, 52, it is not limited to the specific documents conveying the requested features. Moreover, Arm's argument is contradicted by its response to defendants' Interrogatory No. 27, which was introduced into evidence. *See id.* ¶ 57 (citing DTX-845). That interrogatory asked Arm to "describe in detail all uses (internal or external) by ARM of such NUVIA Confidential Information, including the incorporation of NUVIA Confidential Information into any ARM products, including but not limited to, [] CMN." DTX-845 at 13. Arm did not limit its response to identifying "documents" marked "Nuvia Confidential," but instead identified five Nuvia-requested features implemented in the R1 release of CMN-Kampos. *Id.* at 18. Arm cannot now argue against its own sworn statements.

In any event, if "Confidential Information" was limited as Arm now suggests, that would defeat Arm's entire claim against defendants. At trial, Arm did not present any evidence that Qualcomm and Nuvia misused any particular documents marked "Arm Confidential" following termination of the Nuvia ALA. Instead, its position was that Qualcomm's products incorporated

---

[3] The Court may also reopen the bench trial record to admit the TLA (JTX-3 (Ex. 1 hereto)). *Bistrian* v. *Levi*, 448 F. Supp. 3d 454, 483–85 (E.D. Pa. 2020). Arm cited the TLA in its opening (PDX-1.6) and also offered relevant evidence on these provisions, limiting any possible prejudice. *See, e.g., id.*; *Acceptance Indem. Ins. Co.* v. *JJA Auto Sales, LLC*, No. 15 Civ. 02954, 2017 WL 1333612, at *4 (E.D. Pa. Feb. 3, 2017) (citing *Zenith Radio Corp.* v. *Hazeltine Rsch., Inc.*, 401 U.S. 321, 331–32 (1971)), *aff'd*, 716 F. App'x 134 (3d Cir. 2018); *Rowen Petroleum Props., LLC* v. *Hollywood Tanning Sys., Inc.*, No. 08 Civ. 4764 (NLH), 2013 WL 12303311, at *2 (D.N.J. Sept. 30, 2013).

Arm Confidential Information.  Arm cannot have it both ways.

**Bad Faith.**  As Arm acknowledges, unclean hands can apply to "Any conduct that violates conscience, or good faith, or other equitable standards of conduct."  *Kendall-Jackson*, 90 Cal. Rptr. 2d at 749; *see* D.I. 606 at 5, 8.  To the extent Arm relies on "bad faith" as some heightened standard, D.I. 606 at 5, that is wrong—any inequitable conduct can suffice.  There is more than sufficient evidence for the Court to conclude that Arm acted inequitably.  Almost immediately after learning that Nuvia wanted to modify the CMN, Arm sought to capitalize on the opportunity to "suck[] knowledge out of Gerard's team" by "engaging [Nuvia] on our road map" rather than providing "full-fat modification rights."  D.I. 603 ¶ 45 (quoting DTX-1809 at 2).[4]  Arm did so by holding regular meetings with Nuvia engineers to discuss CMN.  *Id.* ¶ 38.  After terminating Nuvia's agreements, Arm had to discontinue its use of Nuvia Confidential Information under Section 15.1. *Id.* ¶¶ 8, 52.  According to Arm, it certified compliance with Section 15.1, D.I. 606 at 18–19,[5] but did not actually comply:  Arm kept Nuvia Confidential Information in its products and continued to profit from it.  D.I. 603 ¶¶ 56–60.  Arm then sued defendants for violating this same provision.

**Different Agreements.**  Finally, Arm argues that its breach of the Nuvia <u>T</u>LA cannot render its hands unclean for purposes of the Nuvia <u>A</u>LA, although it fails to cite any relevant case.

---

[4] When asked about this email at trial, Arm's only live witness on this issue did not contest that Arm sought to "suck knowledge" from Mr. Williams, and instead said "That's not the language I would use."  Bench Tr. 41:22–42:5 (Defilippi).  Regardless of whether that is language Mr. Defilippi would use, it is language that other Arm executives did use.  *See* DTX-1809 at 2.

[5] Arm argues "Nuvia never requested that Arm remove the Nuvia-requested features from the CMN product following termination."  D.I. 606 at 12.  But under Section 15.1(b) Arm had an obligation to stop using the Nuvia-requested features, which Arm concedes are Nuvia Confidential Information.  *See* D.I. 603 ¶ 57.  Arm does not dispute it was obligated to cease use of Nuvia Confidential Information and claims it did so post-termination, despite the features Arm admits are Nuvia Confidential Information remaining in Arm's products.  D.I. 606 at 11. Moreover, Nuvia was not aware its Confidential Information remained in recent versions of CMN—something Nuvia learned during discovery in this case.  *See* Mar. 6, 2024 Hr'g Tr. 4:10–5:22.

