IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARM LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-1146 (MN) |
| | ) | |
| QUALCOMM INC., QUALCOMM TECHNOLOGIES, INC. and NUVIA, INC., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY BRIEF IN SUPPORT OF DEFENDANT NUVIA, INC.'S**
**RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF LAW**

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
William T. Marks
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7300

Catherine Nyarady
Erin J. Morgan
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Defendant*

February 28, 2025

## TABLE OF CONTENTS

**Page**

ARGUMENT ... 1

I. Arm Presented No Evidence That Nuvia's Alleged Breach Caused Harm. ... 1

A. Arm Was Required to Prove the Element of Harm. ... 1

B. Arm's Royalties-Based Theory of Harm Fails. ... 3

II. Nuvia Did Not Breach Section 15.1(a) of the Nuvia ALA. ... 4

A. Nuvia's RTL Was "Nuvia Technology" Not Subject to Section 15.1(a). ... 4

B. The Arm ARM Is Not ARM Technology. ... 6

C. The Nuvia RTL Is Not a Derivative of the Arm ARM ... 8

CONCLUSION ... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AIU Ins. Co.* v. *Super. Ct.*,
799 P.2d 1253 (Cal. 1990) ....................8

*Behnke* v. *State Farm Gen. Ins. Co.*,
127 Cal. Rptr. 3d 372 (Ct. App. 2011) ....................2

*Bramalea Cal., Inc.* v. *Reliable Interiors, Inc.*,
14 Cal. Rptr 3d 302 (Ct. App. 2004) ....................2

*Copenbarger* v. *Morris Cerullo World Evangelism, Inc.*,
239 Cal. Rptr. 3d 838 (Ct. App. 2018) ....................3

*Darbun Enters., Inc.* v. *San Fernando Cmty. Hosp.*,
191 Cal. Rptr. 3d 340 (Ct. App. 2015) ....................3

*Elation Systems, Inc.* v. *Fenn Bridge LLC*,
286 Cal. Rptr. 3d 762 (Ct. App. 2021) ....................2

*Estate of Wemyss*,
122 Cal. Rptr. 134 (Ct. App. 1975)....................9

*Haley* v. *Casa Del Rey Homeowners Ass'n*,
63 Cal. Rptr. 3d 514 (Ct. App. 2007) ....................3

*Higgins* v. *Grant*,
295 P. 532 (Cal. Dist. Ct. App. 1931)....................3

*Lande* v. *S. Cal. Freight Lines*,
193 P.2d 144 (Cal. Dist. Ct. App. 1948)....................10

*Monster, LLC* v. *Super. Ct.*,
219 Cal. Rptr. 3d 814 (Ct. App. 2017) ....................2

*Oracle Int'l Corp.* v. *Rimini St., Inc.*,
123 F.4th 986 (9th Cir. 2024) ....................9

*Pro. Collection Consultants* v. *Lauron*,
214 Cal. Rptr. 3d 419 (Ct. App. 2017) ....................2

*Scholes* v. *Lambirth Trucking Co.*,
458 P.3d 860 (Cal. 2020) ....................8

*T.N. Inc.* v. *Fidelity National Information Services, Inc.*,
2022 WL 910092 (E.D. Pa. Mar. 29, 2022)....................9

*Taggart* v. *Lorenzen*,
587 U.S. 554 (2019) .....8

*United States* v. *W. Indies Trans., Inc.*,
127 F.3d 299 (3d Cir. 1997) .....2

*Wolf* v. *Walt Disney Pictures & Tel.*,
76 Cal. Rptr. 3d 585 (Ct. App. 2008) .....7

**Statutes**

17 U.S.C. § 101 .....8, 9

**Other Authorities**

Cal. Civ. Jury Instr. 303 .....2

Cal. Civ. Jury Instr. 360 .....2

# ARGUMENT

Nuvia is entitled to judgment as a matter of law on the sole remaining claim in this case. In its quest to obtain a sweeping specific-performance remedy against Qualcomm, Arm neglected to prove necessary elements of its claim against Nuvia: namely, that Nuvia's alleged breach caused Arm to suffer harm or that Nuvia breached Section 15.1 of the Nuvia ALA. As to harm and causation, Arm cannot defeat judgment as a matter of law based on nominal-damages and lost-royalties theories it never presented and affirmatively waived. As to breach, Arm's theories rest on a sweeping interpretation that ignores the Nuvia ALA's specific protections for Nuvia Technology and under which much of the world's technology would be "ARM Technology" or a derivative thereof. Arm's attempts to rewrite the Nuvia ALA and the trial record must fail.

