**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ARM LTD., | |
| Plaintiff, | |
| v. | C.A. No. 22-1146-MN |
| QUALCOMM INC., QUALCOMM TECHNOLOGIES, INC., and NUVIA, INC., | **REDACTED - PUBLIC VERSION** |
| Defendants. | |

**REPLY BRIEF IN SUPPORT OF PLAINTIFF ARM LTD.'S MOTION FOR
<u>JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL</u>**

Dated: February 28, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
jliou@mofo.com
shaelyndawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Kyle W.K. Mooney
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
(212) 336-4092
kmooney@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Plaintiff Arm Ltd.*

sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

Daniel Muino
MORRISON & FOERSTER LLP
2100 L Street, NW
Suite 900, Washington, D.C. 20037
(202) 887-1500
dmuino@mofo.com

# **TABLE OF CONTENTS**

**Page**

I. The Court Should Grant Arm Judgment as a Matter of Law. ................................ 1
   A. The Nuvia Code Is Not Licensed Under The Qualcomm ALA (Question 3). ................................................................................................ 1
   B. Nuvia Breached The Nuvia ALA (Question 1). ........................................ 6
   C. Qualcomm Breached The Nuvia ALA (Question 2). ................................ 6
II. The Court Should Grant A New Trial On All Three Issues. ................................. 7
   A. Defendants Concede The Issues Significantly Overlap And Cannot Overcome The Presumption Favoring Retrial On All Issues. ................... 7
   B. All Three Questions Are Interwoven, Rather Than Distinct And Separable. .................................................................................................. 9
CONCLUSION ........................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Diabetes Care Inc. v. Dexcom, Inc.*,
　C.A. No. 21-977 (KAJ), 2024 WL 4875131 (D. Del. Nov. 13, 2024) ......................................6

*Brobeck, Phleger & Harrison v. Telex Corp.*,
　602 F.2d 866 (9th Cir. 1979) ...................................................................................................1

*Child Bride Music, Inc. v. Jackson*,
　No. M2002-02789-COA-R3-CV, 2004 WL 911310 (Tenn. Ct. App. Apr. 28,
　2004) ........................................................................................................................................7

*Colonial Leasing of New England, Inc. v. Logistics Control Int'l*,
　770 F.2d 479 (5th Cir. 1985) ...................................................................................................9

*Drumgold v. Callahan*,
　707 F.3d 28 (1st Cir. 2013) ......................................................................................................9

*Elcock v. Kmart Corp.*,
　233 F.3d 734 (3d Cir. 2000) .................................................................................................8, 9

*Encompass Off. Sols., Inc. v. La. Health Serv. & Indem. Co.*,
　919 F.3d 266 (5th Cir. 2019) ...................................................................................................9

*F.B.T. Prods., LLC v. Aftermath Records*,
　621 F.3d 958 (9th Cir. 2010) ...................................................................................................2

*Gasoline Products Co. v. Champlin Refining Co.*,
　283 U.S. 494 (1931) ......................................................................................................7, 8, 10

*Harris Corp. v. Ericsson Inc.*,
　417 F.3d 1241 (Fed. Cir. 2005) ................................................................................................5

*L.P.P.R., Inc. v. Keller Crescent Corp.*,
　532 F. App'x 268 (3d Cir. 2013) ..............................................................................................1

*Melchior v. New Line Prods., Inc.*,
　106 Cal. App. 4th 779 (2003) ..................................................................................................7

*Nissho-Iwai Co. v. Occidental Crude Sales, Inc.*,
　729 F.2d 1530 (5th Cir. 1984) .................................................................................................9

*Opal Labs Inc. v. Sprinklr, Inc.*,
　No. 3:18-cv-01192-HZ, 2022 WL 526167 (D. Or. Jan. 7, 2022) .........................................8, 9

## TABLE OF AUTHORITIES
### (cont'd)

**Page(s)**

*Pajaro Dunes Rental Agency, Inc.*,
  No. 97CV2516, 2001 WL 1743285 (N.D. Cal. Nov. 1, 2001) ...................................................6

