IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ATM LTD., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. 22-1146 (MN) |
| QUALCOMM INC., QUALCOMM | ) |
| TECHNOLOGIES, INC. and NUVIA, INC, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Anne Shea Gaza, Robert M. Vranna, Samantha G. Wilson, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE; Gregg F. LoCascio, P.C., Jason M. Wilcox, P.C., Meredith Pohl, Matthew J. McIntee, KIRKLAND & ELLIS LLP, Washington, DC; Jay Emerick, Adam M. Janes, KIRKLAND & ELLIS LLP, Chicago, IL; Peter Evangelatos, KIRKLAND & ELLIS LLP, Daralyn J. Durie, Joyce Liou, Shaelyn K. Dawson, MORRISON & FOERSTER LLP, San Francisco, CA; Erik J. Olson, MORRISON & FOERSTER LLP, Palo Alto, CA; Scott F. Llewellyn, MORRISON & FOERSTER LLP, Denver, CO; Kyle W.K. Monney, Kyle D. Friedland, MORRISON & FOERSTER LLP, New York, NY – Attorneys for Plaintiff

Jack B. Blumenfeld, Jennifer Ying, Travis Murray, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Karen L. Dunn, William A. Isaacson, Erin J. Morgan, Melissa F. Zappala, FUNN ISAACSON RHEE LLP, Washington, DC; William T. Marks, PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, Washington, DC; Catherine Nyarady, Anna R. Gressel, Jabos A. Braly, Alexander M. Butwin, Paul, WEISS, RIFKIND, WHARTON & GARRISON, LLP, New York, NY; Andrea L. D'Ambra, Susana Medeiros, NORTON ROSE FULBRIGHT US LLP, New York, NY; Kira Latham, NORTON ROSE FULBRIGHT US LLP, Dallas, TX – Attorneys for Defendants

September 30, 2025
Wilmington, Delaware


**NOREIKA, U.S. DISTRICT JUDGE:**

From December 16 to 20, 2024, the Court presided over jury trial in this contract dispute between Plaintiff ARM Ltd. ("ARM" or "Plaintiff") and Defendants Nuvia Inc. ("Nuvia"), Qualcomm Inc., and Qualcomm Technologies, Inc. ("Qualcomm") (together, "Defendants"). (*See* D.I. 588, 589, 590, 591, 592 (together, "Tr.")).[1]  Pending before the Court are two post-trial motions from the parties:  (1) ARM's motion for judgment as a matter of law or a new trial; and (2) Nuvia's motion for judgment as a matter of law.  (D.I. 595, 597).  For the reasons set forth below, the Court will DENY Arm's motion and GRANT-IN-PART and DENY-IN-PART Nuvia's motion.

## I.     BACKGROUND

### A.     The Parties

This case concerns a contract dispute between two technology firms.  ARM is a British microprocessor company with a principal place of business in Cambridge, United Kingdom. (D.I. 1 ¶ 4).  Arm developed an instruction set architecture ("ISA") to build microprocessors. (Tr. at 260:7-261:24, 267:19-268:8, 442:16-443:3, 512:6-14).  An ISA is a list of instructions that enables compatibility between electronic devices (i.e., hardware) and the programs that run on them (i.e., software).  This permits smartphones, computers, and tablets, for example, to use the same software applications.  (*Id*. at 260:7-261:24, 478:10-22, 681:9-22, 684:20-685:8, 691:7-13). ARM codifies its ISAs in its "architecture reference manual" ("the Reference Manual"), which engineers use to design central processing units ("CPUs").  (*Id*. at 479:16-25).  As part of its business model, ARM licenses its ISAs.  (*Id*. at 264:7-20).

---

[1]     The Court also held a limited bench trial after the jury left for the day on December 17, 2024.  (*See* D.I. 593).

Qualcomm is a Delaware-incorporated semiconductor company with headquarters in San Diego, California. (D.I. 1 ¶¶ 5-6). Qualcomm builds microchips for consumer goods such as smartphones, laptops, and car dashboards. (Tr. at 745:9-746:2).