D.I. 606 at 13.[6]  Under California law, "*any* evidence of a plaintiff's unclean hands in relation to the transaction before the court or which affects the equitable relations between the litigants in the matter before the court should be available to enable the court to effect a fair result in the litigation." *Kendall-Jackson*, 90 Cal. Rptr. 2d at 754 (emphasis added); *see Alanis* v. *Nelson*, No. 11 Civ. 02583 (JEM), 2011 WL 13130700, at *6 (C.D. Cal. Dec. 9, 2011) (violation of one agreement can render hands unclean for another), *aff'd*, 561 F. App'x 595 (9th Cir. 2014).  Arm's own breach of its reciprocal Section 15.1 obligations "affects the equitable relations between the litigants" where Arm improperly misused Nuvia Confidential Information by incorporating it into products that it sold to Nuvia's competitors.  *Kendall-Jackson*, 90 Cal. Rptr. 2d at 754.

### 2.  Arm Breached the Nuvia ALA by Using Nuvia's Confidential Configuration Files Months After It Terminated the Nuvia ALA.

Arm also used Nuvia Confidential Information post-termination, including when Vivek Agrawal of Arm compared a Nuvia-confidential configuration file to a Qualcomm one.  D.I. 603 ¶ 19.  Arm does not dispute this, D.I. 607 ¶ 26, but does claim that its "employees could" only "theoretically 'access' Nuvia configuration files," D.I. 606 at 15–16.  But Arm employees admitted that they had *actual* access months after termination, as they must have to run their comparison.  D.I. 603 ¶¶ 11–20.

Arm argues that Mr. Agrawal's use of Nuvia Confidential Information was somehow not a "use" forbidden by Section 15.1 because it was a "comparative exercise," and no Nuvia Confidential Information was incorporated into Arm products.  D.I. 606 at 14–15.  Arm cites no

---

[6] In *Passport Health, Inc.* v. *Travel Med, Inc.*, a franchisor/franchisee royalty payment lawsuit, the franchisor's hands were not unclean based on alleged fraud in an unrelated transaction.  No. 09 Civ. 01753 (GEB), 2011 WL 590723, at *5 (E.D. Cal. Feb. 10, 2011).  Here, by contrast, the Nuvia ALA and TLA were part of the same transaction—they are dated the same day and include related provisions.  And *Safety PPE, LLC* v. *Skanda Group of Industries LLC* turned on lack of relevant evidence.  No. 21 Civ. 3967 (JFW), 2023 WL 2558549, at *7 (C.D. Cal. Feb. 13, 2023).

support for this strained interpretation.  The Nuvia ALA says nothing about "use" within Arm products and contains no limitations regarding the types of "use" prohibited by Section 15.1.  Arm concedes that it used Nuvia's confidential configuration file when it ran a "diff" comparison; that is an admission that it did not comply with Section 15.1.

Arm also seeks to excuse its breach by arguing that its motivation was pure.  D.I. 606 at 13–14.  Setting aside the evidence presented at trial that Arm opposed the Nuvia acquisition (and ultimately terminated the Nuvia agreement) in an attempt to extract higher royalty rates from Qualcomm, *e.g.*, DTX-57; DTX-144; DTX-145; DTX-1219, Arm's motivation when it breached the Nuvia ALA has no bearing on whether or not it committed a breach of Section 15.1.

Arm argues that because it purportedly only used Nuvia Confidential Information to "assess its contractual rights and obligations," its breach does not render its hands unclean.  D.I. 606 at 14.  As is clear from the trial record, looking at the details of the Nuvia microarchitecture design would not inform Arm in any way whether ARM Confidential Information, including ARM Technology, was being used in Qualcomm products.  D.I. 598 at 10–18.  And neither case Arm cites supports its conclusion.  In *O'Flaherty* v. *Belgum*, unclean hands did not apply because the alleged inequitable conduct did not relate to the transaction at issue and would have resulted in a double punishment (forfeiture and damages).  9 Cal. Rptr. 3d 286, 298–99 (Ct. App. 2004).  Neither is true here.  And in *Katiroll Co.* v. *Kati Roll & Platters, Inc.*, a case that did not apply California law, the court rejected an unclean hands defense where plaintiff's letter to a third party requesting that it take down defendant's infringing content was "a *rightful* exercise of" its trademark rights.  No. 10 Civ. 03620 (GEB), 2011 WL 2294260, at *2 (D.N.J. June 8, 2011) (emphasis added).  A case about "the assertion of potentially valid rights to third parties" that was "not sufficiently related to the action at issue," *id.* at *3, hardly supports the proposition that Arm

was permitted to breach the Nuvia ALA in order to "assess its contractual rights." Further, as is clear from Arm's complaint, Arm knew Qualcomm intended to develop its products using Nuvia RTL, even without Mr. Agrawal's "diff" comparison. *See* D.I. 1 ¶¶ 40, 43, 51–52.