## I. ARM PRESENTED NO EVIDENCE THAT NUVIA'S ALLEGED BREACH CAUSED HARM.

For its breach claim against Nuvia, Arm contends both that it did not need to prove harm and that it proved harm in the form of lost royalties. Both arguments are waived and lack merit.

### A. Arm Was Required to Prove the Element of Harm.

Arm's primary argument is that it did not need to show actual damage from Nuvia's breach because "the breach itself is harm enough." Opp. 5. That is a jaw-dropping change in position. At every step of this case, Arm has acknowledged—and affirmatively argued—that harm is an independent element of a breach-of-contract claim under California law. Arm said so in its motion for summary judgment: "damages are an essential element of a breach of contract claim under California law." D.I. 372 at 20; *see* D.I. 518-13 ¶¶ 144, 146 (statement of intended proof; same). Arm resisted defendants' motion for summary judgment on the ground that the evidence created a triable question as to harm. D.I. 416 at 3–6. In pretrial filings, Arm conceded that it had to prove harm—including to obtain specific performance—and proposed jury instructions that listed harm

and causation of harm as separate elements of its contract claim. D.I. 518-4 ¶¶ 17, 34, 41; D.I. 567 § 3.3. And at trial, Arm opposed a standalone harm instruction because "harm is already an element of the contract elements," Tr. 841:2–11; contended it had put forward sufficient evidence to demonstrate harm to avoid judgment as a matter of law, Tr. 846:20–847:5, 850:21–851:1; and argued in closing that it had proven harm, *see* Tr. 988:3–6. Arm has repeatedly "recognize[d] we need to meet our burden" of proving harm and engaged in multiple colloquies with the Court about how Arm would "meet[] the element of harm" at trial. Tr. 99:14–20; *see* D.I. 513 at 35:21–38:20; Tr. 94:13–98:1, 99:14–101:7. Arm cannot now reverse course and argue that it never had to prove harm at all. *E.g.*, *United States* v. *W. Indies Trans., Inc.*, 127 F.3d 299, 311 (3d Cir. 1997) (theory inconsistent with defendant's proposed instructions "cannot now be a basis for reversal").

Arm's argument also contravenes a long line of California state-court decisions and the California model jury instruction adopted by the parties, which state that a breach of contract is not actionable without "resulting damages" or harm. *E.g.*, CACI 303; *Pro. Collection Consultants* v. *Lauron*, 214 Cal. Rptr. 3d 419, 427 (Ct. App. 2017).[1]

Relying principally on *Elation Systems, Inc.* v. *Fenn Bridge LLC*, 286 Cal. Rptr. 3d 762 (Ct. App. 2021), Arm argues that it did not need to prove "appreciable and actual damages" and may instead proceed based on a request for nominal damages. Opp. 1, 5–7. But Arm never sought nominal damages or requested the California instruction on that theory, CACI 360, and instead disclaimed seeking *any damages*, whether nominal or otherwise, D.I. 461-5, Ex. 12 at 60:8–20; D.I. 530 at 30:11–25. A plaintiff that fails to prove damage cannot obtain a do-over by demanding

[1] *E.g., Monster, LLC* v. *Super. Ct.*, 219 Cal. Rptr. 3d 814, 824 n.4 (Ct. App. 2017); *Behnke* v. *State Farm Gen. Ins. Co.*, 127 Cal. Rptr. 3d 372, 391 (Ct. App. 2011); *Bramalea Cal., Inc.* v. *Reliable Interiors, Inc.*, 14 Cal. Rptr 3d 302, 306 (Ct. App. 2004). Arm attempts to distinguish *Behnke* on the grounds that it found no breach (Opp. 8), but the court held that the plaintiff failed to establish cognizable (i.e., reasonably foreseeable) damages. 127 Cal. Rptr. 3d at 392.

nominal damages. *E.g.*, *Haley* v. *Casa Del Rey Homeowners Ass'n*, 63 Cal. Rptr. 3d 514, 521–22 (Ct. App. 2007) (Appellants "do not cite the appellate record to show they requested an instruction on nominal damages or made any objection to the instructions" and failed to prove that breach "caus[ed] damage" as the CACI instruction on breach of contract requires).[2]