*Pryer v. C.O. 3 Slavic*,
  251 F.3d 448 (3d Cir. 2001) ................................................................................................7, 9

*PSM Holding Corp. v. Nat'l Farm Fin. Corp.*,
  339 F. App'x 693 (9th Cir. 2009) ............................................................................................1

*Recorded Picture Co. v. Nelson Entertainment, Inc.*,
  53 Cal. App. 4th 350 (1997) ....................................................................................................6

*Spence v. Bd. of Educ. of Christina Sch. Dist.*,
  806 F.2d 1198 (3d Cir. 1986) ..................................................................................................8

*Stockton Exec. Limousine Charter Serv., Inc. v. Union Pac. R.R.*,
  No. CIVS041999LKKPAN, 2006 WL 769623 (E.D. Cal. Mar. 27, 2006) .............................5

*Whelan v. Abell*,
  48 F.2d 1247 (D.C. Cir. 1995) .................................................................................................8

*Williams v. Rene*,
  72 F.3d 1096 (3d Cir. 1995) ..................................................................................................10

*Williams v. Slade*,
  431 F.2d 605 (5th Cir. 1970) ...................................................................................................9

*Witco Chem. Corp. v. Peachtree Doors, Inc.*,
  787 F.2d 1545 (Fed. Cir. 1986) ...............................................................................................9

I.       **THE COURT SHOULD GRANT ARM JUDGMENT AS A MATTER OF LAW.**

   A.       **The Nuvia Code Is Not Licensed Under The Qualcomm ALA (Question 3).**

Qualcomm's Answering Brief ("QC Br.") fails to contest key parts of Arm's motion. It does not contest that Nuvia's pre-acquisition code was developed under the Nuvia ALA based on Arm technology delivered to Nuvia—not Qualcomm. It identified no evidence that Nuvia did its pre-acquisition work "by or for" Qualcomm. Equally important, Qualcomm concedes that it used the RTL code developed by Nuvia before the acquisition as the foundation for (and in the case of Hamoa, as 80% of the code in) the "Qualcomm CPUs" at issue in the case. These concessions, the unambiguous terms of the Qualcomm ALA, and the record justify JMOL on Question 3.

Qualcomm's arguments for Question 3 rest on a mistaken assumption that the relevant terms of the Qualcomm ALA are ambiguous. There is nothing ambiguous about the relevant contract language, which grants a license only for Architecture Compliant Cores developed by or for Qualcomm under the licenses granted in Annex 1 to the Qualcomm ALA based on Arm Technology delivered by Arm to Qualcomm. In its opposition, Qualcomm does not even try to identify how this contractual language—or any other term in the Qualcomm ALA—is susceptible to two plausible interpretations, such that Qualcomm's ALA can cover Nuvia's pre-acquisition code. Instead, Qualcomm makes a number of irrelevant arguments about supposedly disputed factual issues that the jury might have resolved, but did not, in Qualcomm's favor.

None of those arguments matter, because the "interpretation of [an] unambiguous contract . . . is solely a question of law" for the Court to decide. *Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 871-72 (9th Cir. 1979); *see also L.P.P.R., Inc. v. Keller Crescent Corp.*, 532 F. App'x 268, 274 (3d Cir. 2013) ("[T]here is no role for the jury to play in contract interpretation when there is no ambiguity."); *PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, 339 F. App'x 693, 694 (9th Cir. 2009) (finding the district court erred "by allowing the jury to interpret the contract,

1

because the relevant provision was unambiguous, and evaluation of extrinsic evidence was unnecessary and inappropriate under California law"). Whether a contract is unambiguous itself "raises an issue of law that does not rest on the sufficiency of the evidence to support the jury's verdict." *F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958, 962-63 (9th Cir. 2010) (vacating jury verdict and awarding summary judgment after finding agreement unambiguous).