Nuvia was led by a team of former Apple engineers seeking to build ARM-compliant server CPUs and began working with ARM in February of 2019. (Tr. at 161:19-162:5, 421:2-11, 381:12-382:4, 388:20-22; PTX-103 at 2). Nuvia was later acquired by Qualcomm in March of 2021 through a reverse triangular merger. (Tr. at 454:9-11, 575:17-23, 808:10-12).[2]

### B. The Dispute

On May 30, 2013, Qualcomm and ARM signed an Architecture License Agreement (the "Qualcomm ALA"). (JTX-10, 11). Among other things, the Qualcomm ALA granted Qualcomm a "non-exclusive, world-wide right and licence" to "use the applicable ARM Technology to design and have designed . . . Architecture Compliant Cores," which are "microprocessor core[s] developed by or for [Qualcomm] under the [ALA]." (JTX-11 § A.6, B.1.1).

On September 27, 2019, Nuvia and ARM executed an Architecture License Agreement ("the Nuvia ALA"). (JTX-1, 2). Similar to the Qualcomm ALA, the Nuvia ALA granted Nuvia a license to use ARM's technology to design CPUs. (*Id.*). The Nuvia ALA stipulated that the license was not transferable in the event of an acquisition without ARM's consent. (*Id.* § 16.3). It also stated that, in the event of a material breach, each party had an obligation to return or destroy certain technology received from the other. (*Id.* §§ 14.2, 15.1(a)).

In January 2021, Qualcomm announced that it had reached a deal to acquire Nuvia. (PTX-212 at 1-2; PTX-234 at 2; Tr. 172:8-173:7, 216:14-23). The acquisition occurred in March of that

---

[2] Qualcomm formed a subsidiary corporation, and that corporation and Nuvia were merged together with Nuvia being the surviving entity. (Tr. at 575:17-23).

year. (Tr. 808:10-14). On February 1, 2022, Arm notified Nuvia that it would terminate the Nuvia ALA, effective March 1, 2022. (JTX-8).

### C.  Procedural History

ARM filed this action on August 31, 2022, alleging that Nuvia and Qualcomm breached the Nuvia ALA when Qualcomm acquired Nuvia in March of 2021. (D.I. 1). Defendants counter that neither breached the Nuvia ALA, and that Qualcomm's use of ARM's code following the acquisition was licensed under the Qualcomm ALA. (D.I. 300 at 56). Both ALAs stipulate that "[t]he validity, construction and performance of this ALA shall be governed by California Law." (JTX-1 § 16.12; JTX-10 § 16.15).

From December 16 to 20, 2024, the Court presided over a jury trial. (*See* Tr.). At the conclusion of trial, the jury found that (1) ARM had not proven that Qualcomm breached Section 15.1(a) of the Nuvia ALA, and (2) that Qualcomm had proven that its use of ARM's code was licensed under the Qualcomm ALA. (D.I. 572). The jury hung, however, on the question of whether Nuvia breached the Nuvia ALA. (*Id*.).

On January 17, 2025, the parties filed their motions for judgment as a matter of law. (D.I. 595, 597). Those motions were fully submitted as of February 28, 2025. (D.I. 596, 598, 608, 609, 614, 615). The Court now addresses the motions.

## II.    LEGAL STANDARDS

### A.  Judgment as a Matter of Law

Judgment as a matter of law may be entered against a non-moving party if the Court "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on [an] issue." Fed. R. Civ. P. 50(a)(1). A motion for judgment as a matter of law "should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the

advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F. 3d 354, 373 (3d Cir. 2016) (quoting *Lightning Lube, Inc. v. Witco Corp.*, 4 F. 3d 1153, 1166 (3d Cir. 1993)). "Judgment as a matter of law is proper only if the record is critically deficient of the minimum quantum of evidence needed to support the verdict." *Washington v. Gilmore*, 124 F. 4th 178, 185 (3d Cir. 2024) (internal quotation marks omitted). It is a remedy to be invoked "sparingly." *CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F. 3d 375, 383 (3d Cir. 2004); *Marra v. Philadelphia Hous. Auth.*, 497 F. 3d 286, 300 (3d Cir. 2007).

In determining whether substantial evidence supports the jury verdict, the Court may not make credibility determinations, weigh the evidence, or substitute its own conclusions for those of the jury where the record evidence supports multiple inferences. *See Rodriquez v. Southeastern Pa. Trans. Auth.*, 119 F. 4th 296, 298 (3d Cir. 2024); *Avaya*, 838 F. 3d at 373. Moreover, in the Third Circuit, when the movant bears the burden of proof on an issue, judgment as a matter of law is appropriate only if "there is insufficient evidence for permitting any different finding." *Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F. 2d 1171, 1177 (3d Cir. 1976) (citations omitted).