Finally, Arm contends that defendants have not been prejudiced by Arm's ALA breach.[7] But the configuration file contained confidential design information related to Nuvia's planned CPU design, which Arm recognizes as "embodying [Nuvia's] proprietary know how" and "secret sauce." Tr. 597:20–598:2 (Grisenthwaite). Arm understands the significance of accessing Confidential Information, having espoused that its entire lawsuit is "premised" on protecting IP.

### C.    Preservation Obligations and Certification Are No Excuse.

Arm claims that it has "proceeded in the same manner [as defendants] with respect to the Nuvia Confidential Information in its possession, discontinuing any use rather than destroying." D.I. 606 at 17. That is wrong. As required by Section 15.1, Nuvia provided Arm with a timely certification explaining its compliance with its obligations, having "removed [Arm IP] from the Nuvia design completely and quarantined" it, "then under the Qualcomm Architecture License Agreement, we downloaded – after we relicensed, if there weren't licenses for IP, we relicensed those pieces of technology from Arm, we conferred with the engineering team that did that work, and the legal team that did that work, we reinstalled those new pieces of TLA IP into the database." Tr. 407:20–408:12 (Williams); *see also* Tr. 409:1–10 (Williams testifying that "the design team made sure to quarantine all of the IP that would have been under any Nuvia contract, isolated it and then we replaced it with IP that was downloaded under the Qualcomm TLA"). Defendants proved at trial that Arm, on the other hand, "did not take any specific action" with regard to Nuvia

---

[7] Arm does not dispute that defendants have been prejudiced by Arm's TLA breach.

Confidential Information, both retaining access to it and actually using it.  D.I. 603 ¶¶ 12–17 (quoting Bench Tr. 10:23–11:15 (Larri)).

Arm now claims that it certified compliance with Sections 15.1 of the Nuvia ALA and TLA.  Throughout discovery and at trial, Arm failed to produce any contemporaneous evidence on this issue.  Now, Arm even criticizes Qualcomm for failing to prove a negative.  Arm notes that Will Abbey testified "to the best of [his] knowledge" that Arm did so.  D.I. 607 ¶ 35.  At trial, Qualcomm elicited extensive testimony from Mr. Abbey demonstrating that "the best of [his] knowledge" was not credible.  For example, he acknowledged that he had "triggered memories" of things he had not remembered a year earlier, Tr. 191:14–21, and that these memories were triggered "fairly recently," Tr. 198:15–17.  Arm has put forward no documentary evidence to support Mr. Abbey's testimony.  To the contrary, Arm witnesses testified that they were not asked to take action with respect to Nuvia Confidential Information.  D.I. 603 ¶¶ 11–12.

## II.    CONCLUSION

For these reasons, judgment for defendants on Count I should be entered.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

*/s/ Jennifer Ying*

_____

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
William T. Marks
Anna P. Lipin
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7300

Catherine Nyarady
Erin J. Morgan
Jacob A. Braly
Alexander M. Butwin
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

February 19, 2025

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 19, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 19, 2025, upon the following in the manner indicated:

Anne Shea Gaza, Esquire                                    *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Samantha G. Wilson, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Plaintiff*

Joyce Liou, Esquire                                         *VIA ELECTRONIC MAIL*
Daralyn J. Durie, Esquire
Shaelyn Dawson, Esquire
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Plaintiff*

Erik J. Olson, Esquire                                      *VIA ELECTRONIC MAIL*
Meet Yatin Mehta, Esquire
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
*Attorneys for Plaintiff*

Scott F. Llewellyn, Esquire                                *VIA ELECTRONIC MAIL*
Sarah E. Brickey, Esquire
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202-5638
*Attorneys for Plaintiff*

Daniel P. Muino, Esquire                                      *VIA ELECTRONIC MAIL*
Reebehl G. El-Hage, Esquire
David Nathaniel Tan, Esquire
Sydney K. Cooper, Esquire
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, D.C.  20037
*Attorneys for Plaintiff*

Nicholas Rylan Fung, Esquire                                  *VIA ELECTRONIC MAIL*
Henry Huttinger, Esquire
Laura Gilbert Remus, Esquire
Zach B. Quinlan, Esquire
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
*Attorneys for Plaintiff*

Kyle W.K. Mooney, Esquire                                     *VIA ELECTRONIC MAIL*
Kyle D. Friedland, Esquire
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
*Attorneys for Plaintiff*

Michael J. DeStefano, Esquire                                 *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
600 Brickell Avenue, Suite 1560
Miami, FL  33131
*Attorneys for Plaintiff*

Gregg F. LoCascio, P.C.                                       *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Plaintiff*

Jay Emerick, Esquire                                          *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Plaintiff*

*/s/ Jennifer Ying*
_____
Jennifer Ying (#5550)