Nor can Arm profit from its strategic decision to seek only specific performance (which it likely made because the Nuvia ALA limits Arm's damages to the amount Nuvia paid under the contract. JTX-1 § 13.2(B)). As one of Arm's favored cases recognizes, a party seeking specific performance must make "several showings, *in addition to proving the elements of a standard breach of contract*," one of which is "damage to plaintiff." *Darbun Enters., Inc.* v. *San Fernando Cmty. Hosp.*, 191 Cal. Rptr. 3d 340, 348 (Ct. App. 2015) (emphasis added). Arm thus had to present evidence—as opposed to vague speculation—that any breach caused or will cause it harm.

**B. Arm's Royalties-Based Theory of Harm Fails.**

Arm's fallback argument is that it presented adequate evidence of harm because it could have supposedly obtained greater royalties absent a breach. But it also waived that theory. Arm failed to articulate or develop any damages theory involving lost royalties; notably refused to produce discovery about the royalty rates paid by other licensees; and told this Court it was not seeking damages. D.I. 461-5, Ex. 12 at 60:8–20; D.I. 513 at 42:18–43:15; D.I. 530 at 28:8–30:25. Arm even sought to bar defendants from referring to the differential between ALA and TLA rates as "irrelevant and prejudicial." D.I. 530 at 20:2–21:115–16. When Arm hinted at trial that it might try to present evidence about differences in royalty rates, this Court stated that Arm appeared to be "shifting the playing field" and that Arm could not argue harm on that basis "unless and until

---

[2] *See also Copenbarger* v. *Morris Cerullo World Evangelism, Inc.*, 239 Cal. Rptr. 3d 838, 850 (Ct. App. 2018); *Higgins* v. *Grant*, 295 P. 532, 535 (Cal. Dist. Ct. App. 1931).

they show me that that was something that was raised during discovery." Tr. 96:2–97:4, 102:1–7. Arm stated it would "find that" reference but never did so at trial. Tr. 97:5.

Arm *now* points to a single discovery response that it says put Nuvia "on notice that Arm would present evidence on differing royalty rates." Opp. 9–10. But it never identified that document to the Court at trial and cannot use its post-trial briefing to relitigate this Court's ruling that Arm could not argue harm based on lost royalties without first showing the Court where in discovery Arm raised that theory. Opp. 10 ("Challenges to . . . evidence are improper on a JMOL motion."). Regardless, the response only asserted that Arm's damages were "not readily ascertainable or calculable" and offered only vague references to "lost royalties" without ever disclosing what those royalties were or how to calculate them. D.I. 535, Ex. B at 61–63.

Arm asserts that, but for the alleged breach, Qualcomm would have paid either the higher Nuvia ALA or Qualcomm TLA royalty rates. Arm does not explain why Qualcomm would have paid rates under the Nuvia ALA *after Arm terminated that agreement*, or reverted to Qualcomm TLA rates. Absent viable evidence on these points, Arm cannot argue that the jury was permitted to find that Qualcomm would have paid higher Qualcomm TLA or Nuvia ALA rates.

## II. NUVIA DID NOT BREACH SECTION 15.1(A) OF THE NUVIA ALA.

### A. Nuvia's RTL Was "Nuvia Technology" Not Subject to Section 15.1(a).

The RTL created by Nuvia is "Nuvia Technology," not "ARM Technology" or its derivative subject to Section 15.1(a). Tr. 412:9–16, 444:15–24 (Williams); D.I. 598 at 8–10. Arm argues that such a distinction is "illusory" because something can be both Nuvia Technology and a derivative of ARM Technology. Opp. 14. But Arm argues against the plain language of the Nuvia ALA. The Nuvia ALA sharply distinguishes between Arm's intellectual property and Nuvia's: each company has its own Technology, JTX-1 §§ 1.5, 1.27, Confidential Information, *id.* §§ 1.8(i), (ii), and post-termination obligations with respect to the other company's intellectual

property, *id.* §§ 15.1(a), (b).  ARM Technology is "delivered by ARM to LICENSEE," JTX-5 § 2, cl. A.10, whereas Nuvia Technology is "developed by Licensee," JTX-1 § 1.27.  Intellectual property cannot be both "ARM Technology" and "Nuvia Technology."