The ALA states that the Qualcomm ALA extends only to: (1) Architecture Compliant Cores ("ACC") "developed . . . under the licenses granted in *this* Annex 1" (JTX-0011 § A.6) (emphasis added); (2) ███████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████ (emphasis added).) It also disclaims ███████████████████████

███████████████████████, emphasizing the limitation to technology ███████████

███████████████████████ (emphasis added). The ALA's definitions plainly and consistently require any development work to be done ███████████████████████ or by a company ███████████████████████████████████████.

Qualcomm does not argue that Nuvia's pre-acquisition code satisfies any (let alone all) of these three independent requirements. Nuvia's code developed before the acquisition was neither developed under the auspices of the Qualcomm ALA nor developed "by or for" Qualcomm. Nuvia developed the pre-acquisition code as an independent company developing its own designs for its own products. (PTX-0103 at 1-2; PTX-0260 at 2; Tr. 380:15-19, 390:7-24, 394:4-395:24, 583:4-584:5, 585:23-586:15, 784:3-10.) And Nuvia had no pre-acquisition rights under Qualcomm's ALA or the Arm Technology that Arm delivered to Qualcomm. (Tr. 583:4-584:5.)

Rather than grapple with the three key contractual requirements that exclude the pre-acquisition Nuvia code from the scope of the Qualcomm ALA, Qualcomm repeatedly cites the

"design and have designed, including all stages of implementation" language in Section B.1.1. (QC Br. 1, 4-6, 10.) Each time, Qualcomm omits that those ▉▉▉▉▉▉▉▉▉▉▉▉ rights are limited to the "ARM Technology" defined by the contract—technology that Sections ▉, 2.6, and A.10 limit to materials delivered by Arm to Qualcomm under the Qualcomm ALA. ▉▉▉▉▉▉ ; JTX-0011 § A.10.) ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Section B.1.1 does not reach Nuvia's work before the acquisition, and cannot transform code Nuvia developed under the Nuvia ALA into a core licensed under Qualcomm's ALA merely because of a subsequent acquisition.

Qualcomm nonetheless asserts two grounds that purportedly support the jury's verdict on Question 3: (1) the jury may have found that Qualcomm began the four "Qualcomm CPUs" after the acquisition was completed (QC Br. 4-5); and (2) the jury may have concluded that Qualcomm's license extends to third-party CPU designs (whether reflected in RTL code or some other format) that Qualcomm later acquires so long as Qualcomm did at least some work to finalize the commercial product after obtaining the third-party designs. (*Id*. at 9.) Neither argument has merit.

Qualcomm's suggestion that it developed all of the Hamoa, Pakala, Nordschleife, and Pegasus CPU designs post-acquisition finds no support in the record. Qualcomm told Arm that it was transferring and would use the Nuvia code. (Tr. 177:14-21; PTX-0234 at 2; PTX-0253 at 1-2; PTX-0268.) Mr. Williams, one of Nuvia's founders and now a Qualcomm employee, admitted that Qualcomm used Nuvia's code. (Tr. 409:16-21, 410:2-21, 412:9-20.) Arm's experts, Drs. Colwell and Chen traced the presence of Nuvia's code in the four Qualcomm CPUs. (*Id*. at 490:8-491:22, 536:12-538:5.) Qualcomm's expert did not dispute that Nuvia developed code used in the relevant CPUs. (*See* Tr. 727:9-12 ("[E]very line of RTL is written by the Nuvia and then Qualcomm

3

engineering group.").) Qualcomm's engineers agreed that Qualcomm's CPUs "need just incremental improvements for new features." (DTX-358 at 1.) Qualcomm simply built on Nuvia's pre-acquisition code, using new names for CPUs incorporating pre-acquisition Nuvia code.