   **B.**  <u>**Motion for a New Trial**</u>

"[A]fter a jury trial," the Court may grant a new trial "to any party" on "all or some of the issues" for "any reason for which a new trial has heretofore been granted" in federal court actions at law. Fed. R. Civ. P. 59(a)(1)(A). Common grounds for a new trial are: "(1) where the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice; (2) where newly-discovered evidence exists that would likely alter the outcome of the trial; (3) where improper conduct by an attorney or the court unfairly influenced

4

the verdict; or (4) where the jury's verdict was facially inconsistent." *Ateliers de la Haute-Garonne v. Broetje Automation-USA Inc.*, 85 F. Supp. 3d 768, 775 (D. Del. 2015).

Whether to grant a new trial is a question committed to the Court's discretion. *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980). Unlike the standard for judgment as a matter of law, on a motion for a new trial, "the Court need not view the evidence in the light most favorable to the verdict winner." *Ateliers*, 85 F. Supp. 3d at 776. "Nevertheless, new trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the] conscience." *Williamson v. Consol. Rail Corp.*, 926 F. 2d 1344, 1353 (3d Cir. 1991).

### III. DISCUSSION

#### A. Whether Qualcomm Proved that Defendants Were Licensed Under the Qualcomm ALA (Verdict Question 3)

The jury found that Qualcomm proved by a preponderance of the evidence that the Qualcomm CPUs that include designs acquired in the Nuvia acquisition are licensed under the Qualcomm ALA. (D.I. 572). ARM challenges that finding as unsupported for three reasons, arguing: (1) that the CPU designs at issue were not developed under the Qualcomm ALA; (2) that the CPUs were developed for Nuvia, not Qualcomm; and (3) that the Qualcomm ALA's license is limited to "ARM Technology." (D.I. 596 at 4-7).

##### 1. Whether the CPUs at Issue Were Designed Under the Qualcomm ALA

The Qualcomm ALA applies to "applicable ARM Technology," including any "Architecture Compliant Core," which is "a microprocessor core developed by or for [Qualcomm] under the licenses granted in this [Agreement]." (JTX-11 §§ A.6, B.1.1). ARM asserts that the technology at issue in this case was developed by Nuvia prior to the acquisition. Qualcomm

5

counters that there was sufficient trial evidence for the jury to conclude that the Hamoa, Pakala, Nordschleife, and Pegasus CPUs at issue were developed by Qualcomm after the 2021 acquisition.

At trial, Qualcomm presented evidence that relevant cores "[a]ll were conceived at Qualcomm" and worked on by Qualcomm employees. (Tr. at 430:15; *id.* at 400:13-15; *id.* at 579:15-22). Specifically, Nuvia's CEO testified that "the design start point" for Hamoa was July 21, 2021, the Pakala product "had a start date of January 2022," Pegasus "stated roughly around the summer of 2022," and Nordschleife, "[t]he automotive platform, its design start was in February of 2023." (*Id.* at 428:20-430:12). All of those dates succeed the March 2021 acquisition. Qualcomm's witnesses further attested to the fact that "Nuvia didn't have any finished products at the time" of the acquisition, and its original project, a "server CPU" that they were "working on at Nuvia," was "canceled" after the company became Qualcomm. (*Id*. at 428:1-12, 579:17-18). Based on that evidence, the jury could have reasonably concluded that the CPUs at issue were built by Qualcomm employees (at least some of whom were former Nuvia employees) after the acquisition, and that the relevant cores fell under the license in the Qualcomm ALA.

ARM presented contrary evidence. It elicited an acknowledgment, for example, that "[t]he work that Nuvia was doing when Nuvia was a separate entity, before the acquisition, was not being done by or for Qualcomm under the license granted to Qualcomm." (*Id.* at 583:4-586:15; *see also* 380:15-19, 390:7-395:24, 784:3-10; PTX-103 at 1-2; PTX-260 at 2). But when there is conflicting testimony at trial and the evidence permits more than one reasonable finding on any given point, the jury is entitled to make credibility determinations, weigh the evidence, and believe the witnesses it considers most trustworthy. *See Marra*, 497 F. 3d at 306; *Woodson v. Scott Paper Co.*, 109 F. 3d 913, 921 (3d Cir. 1997) ("[T]he jury had the unique opportunity to judge the credibility and demeanor of the witnesses who testified at the trial, and [therefore] it reached its

6

conclusions based in part on those observations.") (internal quotation marks omitted).  It was the jury's job to do that here, and it came out in Qualcomm's favor.  There is no basis to upset that ruling.