Arm argues that the inclusion of "Architecture Compliant Core" as an example of a derivative of ARM Technology, JTX-1 § 1.8, shows Nuvia Technology can also be a derivative of ARM Technology.  Opp. 14–15.  The argument ignores that, at inception, Nuvia was deciding between modifying an Arm off-the-shelf core and building a custom core from scratch.  Tr. 433:11–434:3 (Williams).  In the former scenario, *Arm* would have delivered RTL for a completed Architecture Compliant Core; in the latter, *Nuvia* would have created the RTL.  That distinction explains why only Architecture Compliant Cores "recast, transformed or adapted" from ARM Technology—i.e., where Arm provides Nuvia with the RTL for an Architecture Compliant Core for Nuvia to modify—can be derivatives of ARM Technology.  JTX-1 § 1.8(i).  By contrast, a Nuvia Architecture Compliant Core "recast, transformed or adapted" from Nuvia Technology *is* a derivative of Nuvia Technology.  *Id.* § 1.8(ii).

Arm argues that any distinction between derivative Architecture Compliant Cores and Nuvia Architecture Compliant Cores is "flatly inconsistent with the definition of ACC in Annex 1," because "the Nuvia ALA does not define 'Nuvia Architecture Compliant Core' to be exclusive of an ACC."  Opp. 20.  There is no inconsistency.  A core that meets the Annex 1 definition is still an Architecture Compliant Core, even if it was not recast, transformed, or adapted from ARM Technology.  But if it was recast, transformed, or adapted from Nuvia Technology, it is a Nuvia Architecture Compliant Core protected as Nuvia Confidential Information and is subject to *Arm's* destruction obligations under Section 15.1(b), not *Nuvia's* obligations under Section 15.1(a).

Arm offered no evidence, moreover, that Nuvia ever possessed an Architecture Compliant

Core; the evidence was to the contrary. Tr. 390:8–19 (Williams); 716:14–21 (Annavaram). Arm argues that Nuvia's "partially complete ACC" was a derivative because Arm's expert testified that "Nuvia was aiming at Arm compatibility" and that he found "references to Arm all over" Nuvia's code and documentation. Tr. 490:8–491:22 (Colwell). But those undefined references, whatever they are, are not substantial evidence of a completed core.

**B. The Arm ARM Is Not ARM Technology.**

Even if the Nuvia RTL were subject to Section 15.1(a), Arm introduced no evidence that the RTL was a derivative of any ARM Technology, as properly interpreted under the Nuvia ALA. Arm does not dispute that the Nuvia RTL is not a derivative of the 2020 Architecture Extensions (PTX-165), the only true example of ARM Technology introduced at trial. Instead, ARM argues that it presented "ample evidence from which a jury could conclude that 'ARM Technology' includes the" Arm ARM. Opp. 11. Arm agrees that Annex 1 "defines 'Armv8-A Architecture Reference Manual' . . . as the documentation in Section 1 of Annex 1," and Section 1 Part A refers to "Documentation," which is defined to include the "ArmV8-A Architecture Reference Manual." *Id.* at 11–12, 16; *see* JTX-5 § 2, cls. A.8, A.15. But the definition of "ArmV8-A Architecture Reference Manual" in Annex 1 refers to "the documentation identified in Section 1 Subsection 1 Part A," JTX-5 § 2, cl. A.8, which in turn lists only the "ARMv8-A Architecture – Specifications." The evidence showed that those are the confidential extensions to the Arm ARM, not the full, publicly available Arm ARM. D.I. 598 at 11–12.[3]

[3] Arm suggests that the "ARMv8-A Architecture – Specifications" cannot be confidential extensions to the Arm ARM because that would somehow be inconsistent with other uses of "extensions." Opp. 16 (citing JTX-5 § 2, cls. A.3, A.4, A.18). These references are consistent with the understanding that an "extension" is an add-on to the Arm Architecture. *See* D.I. 598 at 11. Clause A.3 refers to an "architecture extension," Clause A.4 refers to "multimedia extensions for the Arm Architecture," and Clause A.18 refers to "extensions to the Armv8-A Profile."