Qualcomm's argument that any further development of a CPU core post-acquisition gives Qualcomm a license to the pre-acquisition portions of that core is equally flawed. The sweep of this argument is stunning. Under Qualcomm's interpretation of the ALA, it could steal or misappropriate code created by others (or Arm's own designs), yet have a license for a newly named CPU built using 90%, 95%, or even 99% unlicensed code. Qualcomm cannot point to any language in the ALA that would support such a result, which directly conflicts with the provisions limiting the license to "a microprocessor core *developed by or for LICENSEE*" (JTX-0011 § A.6 (emphasis added)) using only technology ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ The Court should not read into the Qualcomm ALA an atextual right to a "springing" license for Qualcomm so long as it does any work on the code for a CPU.

Qualcomm's grab-bag of remaining arguments does not support the jury's verdict either. Qualcomm mischaracterizes the question presented to the jury. The jury did not decide if any "Qualcomm CPUs" were licensed. (QC Br. 9.) It was asked if "Qualcomm CPUs that *include designs acquired in the Nuvia acquisition*" were licensed. (D.I. 569 at 1.) Because the designs created by Nuvia before the acquisition were not (1) "developed by or for" Qualcomm, (2) ▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ or (3) under the licenses granted "in this Annex" (JTX-0011 § A.6; ▇▇▇▇▇▇▇▇), that work is not licensed as a matter of law.

Qualcomm next suggests that Arm erred by "rel[ying] on the definition of ARM Technology from the body of the ALA, not from the controlling Annex." (QC Br. 10.) But the terms of both the ALA and the Annex apply unless they are in conflict. (JTX-0011 at 1 (limiting

4

any override "*to the extent that the provisions contained in this Annex 1 conflict*" and solely with respect to "*conflicting provisions* in the ALA") (emphasis added).) The definition in Section A.10 of the Annex—which defines "ARM Technology" as "any or all, of the architecture technology identified in the Annex 1 and any Updates thereto"—is consistent with the limitation in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." (▮▮▮▮▮▮▮▮; JTX-0011 § A.10.)

The trial testimony Qualcomm relies on throughout its opposition is irrelevant. Qualcomm's claim that Arm employees "understood that the Qualcomm ALA would cover technology from Nuvia" (QC Br. 7-8), even if accurate, cannot alter the unambiguous words of the ALA. *Stockton Exec. Limousine Charter Serv., Inc. v. Union Pac. R.R.*, 2006 WL 769623, at *6 (E.D. Cal. Mar. 27, 2006). Qualcomm, in any event, cherry-picks its quotations. Although Richard Grisenthwaite initially referred in a chat to a "bombproof" Qualcomm license, later in that very same chat, Mr. Grisenthwaite concluded that the restriction on transfer in Nuvia ALA's "would solve the problem" and that "[w]ithout [Arm's] permission, all Qualcomm have bought is a CPU engineering team." (DTX-090 at 6.) Qualcomm also misquotes Paul Williamson's chat that "Qualcomm Nuvia is a problem. Qualcomm already have a v9 [not a v8] arch license." (QC Br. 7.) Nuvia wrote its code under a v8 license. (DTX-047 at 1.) There is no inconsistency, and Mr. Williamson later told Qualcomm, based on the plain language of the contract, that Arm objected to Qualcomm's use of any pre-acquisition code. (*See e.g.*, PTX-0240; PTX-0260; PTX-0247.) But the key point is that the unambiguous contract language is dispositive here.

Similarly, the jury instructions change nothing. "JMOL can be granted either before or after the jury has rendered a verdict, and it does not depend on how the jury was instructed." *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1252 (Fed. Cir. 2005). Further, the jury was instructed to apply the contract according to its "usual and ordinary meaning," without identifying any

5

ambiguity regarding contract interpretation for the jury to resolve. (Tr. 886:1-23.) Arm's summary judgment opposition is not to the contrary; there, Arm argued that "the plain language of Qualcomm's ALA disclaims a license to Arm technology developed under another ALA." (D.I. 416 at 14.) JMOL, of course, always arises after summary judgment, and presents the Court with "more fully developed arguments and opportunity for reflection at trial." *See Abbott Diabetes Care Inc. v. Dexcom, Inc.*, 2024 WL 4875131, at *6 (D. Del. Nov. 13, 2024).