### 2. Whether the CPUs at Issue Were Designed for Nuvia or Qualcomm

ARM next argues that the cores at issue were not "developed by or for" Qualcomm, as required by the Qualcomm ALA.  (JTX-11 § A.6).  ARM asserts that the license provided in the Annex is "subject to Clause 2.2 of the ALA," which "does not grant to the Designer any license in respect of the Arm Technology for any purpose other than for designing on behalf of [Qualcomm]."  (JTX-11 § B.1.1; JTX-10 § 2.2).  Qualcomm responds that the jury was entitled to read both "the plain language of the Qualcomm ALA as well as extrinsic evidence" to decide whether "all of Qualcomm's design and development work" on the at-issue CPUs was protected under the Qualcomm ALA.  (D.I. 608 at 6).

Throughout trial, the parties agreed that the provisions of the ALAs at issue were susceptible to multiple reasonable readings.  Indeed, ARM prevailed on summary judgment on that very premise.  (D.I. 513 at 27:4-6 ("Qualcomm's [motion for summary] judgment that its cores are properly licensed under the Qualcomm ALA [is] denied.  [The Court finds] [i]ssues of fact on that clearly."); D.I. 416 at 15 ("[There is] a genuine issue of fact regarding whether Qualcomm's ALA might license Qualcomm to use technology developed under other ALAs.")).  That led the Court to read ***an agreed-upon instruction*** to the jury that "Arm and Defendants dispute the meaning of the words in their contract."  (Tr. at 886:1-8).  The Court went on to instruct that, "[i]n deciding what the words of a contract mean, you must decide what the parties intended at the time the contract was created.  You may consider the usual and ordinary meaning of language used in the contract as well as the circumstances surrounding the making of the contract."  (*Id.*).

Thus, by agreement of the parties, the jury was charged with resolving which of the parties' competing interpretations was correct. *See Wolf v. Walt Disney Pictures & Television*, 76 Cal. Rptr. 3d 585, 602 (Cal. Ct. App. 2008); *LG Infocomm U.S.A., Inc. v. Euler Am. Credit Indem. Co.*, 419 F. Supp. 2d 1248, 1258 (S.D. Cal. 2005) ("ambiguous" means "capable of two or more constructions, both of which are reasonable").

Given that, the jury was entitled to consider extrinsic evidence, including that, right after the announcement of the acquisition in January 2021, high level ARM employees thought that Qualcomm "ha[d] a reasonably bombproof arch license that covers everything [through the] mid 2020s at least," (DTX-90 at 5), and that, following the combination, the "Nuvia team will be able to use the architecture license which Qualcomm has." (DTX-52 at 1; DTX-47 at 1) ("Qualcomm Nuvia is a problem. Qualcomm already have a v8 arch license."). Indeed, ARM's CEO wrote in a contemporaneous internal message that the Nuvia ALA "had left a route to blow a hole in [ARM's] revenue plan" because "Qualcomm already ha[d] a v9 architecture license" under its own ALA. (DTX-144 at 1). That observation led him to vent that "I'm struggling not to be pissed that we set up a route for Qualcomm to collapse the payments to Arm," which "feels like in our chess game we left ourselves very exposed." (DTX-145 at 3). And Qualcomm itself told ARM that it was planning to proceed post-merger under its license in the Qualcomm ALA. (*See* DTX-1196; Tr. at 456:23-457:7, 576:9-577:23).