Arm contends that Will Abbey and Gerard Williams testified that the part number associated with the Specifications listed in Section 1 of Annex 1 (No. AR100-DA-70000) constitutes the complete Arm ARM. Opp. 11–12. But Mr. Williams testified only that the Specifications "would have contained the Arm ARM *material*," Tr. 414:5–11 (emphasis added), which is consistent with the universal understanding that confidential extensions are later released in the full, public Arm ARM, *e.g.*, Tr. 452:17–21 (Williams); Tr. 627:7–628:4 (Agrawal). Mr. Williams's later use of the term "Arm ARM" (not in the context of interpreting the word "Specifications" in Annex 1) does not demonstrate otherwise. Opp. 16 (citing Tr. 370:9–17). Nor does Mr. Abbey's conclusory testimony render the language in Annex 1 "reasonably susceptible to the interpretation urged," *Wolf* v. *Walt Disney Pictures & Tel.*, 76 Cal. Rptr. 3d 585, 602 (Ct. App. 2008), given that Arm cannot answer why the Nuvia ALA would designate a public document as "Confidential," Opp. 16–17; *see* D.I. 598 at 12–13. Moreover, all ARM Technology is ARM Confidential Information, JTX-1 § 1.8(i), whereas, as previously discussed, D.I. 423 at 13–14, the Arm ARM cannot be ARM Technology because it is not confidential.

Arm separately argues that "[i]f the Arm ARM and Arm's instruction set are not 'ARM Technology' in the contract, then Nuvia never got a license to use the Arm architecture or ARM." Opp. 12. But the Annex permitted Nuvia "to use and copy the Documentation." JTX-5 § 2, cls. B.1, B.2. "Documentation" includes not only "the ArmV8-A Architecture Reference Manual," which is defined not to include the entire Arm ARM, *see* p.6, *supra*, but also "any ARM documentation *referenced in* the documentation identified in Section 1 Subsection 1 Part A and Section 1 Subsection 2 Part A of this Annex 1." *Id.* cl. A.15 (emphasis added). The documentation identified in Section 1 Part A includes the "Armv8A Architecture – Specifications." And the only Specifications Arm presented at trial—the 2020 Architecture Extensions—reference the Arm

ARM publicly released on July 5, 2019. PTX-165 at 5 (Arm ARM Issue E.a); *see* DTX-1587 at 2. Nuvia was thus licensed to use the full Arm ARM to build Architecture Compliant Cores and Architecture Compliant Products.

### C. The Nuvia RTL Is Not a Derivative of the Arm ARM

Even if the Arm ARM were ARM Technology under the Nuvia ALA, the Nuvia RTL would not be a derivative of ARM Technology. Arm resists that conclusion primarily by arguing that the contract does not incorporate the meaning of "derivative" from copyright law. Opp. 17–18. But as Nuvia has shown, D.I. 598 at 14–16, the parenthetical language mirrors the language in the Copyright Act. That makes sense, given that the license grant repeatedly provides a right to "copy." JTX-5 § 2, cls. B.1(i)–(iv), B.2(i)–(ii). And it is well-established that, when a term is "obviously transplanted from another source, it brings the old soil with it," *Taggart* v. *Lorenzen*, 587 U.S. 554, 560 (2019); *Scholes* v. *Lambirth Trucking Co.*, 458 P.3d 860, 869 (Cal. 2020); *see AIU Ins. Co.* v. *Super. Ct.*, 799 P.2d 1253, 1264 (Cal. 1990) (where contract uses a word "in a technical sense or a special meaning is given to [it] by usage," that understanding "controls judicial interpretation"). Arm even argued to the jury that copyright principles were a useful comparison. *Compare* Tr. 911:19–912:16 ("a derivative, we all know what that means . . . you can think about a Spiderman movie that's based on a Spiderman book or whatever, something derived from something else, translation, modification, compilation"), *with* 17 U.S.C. § 101. There is no record evidence that the Nuvia RTL was a derivative of the Arm ARM in the copyright sense—i.e., that it was "substantially similar" to the Arm ARM or that the Arm opcodes and register definitions were a "material part" of the Nuvia RTL or Arm ARM. D.I. 598 at 14–17. To the contrary, the evidence describing the opcodes and register definitions showed that they were an immaterial part of the Arm ARM, amounted to only 1% of the Nuvia RTL, and were subsequently regenerated by Qualcomm, leaving zero ARM Technology (as Arm defines it) traceable to Nuvia and its ALA.