### B. Nuvia Breached The Nuvia ALA (Question 1).

The basis for JMOL on Question 1 has been fully addressed in Arm's renewed opposition to Qualcomm's JMOL motion. (D.I. 609.) Following termination, Nuvia had to "immediately discontinue any use and distribution of all ARM Technology" and "any products embodying such technology" and "either destroy or return" any "ARM Technology or derivatives" in its possession. (JTX-0001 § 15.1(a).) Nuvia did not do so. JMOL is warranted.

### C. Qualcomm Breached The Nuvia ALA (Question 2).

JMOL is similarly warranted on Question 2. Qualcomm wrongly argues that Arm had to show that Qualcomm expressly intended to assume the obligations of the Nuvia ALA. But a party can assume a contract by its actions. (D.I. 596 ("Arm Br.") at 12.) Arm's brief recounted the actions that reflected Qualcomm's intent to assume the benefit of the Nuvia ALA. (*Id.* at 12-13.) Qualcomm took the *benefits* of the Nuvia ALA, assuming its *obligations* as a result. (*Id.* at 13.)

Arm did not need to identify a separate "document in which Qualcomm agreed" to an assumption. (QC Br. 13.) The sole case invoked for this flawed requirement—*Recorded Picture Co. v. Nelson Entertainment, Inc.*—does not suggest otherwise. That decision involved a sub-distributor who received a limited license grant that reverted to the distributor, unlike here. 53 Cal. App. 4th 350, 362 (1997). Further, *Recorded Picture* is an orphan decision that has been repudiated by subsequent precedent. *See Pajaro Dunes Rental Agency, Inc.*, 2001 WL 1743285,

at *8 (N.D. Cal. Nov. 1, 2001); *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 790 (2003); *see also Child Bride Music, Inc. v. Jackson*, 2004 WL 911310, at *7 (Tenn. Ct. App. Apr. 28, 2004) (*Recorded Picture* "has been isolated by subsequent California decisions").

With little to say on the merits, Qualcomm falsely claims Arm waived its arguments at the charge conference. But the instructions confirm that assumption is determined by the "actions, subject matter, and words of the parties." (Tr. 864:23-865:2.) Arm did not argue that the Nuvia acquisition alone establishes that Qualcomm assumed the Nuvia ALA. And Qualcomm's reliance on reverse triangular merger law (QC Br. 15) is inapposite, given that its actions and words post-acquisition demonstrate that it assumed the Nuvia ALA. (*See* Arm Br. 12-13.)

Finally, because JMOL should be granted on Question 3, JMOL or a new trial is warranted on Question 2. Qualcomm does not even attempt to meet its burden to show "the error which has crept into one element of the verdict did not *in any way* affect the determination *of any other issue*." *Pryer v. C.O. 3 Slavic*, 251 F.3d 448, 455 (3d Cir. 2001) (citations omitted, emphasis added).

## II. THE COURT SHOULD GRANT A NEW TRIAL ON ALL THREE ISSUES.

### A. Defendants Concede The Issues Significantly Overlap And Cannot Overcome The Presumption Favoring Retrial On All Issues.

Defendants' offer of a limited, conditional stipulation regarding the preclusive effect of the first trial on the second trial reinforces how much Questions 1, 2, and 3 are interwoven and not sufficiently distinct and separate for a partial new trial under *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494 (1931). Purportedly "[t]o avoid any doubt" on the risk of inconsistent verdicts, Defendants stipulate that they will not mention the first jury's verdict or argue collateral estoppel based on the first trial. (QC Br. 17-18.) The proposal confirms a new trial under Question 1 will cause the second jury to consider the same factual issues that the first jury decided. *Gasoline Products* stands for the principal that no two juries should be faced with the same factual question

7

(creating a risk of inconsistent verdicts or an unfair trial); the analysis does not turn on the preclusive effect of an initial verdict on a second jury.