Once again, ARM presented evidence to the contrary. ARM argued at trial that its interpretation of the language in the Qualcomm ALA granted no rights as to Nuvia's pre-acquisition code, further retaining the obligation of showing that code was developed by or for Qualcomm. (Tr. 585:23-586:15; JTX-11 §§ A.6, B.1.1.1). And further, ARM tried to show to the jury that by acquiring Nuvia after being rejected from using their CPU core designs, Qualcomm

8

could not then avail itself of the Qualcomm ALA's terms permitting collaboration with a "Designer" or "Subsidiary", as those terms (per ARM) licensed collaborations "only for the period during which such control exists." (Tr. 394:4-396:10; JTX-10 §§ 1.10, 1.23, 2.2). Although that is competing evidence, it does not change the fact that there was sufficient evidence for the jury to reasonably accept Qualcomm's reading of the ALAs, and the jury was entitled to conclude that the challenged CPUs were developed by or for Qualcomm.

### 3. Whether the CPUs at Issue Constitute "ARM Technology"

Lastly, ARM argues the jury's conclusion on Question 3 of the verdict was against the weight of the evidence because Qualcomm's ALA limited "ARM Technology" to only that technology delivered under the Qualcomm ALA. (D.I. 592 at 7-9). ARM asserts that the plain language of Qualcomm's ALA restricts the interpretation of "ARM Technology" to only that delivered to Qualcomm under *its own* ALA, which the Nuvia cores, by definition, were not; and if that argument fails, ARM argues that the Qualcomm ALA expressly disclaims a license to ARM products created or delivered under another ALA (for ARM's purposes here, the Nuvia ALA), so Qualcomm was using "'Arm technology (rather than 'Arm Technology')". (*Id*. at 8 (underlines in original); JTX-10 §§ 1.3, 2.0, 2.6). Qualcomm responds that the Qualcomm ALA's definition of "ARM Technology" did not control, Annex 1's definition did, and that ARM's position distinguishing between "ARM Technology" and ARM technology, more generally, was not presented to the jury, and regardless, could have been rejected. (D.I. 608 at 9-10).

Invoking the now recurring theme, the parties once again point to competing interpretations on the issue. Qualcomm presented at trial that where "Annex 1 provisions conflict with those in the ALA, Annex 1 controls." (Tr. 571:6-20). And the relevant portion of the Annex's definition of "ARM Technology" reads, "any or all, of the architecture technology identified in this Annex

9

1 and any Updates thereto[.]" (JTX-11 § 2, cl. A.10). But according to ARM's interpretation, the Qualcomm ALA forbids the use of ARM technology, even if delivered as ARM Technology, when created under the Nuvia ALA. (D.I. 596 at 8). ARM did not, however, present that argument to the jury at trial. Even if it had, and even were it based solely on the language ARM asserts was clear, the jury was charged with determining the meaning of the contract from the words and any extrinsic evidence. *See supra* III.A.2. With that charge, the jury was entitled to weigh the evidence and reach its verdict that Qualcomm was licensed. *See Marra*, 497 F. 3d at 306; *Woodson*, 109 F. 3d at 921.

### B. Whether ARM Proved that Qualcomm Breached the Nuvia ALA (Verdict Question 2)

ARM also moves for judgment as a matter of law that Qualcomm breached the Nuvia ALA. (*See* D.I. 572). It is axiomatic that an entity can only breach a contract to which it is a party. *See Brookfield Prop. Grp., LLC v. Liberty Mut. Fire Ins. Co.*, 679 F. Supp. 3d 971, 982 (C.D. Cal. 2023) ("As a general matter, a non-party, or nonsignatory, to a contract is not liable for a breach of that contract.") (citation omitted); *Sun v. Cheung*, No. 23-2112 (CSK), 2025 WL 1446378, at *5 (E.D. Cal. May 20, 2025). Thus, because the Nuvia ALA was executed between ARM and Nuvia – not Qualcomm – Qualcomm can be liable for breach only if it assumed the contract upon acquisition of Nuvia.

At trial, once again, the parties presented competing evidence. ARM argued that Qualcomm assumed the Nuvia ALA explicitly in order to use Nuvia's CPU designs, as Qualcomm supposedly knew the Nuvia ALA "defined an acquisition to be an assignment of the Nuvia ALA," and further that ARM had opposed the transfer of the designs central to the Nuvia ALA. (D.I. 596 at 12); (*see* PTX-240; Tr. at 356:12-21, 401:5-18). For its part, Qualcomm argues it showed evidence that the Nuvia ALA was not assumed as a matter of both law and by evidence adduced,