Tr. 445:19–446:1, 446:22–448:3 (Williams); Tr. 673:5–674:13 (Annavaram); D.I. 598 at 17.  The fact that the Nuvia RTL "implemented Arm's instructions," Opp. 13, cannot create a derivative under copyright law.  *See Oracle Int'l Corp.* v. *Rimini St., Inc.*, 123 F.4th 986, 996 (9th Cir. 2024).

The cases Arm cites do not undermine the obvious connection between the use of "derivative" in the Nuvia ALA and copyright law.  In *T.N. Inc.* v. *Fidelity National Information Services, Inc*., 2022 WL 910092 (E.D. Pa. Mar. 29, 2022), the court declined to rely on the Copyright Act to determine the meaning of the term "Derivative Works" where the term was "already defined in [the] agreement" in a different manner.  *Id.* at *9 & n.6.  And although courts applying California law cannot depart from the "plain meaning" of a contract, *Estate of Wemyss*, 122 Cal. Rptr. 134, 137 (Ct. App. 1975), the old-soil principle is a tool for determining plain meaning.

Arm also contends that arguments based on the Copyright Act "contradict the express terms of the contract" because the Nuvia ALA "expressly identifies an ACC as an example of a 'derivative'" and that core would not be "substantially similar" to ARM Technology.  Opp. 18.  As explained, the parties contemplated that Arm might provide Nuvia an off-the-shelf core, which, once modified, could have been "substantially similar" to ARM Technology.  Arm's argument shows only that a completed Nuvia core would *not* have contained significant ARM Technology.

Arm further argues that Nuvia's focus on opcodes and register definitions is misplaced because the Nuvia RTL "reflect[s]" other "components" of the Arm architecture or makes "references to Arm features."  Opp. 18.  Arm points to testimony about the Arm server base architecture, Arm exception levels, and Arm architecture extensions, *id.*, yet it does not identify any actual RTL presented at trial reflecting those components.  It is undisputed that the only aspects Arm pointed to in Nuvia's RTL were opcodes and register definitions.  D.I. 598 at 17.  In any

event, neither of Arm's experts opined on whether these other "references" rendered the Nuvia RTL "substantially similar" to the Arm ARM.

Arm suggests that Nuvia has "no answer" for why it would pay for an ALA yet only incorporate register definitions and opcodes. Opp. 19. Arm is conflating issues. The ALA granted Nuvia broad rights, only one of which was use of ARM Technology (as Arm defines it). The full value of the ALA to Nuvia is not captured by the subset of rights granted in the ARM Technology. For example, the ALA also protected Nuvia from suit for allegedly infringing Arm's intellectual property—important protection given Arm's position that "you can't develop products without a license." Tr. 172:3–7 (Abbey); *see also* Tr. 263:22–264:13 (Haas).

Finally, Arm fails to minimize the implications of its position that it can demand destruction of all Arm-compliant technology. Arm first claims that it may seek destruction "only if Nuvia materially breaches the contract and Arm terminates." Opp. 17. But the ALA permits Arm to terminate for several other reasons. JTX-1 § 14.2. Arm then contends that certain language in the Qualcomm ALA absent from the Nuvia ALA supports Arm's broad interpretation of the Nuvia ALA. Arm cannot rely on comparisons among ALAs because it failed to produce unredacted ALAs in discovery. In any event, the Nuvia and Qualcomm ALAs were drafted by different people, for different parties, years apart, so the comparison has "no probative value." *See Lande* v. *S. Cal. Freight Lines*, 193 P.2d 144, 148 (Cal. Dist. Ct. App. 1948).[4]

## CONCLUSION

Nuvia's motion for judgment as a matter of law should be granted.

[4] Arm suggests the Nuvia RTL is a product embodying the Arm ARM under Section 15.1(a), but its expert had no opinion as to whether the Nuvia RTL embodied the Arm ARM, Tr. 506:20–507:2 (Colwell), and Arm never explains how abstract code could be a "product," *see* D.I. 423 at 18–20.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Defendant Nuvia, Inc.*

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
William T. Marks
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, N.W.
Washington, DC 20006
(202) 223-7300

Catherine Nyarady
Erin J. Morgan
Jacob A. Braly
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

February 28, 2025