Defendants' proposal is also unprecedented. The parties have cited 25 cases applying *Gasoline Products*. None suggests that a stipulation regarding the preclusive effect of the first verdict solves (or even mitigates) the risk of constitutional harm animating *Gasoline Products*.

Qualcomm's novel positions do not end there. Qualcomm never mentions the "general presumption against partial new trials," much less attempts to overcome that presumption. *Elcock v. Kmart Corp.*, 233 F.3d 734, 758 (3d Cir. 2000). It instead invents a number of principles that conflict with the presumption. Borrowing from cases addressing whether a jury reached inconsistent verdicts *in the same trial*, Qualcomm contends a new trial is necessary "only if 'there is no possible way to reconcile the jury's verdicts.'" (QC Br. 17 (quoting *Brand Mktg. Grp. LLC v. Intertek Testing Servs., N.A., Inc.*, 801 F. 3d 347, 366-67 (3d Cir. 2015)); *see also* QC Br. 16 (quoting *Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 119 (1963).) Qualcomm offers no example of a court applying that standard when considering whether *Gasoline Products* requires a new trial on interwoven issues. Instead, the test is whether "it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice," *Elcock*, 233 F.3d at 758, or "*a significant risk of … inconsistent verdicts*," *Opal Labs Inc. v. Sprinklr, Inc.*, 2022 WL 526167, at *1 (D. Or. Jan. 7, 2022) (emphasis added); *see also Spence v. Bd. of Educ. of Christina Sch. Dist.*, 806 F.2d 1198, 1202 (3d Cir. 1986).

Nor is there any basis for Qualcomm's assertion that the Reexamination Clause is a "winner's right" that protects Qualcomm's interests, but not Arm's. That is not what *Whelan v. Abell*, 48 F.2d 1247, 1293 (D.C. Cir. 1995) says. Qualcomm's assertion is also inconsistent with the Third Circuit's presumption against partial new trials. The party seeking a new trial is the party

8

who disliked the first verdict; the verdict winner has no incentive to set aside its win.

Qualcomm tries to limit Arm's cases to circumstances where a court upheld liability but set aside damages. But Arm cited numerous cases involving circumstances where a Court ordered a new trial on intertwined liability issues. *See, e.g.*, *Encompass Off. Sols., Inc. v. La. Health Serv. & Indem. Co.*, 919 F.3d 266 (5th Cir. 2019) (tort and contract claims); *Witco Chem. Corp. v. Peachtree Doors, Inc.*, 787 F.2d 1545 (Fed. Cir. 1986) (patent infringement and contract questions); *Nissho-Iwai Co. v. Occidental Crude Sales, Inc.*, 729 F.2d 1530 (5th Cir. 1984) (fraud and breach of contract claims); *Colonial Leasing of New England, Inc. v. Logistics Control Int'l*, 770 F.2d 479 (5th Cir. 1985) (creditor status and fraud); *Williams v. Slade*, 431 F.2d 605 (5th Cir. 1970) (negligence of two separate defendants). Another line of authority Qualcomm ignores rests on "[t]he general practice after a mistrial" of ordering "a full retrial of all issues in the case." *Drumgold v. Callahan*, 707 F.3d 28, 46 (1st Cir. 2013); *Opal Labs Inc.*, 2022 WL 526167, at *1.

**B.     All Three Questions Are Interwoven, Rather Than Distinct And Separable.**

Once Qualcomm's flawed legal arguments are cast aside, it is apparent that a new trial on Question 1 requires a new trial on all issues, for the reasons stated in Arm's opening brief. Qualcomm offers nothing to permit the Court to "confidently conclude" that Nuvia's liability for breach of the Nuvia ALA is "so distinct and separable" from Questions 2 and 3 that "a trial of it alone may be had without injustice." *Elcock*, 233 F.3d at 758. The three Questions are not clearly distinct and separable, so the *risk* of confusion, uncertainty, and inconsistent verdicts is high.