10

because ARM failed to identify a single document showing that Qualcomm either "agreed to [assume the Nuvia ALA]" or that "Qualcomm intended to do so." (D.I. 608 at 13). Indeed, documentary evidence showed that ARM asked Qualcomm to assume the contract: "ARM is willing to provide consent to the assignment of designs created under NUVIA's architecture license agreement with ARM to Qualcomm, on the condition that Qualcomm agrees to assume the existing terms and conditions under which the design was created . . . under the architecture license agreement in place between ARM and NUVIA, including without limitation the royalty rates." (PTX-260 at 2). Qualcomm showed that that request was denied. (*See, e.g.*, Tr. 180:20-181:7; PTX-242 at 2; PTX-277). On that basis, the jury had ample evidence adduced to reach a conclusion that Qualcomm did not breach the Nuvia ALA because it was explicitly *not* a party to the agreement.

ARM contends that even if the jury found that Qualcomm did not explicitly assume – and consequently breach – the Nuvia ALA, the jury worked against the great weight of evidence in finding that Qualcomm did not ***implicitly*** assume, by its actions, the Nuvia ALA. This is purportedly so because ARM "recounted the actions that reflected Qualcomm's intent to assume . . . the Nuvia ALA." (D.I. 614 at 6). Here, Qualcomm again points to the evidence it adduced demonstrating both an explicit refusal to accept the Nuvia obligations and actions reiterating the same. (D.I. 608 at 14).

California law states that assumption only applies "where the person accepting the benefit was a party to the original transaction" or there "has been an assumption of the obligations . . . determined by the intent of the parties as indicated by their acts, the subject matter of the contract or their words." *Recorded Picture Co. [Productions] Limited.* v. *Nelson Ent., Inc.*, 61 Cal. Rptr. 2d 742, 748 (Cal. Ct. App. 1997). The principle ordinarily applies "when a party accepts all the

11

benefits of an executory contract." *PF1, Inc. v. Suba*, 2023 WL 3107974, at *2 (Cal. Ct. App. Apr. 27, 2023); *see also Manela v. Stone*, 66 Cal. App. 5th 90, 96 n.2 (Cal. Ct. App. 2021). Given that (as noted above) Qualcomm adduced substantial evidence that it did not take all the benefits of the Nuvia ALA, the jury was entitled to find that Qualcomm did not assume all of the obligations and did not breach the Nuvia ALA.[3]

### C. Whether Arm Proved that Nuvia Breached the Nuvia ALA (Verdict Question 1)

On the first question of the verdict sheet – whether Arm proved by a preponderance of the evidence that Nuvia breached Section 15.l(a) of the Nuvia ALA – the jury deadlocked. (D.I. 572). Both parties move for judgment as a matter of law on this issue. ARM argues that Nuvia breached as a matter of law. (D.I. 596 at 9-10). Nuvia, on the other hand, challenges the sufficiency of the evidence as to two essential elements of ARM's breach claim: (1) that ARM was harmed; and (2) that Nuvia's conduct constituted a breach. (D.I. 598 at 4, 7).

#### 1. Harm

##### a. Whether ARM Must Prove Harm

At the outset, the parties dispute as a matter of law whether ARM was required to prove that it suffered harm to prevail on its claim for specific performance under the Nuvia ALA. (*See* D.I. 598 at 4; D.I. 609 at 5). ARM argues for the first time that it is entitled to "nominal damages" so long as it can establish that Defendants breached the contract. (D.I. 609 at 5-6); Cal. Civ. Code § 3360 ("When a breach of duty has caused no appreciable detriment to the party affected, he may yet recover nominal damages."). Qualcomm and Nuvia reply that harm is a standalone element that must be proved in its own right. (D.I. 598 at 4).

---

[3] Additionally, as discussed in the following section, *infra* at III.C, ARM's failure to prove harm constitutes another basis to support the jury's finding that Qualcomm did not breach the Nuvia ALA.