Questions 1 and 2 are not distinct and separable issues. There is "no conceivable fashion by which a second jury could fairly evaluate" whether Nuvia breached "without also fully appreciating" the facts that give rise to Arm's breach claim against Qualcomm based on the same conduct. *Pryer*, 251 F.3d at 458. Both juries would need to consider why Nuvia's pre-acquisition code is a "derivative" of "ARM Technology," and how much of that code Qualcomm reused, based

9

on the same pre- and post-acquisition course of conduct, the same transfer of technology, and testimony from the same witnesses. (*See* Arm Br. 15-16 (identifying overlapping evidence).) Qualcomm does not contest that the two juries may have different views about what Section 15.1 requires, what materials it covers, and whether Qualcomm's assumption of Nuvia's obligations establishes that Qualcomm, rather than Nuvia, breached Section 15.1. (*See id.* at 18.) The same jury needs to decide both breach claims to avoid these significant potential conflicts. Qualcomm's primary response is that Nuvia and Qualcomm are different defendants. Courts have repeatedly held, however, that claims against different defendants must be retried together where, as here, they reflect interwoven factual issues. *See Williams v. Rene*, 72 F.3d 1096, 1101 (3d Cir. 1995); (Arm Br. 18 (collecting cases).)

Questions 1 and 3 also are not distinct and separable issues. Question 3 is equally interwoven with the facts underlying Questions 1 and 2. Defendants relied on Qualcomm's purported license to the Nuvia-acquired code as a defense to both breach claims before and during trial. (*See* Arm Br. 19 (collecting evidence).) Whether the jury instructions for the breach claims referenced the Qualcomm ALA is irrelevant; Qualcomm's evidence and argument linked the two together. Moreover, whether Qualcomm was licensed under the Qualcomm ALA implicates the same Nuvia code at issue in the breach claims and requires a deep dive into the same conduct.

Qualcomm says little to contest this overlap. It instead invokes its erroneous legal theory that no re-trial is necessary if the two verdicts *could* be harmonized after the fact. As noted, that is not the test, which instead turns on a risk of confusion and inconsistent verdicts in a retrial. Here, the three Questions are "so interwoven" that they "cannot be submitted to the jury independently" without error under the Seventh Amendment. *Gasoline Prods.*, 283 U.S. at 500.

## **CONCLUSION**

The Court should grant Arm JMOL or, at a minimum, grant a new trial on all issues.

Dated: February 28, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
shaelyndawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Kyle W.K. Mooney
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
(212) 336-4092
kmooney@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Anne Shea Gaza
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Plaintiff Arm Ltd.*

11

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

Daniel Muino
MORRISON & FOERSTER LLP
2100 L Street, NW
Suite 900, Washington, D.C. 20037
(202) 887-1500
dmuino@mofo.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 28, 2025, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

Isaac B. Zaur
Nora Niedzielski-Eichner
CLARICK GUERON REISBAUM LLP
220 Fifth Avenue, 14th Floor
New York, NY 10001
izaur@cgr-law.com
nniedzie@cgr-law.com

Catherine Nyarady
Anna R. Gressel
Jacob A. Braly
Alexander M. Butwin
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
agressel@paulweiss.com
jbraly@paulweiss.com
abutwin@paulweiss.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
Anna P. Lipin
William T. Marks
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
kdunn@paulweiss.com
wisaacson@paulweiss.com
mzappala@paulweiss.com
ejmorgan@paulweiss.com
alipin@paulweiss.com
wmarks@paulweiss.com

Andrea L. D'Ambra
Susana Medeiros
Kira Latham
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019
andrea.dambra@nortonrosefulbright.com
susana.medeiros@nortonrosefulbright.com
kira.latham@nortonrosefulbright.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

<u>*/s/ Anne Shea Gaza*</u>
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Plaintiff Arm Ltd.*