12

The Court agrees with Defendants. An essential element of a breach of contract claim is that "plaintiff was harmed as a result" of the breaching conduct. *CSAA Ins. Exch. v. Hodroj*, 72 Cal. App. 5th 272, 276 (Cal. Ct. App. 2021); *see also Densmore v. Manzarek*, No. B186036 (MF), 2008 WL 2209993, at *13 (Cal. Ct. App. May 29, 2008); *Russo v. Andrews*, No. A155999 (VR), 2022 WL 4493590, at *6 (Cal. Ct. App. Sept. 28, 2022) ("Injury, or resulting harm, is an element of a breach of contract cause of action.") (citation modified). That being so, if a plaintiff cannot demonstrate harm that resulted from a breach of contract, the plaintiff's claim fails as a matter of law. *Smith v. NBC Universal*, 524 F. Supp. 2d 315, 327 (S.D.N.Y. 2007). To prevail on a cause of action for breach of contract, the plaintiff must prove the resulting damage to the plaintiff. Indeed, ARM agreed, representing in the Pretrial Order:

> Harm is an essential element of a breach of contract claim under California law. *Smith v. NBC Universal*, 524 F. Supp. 2d 315, 327 (S.D.N.Y. 2007). Because damages are an element of the claim, if a plaintiff cannot demonstrate harm that resulted from a breach of contract, the plaintiff's claim fails as a matter of law. *Id.* To prevail on a cause of action for breach of contract, the plaintiff must prove the resulting damage to the plaintiff. *Richman* [*v. Hartley*], 224 Cal.App.4th [1182, 1186 (2014)].

(D.I. 518-4 at 10; *see also* D.I. 372 at 20 (summary judgment briefing)).

ARM's assertion of nominal damages does not alter the analysis. Notably, ARM did not pursue its nominal damages theory prior to post trial briefing. Indeed, that theory does not appear in the Pretrial Order, the briefing on the many pretrial motions addressing ARM's assertions of harm and requests for relief or the trial transcript. Instead, ARM represented that its witnesses would describe ARM's ALA licensing program; and that "[t]he only [] reason that this evidence is relevant is to show . . . harm." (D.I. 530 at 27:20-21). At the close of evidence, ARM argued – as it did on summary judgment – that it had adduced sufficient evidence of harm to defeat judgment as a matter of law. (Tr. at 846:20-851:1). During the charge conference, ARM opposed a

standalone harm instruction on the basis that "harm is already an element of the contract elements." (*Id*. at 841:2-11). That led the Court to read an agreed-upon jury instruction that, "[t]o prove Qualcomm or Nuvia's breach of contract, ARM must prove . . . ARM suffered harm." (*Id.* at 885:8-25). And ARM closed its case by arguing to the jury that it had proven harm. (*Id.* at 988:3-6).

In sum, ARM committed to proving harm throughout this litigation. It cannot now abandon that burden after trial in the face of an adverse jury verdict. *See Haley v. Casa Del Rey Homeowners Ass'n*, 63 Cal. Rptr. 3d 514, 521-22 (Cal. Ct. App. 2007); *Copenbarger v. Morris Cerullo World Evangelism, Inc.*, 239 Cal. Rptr. 3d 838, 850 (Cal. Ct. App. 2018).

### b. <u>Whether ARM Proved Harm</u>

Aside from its assertion of nominal damages, ARM contends that it was harmed because its technology was being used in the market without a license, harming its licensing "ecosystem." (*See* Tr. at 100:21-25, 228:8-18, 229:15-24, 247:11-248:4, 278:25-281:1; D.I. 609 at 8-10). And, second, as a result, ARM received less in royalty payments than it otherwise would have. (*Id.* at 850:21-851:1; D.I. 609 at 9, n.1).

As to the first grounds, ARM presented no trial evidence from third-party market participants suggesting that ARM's licensing ecosystem was negatively impacted by Nuvia's alleged breach of the Nuvia ALA. That lack of evidence was largely due to ARM's refusal to provide discovery into its third-party contracts. (*See* D.I. 530 at 26:20-27:19) ("We do not intend to put in any evidence about the specific terms of specific agreements."). On the other hand, there was trial evidence to undermine that ARM suffered any adverse consequences at all, such as when ARM's CEO testified that ARM recorded historic licensing and royalty revenues after terminating the Nuvia ALA in 2022. (*See* Tr. at 198:18-199:21, 281:7-288:23; DTX-791 at 2, 1495 at 2-3).

14

ARM's theory of harm is further derailed by the jury's finding that Qualcomm's products were, in fact, licensed, given that a predicate to the purported harm is unlicensed use. (Tr. at 100:19-25) ("What we are relying on to meet the element of harm . . . is that we have been damaged by the unlicensed use of our intellectual property."). In any event, ARM does not appear to contest this point in its briefing and therefore concedes it. *See In re Wilmington Trust Secs. Litig.*, No. 10-990 (SRF), 2017 WL 2467059, at *2 (D. Del. June 7, 2017) ("When a responding party fails to defend against an issue which is the subject of a motion, courts consistently construe the failure to respond as an abandonment of the issue or a concession that the moving party is correct.").

Second, ARM contends that "evidence in the record shows that Nuvia's breach caused Arm to lose royalty payments." (D.I. 609 at 8). Even if there is such evidence, ARM's argument is foreclosed by the Court's ruling on the morning of the start of trial that ARM could not pursue a lost royalties theory without showing that it "actually disclosed that as an element of [its] claim" in discovery. (Tr. at 96:16-97:7); *United States v. Schiff*, 602 F. 3d 152, 176 (3d Cir. 2010) ("[A] district court [has] broad discretion in its rulings concerning case management both before and during trial."). The Court left open the possibility that ARM could seek reconsideration of its ruling should it have evidence of timely disclosure, but ARM chose not to do so. *See ZF Meritor, LLC v. Eaton Corp.*, 696 F. 3d 254, 297 (3d Cir. 2012) ("A plaintiff omits evidence necessary to sustain a damages award at its own risk."); Fed. R. Civ. P. 37(c) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."). Indeed, it was only after trial and post-trial briefing, that ARM attempted to show that it had disclosed its royalty theory during discovery. (D.I. 628 at 43:4-45:1). Allowing such a dramatic late-breaking shift in ARM's theory of the case

15

would have been highly prejudicial to Defendants, who did not have the benefit of preparing a defense to such a theory. *See IPPV Enters., LLC v. Echostar Commc'ns, Corp.*, 191 F. Supp. 2d 530, 572 (D. Del. 2002) ("[T]he court finds that [plaintiff's] failure to disclose their shift in damages theory . . . prejudiced [defendant].").

Accordingly, the Court finds that no reasonable jury could find that ARM proved harm by a preponderance of the evidence and grants judgment as a matter of law to Nuvia on Question 1.

### 2. Breach

The parties also move for judgment as a matter of law on the second element of ARM's breach of contract claim: breach. ARM says that the trial evidence permits only one conclusion: that Nuvia breached. (D.I. 596 at 9). Nuvia asserts the opposite. (D.I. 598 at 7). Because the Court has already found that ARM failed to present substantial evidence to sustain the element of harm, ARM's claim fails and the Court need not consider either side's arguments on the element of breach. *See Martinez v. Welk Grp., Inc.*, 907 F. Supp. 2d 1123, 1132 (S.D. Cal. 2012); *United States v. Int'l Fid. Ins. Co.*, No. 16-8064 (DSF), 2019 WL 4187846, at *2 (C.D. Cal. Sept. 4, 2019) ("[Counterclaim plaintiffs] have not proven damages. This is fatal to the [breach] counterclaim."); *Kaufman & Broad Monterey Bay v. Travelers Prop. Cas. Co. of Am.*, No. 10-2856 (EJD), 2012 WL 2945932, at *13 (N.D. Cal. July 18, 2012) ("[F]ailure to prove resulting damages is fatal to [Plaintiff's] claim.").

### D. ARM's Motion for a New Trial

Finally, ARM moves for a new trial "because the jury deadlocked on th[e] issue" of "whether Nuvia breached the Nuvia ALA." (D.I. 596 at 14). ARM says that a "new trial on that single issue necessitates a new trial across the board because the issues in this case are 'so interwoven' that they 'cannot be submitted to the jury independently' without violating the

16

Seventh Amendment's Reexamination Clause." (*Id.*) (quoting *Gasoline Prods. Co. v. Champlin Refining Corp.*, 283 U.S. 494, 500 (1931)). The Court has already granted judgment as a matter of law to Nuvia, finding that ARM failed to prove at trial that Nuvia breached the Nuvia ALA. There will be no second trial on that issue, and, therefore, ARM's motion for a new trial is denied.

## IV.    CONCLUSION

For the foregoing reasons, ARM's renewed motion for judgment as a matter of law or a new trial (D.I. 595) is DENIED, Nuvia's motion for judgment as a matter of law (D.I. 597) is GRANTED-IN-PART and DENIED-IN-PART. An appropriate order and final judgment will follow.